08 NOV 21 PM 3:56

# UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN DISTRICT OF OHIO
### Eastern Division

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC. )<br>7825 Hub Parkway )<br>Cleveland, Ohio 44125 )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>SAP AMERICA, INC. )<br>3999 W. Chester Pike )<br>Newtown Square, Pennsylvania 19073 )<br> )<br>and )<br> )<br>SAP AG )<br>Dietmar-Hopp-Allee 16 )<br>69190 Walldorf, Germany )<br> )<br>and )<br> )<br>LSI-LOWERY SYSTEMS, INC. )<br>c/o Timothy K. Kellett, Registered Agent )<br>911 Washington Avenue )<br>Suite 400 )<br>St. Louis, Missouri 63101 )<br> )<br>and )<br> )<br>THE IBIS GROUP, INC. )<br>c/o John T. Grebe, Registered Agent )<br>1749 Naperville Road )<br>Suite 203 )<br>Wheaton, Illinois 60187 )<br> )<br>Defendants. ) | Civil Action No. **1:08 CV 2755**<br><br>Judge **JUDGE WELLS**<br><br>**MAG. WHITE**<br><br><u>COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

1

Hodell-Natco Industries, Inc., by its attorneys, alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by the Plaintiff to seek redress for injuries sustained by it from the sale to Plaintiff of a SAP Business One software product that was wholly unsuited to Plaintiff's needs, was incapable of meeting the needs of a business the size of Plaintiff, which malfunctioned, which failed to function as represented, which must be totally replaced, and which, Defendants knew or should have known, was unsuitable for the business needs of Plaintiff. As a direct consequence of the acts and omissions set forth herein, Plaintiff has sustained business interruption, lost productivity, lost sales, lost profits, out-of-pocket expenses, and other direct, consequential, and special damages in an amount to be proved at trial, but conservatively estimated to be in excess of $1.5 million.

## PARTIES, JURISDICTION, AND VENUE

2. Hodell-Natco Industries, Inc. ("Hodell-Natco" or "Plaintiff") is a corporation organized under the laws of the State of Ohio with its principal place of business in Valley View, Ohio.

3. SAP AG is a corporation organized under the laws of the Republic of Germany with its principal place of business in Walldorf, Germany. SAP AG is one of the world's largest business software companies – with more than 51,800 employees at sales and development locations worldwide. With subsidiaries in more than 50 countries, the company is listed on several exchanges, including the Frankfurt stock exchange and NYSE under the symbol "SAP."

4. SAP America Inc. is a wholly-owned subsidiary of SAP AG. SAP America Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Newtown Square, Pennsylvania. At all times material hereto, SAP AG and SAP

2

America, Inc. were commonly controlled and acted in concert with one another. SAP AG and SAP America Inc. are collectively referred to herein as "SAP."

5. LSi-Lowery Systems, Inc. is a corporation organized under the laws of the State of Missouri with its principal place of business in St. Louis, Missouri.

6. The IBIS Group, Inc. is a wholly-owned subsidiary of LSi-Lowery Systems, Inc. The IBIS Group, Inc. is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. At all times material hereto, LSi-Lowery Systems, Inc. and The IBIS Group, Inc. were commonly controlled and acted in concert with one another. LSi-Lowery Systems, Inc. and The IBIS Group, Inc. are collectively referred to herein as "LSi."

7. Complete diversity exists as no defendant is a citizen of the same state as Plaintiff. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

9. Hodell-Natco is a full-service fastener and chain product wholesale distributor headquartered in Valley View, Ohio, with warehouses or sales offices in Houston, Texas, Maryland Heights, Missouri, Sparks, Nevada, Blythewood, South Carolina, Wauwatosa, Wisconsin, Longwood, Florida, and Westfield, Massachusetts.

10. Hodell-Natco has made numerous acquisitions, including: Bi-State Stainless Fasteners, North Ohio Bolt and Nut, Service Bolt and Nut Co., Metal Fasteners & Bolt Co.

(including the Lok-Tooth division), Southwest Fasteners (Houston), Acton Stainless, and LMP Fastek (Milwaukee). Most recently, the company acquired the assets of Bonanza Nut & Bolt (Reno) and Western Chain Company (Chicago). In December 2004, when Hodell-Natco purchased SAP Business One, it employed approximately 161 employees at least 80 of which were expected to be immediate users of SAP Business One.

