IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | |
| | ) | |
| SAP AMERICA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS
SAP AMERICA, INC. AND SAP AG TO DISMISS PLAINTIFF'S COMPLAINT**

# Table of Contents

Table of Authorities ……………………………………………………………..…i

Introduction ………………………………………………………………….…..1

Statement of Facts……………………………………………………………….3

Standard of Review…………………………………………………………….7

Argument ……………………………………………………………….......9

    A. Hodell's First and Second Causes of Action As To SAP America Are Barred
      By The Parol Evidence Rule And The Terms Of The License Agreement …………..9

    B. Hodell's First, Second, and Fourth Causes of Action Against SAP America
      And SAP AG Are Barred By The "Gist of The Action" Doctrine And/or The
      Economic Loss Rule…………………………………………………………...12

        1. Hodell's First, Second, and Fourth Causes of Action Against SAP
          America Are Barred By The "Gist Of The Action" Doctrine………………..12

        2. Hodell's First, Second, and Fourth Causes of Action Against SAP
          America and SAP AG Are Barred By The Economic Loss Rule…………….14

    C. Hodell's Third Cause of Action Against SAP America and SAP AG Fails
      For Several Reasons………………………………………………………...15

        1. Any And All Claims That SAP America Or SAP AG Breached
          The Development Agreement Fail As A Matter Of Law Because
          Neither SAP America Nor SAP AG Are A Party To That
          Agreement, Nor Are They Bound To It……………………………………16

        2. Hodell's Third Cause of Action Against SAP America Is Barred
          By The Licensing Agreement's Provision Disclaiming Implied
          Warranties…………………………………………………………...17

    D. Hodell's First, Second, Third, And Fourth Causes Of Action Against
      SAP America Should Be Dismissed Because Hodell Waived Its Right
      To Seek The Damages Being Sought In This Action…………………………...18

    E. Hodell's First and Second Cause of Action Must Be Dismissed, As
      Hodell Has Not Stated A Claim For Fraud Against SAP America Or
      SAP AG With The Requisite Particularity…………………………………22

Conclusion………………………………………………………………….23

# Table of Authorities

## Cases

*Advent Systems v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991)…………………………………..17

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)…………………...…………7, 8

*Borden, Inc. v. Advent Ink Company*, 701 A.2d 255, 262 (Pa. Super. 1997)…………………19

*Butler v. Aetna U.S. Healthcare, Inc.*, 109 F. Supp. 2d 856 (S.D. Ohio 2000)………………...5

*Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*,
     123 F. Supp. 2d 826, 833 (E.D. Pa. 2000)..…………………………………………...13

*Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St. 3d 241 (Ohio 1984)……..21

*Citicasters Co. v. Bricker & Eckler, L.L.P.*, 778 N.E.2d 663 (Ohio App. 1 Dist. 2002)………...12

*Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)……………………………………..22

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999)……………………………16

*Corporex Development v. Construction Mngt, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005)………...15

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990)……………………………...7

*Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996)…………………………………...11

*Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002)………………...12,13

*Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006)……………………………….23

*Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 855 (N.D. Ohio 2003)……………14

*Galmish v. Cicchini*, 734 N.E.2d 782 (Ohio 2000)………………………………………………12

*Geiger v. Westfield Nat'l. Ins. Co.*, slip op., 2008 WL 5412490 (Ohio App. 1 Dist., 2008)…….21

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)…………………….8

*Harris v. Equilon Enterprises, LLC*, 107 F. Supp. 2d 921 (S.D. Ohio 2000)…………………….8

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)…………………………………………...7

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989)…………………………………3

*Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*,
   1998 WL 88391 (E.D. Pa. Feb. 26, 1998).......................................................11

*Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)...........................................21

*In re Meridia Prods. Liability Lit.*, 328 F. Supp. 2d 791, 819 (N.D. Ohio 2004)..................22

*Interwave Technology, Inc. v. Rockwell Automation, Inc.*,
   2005 WL 3605272 (E.D. Pa. Dec. 30, 2005).................................................11, 12

*Johnson v. Monsanto*,
   No. 11-02-02, 2002 WL 2030889, at *2 (Ohio Ct. App. Sept. 6, 2002)....................16

*Lawyers Cooperative Publishing Co. v.* Muething, 65 Ohio St. 3d 273, 276 (Ohio 1992).........16

*Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)............................7

*Logsdon v. Graham Ford Co.*, 54 Ohio St. 2d 336 (Ohio 1978)........................................21

*Lower Lake Dock Co., et. al. v. Messinger Baring Corporation, et. al.*,
   577 A.2d 631 (Pa. Super. 1990).........................................................................15

*Lucas-Cooper v. Palmetto GBA*,
   Case No. 1:05-cv-00959, 2006 U.S. Dist. LEXIS 63783 (N.D. Ohio Sep. 7, 2006).......23

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)..................................7

*Moscatiello v. Pittsburgh Contr. Equip.*, 595 A.2d 1190, 1193 (Pa. Super. 1991)..................18

*New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*,
   564 A.2d 919, 925-26 (Pa. Super. 1989).............................................................14

*Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1278 (M.D. Pa. 1990).........................14, 15

*Pavlovich v. National City Bank*, 435 F.3d 560 (6th Cir. 2006)......................................15

*Phico Ins. Co. v. Presbyterian Med. Serv.* Corp., 663 A.2d 753 (Pa. Super. 1995)..................13

*Pittsburgh Constr. Co. v.* Griffith, 834 A.2d 572, 581 (Pa. Super. 2003)............................12

*Reardon v. Allegheny* Coll., 926 A.2d 477, 486 (Pa. Super. 2007)...................................13

*Redevelopment Auth. of Cambria County v. Int'l Ins. Co.*,
   685 A.2d 581, 590, (Pa. Super. 1996), appeal denied, 695 A.2d 787 (Pa. 1997)...........13

*Roth Steel Products v. Sharon Steel* Corp., 705 F.2d 134, 155 (6th Cir. 1983)........................7

*Samuel-Bassett v. KIA Motors Am.,* Inc., 357 F.3d 392, 402 (3d Cir. 2004)........................21

*Sims v. Mercy Hospital of Monore*, 451 F.2d 171, 173 (6th Cir. 1971)...............................7

*Telephone Management Corp. v. Goodyear Tire & Rubber* Co.,
    32 F. Supp. 2d 960 (N.D. Ohio 1998)..............................................14

*Thomas v. Micro* Ctr., 875 N.E.2d 108 (Ohio App. 8 Dist. 2007)....................................18

*Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa. 2007)..........................................10

*Valhal Corp. v. Sullivan Associates,* Inc., 44 F.3d 195, 203 (3d Cir. 1995)....................19

*Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)................................................8

*Westfield Ins. Co. v. HULS Am.,* Inc.,
    714 N.E.2d 934 (Ohio App. 10 Dist., 06-09-1998),
    dismissed, appeal not allowed, 700 N.E.2d 877 (Ohio 1998)....................21

*Yocca v. Pittsburgh Steelers Sports.* Inc., 854 A.2d 425, 436 (Pa. 2004)............................10

**Statutes**

Fed. R. Civ. P. 9(b)..............................................................22

Fed. R. Civ. P.
12(b)(6)..........................................................................3,7

Fed. R. Civ. P. 12(d).............................................................8

13 Pa. C.S.A. § 2316(b)...........................................................18

13 Pa. C.S.A. § 2719..............................................................19

**Other Authorities**

11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed.1998)....................8

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss Plaintiff, Hodell-Natco Industries, Inc.'s complaint against Defendants SAP America, Inc. and SAP AG pursuant Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim against SAP America and/or SAP AG upon which relief can be granted.

## SUMMARY OF ARGUMENTS PRESENTED

Plaintiff alleges claims of (i) fraudulent inducement; (ii) fraud; (iii) breach of contract; and (iv) negligence. Plaintiff is seeking purely economic damages resulting from the defendants' alleged failure to properly implement an integrated business management software solution, and/or the software solution's failure to meet Plaintiff's functionality needs. In addition, under its causes of action for fraud, Plaintiff seeks punitive damages. Plaintiff's claims fail for at least the following reasons:

- Plaintiff's fraud claims against SAP America are barred by the parol evidence rule and the existence of an integration clause in the contract between Plaintiff and SAP America.

- Plaintiff's tort claims against SAP America and SAP AG are barred by the existence of the contract, pursuant to the "gist of the action" doctrine, and/or are barred by the economic loss rule.

- Plaintiff's breach of contract claim against SAP America is barred because, by way of the contract, Plaintiff expressly disclaimed any and all implied warranties of merchantability and of fitness for a particular purpose. As to SAP AG, this claim fails because SAP AG is not a party to the contract.

- Plaintiff's claims against SAP America must be dismissed because Plaintiff, in its contract with SAP America, expressly waived its right to seek the very damages it now seeks in this action. In the alternative, the contract limits Plaintiff's damages to the price of the contract. In any event, Hodell's claims for punitive damages against SAP America and SAP AG fail as a matter of law.

- Plaintiff's fraud claims fail because they have not been pled with the requisite particularity

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF MOTION OF** |
| SAP AMERICA, INC., et al. | ) | **DEFENDANTS SAP AMERICA,** |
| | ) | **INC. AND SAP AG TO DISMISS** |
| Defendants. | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | |

## INTRODUCTION

Hodell-Natco Industries, Inc. ("Hodell") is a distributor in the fastener and chain industry. In 2004, Hodell entered into a software development agreement (the "Development Agreement") with LSi-Lowery Systems, Inc. ("Lowery") and The IBIS Group ("IBIS") (collectively, "LSI").[1] Pursuant to the Development Agreement, LSI was to develop its own software (an application known as In-Flight) and then integrate and/or synchronize that with certain other software applications, including SAP Business One and Radio Beacon.[2]

In 2005, consistent with the Development Agreement, Hodell entered into a software license and maintenance agreement (the "License Agreement") with SAP America, Inc. ("SAP America"). The License Agreement provided Hodell with the right to use the Business One

---

[1] IBIS is a subsidiary of Lowery.

[2] LSI and Hodell intended to sell the resulting software solution to other companies in the fastener industry.

software.  However, in exchange, Hodell agreed to, among other things, various terms that limited its ability to pursue future claims against SAP America.

In its complaint, Hodell alleges that the Business One software was falsely represented to Hodell as suitable for its needs and that the installation was a failure.  Based on these allegations, Hodell purports to assert causes of action against all of the defendants, including SAP America and SAP AG (hereinafter occasionally referred to collectively as "SAP"), for (1) fraudulent inducement, (2) fraud, (3) breach of contract, and (4) negligence.  Significantly, however, Hodell failed to include in its complaint any specific allegations regarding representations by SAP to Hodell.[3]  Additionally, although Hodell attached the Development Agreement to its complaint, Hodell failed to attach the License Agreement, and failed to include any allegations explaining how the existence of, and the language in, the License Agreement do not preclude Hodell's claims against SAP.

Hodell's claims against SAP are without merit and fail as a matter of law, for at least the following reasons:

- Hodell's first and second causes of action against SAP America are barred by the parol evidence rule and the integration clause in the License Agreement.

- Hodell's first, second, and fourth causes of action against SAP America and SAP AG are barred as a result of the existence of the License Agreement, pursuant to the "gist of the action" doctrine and/or the economic loss rule.

- Hodell's third cause of action against SAP America is barred by the License Agreement, wherein Hodell expressly disclaimed any and all implied warranties of merchantability and of fitness for a particular purpose.  As to SAP AG, Hodell's third cause of action fails because SAP AG is not a party to the License Agreement.

---

[3]  Although not relevant for the purposes of this motion, these allegations were absent because SAP simply did not make any affirmative representations to Hodell prior to the Development Agreement or the License Agreement.  Hodell's interactions in this regard were with LSI.

- Because Hodell cannot recover the damages being sought against SAP America in this action, its complaint against SAP America must be dismissed.  Indeed, the License Agreement contains an enforceable "limitation of liability" provision, whereby Hodell expressly waived its right to seek, against SAP America, the very damages it now seeks in this action.  In the alternative, the "limitation of liability" provision limits Hodell's damages to the price of the contract.  In any event, Hodell's claims for punitive damages against SAP America and SAP AG must be dismissed.

- Hodell's first and second causes of action fail because these fraud claims have not been pled with the requisite particularity.

Accordingly, and as set forth more fully below, SAP submits this memorandum of law in support of its motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS

The facts relevant to this motion are as follows:[4]

- Hodell is a full-service fastener and chain product wholesaler.  Complaint, ¶ 9.

- LSI is an authorized reseller of Business One software.  Complaint, ¶ 14.

