IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF MOTION OF** |
| SAP AMERICA, INC., et al. | ) | **DEFENDANTS SAP AMERICA,** |
| | ) | **INC. AND SAP AG TO DISMISS** |
| Defendants. | ) | **PLAINTIFF'S AMENDED** |
| | ) | **COMPLAINT** |

**MEMORANDUM OF LAW OF DEFENDANTS
SAP AMERICA, INC. AND SAP AG IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**Table of Contents**

Table of Authorities .....................................................................................i

Introduction ..............................................................................................1

Statement of Facts.......................................................................................2

Standard of Review......................................................................................7

Argument ..................................................................................................8

    A. Hodell's First, Second And Fifth Causes Of Action As To SAP America Are Barred
       By The Parol Evidence Rule And The Terms Of The License Agreement ..............8

    B. Hodell's First, Second, Fourth And Fifth Causes Of Action Against SAP
       America Are Barred By The Existence Of The License Agreement,
       Pursuant To The "Gist of The Action" Doctrine..........................................12

    C. Hodell's First, Second, Fourth And Fifth Causes Of Action Against
       SAP America and SAP AG Are Barred By The Economic Loss Rule.................15

    D. Hodell's Third Cause of Action Against SAP America And SAP AG Fails
       For Several Reasons.......................................................................17

         1. Any And All Claims That SAP America Or SAP AG Breached
           The Development Agreement Fail As A Matter Of Law Because
           Neither SAP America Nor SAP AG Is A Party To, Bound By, Or
           Liable Under, That Agreement.......................................................18

         2. Hodell's Third Cause of Action Against SAP America Is Barred
           By The Licensing Agreement's Provision Disclaiming Implied
           Warranties.............................................................................20

    E. Hodell's First, Second, Third, Fourth And Fifth Causes Of Action Against
       SAP America Should Be Dismissed Because Hodell Waived Its Right
       To Seek The Damages Being Sought In This Action.....................................21

    F. Hodell's First and Second Cause of Action Must Be Dismissed, As
       Hodell Has Not Stated A Claim For Fraud Against SAP America Or
       SAP AG With The Requisite Particularity................................................24

Conclusion................................................................................................25

**Table of Authorities**

<u>**Cases**</u>

*Advent Systems v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991)……………………………………..20

*Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329 (E.D. Pa. 2003)...13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………...……………..........8

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270 (Pa. 2005)…………..15,16,17

*Borden, Inc. v. Advent Ink Company*, 701 A.2d 255 (Pa. Super. 1997)……………………………22

*Burks v. Fed. Ins. Co.*, 883 A.2d 1086 (Pa. Super. 2005)....................…………………………..19

*Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*,
    123 F. Supp. 2d 826 (E.D. Pa. 2000)……………………...………………………………..13

*Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 466 N.E. 2d 883 (Oh. 1984)…..…….24

*Citicasters Co. v. Bricker & Eckler, L.L.P.*, 778 N.E.2d 663 (Ohio Ct. App. 2002)…..………...12

*Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993)………..………………………………………24

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999)……………………………18

*Corporex Development v. Construction Mngt*, Inc., 835 N.E.2d 701 (Ohio 2005)……………...17

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990)…………………………….....7

*Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996)………………………………….9,10

*Doe v. Blue Cross/Blue Shield of Ohio*, 607 N.E.2d 492 (Oh. App. 1992)…………………....17

*etoll, Inc. v. Elias/Savion Advertising*, Inc., 811 A.2d 10 (Pa. Super. 2002)………………........13

*Evans v. Pearson Enters.*, 434 F.3d 839 (6th Cir. 2006)………..…………………………………25

*Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849 (N.D. Ohio 2003)…………………15

*Factory Mkt., Inc. v. Schuller Int'l, Inc.*, 987 F. Supp. 387 (E.D. Pa.1997)……………………15

*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*,
    560 N.E.2d 206 (Ohio 1990)……………………………………………………………..17

*Galmish v. Cicchini*, 734 N.E.2d 782 (Ohio 2000)..................................................................12

*Geiger v. Westfield Nat'l. Ins. Co.*,
    No. C-080355, 2008 WL 5412490 (Ohio Ct. App. Dec. 31, 2008)........................…..24

*Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669...............…..19

*Grimm v. Washington Mut. Bank*, No. 08-0828,
    2008 WL 2858377 (W.D. Pa. July, 22, 2008)....................................................…..14

*Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212 (Ohio 1982)......................17

*Harrell v. Crystal* 611 N.E.2d 908 (Oh. Ct. App. 1992)...…..........................................17

*HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278 (Pa. 1995)....................…..8,9

*Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E. 2d 780 (Ohio 1988).........................…..19

*Hishon v. King & Spalding*, 467 U.S. 69 (1984).…......................................................…..7

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).............................................2

*Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*,
    1998 WL 88391 (E.D. Pa. Feb. 26,1998)....................................................…..9,15

*Hutchison v. Luddy*, 870 A.2d 766 (Pa. 2005)............................................................…..24

*In re Meridia Prods. Liability Lit.*, 328 F. Supp. 2d 791 (N.D. Ohio 2004).........................24

*Interwave Technology, Inc. v. Rockwell Automation, Inc.*,
    2005 WL 3605272 (E.D. Pa. Dec. 30, 2005)...................................................…...........9

*Johnson v. Monsanto*,
    No. 11-02-02, 2002 WL 2030889 (Ohio Ct. App. Sept. 6, 2002)……...................…..18

*Ketcham v. Miller*, 136 N.E. 145 (Ohio 1922)...…........................................................24

*Kilburn v. Becker* 573 N.E.2d 1226 (Oh. App. 1990)...................................................…..17

*Lawyers Cooperative Publishing Co. v.* Muething, 65 Ohio St. 3d 273 (Ohio 1992)…..........…..18

*Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716 (6th Cir. 1996)…..............................2,8,7

*Logsdon v. Graham Ford Co.*, 376 N.E.2d 1333 (Ohio 1978)…......................................…..24

*Lower Lake Dock Co., et. al. v. Messinger Baring Corporation, et. al.*,

       577 A.2d 631 (Pa. Super. 1990)............................................................16

*Lucas-Cooper v. Palmetto GBA,*
       Case No. 1:05-cv-00959, 2006 U.S. Dist. LEXIS 63783 (N.D. Ohio Sep. 7, 2006).......25

*Mack v. AAA Mid-Atlantic, Inc.* 511 F. Supp. 2d 539 (E.D. Pa. 2007)................................19

*Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir. 1987).....................................7,12

*Moscatiello v. Pittsburgh Contr. Equip.*, 595 A.2d 1190 (Pa. Super. 1991)...........................21

*New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*,
       564 A.2d 919 (Pa. Super. 1989)...........................................................15

*Nicolella v. Palmer*, 248 A.2d 20 (Pa. 1968)..........................................................9

*Owen J. Roberts School Dist. v. HTE, Inc.*, No. 02-7830,
       2003 WL 735098 (E.D. Pa. Feb. 28, 2003).................................................14

*Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1278 (M.D. Pa. 1990).........................15, 16

*Pavlovich v. National City Bank*, 435 F.3d 560 (6th Cir. 2006)........................................17

*Perpetual Fed. Sav. & Loan Ass'n. v. Porter & Peck, Inc.* 609 N.E.2d 1324 (Oh. App. 1992)...17

*Phico Ins. Co. v. Presbyterian Med. Serv.* Corp., 663 A.2d 753 (Pa. Super. 1995).................13

*Pittsburgh Constr. Co. v.* Griffith, 834 A.2d 572 (Pa. Super. 2003)..................................13

*Procter & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270 (S.D. Ohio 1996)...............8

*Reardon v. Allegheny* Coll., 926 A.2d 477 (Pa. Super. 2007)....................................13,14

*Redevelopment Auth. of Cambria County v. Int'l Ins.* Co.,
       685 A.2d 581 (Pa. Super. 1996).........................................................13

*Roth Steel Products v. Sharon Steel* Corp., 705 F.2d 134 (6th Cir. 1983)...........................7

*Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992)........................................................19

*1726 Cherry St. P'ship v. Bell Atl. Props, Inc.*, 653 A.2d 663 (Pa. Super. 1995)..................10

