IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF THE REPLY OF** |
| SAP AMERICA, INC., et al. | ) | **DEFENDANTS SAP AMERICA** |
| | ) | **INC. AND SAP AG TO PLAINTIFF'S** |
| Defendants. | ) | **BRIEF IN OPPOSITION TO THE** |
| | ) | **MOTION OF DEFENDANTS SAP** |
| | ) | **AMERICA, INC. AND SAP AG TO** |
| | ) | **DISMISS THE AMENDED** |
| | ) | **COMPLAINT** |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE REPLY OF
DEFENDANTS SAP AMERICA, INC. AND SAP AG TO PLAINTIFF'S
BRIEF IN OPPOSITION TO THE MOTION OF DEFENDANTS SAP AMERICA, INC.
AND SAP AG TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# Table of Contents

Table of Authorities ……………………………………………………………....…i

I. Argument …………………………………………………………………......1

    A.    The License Agreement Is The Exclusive Contract Between Hodell and SAP America…………………………………………………………………………1

    B.    Pennsylvania Law Applies To Hodell's Causes of Action Against SAP…………5

    C.    Hodell's Tort Claims Are Barred By Various Doctrines of Law…………………8

        1.  Hodell's Tort Causes of Action Are Barred By The "Gist Of The Action" Doctrine…………………………………………………………………9

        2.  Hodell's Tort Causes of Action Are Barred By The Economic Loss Rule……………………………………………………………………12

        3.  Hodell's Causes of Action For Fraud, Fraudulent Inducement and Negligent Misrepresentation Fail, Pursuant To The Parol Evidence Rule……………...15

    D.    The License Agreement's Implied Warranty Disclaimer, And Its Provisions Limiting Hodell's Damages And The Liability Of SAP America Are Enforceable………………………………………………………………19

    E.    Hodell's Claims For Punitive Damages Fail As A Matter of Law………………19

II. Conclusion………………………………………………………………………20

## Table of Authorities

### Cases

*Academy Plaza LLC1 v. Bryant Asset Mgmt.*, No. 0205-2774, 2006 WL 1652687
(Pa. Ct. Comm. Pl. June 9, 2006) ....................................................................16

*Air Products and Chemicals, Inc. v. Eaton Medical Products Co.*, 256 F. Supp. 2d 329
(E.D. Pa. 2003)....................................................................................10,11

*Allen v. Holiday Universal*, 249 F.R.D. 166, 174 n. 7 (E.D. Pa. 2008).................................2

*Battista v. Lebanon Trotting Ass'n* 538 F.2d 111, 117................................................14

*Burns v. Prudential Secs., Inc.*, 857 N.E. 2d 621, 646 (Ohio Ct. App. 2006)..........................8

*Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*,
123 F. Supp. 2d 826 (E.D. Pa. 2000)...............................................................10

*Chemtrol v. Adhesives, Inc. v. American Manufacturers Insurance Co.*,
537 N.E.2d 624, 629 (1989)......................................................................13,14

*Clemente v. Gardner*, 2004-Ohio-2254, ¶39...........................................................18

*Combs v. Crown Life Ins.*, No. 1:07-CV-00151. 2008 WL 641557
(S.D. Ohio March 4, 2008)......................................................................12,13

*Corporex Development and Construction Management Inc. v. Shook, Inc.*, 106 835 N.E.2d 701
(Ohio 2005).......................................................................................21

*Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996)........................................16

*etoll, Inc. v. Elias/Savion Advertising*, Inc., 811 A.2d 10, 14 (Pa. Super. 2002)......................9

*Ferro Corp. v. Blaw Knox Food & Chemical Equipment Co.*, 700 N.E.2d 94 (1997).................9

*Finley v. Schuett*, 455 N.E.2d 1324 (Ohio App. 1982)................................................16

*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*,
560 N.E.2d 206 (Ohio 1990).......................................................................12

*Galmish v. Cicchini*, 734 N.E.2d 782, 789 (Ohio 2000).............................................15-18

*Glassmere Fuel Serv., Inc. v. Clear*, 900 A.2d 398, 402 (Pa. Super. Ct. 2006)......................15

*Guy v. Liederbach*, 501 Pa. 47, 60, 459 A.2d 744, 751 (Pa. 1983)....................................3

*Hagberg v. Delphi Auto Sys.*, 268 F.Supp.2d 855, 860 (N.D. Ohio 2002)................................... 12

*Haddon View Inv. Co. v. Coopers & Lybrand,* 436 N.E.2d 212, 214 (Ohio 1982)................12

*Harrell v. Crystal* 611 N.E.2d 908 (Ohio Ct. App. 1992)...............................................12

*Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005)...............................................15

*Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E. 2d 780 (Ohio 1988)...........................3

*Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)....................................................19

*In re Cincinnati Gas & Electric Securities Litigation*, 594 F.Supp. 40, 61 (S.D. Ohio1984) ..... 14

*In re Commercial Money Center, Inc., Equipment Lease Litigation*, 603 F.Supp.2d 1095
     (N.D. Ohio 2009) .................................................................................. 12

*Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922).....................................................19

*Kilburn v. Becker* 573 N.E.2d 1226 (Oh. App. 1990)...................................................12

*Kreamer Sports, Inc. v. Rocky Brands, Inc.*, No. 2:06-cv-576 2007 WL 1144865, *7
     (S.D. Ohio Apr. 16,  2007)........................................................................18

*Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716 (6th Cir. 1996).................................. 5,18

*Logsdon v. Graham Ford Co.*, 376 N.E.2d 1333, (1336 Ohio 1978)...........................19-20

*Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820-21 (6th Cir. 1990)................................7

*Meeker v. Shafranek*, 176 N.E. 2d 293, 295 (Ohio Ct. App. 1960)....................................9

*Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir. 1987)......................................5,18

*Morgan v. Biro Mfg. Co.*, 474 N.E. 2d 286, 289 (Ohio 1984).........................................8

*Moses v. Bus. Card Express*, 929 F.2d 1131, 1138 (6th Cir.1991)..................................6,7

*Ohio Match Co. v. Elm Grove Min. Co.*, 5 Ohio Law Abs. 151 (1927) ........................................ 4

*Perpetual Fed. Sav. & Loan Ass'n. v. Porter & Peck, Inc.* 609 N.E.2d 1324 (Oh. App. 1992)...12

*Procter & Gamble Co. v. Bankers Trust Co.*,  925 F. Supp. 1270 (S.D. Ohio 1996)..............5,6

*Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 773 (M.D. Pa 2008)…………………………………15

*Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F.Supp.2d 763, 773
      (N.D. Ohio 2004)…………………………………………………………………3,4,11

*Sarmiento v. Grange Mut. Cas. Co.*, 835 N.E. 2d 692, 695 (Ohio 2005)……………………………8

*Saum v. Moenter*, 654 N.E.2d 1333, 1336 (Ohio Ct. App. 1995) ……………………………………4

1726 *Cherry St. v. Bell Atl.*, 439 Pa. Super. 141, 653 A.2d 663, 665 (Pa. Super. Ct. 1995)…….15

*Sun Co., Inc v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365 (E.D. Pa. 1996)……10,11

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
      40 F. Supp. 2d 644, 651 (W.D. Pa.1999)………………………………………10,11

*Thorsen v. Iron & Glass Bank*, 476 A.2d 928, 932 (Pa. Super. 1984)…………………………19

*Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)…………………………………….9

*Yocca v. Pittsburgh Steelers Sports.* Inc., 854 A.2d 425 (Pa. 2004)……………………………16

*Ziegler v. Findlay Indus., Inc.*, 380 F. Supp. 2d 909 (N.D. Ohio 2005)…………………………2

## **Other Authorities**

Restatement (Third) of Agency § 6.01…………………………………………………………4

Restatement (2d) Conflict of Laws, §§ 145, 146 and 6……………………………………....6

Restatement (2d) Conflict of Laws, §187……………………………………………………6

Restatement (Second) of Contracts § 302 (1979)…………………………………………….3

Restatement of Torts (Second), §§ 126-127………………………………………………....12

Restatement of the Law 2d, Torts (1979), § 552…………………………………….................12

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAP AMERICA, INC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:08 CV 2755<br><br>JUDGE WELLS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE REPLY OF DEFENDANTS SAP AMERICA INC. AND SAP AG TO PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION OF DEFENDANTS SAP AMERICA, INC. AND SAP AG TO DISMISS THE AMENDED COMPLAINT** |

## I.  ARGUMENT

**A.**     **The License Agreement Is The Exclusive Contract Between Hodell and SAP America.**

Hodell's arguments regarding the parties' contractual relationships are profoundly flawed.

Hodell contends that the "2004 Purchase" consisted of three documents (the Development

Agreement, a Hodell purchase order that *references* an 80 user license, and a LSI invoice that does

the same).  Hodell contends that the "2004 Purchase" comprises the "entire and complete agreement

pursuant to which Hodell purchased the initial 80 licenses." Hodell's Brief in Opposition to SAP's

Motion to Dismiss ("Hodell Br."), 5.  Amazingly, however, Hodell completely ignores the one

document that indeed constitutes the only contract between Hodell and SAP America – the License

Agreement that Hodell and SAP America signed in 2005.[1]

---

[1] Hodell also refers to a "2005 Purchase," which it contends consisted of a Hodell purchase order that references a 40 user license.  SAP does not dispute that Hodell initially purchased 80 user license and then subsequently purchased an additional 40.  However, for the same reasons that are set forth below with respect to the 2004 Purchase, the only contract involving Hodell and SAP America with respect to the additional 40 user licenses is the License Agreement.

The Development Agreement was a contract between Hodell and LSI, whereby LSI was to develop its own software (an application known as In-Flight) and then integrate and/or synchronize that with certain other software applications, including SAP Business One ("Business One") and Radio Beacon (which was being used by Hodell at the time). The result would be a software application specific to the fastener industry, which Hodell and LSI intended to sell to other companies in that industry. The Development Agreement clearly states that it is an agreement between only Hodell and LSI. First Am. Complt. ("FAC"), Ex. D. Nowhere within the plain language of that agreement is it contemplated that SAP was to be involved in the development of the industry-specific software or the sale thereof, let alone that SAP was to be a party to that agreement. Additionally, although both the Hodell purchase order and the LSI invoice *reference* an 80 user license, neither is directed to SAP, constitutes a contract with SAP, or suggests in any way that it served to effectuate the sale of an 80 user license.

The License Agreement was a contract between Hodell and SAP America. The License Agreement's first sentence states that it is an agreement "by and between" SAP America and Hodell. FAC, Ex. G (License Agreement). Moreover, Hodell admits that it signed the License Agreement.[2]

Hodell argues that one reason it should be permitted to proceed with its breach of the Development Agreement claim against SAP is because SAP is an intended third party beneficiary of the Development Agreement and that, as such, SAP not only has contractual rights, but it has

---

[2] SAP America likewise signed the License Agreement. Indeed, to the extent this is an issue, SAP is prepared to submit an affidavit establishing this and having this motion treated as one for summary judgment pursuant to Rule 12(d). Further, after signing the License Agreement, Hodell ratified that contact by accepting delivery of the software and working with LSI to implement it. *See Allen v. Holiday Universal*, 249 F.R.D. 166, 174 n. 7 (E.D. Pa. 2008) (recognizing the validity of a contract, under Pennsylvania law, where a party ratifies it by acting upon it, performing under it, or affirmatively acknowledging it); *see also Ziegler v. Findlay Indus., Inc.*, 380 F. Supp. 2d 909 (N.D. Ohio 2005) (recognizing that, under Ohio law, a contract is ratified when parties perform pursuant to the contract).

contractual exposure, pursuant to that agreement.  This argument fails, however, for at least two reasons.

First, as a threshold matter, SAP is a not an intended third party beneficiary of the Development Agreement.  A third party beneficiary of a promise is an intended third party beneficiary only if the "recognition of *a right to performance in the beneficiary* is appropriate *to effectuate the intention of the parties.*"  *See Guy v. Liederbach*, 501 Pa. 47, 60, 459 A.2d 744, 751 (Pa. 1983) (citing Restatement (Second) of Contracts § 302 (1979)).  Otherwise, the third party beneficiary to a promise is merely an incidental beneficiary.  *Id.*; *see also Hill v. Sonitrol of Sw. Ohio, Inc.*, 521 N.E.2d 780, 784-85 (Ohio 1988) (citing Restatement (Second) of Contracts § 302, and stating where promisee intends that a third party should have a right to performance under the contract, then that third party is an intended beneficiary with *enforceable rights* under the contract; however, if promisee has no such intent, then the third-party is merely an incidental beneficiary, with no enforceable rights under the contract).  Here, the threshold to establish that SAP is an intended beneficiary is not met because, under the Development Agreement, there is no possibility for SAP to assert a claim against either Hodell or LSI for breach of that agreement (nor is there any intent expressed by either Hodell or LSI that SAP should have any such right); indeed, such a claim by SAP would be absurd.  Thus, to the extent that any benefit has been conferred upon SAP by way of the Development Agreement, SAP is merely an incidental beneficiary.

Hodell's reliance on *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp 2d 763 (N.D. Ohio 2004) for the proposition that SAP, as an intended third party beneficiary to the Development Agreement, is liable to Hodell for any breaches to that agreement is misplaced. In that case, in deciding that the defendant (not a party to the contract) may be liable to the plaintiff as an intended third party beneficiary, the court concluded, as a threshold matter, that the defendant

was an intended third party beneficiary with a right to sue the plaintiff under the contract.  The instant case is distinguishable because, as stated above, SAP has no such right to sue under the Development Agreement.

Second, even if SAP is an intended third party beneficiary (which it is not), SAP does not believe that this creates *exposure*, as opposed to *rights*, for SAP.  As this Court explained in *Resource Title Agency*, the cases that have found that a third party beneficiary is exposed to liability under a contract are "are highly fact-specific and *do not stand for the general proposition that intended third-party beneficiaries always assume liabilities under the contract*, [rather] they illustrate that, in [a] particular case, a third-party beneficiary may be so held liable." *Resource Title*, 314 F. Supp. 2d at 771 (referring to *Ohio Match Co. v. Elm Grove Mining Co.*, 5 Ohio Law Abs. 151 (1927) and *Saum v. Moenter*, 654 N.E.2d 1333, 1336 (Ohio Ct. App. 1995).  In those cases, similar to *Resource Title* itself, third party beneficiary liability was based on a finding that the parties to the contract intended that the third party receive a benefit under the contract (*i.e.*, goods, money, or the right to sue), which is not the case here.

Hodell further argues that it should be permitted to proceed with its breach of the Development Agreement claim against SAP because LSI acted as SAP's agent when it entered into the Development Agreement.  Hodell's "agency" allegation, however, cannot change the identity of the parties to that contract (*i.e.*, Hodell and LSI).  Indeed, basic principles of agency law provide that, when an agent enters into a contract on behalf of a disclosed principal, the principal and the third party are parties to the contract – not, as is the case here, the so-called agent [LSI] and the third-party [Hodell].  *See* Restatement (Third) of Agency § 6.01.  Not surprisingly, Hodell does not offer any legal authority in support of its novel agency concept that SAP is somehow a party to the Development Agreement.

- 4 -

Hodell's "agency" argument also fails because it is not legally supported by the Amended Complaint and the documents incorporated by reference therein.  Indeed, the Amended Complaint lacks any factual allegations to support that bare legal conclusion, and for that reason, the Court should not accept it as true.  *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (stating that bare assertions of legal conclusions are not sufficient to survive a motion to dismiss); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (stating that court need not accept unwarranted factual inferences as true in deciding motion to dismiss).

Finally, Hodell's "agency" allegation is contradicted by the clear and unambiguous language in the License Agreement, wherein Hodell expressly acknowledged and agreed that LSI is not an agent of SAP.  *See* FAC, Ex. G (License Agreement, § 4.1).

The Hodell motive for its legal maneuvering is obvious.  In the License Agreement, Hodell agreed to limitation of liability terms that now serve to protect SAP from precisely the type of claims that Hodell is seeking to pursue.  However, the mere fact that Hodell has such a motive does not mean that its maneuvering has any basis.

**B.**     **Pennsylvania Law Applies To Hodell's Causes of Action Against SAP.**

Hodell, by way of the License Agreement, consented to the application of Pennsylvania law in this action.[3]  The License Agreement unambiguously states that it "shall be governed by and construed under the Commonwealth of Pennsylvania law without reference to its conflicts of law principles."  FAC, Ex. G (License Agreement, § 11.6).  Choice of law clauses such as this one are enforced and have been broadly construed under Ohio's choice of law rules.  *See, e.g., Procter &*

---

[3] Also, Pennsylvania is where SAP America maintains its principal place of business, and Hodell has alleged that SAP America and SAP AG acted in concert with one another.  FAC, ¶ 4.

- 5 -

*Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270 (S.D. Ohio 1996).[4]  Thus, Pennsylvania law is applicable to all of Hodell's causes of action against SAP.

Hodell, nevertheless, attempts to argue that Ohio law applies to all of its causes of action against SAP because the *Development Agreement* does not contain a choice of law provision.  As stated above, SAP was not a party to, nor bound by, that agreement.  The absence of a choice of law provision in the Development Agreement is irrelevant to the question at hand.

Hodell also argues that the License Agreement's choice of law clause is inapplicable, pursuant to Restatement (Second) of Conflicts of Law, §§ 145, 146 and 6.  Hodell, however, completely ignores Restatement (Second) of Conflicts of Law § 187(1), which is directly on point and which resolves the question.  Section 187(1) applies to situations where, as here, the parties have chosen the law to govern their relationship.  That section, in essence, provides that the law of the state chosen by the parties is applicable "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."  Restatement (Second) of Conflicts of Law § 187(1).  Here, the issue at the heart of each of Hodell's causes of action is the alleged failure of Business One to meet the functional needs of Hodell as warranted.  This is clearly an issue that can be addressed by way of claims under the License Agreement.[5]

---

[4] Hodell contends that SAP's reliance on *Proctor* is misplaced because the choice of law clause in the License Agreement is not as broad as the clause in *Proctor*.  Hodell claims that the clause here tracks the language identified in *Moses v. Business Card Express, Inc.* 929 F.2d 1131 (6th Cir. 1991).  Hodell is wrong.  In *Proctor*, the plaintiff asserted both contract and tort claims, including tort claims under several Ohio statutes.  Similar to the License Agreement's choice of law clause, the provision in *Proctor* stated that "[t]his Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York without reference to choice of law doctrine."  The Court in *Proctor* stated that "[t]he inclusion of the phrase 'without reference to choice of law doctrine' forecloses the application of Ohio law."  *Proctor* 925 F. Supp. at 1288.  By contrast, and contrary to Hodell's contention, the choice of law clause in *Moses* did not contain that language.

[5] Even if the Court concludes that the particular issue in this case is one which the parties could not resolve by an explicit provision in their agreement, and even if the Court concludes that Ohio has a materially greater interest in the issue, Pennsylvania law still applies, pursuant to Restatement (Second) of Conflicts of Law § 187(2), because Pennsylvania has at least a substantial relationship to the parties and the transaction, there was a reasonable basis for the parties' choice that Pennsylvania law should apply, and application of Pennsylvania law would not be contrary

(Continued)

Hodell further argues that, in any event, the License Agreement's choice of law provision is inapplicable because Hodell has alleged it was fraudulently induced into assenting to that agreement. Hodell errs in relying on *Moses* in support of this proposition. In *Moses*, the court held that even where a party alleges that it was fraudulently induced into entering a contract, the contract's choice of law and choice of forum provisions are still enforceable unless, at a minimum, there is an allegation that the clauses themselves were fraudulently induced. *Moses*, 929 F.2d at 1138 (stating that "unless there is a showing that the alleged fraud or misrepresentation induced the party opposing [the clause] to agree *to the inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity" of the clause). Here, Hodell makes no mention of the choice law clause in its Amended Complaint. Contrary to Hodell's contention, *Moses* supports the application of Pennsylvania law here.

Lastly, Hodell argues that Ohio law applies to its tort causes of action against SAP because no other state, including Pennsylvania, has a more significant relationship to this lawsuit than Ohio, yet none of the cases upon which Hodell relies support that proposition – and in only one of the cases was the court even presented with a choice of law clause. *See Hagberg v. Delphi Auto. Sys.*, 268 F. Supp. 2d 855 (N.D. Ohio 2002) (addressing whether Michigan or Ohio law applied to an insured's action for underinsured motorist coverage pursuant to an automobile insurance policy, but not addressing a choice of law provision); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820-21 (6th Cir. 1990) (involving attorney fee-splitting agreement with no choice of law provision); *In re Commercial Money Ctr., Inc.* 603 F. Supp. 2d 1095, 1103 (N.D. Ohio 2009) (addressing whether Ohio or California law applied to the plaintiffs' bad faith claims, but not addressing a choice of law

---

(Continued)

to a fundamental policy of Ohio in the determination of the particular issue. *See* Restatement (Second) of Conflicts of Law § 187(2).

clause); *Morgan v. Biro Mfg. Co.*, 474 N.E. 2d 286, 289 (Ohio 1984) (addressing choice of law

where plaintiff sued manufacturer of meat grinder after plaintiff became injured using grinder, but

not addressing a choice of law provision); *Sarmiento v. Grange Mut. Cas. Co.*, 835 N.E. 2d 692, 695

(Ohio 2005) (addressing which law was applicable to insured's claim for uninsured motorist

coverage, but not addressing a choice of law clause).  Even in the one case involving a choice of law

clause, the parties had abandoned the chosen law of New York and relied on Ohio law before the

court had decided the issue.  *See Burns v. Prudential Secs., Inc.*, 857 N.E. 2d 621, 646 (Ohio Ct.

App. 2006) (stating that, although the parties chose New York law under the contract, "given that

[they] have relied upon the law of Ohio, we will apply [Ohio law]").  That is not the case here.

In addition, and in any event, as explained in SAP's Motion to Dismiss and further herein,

the law of Ohio is essentially the same as that of Pennsylvania with respect to the issues addressed

herein and compels an identical result.

**C.**     **Hodell's Tort Claims Are Barred By Various Doctrines of Law.**

The gravamen of Hodell's Amended Complaint is that Business One did not have the

capacity to meet Hodell's business needs.  Stated another way, Business One was not suitable for

Hodell's business because it could not accommodate Hodell's number of users.

There is no question that the License Agreement addresses this complaint.  The License

Agreement granted Hodell "a non-exclusive, perpetual license to Use the [Business One] Software

.... to run [Hodell's] business operations."  FAC, Ex. G (License Agreement 2.1(a)).  The License

Agreement also provided Hodell with an express warranty regarding the functionality of Business

One.  It states, "SAP warrants that the [Business One] Software will substantially conform to the

functional specifications contained in the Documentation for six months following delivery."  FAC,

Ex. G (License Agreement 7.1).  Finally, there is no dispute that the number of users was initially anticipated to be 80 and then an additional 40 for a total of 120.[6]  Thus, if Hodell is right about Business One's failure to meet its user needs and to function as promised, Hodell may assert a breach of contract claim against SAP America under the License Agreement, but that is it.  Hodell's claims do not give rise to any of the tort causes of action it has asserted here against SAP, which are mere restatements of its contract claim and which are barred by various doctrines of law.

1.      **Hodell's Tort Causes of Action Are Barred By The "Gist Of The Action" Doctrine.**

It is impermissible, as a matter of Pennsylvania and Ohio law, for Hodell, whose complaint amounts to a breach of contract claim, to restate that claim in tort.  *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) (applying Ohio law); *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).  This well-settled rule of law has been referred to by Pennsylvania courts as the "gist of the action" doctrine.  Ohio courts have not traditionally referred to that doctrine.  However, they similarly determine whether a cause of action lies in tort or contract by looking to "the nature of the grievance rather than the form of the pleading."  *Meeker v. Shafranek*, 176 N.E. 2d 293, 295 (Ohio Ct. App. 1960).  If the gravamen of the complaint is for breach of contract, the cause of action will not be transformed into one sounding in tort by the charge of tortious conduct or the addition of the adverbs intentionally, willfully and fraudulently.  *Ketcham v. Miller*, 136 N.E. 145, Syllabus (Ohio 1922); *also see Meeker*,176 N.E. 2d at 295.

Seemingly acknowledging that the gist or gravamen of its complaint sounds in contract – and, thus, that it is barred from bringing its tort claims – Hodell seeks to invoke an exception to the

---

[6] The License Agreement further explains that "individuals that Use the Software…must be licensed as Named Users."  FAC, Ex. G (License Agreement 2.1(b)).  "Named Users" is defined as the "users…licensed by SAP to [Hodell] under [the License Agreement], pursuant to the order for the Software placed by [Hodell] or on its behalf by [LSI].  FAC, Ex. G (License Agreement 1.6).  Hodell's initial order was for 80 users and then it ordered an additional 40 for a total of 120.  This is not in dispute.

rule, one that is essentially the same under Pennsylvania and Ohio law. *See Sunquest Info. Sys. Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999) (discussing that an exception to the "gist of the action" doctrine exists where a fraudulent inducement claim involves statements that are collateral to the contract); *Res. Title Agency, Inc.*, 314 F. Supp. 2d at 774 discussing an exception where a misrepresentation of facts is outside the contract).

Hodell's reliance on *Air Products and Chemicals, Inc. v. Eaton Medical Products Co.*, 256 F. Supp. 2d 329 (E.D. Pa. 2003) in support of its position that, under Pennsylvania law, its fraudulent inducement claim survives because that exception applies is misguided for two reasons. First, that case is distinguishable from the instant case. *Id*. at 340-41. There, the court concluded that the "gist of the action" doctrine did not apply, finding that the defendant's allegedly false promise that it possessed certain necessary certifications was collateral to the contract. *Id*. at 344. Here, however, there were no broken *collateral* promises. In this case, SAP America, pursuant to its contract with Hodell, promised that it would deliver capable, suitable and functional software to Hodell. According to Hodell, however, although SAP America delivered the software, the software failed and, thus, SAP broke its other promises under the License Agreement. Hodell also completely overlooks the court's discussion, in *Air Products*, of two cases analogous to the instant case (*i.e.*, *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826 (E.D. Pa. 2000) and *Sun Co., Inc v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365 (E.D. Pa. 1996)), wherein tort claims were barred, under Pennsylvania law, because they were nothing more than the plaintiff's breach of contract claim in disguise. The court stated that the plaintiff's fraud allegation in *Caudill Seed* that the defendant's representation that the software would work when it did not, was merely a restatement of its breach of contract claim and, therefore, barred by the "gist of the action" doctrine. The court stated that, in *Sun Co.*, the plaintiff's claim that the defendant's misrepresentation of its

- 10 -

competency to perform engineering work, belied by the defendant's breach, was barred by the "gist of the action" doctrine.  Here, Hodell's tort claims, similar to the tort claims in those cases, are based on a representation that the software would work when it allegedly did not and a representation that SAP could competently perform its obligations when it purportedly did not.

Hodell's reliance on *Resource Title* to support its position that, under Ohio, its tort causes of action survive is equally misguided.  In that case, the plaintiff's claim for fraudulent inducement was deemed viable because the plaintiff pled allegations that the defendant, at the time it made representations that it would pay the plaintiff for certain real estate closing services, had no intention of doing so.  That is not the case here because, although Hodell baldly alleges in its Amended Complaint that SAP America had no intention of performing its obligations under the License Agreement, Hodell also alleges that SAP America delivered the software and worked with Hodell to make it work.  Specifically, Hodell alleges that "[f]ollowing its purchase of 80 user licenses for SAP Business One in December 2004, Hodell-Natco worked diligently to implement the software with the assistance of the Defendants."  FAC, ¶ 48.  These allegations preclude any reasonable inference that SAP America never intended to perform from the outset.

## 2.    Hodell's Tort Claims Are Barred By The Economic Loss Rule.

Hodell completely misconstrues the economic loss rule, as well as the exception to that rule. Hodell's reliance on *Corporex Development and Construction Management Inc. v. Shook, Inc.*, 106 835 N.E.2d 701 (Ohio 2005) for the proposition that SAP owed Hodell a duty in tort, independent of any contractual obligations contained within the License Agreement, underscores this point.  In *Corporex*, the court recognized a limited exception to the economic loss rule under Ohio law in cases of professional negligence, but concluded that the exception was not applicable to a construction project owner that sued a subcontractor in tort because the duty that was allegedly breached arose out a contract and the project owner had contractual remedies available.  *Id*. at 705-

- 11 -

06. The court stated that the project owner, as Hodell does here, misconstrued the exception, which was first articulated in *Haddon View Investment Co. v. Coopers and Lybrand*, 436 N.E.2d 212 (Ohio 1982). The court stated that, in *Haddon View*, "this court discussed the liability of an accountant for professional negligence in accord with Restatement of the Law 2d, Torts (1979), Section 552." Corporex Dev., 835 N.E. 2d at 704-05. The court added, "[t]hat section recognizes professional liability, and thus a duty in tort, only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business." *Id.* at 705 (citing Restatement of Torts (Second), 126-127, Section 552). The court further stated that, "[l]iability in *Haddon View* was based exclusively upon this discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity." *Id.* (citing *Haddon View* 436 N.E. 2d at 214).[7] Because the exception to the rule is generally limited to the context of professional negligence, it is not surprising that Hodell has not cited a single case to support the imposition of an independent duty in tort where, as here, one party sold software to another, pursuant to a commercial contract by and between them.

Hodell's reliance on *Combs v. Crown Life Ins.*, No. 1:07-CV-00151. 2008 WL 641557 (S.D. Ohio March 4, 2008) in support of its argument that the economic loss rule is inapplicable to its fraud claims is misguided. In that case, defendants argued, among other things, that the tort damages being sought by the plaintiff were duplicative of the contract damages being sought. The court

---

[7] Ohio's exception to the economic loss rule, similar to Pennsylvania's exception (discussed in SAP's Motion to Dismiss), has generally been applied in limited circumstances, involving claims of professional negligence. *See, e.g., Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206 (Ohio,1990) (discussing architect's liability for negligent misrepresentation); *Harrell v. Crystal* 611 N.E.2d 908 (Ohio Ct. App. 1992) (attorneys); *Perpetual Fed. Savs. & Loan Ass'n. v. Porter & Peck, Inc.* 609 N.E.2d 1324 (Ohio Ct. App. 1992) (real estate appraisers); *Kilburn v. Becker* 573 N.E.2d 1226 (Ohio Ct. App. 1990) (insurance agent).

concluded that the defendants were mistaken as to that and, thus, the economic loss did not bar the plaintiff's tort claims. Here, aside from Hodell's claim for punitive damages under its tort claims, which fail as a matter of law in any event (for the reasons discussed in SAP's Motion to Dismiss and below), the damages being sought by Hodell are identical under all of its causes of action, which is only natural given that Hodell has merely restated its breach of contract claim as various tort claims.

Hodell additionally argues that where non-economic damages are pled, the economic loss rule is inapplicable, and in support thereof mistakenly relies on *Ferro Corp. v. Blaw Knox Food & Chemical Equipment Co.*, 700 N.E.2d 94 (1997) and *Chemtrol v. Adhesives, Inc. v. American Manufacturers Insurance Co.*, 537 N.E.2d 624 (1989). In *Ferro*, the plaintiff commenced a products liability suit against the defendant in connection with the manufacturing of a reactor. The plaintiff claimed economic losses, as well as non-economic losses in the form of property damage to the reactor and replacement of a steel liner. Here, Hodell seeks only economic losses. In *Chemtrol*, the court stated that, had the defect in the product, an arch dryer, caused personal injury or damage to property, the defendant might be found to have breached its duty of care imposed by law, and recovery in negligence would accordingly lie. However, the plaintiff's losses were purely economic, in the form of additional expenses incurred because the product did not perform as expected. Thus, the court declared that the defendant's duty to provide a working product arose not under the law of negligence, but rather under its contract with the plaintiff. Significantly, in *Chemtrol*, the court expressly distinguished between property damage and economic loss, explaining that:

> Property damage generally connotes either damage to the defective product itself or damage to other property. Economic loss is described as either direct or indirect. Direct economic loss includes the loss attributable to the decreased value of the product itself. Generally, this type of damage encompasses the difference between the actual value of the defective product and the value it would have had had it not been defective....Indirect economic loss includes the consequential losses

> sustained by the purchaser of the defective product, which may include the
> value of production time lost and the resulting loss profits.

*Id.* at 629 (internal quotations and citations omitted).  The court added that the definition of

economic loss typically includes the cost of repair or replacement of the defective product, however,

a product's self-inflicted damages is by definition property damage.

Similar to the plaintiff in *Chemtrol* – and unlike the plaintiff in *Ferro* – Hodell has alleged

purely economic losses.  There is simply no allegation by Hodell that it sustained property damage

of any kind, including self-inflicted property damage.  Where, as in *Chemtrol* and in the instant case,

"the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the

duty of the promisor to fulfill the term of the bargain arises only from the contract."  *Chemtrol*

(citing *In re Cincinnati Gas & Elec. Co.,* 656 F. Supp. at 61 (quoting *Battista v. Lebanon Trotting*

*Ass'n* 538 F.2d 111, 117)).[8]

### 3.  Hodell's Causes of Action For Fraud, Fraudulent Inducement and Negligent Misrepresentation Fail, Pursuant To The Parol Evidence Rule.

The parol evidence rule bars Hodell from offering evidence in this action of the alleged pre-

contractual statements which are the basis of these causes of action.  As such, Hodell cannot

maintain these causes of action and they must be dismissed.  Hodell, however, argues that the parol

evidence rule is inapplicable here because the pre-contractual statements are "independent of, or

consistent with," the License Agreement.  Hodell Br., 16.  In connection with this argument, Hodell

concedes that the number of user licenses it was sold by SAP America was an implied term in its

contract with SAP America.  Hodell then contends that evidence of alleged pre-contractual

statements concerning the number of users is admissible to prove these causes of action because

---

[8] Hodell argues that discovery is needed to assess the damages it purportedly sustained in this case, but Hodell's argument is fatal because it did not allege any damages other than economic losses.

these statements are consistent with, and do not contradict, the License Agreement.  Hodell, however, turns the law on its head with this argument.  Hodell seemingly contends that because the parol evidence rule precludes a party from offering into evidence contradictory or inconsistent pre-contractual statements, all consistent statements are therefore admissible.  However, under both Pennsylvania and Ohio law, the parol evidence rule precludes evidence of pre-contractual statements, which not only contradict the written terms, but which supplement them, or which go to matters covered by them.  *See Glassmere Fuel Serv., Inc. v. Clear*, 900 A.2d 398, 402 (Pa. Super. Ct. 2006) (stating the general rule that parol evidence of prior representations is inadmissible as to matters covered by the written agreement with an integration clause); *see Galmish v. Cicchini*, 734 N.E.2d 782, 788-89 (Ohio 2000) (stating that parol evidence precludes offering any evidence of pre-contractual statements that would vary, contradict or supplement the terms contained within a fully integrated document).

Here, the License Agreement is the exclusive contract between Hodell and SAP America, and it embodies the entire agreement between the parties; indeed it is a fully integrated document.[9] FAC, Ex. G (License Agreement, § 11.9).  Even where, as here, one party claims that it was fraudulently induced into entering into a contract because of allegedly false statements made prior to the contract, evidence of any pre-contractual statements as to a matter covered by the agreement is inadmissible.  *Rahemtulla*, 539 F. Supp. 2d at 773.  Hodell, however, seeks to offer evidence that pre-contractual statements were made regarding the number of successful installations, the

---

[9] "The purpose of an integration clause is to give effect to the parol evidence rule: 'Thus, the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony…or other writings, are admissible to explain or vary the terms of the contract.'" *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 773 (M.D. Pa 2008) (citing *Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005) (quoting 1726 *Cherry St. v. Bell Atl.*, 439 Pa. Super. 141, 653 A.2d 663, 665 (Pa. Super. Ct. 1995)).

installation lead time, SAP's own capabilities, and the capabilities of SAP's "channel partners."[10] All of these statements are intertwined with, and merely supplement, the essential terms of the License Agreement (*i.e.*, Hodell's licensing rights to use Business One and SAP's promises that Business One would be capable, suitable, and functional). This is a classic case where the parol evidence rule operates to preclude evidence of pre-contractual statements, and because that evidence is excluded, the causes of action upon which it is based (*i.e.*, fraud, fraudulent inducement and negligent misrepresentation) fail as a matter of law.[11]

Hodell alternatively argues that, under Pennsylvania and Ohio law, one or more exceptions to the parol evidence rule are applicable here. Under Ohio law, Hodell relies on *Galmish*. However, a close reading of *Galmish* indicates that the exception to the rule is similar to that which has been articulated by Pennsylvania courts, namely that parol evidence is admissible in situations where there has been fraud in the *execution* of a contract and where the party proffering the evidence contends that certain terms were supposed to be included in the contract, but were omitted because of fraud, accident, or mistake. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1299 (3d Cir. 1996) (explaining the difference between fraud in the inducement and fraud in the execution as they pertain to Pennsylvania's parol evidence rule); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004) (explaining the "fraud in the execution" exception to the parol evidence rule). Similar to the courts in Pennsylvania, the Supreme Court of Ohio in *Galmish* explained:

---

[10] Hodell contends that fraudulent statements by LSi, IBIS or Amex are attributable to SAP because such statements were made in their capacity as agents of SAP. Hodell also contends that SAP does not dispute this, which is just plain wrong. SAP has effectively denied this bald "agency" allegation in its Motion to Dismiss and has pointed out that the License Agreement expressly explains that no such agency relationship exists. Hodell, thus, errs in relying on *Finley v. Schuett*, 455 N.E.2d 1324 (Ohio App. 1982), where, unlike here, an agency relationship existed.

[11] Hodell relies on *Academy Plaza, LLC 1 v. Bryant Asset Mgmt.*, No. 0205-2774, 2006 WL 1652687 (Pa. Ct. Comm. Pl. June 9, 2006), non-controlling Pennsylvania authority, to support its argument that the parol evidence rule is inapplicable to fraud allegations which do not contradict the terms of the written agreement. As stated above, pursuant to Pennsylvania law, Hodell may not introduce terms to the agreement as to matters already covered by the agreement.

> The principle which prohibits the application of the parol evidence rule in cases of fraud inducing the *execution* of a written contract \*\*\* has been regarded as being as important and as resting on sound policy as the parol evidence rule itself. It has been said that if the courts were to hold, in an action on a written contract, that parol evidence should not be received as to false representations of fact made by the plaintiff, which induced the defendant to *execute* the contract, they would in effect hold that the maxim that fraud vitiates every transaction is no longer the rule; and such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing."

*Galmish*, 734 N.E. 2d at 789 (quoting Right to Show Fraud in Inducement or Execution of Written Contract, 56 A.L.R. 13, 34-36 (1928)). (emphasis added) In the instant case, as discussed in SAP's Motion to Dismiss, there are no allegations of fraud in the execution of the License Agreement. Thus, that exception does not apply.

To the extent Hodell relies on a second exception articulated by the court in *Galmish*, that is, that parol evidence is admissible in situations where a contract is induced by promises fraudulently made with no intention of keeping them, Hodell's reliance is misplaced. By way of a bald allegation that SAP America had no intention of performing its obligations under the License Agreement, Hodell seeks to invoke that exception and avoid application of the parol evidence rule. Hodell's allegation is not only unsupported by any of the remaining allegations in the Amended Complaint – and, thus, entirely bare of any factual support – it is completely contradicted by them. Indeed, the remaining allegations are that SAP America provided Hodell with user licenses as promised, that the software was, in fact, implemented – albeit not to Hodell's satisfaction – and that implementation of the software involved the diligent efforts of Hodell and the defendants over the course of many months. Hodell's bare assertion that SAP America never intended to perform need not, and should

not, be accepted by the Court as true. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).[12]

**D.    The License Agreement's Implied Warranty Disclaimer, And Its Provisions Limiting Hodell's Damages And The Liability Of SAP America Are Enforceable.**

Hodell's argument that these disclaimers and limitations do not apply is flawed for two reasons.  First, Hodell claims that no such provisions are contained in the Development Agreement.  This, however, is irrelevant because that agreement is not applicable to the Hodell-SAP America relationship; indeed, the License Agreement governs that relationship.  Second, even if the Development Agreement were part of the contract, Hodell cannot state that the License Agreement is not.  Hodell signed the License Agreement.   Hodell may not avoid the fact that it expressly agreed to disclaim all of the implied warranties it now alleges were breached by SAP America.  Additionally, it may not avoid the fact that, by way of an express provision in the License Agreement, it agreed to limit both its damages and SAP America's liability if the software failed.  Hodell cannot continue to parrot its fraudulent inducement argument to avoid the express terms of the contract it entered.

To the extent Hodell is arguing that it did not understand the warranty disclaimer or the provisions limiting damages and liability – or that it did not have the ability to negotiate different terms – that argument is entirely unsupported by the allegations in the Amended Complaint and fails

---

[12] Hodell's reliance on *Kreamer Sports, Inc. v. Rocky Brands, Inc.*, No. 2:06-cv-576 2007 WL 1144865, *7 (S.D. Ohio Apr. 16,  2007) for the proposition that the parole evidence rule is inapplicable where a party seeks to introduce, as evidence of fraud, pre-contractual representations that are independent of the written instrument, is misplaced.  In *Kreamer*, the Court, quoting *Galmish*, stated that an exception to the parole evidence rule exists when "a contract is induced by promises fraudulently made, with no intention of keeping them."  For the reasons stated above, this exception is not applicable in this case.  Additionally, Hodell's reliance on *Clemente v. Gardner*, 2004 Ohio 2254, 39 for the proposition that *Galmish* is applicable to a negligent misrepresentation claim is inapposite.  As stated above, the Court in *Galmish* articulated two fraud exceptions to the parol evidence rule.  Neither are applicable here.

as a matter of law.  Indeed, the allegations in the Amended Complaint demonstrate that Hodell was a sophisticated party to the License Agreement.

**E.**     **Hodell's Claims For Punitive Damages Fail As A Matter of Law.**

Even if the Court finds that Hodell has asserted one or more viable causes of action against SAP America, the express terms of the License Agreement preclude Hodell from seeking punitive damages.[13]  Moreover, Pennsylvania and Ohio law are clear that punitive damages are not recoverable in an action for breach of contract.  *Thorsen v. Iron & Glass Bank*, 476 A.2d 928, 932 (Pa. Super. 1984) (citations omitted); *Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922) (stating that punitive damages are not recoverable in an action for breach of contract).  Thus, Hodell's claims for punitive damages fail as to SAP America.  In addition, and in any event, Hodell's claims for *punitive* damages fail as a matter of law because the Amended Complaint does not contain allegations sufficient to support a claim for punitive damages.  Thus, even as to SAP AG, to the extent that one or more of Hodell's tort claims survive the instant motion, these claims fail.

Under both Pennsylvania and Ohio law, even in cases of fraud, an award of punitive damages must be based upon an additional finding that the fraud is aggravated by the existence of malice or ill will, or that the wrongdoing is particularly gross or egregious.  *See Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005); *Logsdon v. Graham Ford Co.*, 376 N.E.2d 1333, (1336 Ohio 1978).  In *Lodgson*, the Supreme Court of Ohio recognized that in any action for fraud, there must be an element of intent, but it will not be every case of fraud where punitive damages are warranted.  The court, thus, stated that "[i]n each case of alleged fraud, the plaintiff, in order to be awarded punitive

---

[13] As discussed in SAP's Motion to Dismiss and above, the License Agreement also precludes Hodell from seeking consequential damages.  Hodell agreed, by way of the License Agreement, to limit the damages it can seek against SAP America to contract damages should it claim, as it does here, that Business One failed.  Hodell, however, is not seeking contract damages in this action.  To the contrary, Hodell is seeking only consequential and punitive damages, which it is precluded from seeking against SAP America.

damages, must establish not only the elements of the tort itself but in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." Hodell, nevertheless, argues that its allegations of intentional misrepresentations alone are sufficient to warrant punitive damages. This argument is misguided. In accordance with *Logsdon*, these allegations may be sufficient to properly plead its fraud claims, but they are not sufficient to plead a claim for punitive damages because they lack allegations that the fraud was particularly gross or egregious.

## II.  CONCLUSION

For the foregoing reasons, and those stated in SAP's Motion to Dismiss, SAP respectfully requests that Hodell's Amended Complaint against SAP be dismissed with prejudice. In the alternative, to the extent the Court finds that one or more of Hodell's causes of action survive the instant motion to dismiss, SAP respectfully requests that Hodell's claims for consequential and/or punitive damages be dismissed.

Dated: August 17, 2009

By:

*/s/Leo M. Spellacy, Jr., Esq.*
Hugh E. McKay, Esq. (0023017 )
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483
(216) 443-9000 / Fax (216) 443-9011
lspellacy@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG

Of Counsel:
Michael J. Miller
Thomas S. Downie
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile:  (215) 988-2757

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1</u>

I, Leo M. Spellacy, Jr., certify that the foregoing Brief adheres to the page limitation set

forth in Local Rule 7.1(f).  This case has not been assigned to a track.

Respectfully submitted,


*/s/ Leo M. Spellacy, Jr.*
Hugh E. McKay (0023017)
Leo M. Spellacy, Jr. (0067304)
Charles W. Zepp (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio  44115
Tel: 216/ 443-9000
Fax: 216/ 443-9011
hmckay@porterwright.com
lspellacy@porterwright.com
czepp@porterwright.com

Attorneys for Defendants, SAP America, Inc. and
SAP AG

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Leo  M. Spellacy, Jr., Esq.
Hugh E. McKay, Esq. (0023017 )
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH  44115-1483
(216) 443-9000 / Fax (216) 443-9011
hmckay@porterwright.com
lspellacy@porterwright.com
czepp@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG