UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE: LESLEY WELLS |
| | ) | MAGISTRATE JUDGE: GREG WHITE |
| -vs- | ) | |
| | ) | |
| SAP AMERICA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

PLAINTIFF HODELL-NATCO INDUSTRIES, INC.'S OBJECTIONS TO THE
MAGISTRATE'S REPORT AND RECOMMENDATION DATED SEPTEMBER 2, 2010

---

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), submits the following Objections to the Magistrate's Report and Recommendation (the "R&R")(ECF #50) filed September 2, 2010. Specifically, Hodell objects to the recommendations of the Magistrate Judge that the Court dismiss a portion of Count III of the Amended Complaint pertaining to certain of Hodell's contract claims against SAP America, Inc. ("SAP") and SAP A.G. (collectively the "SAP defendants") and Count IV of the Amended Complaint for negligence against the SAP defendants.

I.  PROCEDURAL HISTORY

On April 22, 2009, Hodell filed a First Amended Complaint (ECF #26) asserting the following claims:  Count I:  Fraudulent Inducement; Count II:  Fraud; Count III:  Breach of Contract; Count IV:  Negligence; and Count V:  Negligent Misrepresentation.  Hodell's claims arise out of a series of transactions involving Hodell, as purchaser of a business management software, and the SAP defendants, LSi-Lowery Systems, Inc. ("LSi") and The IBIS Group, Inc. ("IBIS") as the marketers and sellers of that software, commonly known as SAP Business One.

On May 18, 2009, LSi and IBIS filed a joint Answer (ECF #30).  On June 21, 2009, in lieu of filing an answer, the SAP defendants filed a Motion to Dismiss the Amended Complaint (ECF #36).  Hodell opposed that Motion (ECF #40).  On August 16, 2010, Magistrate Judge White held oral arguments on the SAP defendants' Motion to Dismiss.  On September 2, 2010, Magistrate Judge White issued his R&R on the disposition of that Motion.  The R&R recommends the denial of the SAP defendants' Motion to Dismiss, except that it recommends dismissal of certain claims in the following respects:  (1) Hodell's breach of contract claim pertaining to the 2004 Purchase should be dismissed as to the SAP defendants; (2) Hodell's

2

breach of contract claim pertaining to the 2005 Purchase should be dismissed solely as to SAP AG; and (3) Hodell's negligence claim should be dismissed as to both of the SAP defendants.

Hodell submits the following Objections to the R&R solely with respect to these three findings, and submits that the remaining recommendations in the R&R should be adopted.

II.  STATEMENT OF FACTS

Hodell asserts no objections to the R&R's recitation of the factual allegations in Hodell's Amended Complaint, and incorporates by reference the R&R's factual recitation and the Statement of Facts set forth in Hodell's Brief in Opposition to the SAP Defendants' Motion to Dismiss the First Amended Complaint (ECF #40), found on pages 2 through 8 thereof.  All capitalized terms herein have the same meaning given to them in Hodell's Opposition Brief. Where necessary, certain portions of the Statement of Facts will be set forth in the Legal Argument section that follows.

III.  LEGAL ARGUMENT

A.  The Amended Complaint States a Claim Against the SAP Defendants for Breach of Contract Pertaining to the 2004 Purchase

The portion of the R&R dismissing Hodell's breach of contract claims against the SAP defendants pertaining to Hodell's purchase of 80 user licenses in December 2004 (the "2004 Purchase") should not be adopted.  Construing the allegations in Hodell's Complaint as true, Hodell has stated a claim for breach of contract against the SAP defendants based upon:  (1) Hodell's undisputed purchase of 80 user licenses from SAP in December 2004; (2) the SAP defendants' express agreement to be bound to the Development Agreement through the acts of its agents, LSi and IBIS; and/or (3) the SAP defendants' status as intended third-party beneficiaries of the Development Agreement.

Contrary to the R&R, it is unnecessary for the SAP defendants to be a party to the Development Agreement for them to be liable to Hodell with regard to the 2004 Purchase. The Development Agreement is not the sole evidence of a contract between Hodell and the SAP defendants. Rather, the Development Agreement is evidence of an overall transactional structure involving Hodell, the SAP defendants, LSi and IBIS whereby Hodell would purchase 80 licenses of SAP Business One to be integrated into other software to be developed pursuant to the Development Agreement.

However, as Exhibit E to the Complaint shows, the actual purchase of 80 user licenses of SAP Business One was effectuated by a purchase order issued by Hodell to IBIS, and subsequently, IBIS to SAP. Further, the Complaint specifically alleges that SAP established a "Channel Partner" relationship whereby all purchases of SAP Business One would be effectuated through SAP's "Channel Partners" as agents of SAP. Compl., ¶¶13-15. Thus, the R&R errs in failing to recognize that a contract for the purchase of 80 user licenses of SAP Business One could be formed merely by the placement of orders by Hodell to SAP through SAP's agents. Whether SAP is a party to the Development Agreement is immaterial to whether a contract was formed by the issuance of a purchase order by Hodell and the acceptance of payment by SAP.

Alternatively, Hodell has plead sufficient facts showing the SAP defendants were parties to the Development Agreement. The First Amended Complaint specifically pleads that the LSi defendants entered into the Development Agreement transactions in their own right, <u>and</u> were authorized to bind SAP to the Agreement as well. FAC, ¶¶13-15, 77-78. These allegations were admitted to in the Answer filed by LSi and IBIS (ECF #30, ¶¶10-11, 24) and should be considered by the Court in ruling upon the Motion to Dismiss. *Buck v. Thomas M. Cooley Law*

4

*School*, 597 F.3d 812, 816 (6th Cir. 2010)(court may refer to other pleadings filed in the same case when ruling upon a motion to dismiss).

Further, the First Amended Complaint alleges that SAP was an intended third-party beneficiary of the Development Agreement, in that the Development Agreement was entered into on the SAP defendants' behalf by the LSi defendants. FAC, ¶¶77-78. As an intended third-party beneficiary, SAP is liable for any breaches of the Development Agreement, just as it intended to reap any benefits from the Development Agreement at the time SAP and its agents fraudulently induced Hodell into signing it. See, *Resource Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F.Supp.2d 763, 771 (N.D. Ohio 2004)(holding, in ruling upon a motion to dismiss, that a third-party beneficiary may be held liable under a contract)(citing *Saum v. Moenter*, 101 Ohio App.3d 48, 53, 654 N.E.2d 1333 (1995) (finding third-party beneficiary liable under loan agreement) and *Ohio Match Co. v. Elm Grove Min. Co.*, 5 Ohio Law Abs. 151 (1927) (noting that by accepting the benefits of a contract, a third-party beneficiary also accepts its burdens).

The R&R errs in limiting this Court's holding in *Resource Title* and the cases cited therein. Moreover, the SAP defendants and the R&R fail to successfully distinguish those cases. Just as in *Resource Title* and the cases cited in that decision, SAP expressly assumed the obligation to provide Hodell with the 80 user licenses in the event LSi, its "Channel Partner," was no longer able to act in its capacity as an agent of the SAP defendants. The Development Agreement itself specifically contemplates that if Hodell's purchase of the licenses through LSi, as SAP's representative, fails due to LSI's bankruptcy or insolvency, "SAP has agreed Hodell-

5

Natco will receive 80 user licenses of SAP Business One from SAP for the balance payment to SAP of $120,000." Exhibit D:  Development Agreement, section 4.[1]

The Development Agreement thus contemplates a direct relationship between Hodell and the SAP defendants, rather than merely the "Channel Partner" relationship SAP hides behind in its Motion to Dismiss.  Moreover, just as in *Resource Title*, the SAP defendants accepted the Development Agreement's benefits – payment for the 80 user licenses.

Nor does the R&R's reliance upon the premise that the SAP defendants have not breached their obligations under the Development Agreement pass muster.  Implied in the Development Agreement is the SAP defendants' and their Channel Partners' obligation to deliver conforming goods; i.e., Business One user licenses conforming to the SAP defendants' representations and those of its Channel Partners.  Because conforming goods were not delivered, the Development Agreement has been breached.

At the pleading stage, it cannot be said, as a matter of law, that SAP did not assume contractual obligations arising from the 2004 Purchase either directly, as a disclosed principal, or as a third-party beneficiary of the 2004 Purchase.  The R&R thus errs in recommending the dismissal of Hodell's claims against the SAP defendants arising from the 2004 Purchase.

    B.    <u>The Amended Complaint States a Claim against SAP AG for Breach of Contract Arising from the 2005 Purchase</u>

As stated in Hodell's Brief in Opposition, SAP AG is either a party to, or liable under the License Agreement by acting as a direct contracting party, a third-party beneficiary of the License Agreement, or a principal acting in concert with SAP America entering into the License

---

[1] The Development Agreement does not specify whether SAP America or SAP AG was responsible for completing performance under the Development Agreement.  At the pleading stage, however, the Development Agreement is clear that SAP itself undertook obligations pursuant to the Development Agreement, and was not merely a third-party beneficiary.  The specific identity of which SAP entity was intended to assume these obligations is a matter for discovery, and could not be resolved on a Motion to Dismiss.

6

Agreement.  The R&R errs by finding facts and disregarding the allegations in Hodell's Complaint which sets forth sufficient allegations at the pleading stage to survive a motion to dismiss.  The exact nature and roles of the contracting parties is more appropriately addressed through discovery, and can not be resolved on a Motion to Dismiss where examination of the facts is confined to the pleadings.

      C.      <u>The Amended Complaint States a Claim Against the SAP Defendants for Negligence</u>

The R&R errs in failing to recognize that Hodell plead, and is entitled to prove, non-economic damages arising from the SAP defendants' conduct in this action.

While it is true that Ohio's economic loss doctrine precludes damages in negligence actions for purely "economic losses," the doctrine is inapplicable where the injured party has alleged non-economic damages.  It is the nature of the loss claimed that controls whether the allegations sound in contract or in tort.  *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 121 Ohio App.3d 434, 440, 700 N.E.2d 94 (1997).  If the allegations claim both damages to property, as well as economic loss, then the economic loss rule is inapplicable.  *Id.* at 440-41. See also, *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 42 Ohio St.3d 40 (Ohio 1989) ("If the defect . . . had caused personal injury <u>or damage to other property</u> . . . Midland-Ross might be found to have breached its duty of care imposed by law, and recovery in negligence would accordingly lie.")(emphasis added).

Courts have defined "property damage" as damage to both the goods sold to the plaintiff and other property belonging to the plaintiff.  *Chemtrol*, supra at 43.  In contrast, "economic losses" are losses attributable to decreased value of the product itself or consequential losses suffered from deficiencies in the product."  *Id.* at 43-44.

Hodell is not required to plead the precise amount, or nature, of its damages in its Complaint.  Rather, F.R.C.P. 54(c) provides that, except in the case of a default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, even if that party has not demanded that relief in its pleadings."

Thus, the R&R errs in failing to construe Hodell's allegations as true, and strays outside the allegations of Hodell's Complaint to find that Hodell has plead solely economic losses where there was no requirement to characterize its losses at all.  The full extent and scope of those damages are more appropriately addressed in discovery and examined by the trier of fact.  See, *Ferro Corp.*, supra at 443 (finding an issue of fact existed on status of damages as either property or economic, which precluded summary judgment based upon the economic loss doctrine).  The classification of Hodell's damages is not properly addressed in a motion to dismiss, and the R&R errs in recommending the dismissal of Hodell's negligence claim against the SAP defendants.

IV.  CONCLUSION

Based upon the foregoing, Hodell submits that the R&R should be adopted by this Court except in three respects:  (1) the Court should not adopt the R&R pertaining to Hodell's breach of contract claims against the SAP defendants arising from the 2004 Purchase; (2) the Court should not adopt the R&R pertaining to Hodell's breach of contract claim against SAP AG pertaining to the 2005 Purchase; and (3) the Court should not adopt the portion of the R&R dismissing Hodell's negligence claim against the SAP defendants.

Respectfully submitted,

*/s/* P. Wesley Lambert
JAMES F. KOEHLER (0007904)
koehler@buckleyking.com
P. WESLEY LAMBERT (0076961)
lambert@buckleyking.com
BUCKLEY KING, LPA
1400 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio  44114-2652
(216) 363-1400
(216) 579-1020   (*facsimile*)
*Attorneys for Hodell-Natco Industries, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September 2010, a copy of the foregoing was filed electronically.  Parties may access this filing through the Court's electronic filing system.

*/s/* P. Wesley Lambert
P. WESLEY LAMBERT (0076961)

851462_1

9