IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAP AMERICA, INC., et al.<br><br>Defendants. | CASE NO. 1:08 CV 2755<br><br>JUDGE WELLS<br><br>**RESPONSE OF DEFENDANTS SAP AMERICA, INC. AND SAP AG TO PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS THE AMENDED COMPLAINT** |

I.      **INTRODUCTION**

Hodell-Natco Industries, Inc. ("Hodell") objects to the Report and Recommendation of Magistrate Judge White on three grounds.  First, Hodell argues that SAP America, Inc. ("SAP America") and SAP AG (collectively, "SAP") are bound to the Development Agreement that Hodell entered into with LSi-Lowery Systems ("LSi") and The IBIS Group, Inc. ("IBIS"), whereby Hodell hired LSi and IBIS to develop a software application specific to Hodell's business needs.  (D.E. 53, p. 3-6.)  Hodell rehashes arguments that were properly rejected by the Court, and does not point to any fact or legal argument that was overlooked.  Second, Hodell claims SAP AG is a party to the License Agreement between SAP America and Hodell.  (D.E. 53, p. 6-7.)  Hodell again retraces its earlier arguments and does not point to any fact or legal argument overlooked by the Court.  Third, Hodell argues that its negligence claim should survive the economic loss doctrine because, according to Hodell, it *may* have suffered non-economic damages and it needs discovery from itself in order to uncover these damages.  (D.E. 53, p. 7-8.) For obvious reasons, this argument was properly rejected by the Court, and Hodell has again failed to demonstrate that the Court erred in any way.

For these reasons, and as explained in more detail below, Hodell's objections should be rejected. SAP incorporates herein by reference its Motion to Dismiss, Reply Brief, and Objection to the Report and Recommendation. (D.E. 36, 41, and 52.) In addition to rejecting Hodell's objections, and in addition to the relief recommended by Magistrate Judge White in favor of SAP, SAP respectfully requests that the Court dismiss Hodell's claims for fraud, fraudulent inducement, and negligent misrepresentation, and strike Hodell's request for punitive damages.

## II. ARGUMENT

### A. The Court Correctly Concluded That SAP Is Not Liable Under The Development Agreement

In an effort to hold SAP America and SAP AG liable under a contract to which neither was party, Hodell continues to assert arguments that are unsupported by law or fact. In the Report and Recommendation, the Court rejected the argument that either of the SAP defendants are parties to the Development Agreement. (D.E. 50, p.8.) The Court correctly found by reading the "initial provisions" of the Development Agreement that it "clearly contemplates that LSi, IBIS, and Hodell are the actual parties to the agreement, and that IBIS would work on integrating its In-Flight Enterprise software with SAP's Business One Software" and that Hodell would "receive up to $100,000 if the resulting product was sold to other users." (D.E. 50, p.8.) This finding is clearly correct, as a review of the Development Agreement reveals that neither SAP America nor SAP AG is a signatory to that agreement, nor is either mentioned as an intended party thereto.[1]

---

[1] It is important to note, as the Court recognized, that the Development Agreement is an agreement for LSi and IBIS, not SAP, to develop a new software application for Hodell that would integrate SAP software. In other words, the purpose of the Development Agreement was not to purchase software from SAP – which was subsequently done through the License Agreement between Hodell and SAP America – but rather to hire LSi and IBIS to perform

(Continued)

In response, Hodell argues that SAP was bound to the Development Agreement because LSi and IBIS were SAP's agents, or because SAP was an intended third-party beneficiary. Both of these arguments were properly rejected by the Court, and Hodell does not point to any fact or legal issue that could warrant a decision different than that reached by Magistrate White on these points.

The Court correctly rejected the argument that the SAP defendants are bound to the Development Agreement on the basis that IBIS and LSi were agents of SAP for purposes of marketing SAP software. As the Court found, even assuming IBIS and LSi were SAP's agents, SAP would not be bound to the Development Agreement as either a disclosed or undisclosed principal because: (1) finding SAP was an undisclosed principal would be entirely inconsistent with Hodell's allegations that it knew LSi was SAP's agent; and (2) finding that SAP is bound to the Development Agreement as a disclosed principal would contradict the language of the Development Agreement which LSi and IBIS entered into as the contracting parties, and not as an agent for SAP. (D.E. 50, p. 9-10.)[2] Hodell does not contend that the Court misapplied the

---

(Continued)

services on behalf of Hodell. Moreover, the fact that the Development Agreement describes a potential contingent liability on the part of SAP to sell software licenses to Hodell in the event IBIS and LSi became bankrupt or insolvent changes nothing. Indeed, the Court correctly concluded that this language is "inconsequential as Hodell was not explicitly bound to purchases the licenses under such circumstances, and because no such bankruptcy or insolvency is alleged to have occurred." (D.E. 50, p. 10.)

[2] Notably, the Court also correctly concluded that Hodell's agency allegations are insufficient, finding that Hodell's mere allegation that IBIS and LSi were agents of SAP for purposes of marketing software "without more, does not render SAP a party to the Development Agreement." (D.E. 50, page 8.) The Court reviewed the allegations of Hodell's complaint, and found it to be "void of any specific allegations that LSi, with either actual or apparent authority, executed the [Development] [a]greement as the agent of SAP or on SAP's behalf." (D.E. 50, page 8.) Hodell does not counter the Court's finding by pointing to any specific allegation in the complaint that was overlooked by the Court or which could change the outcome on this issue. Hodell's only new argument on this point is that LSi and IBIS, in answering Hodell's complaint allegations, did not deny the Hodell allegation that LSi and IBIS were acting as SAP's agents. The fact that LSi and IBIS have not denied that allegation does not cure Hodell's inability to allege agency, nor it is surprising. Indeed, as the target defendants for having allegedly breached the Development Agreement, one would not expect LSi or IBIS to deny the allegation that another party, here SAP, could be liable for LSi's and IBIS's alleged breaches of their agreement with Hodell.

law or overlooked any fact. Instead, Hodell argues that LSi and IBIS "entered into the Development Agreement transaction on their own right, and were authorized to bind SAP to the Agreement as well." (D.E. 53, p. 4.) Hodell seems to suggest that SAP was a disclosed principal, and that SAP and its alleged agents are each liable under the Development Agreement. This argument is contrary to the law, as recognized by the Court. (D.E. 50, p. 90) (citing *Brown v. NAEP, Inc.*, 1983 Ohio App. LEXIS 12800 (Ohio Ct. App., Nov. 17, 1983)).

The Court also correctly concluded that SAP was not an intended third-party beneficiary, let alone one that could be liable under the contract at issue. The Court correctly recognized that there is limited authority for the proposition that a third-party beneficiary may be held liable under a contract, and that such cases are "highly facts specific and do not stand for the general proposition that intended third party beneficiaries always assume liabilities under [a] contract." (D.E. 50, p. 12.) The Court also correctly found that there is no allegation in the complaint that SAP "conducted itself as if it was bound by the Development Agreement" or that the facts as alleged by Hodell demonstrate that "the parties intended to benefit SAP" through the Development Agreement. (D.E. 50, pp. 12-13.) Hodell fails to point to any facts alleged in the complaint or legal authority that could change the Court's decision on this issue.[3]

Hodell's only other argument is that SAP was somehow made a party to the Development Agreement because Hodell issued a purchase order to IBIS, and IBIS subsequently ordered

---

[3] The Court's analysis on the third-party beneficiary issue was thorough and correct. The Court reviewed not just the complaint allegations, but the Development Agreement itself and properly concluded that the "Development Agreement also cannot reasonably be construed as conferring any right of action upon SAP in the event Hodell cancelled or breached the agreement, as it did not obligate Hodell to purchase the software from SAP." (D.E. 50, p.13.) The court further recognized that software would not actually be purchased from SAP until satisfactory progress reviews had been completed for the development of the application contemplated under the Development Agreement. (D.E. 50, p.13, n.8.) Moreover, the Development Agreement gave Hodell the option to cancel and obtain a full refund if its project with IBIS and LSi was substantially behind schedule, and neither of the SAP defendants had any right of action against Hodell in the event that Hodell would have cancelled the contract and received a refund from LSi or IBIS. (D.E. 50, p.13, n.8.)

software licenses from SAP. According to Hodell, there thus existed "an overall transactional structure" that makes SAP liable for the alleged breach of the Development Agreement. (D.E. 53, p. 4.) Assuming, for the moment, that the allegation concerning the purchase order is true, it would not make SAP a party to any underlining contract between LSi, IBIS, and Hodell. The example of a building construction contract between a building owner and a general contractor offers a good analogy. General contractors routinely issue purchase orders for materials to be used in a construction project. By simply filling the purchase order and supplying materials, suppliers do not become parties to the general contractor's agreement with the building owner, nor can they be sued on that contract. Finding otherwise would be nonsensical and contrary to basic contract principles. Here, the Court correctly concluded that SAP, a non-party to the Development Agreement, cannot be liable under that agreement.

### B. The Court Correctly Concluded That SAP AG Is Not Liable Under The License Agreement

Hodell next argues that the Court erred in concluding that SAP AG is not liable for any alleged breach of the Licensee Agreement between SAP America and Hodell. Although Hodell argues that the Court "disregard[ed] the allegations in Hodell's complaint," Hodell does not cite to a single fact or allegation that was overlooked or which would support its argument that SAP AG is a party to, or potentially liable under, the License Agreement. The Court properly held, for the same reasons it found that the SAP defendants are not liable under the Development Agreement, that SAP AG is not a party to the License Agreement, and thus is not liable under that contract. (D.E. 50, p. 14.)

### C. The Court Correctly Concluded That Hodell's Negligence Claim Is Barred By The Economic Loss Doctrine

Hodell's last argument is that its complaint alleges non-economic damages, and that its negligence claim thus survives the economic loss doctrine.  This issue was addressed in detail by the Court during oral argument, and as explained in SAP's objections to the Report and Recommendation, Hodell's counsel admitted during oral argument that there are no allegations of non-economic damages in the complaint.  (D.E. 50, p. 21.)  Although Hodell's counsel attempted to lay out a theory of damages on the hypothetical basis that Hodell may have suffered damages to its computer system at large, and thus suffered damages to other property, the Court rejected that argument as speculative and unsupported by the complaint allegations.  (D.E. 50, p. 21.)  The Court was correct in doing so, as Hodell, in its objection, is still unable to point to any specific allegation in the complaint wherein Hodell has alleged non-economic damages.  Indeed, nowhere in its argument does Hodell cite to a single allegation in its complaint.  (D.E. 53, p. 7-8.)  Instead, nearly two years after this action was commenced in November 2008, Hodell argues that it should be entitled to conduct discovery into its own damages.  That argument was rejected, and the Court correctly found that it is "unnecessary for Hodell to ascertain whether its own information systems have been damaged, as such information would plainly be within Hodell's possession."  (D.E. 50, p. 21, n. 13.)

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Report and Recommendation should be adopted by this Court with respect to the findings that: (1) Hodell's claim for breach of the Development Agreement should be dismissed as it relates to the SAP defendants; (2) Hodell's claim for breach of the License Agreement should be dismissed as it relates to SAP AG; and (3) Hodell's fourth cause of action for negligence should be dismissed.  SAP America and SAP AG incorporate

herein by reference their objection to the Report and Recommendation, and respectfully suggest that in addition to the relief recommended by Magistrate Judge White in favor of SAP, the Court dismiss Hodell's claims for fraud, fraudulent inducement, and negligent misrepresentation, and strike Hodell's request for punitive damages.

Dated: September 30, 2010

By: /s/Charles W. Zepp, Esq.

Hugh E. McKay, Esq. (0023017 )
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483
(216) 443-9000 / Fax (216) 443-9011
lspellacy@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG

Of Counsel:
Michael J. Miller (*pro hac vice*)
Gregory J. Star (*pro hac to be filed*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2010 a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

By:     /s/Charles W. Zepp, Esq.

Hugh E. McKay, Esq. (0023017 )
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH  44115-1483
(216) 443-9000 / Fax (216) 443-9011
lspellacy@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG