UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE:  LESLEY WELLS |
| | ) | |
| -vs- | ) | **REPLY BRIEF IN SUPPORT OF** |
| | ) | **MOTION TO COMPEL RESPONSES TO** |
| SAP AMERICA, INC., et al. | ) | **DISCOVERY REQUESTS** |
| | ) | |
| Defendants. | ) | |

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), through undersigned counsel and pursuant to Fed.R.Civ.P. 26 and 37, submits the following Reply Brief in support of its Motion to Compel Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), to provide responses to Hodell's First and Second Requests for Production of Documents directed to SAP. As set forth below, the contentions in SAP's Opposition Brief are meritless, and SAP should be ordered to produce the documents requested by Hodell, each of which is reasonably calculated to lead to the discovery of admissible evidence.

**I.     INTRODUCTION**

Hodell strongly disputes the factual recitations set forth in defendants' Opposition Brief. Hodell has asserted claims against SAP and its business partner for, *inter alia*, fraud, fraudulent inducement, and negligent misrepresentation relating to the sale of SAP Business One software to Hodell. Hodell has garnered admissions from SAP employees, and SAP's business partner, that the Business One software did not function as represented. Hodell has also obtained documents and testimony showing that SAP knew, or should have known, that the Business One software would not function at Hodell well before Hodell went live on the software in March 2007. In fact, based upon documents **produced by LSi**—SAP's business partner—SAP had

information in its possession as early as 2005 (and likely much earlier) showing that Business One was not an appropriate software solution for Hodell.

SAP has attempted to hide behind a software License Agreement that an employee of LSi presented to Hodell in December of 2005.  The License Agreement contains clauses purporting to substantially limit the damages recoverable by Hodell in this action.  Hodell contends that the License Agreement applies only to 40 licenses purchased by Hodell in December 2005,[1] and that in any event, Hodell was fraudulently induced into signing the License Agreement.

In order to prove fraud or fraudulent inducement, Hodell must prove 1) a representation; 2) material to the transaction; 3) made falsely, with knowledge of its falsity; 4) with the intent of misleading another into relying upon the false statement; 5) justifiable reliance on the representation; and 6) resulting injury proximately caused by such reliance.  *Onyx Envtl. Services, LLC v. Maison*, 407 F. Supp. 2d 874, 878 (N.D. Ohio 2005) (citing *Burr v. Bd. of County Commr. of Stark County*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986); *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998)).

To that end, Hodell is entitled to discovery as to SAP's knowledge of the software's capabilities, and limitations, prior to and during the sale of SAP Business One to Hodell in 2004 and 2005.  Otherwise, Hodell will be foreclosed from proving that SAP's statements were "made falsely, with knowledge of [their] falsity."

As established in Hodell's Motion to Compel, SAP's employees made unequivocal statements regarding testing performed on SAP Business One dating back to at least 2005.  It is

---

[1] Hodell had previously purchased 80 licenses from SAP in 2004, and by December 2005, Hodell had paid at least $180,000 towards those 80 licenses.  SAP's business partner testified that as of December 2004, Hodell was contractually obligated to purchase those 80 licenses, and has further acknowledged that Hodell's purchase of 40 licenses in December 2005 was a separate and distinct transaction from the purchase of 80 licenses in December 2004.

also inconceivable to believe that SAP did not test its software prior to 2005, considering the software was marketed by SAP to the general public since at least 2002.

SAP continues to hide behind the fact that it has no obligations to conduct any search for relevant documents beside collecting documents from a few carefully selected "document custodians." The following is indisputable regarding SAP's discovery practices in this case:

(1) SAP has produced no documents collected from employees involved in the development and testing of SAP Business One software;

(2) Aside from one employee, each of SAP's selected document custodians were involved on the sales side at SAP America in the United States, and thus would have minimal technical, development, or testing documents;

(3) SAP AG, despite being a party to the litigation, has not produced a single document in discovery; and

(4) Most, if not all of SAP's document production in this case have been documents which relate specifically to Hodell. Thus, if a potentially-responsive document does not mention Hodell or LSi by name, or was not generated in the course of the Hodell implementation, it has not been produced.

Further, as stated previously, Hodell never agreed to limit its discovery requests to the search of a few identified custodians. Rather, the selection of custodians was based upon the limited information Hodell had at its disposal at the beginning of discovery regarding SAP employees that were involved in the Hodell implementation. Hodell had no way of identifying which SAP custodians would have knowledge and possession of documents relating to each aspect of this case. Moreover, SAP never informed Hodell that it purportedly had no central repository from which documents could be searched and produced. It would be preposterous to expect Hodell, at the outset of discovery, to identify each and every SAP employee (among tens of thousands) who may have documents in his/her possession responsive to Hodell's requests. It is a basic premise of discovery that the burden of identifying and locating responsive documents

3

lies with the party in possession of those documents. Accordingly, Hodell's Motion to Compel should be granted.

## II. LEGAL ARGUMENT

### A. SAP's Argument Regarding Local Rule 37.1(a) is Moot

SAP continues to assert that Local Rule 37.1(a) requires a denial of Hodell's Motion. To the extent that Hodell's original Motion contravened Local Rule 37, that issue has been subsequently resolved by the Court and SAP's continued reference to that Rule should be put to rest. Specifically, the Court held a conference on March 15, 2012 to discuss the pending discovery Motion. As set forth in Local Rule 37, the Court ordered counsel for SAP and Hodell to discuss the pending Motion to Compel and to resolve as many of the issues raised therein as possible. To the extent issues remained unresolved, the Court ordered SAP to respond to Hodell's Motion.

The parties held the discovery conference ordered by the Court on March 21, 2012. The parties then submitted letters to the Court outlining their agreement as to certain discovery requests. SAP has now responded to the remaining issues. Thus, to the extent there was any non-compliance with Local Rule 37 at the time Hodell filed its Motion to Compel, the issue has been cured by order of the Court and subsequent discovery conferences between the parties.

### B. The Remaining Discovery Requests at Issue Are Calculated to Lead to the Discovery of Admissible Evidence and SAP Must Be Ordered to Respond

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b) (1). Determining the proper scope of discovery falls within the broad

4

discretion of the trial court. *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). As a rule, information is discoverable if: 1) "relevant to the claim or defense of any party;" 2) "reasonably calculated to lead to the discovery of admissible evidence;" and 3) not subject to privilege. *Kentucky Speedway, LLC v. Nat'l Ass'n. of Stock Car Auto Racing*, 2006 WL 5097354 (E.D. Ky. Dec. 18, 2006).

In *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995), the Court stated:

> The Court expects that any trial attorney appearing as counsel of record in this Court who receives a request for production of documents in a case such as this will **formulate a plan of action which will ensure full and fair compliance with the request.** Such a plan would include communicating with the client to **identify the persons having responsibility for the matters which are the subject of the discovery request and all employees likely to have been the authors, recipients or custodians of documents falling within the request**. The plan should ensure that all such individuals are contacted and interviewed regarding their knowledge of the existence of any documents covered by the discovery request, and should include steps to ensure that all documents within their knowledge are retrieved. **All documents received from the client should be reviewed by counsel to see whether they indicate the existence of other documents not retrieved or the existence of other individuals who might have documents, and there should be appropriate follow up.**

*Id.* at 461 (emphasis added). Thus, contrary to SAP's position, the burden is not upon Hodell to identify which custodians SAP must search for responsive documents.

### 1. First Document Request No. 14: All documents referring or relating to the acquisition of TopManage Financial Systems by SAP.

Information related to the acquisition of TopManage Financial Systems ("TopManage") is relevant to determining the software's capabilities and limitations at the time it was purchased from TopManage and branded as SAP Business One. Hodell has offered to limit the scope of documents sought in this Request solely to documents pertaining to the software's capabilities and limitations at the time the software technology was acquired. SAP has refused to produce

5

any responsive documents despite this offer.  Moreover, SAP's willingness to conduct a search of its "custodial collections" is a hollow gesture at best.  As discussed above, SAP's selected document custodians are salespeople in the United States, and thus it was always highly unlikely they would have any documents responsive to this Request.

Accordingly, SAP should be ordered to produce the documents requested in First Request No. 14.  If the Court desires, Hodell is willing to discuss limiting the scope of documents responsive to this Request in order to avoid any perceived undue burden upon SAP.

        **2.**      **Second Request Numbers 5, 15, and 17:  Documents Relating to Installations at Weidmueller, Flo-Mo and Fast-Rite**

In propounding Request Numbers 5, 15, and 17, Hodell did not randomly select three customer implementations of SAP Business One.  Rather, these Requests were based exclusively on comments from SAP's own document production referencing these installations as being analogous to the failed implantation at Hodell.  SAP's claim that each customer  implementation is unique may indeed be true.  However, these three implementations were similar enough to Hodell's implementation that they were frequently referenced throughout SAP internal conversations discussing the installation issues experienced by Hodell.

The documents requested by Hodell would tend to show issues encountered by SAP in companies with similar profiles to that of Hodell.  The documents would also show what SAP knew, or should have known, based upon these installations.  Further, the requested documents would show SAP's opinions and/or conclusions as to why issues were encountered at these locations, and why they were comparable to the issues experienced by Hodell.  Importantly, while SAP continues to blame the incorporation of LSi's InFlight software for the problems experienced by Hodell, InFlight was not present at either Weidmueller or FloMo.  Thus, the requested documents may be relevant to dispute SAP's attempts to deflect blame for Hodell's

failed implementation. After all, it was SAP, not Hodell, which compared Hodell's installation to those at Weidmueller, Flo-Mo, and Fast-Rite.

Further, Hodell has agreed to limit the scope of documents sought in Request Numbers 5, 15, and 17 in an attempt to alleviate any perceived undue burden upon SAP. However, SAP has refused to produce any responsive documents despite Hodell's offer.

### 3. Second Document Request No. 18: Documents Relating to the SAP 2004 North America Field Kick Off Meeting

Hodell has requested documents relating to a "Field Kick Off Meeting" held by SAP in January 2004. Notes of that meeting, produced by LSi in discovery, indicate that salespeople were instructed that there was "no upper size limit" for customers that could be sold SAP Business One. Such an instruction is clearly relevant to Hodell's claims.

Importantly, LSi has produced a series of technical specification documents and presentations prepared by SAP, including: (1) a 2006 document titled "Sizing Transaction Volumes" from an SAP Summer Sales Meeting specifying that a deal would be "too large" for Business One if it exceeded 30 users; (2) An SAP Business One Sizing Guide from August 2004 showing that Hodell's environment was substantially larger than what had been tested for the software; (3) notes from a January 2006 SAP partner meeting stating that the SAP Business One "sweet spot" was at fifty (50) concurrent users – 70 less than Hodell was purchasing; and (4) an SAP Business One "Statement of Direction" for 2005 and 2005 stating that the software would be targeted to companies substantially smaller than Hodell.

Thus far, SAP has withheld each of these documents, and one can only guess what similar, additional documents are in SAP's sole possession that have not been produced. While Hodell requested documents specifically relating to the 2004 "Field Kick Off Meeting," it is indisputable that SAP has in its possession countless other documents discussing the target

7

market, user capacity, transaction capacity, and testing results for its software. SAP has produced none of it. Accordingly, Hodell is entitled to an order compelling SAP to produce documents relating to the 2004 Field Kick Off Meeting, and based upon the documents produced pursuant to SAP's agreed supplemental production, Hodell reserves the right to renew its Motion with respect to additional similar documents from other presentations and seminars.

**III.     CONCLUSION**

Based upon the foregoing, Hodell requests that its Motion to Compel be granted, and that SAP be ordered to produce the documents requested in Hodell's Motion.

        Respectfully submitted,

        */s/* P. Wesley Lambert
        JAMES F. KOEHLER (0007904)
        lkoehler@koehlerneal.com
        P. WESLEY LAMBERT (0076961)
        wlambert@koehlerneal.com
        KOEHLER NEAL LLC
        3330 Erieview Tower, 1301 East 9th Street
        Cleveland, Ohio  44114
        (216) 539-9370/(216) 916-4369   (*facsimile*)
        *Attorneys for Hodell-Natco Industries, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2012, a copy of the foregoing was filed electronically.  Parties may access this filing through the Court's electronic filing system.

>/s/ P. Wesley Lambert
>P. WESLEY LAMBERT (0076961)