UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE:  LESLEY WELLS |
| | ) | |
| -vs- | ) | MEMORANDUM IN SUPPORT |
| | ) | OF PLAINTIFF HODELL-NATCO |
| SAP AMERICA, INC., et al. | ) | INDUSTRIES, INC.'S MOTION FOR |
| | ) | JUDGMENT ON THE PLEADINGS, OR |
| Defendants. | ) | ALTERNATIVELY, FOR SUMMARY |
| | ) | JUDGMENT |

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), through undersigned counsel, respectfully submits the following Memorandum in Support of its Motion for Judgment on the Pleadings, or, alternatively, for Summary Judgment against defendants LSi-Lowery Systems, Inc. ("LSi"), and The IBIS Group, Inc. ("IBIS,") (collectively "the LSi Defendants"), and requests an Order of this Court dismissing the Counterclaim under either Fed.R.Civ.P. 12(c) or 56(a).

I.   **STATEMENT OF FACTS**

On April 22, 2009, Hodell filed a First Amended Complaint (ECF #26) against LSi and its co-defendants, SAP America, Inc. and SAP AG (collectively "SAP").  Hodell's First Amended Complaint asserts, among others, claims for breach of contract and breach of warranties against the LSi Defendants.  Hodell's claims arise out of a series of transactions involving Hodell, as purchaser of a business management software, and SAP and the LSi Defendants as the marketers and sellers of that software known as SAP Business One ("Business One").  The LSi Defendants further agreed to develop a software program add-on known as In-

1

Flight Enterprise ("IFE") to be integrated into the SAP One software (Business One and In-Flight will be collectively referred to as "the Software").

Hodell entered into two separate and distinct transactions for the purchase of software from the LSi Defendants and SAP based upon representations made by the LSi Defendants and SAP regarding the qualities and characteristics of the SAP Business One software. This motion relates only to the first transaction, which occurred in December 2004 when Hodell and the LSi Defendants entered into a "Development Agreement." Deposition of Daniel Lowery ("Lowery Depo.") at 190.[1] A true and accurate copy of the Development Agreement is attached as Exhibit A.

After signing the Development Agreement with the LSi Defendants, Hodell worked diligently with SAP and the LSi Defendants to implement the Software. The Lowery Defendants admitted the following allegation from Hodell's First Amended Complaint in their Answer:

> Following its purchase of 80 user licenses for SAP Business One in December 2004, Hodell-Natco worked diligently to implement the software with the assistance of defendants.

*See* LSI Defendants' Answer, at ¶19 (ECF # 30); First Amended Complaint, at ¶48 (ECF #26). Further, the LSi Defendants' President testified: "Q. You would agree with me that Hodell did everything in their power to make the installation of Business One work? A. I do." Lowery Depo. at 406.

Hodell went live on the Software on or about March 8, 2007. Lowery Depo. at 253. However, despite Hodell's best efforts, the Software implementation was a complete failure. Immediately upon the switch-over from Hodell's legacy system, Hodell experienced severe performance problems relating to the Software including, but in no way limited to, system

---

[1] Relevant portions of Mr. Lowery's deposition are attached hereto as Exhibit B.

2

freezes, "memory leaks," and overall slow performance. Lowery Depo. at 253-54 ("Q. Did issues with the performance of Business One arise immediately upon going live? A. Yes. Yes. Q. Do you know what those issues were? A…. One was system freezes, another was memory leaks, and the last was the DI API slow. You couldn't get in and out… So to process a long order… would take, you know, a long time, unacceptably long.").

Mr. Lowery testified that performance of the Software was never acceptable up through the time that Hodell made the decision to switch software platforms. The LSi Defendants' Answer to the First Amended Complaint admitted as follows: "Notwithstanding the best efforts of Hodell-Natco, the installation of SAP Business One was an abject failure." *See* LSI's Answer to First Amended Complaint at ¶19 (ECF #30); First Amended Complaint, at ¶ 19 (ECF #26). Mr. Lowery further acknowledged at his deposition as follows: "Q: Do you agree with me that the performance of Business One was unacceptable at Hodell-Natco? A: I do." Lowery Depo. at 835.

The LSi Defendants also admitted that "at no time during IBIS's involvement in marketing and selling the software, was the software capable of supporting the number of users required by Plaintiff." *See* LSI's response to Hodell's Request for Admission, No. 9, attached hereto as Exhibit C. The LSi Defendants have admitted that the SAP Defendants, and not Hodell, should be responsible for payment of the $60,000 that is the subject of their Counterclaim. In their responses to Interrogatories submitted by SAP, the LSI Defendants stated: "We paid $60,000 to SAP for their worthless program that Hodell-Natco has refused to pay us." See LSi's Response to SAP Interrogatory No. 8, attached hereto as Exhibit D.

Thus, there is no disputed issue of fact that: (1) Hodell contracted for the delivery and implementation of a working, performing software solution; (2) The LSi Defendants were to

3

receive the final $60,000 installation payment upon successful implementation; and (3) the Software solution delivered by the SAP and LSi Defendants never performed adequately, and indeed, was an "abject failure."

## II. LEGAL ARGUMENT

### A. The LSi Defendants Failed to Adequately Plead Their Counterclaim

In reviewing a motion for judgment on the pleadings, a court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir.2007). However, the court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.*

The Supreme Court has set forth a clear standard for notice pleading claims in Federal Court. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Court noted, that in additional to pleading the elements of a claim, a claim as pled "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Further, as stated above, while the court must accept all allegations as true, that tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal, et al.*, 556 U.S. 662, 678 (2008).

In the present case, the LSi Defendants failed to plead the elements of their claim, much less provide any factual allegations in support of that claim. In fact, the full extent of the LSi Defendants' counterclaim against Plaintiff summarily states the legal conclusion that:

> There is due and owing by Plaintiff to Defendants the sum of $60,000 for services rendered and expenses advanced by Defendants on behalf of Plaintiff.

The LSi Defendants' Answer to Plaintiff's First Amended Complaint, at 5. (ECF # 30). The LSi Defendants have provided no other facts or allegations in support of this claim. Because the LSi

Defendants have failed to plead the elements, or even the most basic facts supporting this claim, Hodell requests that this Court dismiss the LSi Defendants' counterclaim.

### B. Even if the LSi Defendants Adequately Plead their Counterclaim, Hodell is Entitled to Summary Judgment

#### 1. Summary Judgment Standard

A party is entitled to Summary Judgment relief, if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988); Fed. R. Civ. P. 56(a). Plaintiff notes that a fact is "material" only if its resolution will affect the outcome of the lawsuit. *Sekerak v. National City Bank*, 342 F. Supp.2d 701, 706 (N.D. Ohio 2004). Therefore, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). With regard to a claim brought under a contract, if the contract's terms are clear and unambiguous, a court may grant summary judgment since contract interpretation is a matter of law. *Sekerak*, 342 F. Supp.2d at 706.

#### 2. The LSI Defendants' Implementation of the Software was Unsuccessful, Constituting a Breach of the Development Agreement and Precluding LSi's Counterclaim

Even if the LSi Defendants had properly pled their counterclaim against Hodell, Plaintiff would be entitled to Summary Judgment as a matter of law under the unambiguous terms of the December 2004 Development Agreement. *See* Exhibit A.

Under the unambiguous terms of that agreement, Hodell was to pay the LSi Defendants up to $300,000, in $60,000 increments, upon the successful completion of various steps of the Software implementation. *Id.* In exchange, the LSi Defendants were to develop the InFlight

5

software add on, integrate that software into Business One, and implement the Software for Hodell's use. *Id.*

The LSi Defendants have acknowledged through their Principal, Dan Lowery that Hodell paid the LSi Defendants a total of $240,000 under the Development Agreement. *See* Lowery Depo. at 192. While Mr. Lowery stated that Hodell did not pay the full purchase price of $300,000, he acknowledged that the final $60,000 had been withheld under the terms of the contract because that final payment was "due on successful implementation" of the Software. *Id.*

As stated above, the Development Agreement notes that Hodell was required to make a final payment of $60,000 upon the "successful implementation" of the Software and that determination would be "mutually agreed" upon by the parties. Ex. A at 1. The LSi Defendants' pleadings, discovery responses and deposition testimony in this case have, in fact, established that the implementation of the Software at Hodell was unsuccessful. For example the LSi Defendants have admitted in their Answer that:

> Following its purchase of 80 user licenses for SAP Business One in December 2004, Hodell-Natco worked diligently to implement the software with the assistance of the Defendants. Notwithstanding the best efforts of Hodell-Natco, the installation of SAP Business One was an abject failure. Hodell-Natco continued its efforts to make SAP Business One minimally functional until 2008 when it reached the conclusion that SAP Business One had failed and that it needed to be replaced.

*See* First Amended Complaint at ¶ 48 (ECF #26); LSi's Answer to the First Amended Complaint, at ¶ 19 (ECF # 30).

Further, during the deposition of Dan Lowery, the owner and President of the LSi Defendants, Mr. Lowery admitted that the problems with SAP Business One were "never fixed," and that the Software performance was "unacceptable." Lowery Depo. at 267, 835. Under the terms of the Development Agreement, the LSI Defendants' failure to provide Hodell with a

6

successful implementation of the Software released Hodell from any obligation to pay the LSi Defendants the remaining $60,000 installation payment.

### III.     CONCLUSION

Based upon the foregoing, plaintiff Hodell-Natco Industries, Inc. requests summary judgment in its favor on the LSi Defendants' Counterclaim.

Respectfully submitted,

*/s/* P. Wesley Lambert
JAMES F. KOEHLER (0007904)
lkoehler@koehlerneal.com
P. WESLEY LAMBERT (0076961)
wlambert@koehlerneal.com
KOEHLER NEAL LLC
3330 Erieview Tower, 1301 East 9th Street
Cleveland, Ohio  44114
(216) 539-9370
(216) 916-4369   (*facsimile*)
*Attorneys for Hodell-Natco Industries, Inc.*