IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC. | CASE NO. 1:08 CV 2755 |
| Plaintiff, | JUDGE WELLS |
| v. | **RESPONSES TO** |
| SAP AMERICA, INC., et al. | DEFENDANTS SAP AMERICA, INC. AND SAP AG'S FIRST SET OF INTERROGATORIES TO CO-DEFENDANTS LSI-LOWERY SYSTEMS, INC. AND THE IBIS GROUP, INC. |
| Defendants. | |

DEFENDANTS SAP AMERICA, INC. AND SAP AG'S FIRST SET OF
INTERROGATORIES TO CO-DEFENDANTS
LSI-LOWERY SYSTEMS, INC. AND THE IBIS GROUP, INC.

Pursuant to Federal Rules of Civil Procedure 33, Defendants SAP America, Inc. and SAP AG, by and through their undersigned attorneys, hereby submit the following First Set of Interrogatories to Co-Defendants LSi-Lowery Systems, Inc. ("Lowery") and Lowery's subsidiary, The IBIS Group, Inc., (collectively "LSI") and request LSI to provide answers to the interrogatories herein within the time and in the manner prescribed by Rule 33.

DEFINITIONS and INSTRUCTIONS

For the purposes of these Interrogatories, the following definitions apply:

1.    The term "All Documents" means every Document, as defined below, which can be located, discovered, or obtained by reasonably diligent efforts, including without limitation all documents possessed by: (a) you or your counsel; or (b) any other person or entity from which you can obtain such documents by request or which you have a legal right to bring within your possession by demand.

2. The terms "LSI," "You," or "Your" mean LSi-Lowery Systems, Inc. ("Lowery") and Lowery's subsidiary, The IBIS Group, Inc., ("IBIS"), as well as their agents, officers, directors, employees, attorneys, accountants, assignees, and other representatives of LSI.

3. The term "SAP" means Defendants, SAP America, Inc. and SAP AG, their agents, officers, directors, employees, attorneys, accountants, assignees, and other representatives of SAP.

4. The term "Hodell" means Plaintiff, Hodell-Natco Industries, Inc., its agents, members, officers, directors, employees, attorneys, accountants, assignees, and other representatives of Hodell.

5. The term "Communication" means any oral, electronic, Or written transmission of information between any Person as defined below, including, but not limited to, meetings, discussions, conversations, telephone calls, electronic mail, memoranda, letters, telecopies, telexes, or conferences.

6. The term "Amended Complaint" means the latest pleading filed by Hodell in this legal action, and all amendments and supplements thereto.

7. The term "LSI's Answer" means the Answer to Amended Complaint, Counterclaim and Cross-Claim filed jointly by Lowery and IBIS, and all amendments and supplements thereto.

8. The term "Development Agreement" means the software development agreement between Hodell and LSI, entered in December of 2004.

9. The term "License Agreement" means the 2005 software license and maintenance agreement between Hodell and SAP America, Inc.

2

10. The term "American Express" means American Express Tax and Business Services, Inc., its agents, officers, directors, employees, attorneys, accountants, assignees, and other representatives of American Express.

11. The term "Business One" means the SAP-produced business software solution SAP Business One.

12. The term "Date" means the exact day, month, and year, if ascertainable, or if not, the best approximation possible.

13. The term "Document" means arty document, electronically stored information, or tangible thing including, but not limited to, the original and non-identical copies, regardless of origin or location (including electronically stored information as part of a disaster recovery program) of any correspondence (including, but not limited to, electronic mail), records, tables, charts, maps, analyses, graphs, indices, schedules, reports, tnemoranda, notes, diaries, logs, letters, telegrams, messages (including, but not limited to, reports of telephone conversations and conferences), studies, books, pamphlets, periodicals, magazines, booklets, circulars, bulletins, instructions, minutes, communications (including, but not limited to, inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questimmaires, surveys, contracts, options to purchase, memoranda of agreements, assignments, licenses, books of account, orders, invoices, statements, bills, checks, wire transfers, vouchers, notebooks, data sheets, data processing cards, wage statements, photogaphs, photographic negatives, phone records, tape recordings, wire recordings, transcript of records, drawings, blueprints, catalogs, sound recordings, video recordings, brochures, all other written matter of any kind or any and all data or compilation from which information can be obtained and translated if necessary. Each discovery request with respect to any document should be considered as including all copies and

to the extent applicable, preliminary drafts of documents which, as to content, differ in any respect from the original or final draft or from each other (e.g., by reason of handwritten notes or comments having been made to one copy of a document but not another).

14. As used herein in reference to a natural person, the term "identify" means to state in relation to such person the following information: (i) the name of the person; (ii) the person's home address and telephone number; (iii) the person's employer; (iv) the person's current job title or position; and (v) the person's present business address and telephone number. If any of the above information is not available, state any other available means of identifying such person.

15. As used herein in reference to a person other than a natural person, the term "identify" means to state in relation to such person the following information: (i) the name of the person; and (ii) the person's address and telephone number. If any of the above information is not available, state any other available means of identifying such person.

16. As used herein in reference to a communication, the term "identify" means to state in relation to such communication the following information: (i) the nature of the communication (e.g., verbal conversation, letter, e-mail); (ii) the participants, author, and/or recipients of the communication; (iii) when such communication took place; and (iv) the general substance of the communication.

17. As used herein in reference to a document, the term "identify" means to state the date, author, addressees and subject matter of the document.

18. As used herein, the singular shall include the plural and the plural shall include the singular; the words "and" and "or" shall be both conjunctive and disjunctive, as necessary to

4

make the request inclusive rather than exclusive; the words "he," "she" or any other gender specific pronouns shall include any individual, regardless of sex.

19. The term "Person" means any natural person, firm, proprietorship, association, partnership, joint venture, governmental agency, department, entity, corporation, and every other type of organization or entity.

20. The phrases "refer to," "relate to," "refers to," "relates to," "referred," "relating to" and/or "regarding" mean making any reference to, mentioning, describing, supporting, concerning, pertaining to, and/or relating in any way.

21. "Set forth the basis" with regard to an allegation, contention, or assertion means to set forth: (a) all facts supporting such allegation, contention, or assertion; (b) identify all documents supporting such allegation, contention, or assertion; and (c) identify all persons known, or believed, to have personal knowledge of such facts.

22. For those Interrogatories in which you are asked to provide the legal and factual bases in support of a particular contention, you are not required to marshal all of your available proof, but only to respond in a manner consistent with the Federal Rules of Civil Procedure.

## INTERROGATORIES

Defendant objects to the three to four pages of "Instructions" and "Definitions", if they are an attempt by Plaintiff to expand upon discovery permitted by the Rules of Civil Procedure. There is no representation that these responses are in accordance with those "Instructions" and "Definitions", or that those "Definitions" and "Instructions" have even been read. In addition, the signature below is intended to be applicable to any Objection raised in response to any of the following discovery requests.

Defendants also specifically state that the questions that seek "all" factual basis for a certain point or "all" legal basis for a point can not be fully answered as most of the following answers call for narrative responses and explanations from numerous people that can not possibly be distilled into a succinct, clear response in writing. In addition, interrogatories are not substitutes for motion practice, so although Defendants will endeavor to respond to the substance of the request, Defendants reserve the right and intend to make it clear these discovery responses are intended to convey the substance of Defendant's positions and beliefs called for but the answers can not and will likely not set forth "all" basis. These answers will certainly be supplemented as discovery proceeds, by both deposition testimony and document productions.

_____
ROY A. HULME

## INTERROGATORY NO. I:

Set forth all legal and factual basis that support your contention in paragraph 12 of Your Answer that Lowery and IBIS were "agents of SAP for the SAP products," and "specifically deny that they made any independent representations regarding the capabilities of the SAP Business One product separate and apart from those representations made by SAP.

ANSWER: In summary, each and every representation made by these answering Defendants was a recitation of information supplied by SAP, either in writing, verbally or by actions of ASP. For example, SAP did a presentation in Las Vegas in January of 2004 that we attended at which SAP described its Business One product, its targeted market, and its intent to "partner" with groups such as us. SAP made the decision to go-to-market with Business One through a partner channel. SAP recruited LSi and partners similar, using search firms, referrals, and other internal means to find experienced software partners, capable of selling Business One.
LSi was eventually contacted by Dan Kraus, who headed up the development of the channel for SAP. As they said they would, SAP held us out as their partners and told us we were partners. SAP held many conferences and SAP told us to make it clear SAP was the developer, owner and

> responsible for the product sold. The only information we ever communicated to customers and potential customers in regard to the SAP product was that which SAP authorized these Defendants to communicate to third parties including Plaintiff. The functionality of SAP SQL data base promised 'drag and relate" management information access. This was promised by SAP as being in their base product. SAP stated their product could run from 5 to 500 employees.
> LSI made no independent warranties or promises as to performance or other applicability of the Business One product separate from whatever was contained in literature supplied or made available by SAP. Everything we did on this project was done with the knowledge and was permitted and in fact promoted by SAP. In fact we all we all referred to this as the Hodell-Natco SAP project.
>
> As to your request for applicable legal authority, see, as examples, *James G. Smith & Assocs. v. Everett*, 439 N.E.2d 932, 935 (Ohio Ct. App. 1981); *The Promotion Co., Inc. v. Sweeney*, 782 N.E.2d 117, 123 (Ohio Ct. App. 2002) *Waterloo Coal Co., Inc. v. Komatsu Mining Sys. Inc.* 2003 WL 124137 (SD Ohio 2003); *Staco Energy Products Co. v. Driver-Harris Co.* 578 F. Supp. 700 (SD Ohio 1983), ORC § 1302.28 and similar statutory and common law that is applicable to this case.

INTERROGATORY NO. 2:

Set forth all legal and factual basis that support your contention in paragraph 13 of Your Answer that Lowery and IBIS "worked in conjunction with Plaintiff to design and implement the InFlight Enterprise software which SAP encouraged."

ANSWER:

> SAP urged and promoted us work with plaintiff to develop add on applications to the SAP product. In this case it is an inventory management software solution for the fastener industry. LSi acquired The IBIS Group in Chicago April 28th 2004. IBIS was an SAP partner at the time of purchase. SAP encouraged this acquisition and saw it as a means to more quickly build our InFlight Enterprise add-on application for Business One. At the time of purchase, the IBIS Group had developed a Fastener add-on application for FACTS software. IBIS had approximately (35) customers using FACTS Software with "InFlight for FACTS" around the country. Hodell Natco was one of the companies running InFlight for FACTS from the IBIS group. SAP offered technical training for our people to use their SDK (Software Development Toolkit) so we would know how to integrate our applications into SAP Business One. We entered into a development agreement with Plaintiff, LSI 000437-438. LSi sent our programmers to the classes offered. We had weekly conference calls with the Hodell Natco and SAP discussing and jointly working on the development.

The request for legal authority does not seem to be applicable to this question.

INTERROGATORY NO. 3:

Set forth all legal and factual basis that support your contention in paragraph 21 of Your Answer that "there were many problems with the SAP Business One software."

ANSWER:

Start with the fact Plaintiff has filed a lawsuit making this allegation and we agree with that allegation. We had constant complaints from Hodell-Natco that we also experienced. We communicated these problems to SAP and they agreed there were problems. They hired another consulting group, Apollo that agreed there were many problems with the SAP software, not our implementation and operation. SAP's DI API was ultimately determined not to be able to handle the number of users SAP represented it could support. As examples of the communications and problems, see LSI 000403-405, 419, 170-173, 407-410, 219-220, 454, 182-183, 194. There are many more documents of a similar nature produced in response to Plaintiff's discovery requests and will likely be more examples found and produced by all parties and third parties as discovery progresses.

The request for legal authority does not seem to be applicable to this question.

INTERROGATORY NO. 4:

Set forth all legal and factual basis that support your contention in paragraph 24 of Your Answer admitting the allegations in paragraph 78 of the Amended Complaint that "SAP was a disclosed principal for whose benefit LSi contracted with Hodell-Natco ... [and] SAP is liable for any breaches which may be established against LSi."

ANSWER:

Everyone involved in this transaction, including SAP, was aware that the SAP Business One software was not a product designed, created, marketed by LSI. It was SAP's product. It was SAP's people and organization that was to stand behind the SAP Business One software. See also response to interrogatory No. 1.

INTERROGATORY NO. 5:

Set forth all legal and factual basis that support your contention in paragraph 25 of Your Answer denying the allegations in paragraph 81 of the Amended Complaint that "LSi materially breached its contract with Hodell-Natco and the implied warranties of merchantability and fitness for a particular purpose."

ANSWER:

LSI made no independent warranties, none can be applied under the circumstances of this transaction, and if there were breaches of any representations or implied warranties, those breaches were of SAP. See also responses to Interrogatories 1, 3 & 4.

INTERROGATORY NO. 6:

Set forth all legal and factual basis that support your contention in paragraph 27 of Your Answer that Lowery and IBIS "were agents of disclosed principals and accordingly have no duty to Plaintiffs for the transgressions in" the Amended Complaint.

ANSWER:

See response to Interrogatory No. 1.

INTERROGATORY NO. 5:

Set forth all legal and factual basis that support your contention in paragraph 4 of Your Cross-Claim against SAP that lals to the claims of Plaintiff, LSI-Lowery Systems, Inc. and the IBS [sic] Group, Inc. are entitled to indemnity or contribution from SAP to the extent they are required to make payment to Plaintiff, plus attorney fees and expenses and costs of both defending against Plaintiff s claims and prosecuting their cross claims."

ANSWER:

As highlighted in the prior answers, everyone involved in this transaction, including SAP, was aware that the SAP Business One software was not a product designed, created, or produced by LSI. It was SAP's product. It was SAP's people and organization that was to stand behind the SAP Business One software. Under these circumstances, one who might be found liable only because of its relationship to another, SAP in this case, is entitled to seek indemnity from the primarily liable entity. For analogous Ohio law, see *Whitney v. Horrigan*, 112 Ohio App. 3d 511 (10th Dist. 1996), *Lattea v. City of Akron*, 9 Ohio App. 3d 118 (10 Dist. 1982); *Kemmeter v. McDaniel Backhoe Serv.* 89 Ohio St. 3d 409 (2000); *General Acc. Fire & Life Assure. Corp. v. Smith & Oby Corp.* 148 F. Supp. 126 (ND Ohio 1957); *Allen v. Standard Oil Co.* 2 Ohio St. 3d 122 (1982)

7

INTERROGATORY NO. 6:

Identify any and all alleged representations attributed to SAP, including but not limited to any alleged representations referred to in paragraph 12 of Your Answer.

ANSWER:

We can not possibly list all the representations made. Discovery is ongoing and is being contested between Plaintiff and SAP. Some are attached to Plaintiff's complaint. Others are memorialized in LSI 00055, the documents attached to Plaintiff's complaint and amended complaint, the representations made at the weekly meetings in which we participated with SAP, plus Hodell-Natco had many documents published by SAP and its partners other than us. The most significant from our position was that Business One was perfect for midsize companies including plaintiff, and that the InFlight program would be easily incorporated to satisfy the needs of plaintiff.

INTERROGATORY NO. 7:

Set forth all legal and factual basis for your failure to respond to the allegations contained in paragraph 46 of the Amended Complaint.

ANSWER:

**Oversight of counsel. The order was for 80 full users of SAP B1. SAP, to our knowledge never did return a signed copy of Exhibit G.**

INTERROGATORY NO. 8:

Identify and describe the method(s) used to determine Your alleged damages sought in the LSI's Cross-Claim and Counterclaim.

ANSWER:

We paid $60,000 to SAP for their worthless program that Hodell-Natco has refused to pay to us.

As to our other damages, we hired 4 developers at rounded cost of $75,000 each for 2 years for a total of $600,000 which, because of the misrepresentations of SAP and the failure of its product to conform was wasted. In addition, company officers spent roughly 4000 hours at billing of $100 per hour for an additional loss of $400,000 and expenses of approximately $50,000 trying to fix problems caused by SAP.

Lastly, we lost time and business development opportunities wasting time trying to use an SAP program for a purpose for which it was not fit, an amount we have not yet determined.

INTERROGATORY NO. 9:

Please describe all actions that LSI took or attempted to take to mitigate its alleged damages that LSI claims in its Cross-Claim and Counterclaim were caused by SAP.

ANSWER:

We spent hours, days and years working with SAP and others attempting to implement this program, relying upon SAP and their technical staff's representations that they were going to be able to make their product work for this application. Many of those efforts are reflected in the documents produced as LSI 00001-474, and are reflected in the billing that will be produced. A review of electronically stored information is underway to determine if there are other documents responsive. We also intend to review documents produced by the other parties as the efforts we made to minimize our losses are well documented. Eventually we closed our SAP support business effective October 1, 2008.

INTERROGATORY NO. 10:

Identify all Persons charged with managing or overseeing LSI's development of In-Flight and its integration into SAP Business One, and/or any other solutions, applications, programs, or software developed in connection with the Development Agreement.

ANSWER:
1. Daniel J. Lowery – President LSi-Lowery Systems Inc.
2. Cain Woodrum, LSi-Lowery Systems Inc.
3. Jon Woodrum, V.P. Business Software Support
4. Joe Guagenti, LSI Systems
5. Gary Seeker, LSI Systems
6. Avery Myrick, LSI Systems
7. Dale Van Leeuwen, IBIS, LSI Systems
8. Patricia McGrath, LSI Systems Tech.
9. Eric Johnson, LSI Systems Tech.
10. Marcia Weissman, LSI Systems Tech.

INTERROGATORY NO. 11:

Identify all witnesses, including expert witnesses, that You intend to use at trial, and provide the address and telephone number of each proposed witness and a summary of his/her anticipated testimony.

ANSWER:

**Not yet known.**

By: *[signature]*

Hugh E. McKay, Esq. (0023017)
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483
(216) 443-9000 / Fax (216) 443-9011
lspellacy@porterwright.com

Attorneys for Defendants,
SAP America, Inc. and SAP AG


Of Counsel:
Michael J. Miller (admitted *pro hac vice*)
Thomas S. Downie (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square
Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

CERTIFICATE OF SERVICE

I hereby certify that on this ___ fr⁴¹ day of R.11`&, 2010, a copy of the foregoing was served by first class mail, postage pre-paid, upon the following:

Hugh E. McKay, Esq. (0023017)
Leo M. Spellacy, Jr., Esq. (0067304)
Charles W. Zepp., Esq. (0068129)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483
(216) 443-9000 / Fax (216) 443-9011
hrackay@porterwright.com
lspellacy@portervvright.com
czepp@porterwright.corn

Attorneys for Defendants,
SAP America, Inc. and SAP AG

CERTIFICATE OF SERVICE

The foregoing Responses to Defendants SAP America, Inc., and SAP AG's First Set of Interrogatories To Co-Defendants LSI-Lowery Systems, Inc. and The IBIS Group, Inc. have been sent via regular United States mail, postage prepaid and via electronically, this 27th day of January, 2011, to the following:

Charles W. Zepp, Esq.
Porter, Wright, Morris & Arthur
1700 Huntington Bldg.
925 Euclid Avenue
Cleveland, OH 44115

*Attorney for Defendants SAP America, Inc. and SAP AG*

And

Gregory J. Star, Esq.
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103

*Attorney for Defendants SAP America, Inc. and SAP AG*

P. WESLEY LAMBERT
Koehler Neal LLC
3330 Erieview Tower
1301 East Ninth Street
Cleveland, OH 44114

*Attorney for Plaintiff*

_____
ROY A. HULME (0001090)