UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC. ) | CASE NO.: 1:08 CV 2755 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE WELLS |
| vs. ) | |
| ) | |
| SAP AMERICA, INC., et al., ) | **LSI-LOWERY SYSTEMS, INC. AND THE IBIS GROUP, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

**LSi/IBIS Has Pled Its Claim With Sufficient Clarity and Completeness to Put Plaintiff on Notice of the Claim Against It.**

Plaintiff sued LSi/IBIS for breach of the contract entered into between Hodell-Natco and LSi/IBIS. ("Hodell's First Amended Complaint asserts, among others, claims for breach of contract and breach of warranties against the LSI Defendants." Memorandum in Support of Plaintiff's Motion for Judgment, ECF #109-1, Pg. 1). Since LSi/IBIS was not paid in full for the services rendered pursuant to that contract, it filed a counterclaim for the unpaid amount for services it rendered and expenses it advanced: $60,000. (See ECF # 30, Counterclaim) The counterclaim was pled with sufficient clarity and preciseness, in the context of this case, for Plaintiff to clearly understand that this counterclaim arose out of the failure of Plaintiff to pay $60,000 for the services it rendered pursuant to that contract. For example, Plaintiff's Motion makes it clear it understands this in its Motion for Summary Judgment when it states that their "motion relates only to the first transaction, which occurred in December 2004 when Hodell

and the LSi defendants entered into a "Development Agreement". (ECF #109–1 Pg. 2). That Development Agreement was attached to both Plaintiff's Amended Complaint (ECF #26, Exhibit D) and Plaintiff's Motion for Judgment (ECF #109–1, Exhibit A). That Development Agreement at ¶ 3 of the General Terms requires a $180,000 advancement of the $300,000 purchase price, payable in three $60,000 payments. The counterclaim demands payment for the last of those 3 payments.

Although Plaintiff has moved for "judgment on the pleadings", alleging that the counterclaim has been "inadequately pled", the motion itself makes it clear that in the context of this litigation, the counterclaim, brought in response to Plaintiff's Complaint and Amended Complaint, made it clear that Defendants provided services to Plaintiff, advanced expenses on behalf of Plaintiff, and have not been paid the sum of $60,000 for those services. This simple, concise, and direct allegation is all that is required by the Federal Rules of Civil Procedure. Civil Procedure Rule 8 (A) require only: "…(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought…." Civil Rule 8(D)(1) dictates: "each allegation must be simple, concise, and direct. No technical form is required." Lastly, Rule 8(E) requires that pleadings be construed "so as to do justice".

The Civil Rules include forms demonstrating what constitutes acceptable pleadings. A copy of Form 10 is attached as Exhibit 1. Clearly what Defendant has pled comports with those examples.

Lastly, case law supports the adequacy of Defendant's pleading. The "… simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and is to dispose of unmeritorious claims." *N.H. Insurance Co.*

2

*v. Marine Max of Ohio, Inc.*, 408 F.Sup. 2d 526 (USDC ND Ohio 2006), quoting from *Swierkiewicz v. Sorema N.A.*, 534 US 506, 512 (2002).

The context in which LSi/IBIS rendered its services was fully explained in excruciating detail in Plaintiff's Complaint and Amended Complaint. There was certainly no reason, under the circumstances of this case, to require recitation of additional facts to put Plaintiff on notice of the amount sought and the reason the amount was sought in the counterclaim. Having complied with the pleading requirements of Rule 8 in the context of this case, the Motion for Judgment on the pleadings should be denied.

**There is Ample Evidence in the Record to, at Minimum, Demonstrate a Genuine Issue of Material Fact Exists as to Whether LSi/IBIS Performed Sufficiently to be Paid.**

As to Plaintiff's Motion for Summary Judgment, LSI/Lowery has presented ample evidence in its own Motion for Summary Judgment to deny Plaintiff's Motion for Summary Judgment. While LSi/IBIS and Dan Lowery agree Plaintiff is dissatisfied with the Business One installation, and found it "unacceptable", LSi/IBIS did, in fact, comply with its contractual obligations. Just because Hodell is unhappy with the installation does not mean these Defendants did not satisfy their contractual obligations and does not mean they should not be paid.

The system did suffer from freezes and memory leaks "immediately upon going live". (ECF #109–1 Pg. 3, citing to Dan Lowery's deposition.) Those issues, however, were later resolved. Within approximately two months after go-live, the only issue which persisted was allegedly slow system performance. (K. Reidl, at 348:4-350:16). Yes, Dan Lowery agrees that the installation was unacceptable to Hodell-Natco, and was, therefore, an abject failure. (ECF #109–1 Pg. 3, citing LSi's Answer to First Amended Complaint, the First Amended Complaint,

3

and Mr. Lowery's testimony). Plaintiff ignores, as detailed in LSi/IBIS's Motion for Summary Judgment, the fact that there is overwhelming evidence that LSi/IBIS did, in fact, comply with the terms of the written agreement with Hodell.

The only measured performance of the system comes from documents produced by LSi and SAP, which show that performance was acceptable. LSi employees who had first-hand knowledge of the Hodell implementation believed that Business One with In-Flight and Radio Beacon was operating at a satisfactory level for Hodell probably 2 to 3 months after go-live. See D.E. 105, p. 25 (citing testimony of Jon Woodrum and Eric Johnson). Specifically, Jon Woodrum personally went to the St. Louis location of Hodell to observe the performance of the Business One with In-Flight Enterprise at Hodell. He saw no limitation or performance issue. (Woodrum 41:24-42:9; 43:18-44:3.) From what he observed the day he visited, Mr. Woodrum found performance to be acceptable. (Woodrum 44; 252.) Eric Johnson, one of the two LSi programmers who worked on this project had no reason to believe that In-Flight application was not functioning as intended. When he left LSi in September 2008, Hodell was running version 1 of In-Flight, and LSi had already sold version 2 as they were moving on to the next In-Flight installation. (Johnson 24.) As far as he was concerned, the SAP solution with In-Flight and Radio Beacon was operating at a satisfactory level for Hodell probably 2 to 3 months after installation, by May or June of 2007. (Johnson 36:14-21.) Mr. Neveux, an SAP representative personally observed the performance and, while he found it less than perfect and something he described as "a bit of a nuisance," he concluded that the installed software package was working on the particular day he visited. (Ex. 167; Neveux 148-150.)

The Development Agreement between Hodell and LSi/IBIS called for three things: (1) the delivery of 80 SAP Business One software licenses to Hodell; (2) the development of the

4

software add-on, eventually known as In-Flight Enterprise, for Business One; and (3) unlimited licenses for In-Flight. (Am. Compl. ¶ 75.) Otto Reidl both read and understood the terms of this agreement before he signed it. (O. Reidl 93:5-23; 101:13.) There was no performance guarantee written into the contract; there were no warranties and no promises other than for (1) the In-Flight development; (2) delivery of the SAP licenses; and (3) unlimited licenses for In-Flight.

Lastly, there is no expert identified in this case who is critical of the In-Flight's coding or functionality.

Plaintiff argues that because it deemed the installation "unsuccessful", then it is excused from payment, because the contract conditions the final $60,000 payment upon "successful implementation." (ECF # 109-1 p. 6). The problem with that argument is, (1) first, the implementation was successful as demonstrated above and as has been argued in the LSi/IBIS Motion for Summary Judgment, and, (2) second, whether the implementation was "successful" must be determined from an "objective" standard, not a "subjective" standard. The "objective" standard is used in cases such as this, where the satisfaction clause relates to commercial issues such as quality and performance. In such cases, the test is whether the performance would satisfy a reasonable person. *Wagner v. Anderson* 1992 Ohio App. Lexis 4993, *6, (2d Dist 1992), citing *Hutton v. Monograms Plus, Inc.* (January 31, 1992) Greene App. No. 91-CA-07. *Hutton* contains a detailed analysis of the rationale for applying an objective standard to this type of contract. In both cases the Court of Appeals reversed trial court decisions granting summary judgment. When the evidence in this case is construed most strongly in favor LSi/IBIS on this issue, as it must be, *Wagner* and *Hutton* dictate that Plaintiff's Motion for Summary Judgment be denied.

Respectfully submitted,


/s/  Roy A. Hulme
ROY A. HULME (0001090)
REMINGER CO., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio  44115
Phone: 216/430-2135 Fax: 216/430-2250
E-Mail: rhulme@reminger.com
Attorney for LSi Lowery Systems, Inc. and
The IBIS Group, Inc.


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing LSI-Lowery Systems, Inc. and The IBIS Group, Inc.'s Brief in Opposition to Plaintiff's Motion for Judgment on the Pleadings Or, Alternatively, For Summary Judgment was filed electronically this 5th day of October, 2012. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.


/s/  Roy A. Hulme
ROY A. HULME (0001090)