IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC.<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAP AMERICA, INC., et al.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:08 CV 2755<br><br>JUDGE WELLS<br><br>**OBJECTIONS OF DEFENDANTS SAP AMERICA, INC. AND SAP AG TO REPORT AND RECOMMENDATION REGARDING MOTION FOR SUMMARY JUDGMENT** |

**I.　　The Court Erred in Failing to Consider Hodell's Admissions During Discovery**

　　Hodell's significant discovery admissions contradict its complaint allegations and warrant summary judgment in favor of SAP on Hodell's remaining claims of fraud/fraudulent inducement, negligent misrepresentation, and breach of warranty.  However, in recommending that SAP's motion for summary judgment be denied, Magistrate Judge White appears to have overlooked these critical new facts which came to light after this Court's June 2011 decision on SAP's motion to dismiss Hodell's amended complaint.

　　Notably, Hodell alleged that it suffered a failed implementation of various computer software in 2007, including SAP's Business One software.  (ECF No. 110-2 at ¶48.)  However, Hodell's president later testified that Hodell actually ran its business on SAP's software from March 2007 until April 2009 – and that Hodell was using SAP's software at the time Hodell commenced this case in November 2008.  (ECF No. 110-4, K. Reidl at 146:24-147:15.)

　　Similarly, Hodell initially alleged that it had received direct representations about the capabilities of Business One from SAP prior to entering the December 2004 Development Agreement with co-defendants LSi and IBIS, and prior to signing the December 2005 License Agreement with SAP America.  (ECF No. 110-2 at ¶¶ 36-40.)  However, Hodell's CEO later

admitted that Hodell never had any contact with SAP until early 2007 and that Hodell did not receive any representations, promises, advice, or guidance from SAP prior to entering either contract. (ECF No. 110-3, O. Reidl at 198:18-199:1.)

Hodell had falsely alleged that through the December 2004 Development Agreement with LSi and IBIS, Hodell somehow acquired licenses – from non-party SAP – to use SAP's Business One software. (ECF No. 110-2 at ¶ 33.) Hodell further claimed that its subsequent December 2005 License Agreement with SAP America merely provided Hodell with additional Business One licenses. *Id*. at ¶ 46. However, in discovery, Hodell finally admitted that its right to use SAP's software arose exclusively through the December 2005 License Agreement. (ECF No. 110-3, O. Reidl at 224:6-13.) And the undisputed evidence is that contemporaneously with the License Agreement, LSi placed an order with SAP, on Hodell's behalf, for Hodell's licenses of Business One software. (ECF No. 110-13, Ex. L.) Hodell now admits that it did not take delivery of any software from SAP until 2006 – *after* it signed the License Agreement – and that it "had nothing more than a business-to-business, or arms' length relationship [with] SAP." (ECF No. 110-3, O. Reidl at 104:14-18, 236:19-24.)

Hodell further made significant discovery admissions concerning its knowledge and understanding of the License Agreement. Notably, Hodell believed at the time it signed the License Agreement that SAP was "shunting off liability," and Hodell "agonized" over signing the contract. (ECF No. 110-3, O. Reidl at 218:1-221:12; 229:17-230:7.) Most importantly, Hodell's CEO testified very clearly as to his state of mind at the time the License Agreement was signed: He believed that by the date of that contract, "SAP knew that [Business One] would not handle [Hodell's needs]." (ECF No. 110-3, O. Reidl at 109:14-17; 110-18-111:8.) Yet, Hodell proceeded to sign the License Agreement knowing full well that it disclaimed any promises or

representations not contained therein, that it limited Hodell to an express warranty and disclaimed any implied warranties, and that it clearly disclaimed any agency relationship between SAP and LSi/IBIS.

When these undisputed facts are considered, it is clear that SAP is entitled to judgment as a matter of law on each of the remaining claims against it.[1]

## II. The Court Erred By Recommending that Summary Judgment Be Denied on Hodell's Claims of Pre-Contractual Fraud/Fraudulent Inducement

This case presents the simple question of whether a commercial party that purchased goods under the UCC pursuant to a written contract, and then used the product for two full years (dating more than three years after signing the contract) may later invalidate the contract and all of its agreed terms through allegations of pre-contractual fraud based on representations that are not contained in the contract. Ohio law presumes that the answer to this question is no, and that Hodell is left to its contractual bargain. To overcome this presumption, Hodell must present clear and convincing evidence of pre-contractual fraud by SAP – a burden Hodell has not met.

Indeed, because the License Agreement is a contract for the sale of goods, Ohio law presumes that any failure by SAP to supply conforming good is purely a matter of contract. *See Graphic Enters. v. TAS Int'l*, 2000 Ohio App. LEXIS 961, 14-15 (Ohio Ct. App., 5th Dist. 2000) ("Assuming, arguendo, GEI fraudulently misrepresented the true character of 'remanufactured' copy machines to appellants, we find the nature of GEI's conduct, be it fraudulent or negligent, is irrelevant as such does not change the contractual nature of appellant's claim. Any alleged failure by GEI to supply conforming goods is purely an issue of whether GEI breached the

---

[1] SAP submitted an Appendix of Undisputed Material Facts in Support of SAP's Motion for Summary Judgment. (ECF No. 163-1.) Although these undisputed material facts warrant summary judgment for SAP, the Court apparently did not consider SAP's Appendix or the facts set forth therein or in SAP's motion.

contract.")  To overcome this presumption, Hodell was required to come forth with evidence of a false promise of material fact by SAP that was collateral to the License Agreement.[2]  *Cuthbert v. Trucklease Corp.*, 2004 Ohio 4417, P44-P45 (Ohio Ct. App., 10th Dist. 2004) (dismissing tort claims predicated upon alleged promise to ensure that plaintiff had coverage under a vehicle rental agreement; holding "the parties entered into a written agreement for the lease of a vehicle, and any purported duties and responsibilities relating to [defendant] procuring insurance on behalf of [plaintiff] arose out of that contract.")

At best, Hodell argued that because the License Agreement is silent on the number of users that Business One can support, SAP made a collateral promise that Business One would, in fact, support Hodell's particular purposes.  Judge White agreed with this argument, and recommended that the fraud claim survive because the alleged "representation as to the number of users the B1 software could accommodate was 'not inconsistent with any provision of the License Agreement,'" and that this means such alleged representations "were indeed collateral to the License Agreement."  (ECF No. 182 at 24-25.)

But the exception created by Judge White – essentially that any promise that is not memorialized in a later integrated written contract is necessarily collateral to the contract – would swallow the rule.  Hodell admits it read and understood the entire License Agreement and, in fact, "*agonized*" over signing it because Hodell understood that the agreement: (1) disclaimed all pre-contractual representations; (2) limited SAP's liability; (3) provided Hodell with an

---

[2] Judge White incorrectly concluded that SAP denies that Hodell executed the License Agreement with SAP America in December 2005.  (ECF No. 182, note 3.)  But in SAP's answer to Hodell's amended complaint, SAP made clear that Hodell did, in fact, sign the License Agreement in December 2005, and that the License Agreement contained all of the enforceable promises SAP made about Business One.  (ECF 69, at ¶10.)  Moreover, SAP's prior motion to dismiss and its present motion for summary judgment are founded on the undisputed fact that SAP America and Hodell are parties to the License Agreement.  It is unclear whether this incorrect conclusion influenced Judge White's decision.

express, limited performance warranty; and (4) disclaimed any implied warranties.  (ECF No. 110-3, O. Reidl at 218:13-25; 219:1-25; 220:21-222:23.)  In the words of Hodell's CEO, the License Agreement was written in plain English and he understood what it meant.  *Id*., at 229:27-230:7.  However, the Court overlooked these and other critical admissions Hodell made during discovery – including Hodell's admission that before it signed the License Agreement, Hodell believed that SAP knew Business One would not support the number of users Hodell planned to have, but that Hodell nonetheless signed the License Agreement.  *Id*., at 109:14-17; 110-18-111:8.

Certainly if Hodell believed it was entering the License Agreement based on promises that Business One would support its specific needs, yet understood those promises were *not* contained in the contract, Hodell cannot now be heard to complain that it received or relied upon non-contractual representations that Business One was suitable for Hodell's unique needs.  Indeed, in Sections 7.1 and 7.2 of the License Agreement, Hodell agreed to limit itself to an express "Performance Warranty," and further agreed that SAP was not making any implied warranty of fitness for a particular purpose.  (ECF No. 110-12, Ex. K, §§ 7.1, 7.2.)  Thus, an alleged representation as to the number of users Business One can support does not become a *collateral* promise merely because it was then not included expressly in the License Agreement.

Beyond this error, the Court failed to consider Hodell's admissions about the allegedly false pre-contractual representations by SAP.  As SAP detailed in its reply brief, Hodell admits it never had direct contact with SAP and that the only representations by SAP were in the form of general marketing literature.  (ECF No. 163 at 5-6.)  And when Hodell was asked during deposition about the particular marketing literature it had alleged in its amended complaint constituted false promises, Hodell admitted both that it is unaware of any false information and

that it did not rely on statements in that literature.  *Id*. at 5-8.  Instead, Hodell claims to have relied only upon oral representations made by LSi/IBIS.  *Id*.

Yet the Court relied upon the very same marketing literature that Hodell clearly admitted was not false and was not relied upon.  For example, the Court cites to a document titled "SAP Business One Brief," but overlooks Hodell's testimony about document.  (*See* ECF No. 182 at 10; *but see* ECF No. 110-3, O. Reidl at 134:1-135:1 (Hodell admitting there was no false representation in the SAP Business One Brief and that it did not rely on this document); *see also* O. Reidl at 137:01-138:24, 139:15-20, 149:25-150:04, 272:24-275:11 (Hodell admitting no false representation or reliance upon other SAP marketing literature).)  Accordingly, based on Hodell's own admissions, the Court erred in concluding that SAP could be found liable for a false representation of material fact in its marketing literature.

Furthermore, the Court erred in concluding that there is a disputed issue of fact whether SAP can be vicariously liable for alleged oral representations by LSi/IBIS.  Indeed, the Court failed to consider the undisputed evidence on this issue, including the single most important fact – that Hodell itself established in the License Agreement that LSi/IBIS "is not the agent of SAP" and is instead "an independent company, person, or entity with no authority to bind SAP or make representations or warranties on behalf of SAP."  (*See* ECF No. 182 at 8, note 7 (Court's analysis of agency); *but see* ECF No. 163 at 17-23 (setting forth reasons why there is no genuine issue of material fact and why, as a matter of law, LSi/IBIS were independent contractors).)  Accordingly the Court erred in holding that SAP could potentially be liable for allegedly false oral representations by LSi/IBIS, and thus erred in recommending that SAP's motion be denied as to Hodell's fraud and fraudulent inducement claims.

### III. The Court Erred By Recommending that Summary Judgment Be Denied on Hodell's Negligent Misrepresentation Claim

The Ohio Court of Appeals recently made it clear that negligent misrepresentation claims can only be brought against professionals in the business of supplying information for others to rely upon, and that "the class of persons who are in the business of supplying information to others is limited to certain professionals, such as 'attorneys, surveyors, abstractors of title and banks dealing with no-depositors' checks.'" *Middlefield Banking Co. v. Deeb*, 2012 Ohio 3191, P31 (Ohio Ct. App., Geauga County July 16, 2012) (citing *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 436 N.E.2d 212 (1982)).

Notably, the Court likewise recently held in another matter that negligent misrepresentation claims are limited to cases where "the defendant is a professional (*e.g.*, an accountant)." *Dawes v. BAC Home Loans Servicing LP*, 2011 U.S. Dist. LEXIS 66507 at *19-20 (N.D. Ohio April 27, 2011) (White, J.) (dismissing negligent misrepresentation claim). However, in the instant case, the Court did not follow this sound rule and instead erred by focusing its analysis on the separate question of whether Hodell had established that it is within the limited class of plaintiffs who may bring a negligent misrepresentation claim. (ECF No. 182 at 18-21.)

Moreover, the Court further erred by concluding that when SAP's 2009 motion to dismiss was decided, it was also established that Hodell's negligent misrepresentation claim is proper and that no new facts came to light during discovery which would change this outcome. (ECF No. 182 at 18.) However, when this Court denied SAP's motion to dismiss Hodell's negligent misrepresentation claim, it did so with the assumption that the facts alleged by Hodell were true, and that SAP had some actual contact and relationship with Hodell and had provided advice and guidance to Hodell. (*See* ECF No. 61 at 14 (drawing inferences in favor of Hodell, its complaint allegations were sufficient to make "it plausible that the SAP defendants intended to supply

- 7 -

information for Hodell's benefits and guidance."). But Hodell later admitted that it had absolutely no relationship with SAP prior to signing the December 2005 License Agreement, that its first contact with SAP did not occur until early 2007, that it never sought or received any advice or guidance from SAP, and that it had nothing more than an arms-length business relationship with SAP.  (ECF No. 110-1 at 35, *citing* ECF No. 110-3, O. Reidl at 236:9-24.)

Hodell has not come forth with any evidence to create a disputed issue of fact concerning whether the SAP defendants are professionals in the business of supplying information.  Instead, the undisputed fact is that SAP AG is in the business of developing business software, and SAP America licenses and distributes business software.  Accordingly, SAP is not a proper defendant in a negligent misrepresentation claim, and the simple fact that SAP published marketing literature about its products does not change this result.  *See*, *e.g.*, *Premier Bus. Group, LLC v. Red Bull of N. Am., Inc.*, 2009 U.S. Dist. LEXIS 91647 at *32-22 (N.D. Ohio, Sept. 30, 2009) (dismissing negligent misrepresentation claim because "Red Bull, after all, is in the business of selling energy drinks, not in the business of supplying information.").

### IV. The Court Erred By Recommending that Summary Judgment Be Denied on Hodell's Breach of Contract Claim

It is undisputed that to proceed on its claim that SAP America breached the License Agreement's express warranty provision, Hodell must prove that Business One failed to "substantially conform to the *functional specifications* contained in the *Documentation* for six months following delivery," and that the alleged defect was not "caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database."[3] (ECF No. 182 at 26-

---

[3] Judge White properly held that Hodell has no claim for breach of implied warranties against the SAP defendants, and that Hodell's only contract claim against either SAP defendant is that SAP America allegedly breached the express warranty of the License Agreement.  (ECF No. 182 at 26.)

- 8 -

27 *citing* License Agreement at § 7.1 (emphasis added).)

But beyond its bald complaint allegations, Publicis has done nothing to advance this claim. It even failed to meet the minimum requirement of putting forth either the Documentation or the functional specifications, much less offer any evidence that Business One failed to meet the functional specifications.  (*See* ECF No. 163 at 30.)  Without this evidence, there is no possibility that a jury could find, without rampant speculation, that SAP breached its warranty.  *See McLeod Addictive Disease Ctr., Inc. v. Wildata Systems Group, Inc.*, 2010 U.S. Dist. LEXIS 20643 *19 (S.D. Ohio Mar. 8, 2010) (granting summary judgment where "[p]laintiff has not articulated how the software fails to conform to published specifications.").

Moreover, Hodell conceded it has no actual evidence that Business One failed to meet the functional specifications.  Instead, Hodell opposed SAP's motion by arguing that it "***will introduce*** evidence that SAP breached its warranty and the implied covenant of good faith and fair dealing." (ECF No. 162 at 46-47 (emphasis added).)  But a non-moving party cannot defeat a summary judgment motion by arguing that it will – ***in the future*** – offer evidence to support its claim.  *See* Fed. R. Civ. P 56(c).  Hodell had every chance during discovery to prove its claim and offer evidence of a breach attributable to Business One.  Its promise of raising new evidence at trial undermines Rule 56 and would leave SAP to deal with this for the first time at trial.

Notably, the Court recognized this lack of evidence, and thus should have recommended judgment in favor of SAP.  (ECF No. 182 at 26 ("Hodell argues that it will offer evidence . . . .").) Instead, the Court concluded that Hodell has put forth sufficient evidence to proceed on its claim. But the only such evidence is a single email and testimony from one SAP employee about the unrelated fact that SAP had provided Hodell with a maintenance credit (which had nothing to do with whether Business One failed to meets its warranty) and that SAP likely would have taken a

return of the software if Hodell had requested this (which simply reflects a commercial decision by SAP and is not an admission that Business One failed to meet its warranty). *Id*. at 27. In short, this scintilla of irrelevant evidence is not enough to find a genuine factual dispute.

Moreover, the Court apparently failed to consider the fact that although Hodell put forth testimony from a software expert, that expert concluded in his written report that the problems Hodell experienced were caused by a combination of factors (such as other add-on software and Hodell's own IT infrastructure), and neither he nor any other qualified witness has offered testimony or other evidence establishing a breach of warranty by SAP. (ECF No. at 38-39.)

## V. Conclusion

When the undisputed record evidence is properly considered, it is clear that SAP is entitled to summary judgment and that the Court should dismiss Hodell's claims for fraud/fraudulent inducement, negligent misrepresentation, and breach of contract.[4]

          Respectfully submitted,

          /s/ Gregory J. Star
          Michael J. Miller (admitted *pro hac vice*)
          Gregory J. Star (admitted *pro hac vice*)
          Drinker Biddle & Reath LLP
          One Logan Square, Suite 2000
          Philadelphia, PA 19103-6996
          Telephone: (215) 988-2700
          Facsimile: (215) 988-2757
          *Attorneys for SAP America, Inc. and SAP AG*

---

[4] The Court declined to address Hodell's unsupported argument that the express warranty of the License Agreement failed of its essential purpose. This is fully addressed in SAP's reply brief, and Hodell's argument should have been rejected as a matter of law. (ECF 163 at 30-31.) Likewise, the Court declined to address Hodell's argument that SAP breached an alleged covenant of good faith and fair dealing. As also explained in SAP's reply brief, this alleged claim does not appear in Hodell's amended complaint and was not otherwise raised by Hodell prior to its response to SAP's motion. *Id*. at 29. Moreover, Ohio law does not recognize such a cause of action. *Id*. Thus, the Court should also have rejected this purported claim as well.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of August 2013, a copy of the foregoing Objections of Defendants SAP America, Inc. and SAP AG to the Report and Recommendation Regarding SAP's Motion for Summary Judgment was filed electronically.  Parties may access this filing through the Court's electronic filing system.


      /s/Gregory J. Star
      Gregory J. Star