11. Hodell-Natco sells 160,000 to 170,000 different products generally classified as fasteners, chains, chain assemblies, and other products. Because of the vast number of its products and multiple locations, having software that provides real time access to customer information, parts numbers, inventory and locations of inventory is essential to Hodell-Natco's business.

12. In or about March 2002, SAP AG purchased TopManage Financial Systems, an Israeli developer of business applications and branded its system as "SAP Business One." Subsequently, through acquisitions and otherwise, additional features and capability were added to SAP Business One. At all times material hereto, SAP AG and SAP America Inc. acted jointly and in concert with one another to market and sell SAP Business One.

13. During all material times, SAP Business One was marketed by SAP AG and SAP America Inc. through "a network of highly qualified channel partners" that resell, build, implement or provide services for SAP products and solutions. SAP's "partners" are agents of SAP, having assented to act on behalf of, and subject to the control, of SAP.

14. LSi-Lowery Systems, Inc. and/or The IBIS Group, Inc. were members of SAP's "partner" program and were authorized agents and resellers of SAP Business One.

4

15. During all material times, LSi-Lowery Systems, Inc. and/or The IBIS Group, Inc. were duly authorized agents of SAP for the express purpose of making representations concerning the suitability and functionality of SAP Business One.

16. LSi represented to Hodell-Natco that The IBIS Group, Inc. was an expert in providing IT solutions to the fastener industry and that "SAP has chosen to partner with The IBIS Group to develop the specific requirements of this vertical market space and bring to market a turn key solution (sic) to this industry." Those specific requirements included, but were not limited to, enhanced accounts receivable functionality, enhanced accounts payable functionality, enhanced inventory control functionality, enhanced sales orders functionality, and enhanced purchase orders functionality. Development of that vertical market space also included the integration of other software with SAP Business One, including the In-Flight Enterprise application and Radio Beacon synchronization.

17. SAP Business One was marketed to Hodell-Natco by all of the Defendants as an affordable and easy to implement solution designed from the ground up to address the needs of small and midsize businesses ("SMBs").

18. SAP Business One was represented by the Defendants to Hodell-Natco as providing robust and fully integrated financial and sales management capabilities.

19. SAP Business One was represented by the Defendants to Hodell-Natco as providing managers on-demand access to critical real time information.

20. SAP Business One was represented by the Defendants to Hodell-Natco as the one solution designed for key decision makers that helped them do it all – make more profitable decisions, grow their businesses, and stay ahead of their competition.

21. SAP Business One was represented by the Defendants to Hodell-Natco as being an affordable, powerful business solution that allowed everyone in the organization to get the information they need – in real time.

22. SAP Business One was represented by the Defendants to Hodell-Natco as providing it with the ability to manage practically all of its core operations, including the following features and benefits:

    a. Salesforce automation, pipeline tracking, opportunity management, strategic selling, and contact management;

    b. Full financial management system, budgeting, and bank reconciliation;

    c. Inventory management, warehouse management, and multilevel price lists;

    d. Management reporting, online alerts, sales discount management, exception management, and workflow approvals;

    e. A user interface designed for nontechnical executives;

    f. Unparalleled ease of use;

    g. Increased employee productivity and enhanced communication with suppliers; and

    h. "Unmatched expertise."

23. On December 20, 2004, Hodell-Natco executed a Development Agreement with LSi, a copy of which is attached hereto as Exhibit "A" (the "Development Agreement").

24. On December 20, 2004, Hodell-Natco issued its purchase order for an 80 user software license for SAP Business One at a cost for the licenses alone of $300,000.00. A copy

6

of the purchase order is attached hereto as Exhibit "B" (the "Purchase Order"). Hodell-Natco subsequently purchased an additional 40 user software license, for a total of 120.

25. Essential to Hodell-Natco's decision to purchase SAP Business One, was the express representation by the Defendants that SAP Business One would support the many users employed by Hodell-Natco. It was understood between Hodell-Natco and the Defendants that Hodell-Natco would be purchasing up to an additional 220 licenses for SAP Business One beyond the 80 initially purchased. Hodell-Natco anticipated a need for 300 total during a ten-year period of use.

26. The Defendants expressly represented to the international business community that SAP Business One could be used by hundreds of users. In its 2003 Annual Report, for example, SAP stated:

> SAP Business One is an easy-to-use business automation software solution that enables emerging businesses to streamline their operational and managerial processes and gain better control of their businesses. It supports standard business processes such as financial management, warehouse management, purchasing, inventory management,, payment, and sales force automation. ... *SAP Business One targets organizations with ... five to 500 employees....*" (Emphasis added.)

27. The Defendants expressly represented to Hodell-Natco that SAP Business One could be used by as many as 250 users and that SAP Business One was suitable to Hodell-Natco's current and at least ten years of future growth needs.

28. Hodell-Natco justifiably relied upon the material representations of SAP and LSi as set forth in this Complaint.

29. The representations made by the Defendants as set forth in this Complaint were made falsely -- either with knowledge of their falsity or utter disregard and recklessness as to falsity -- with an intent to mislead customers for SAP Business One, including Hodell-Natco.

30. That SAP Business One was totally unsuitable for an organization of the size of Hodell-Natco is illustrated by what SAP AG subsequently publicly acknowledged in its 2007 Annual Report about its SAP Business One software product:

> SAP Business One is the right solution *for small businesses, typically with fewer than 100 employees and 30 users* that are looking for an affordable, single system to cover the core operations necessary to run and grow a success business, including financials, sales, customers, and operations. (Emphasis added.)

31. Following its purchase of 80 user licenses for SAP Business One in December 2004, Hodell-Natco worked diligently to implement the software with the assistance of the Defendants. Notwithstanding the best efforts of Hodell-Natco, the installation of SAP Business One was an abject failure. Hodell-Natco continued its efforts to make SAP Business One minimally functional until 2008 when it reached the conclusion that SAP Business One had failed and that it needed to be replaced.

32. The many problems encountered by Hodell-Natco with SAP Business One and the integrated software include, but are not limited to:

    a. The system responds so slowly that Hodell-Natco's sales force is unable to reasonably respond to customer inquiries by telephone:

    b. InFlight disconnect errors;

    c. There are data synchronization failures between SAP Business One and Radio Beacon;

    d. There are ongoing discrepancies between package onhand and warehouse onhand figures;

    e. Faxes may be sent to incorrect customers by SAP Business One;

    f.    Not all documents to be faxed by SAP Business One are actually faxed, some instead may be printed locally;

    g.    SAP Business One e-mailing fails without any apparent pattern:

    h.    Cannot reset to zero usage;

    i.    SAP Business One screen freezes when looking up past sales to customers;

    j.    SAP Business One form settings sporadically change from one day to the next following no apparent pattern:

    k.    Repeated "Internal error 2038" messages:

    l.    IP misapplies costs;

    m.    Item interchanges are not functional;

    n.    Order entry failures with no apparent pattern;

    o.    Transfer lines remain open or close at random on receipt of partial shipment data;

    p.    Country of origin does not uniformly carry through system; and

    q.    Drill downs only function occasionally without an apparent pattern to the repeated failures.

33.    Hodell-Natco incurred damages as direct costs in the implementation of SAP Business One and the integrated software in an amount to be proved at trial, but at least $843,152.62.

34.    Hodell-Natco incurred damages as indirect costs in the implementation of SAP Business One and the integrated software in an amount to be proved at trial, but at least $456,000.

## FIRST CAUSE OF ACTION-FRAUDULENT INDUCEMENT

35. Hodell-Natco incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

36. Defendants made material misrepresentations of fact in their sales literature, public and private communications in 2003 and 2004, and directly to Hodell-Natco. Those misrepresentations are set forth in detail in paragraphs 16 through 22 of this Complaint and include, but are not limited to, the misrepresentation that SAP Business One was suitable for companies with hundreds of employees and that SAP Business One was suitable for 250 users.

37. The misrepresentations by the Defendants were of material facts.

38. Hodell-Natco reasonably relied on the misrepresentations of the Defendants in (i) the purchase of 80 user licenses for SAP Business One; (ii) the purchase of unlimited user licenses for the IBIS In-Flight Enterprise software; and (iii) the purchase of the programs to integrate the In-Flight Enterprise application with SAP Business One.

39. The misrepresentations by the Defendants were made with knowledge of their falsity or utter disregard and recklessness as to falsity -- with an intent to mislead Hodell-Natco into making the purchases as aforesaid. Hodell-Natco would not have entered into the contracts attached as Exhibits "A" and "B" but for its justifiable reliance on the fraudulent misrepresentations of the Defendants.

40. Hodell-Natco has sustained damages from the Defendants fraudulent inducement as alleged herein.

## SECOND CAUSE OF ACTION-FRAUD

41. Hodell-Natco incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

42. Defendants made material misrepresentations of fact in their sales literature, public and private communications in 2003 and 2004, and directly to Hodell-Natco. Those misrepresentations are set forth in detail in paragraphs 16 through 22 of this Complaint and include, but are not limited to, the misrepresentation that SAP Business One was suitable for companies with hundreds of employees and that SAP Business One was suitable for 250 users.

43. The misrepresentations by the Defendants were of material facts.

44. Hodell-Natco reasonably relied on the misrepresentations of the Defendants.

45. The misrepresentations by the Defendants were made with knowledge of their falsity or utter disregard and recklessness as to falsity -- with an intent to mislead Hodell-Natco.

46. Hodell-Natco has sustained damages from the Defendants fraud as alleged herein.

## THIRD CAUSE OF ACTION-BREACH OF CONTRACT

47. Hodell-Natco incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

48. The Development Agreement, together with Hodell-Natco's Purchase Order constitutes a valid and binding agreement between Hodell-Natco and LSi for (i) the purchase of SAP Business One and 80 user licenses for SAP Business One; (ii) the

purchase of unlimited user licenses for the IBIS In-Flight Enterprise software; and (iii) the purchase of the programs to integrate the In-Flight Enterprise application with SAP Business One.

49. The software sold to Hodell-Natco are "goods" and/or "specially manufactured goods" under the Uniform Commercial Code.

50. SAP was a disclosed principal for whose benefit LSi contracted with Hodell-Natco. For this and other reasons, SAP is liable for any breaches which may be established against LSi.

51. Hodell-Natco fully performed all of its duties under the Development Agreement.

52. Implied in the Development Agreement are an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

53. LSi materially breached its contract with Hodell-Natco and the implied warranties of merchantability and fitness for a particular purpose.

54. The software sold to Hodell-Natco was not fit for the ordinary purposes for which software of that description is used.

55. The software sold to Hodell-Natco was not fit for the particular purposes for which that software was to be employed by Hodell-Natco, which purposes were known to LSi and SAP. LSi and SAP knew that Hodell-Natco was relying on their skill in the selection and recommendation of suitable software.

56. LSI and SAP otherwise materially breached their contracts with Hodell-Natco.

57. Hodell-Natco has sustained damages from the Defendants breach of contract as alleged herein.

## FOURTH CAUSE OF ACTION-NEGLIGENCE

58. Hodell-Natco incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

59. LSi and SAP had a duty of ordinary care to Hodell-Natco.

60. By failing to cause the SAP Business One software to achieve basic and essential functionality for Hodell-Natco, Defendants breached their duty of care.

61. Hodell-Natco has sustained damages from the Defendants negligence as alleged herein.

**WHEREFORE**, Hodell-Natco prays for judgment as follows:

a. As to the First Cause of Action, damages in an amount to be proved at trial, but at least $1.5 million, interest thereon, punitive damages, and attorneys' fees;

b. As to the Second Cause of Action, damages in an amount to be proved at trial, but at least $1.5 million, interest thereon, punitive damages, and attorneys' fees;

c. As to the Third Cause of Action, damages in an amount to be proved at trial, but at least $1.5 million, interest thereon, and attorneys' fees;

d. As to the Fourth Cause of Action, damages in an amount to be proved at trial, but at least $1.5 million, interest thereon, and attorneys' fees;

e. As to all causes of action, costs and reasonable experts' fees;

f. Any other relief which this Court deems just and equitable.

Respectfully submitted,

James F. Koehler (0007904)
JKoehler@spiethbell.com
P. Wesley Lambert (0076961)
Wlambert@spiethbell.com
Spieth, Bell, McCurdy & Newell Co., L.P.A.
925 Euclid Avenue, Suite 2000
Cleveland, Ohio 44115-1496
(216) 696-4700
(216) 696-2706 (Fax)
*Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

## JURY DEMAND

Plaintiff hereby demands trial of this matter with the maximum number of jurors allowed by law.

James F. Koehler (0007904)
*Attorney for Hodell-Natco Industries, Inc.*