- LSI represented to Hodell that LSI was an expert in providing IT solutions to the fastener industry and that development of the solution in question would involve the integration by LSI of other software with Business One, including the In-Flight Enterprise application (which was to be developed by LSI), and would involve synchronization with the Radio Beacon application (which was being currently utilized by Hodell).  Complaint, ¶ 16.[5]

- Hodell was told by "the defendants" that Business One was (i) an affordable and easy to implement solution designed from the ground up to address the needs of small and midsize businesses; (ii) capable of providing robust and fully integrated financial and sales management capabilities, and on-demand access to critical real time information; (iii) the one solution designed for key decision makers that helped them do it all – make

---

[4]  For purposes of a motion to dismiss, all properly pled facts in the complaint are accepted as true.  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).  However, by restating these facts herein, SAP is not conceding the truth of these facts.  Indeed, in the event this case is not dismissed pursuant to this motion, SAP will contest many of the facts set forth in the complaint.

[5]  LSI also represented to Hodell that LSI was seeking to meet the specific requirements of this vertical marketplace (i.e., the fastener industry) and to bring to market a turn key solution for this industry.  Complaint, ¶ 16.

more profitable decisions, grow their businesses, and stay ahead of their competition; (iv) a powerful business solution that allowed everyone in the organization to get the information they needed – in real time; and (v) capable of providing it with the ability to manage practically all of its core operations.  Complaint, ¶¶ 17- 22.

- On December 20, 2004, the Development Agreement was executed between LSI and Hodell.  Complaint, Ex. A.

- On December 20, 2004, Hodell issued a purchase order to LSI for an 80 user software license for Business One.  Hodell subsequently purchased an additional 40 user software license.  Complaint, Ex. B.

- Essential to Hodell's decision to purchase Business One was the representation that Business One would support the many users employed by Hodell.  It was understood that Hodell would be purchasing up to an additional 220 licenses beyond the 80 initially purchased.  Hodell anticipated a need for 300 Business One user licenses during a ten year period.  Complaint, ¶ 25.

- The defendants represented to the international business community that Business One could be used by hundreds of users.  In its 2003 annual report, for example, SAP stated:

> SAP Business One is an easy-to-use business automation software solution that enables emerging businesses to streamline their operational and managerial processes and gain better control of their businesses.  It supports standard business processes such as financial management, warehouse management, purchasing, inventory management, payment, and sales force automation. ... SAP Business One targets organizations with ... five to 500 employees...."

Complaint, ¶ 26.

- The defendants represented that Business One could be used by as many as 250 users and that Business One was suitable to Hodell's current needs and at least ten years of future growth needs.  Complaint, ¶ 27.

- Hodell justifiably relied on the representations of the defendants.  Complaint, ¶ 28.

- The representations of the defendants were made falsely – either with knowledge of their falsity or utter disregard and recklessness as to falsity – with an interest to mislead Hodell.  Complaint, ¶ 29.

- On December 23, 2005, as contemplated by the Development Agreement, Hodell and SAP America entered into the License Agreement. Exhibit A.[6]

- The License Agreement provided Hodell with the right to use Business One.[7] Exhibit A.

- The License Agreement contained the following provision regarding warranties:

> ### PERFORMANCE WARRANTY/MAINTENANCE
>
> 7.1 <u>Warranty</u>. SAP warrants that the Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery. The warranty shall not apply: (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database. SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.
>
> 7.2 <u>Express Disclaimer</u>. SAP AND ITS LICENSORS DISCLAIM ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT TO THE EXTENT THAT ANY WARRANTIES IMPLIED BY LAW CANNOT BE VALIDLY WAIVED.

Ex. A (License Agreement, §§ 7.1, 7.2).

- The License Agreement contained the following provision, which limits Hodell's remedies and SAP America's liability under the contract:

---

[6] The License Agreement is <u>not</u> attached to the complaint. It is, however, referred to in the complaint. Indeed, in addition to numerous references to the 80 Business One licenses SAP granted to Hodell pursuant to the License Agreement, Hodell expressly alleges, in its third cause of action, that the defendants breached their "contracts" with Hodell. Complaint, ¶ 56. Therefore, the Court may consider this pertinent document without converting the instant motion into a motion for summary judgment. *See Butler v. Aetna U.S. Healthcare, Inc.,* 109 F. Supp. 2d 856 (S.D. Ohio 2000) (stating that a defendant may introduce pertinent documents for consideration on motion to dismiss if plaintiff fails to do so, and motion to dismiss need not be converted to one for summary judgment).

[7] Compensation for the Business One software was paid by LSI to SAP America pursuant to a separate agreement between SAP America and LSI. Complaint, Ex. A.

LIMITATIONS OF LIABILITY

9.1    Licensee's Remedies.  Licensee's sole and exclusive remedies for any damages or loss in any way connected with the Software or Services furnished by SAP and its licensors, whether due to SAP's negligence or breach of any other duty, shall be, at SAP's option: (i) to bring the performance of the Software into substantial compliance with the functional specifications; (ii) re-performance of Services; or (iii) return of an appropriate portion of any payment made by Licensee to its SAP Reseller with respect to the applicable portion of the Software or Services.

\*\*\*

9.3    Limitation of Liability.  ANYTHING TO THE CONTRARY HEREIN NOTWITHSTANDING, EXCEPT FOR DAMAGES RESULTING FROM UNAUTHORIZED USE OR DISCLOSURE OF PROPRIETARY INFORMATION, UNDER NO CIRCUMSTANCES SHALL SAP, ITS LICENSORS OR LICENSEE BE LIABLE TO EACH OTHER OR ANY OTHER PERSON OR ENTITY FOR AN AMOUNT OF DAMAGES IN EXCESS OF THE SOFTWARE LICENSE FEES PAID BY LICENSEE FOR THE SOFTWARE OR BE LIABLE IN ANY AMOUNT FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR INDIRECT DAMAGES, LOSS OF GOOD WILL OR BUSINESS PROFITS, WORK STOPPAGE, DATA LOSS, COMPUTER FAILURE OR MALFUNCTION, OR EXEMPLARY OR PUNITIVE DAMAGES.

Ex. A (License Agreement, §§ 9.1, 9.3).

- The License Agreement stated that it "shall be governed by and construed under the Commonwealth of Pennsylvania law without reference to its conflicts of law principles." Ex. A (License Agreement, § 11.6).

- The License Agreement contained an integration clause, which stated "[t]his Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee, and all previous representations, discussions, and writings are merged in, and superseded by, this Agreement.  This Agreement may be modified only by a writing signed by both parties.  This Agreement and each Appendix hereto shall prevail over any additional, conflicting, or inconsistent terms and conditions which may appear on any purchase order or other document furnished by Licensee to SAP." Ex. A (License Agreement, § 11.9).

- Although the complaint alleges that LSI was the agent of SAP, the License Agreement expressly states that "[Hodell] acknowledges and agrees that the [LSI]…is not the agent of SAP." Ex. A (License Agreement, § 4.1).

- The installation of Business One was a failure, and Hodell concluded that Business One needed to be replaced. Complaint, ¶ 31.

- Hodell alleges it incurred economic damages in the form of "direct costs" and "indirect costs" as a result of the failed implementation of Business One and the integrated software. Complaint, ¶ 33-34. Under its first and second causes of action (*i.e.* its fraud claims), Hodell also seeks punitive damages. Complaint at Wherefore Clause on p. 13.

## STANDARD OF REVIEW

The Court may dismiss a claim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451 F.2d 171, 173 (6th Cir. 1971)). When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In other words, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Only well-pled facts are construed liberally in favor of the party opposing the motion. *Id*. Further, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). A claim should be dismissed if it does not "contain either direct or inferential allegations respecting all

- 7 -

the material elements necessary to sustain recovery under *some* viable legal theory...." *Id*. at 1969 (internal quotation marks omitted; emphasis and omission in original).

Rule 12(d) of the Federal Rules of Civil Procedure provides that, "if on a motion under Rule 12(b) matters outside the pleadings are presented to and not excluded by the court, the [12(b)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(d).  However, under certain circumstances, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (citing 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed.1998)).  This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim...." *Id*.  In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id*.

Thus, as here, with the SAP America's introduction of the License Agreement, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Harris v. Equilon Enterprises, LLC*, 107 F. Supp. 2d 921 (S.D. Ohio 2000) (quoting *Weiner*, 108 F.3d 86, 89, and stating that "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied").

Applying these standards to the instant case, the complaint fails to state a single claim upon which relief can be granted against SAP.  Accordingly, this Court should dismiss Hodell's complaint against SAP in its entirety.

**ARGUMENT**

**A.      Hodell's First and Second Causes of Action As To SAP America Are Barred By The Parol Evidence Rule And The Terms Of The License Agreement.**

In its first cause of action, for fraudulent inducement, Hodell alleges that the defendants induced Hodell into entering a contract by making certain pre-contractual misrepresentations concerning, among other things, the suitability and functionality of Business One.  In its second cause of action, for fraud, Hodell's allegations are essentially the same, that is, that the defendants made those same pre-contractual misrepresentations to Hodell and Hodell relied on those representations.  Both of these causes of action are essentially fraud in the inducement claims, and both of these claims are barred by the Pennsylvania parol evidence rule and by the terms of the fully integrated Licensing Agreement.[8]

The Pennsylvania Supreme Court has explained the parole evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

---

[8]   SAP has analyzed the claims herein pursuant to Pennsylvania law.  Pennsylvania is where SAP America maintains its principal place of business, and Hodell has alleged that SAP America and SAP AG acted in concert with one another.  Complaint, ¶ 4.  Additionally, Hodell consented to the application of the law of Pennsylvania in its only contract, the License Agreement, with SAP America.  Ex. A (License Agreement, § 11.6).  Such governing law clauses are enforced and have been broadly construed under the choice of law rules of this jurisdiction (Ohio).  *See, e.g., Procter & Gamble Co. v. Bankers Trust Co.,* 925 F. Supp. 1270 (S.D. Ohio 1996) (stating that where contract contained clause that it would be "governed by, and construed and enforced in accordance with, the laws of the New York without reference to choice of law doctrine," inclusion of phrase "without reference to choice of law doctrine" foreclosed application of Ohio law and, thus, plaintiff's fraud claim under Ohio statute was dismissed). In any event, as explained further herein, the law of Ohio is essentially the same as that of Pennsylvania with respect to the issues addressed herein and compels an identical result.

*Yocca v. Pittsburgh Steelers Sports. Inc.*, 854 A.2d 425, 436 (2004).

Significantly, the fraud exception to the parol evidence rule is restricted to allegations of fraud in the execution of a contract, and does not apply to allegations of fraud in the inducement. *Id.* In other words, while parol evidence may be introduced to prove a party's claim "that a term was fraudulently omitted from the contract," it may not be admitted based on a claim that "that an opposing party made false representations that induced the complaining party to agree to the contract." *Id.* at n.26. In *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa. 2007), the Pennsylvania Supreme Court further explained that the policy the parol evidence rule aims to serve, which is to uphold the integrity of the written contract as the complete embodiment of the parties' agreement, is not furthered by excluding evidence that the written agreement is not the expression of the parties' true and complete contractual intent inasmuch as terms that were agreed upon were omitted from the written document through fraud. *Toy*, 928 A.2d at 206 n.24 (internal citations omitted). By contrast, the Court explained, if a party were allowed to introduce representations made prior to contract formation which contradicted the terms of the written contract by merely alleging fraud in the inducement, such an exception could swallow the rule. *Id.* The Court added that a party to a contract has the ability to protect itself from fraudulent inducements by insisting that they be made part of the written agreement, and refusing to contract if they are not. *Id.*

Here, Hodell has not alleged fraud in the execution of a contract. It has not alleged that SAP America led Hodell to sign an agreement the terms of which were unknown to Hodell. Hodell also has not alleged that it and SAP America agreed on a contract term and that SAP America led Hodell to believe that the term was contained in the written agreement that was signed, when in fact SAP America had omitted the term unbeknownst to Hodell. Nor does

- 10 -

Hodell allege it was defrauded into executing an agreement before it had a reasonable opportunity to obtain knowledge of its terms, or that the agreement it signed is a different document than the one Hodell was led to believe it was signing.  Thus, the fraud exception to the parol evidence rule clearly does not apply.

In addition to being premised entirely on pre-contractual representations, Hodell's fraud claims are addressed in the License Agreement, which expressly states:

> This Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee, and *all previous representations, discussions, and writings are merged in, and superseded by, this Agreement*.  This Agreement may be modified only by a writing signed by both parties.  This Agreement and each Appendix hereto shall prevail over any additional, conflicting, or inconsistent terms and conditions which may appear on any purchase order or other document furnished by Licensee to SAP.

Ex. A (License Agreement, § 11.9) (emphasis added).

This case represents a classic case, wherein a party entered into a fully integrated contract and is, therefore, foreclosed from advancing claims that are premised entirely on allegations that pre-contractual statements contradict or vary from the terms of the contract.  There have been many cases in which courts have precluded the advancement of similar claims of fraudulent misrepresentations by applying the parol evidence rule.  *See, e.g.*, *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996) (stating that the parol evidence rule bars consideration of allegedly fraudulent pre-contractual representations regarding matters covered in a written contract, unless the representations were fraudulently *omitted* from the contract.); *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, 1998 WL 88391 (E.D. Pa. Feb. 26, 1998) (dismissing fraud claims because the alleged misrepresentations were merged into the subsequent written contract); *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, 2005 WL

- 11 -

3605272 (E.D. Pa. Dec. 30, 2005) (stating that "[i]ntegration clauses and contract terms that specifically cover the subject matter of the alleged fraudulent inducement frequently result in dismissal of fraudulent inducement claims).[9]

**B.**     **Hodell's First, Second, and Fourth Causes of Action Against SAP America and SAP AG Are Barred By The "Gist of The Action" Doctrine And/or The Economic Loss Rule.**

        **1.**     **Hodell's First, Second, and Fourth Causes of Action Against SAP America Are Barred By The "Gist Of The Action" Doctrine.**

In its first cause of action for fraudulent inducement, and in its second cause of action for fraud, Hodell alleges that the defendants made pre-contractual misrepresentations, which Hodell relied upon in, and/or induced Hodell into, entering a contract.  In its fourth cause of action for negligence, Hodell alleges that the defendants breached their duty of ordinary care to Hodell because Business One failed to achieve basic and essential functionality.  Although these causes of action are in tort, as to SAP America, Hodell's purported tort claims arise out of its contractual relationship with SAP America, and thus, the gist of the action here is in contract. Indeed, as to SAP America, the essence of Hodell's complaint is that Hodell is dissatisfied with Business One and that Hodell's expectations under its *contract* with SAP America were not met.

Importantly, however, the "gist of the action" doctrine precludes a plaintiff from re-casting breach of contract claims into tort claims. *Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 581 (Pa. Super. 2003). Tort claims are barred when they are simply another theory under which a plaintiff asserts a breach of contract claim, or when a plaintiff's success would be wholly dependent upon the terms of a contract. *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811

---

[9]  *See also Galmish v. Cicchini*, 734 N.E.2d 782 (Ohio 2000) (stating that the parol evidence rule may not be avoided by a fraud claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing); *Citicasters Co. v. Bricker & Eckler, L.L.P.*, 778 N.E.2d 663 (Ohio App. 1 Dist. 2002) (dismissing claims that sought to contradict or vary the terms of the written agreements because such claims violated the parol evidence rule).

A.2d 10, 19 (Pa. Super., 2002).  An action for breach of contract may not be converted to a tort

action by merely alleging that a defendant acted negligently, recklessly, or intentionally, if the

underlying claim is merely that a promise was not fulfilled.  *Redevelopment Auth. of Cambria*

*County v. Int'l Ins. Co.,* 685 A.2d 581, 590 (Pa. Super. 1996), appeal denied, 695 A.2d 787 (Pa.

1997).  The important distinction between contract and tort claims is that tort claims lie from a

breach of a duty imposed as a matter of social policy, while contract claims arise from a breach

of a duty imposed by mutual consent.  *Phico*, 663 A.2d 753, 757.  If a party contends that a tort

claim is essentially a breach of contract claim in disguise, a court must apply the "gist of the

action" test by reviewing the complaint to determine the source of the duty allegedly breached.

*Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (E.D. Pa.

2000); *Etoll*, 811 A.2d at 15.

      As the Superior Court of Pennsylvania stated in *Reardon v. Allegheny Coll.*, 926 A.2d

477, 486 (Pa. Super. 2007), the gist of the action doctrine forecloses tort claims: (i) arising solely

from the contractual relationship between the parties; (ii) when the alleged duties breached were

grounded in the contract itself; (iii) where any liability stems from the contract; or (iv) when the

tort claim essentially duplicates the breach of contract claim or where the success of the tort

claim is dependent on the success of the breach of contract claim.  *Reardon*, 926 A.2d at 486.

      In the instant case, the gist of the action against SAP America is clearly one for breach of

contract.  Here, the License Agreement is the only contract between Hodell and SAP America,

and its clear purpose is to provide a license for Hodell to use Business One.  Hodell's claims

against SAP America, for fraudulent inducement, fraud, and negligence, all arise solely from that

contractual relationship and relate directly to Business One.  Indeed, all of SAP America's

duties toward Hodell arise from the License Agreement and relate directly to Business One.

None arise as a matter of social policy.  Hodell's tort claims are simply its contract claim recast in tort language.  Thus, in accordance with the "gist of the action" doctrine, Hodell's first, second, and fourth causes of action against SAP America should be dismissed.[10]

### 2. Hodell's First, Second, and Fourth Causes of Action Against SAP America and SAP AG Are Barred By The Economic Loss Rule.

Hodell's first, second, and fourth causes of action are barred against SAP America and SAP AG because the economic loss rule prevents a recovery in tort, where as here, the damages sought are purely economic.  *See Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1278 (M.D. Pa. 1990); *see also New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925-26 (Pa. Super. 1989).

In *Palco Linings*, as in the instant case, the plaintiff sued in tort to recover only economic damages against the defendant.  The plaintiff alleged that the defendant's negligence and negligent misrepresentations forced the plaintiff to delay work on a construction project and caused economic losses.   The defendant moved for summary judgment on the basis of the economic loss rule.  In response, the plaintiff contended that because it had no contract with the defendant and, thus, had no contract remedies available to it, the economic loss rule did not apply.  The Court disagreed, explaining as follows:

> While Pennsylvania courts have addressed, as favorable, the fact that the use of warranties and other terms allow parties to allocate the risk of economic loss prior to engaging in transactions, these opportunities are not prerequisites to the application of the economic loss doctrine. Whether the parties take advantage of such opportunities is not relevant.

---

[10]  Ohio courts will likewise look to the essence of each of the plaintiff's claims to determine whether a plaintiff is attempting to disguise what is essentially a contract claim as a tort claim.  *See Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 855 (N.D. Ohio 2003); *see also Telephone Management Corp. v. Goodyear Tire & Rubber Co.*, 32 F. Supp. 2d 960 (N.D. Ohio 1998) (stating that, in light of plaintiff and defendant having only a contractual relationship, plaintiff cannot rework its claim as a tort claim, and dismissing tort claim on summary judgment).

*Palco Linings,* 755 F. Supp. at 1280.  The Court added that "[a]bsent actual injury to person or property, one may not recover in tort for economic losses, regardless of whether contract or warranty remedies are available." *Id.* at 1280 (explaining *Lower Lake Dock Co. et. al. v. Messinger Baring Corporation et. al.,* 577 A.2d 631 (Pa. Super. 1990)).

Here, Hodell characterizes its losses as both direct and indirect costs resulting from the implementation of Business One and/or the integrated software solution.  In other words, Hodell is seeking purely economic damages as a consequence of the alleged faulty implementation of one or more components of the integrated system.  Hodell, however, is barred by economic loss rule from asserting against SAP America and SAP AG its first, second, and fourth causes of action, all of which sound in tort.  These claims should be dismissed.[11]

**C.      Hodell's Third Cause of Action Against SAP America and SAP AG Fails For Several Reasons.**

Hodell's third cause of action is for breach of contract.  Hodell alleges that SAP was a disclosed principal for whose benefit LSI contracted, and that SAP is liable to Hodell for any breach of the Development Agreement by LSI.  Hodell alleges that the defendants breached implied warranties of merchantability and of fitness for a particular purposes contained in the Development Agreement.  Hodell further alleges that the defendants otherwise breached their contracts with Hodell.  However, Hodell's third of cause of action fails for several reasons.  As to the Development Agreement, it fails because neither SAP America, nor SAP AG, are a party to, or are bound by, that agreement.  As to the License Agreement, it fails because the claims being asserted by Hodell (*i.e.,* a breach of the implied warranty of merchantability and of fitness

---

[11]  For the same reasons, even under Ohio law, Hodell's tort claims against SAP America and SAP AG are not actionable.  *See Corporex Development v. Construction Mngt, Inc.,* 835 N.E.2d 701, 704 (Ohio 2005) (stating that under Ohio law, the economic loss rule precludes recovery in tort for purely economic losses); *see also Pavlovich v. National City Bank,* 435 F.3d 560 (6th Cir. 2006) (same).

for particular purpose) were expressly disclaimed by Hodell.  In any event, Hodell's third of

cause of action fails as to SAP AG because SAP AG is simply not bound by either of the

contracts at issue, as SAP AG is not a party to them.

1.  **Any And All Claims That SAP America Or SAP AG Breached The Development Agreement Fail As A Matter Of Law Because Neither SAP America Nor SAP AG Are A Party To That Agreement, Nor Are They Bound By It.**

As a threshold matter, neither SAP America nor SAP AG is a party to the Development

Agreement.  Indeed, Development Agreement clearly states, at the top of the first page, that it is

an agreement between only Hodell and LSI.  Complaint, Ex. A.  Moreover, nowhere within the

plain language of that agreement is it contemplated that SAP is a party.  Simply put, the

Development Agreement is not contract between Hodell and SAP.  Thus, Hodell's breach of

contract claim fails.  *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999)

(stating that a breach of contract claim requires the existence of a contract).[12]

To the extent that Hodell's claim is based on allegations that SAP America and/or SAP

AG are bound to the Development Agreement because LSI acted as SAP's agent, its claim fails

not only because of the complaint's utter lack of any factual allegations to support this bare legal

assertion, but because Hodell's bald "agency" allegations are contradicted by the clear and

unambiguous language in the License Agreement, which expressly states:

> *Licensee [Hodell]* acknowledges and agrees that *the SAP Reseller [LSI]* through which Licensee has arranged for the procurement of this Agreement or from which Licensee receives any services related to the Software is *not the agent of SAP*.

---

[12]  Ohio law is essentially the same.  *See Johnson v. Monsanto*, No. 11-02-02, 2002 WL 2030889, at *2 (Ohio Ct. App. Sept. 6, 2002) (stating that "[i]In Ohio, damages are recoverable for breach of implied warranties only if there is privity of contract between the parties."); *see also Lawyers Cooperative Publishing Co. v. Muething*, 65 Ohio St. 3d 273, 276 (Ohio 1992) (stating that "[a]bsent a contractual relationship between the plaintiff and defendant, an action based on contract for breach of warranty does not exist." ).

Ex. A (License Agreement, § 4.1) (emphasis added).

Thus, as matter of law, neither SAP America nor SAP AG can be liable to Hodell for breach of the Development Agreement.

## 2. Hodell's Third Cause of Action Against SAP America Is Barred By The License Agreement's Provision Disclaiming Implied Warranties.

In its third cause of action, Hodell claims that the defendants breached implied warranties of merchantability and of fitness for a particular purpose.  As to SAP America, the Court is presented with a commercial contract between commercial entities involving a license to use computer software, which is governed by the Uniform Commercial Code (the "U.C.C."). *Advent Systems v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991).

In this case, Hodell disclaimed all such warranties it alleges were breached by SAP America.  Hodell did so when it entered into the License Agreement, which states:

> 7.1    Warranty.  SAP warrants that the Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery.  The warranty shall not apply:  (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database.  SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.

> 7.2    Express Disclaimer.  SAP AND ITS LICENSORS DISCLAIM ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT TO THE EXTENT THAT ANY WARRANTIES IMPLIED BY LAW CANNOT BE VALIDLY WAIVED.

Ex. A (License Agreement, § 7.1-7.2).

- 17 -

These disclaimers are permissible and enforceable under the U.C.C. *See* 13 Pa. C.S.A. § 2316(b) (stating that to exclude or modify an implied warranty of merchantability, the language must mention merchantability and be conspicuous, and to exclude or modify an implied warranty of fitness, the exclusion must be by a writing and conspicuous).[13] Courts enforce warranty disclaimers where the statutory requirements are satisfied. *See, e.g., Moscatiello v. Pittsburgh Contr. Equip.*, 595 A.2d 1190, 1193 (1991) (stating that exclusionary language that mentions "merchantability" and is conspicuous is enforceable).

Here, the warranty disclaiming merchantability clearly refers to "merchantability." Further, both the disclaimers of any implied warranty of merchantability and of fitness for a particular purposes are conspicuous. Indeed, they appear in all capital letters and under a separate heading. Moreover, these disclaimers appear in a commercial contract between sophisticated parties who, as a matter of law, understood the import of such disclaimer language.[14] Accordingly, Hodell expressly disclaimed the warranties it now alleges SAP America breached. Hodell's third cause of action against SAP America must be dismissed.[15]

**D.** **Hodell's First, Second, Third, And Fourth Causes Of Action Against SAP America Should Be Dismissed Because Hodell Waived Its Right To Seek The Damages Being Sought In This Action.**

---

[13] By way of example, the U.C.C. states that a disclaimer of implied warranties of fitness is sufficient if it states that "[t]here are no warranties which extend beyond the description on the face hereof." 13 Pa. C.S.A. § 2316(b).

[14] To conclude, as a matter of law, that Hodell is a sophisticated commercial party, the Court need not look any further than Hodell's own Complaint, at ¶¶ 9-11 (alleging that, among other things, Hodell has offices or warehouses in seven states, employs approximately 161 people (in 2004), and that it distributes 160,000-170,000 products).

[15] Even under Ohio law, Hodell's breach of contract claim against SAP America is barred, as the License Agreement's warranty disclaimer provision is enforceable. *See Thomas v. Micro Ctr.*, 875 N.E.2d 108 (Ohio App. 8 Dist. 2007) (stating that, to be effective under R.C. 1302.29(B) (*i.e.*, Ohio's Uniform Commercial Code provision pertaining to the exclusion or modification of warranties), the exclusion of a warranty must mention merchantability, and in the case of fitness for a particular purpose, must be conspicuous).

In its first and second causes of action, Hodell alleges that the defendants made misrepresentations, which Hodell relied on in, and/or induced Hodell to, enter into a contract. In its third cause of action, Hodell alleges that the defendants breached a contract. In its fourth cause of action, Hodell alleges that the defendants breached a duty of ordinary care to Hodell because Business One failed to achieve basic and essential functionality. Under all of these causes of action, Hodell seeks only consequential and/or punitive damages. However, by way of the License Agreement, as to SAP America, Hodell expressly limited its remedies and SAP America's liability to contractual damages. In other words, Hodell expressly waived its right to seek the damages it now seeks against SAP America. Hodell, therefore, cannot recover any of the damages it seeks against SAP America under any of its four causes of actions. Accordingly, these causes of action against SAP America should be dismissed.

Under Pennsylvania law, parties to a commercial transaction are free to allocate among themselves the risks associated with non-performance or disappointed expectations. *Valhal Corp. v. Sullivan Associates, Inc.*, 44 F.3d 195, 203 (3d Cir. 1995). The U.C.C. specifically permits parties to agree to limit a buyer's remedies to repair or replacement or return of the purchase price. 13 Pa. C.S.A. § 2719(a)(1). In addition, the U.C.C. specifically permits the parties to exclude consequential damages within the contract. 13 Pa. C.S.A. § 2719(c). Applying these provisions of the U.C.C., courts have routinely enforced limitation of liability clauses appearing in contracts between commercial entities. *See, e.g., Valhal, infra*, 44 F.3d 203 (stating that limitation of liability clauses are routinely enforced under the U.C.C. when contained in sales contracts negotiated between sophisticated parties and when no personal injury or property damage is involved); *Borden, Inc. v. Advent Ink Company*, 701 A.2d 255, 262 (Pa. Super. 1997) (stating same).

- 19 -

In the instant case, the License Agreement expressly states:

> 9.1    Licensee's Remedies.  *Licensee's sole and exclusive remedies for any damages or loss in any way connected with the Software* or Services furnished by SAP and its licensors, whether due to SAP's negligence or breach of any other duty, *shall be*, at SAP's option:  *(i) to bring the performance of the Software into substantial compliance with the functional specifications; (ii) re-performance of Services; or (iii) return of an appropriate portion of any payment made by Licensee to its SAP Reseller with respect to the applicable portion of the Software or Services.*
>
> ***
>
> 9.3    Limitation of Liability.  ANYTHING TO THE CONTRARY HEREIN NOTWITHSTANDING, EXCEPT FOR DAMAGES RESULTING FROM UNAUTHORIZED USE OR DISCLOSURE OF PROPRIETARY INFORMATION, *UNDER NO CIRCUMSTANCES SHALL SAP, ITS LICENSORS OR LICENSEE BE LIABLE TO EACH OTHER OR ANY OTHER PERSON OR ENTITY FOR AN AMOUNT OF DAMAGES IN EXCESS OF THE SOFTWARE LICENSE FEES PAID BY LICENSEE FOR THE SOFTWARE OR BE LIABLE IN ANY AMOUNT FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR INDIRECT DAMAGES, LOSS OF GOOD WILL OR BUSINESS PROFITS, WORK STOPPAGE, DATA LOSS, COMPUTER FAILURE OR MALFUNCTION, OR EXEMPLARY OR PUNITIVE DAMAGES.*

Ex. A (License Agreement, § 9.1 and 9.3) (emphasis added).  The above language is clear and unambiguous.  Thus, in accordance with well-settled principles of contract construction, it provides that, as a matter of law, Hodell's *sole and exclusive remedy* for damages in any way connected with Business One is replacement or return of the purchase price.  However, in its complaint, Hodell does not sue for replacement of the software or return of the purchase price.  Rather, Hodell claims it incurred damages for direct costs in the amount of $843,152.62, and indirect costs in the amount of $456,000, as a result of the alleged faulty implementation and/or functionality of Business One and/or the integrated software.  In addition to these consequential damages, Hodell, under its first and second causes of action, also seeks punitive damages, which

- 20 -

claims are directly contrary to the clear, unambiguous and enforceable language in the License Agreement. Hodell expressly waived its right to seek all of the damages it now seeks against SAP America. All of its causes of action against SAP America must, therefore, be dismissed.[16]

Even if the Court finds that Hodell has asserted one or more viable causes of action against SAP America, these provisions still preclude Hodell from seeking consequential and punitive damages. As such, if any of Hodell's causes of action against SAP America survive the instant motion, Hodell's claims for consequential and punitive damages should still be dismissed.

In addition, and in any event, Hodell's claims for *punitive* damages also fail as a matter of law because the complaint does not contain allegations sufficient to support a claim for punitive damages. As to SAP America, punitive damages are not recoverable in a contract action where, as here, a party alleges a breach of an implied warranty.[17]  *Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 402 (3d Cir. 2004). Similarly, as to SAP AG, even if one or more of Hodell's tort claims survive the instant motion, its claim for *punitive* damages still fails. Indeed, even in cases of fraud, an award of punitive damages must be based upon an additional finding that the fraud is aggravated by the existence of malice or ill will, or that the wrongdoing is particularly gross or egregious. *See Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).[18]

---

[16]  Even under Ohio law, the License Agreement's provisions limiting both Hodell's remedies and SAP America's liabilities are enforceable. *See Westfield Ins. Co. v. HULS Am., Inc.,* 714 N.E.2d 934 (Ohio App. 10 Dist., 06-09-1998), dismissed, appeal not allowed, 700 N.E.2d 877 (Ohio 1998) (stating that Ohio U.C.C. provides that an agreement may limit a buyer's remedies to the repair and/or replacement of nonconforming goods or parts, and stating that courts have held that where the limited remedy is expressly agreed to be exclusive, it is the sole remedy).

[17]  Similarly, under Ohio law, punitive damages are not recoverable in an action for breach of contract. *Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922).

[18]  Ohio law is essentially the same. *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.,* 12 Ohio St. 3d 241 (Oh. 1984). Punitive damages are to be awarded in cases of fraud only when the fraud is shown to be malicious, wanton or gross. *Logsdon v. Graham Ford Co.,* 54 Ohio St. 2d 336 (Oh. 1978). Here, the complaint is wholly devoid of any factual allegations that either SAP entity acted with "actual malice," which has been characterized, under Ohio law, by "hatred" or "ill-will." *See Geiger v. Westfield Nat'l. Ins. Co.,* slip op., 2008 WL 5412490 (Ohio App. 1 Dist., 2008).

(continued...)

**E.**   **Hodell's First and Second Cause of Action Must Be Dismissed, As Hodell Has Not Stated A Claim For Fraud Against SAP America Or SAP AG With The Requisite Particularity.**

In its first cause of action for fraudulent inducement and its second cause of action for fraud, Hodell alleges that the defendants made misrepresentations, which Hodell relied on in, and/or induced Hodell to, enter into a contract. Hodell, however, has failed to plead these claims with particularity pursuant to Fed. R. Civ. P. 9(b). Both causes of action must be dismissed.

In order to plead a claim for fraud, a plaintiff must plead with particularity that there was: "(1) a false representation of a material fact; (2) knowledge of or belief in its falsity by the person making it; (3) belief in its truth by the person to whom it is made; (4) intent that it should be acted upon; and (5) detrimental reliance upon it by the person claiming to have been deceived." *In re Meridia Prods. Liability Lit.*, 328 F. Supp. 2d 791, 819 (N.D. Ohio 2004). At a minimum, a plaintiff must allege the time, place, and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the defendant, and the resulting injury. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). The allegations must also be made with a sufficient factual basis to support an inference that they were knowingly made. *Id.* at 162.

Here, Hodell alleges that LSI misrepresented that it was an expert in providing IT solutions to the fastener industry and that SAP chose to partner with LSI to develop the specific requirements to bring to market a turnkey solution to this industry.[19] Hodell alleges that the defendants misrepresented that Business One: (i) provided robust and fully integrated financial

---

(..continued)

[19]   Although Hodell further alleges that the "specific requirements" included, but were not limited to, enhanced accounts receivable functionality, enhanced accounts payable functionality, enhanced inventory control functionality, enhanced sales orders functionality, and enhanced purchase orders functionality, Hodell does not allege any particular misrepresentations as to any of these "specific requirements."

and sales management capabilities; (ii) provided managers on-demand access to critical real time information; (iii) was the one solution designed for key decision makers that helped them do it all, (iv) was an affordable, powerful business solution that allowed everyone in the organization to get the information they need – in real time; and (v) provided the ability to manage practically all of its core operations.  Complaint at ¶¶ 36-42 (alleging that the representations pled in the complaint at ¶¶ 16-22 were misrepresentations).

Hodell's fraud allegations, however, are deficient.  Hodell cannot allege which of *the defendants* made any of the alleged misrepresentations, or to whom they were made.  Nor does Hodell allege any of the surrounding circumstances of *SAP's* purported fraud or put any of the purportedly fraudulent statements into context (*i.e.*, when, where or how they were made).[20] Hodell's fraud claims are simply not pled with the requisite particularity.  *See Lucas-Cooper v. Palmetto GBA*, Case No. 1:05-cv-00959, 2006 U.S. Dist. LEXIS 63783 (N.D. Ohio, Sep. 7, 2006) (finding that plaintiff failed to plead fraud with particularity when plaintiff failed to specifically state time and place of, and who made, the alleged misrepresentation).

Additionally, Hodell's complaint contains only conclusory allegations that it justifiably relied on the alleged representations and, for this reason as well, it has failed to plead its fraud claims with the requisite particularity.  *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006) (stating that conclusory statements of detrimental reliance do not satisfy the particularity requirement).

---

[20] The only instances in which Hodell alleges that *SAP* made any statements regarding Business One involve statements contained in marketing materials and a 2003 annual report.  Even those allegations, however, fail to allege when Hodell had knowledge of the statements, or even that it did have knowledge of them at or near the time they were made.

## CONCLUSION

For the foregoing reasons, SAP respectfully requests that Hodell's complaint against SAP be dismissed with prejudice.  In the alternative, to the extent the Court finds that one or more of Hodell's causes of action survive the instant motion to dismiss, SAP respectfully requests that Hodell's claims for consequential damages against SAP America be dismissed and Hodell's claims for punitive damages against SAP be dismissed.

Dated: March 12, 2009

By:      /s/Leo  M. Spellacy, Jr., Esq.
         Hugh E. McKay, Esq. (0023017)
         Leo M. Spellacy, Jr., Esq. (0067304)
         Charles W. Zepp., Esq. (0068129)
         PORTER WRIGHT MORRIS & ARTHUR LLP
         925 Euclid Avenue, Suite 1700
         Cleveland, OH  44115-1483
         (216) 443-9000 / Fax (216) 443-9011
         lspellacy@porterwright.com

         Attorneys for Defendants,
         SAP America, Inc. and SAP AG

Of Counsel:

Michael J. Miller
Thomas S. Downie
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile:  (215) 988-2757

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC.<br><br>        Plaintiff,<br><br>    v.<br><br>SAP AMERICA, INC., et al.<br><br>        Defendants. | CASE NO. 1:08 CV 2755<br><br>JUDGE WELLS<br><br>**CERTIFICATION PURSUANT TO LOCAL RULE 7.1** |

I, Leo M. Spellacy, Jr., certify that the foregoing Brief adheres to the page limitation set in the Court's March 11, 2009 Order granting Defendants SAP America, Inc. and SAP AG Motion for leave to exceed the page limit to not more than 25 pages.  This case has not been assigned to a track.

Respectfully submitted,


*/s/Leo M. Spellacy, Jr., Esq.*
Hugh E. McKay, Esq. (0023017)
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH  44115-1483
(216) 443-9000 / Fax (216) 443-9011
lspellacy@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2009 a copy of foregoing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ Leo M. Spellacy, Jr.
One of the Attorneys for Defendants SAP America,
Inc. and SAP AG