*Sims v. Mercy Hospital of Monore*, 451 F.2d 171 (6th Cir. 1971).....................................7

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
       40 F. Supp. 2d 644, 651 (W.D. Pa.1999)................................................14

*Telephone Management Corp. v. Goodyear Tire & Rubber* Co.,
    32 F. Supp. 2d 960 (N.D. Ohio 1998)...........................................................15

*Thomas v. Micro* Ctr., 875 N.E.2d 108 (Ohio Ct. App. 2007)....................................21

*Thorsen v. Iron and Glass Bank*, 476 A.2d 928 (Pa. Super. 1984)..................................24

*Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa. 2007)....................................10,11

*United States Claims, Inc. v. Saffren & Weinberg, LLP*
    No. 07-0543, 2007 WL 4225536 (E.D. Pa. Nov. 29, 2007)..............................14,15

*Valhal Corp. v. Sullivan Associates,* Inc., 44 F.3d 195
    (3d Cir. 1995)..........................................................................................21,22

*Westfield Ins. Co. v. HULS Am.,* Inc.,
    714 N.E.2d 934 (Ohio App. 10 Dist., 06-09-1998),
    *dismissed, appeal not allowed,* 700 N.E.2d 877
    (Ohio 1998)..............................................................................................23

*Williams v. Hilton Group PLC*, 93 F. App'x. 384 (3d Cir. 2004)....................................13

*Yocca v. Pittsburgh Steelers Sports.* Inc., 854 A.2d 425 (Pa. 2004)..................................10

**Statutes**

Fed. R. Civ. P. 9(b)....................................................................................24

Fed. R. Civ. P. 12(b)(6)................................................................................7,8

13 Pa. C.S.A. § 2316(b)................................................................................20,21

13 Pa. C.S.A. § 2719....................................................................................22

R.C. 1302.29(B).........................................................................................21

**Other Authorities**

Restatement (Second) of Contracts § 302................................................................19,20

Restatement (Second) of Torts § 552...................................................................16,17

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss Plaintiff, Hodell-Natco Industries, Inc.'s amended complaint against Defendants SAP America, Inc. and SAP AG pursuant Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim against SAP America and/or SAP AG upon which relief can be granted.

## SUMMARY OF ARGUMENTS PRESENTED

Plaintiff alleges claims of (i) fraudulent inducement; (ii) fraud; (iii) breach of contract; (iv) negligence; and (v) negligent misrepresentation.  Plaintiff is seeking purely economic damages resulting from the defendants' alleged failure to properly develop and/or implement an integrated business management software solution, and/or the software solution's failure to meet Plaintiff's functionality needs.  In addition, under its first and second causes of action, for fraud, Plaintiff seeks punitive damages.  Plaintiff's claims fail for at least the following reasons:

- Plaintiff's claims of fraudulent inducement, fraud and negligent misrepresentation, all of which are based on the defendants' alleged pre-contractual statements, are barred as to SAP America due to the existence of the fully integrated contract between Plaintiff and SAP America and the parol evidence rule.

- Plaintiff's tort claims (i.e., its claims of fraudulent inducement, fraud, negligence and negligent misrepresentation) against SAP America are barred due to the existence of the agreement between Plaintiff and SAP America, pursuant to the "gist of the action" doctrine.

- Plaintiff's tort claims (i.e., its claims of fraudulent inducement, fraud, negligence and negligent misrepresentation) against SAP America and SAP AG are barred by the economic loss rule.

- Plaintiff's claims for breach of implied warranties of merchantability and of fitness for a particular purpose against SAP America is barred because, by way of the contract, Plaintiff expressly disclaimed them.  As to SAP AG, Plaintiff's breach of contract claim fails because SAP AG is not a party to, bound by, or liable under, the contract.

- Plaintiff's claims against SAP America must be dismissed because Plaintiff, in its contract with SAP America, expressly waived its right to seek the very damages it now seeks in this action.  In the alternative, the contract limits Plaintiff's damages to the price of the contract and, thus, Plaintiff should be limited to those damages in this action.  In addition, and in any event, Plaintiff's claims for punitive damages against SAP America and SAP AG fail as a matter of law.

- Plaintiff's fraud claims fail because they have not been pled with the requisite particularity.

**INTRODUCTION**

Hodell-Natco Industries, Inc. ("Hodell") is a distributor in the fastener and chain industry.  In 2004, Hodell entered into a software development agreement (the "Development Agreement") with LSi-Lowery Systems, Inc. ("Lowery") and Lowery's subsidiary, The IBIS Group ("IBIS") (collectively, "LSI").  Pursuant to the Development Agreement, LSI was to develop its own software (an application known as In-Flight) and then integrate and/or synchronize that with certain other software applications, including SAP Business One and Radio Beacon. [1]

In 2005, consistent with the Development Agreement, Hodell entered into a software license and maintenance agreement (the "License Agreement") with SAP America, Inc. ("SAP America").  The License Agreement provided Hodell with the right to use the Business One software.  However, in exchange, Hodell agreed to, among other things, various terms that limited its ability to pursue future claims against SAP America.

In its amended complaint, Hodell alleges that the Business One software was falsely represented to Hodell as suitable for its needs and that the installation was a failure.  Based on these allegations, Hodell purports to assert causes of action against all of the defendants, including SAP America and SAP AG (hereinafter occasionally referred to collectively as "SAP"), for (1) fraudulent inducement, (2) fraud, (3) breach of contract, (4) negligence, and (5) negligent misrepresentation.  Significantly, however, Hodell failed to include in its amended complaint any specific allegations of representations by SAP directly to Hodell with respect to

---

[1]  LSI and Hodell intended to sell the resulting software solution to other companies in the fastener industry.

Business One's integration with In-Flight and Radio Beacon.[2]  Additionally, while Hodell's amended complaint contains bare legal assertions that SAP fraudulently and/or negligently induced Hodell into entering into the License Agreement, Hodell failed to include any allegations explaining how the existence of, and the language in, the License Agreement do not preclude Hodell's claims against SAP.

Hodell's claims against SAP fail as a matter of law, for at least the following reasons:

- Hodell's first, second and fifth causes of action against SAP America are barred by the parol evidence rule and the integration clause in the License Agreement.

- Hodell's first, second, fourth and fifth causes of action against SAP America and/or SAP AG are barred as a result of the existence of the License Agreement, pursuant to the "gist of the action" doctrine, and/or by the economic loss rule.

- Hodell, in its third cause of action, alleges that SAP America breached implied warranties of merchantability and of fitness for a particular purpose.  These claims, however, are barred because Hodell, in the License Agreement, expressly disclaimed them.  As to SAP AG, Hodell's third cause of action fails because SAP AG is not a party to, bound by, or liable under the License Agreement.

- Hodell cannot recover the damages being sought against SAP America.  The License Agreement contains an enforceable "limitation of liability" provision, whereby Hodell expressly waived its right to seek, against SAP America, the very damages it now seeks.  In the alternative, the "limitation of liability" provision limits Hodell's damages to the price of the contract.  In any event, Hodell's claims for punitive damages against SAP America and SAP AG must be dismissed.

## STATEMENT OF FACTS

The facts relevant to this motion are as follows:[3]

---

[2]  Although not relevant for the purposes of this motion, these allegations are absent because, prior to the Development Agreement and the License Agreement, SAP did not make any affirmative representations directly to Hodell with respect to Business One's integration with the newly developed In-Flight and the existing Radio Beacon software.  Hodell's interactions in this regard were with LSI.

[3]  For purposes of a motion to dismiss, all properly pled facts in the complaint are accepted as true.  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).  However, by restating these facts herein, SAP is not conceding the truth of these facts.  Indeed, in the event this case is not dismissed pursuant to this motion, SAP will contest many of the facts set forth in Hodell's amended complaint.

- Hodell is a full-service fastener and chain product wholesaler. Amended Complaint, ¶ 9.

- In 2003, Hodell commenced a search for a software solution that would provide integrated financial and sales management capabilities for its growing business. It was important to Hodell that it deal with a major software vendor with a high level of expertise and proven product support provided by expert partners. Amended Complaint, ¶ 16. In conducting its search for a vendor, Hodell expressly communicated its user capacity needs. Amended Complaint, ¶ 17.

- During its search, in 2003, Hodell received marketing materials about Business One, including materials from biz2bizmarketing.com and American Express Tax and Business Services, Inc. ("American Express").[4] The marketing materials, among other things, described Business One as being a revolutionary software solution, robust and fully integrated, and designed to meet the needs of small to midsize wholesale distributors in the United States. The promotional literature also touted the use of Business One on a global scale, as it described Business One as being used by thousands of businesses in 15 countries. It also referred to the successful implementation of Business One in 800 businesses globally, with maximum implementation time being four weeks. The materials further explained that Business One is delivered to customers by highly qualified resellers and is accompanied by a high level of customer support through SAP's global resources. The materials also pronounced SAP as the largest software vendor in the world, with 30 years of experience and 12 million users worldwide – a world leader in providing business software solutions. Amended Complaint, ¶¶ 18, 19, 21.

- On or about October 20, 2003, Hodell participated in a webinar and demonstration regarding Business One, presented by SAP, American Express and IBM. The suitability of Business One for midsize distributors was discussed. Amended Complaint, ¶ 22.

- On November 3, 2003, Hodell learned from American Express that LSI, an authorized reseller of Business One software, would be partnering with American Express. Amended Complaint, ¶¶ 14, 23.

- In late 2003, LSI represented to Hodell that LSI was an expert in providing IT solutions to the fastener industry and that development of the solution in question would involve the integration by LSI of other software with Business One, including the In-Flight Enterprise application (which was to be developed by LSI), and would involve

---

[4] Hodell alleges that American Express acted as SAP's agent in making certain marketing representations regarding Business One. Amended Complaint, ¶ 20. This "agency" allegation, however, is a bare legal assertion, unsupported by any factual allegations. Thus, the Court should not accept it as true. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (stating that bare assertions of legal conclusions are not sufficient to survive a motion to dismiss).

synchronization with the Radio Beacon application (which was being currently utilized by Hodell).  Amended Complaint, ¶ 24.[5]

- On December 3, 2003, Hodell met with, or otherwise communicated with, representatives from American Express.  It was represented to Hodell that Business One was suitable for midsize businesses with as many as 500 employees.  Amended Complaint, ¶ 25.  On December 19, 2003, during a telephone conversation with representatives from American Express, the suitability of Business One was discussed and Hodell felt assured that Business One was capable of serving its business needs.  Amended Complaint, ¶ 26.

- Hodell was told by "the defendants" that Business One was (i) an affordable and easy to implement solution designed from the ground up to address the needs of small and midsize businesses; (ii) capable of providing robust and fully integrated financial and sales management capabilities, and on-demand access to critical real time information; (iii) the one solution designed for key decision makers that helped them do it all – make more profitable decisions, grow their businesses, and stay ahead of their competition; (iv) a powerful business solution that allowed everyone in the organization to get the information they needed – in real time; and (v) capable of providing it with the ability to manage practically all of its core operations.  Amended Complaint, ¶ 28.

- On December 20, 2004, the Development Agreement was executed between LSI and Hodell.  Amended Complaint, ¶ 30 and Ex. D.

- On December 20, 2004, Hodell issued a purchase order to LSI for an 80 user software license for Business One.  Amended Complaint, ¶ 31 and Ex. E.  Hodell subsequently purchased an additional 40 user software license in or about December 2005.  Amended Complaint, ¶ 46.

- Essential to Hodell's decision to implement Business One was the representation that Business One would support the many users employed by Hodell.  It was understood that Hodell would be purchasing up to an additional 220 licenses beyond the 80 initially purchased.  Hodell anticipated a need for 300 Business One user licenses during a ten year period.  Amended Complaint, ¶ 34.

- The defendants represented to the international business community that Business One could be used by hundreds of users.  In its 2003 annual report, for example, SAP stated:

    SAP Business One is an easy-to-use business automation software solution that enables emerging businesses to streamline their operational and managerial processes and gain better control of their businesses.  It supports standard business processes such as financial management, warehouse management, purchasing, inventory management, payment, and sales force

---

[5]  LSI also represented to Hodell that LSI was seeking to meet the specific requirements of this vertical marketplace (i.e., the fastener industry) and to bring to market a turn key solution for this industry.  Amended Complaint, ¶ 24.

automation.  … SAP Business One targets organizations with … five to 500 employees…."

Amended Complaint, ¶ 36.

- The defendants represented that Business One could be used by as many as 250 users and that Business One was suitable to Hodell's current needs and at least ten years of future growth needs.  Amended Complaint, ¶ 37.

- Hodell justifiably relied on the defendants' representations.  Amended Complaint, ¶ 40.

- The representations of the defendants were made falsely – either with knowledge of their falsity or utter disregard and recklessness as to falsity – with an intent to mislead Hodell. Amended Complaint, ¶ 41.

- On December 23, 2005, as contemplated by the Development Agreement, Hodell and SAP America entered into the License Agreement.  Amended Complaint, Ex. G.

- The License Agreement provided Hodell with the right to use Business One.  Amended Complaint, Ex. G.

- The License Agreement contained the following provision regarding warranties:

    PERFORMANCE WARRANTY/MAINTENANCE

    7.1  Warranty.  SAP warrants that the Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery.  The warranty shall not apply:  (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database.  SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.

    7.2  Express Disclaimer.  SAP AND ITS LICENSORS DISCLAIM ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT TO THE EXTENT THAT ANY WARRANTIES IMPLIED BY LAW CANNOT BE VALIDLY WAIVED.

Amended Complaint, Ex. G (License Agreement, §§ 7.1, 7.2).

- The License Agreement contained the following provision, which limits Hodell's remedies and SAP America's liability under the contract:

LIMITATIONS OF LIABILITY

9.1 Licensee's Remedies.  Licensee's sole and exclusive remedies for any damages or loss in any way connected with the Software or Services furnished by SAP and its licensors, whether due to SAP's negligence or breach of any other duty, shall be, at SAP's option:  (i) to bring the performance of the Software into substantial compliance with the functional specifications; (ii) re-performance of Services; or (iii) return of an appropriate portion of any payment made by Licensee to its SAP Reseller with respect to the applicable portion of the Software or Services.

***

9.3 Limitation of Liability.  ANYTHING TO THE CONTRARY HEREIN NOTWITHSTANDING, EXCEPT FOR DAMAGES RESULTING FROM UNAUTHORIZED USE OR DISCLOSURE OF PROPRIETARY INFORMATION, UNDER NO CIRCUMSTANCES SHALL SAP, ITS LICENSORS OR LICENSEE BE LIABLE TO EACH OTHER OR ANY OTHER PERSON OR ENTITY FOR AN AMOUNT OF DAMAGES IN EXCESS OF THE SOFTWARE LICENSE FEES PAID BY LICENSEE FOR THE SOFTWARE OR BE LIABLE IN ANY AMOUNT FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR INDIRECT DAMAGES, LOSS OF GOOD WILL OR BUSINESS PROFITS, WORK STOPPAGE, DATA LOSS, COMPUTER FAILURE OR MALFUNCTION, OR EXEMPLARY OR PUNITIVE DAMAGES.

Amended Complaint, Ex. G (License Agreement, §§ 9.1, 9.3).

- The License Agreement stated that it "shall be governed by and construed under the Commonwealth of Pennsylvania law without reference to its conflicts of law principles." Amended Complaint, Ex. G (License Agreement, § 11.6).

- The License Agreement contained an integration clause, which stated "[t]his Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee, and all previous representations, discussions, and writings are merged in, and superseded by, this Agreement.  This Agreement may be modified only by a writing signed by both parties.  This Agreement and each Appendix hereto shall prevail over any additional, conflicting, or inconsistent terms and conditions which may appear on any purchase order or other document furnished by Licensee to SAP."  Amended Complaint, Ex. G (License Agreement, § 11.9).

- Although the complaint alleges that LSI was an agent of SAP, the License Agreement expressly states that  "[Hodell] acknowledges and agrees that [LSI]…is not the agent of SAP."  Amended Complaint, Ex. G (License Agreement, § 4.1).

- Hodell encountered many problems during the implementation of the integrated software solution (i.e., In-Flight, Business One and Radio Beacon), including, among other things, slow response times, certain errors and failures, and incorrect processes. Amended Complaint, ¶ 49.

- On April 25, 2007, LSI sent an e-mail to Hodell informing Hodell that at the early stages of Business One the number of users most often quoted was 250, but that Hodell was pushing the upper limit with 120. Amended Complaint, ¶ 50. On September 6, 2007, Hodell was told by LSI that by May of 2006, SAP had reduced the number of users Business One was capable of supporting to 50. Amended Complaint, ¶ 51

- Hodell and the defendants continued efforts to make Business One minimally functional until 2008 when Hodell concluded that the installation of Business One was a failure and that it needed to be replaced. Amended Complaint, ¶ 48.

- Hodell alleges it incurred economic damages in the form of "direct costs" and "indirect costs" as a result of the failed implementation of Business One and the integrated software. Amended Complaint, ¶¶ 53-54. Under its first and second causes of action (i.e., its fraud claims), Hodell also seeks punitive damages. Amended Complaint at Wherefore Clause on p. 26.

## **STANDARD OF REVIEW**

The Court may dismiss a cause of action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451 F.2d 171, 173 (6th Cir. 1971)). When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In other words, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Only well-pled facts are construed liberally in favor of the party opposing the motion. *Id.*

- 7 -

Further, a complaint must contain factual allegations sufficient "to raise a right to relief above

the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim

should be dismissed if it does not "contain either direct or inferential allegations respecting all

the material elements necessary to sustain recovery under some viable legal theory...." *Id.* at

1969 (internal citation omitted). Applying these standards to the instant case, the amended

complaint fails to state a single claim upon which relief can be granted against SAP.

Accordingly, this Court should dismiss Hodell's amended complaint against SAP in its entirety.

## ARGUMENT

A.  **Hodell's First, Second and Fifth Causes of Action As To SAP America Are Barred
    By The Parol Evidence Rule And The Terms Of The License Agreement.**

In its first cause of action for fraudulent inducement, in its second cause of action for

fraud, and in its fifth cause of action for negligent misrepresentation, Hodell alleges that the

defendants induced Hodell into entering a contract by making certain pre-contractual

misrepresentations concerning, among other things, the suitability and functionality of Business

One. These causes of action, which are based on pre-contractual statements, are barred by the

Pennsylvania parol evidence rule and by the terms of the fully integrated Licensing Agreement.[6]

*See HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278 (Pa. 1995) (holding that

where plaintiff's claims "relate to subjects that were specifically addressed in the written

---

[6]  SAP has analyzed the claims herein pursuant to Pennsylvania law. Pennsylvania is where SAP America maintains its principal place of business, and Hodell has alleged that SAP America and SAP AG acted in concert with one another. Amended Complaint, ¶ 4. Additionally, Hodell consented to the application of the law of Pennsylvania in its only contract (i.e., the License Agreement) with SAP America. Amended Complaint, Exhibit G (License Agreement, § 11.6). Such governing law clauses are enforced and have been broadly construed under the choice of law rules of this jurisdiction (Ohio). *See, e.g., Procter & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270 (S.D. Ohio 1996) (stating that where contract contained clause that it would be "governed by, and construed and enforced in accordance with, the laws of the New York without reference to choice of law doctrine," inclusion of phrase "without reference to choice of law doctrine" foreclosed application of Ohio law and, thus, plaintiff's fraud claim under Ohio statute was dismissed). In any event, as explained further herein, the law of Ohio is essentially the same as that of Pennsylvania with respect to the issues addressed herein and compels an identical result.

- 8 -

contract" and where that contract contained an integration clause, fraudulent inducement claims were barred by parol evidence rule); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1299 (3d Cir. 1996) (applying Pennsylvania law and affirming conclusion of district court that integration clause "bars any attempt to modify the terms of the agreement by reference to pre-agreement discussions or negotiations--that is, by prohibiting parol evidence"); *Horizon Unlimited, Inc. v. Silva*, No. 97-7430, 1998 WL 88391 (E.D. Pa. Feb. 26, 1998) (dismissing fraud claims because the alleged misrepresentations were merged into the subsequent written contract); *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. 05-98, 2005 WL 3605272 (E.D. Pa. Dec. 30, 2005) (stating that integration clauses and contract terms that deal with the subject matter of the alleged fraudulent inducement frequently result in dismissal of fraudulent inducement claims)..

In *Dayhoff*, the United States Court of Appeals for the Third Circuit, in discussing the Pennsylvania Supreme Court's application of the parol evidence rule in *HCB Contractors* explained that the Supreme Court of Pennsylvania found that the parol evidence rule bars consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract. *Dayhoff*, 86 F.3d at 1300 (discussing *HCB Contractors*, 652 A.2d at 1279 (quoting *Nicolella v. Palmer*, 248 A.2d 20 (Pa. 1968)).

The Court in *Dayhoff* articulated an exception to the parol evidence rule, which is not applicable here. The Court explained that, while the parol evidence rule bars a claim for fraud in the inducement of a contract, it does not bar a claim for fraud in the execution of a contract. The Court stated as follows:

> Fraud in the execution applies to situations where parties agree to include certain terms in an agreement, but such terms are not included. Thus, the defrauded party is mistaken as to the contents of the physical document that it is signing. Parol evidence is admissible in such a case only to show that certain

- 9 -

> provisions were supposed to be in the agreement but were omitted because of
> fraud, accident, or mistake. Fraud in the inducement, on the other hand, does
> not involve terms omitted from an agreement, but rather allegations of oral
> representations on which the other party relied in entering into the agreement
> but which are contrary to the express terms of the agreement.

86 F.3d at 1300 (explaining *1726 Cherry St. P'ship v. Bell Atl. Props, Inc.*, 653 A.2d 663 (Pa.

Super. 1995)).

In *Yocca v. Pittsburgh Steelers Sports Inc.*, 854 A.2d 425 (Pa. 2004) and in *Toy v. Metro

Life Ins. Co.*, 928 A.2d 186 (Pa. 2007), the Pennsylvania Supreme Court further discussed the

parol evidence rule. In *Yocca*, the Court explained the "fraud in the execution" exception as

follows:

> Where the parties, without any fraud or mistake, have deliberately put their
> engagements in writing, the law declares the writing to be not only the best,
> but the only, evidence of their agreement. All preliminary negotiations,
> conversations and verbal agreements are merged in and superseded by the
> subsequent written contract... and unless fraud, accident or mistake be
> averred, the writing constitutes the agreement between the parties, and its
> terms and agreements cannot be added to nor subtracted from by parol
> evidence.

*Yocca*, 854 A.2d at 436. In *Toy*, the Court stated that the policy the parol evidence rule aims to

serve, which is to uphold the integrity of the written contract as the complete embodiment of the

parties' agreement, is not furthered by excluding evidence that the written agreement is not the

expression of the parties' true and complete contractual intent inasmuch as terms that were

agreed upon were omitted from the written document through fraud. *Toy*, 928 A.2d at 206 n.24.

By contrast, the Court in *Toy* explained, if a party were allowed to introduce representations

made prior to contract formation which contradicted the terms of the written contract by merely

alleging fraud in the inducement, such an exception could swallow the rule. *Id.* The Court

added that a party to a contract has the ability to protect itself from fraudulent inducements by

insisting they be made part of the written agreement, and refusing to contract if they are not. *Id.*

Here, Hodell has not alleged fraud in the execution of a contract.  Hodell has not alleged that SAP America led Hodell to sign an agreement the terms of which were unknown to Hodell. Hodell also has not alleged that it and SAP America agreed on contract terms and that SAP America led Hodell to believe that the terms were contained in the written agreement that was signed, when in fact SAP America had omitted the terms unbeknownst to Hodell.  Nor does Hodell allege it was defrauded into executing an agreement before it had a reasonable opportunity to obtain knowledge of its terms, or that the agreement it signed is a different document than the one Hodell was supposed to have signed.  Thus, the fraud exception to the parol evidence rule clearly does not apply.

In addition to being based entirely on pre-contractual representations, Hodell's first, second and fifth causes of action are addressed in the License Agreement.  The License Agreement expressly states:

> This Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee, and *all previous representations, discussions, and writings are merged in, and superseded by, this Agreement*.  This Agreement may be modified only by a writing signed by both parties.  This Agreement and each Appendix hereto shall prevail over any additional, conflicting, or inconsistent terms and conditions which may appear on any purchase order or other document furnished by Licensee to SAP.

Amended Complaint, Exhibit G (License Agreement, § 11.9) (emphasis added).  This agreement not only represents the complete agreement between the parties, but it supersedes all pre-contractual representations between them.  Moreover, the License Agreement addresses both the granting of Business One licenses to Hodell and the functionality of Business One.  Amended Complaint, Ex. G (License Agreement, §§ 2.1, 7.1)  Hodell is, thus, foreclosed by the parol evidence rule from advancing claims that are based entirely on pre-contractual statements

- 11 -

regarding these two subjects, and which seek to add terms to an otherwise fully integrated

contract.[7]

**B.**    **Hodell's First, Second, Fourth and Fifth Causes of Action Against SAP America Are Barred As A Result Of The Existence Of The License Agreement, Pursuant To The "Gist of The Action" Doctrine.**

In its first cause of action for fraudulent inducement, in its second cause of action for

fraud, and in its fifth cause of action for negligent misrepresentation, Hodell alleges that the

defendants made pre-contractual misrepresentations -- either fraudulently or negligently, -- which

Hodell relied upon in, and/or induced Hodell into, entering a contract.  In its fourth cause of

action for negligence, Hodell alleges that the defendants breached their duty of ordinary care to

Hodell because Business One failed to achieve basic and essential functionality.  Although these

causes of action are in tort, as to SAP America, these purported tort claims arise out of Hodell's

contractual relationship with SAP America under the License Agreement.  Indeed, as to SAP

America, the essence of Hodell's amended complaint is that Hodell is dissatisfied with Business

One and that Hodell's expectations under its *contract* with SAP America were not met.

---

[7] Even under Ohio law, Hodell's first, second and fifth causes of action are barred by the parol evidence rule. *See Galmish v. Cicchini*, 734 N.E.2d 782 (Ohio 2000) (stating that parol evidence rule may not be avoided by a fraud claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing); *Citicasters Co. v. Bricker & Eckler, L.L.P.*, 778 N.E.2d 663 (Ohio Ct. App. 2002) (dismissing claims that sought to contradict or vary the terms of the written agreements because such claims violated the parol evidence rule).  Hodell apparently recognized – presumably after reading SAP's motion to dismiss the original complaint – that the parol evidence rule bars these causes of action, given that, in its amended complaint, Hodell attempts to circumvent the rule by alleging that the defendants had no intention to perform their contractual obligations. *See* Amended Complaint, § 64.  Whereas under Pennsylvania law, "fraud in the execution" may be an exception to the rule, under Ohio law, where a party never intended to perform its contractual obligations, the parol evidence rule is not a bar to a fraud claim. *Galmish*, 734 N.E.2d at 791-92 (Ohio 2000).  However, the allegation here that SAP never intended to perform its contractual obligations is simply not supported by any of the remaining allegations.  To the contrary, it is contradicted by them.  Indeed, the remaining allegations in the amended complaint are that SAP America provided Hodell with the user licenses as promised, that the software was, in fact, implemented – albeit not to Hodell's satisfaction, -- and that implementation of the software involved the diligent efforts of Hodell and the defendants over the course of many months.  Thus, the Court should not accept Hodell's bald, unsupported allegation as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (stating that court need not accept unwarranted factual inferences as true in deciding motion to dismiss).

Importantly, however, the "gist of the action" doctrine precludes a plaintiff from re-casting breach of contract claims as tort claims, as Hodell has done here.[8] *Pittsburgh Constr. Co. v. Griffith,* 834 A.2d at 581. Tort claims are barred when they are simply another theory under which a plaintiff asserts a breach of contract claim, or when a plaintiff's success would be wholly dependent upon the terms of a contract. *etoll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d at 19. An action for breach of contract may not be converted to a tort action by merely alleging that a defendant acted negligently, recklessly, or intentionally, if the underlying claim is merely that a promise was not fulfilled. *Redevelopment Auth. of Cambria County v. Int'l Ins. Co.,* 685 A.2d 581, 590 (Pa. Super. 1996). The important distinction between contract and tort claims is that tort claims lie from a breach of a duty imposed as a matter of social policy, while contract claims arise from a breach of a duty imposed by mutual consent. *Phico Ins. Co. v. Presbyterian Med. Svcs. Corp.,* 663 A.2d 753, 757 (Pa. Super. 1995). If a party contends that a tort claim is essentially a breach of contract claim in disguise, Pennsylvania courts will apply the "gist of the action" test by reviewing the complaint to determine the source of the duty allegedly breached. *Caudill Seed,* 123 F. Supp. 2d at 833; *etoll,* 811 A.2d at 15. As the Superior Court of Pennsylvania stated in *Reardon v. Allegheny Coll.,* 926 A.2d 477 (Pa. Super. 2007), this test involves the determination of whether: (i) the tort claims arise solely from the contractual relationship between the parties; (ii) the alleged duties breached were grounded in the contract itself; (iii) any liability stems from the contract; or (iv) the tort claims essentially duplicate the

---

[8] Although the Pennsylvania Supreme Court has never adopted the "gist of the action" doctrine, the Pennsylvania Superior Court and the Court of Appeals for the Third Circuit, as well as a number of United States District Courts, have predicted that it will. *Williams v. Hilton Group PLC,* 93 F. App'x. 384, 385 (3d Cir. 2004); *Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 581 (Pa. Super. 2003); *etoll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14 (Pa. Super. 2002); *Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.,* 256 F. Supp. 2d 329 (E.D. Pa. 2003); *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.,* 123 F. Supp. 2d 826, 833 n. 11 (E.D. Pa. 2000).

- 13 -

breach of contract claim or whether the success of the tort claim is dependent on the success of the breach of contract claim. *Reardon*, 926 A.2d at 486.

Although in some limited circumstances, fraud in the inducement is an exception to the "gist of the action" doctrine, that is not the case here. *See Grimm v. Washington Mut. Bank*, No. 08-0828, 2008 WL 2858377 (W.D. Pa. July, 22, 2008) (discussing the limited "fraud in the inducement" exception to the "gist of the action" doctrine). Whether the exception applies to a claim based on negotiation-stage statements depends on whether the allegedly fraudulent statements become the basis for the contractual duties. *Owen J. Roberts School Dist. v. HTE, Inc.*, No. 02-7830, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003). Stated another way, in determining whether such a claim is an exception to the "gist of the action" doctrine, a court must determine whether the source of the duties breached were intertwined with obligations under the contract, or if they were merely collateral to the contract. *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,* 40 F. Supp. 2d 644, 651 (W.D. Pa.1999). Here, the allegations are that SAP America made numerous misrepresentations that Business One was suitable for Hodell, that Hodell agreed to license software from SAP America that would be suitable for it, and that SAP America failed to deliver suitable software. The duties imposed on SAP America arise solely out the License Agreement. None arise from a duty imposed by social policy and none are collateral to that contract. Indeed, success of Hodell's purported tort claims hinges entirely on whether SAP America performed its contractual obligations under the License Agreement. Thus, the "gist of the action" doctrine is applicable in this case and bars all of Hodell's purported tort claims, including its claim for fraudulent inducement. *See United States Claims, Inc. v. Saffren & Weinberg, LLP*, No. 07-0543, 2007 WL 4225536, at *11 (E.D. Pa. Nov.29, 2007) (stating that "[w]here fraud or negligent misrepresentation clearly arose from the contract, courts

- 14 -

have been quick to apply the 'gist of the action' doctrine.") (citing *Horizon Unlimited, Inc. v. Silva,* No. 97-7430,1998 WL 88391, at *4-5 (E.D. Pa. Feb. 26, 1998) (holding that "gist of the action" doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature)); *Factory Mkt., Inc. v. Schuller Int'l, Inc.,* 987 F. Supp. 387, 395 (E.D. Pa.1997) (dismissing fraud claim where the plaintiff alleged that defendant knew when promising to repair a roof that the roof could never be made watertight and where, since claim was truly grounded in defendant's failure to perform its contractual obligation, the "gist of the action" doctrine precluded the claim).[9]

## C.   Hodell's First, Second, Fourth And Fifth Causes Of Action Against SAP America And SAP AG Are Barred By The Economic Loss Rule.

Hodell's first, second, fourth and fifth causes of action are barred against SAP America and SAP AG because the economic loss rule prevents a recovery in tort where, as here, the damages sought are purely economic. *See Palco Linings, Inc. v. Pavex, Inc.,* 755 F. Supp. 1278 (M.D. Pa. 1990); *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.,* 564 A.2d 919, 925-26 (Pa. Super. 1989).

Similar to the "gist of the action" doctrine, "the economic loss rule reflects the concern that tort law (unlike contract law) is not generally intended to compensate parties for losses suffered as a result of a breach of duties which are assumed only by agreement; to recover in tort, there must be a breach of a duty of care imposed by law and a resulting injury." *Bilt-Rite Contractors, Inc. v. Architectural Studio,* 866 A.2d 270, 273 (Pa. 2005) (citing *Palco Linings, Inc. v. Pavex, Inc.,* 755 F.Supp. 1271 (M.D. Pa. 1990)). In *Palco Linings,* as in the instant case,

---

[9]  Ohio courts will likewise look to the essence of each of the plaintiff's claims to determine whether a plaintiff is attempting to disguise what is essentially a contract claim as a tort claim. *See Fitzgerald v. Roadway Express, Inc.,* 262 F. Supp. 2d 849, 855 (N.D. Ohio 2003); *see also Telephone Mgmt. Corp. v. Goodyear Tire & Rubber Co.,* 32 F. Supp. 2d 960 (N.D. Ohio 1998) (stating that, in light of plaintiff and defendant having only a contractual relationship, plaintiff cannot rework its claim as a tort claim, and dismissing tort claim on summary judgment).

the plaintiff sued in tort to recover only economic damages against the defendant. The plaintiff

alleged that the defendant's negligence and negligent misrepresentations forced the plaintiff to

delay work on a construction project and caused economic losses. The defendant moved for

summary judgment on the basis of the economic loss rule. In response, the plaintiff contended

that because it had no contract with the defendant and, thus, had no contract remedies available

to it, the economic loss rule did not apply. The Court disagreed, explaining as follows:

> While Pennsylvania courts have addressed, as favorable, the fact that the use of
> warranties and other terms allow parties to allocate the risk of economic loss
> prior to engaging in transactions, these opportunities are not prerequisites to the
> application of the economic loss doctrine. Whether the parties take advantage
> of such opportunities is not relevant.

*Palco Linings,* 755 F. Supp. at 1280-81. The Court added that "absent actual injury to person or

property, one may not recover in tort for economic losses, whether or not one has warranty

remedies available." *Id.* at 1280 (explaining *Lower Lake Dock Co. v. Messinger Baring Corp.,*

577 A.2d 631 (Pa. Super. 1990)).

Here, Hodell characterizes its losses as both direct and indirect costs resulting from the

implementation of Business One and/or the integrated software solution. In other words, Hodell

is seeking purely economic damages as a consequence of the alleged faulty implementation of

one or more components of the integrated system. Hodell, however, is barred by the economic

loss rule from asserting against SAP America and SAP AG its first, second, fourth and fifth

causes of action, all of which sound in tort.[10] These claims should be dismissed.[11]

---

[10] Although the Pennsylvania Supreme Court has recognized an exception to the economic loss rule for claims of negligent misrepresentation under Section 552 of the Restatement (Second) of Torts, *See Bilt-Rite,* 866 A.2d at 288 (Pa. 2005), that exception does not apply here. That exception, as discussed in *Bilt-Rite,* is intended for a narrow subset of professional negligence claims in which one of the parties is in the business of supplying information. *Id.* at 285-86.

[11] For the same reasons, even under Ohio law, Hodell's tort claims against SAP fail. *See Corporex Dev. Constr. Mgmt. v. Shook, Inc.,* 835 N.E.2d 701, 704 (Ohio 2005) (stating that under Ohio law, the economic loss rule
(continued...)

- 16 -

**D.**  **Hodell's Third Cause of Action Against SAP America and SAP AG Fails For Several Reasons.**

In Hodell's third cause of action, for breach of contract, Hodell alleges that SAP was a disclosed principal for whose benefit LSI contracted, and that SAP is liable to Hodell for any breach of the Development Agreement by LSI. Hodell also alleges that SAP was a third party beneficiary of the Development Agreement and is thus liable for any breach of that agreement. Hodell alleges that the defendants breached implied warranties of merchantability and of fitness for a particular purposes contained in the Development Agreement. Hodell also alleges that the License Agreement was breached.

Hodell's third of cause of action fails for several reasons. As to the Development Agreement, it fails because neither SAP America, nor SAP AG, are a party to, bound by, or liable under that agreement. As to the License Agreement, it fails to the extent Hodell's claims are that SAP breached an implied warranty of merchantability and of fitness for particular purpose, because these warranties were expressly disclaimed by Hodell.[12] In any event, as to

---

(..continued)

precludes recovery in tort for purely economic losses); *Pavlovich v. Nat'l City Bank,* 435 F.3d 560 (6th Cir. 2006) (stating same). As in Pennsylvania, Ohio courts recognize a limited exception to the economic loss rule for negligent misrepresentation claims under Section 552 of the Restatement (Second) of Torts, however that exception is not applicable here. Similar to Pennsylvania law, that exception is generally applied in cases involving allegations of professional negligence. *See, e.g., Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n,* 560 N.E.2d 206 (Ohio,1990) (discussing architect's liability for negligent misrepresentation); *Haddon View Inv. Co. v. Coopers & Lybrand,* 436 N.E.2d 212 (Ohio 1982) (discussing accountant's liability for negligent misrepresentation); *Harrell v. Crystal* 611 N.E.2d 908 (Oh. App. 1992) (attorneys); *Perpetual Fed. Sav. & Loan Ass'n. v. Porter & Peck, Inc.* 609 N.E.2d 1324 (Oh. App. 1992) (real estate appraisers); *Doe v. Blue Cross/Blue Shield of Ohio* 607 N.E.2d 492 (Oh. App. 1992); *Kilburn v. Becker* 573 N.E.2d 1226 (Oh. App. 1990) (insurance agent).

[12] Hodell also alleges that the warranty set forth in paragraph 7.1 of the License Agreement was breached because the software did not substantially conform to the "documentation." SAP denies this allegation, but concedes that Hodell did not disclaim this warranty. In any event, Hodell's third cause of action, for breach of contract, should be dismissed in its entirety because Hodell waived its right to seek the damages it seeks under its third cause of action, for the reasons stated in Section E below.

- 17 -

SAP AG, Hodell's third of cause of action fails because SAP AG is simply not bound by, or liable under, either of the contracts at issue.

> 1. **Any And All Claims That SAP America Or SAP AG Breached The Development Agreement Fail As A Matter Of Law Because Neither SAP America Nor SAP AG Is A Party To, Bound By, Or Liable Under The Development Agreement.**

As a threshold matter, neither SAP America nor SAP AG is a party to the Development Agreement. Indeed, the Development Agreement clearly states, at the top of the first page, that it is an agreement between only Hodell and LSI. Amended Complaint, Ex. D. Moreover, nowhere within the plain language of that agreement is it contemplated that SAP is a party. Simply put, the Development Agreement is not a contract between Hodell and SAP. Thus, as to SAP, Hodell's breach of the Development Agreement claim fails. *See CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053 (Pa. Super. 1999) (stating that a breach of contract claim requires the existence of a contract).[13]

To the extent that Hodell's claim is based on allegations that SAP America and/or SAP AG are bound by the Development Agreement because LSI acted as SAP's agent, Hodell's claim fails not only because the amended complaint lacks any factual allegations to support this bare legal assertion, but because Hodell's bald "agency" allegation is contradicted by the clear and unambiguous language in the License Agreement, which expressly states:

> *Licensee [Hodell]* acknowledges and agrees that *the SAP Reseller [LSI]* through which Licensee has arranged for the procurement of this Agreement or from which Licensee receives any services related to the Software is *not the agent of SAP.*

---

[13] Ohio law is essentially the same. *See Johnson v. Monsanto,* No. 11-02-02, 2002 WL 2030889, at *2 (Ohio Ct. App. Sept. 6, 2002) (stating that "[i]In Ohio, damages are recoverable for breach of implied warranties only if there is privity of contract between the parties."); *see also Lawyers Cooperative Publishing Co. v. Muething,* 65 Ohio St. 3d 273, 277 (Ohio 1992) (stating that "[a]bsent a contractual relationship between the plaintiff and defendant, an action based on contract for breach of warranty does not exist." ).

Amended Complaint, Ex. G (License Agreement, § 4.1) (emphasis added).

To the extent Hodell's claim is based on an allegation that SAP is a third party beneficiary under the Development Agreement, Hodell's claim fails because, as a matter of law, SAP is not a third party beneficiary under that agreement. Pennsylvania courts have adopted the Restatement (Second) of Contracts § 302. *Mack v. AAA Mid-Atlantic, Inc.* 511 F. Supp. 2d 539, 545 (E.D. Pa. 2007) (citing *Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992)). The Restatement provides, in relevant part, that a beneficiary of a promise is an intended beneficiary if, as a threshold matter, "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties." Restatement (Second) of Contracts § 302 (1981). In order for a party to have third party beneficiary status, both parties to the contract must have so intended it at the time the contract was formed. *Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F.Supp.2d 669 (quoting *Burks v. Fed. Ins. Co.*, 883 A.2d 1086, 1088 (Pa.Super.Ct.2005)). Here, Hodell's bald allegation that SAP is a third party beneficiary of the Development Agreement is not only unsupported by any factual allegations, but it is completely contradicted by the agreement itself. Indeed, the Development Agreement does not express any intent on the part of the parties to recognize any right to performance in SAP, and thus, Hodell's claim fails as a matter of law. *See Mack,* 511 F. Supp. 2d at 545 (rejecting plaintiff's third party beneficiary theory where plaintiff failed to identify a written contract between the parties expressing an intent to benefit plaintiff).[14] Here, neither SAP America nor SAP AG can, as a matter of law, be liable for any breach of the Development Agreement.

---

[14] Ohio courts have also adopted the Restatement (Second) of Contracts § 302. *See Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E. 2d 780 (Ohio 1988). Thus, to the extent Hodell's breach of the Development Agreement against SAP is premised on its bald allegation that SAP is a third party beneficiary to that agreement, Hodell's claim fails as a matter of Ohio law for the same reason that it fails as a matter of Pennsylvania law.

**2. Hodell's Third Cause of Action Against SAP America Is Barred, In Part, By The License Agreement's Provision Disclaiming Implied Warranties.**

In its third cause of action, Hodell claims, among other things, that the defendants breached implied warranties of merchantability and of fitness for a particular purpose. As to SAP America, the Court is presented with a commercial contract between commercial entities involving a license to use computer software, which is governed by the Uniform Commercial Code (the "U.C.C."). *Advent Systems v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991).

In this case, Hodell disclaimed all such implied warranties it alleges were breached by SAP America. Hodell did so when it entered into the License Agreement, which states:

> 7.1    Warranty.  SAP warrants that the Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery.  The warranty shall not apply:  (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database.  SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.

> 7.2    Express Disclaimer.  SAP AND ITS LICENSORS DISCLAIM ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT TO THE EXTENT THAT ANY WARRANTIES IMPLIED BY LAW CANNOT BE VALIDLY WAIVED.

Amended Complaint, Ex. G (License Agreement, § 7.1-7.2).

These disclaimers are permissible and enforceable under the U.C.C.  *See* 13 Pa. C.S.A. § 2316(b) (stating that to exclude or modify an implied warranty of merchantability, the language must mention merchantability and be conspicuous, and to exclude or modify an implied warranty of fitness, the exclusion must be by a writing and conspicuous).  Courts enforce warranty disclaimers where the statutory requirements are satisfied.  *See, e.g., Moscatiello v. Pittsburgh*

*Contractors. Equip.*, 595 A.2d 1190, 1193 (1991) (stating that exclusionary language that

mentions "merchantability" and is conspicuous is enforceable). Here, the warranty disclaiming

merchantability clearly refers to "merchantability." Further, both the disclaimers of any implied

warranty of merchantability and of fitness for a particular purposes are conspicuous. Indeed,

they appear in all capital letters and under a separate heading. Moreover, these disclaimers

appear in a commercial contract between sophisticated parties who understood the import of

such disclaimer language. Thus, Hodell expressly disclaimed the implied warranties it now

alleges SAP America breached and these claims must be dismissed.[15]

E.    **Hodell's First, Second, Third, Fourth and Fifth Causes Of Action Against SAP America Should Be Dismissed Because Hodell Waived Its Right To Seek The Damages Being Sought In This Action.**

Under all of Hodell's causes of action, Hodell seeks only consequential and/or punitive

damages. However, by way of the License Agreement, as to SAP America, Hodell expressly

limited its remedies and SAP America's liability to only contractual damages. In other words,

Hodell expressly waived its right to seek the damages it now seeks against SAP America.

Hodell, therefore, cannot recover any of the damages it seeks against SAP America under any of

its causes of actions, and these causes of action against SAP America should be dismissed.

Under Pennsylvania law, parties to a commercial transaction are free to allocate among

themselves the risks associated with non-performance or disappointed expectations. *Valhal*

*Corp. v. Sullivan  Assoc., Inc.*, 44 F.3d 195, 203 (3d Cir. 1995). The U.C.C. specifically permits

parties to agree to limit a buyer's remedies to repair or replacement or return of the purchase

---

[15] Even under Ohio law, Hodell's claim against SAP America for breach of implied warranty and of fitness for a particular purpose are barred, as the License Agreement's warranty disclaimer provision is enforceable. *See Thomas v. Micro Ctr.*, 875 N.E.2d 108 (Ohio Ct. App. 2007) (stating that, to be effective under R.C. 1302.29(B) (*i.e.*, Ohio's Uniform Commercial Code provision pertaining to the exclusion or modification of warranties), the exclusion of a warranty must mention merchantability, and in the case of fitness for a particular purpose, must be conspicuous).

price. 13 Pa. C.S.A. § 2719(a)(1). In addition, the U.C.C. specifically permits the parties to exclude consequential damages within the contract. 13 Pa. C.S.A. § 2719(c). Applying these provisions of the U.C.C., courts have routinely enforced limitation of liability clauses appearing in contracts between commercial entities. *See, e.g., Valhal*, 44 F.3d at 203-04 (stating that limitation of liability clauses are routinely enforced under the U.C.C. when contained in sales contracts negotiated between sophisticated parties and when no personal injury or property damage is involved); *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 262 (Pa. Super. 1997) (stating same).

In the instant case, the License Agreement expressly states:

> 9.1   Licensee's Remedies. *Licensee's sole and exclusive remedies for any damages or loss in any way connected with the Software* or Services furnished by SAP and its licensors, whether due to SAP's negligence or breach of any other duty, *shall be*, at SAP's option: *(i) to bring the performance of the Software into substantial compliance with the functional specifications; (ii) re-performance of Services; or (iii) return of an appropriate portion of any payment made by Licensee to its SAP Reseller with respect to the applicable portion of the Software or Services.*

***

> 9.3   Limitation of Liability. ANYTHING TO THE CONTRARY HEREIN NOTWITHSTANDING, EXCEPT FOR DAMAGES RESULTING FROM UNAUTHORIZED USE OR DISCLOSURE OF PROPRIETARY INFORMATION, *UNDER NO CIRCUMSTANCES SHALL SAP, ITS LICENSORS OR LICENSEE BE LIABLE TO EACH OTHER OR ANY OTHER PERSON OR ENTITY FOR AN AMOUNT OF DAMAGES IN EXCESS OF THE SOFTWARE LICENSE FEES PAID BY LICENSEE FOR THE SOFTWARE OR BE LIABLE IN ANY AMOUNT FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR INDIRECT DAMAGES, LOSS OF GOOD WILL OR BUSINESS PROFITS, WORK STOPPAGE, DATA LOSS, COMPUTER FAILURE OR MALFUNCTION, OR EXEMPLARY OR PUNITIVE DAMAGES.*

Amended Complaint, Ex. G (License Agreement, § 9.1 and 9.3) (emphasis added). The above language is clear and unambiguous. Thus, in accordance with well-settled principles of contract

construction, as a matter of law, Hodell's *sole and exclusive remedy* for damages in any way connected with Business One is replacement or return of the purchase price. However, in its amended complaint, Hodell does not sue for replacement of the software or return of the purchase price. Rather, Hodell claims it incurred damages for direct costs in the amount of $843,152.62, and indirect costs in the amount of $456,000, as a result of the alleged faulty implementation and/or functionality of Business One and/or the integrated software. In addition to these consequential damages, Hodell, under its first and second causes of action, also seeks punitive damages, which  claims are directly contrary to the clear, unambiguous and enforceable language in the License Agreement. Hodell expressly waived its right to seek all of the damages it now seeks against SAP America. All of its causes of action against SAP America must, therefore, be dismissed.[16]

Even if the Court finds that Hodell has asserted one or more viable causes of action against SAP America, these provisions still preclude Hodell from seeking consequential and punitive damages. As such, if any of Hodell's causes of action against SAP America survive the instant motion, Hodell's claims for consequential and punitive damages should still be dismissed.

In addition, and in any event, Hodell's claims for *punitive* damages fail as a matter of law because the amended complaint does not contain allegations sufficient to support a claim for punitive damages. As to SAP America, Pennsylvania law is clear that punitive damages are not recoverable in an action for breach of contract. *Thorsen v. Iron and Glass Bank*, 476 A.2d 928,

---

[16] Even under Ohio law, the License Agreement's provisions limiting both Hodell's remedies and SAP America's liabilities are enforceable. *See Westfield Ins. Co. v. HULS Am., Inc.*, 714 N.E.2d 934 (Ohio Ct. App. 1998), *dismissed, appeal not allowed*, 700 N.E.2d 877 (Ohio 1998) (stating that Ohio U.C.C. provides that an agreement may limit a buyer's remedies to the repair and/or replacement of nonconforming goods or parts, and stating that courts have held that where the limited remedy is expressly agreed to be exclusive, it is the sole remedy).

- 23 -

932 (Pa. Super. 1984) (citations omitted).[17]  Similarly, as to SAP AG, even if one or more of

Hodell's tort claims survive the instant motion, its claim for *punitive* damages still fails.  Indeed,

even in cases of fraud, an award of punitive damages must be based upon an additional finding

that the fraud is aggravated by the existence of malice or ill will, or that the wrongdoing is

particularly gross or egregious.  *See Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).[18]

**F.** **Hodell's First and Second Cause of Action Must Be Dismissed, As Hodell Has Not Pled Fraud Against SAP America Or SAP AG With The Requisite Particularity.**

Hodell's first and second causes of action are for fraud.  Hodell, however, has failed to

plead these claims with particularity pursuant to Fed. R. Civ. P. 9(b).[19]  In addition to pleading

the elements of fraud, at a minimum, Hodell is required – but failed – to allege the time, place,

and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the

defendant, and the resulting injury.  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

The allegations must also be made with a sufficient factual basis to support an inference that they

were knowingly made.  *Id.* at 162.  At the heart of Hodell's fraud claims are the alleged failures

of the integrated software solution to meet the suitability needs of Hodell and to perform as was

allegedly promised by the defendants before Hodell entered into the subject contracts.  However,

---

[17] Similarly, under Ohio law, punitive damages are not recoverable in an action for breach of contract.  *Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922).

[18] Ohio law is essentially the same.  *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 466 N.E. 2d 883, (Oh. 1984).  Punitive damages are to be awarded in cases of fraud only when the fraud is shown to be malicious, wanton or gross.  *Logsdon v. Graham Ford Co.*, 376 N.E.2d 1333 (Oh. 1978).  Here, the complaint is wholly devoid of any factual allegations that either SAP entity acted with "actual malice," which has been characterized, under Ohio law, by "hatred" or "ill-will."  *See Geiger v. Westfield Nat'l. Ins. Co.*, No. C-080355, 2008 WL 5412490 (Ohio Ct. App. Dec. 31, 2008).

[19] A plaintiff must plead the following with particularity: (1) a false representation of a material fact; (2) knowledge of or belief in its falsity by the person making it; (3) belief in its truth by the person to whom it is made; (4) intent that it should be acted upon; and (5) detrimental reliance upon it by the person claiming to have been deceived.  *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 819 (N.D. Ohio 2004), aff'd sub nom., 477 F.3d. 861 (6th Cir. 2006).

- 24 -

absent from the amended complaint is a single allegation that anyone at SAP made any affirmative representations directly to Hodell with respect to the development or implementation of the integrated software solution.  Although the amended complaint contains allegations that American Express and LSI acted as agents of SAP in making certain pre-contractual representations regarding the performance and suitability of Business One, these bare "agency" allegations are not enough to remedy Hodell's deficient fraud claims.  Hodell has simply failed to plead fraud against SAP with the requisite particularity.  *See Lucas-Cooper v. Palmetto GBA*, No. 05-00959, 2006 U.S. Dist. LEXIS 63783 (N.D. Ohio, Sept. 7, 2006) (finding that plaintiff failed to plead fraud with particularity when plaintiff failed to specifically state time and place of, and who made, the alleged misrepresentation).  In addition, and in any event, Hodell's amended complaint contains only conclusory allegations that it justifiably relied on the alleged pre-contractual representations.  For this reason, it has failed to plead its fraud claims with the requisite particularity.  *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006) (stating that conclusory statements of detrimental reliance do not satisfy the particularity requirement).

## CONCLUSION

For the foregoing reasons, SAP respectfully requests that Hodell's amended complaint against SAP be dismissed with prejudice.  In the alternative, to the extent the Court finds that one or more of Hodell's causes of action survive the instant motion to dismiss, SAP respectfully requests that Hodell's claims for consequential damages against SAP America be dismissed and Hodell's claims for punitive damages against SAP be dismissed.

- 25 -

Dated: June 1, 2009

By:    /s/Leo  M. Spellacy, Jr., Esq.
        Hugh E. McKay, Esq. (0023017 )
        Leo M. Spellacy, Jr., Esq. (0067304)
        Charles W. Zepp., Esq. (0068129)
        PORTER WRIGHT MORRIS & ARTHUR LLP
        925 Euclid Avenue, Suite 1700
        Cleveland, OH  44115-1483
        (216) 443-9000 / Fax (216) 443-9011
        lspellacy@porterwright.com

        Attorneys for Defendants,
        SAP America, Inc. and SAP AG

        Of Counsel:
        Michael J. Miller
        Thomas S. Downie
        Drinker Biddle & Reath LLP
        One Logan Square, 18th and Cherry Streets
        Philadelphia, PA 19103-6996
        Telephone: (215) 988-2700
        Facsimile:  (215) 988-2757

- 26 -

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Leo M. Spellacy, Jr., certify that the foregoing Brief adheres to the page limitation set in the Court's May 21, 2009 Order granting Defendants SAP America, Inc. and SAP AG Motion for leave to exceed the page limit to not more than 25 pages.  This case has not been assigned to a track.

Respectfully submitted,

*/s/ Leo M. Spellacy, Jr.*
Hugh E. McKay (0023017)
Leo M. Spellacy, Jr. (0067304)
Charles W. Zepp (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio  44115
Tel: 216/ 443-9000
Fax: 216/ 443-9011
hmckay@porterwright.com
lspellacy@porterwright.com
czepp@porterwright.com

Attorneys for Defendants, SAP America, Inc. and SAP AG

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Leo M. Spellacy, Jr., Esq.*
Hugh E. McKay, Esq. (0023017 )
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483
(216) 443-9000 / Fax (216) 443-9011
hmckay@porterwright.com
lspellacy@porterwright.com
czepp@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG