# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| **HODELL-NATCO INDUSTRIES, INC.,** | ) **CASE NO. CV 1:08-cv-02755** |
| | ) **JUDGE LESLEY WELLS** |
| **Plaintiff,** | ) |
| | ) **DEFENDANTS LSi-LOWERY** |
| **v.** | ) **SYSTEMS, INC. AND THE IBIS GROUP** |
| | ) **INC.'S OBJECTIONS TO REPORT AND** |
| **SAP AMERICAN, INC., et al.,** | ) **RECOMMENDATION DENYING** |
| | ) **MOTION FOR SUMMARY JUDGMENT** |
| **Defendants.** | ) **(ECF #183) AND, ALTERNATIVELY,** |
| | ) **MOTION FOR RECONSIDERATION** |

Defendants, LSi-Lowery Systems, Inc. and The IBIS Group Inc. (collectively LSi/IBIS),

object to the Magistrate Judge's Report and Recommendation ("R&R") denying LSi/IBIS's

*Motion for Summary Judgment* (R&R, ECF #183) pursuant to Rule 72(a) of the Federal Rules of

Civil Procedure. The Court should rejected the Magistrate Judge's R&R denying LSi/IBIS's

*Motion for Summary Judgment* because the Magistrate Judge ignored the relevant, undisputed,

material facts and misapplied Ohio law.

LSi/IBIS based its understanding on SAP's statements and documents, and was unaware

of the inherent limitations of Business One until this litigation. Because of LSi/IBIS's lack of

knowledge as to any alleged falsity, it cannot be liable for fraud, fraudulent inducement, or

negligent misrepresentation. The Magistrate Judge failed to consider the undisputed testimony

and documents. Consequently, the Magistrate Judge erred in denying LSi/IBIS's *Motion for

Summary Judgment* on those three claims. Additionally, LSi/IBIS performed its obligations as

required by the Development Agreement. Accordingly, the Magistrate Judge erred in denying

LSi/IBIS's *Motion for Summary Judgment* on the breach of contract claim.[1]

---

[1] The Magistrate Judge recognized that Hodell agreed to withdraw the negligence claim against LSi/IBIS. The
Magistrate Judge's R&R likewise recommended dismissing Hodell's negligence claim, recognizing that under Ohio
law, a negligence claim is not cognizable where the recovery sought is for economic losses. (R&R, ECF #183, pp.
19-20.) LSi/IBIS agrees with that decision and it is not discussed herein.

Due to the Magistrate Judge's factual and legal errors, LSi/IBIS requests that the Court reconsider this Order as it relates to LSi/IBIS's *Motion for Summary Judgment*. The Magistrate Judge's R&R denying LSi/IBIS's *Motion for Summary Judgment* should be rejected, and the Court should enter summary judgment in favor of LSi/IBIS.[2] A *Memorandum in Support* is attached hereto and incorporated herein.

Respectfully submitted,
/s/ Roy A. Hulme
Roy A. Hulme (0001090)
REMINGER CO., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115
P: 216/687-1311 / F: 216/430-2241
E: rhulme@reminger.com

*Counsel for Defendants LSI-Lowery*
*Systems, Inc. and The IBIS Group Inc.*

---

[2] The Magistrate Judge denied Hodell's partial *Motion for Summary Judgment* as to the breach of contract counterclaim. The Court should adopt the R&R as it concerns Hodell's *Motion for Summary Judgment*. (R&R, ECF #183 at pp. 18-19.) Because LSi/IBIS does not object to that section of the R&R, it will not be discussed herein.

<u>**MEMORAUNDUM IN SUPPORT**</u>

## I.   <u>INTRODUCTION</u>

Hodell-Natco Industries, Inc., ("Hodell") asserted five claims against Defendants, LSi-Lowery Systems, Inc. and The IBIS Group Inc. (collectively LSi/IBIS) related to a dispute concerning business relation that the parties entered for purpose of developing software for Hodell's business: (1) Fraudulent Inducement; (2) Fraud; (3) Breach of Contract; (4) Negligence; and (5) Negligent Misrepresentation. (Am. Compl., ECF #26.) Hodell verbally agreed to withdraw its negligence claim in Count 4 against LSi/IBIS, and the Magistrate Judge's Report and Recommendation ("R&R) incorporated that concession. (R&R, ECF #183, pp. 19-20.) Thus, only four claims remain. LSI moved for summary judgment.[3] (ECF #105.) The Magistrate Judge's R&R contains both factual and legal errors and should be rejected.

Hodell asserts that LSi/IBIS made false statements concerning the number of users that Business One could accommodate. However, the evidence establishes that Hodell performed independent research, and to the extent that any false representations were made, such statements originated from SAP. The evidence further establishes that LSi/IBIS never knew such statements were false. Consequently, Hodell cannot establish a fraudulent inducement, fraud, or negligent misrepresentation *prima facie* case. Moreover, the evidence establishes that LSi/IBIS performed their contractual obligations, both expressed and implied. In fact, in this case, no implied warranties exist as a matter of law. The software contracted for was delivered to Hodell and met all the requirements agreed upon. Consequently, the Magistrate Judge's factual findings are erroneous based on the evidence in the record, and his legal analysis was contrary to law. Thus, the Court should reject the Magistrate Judge's R&R and enter summary judgment in favor of LSi/IBIS.

## II.   <u>FACTUAL BACKGROUND</u>

---

[3] LSi/IBIS incorporates its *Motion for Summary Judgment* (ECF #105) in its entirety herein.

### A. Hodell begins to independently research for software and focuses on Business One

For several years prior to any events at issue in this lawsuit, IBIS supported Hodell's computer software system though a product named FACTS and two "add-on" products to FACTS, In-Flight and Radio Beacon. (Lowery 28:111; Dale Van Leeuwen 14-20; Ross Elliot 10:23- 12:23.)[4] Hodell used FACTS to keep track of invoicing, billing, and providing accounting functions. (Lowery 25:111.)

Hodell decided to replace FACTS in 2007. Hodell began independently researching various software solutions as far back as 1998. (Otto Reidl 79-83.) In 2003, Hodell first encountered Business One, an SAP product being marketed by American Express Business Tax Service. At the time, American Express was a "Channel Partner," also known as a "value added reseller" of SAP. Shortly after the conference, American Express contacted Hodell with an offer to sell SAP Business One. (O. Reidl, 83:16.) Following that, Hodell independently researched Business One, without LSi/IBIS's knowledge or input. Hodell actively reviewed several documents, including the following:

(1) SAP Business One brief given to Hodell in 2003, which represents that Business One helps emerging businesses, those with 10 to several hundred employees. (O. Reidl 129:7-132:15; Am. Complaint ¶18 and Ex. A.)

(2) Document received from American Express representing that Business One is specifically designed for the small and midsized businesses (SMB). (O. Reidl 135-36; Am. Complaint Ex. B.)

(3) White paper received from American Express on October 16, 2003 representing that SAP Business One was for small and medium-sized businesses. (O. Reidl 140, 142.) That document further represents that "an unlimited number of simultaneous user transactions" is supported. (Am. Complaint Ex. C at p. 18 of 30.) This document is one of a series Hodell relied upon in purchasing the product. (O. Reidl 143.)

---

[4] Depositions and Exhibit numbers refer to attachments to LSi/IBIS's *Motion for Summary Judgment*.

4

Hodell also participated in an online Webinar on October 20, 2003 that was presented jointly by SAP and American Express. (O. Reidl 152.) After Hodell completed its independent research, Otto Reidl contacted Dale Van Leeuwen of IBIS to discuss the SAP product. (Dale Van Leeuwen 27:25-28).

**B.  Upon Hodell's stated interest, LSi-Lowery and IBIS both begin to consider Business One and conduct proper diligence**

Mr. Van Leeuwen contacted Dan Lowery, owner of LSi-Lowery, as both were looking for the next new technology beyond FACTS. (Van Leeuwen 25:19-29:14; 30.) Prompted by Hodell's call, they had reviewed SAP information. They were intrigued because Business One targeted the small to medium-sized market, the same market for IBIS and LSi. Mr. Van Leeuwen and Mr. Lowery began discussing becoming a Channel Partner for SAP and the possible combination of their two complementary companies. (Van Leeuwen 28:18-29:14.)

Mr. Van Leeuwen conducted due diligence about becoming a Channel Partner for SAP. He met with SAP personnel to discuss specific information on the needs of Hodell to evaluate whether Business One might be a fit for Hodell (and, therefore, a good fit for IBIS and LSi/Lowery). (Van Leeuwen 29:15-30:24; 35:16-37:14; 204:11-206:9.) SAP assured him at that meeting that it was, confirming what Hodell had concluded from Otis Reidl's independent investigation. (Van Leeuwen 53:10-25.) Based on SAP's representations, IBIS and LSi became Channel Partners of SAP to both sell and develop add-ons to Business One. (Lowery 30-32.)

SAP defines small business to be $10-50 million in revenue, and midsized businesses to be $50-500 million. (Geoffrey Ashley 230). SAP marketing literature told both potential customers and SAP's partners that "the general target market for Business One is *any small and medium size business between 5 and 500 users.*" (Ex. 14; Ex. 36.2) This SAP literature and the information passed along by American Express to Hodell demonstrated that Business One was a

5

good fit for Hodell. Between 2002 and 2007 Hodell's sales ranged from $25 million up to as high as $40; this number increased to $43 million in the year after installation of the software that is the subject of this lawsuit. (Ex. 24.) Hodell had 137-186 employees during this same time. (Ex. 25.) Clearly, Hodell's numbers of employees and revenues fit well within the target market and representations of SAP as to who could use Business One. Mr. Ashley, who was Director of Channel Sales for Business One in the U.S. agrees and testified that ***Hodell-size companies were the target for Business One***. (Ashley 231.) Dan Kraus, of Hodell, confirmed this to Dale Van Leeuwen in January 2004 at an SAP conference in Las Vegas. (Van Leeuwen 197:20-203:23.) Neither Hodell nor LSi/IBIS had any reason to believe other than what they were told by SAP.

### C. Hodell decides to purchase Business One to replace FACTS

Based upon SAP's representations and literature as to the capabilities of Business One, Hodell decided to purchase Business One to replace its FACTS system. As part of that package, Hodell also wanted the warehousing capabilities provided by Radio Beacon, and the inventory management capabilities of In-Flight – the two systems previously used with FACTS. It is undisputed that SAP not only authorized, but actually encouraged its Channel Partners to develop extensions or add-ons for Business One. (Lowery 64:9-66:9, 78:11-81:18.)

### D. Hodell and LSi/IBIS execute a Development Agreement for 80 SAP Business One software licenses to Hodell, the development of In-Flight Enterprise for Business One as a software add-on, and unlimited licenses for In-Flight

Hodell and LSi/IBIS entered into the Development Agreement that memorialized Hodell's decision to install Business One with In-Flight. (O. Reidl 160:5-161:19; Am. Complaint Ex. D.) The In-Flight add-on to Business One required LSi/IBIS to write the code from scratch for Business One. (Lowery 29:15-30:15.) Mr. Reidl, the President of Hodell, understood that In-

Flight for Business One did not yet exist and would be developed specifically for Hodell's installation. (O. Reidl 161:21-162:25.)

The Development Agreement between Hodell and LSi/IBIS called for three things: (1) the delivery of 80 SAP Business One software licenses to Hodell; (2) the development of the software add-on, eventually known as In-Flight Enterprise, for Business One; and (3) unlimited licenses for In-Flight. (Am. Compl., ECF #26, ¶75.) The Development Agreement did not have a performance guarantee written into the contract, nor were there any warranties or promises other than the three requirements above.[5]

### E.  Development of In-Flight with Business One

LSi/IBIS, along with Hodell, worked together to design In-Flight and develop the workflow processes that In-Flight was to have. (Joseph Guagenti 12.) This required "coding" *i.e.*, the actual writing of the code to create the In-Flight program and integrate it with Business One. (Guagenti 10-11, 12; Johnson 10-12.) The development stage lasted for more than two years, from December 2004 when the Development Agreement was signed until the "go live" implementation at Hodell in early March 2007.

Hodell was extremely involved in the development phase. It included software testing by LSi in-house, interaction between LSi and Hodell regarding functionality and the desired functions, and on-site load testing by Hodell. (Weissman 25:7-27:6.) Hodell performed multiple "live stress tests "on the software as LSi/IBIS developed it, which Hodell employees performed, on Hodell computers, using Hodell's data, exactly as Hodell would run the day-to-day business. (Weissman 27:14-28:18, 36:11-40:12; Guagenti 68:22- 71:7; Kevin Reidl 281:2-285:27; 299:12-300:8.) These live stress tests were important to ensure that the software could be used

---

[5] Hodell has not alleged that it did not or would not have received unlimited licenses for In-Flight. Thus, this third requirement is irrelevant for purposes of this motion, and will not be added.

effectively at Hodell, before Hodell switched from FACTS to Business One. (Jon Woodrow 202:19-203:21; Ex. 55; Terry Phillips 26:5-28:1, 94:12-95:24; Ex. 57, Jan. 12, 2007 Woodrum email; Ex. 58, Jan. 16, 2007 Lowery email.)

By early 2007, Hodell and LSi/IBIS agreed that the program was functioning sufficiently well in the load testing done by Hodell, that it was time to "go live". (O. Reidl 434:4; Terry Phillips 26:15-28:1.) The program went live in March 2007. From the beginning, was rife with issues. (K. Reidl 131:17-132:9; 147:22-24; Jay Shelton 23:20-24:18)

### F.  The events underlying this action

Despite being marketed to small and medium size businesses (again, defined in Business One literature as between 5 and 500 users), Business One proved unable to handle the amount of information and users at Hodell. (Neveux 97-99; 94:18-96:5.) Contrary to the representations of SAP, the Business One core product was not robust enough to handle the number of users, transactions, documents and other usage criteria of Hodell, and was outside the range of any testing or other installation by SAP. (Neveux 61, 103; Eric Johnson 52-59:15; Ex. 69; Ex. 159; Ex. 161; Ex. 162.) The limitation of Business One resulted in a slow speed in processing orders (particularly larger orders), among other issues. (Am. Compl., ECF #26, ¶49(a); Lowery 4/11/07 email to Udi Ziv, Ex. 69; Ex. 91.)

SAP knew that it was problems with the DA API and the Business One software package itself that was causing the problem. (Guagenti. 215- 216, 217-218, 220-223, Exs. 78, 157, 159, 161, 162; Guagenti 199-200.) Additionally, even though SAP assured both Hodell and LSi/IBIS that Business one was appropriate for Hodell's business needs, SAP knew that the number of users was an issue. On April 12, 2007 Udi Ziv, authored an internal SAP email, Ex. 69 that concluded that Hodell is "WAY above any sane sweet spot (120 users!!!), and are obviously

experiencing severe performance issues." (emphasis in original). This email contradicted SAP literature identifying the target audience for Business One as those "small and medium sized businesses between 5 and 500 users." (Ex. 14; Ex. 36.2.)

In short, the performance problems complained of by Hodell was the result of Business One's limitations.

## III.  THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge's R&R addressed LSi/IBIS's *Motion for Summary Judgment* (ECF #105) and Hodell's *Motion for Summary Judgment* on LSi/IBIS's counterclaim. (ECF #107.) The Magistrate Judge determined that Hodell and LSi executed a Development Agreement on or about December 20, 2004, which called for Hodell to order 80 user licenses for SAP's Business One Software, at a cost of $300,000. (R&R, ECF #183, at p. 3.) The Magistrate Judge further found that approximately one year later, Hodell alleged that it signed a License Agreement and purchased 40 additional user licenses. (R&R, ECF #183, at p. 3.)

The Magistrate Judge ignored the undisputed factual history prior to December 20, 2004 – in particular Hodell's independent investigation of Business One and SAP literature detailing the target market for Business One. He also ignored all facts after the License Agreement, specifically coding In-Flight for compatibility with Business One, with unlimited licenses for in-flight. The Magistrate Judge also failed to consider Hodell's "live stress tests" on the software as it was being developed. The Magistrate Judge further did not address any other aspects of the Development Agreement, or the lack of a performance guarantee in the Development Agreement.

The Magistrate Judge's inexplicable decision to ignore, and his failure to consider, relevant facts was in error. Additionally, the Magistrate Judge's misinterpretation of the law is

contrary to legal standards. Accordingly, the Court should reject the Magistrate Judge's R&R as it applies to LSi/IBIS's *Motion for Summary Judgment*, and should enter judgment in favor of LSi/IBIS.

## IV.  LEGAL ANALYSIS

### A.  R&R Objections Standard of Review

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Consequently, a district court must modify or set aside any part of a non-dispositive order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a). *See also* 28 U.S.C. § 636(b)(1)(A).

A "clearly erroneous" standard applies to the magistrate judge's factual findings. *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 1:02CV16000, 2007 WL 1306591, *6 (N.D. Ohio May 3, 2007) (citing Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd* 19 F.3d 1432 (6th Cir. 1994)). A magistrate judge's factual findings are considered "clearly erroneous" if, on consideration of the entire evidence, a trial judge is left with a definite and firm conviction that a mistake has been committed. *Id.* (*quoting Heights Community Congress v. Hilltop Realty, Inc.,* 774 F.2d 135, 140 (6th Cir. 1985), *cert. denied,* 475 U.S. 1019 (1986)). The relevant test is "whether there is evidence in the record to support the [magistrate judge's] finding, and whether its construction of that evidence is a reasonable one." *Heights Community Congress,* 774 F.2d at 140.

Conversely, a magistrate judge's legal conclusions are reviewed under the "contrary to

law" standard. *In re Commercial Money*, 2007 WL 1306591 at *6 *(citing Gandee,* 785 F. Supp. at 686). A legal conclusion is contrary to law if the court determines that the magistrate judge's legal conclusions "contradict or ignore applicable precepts of law...." *Id.* (*citing Gandee,* 785 F. Supp. at 686. Likewise, a ruling is "contrary to law" if the magistrate judge has misinterpreted or misapplied applicable law. *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 3767581 (N.D. Ohio Sept. 24, 2010) (*quoting Hood v. Midwest Sav. Bank*, 2001 WL 327723, at *2 (S.D. Ohio Mar. 22, 2001)).

Here, the Magistrate Judge's R&R factual findings are "clearly erroneous." Additionally, the Magistrate Judge misinterpreted and misapplied applicable law. Consequently, the Court should reject the Magistrate Judge's R&R as it applies to LSi/IBIS's *Motion for Summary Judgment*, and should enter judgment in favor of LSi/IBIS.

**B.  Summary Judgment Standard of Review**

The purpose of summary judgment is "to eliminate a trial where it would be unnecessary and merely result in delay and expense." *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). "The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 811 (6th Cir. 2011) (internal quotation marks omitted). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

In defining the term "material fact" in the summary judgment context, the United States Supreme Court has stated that "the substantive law will identify which facts are material. Only disputes or facts that might affect the outcome of the suit under the governing law will

properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party fails to prove the existence of an element essential to that party's case, there can be no genuine issue as to any material fact and all other facts are rendered immaterial. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

The burden of proving that there is no genuine issue of material fact rests on the moving party. *Provenzano,* 663 F.3d at 811. In deciding a summary judgment motion, the court will construe the evidence of the nonmoving party as true and will draw all reasonable inferences in favor of the nonmoving party—in this case, Hodell. *Enertech Elec., Inc. v. Mahoning Cnty. Commis,* 85 F.3d 257, 259 (6th Cir. 1996); *Savage v. Gee,* 665 F.3d 732, 737 (6th Cir. 2012). Therefore, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is proper. Fed. R. Civ. P. 56(a).

### C. It Was An Error Of Fact and Law for the Magistrate Judge to Deny LSi/IBIS *Motion for Summary Judgment* As to Hodell's Fraud and Fraud-in-the-Inducement Claims

Hodell asserted claims for fraud and fraudulent inducement with respect to the number of users that SAP Business One was suitable for. (Am. Compl., ECF 26 at ¶¶55-73.) Specifically, Hodell alleges that LSi/IBIS misrepresented that, "SAP Business One was suitable for companies with hundreds of employees, that SAP Business One was suitable for 250 users, that SAP Business One had been successfully installed in hundreds of similar companies, and that SAP could provide industry-specific high level support. (Am. Compl., ECF #26, ¶56.)

To establish a claim for fraudulent inducement, plaintiff must demonstrate: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the

intent to induce reliance on the representation; (5) justifiable reliance on the representation or concealment; and (6) resulting injury proximately caused by such reliance. *Magical Farms, Inc. v. Land O'Lakes, Inc.*, No. 07-3568, 356 Fed. Appx. 795, 2009 U.S. App. LEXIS 26768, at *19, 21-22 (6th Cir. Dec. 8, 2009) (*citing Burr v. County Comm'r of Stark County*, 23 Ohio St. 3d 69 (1986)). *See also Onyx Environmental Svcs., LLC, v. Maison*, 407 F. Supp. 2d 874, 878 (N.D. Ohio 2005) (elements of fraudulent inducement are essentially the same as elements of fraud).[6]

The Magistrate Judge determined that genuine issues of material fact existed as to the fraud and fraudulent misrepresentation claims. (R&R, ECF #183, pp. 6-12.) Here, as fully articulated in LSi/IBIS's *Motion for Summary Judgment*, Hodell cannot establish the first, third, or fifth elements of its fraud claim.

### 1. Hodell cannot establish that LSi/IBIS made a representation with knowledge of its falsity

Hodell cannot establish that LSi/IBIS "a representation or, where there is a duty to disclose, concealment of a fact," because LSi/IBIS never made any independent representations of its own regarding the quality or capacity of Business One. Additionally, Hodell cannot establish that LSi/IBIS made any statements "falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred." In fact, the evidence established that LSi/IBIS was unaware that SAP's representations were false prior to this lawsuit. *See e.g. Magical Farms*, 356 Fed. Appx. 795.

---

[6] LSi is entitled to summary judgment because the specific circumstances claimed to constitute fraud by LSi/IBIS are not pled or alleged with sufficient specificity, and do not include "the time, place, and content of the alleged misrepresentation" or the identity of the individual making the representation, as required by Civ. R. 9. See e.g. *United States v. Ford Motor Credit Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotations omitted); *Sogevalor, SA v. Penn Central Corp.*, 771 F. Supp. 890, 893 (S.D. Ohio 1991) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)). The Magistrate Judge rejected this argument because of "the late stage of proceedings." (R&R, ECF #183 at p. 7.) However, the stage of the proceeding is irrelevant to the argument's validity, and the fraud/fraud in the inducement claims should be dismissed for failure to plead with specificity.

The representations regarding numbers of users alleged to be misleading came from SAP. The marketing literature was SAP's marketing literature. (Van Leeuwen 90-94; Ex. 35l Ex. 36; Ex. 37.) All parties knew that the source of all performance information was from SAP and that LSi/IBIS was learning about Business One along with Hodell. (Lowery 55:17-59:8; O. Reidl 47:24-49:23.) It is undisputed that LSi/IBIS had no knowledge that any of the SAP representations that it conveyed to Hodell were false. In fact, not until this litigation did LSi/IBIS have any reason to suspect that the information that they passed along to Hodell was not true

SAP told LSi/IBIS was appropriate for users of 3 to 500. Mr. Van Leeuwen discussed capacity-type issues with SAP representatives and left that meeting comfortable that Business One was appropriate for the Small to Midsize Business market into which Hodell fell. (Van Leeuwen 29, 35-37.) American Express and SAP gave Hodell a document with the same information. (Van Leeuwen 43-45.) SAP literature clearly represented that Business One was suitable for Hodell. SAP gave LSi/IBIS literature advised that the program was suitable for companies with five employees or 500 employees. (Ex. 36; Lowery 117-118.) This confirmed the information previously communicated directly to Hodell. (Ex. 36; Lowery 119.) SAP gave LSi/IBIS literature stating that Business One is ideally suited for companies with revenues up to $100 million or with up to 250 employees. (Ex. 37; Lowery 121.) Based on the documentation given to LSi/IBIS, there is simply no evidence that LSi/IBIS made an independent representation, or that it had any knowledge of falsity of any statement it passed along.[7]

---

[7] Logically, LSi/IBIS would not have spent the hours and manpower on a project it knew would fail. Dan Lowery devoted thousands of hours to this project, which logically would not have been done had he known it was doomed to fail. (Lowery 299-301.) Eric Johnson, one of the programmers, testified that he was never told by SAP that the usage anticipated at Hodell was outside the bounds of anything SAP had tested and that, had he been told of the deficiencies in the SAP Business One product, he would not have continuously rewritten In-Flight. (Johnson 61, 75; Ex. 94.) Mr. Johnson testified that 100% of his time during 2005, 2006, and 2007 was dedicated to developing the In-Flight program and integrating it with Business One, again something he would not have done had he been told of Business One's limitations. (Johnson 76-77.) The other LSi programmer, Joe Guagenti would not have spent

The Magistrate Judge inexplicably ignored this documentary evidence and instead focused on SAP internal communications. (R&R, ECF #183, p. 9-10.) However, the evidence shows that SAP's internal communications were never shared with LSi/IBIS until discovery in this case. (Lowery 292:20-301:2; Ex. 69.) Not only were those internal communications never shared with LSi/IBIS, but those internal communications actually contradicted SAP literature identifying the target audience for Business One as those "small and medium sized businesses between 5 and 500 users." (Ex. 14; Ex. 36.2.) In a fraud and fraudulent misrepresentation case, the issue is not what SAP knew, but what it told LSi/IBIS, what LSi/IBIS told Hodell, and whether it knew those statements were false.

The Magistrate Judge simply ignored these documents, despite the fact that the documents demonstrate that LSi/IBIS did not make any independent representations with the knowledge of such statements falsity. Accordingly, Hodell cannot establish the first or third elements. Accordingly, the Magistrate Judge erred in denying LSi/IBIS's Motion for Summary Judgment. The Court should reject the R&R denying LSi/IBIS's *Motion for Summary Judgment*, and the Court should enter summary judgment in favor of LSi/IBIS

### 2.      Hodell cannot establish justifiable reliance

In light of Hodell's own independent investigation of Business One, Hodell cannot establish "justifiable reliance." *See e.g. Magical Farms*, 356 Fed. Appx. 795. The Magistrate Judge inexplicably failed to consider Hodell's own, independent actions in selecting Business One. Hodell analyzed several documents, including an SAP Business One brief given to Hodell in 2003, which represented that Business One helps emerging businesses, those with 10 to several hundred employees. (O. Reidl 129:7-132:15; Am. Complaint ¶18 and Ex. A.) Hodell also

---

100% of his time in 2005, 90% of his time in 2006, and 50% of his time in 2007, had he known of the Business One deficiencies. (Johnson 77.)

reviewed documents that represented that "an unlimited number of simultaneous user transactions" is supported. (Am. Complaint Ex. C at p. 18 of 30.)

Hodell's independent research and analysis of the Development Agreement was done before Hodell contacted LSi/IBIS about its interest in purchase Business One. Hodell independently received documents indicating that Business One would support up to 500 employees. (O. Reidl 112:12; 113:13-114-116:18.) Representatives of American Express called Hodell and assured it that SAP Business One had sufficient capacity to serve the business of Hodell. Hodell relied on these representations in focusing on Business One. There is no evidence of any representations separate and apart from those known by Hodell to have been made either by American Express or from SAP. In short, LSI's representations consisted of telling Hodell that they had documents from SAP that Business One could support up to 500 users. (O. Reidl 280.) Thus, in light of Hodell's own independent investigation of Business One, Hodell cannot establish "justifiable reliance." *See e.g. Magical Farms*, 356 Fed. Appx. 795.

The Magistrate Judge simply ignored these facts, despite the fact that they demonstrate that Hodell cannot establish justifiably reliance and, accordingly, Hodell cannot establish the fifth element. Accordingly, the Magistrate Judge erred in denying LSi/IBIS's Motion for Summary Judgment. The Court should reject the R&R denying LSi/IBIS's *Motion for Summary Judgment*, and the Court should enter summary judgment in favor of LSi/IBIS.

### D. It Was An Error Of Fact and Law for the Magistrate Judge to Deny LSi/IBIS's *Motion for Summary Judgment* As To Hodell's Breach of Contract Claim

Hodell alleged that LSi/IBIS breached the Development Agreement. (Am. Compl., ECF 26 at ¶¶74-86.) However, the Development Agreement required only two things of LSi/IBIS: (1)

the delivery of 80 SAP Business One software licenses to Hodell and (2) the development of the software add-on, eventually known as In-Flight Enterprise, for Business One.[8]

Mr. Reidl conceded that LSi/IBIS integrated In-Flight into Business One. In short, it was the integration that brought to the surface problems with the SAP Business One, and with the DI API, the data interface. (O. Reidl 182:25-183:3.) Hodell argued that LSi/IBIS breached the implied warranty of merchantability and fitness for a particular purpose Development Agreement because In-Flight implementation was not fully functional and, consequently, unsuccessful. (ECF #158 at 31; Am. Compl. ECF #26, ¶¶ 80-81.)

Because the In-Flight Enterprise Development Agreement Project Description was apparently not attached to the Amended Complaint as initially referenced, the Magistrate Judge concluded that this failure left the terms ambiguous, and held that, "The Court cannot determine from the four corners of the [Development" agreement what constitutes successful implementation." (R&R, ECF #183 at p. 14.) Because of this inability to determine what constituted successful implementation, the Magistrate Judge recommended denying LSi/IBIS's *Motion for Summary Judgment* as to the breach of contract claim and denying Hodell's *Motion for Summary Judgment* on the Counterclaim.

In analyzing the Development Agreement, the Magistrate Judge failed to consider the "Project Description," which states:

> The **development** of the IBIS Group's In-Flight Enterprise application and its **integration** into SAP Business One Software for Hodell-Natco Industries, Inc.

(Ex. D to Am. Compl., ECF. #26-5, p. 1) (emphasis added).

---

[8] As the Magistrate Judge noted, Hodell concedes that LSi/IBIS delivered 80 SAP user licenses. (R&R, ECF #183, p. 13 (*citing* O. Reidl at p. 123-24.)) Thus, the only issue concerns the development of the software add on, In-Flight Enterprise.

The Magistrate Judge did not consider this important language, which explains that the project is for the development and integration of In-Flight Enterprise for Business One. LSi/IBIS developed and delivered In-Flight for Business One. Thus, LSi/IBIS performed the contract requirements under the Development Agreement, and Hodell cannot demonstrate that LSi/IBIS breached the contract as required to assert a *prima facie* case. *Bellas Co. v. Pabst Brewing Co.*, No. 11-3417, 2012 U.S. App. LEXIS 14422 (6th Cir. 2012) (*citing Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).

While not analyzed by the Magistrate Judge, as argued in LSi/IBIS's *Motion for Summary Judgment*, Hodell's implied warranty theories as it relates to the development of In-Flight fail.[9] Even if applicable, Hodell cannot maintain the cause of action because: (1) No warranty of merchantability is implied when the goods are one-of-a-kind, new, or for which there is not yet a market to which to compare the good; (2) Even if a warranty of merchantability could be implied, the program was merchantable; (3) Since Hodell was not relying upon LSi/IBIS for determining the appropriateness of the programs, there is no implied warranty of fitness; and (4) Even if an implied warranty of fitness existed, there is no evidence that In-Flight was not fit.

Goods are not merchantable when they are "not of an acceptable quality when compared to that generally acceptable in the trade for goods of the kind." *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 424 (6th Cir. 1981); *see also Global Shredding Techs., Ltd., L.L.C. v. Aggregates Equip., Inc.*, 2005 U.S. Dist. LEXIS 13428 (N.D. Ohio July 5, 2005) ("The implied warranty of merchantability contained in O.R.C. § 1302.27 requires that goods: '(1) pass without

_____

[9] This concerns only In-Flight. Hodell entered into a separate agreement with SAP that contains both warranties and limitations of warranties as it relates to Business One. (Am. Compl. ECF #26, ¶¶ 7, 9.) It was understood that as to Business One, LSi/IBIS was acting in the capacity of a "disclosed principal." Under Ohio law, when an agent acts on behalf of a disclosed principal, that agent, LSi/IBIS in this case, is not personally liable on that contract. *Campbell v. Murdock*, 90 F. Supp. 297 (N.D. Ohio 1950); E*aton v. Continental General Insurance Co.*, 147 F. Supp. 2d 829 (N.D. Ohio 2001); *Foster v. Lee Motors Inc.*, 102 Ohio App. 10 (6th Dist. Lucas Cty. 1956). In addition, Hodell consciously chose Business One after performing extensive research and requested LSi/IBIS build their In-Flight application. On Business One Thus, their warranty claims as to Business One are with SAP.

objection in the trade under the contract description; and. . . (3) are fit for the ordinary purposes for which such goods are used.'")

Here, In-Flight is not comparable to any goods "generally acceptable in the trade of goods of the kind." Where a standard of merchantability cannot be determined because the products contracted for are "of a 'new' type in the industry," there can be no claim of implied warranty of merchantability. *Price Bros. Co. v. Philadelphia Gear Corp*., 649 F.2d 416, 424 (6th Cir. 1981) (*quoting* A. Squillante & J. Fonseca, Williston On Sales 81, § 1809 (4th ed. 1974) ("Where there is 'no trade for an experimental machine and no proof or evidence pointing to a record of past years on which a determination of its ordinary purpose could be found, there is no implied warranty created in the instance.'"). There is no "standard for" merchantability when Hodell's version of In-Flight was then the only version.

Here, the sole purpose of the Development Agreement and the relationship between Hodell and Defendants was to develop a program that did not exist in the industry. Hodell was fully aware that there was no finished (or even started) In-Flight add-on for Business One when it signed the Development Agreement. (Van Leeuwen 50:5- 12.) The Development Agreement did not contain any specifications with which the licenses and programs would comply, simply because no such specifications existed for a new, undeveloped program. The Agreement did not even guarantee that the development and implementation would be successful – that is why the Development Agreement contemplated full payment only upon "successful implementation."[10] (*See* ECF #26-4.) In light of the foregoing, there can be no claim that the programs were not merchantable where there was no generally acceptable standard for same or similar products in

---

[10] The Magistrate Judge was probably correct not resolving the issue of whether the final payment was due absent a copy of the In-flight Enterprise Development Project Plan from the record. This does not prevent, however, resolution of the issue that as a matter of law, LSi/IBIS did not breach the Development Agreement.

the industry and where the Development Agreement expressly contemplated that the development might be unsuccessful.

Moreover, even if there is an implied warranty that In-Flight was to be merchantable, there is no reason to believe that when combined with Business One, with the right size customer, it would not be capable of being sold and used as expected. All witnessed the Business One with In-Flight Enterprise at Hodell performing acceptably. (Woodrum 41:24-42:9; 43:18-44, 252; (Johnson 24, 36:14-21; Ex. 167; Neveux 148-150.) There is no expert testimony critical of the In-Flight's coding or functionality. Thus, in addition to the lack of legal support that a warranty should be implied under the circumstances of this case, there is no evidence that In-Flight was not merchantable.

Additionally, Hodell did not rely on Defendants' skill or judgment to select either the Business One software or the In-Flight add-on. As to Business One, it conducted independent research, which in reality was to review the same or similar information as LSi/IBIS had access to. Both Hodell and LSi/IBIS relied exclusively on SAP information; since the product was new, there was no other source for this information. The fact that LSi/IBIS assisted Hodell in the selection and actually sold the SAP system does not create an implied warranty of fitness for purpose. (Price at 423-24.) As to In-Flight, Hodell had years of favorable experience with the FACTS version and knew that as to the Business One version, it would be a new program to be developed jointly with Hodell and LSi/IBIS. This is not a situation where Hodell completely deferred to LSi/IBIS to select the programs where such a warranty might be implied.

Thus, the Magistrate Judge committed errors of fact and law in denying LSi/IBIS's *Motion for Summary Judgment*. The Court should reject the Report and Recommendation, and enter judgment in favor of LSi/IBIS on Hodell's breach of contract claim.

### E. It Was An Error Of Fact and Law for the Magistrate Judge to Deny LSi/IBIS *Motion for Summary Judgment* As To Hodell's Negligent Misrepresentation Claims

In Count 5, Hodell alleges that, "defendants supplied false information to Hodell-Natco with respect to the capabilities of SAP Business One . . . for the guidance of Hodell-Natco in its purchase of business software." (Am. Compl., ECF #26 ¶92. *See generally* ECF #26 ¶¶91-95.)

The Magistrate Judge made a cursory analysis of this claim, simply recommending that "as discussed in the fraud section," there was sufficient evidence for a reasonable juror to conclude that LSi//IBIS made knowingly false or reckless representations. (R&R, ECF #183, p. 12.) Thus, for the reasons already articulated with respect to Hodell's fraud claims, the Magistrate Judge's Report and Recommendation should be rejected.[11]

Additionally, even if the fraud claim survived, the negligent misrepresentation claim must fall. Hodell cannot recover under theories of both fraud and negligence based upon the same course of conduct. Where both are claimed as to the same set of underlying facts, if fraud is proved, then negligent misrepresentation is necessarily subsumed thereby. *Textron Financial Corp. v. Nationwide Mutual Ins. Co*., 115 Ohio App.3d 137, 149 (Ohio App. 9 Dist., Summit Cty. 1996). Thus, even if fraud survived, the Court should grant summary judgment as to the negligent misrepresentation claim.

Additionally, there is no evidence that LSi/IBIS made any affirmative representations that induced Hodell to purchase the business software. (See ECF #105 at pp. 27-29.) In fact, the record demonstrates the joint nature of the investigation by LSi/IBIS and Hodell into the SAP product – initiated by Hodell. There is no evidence that LSi/IBIS failed to exercise reasonable care in obtaining or communicating the information, as required for a negligent

---

[11] As noted in LSi/IBIS's *Motion for Summary Judgment*, this claim is not pled with the required specificity, and should be dismissed. *Jones v. Petland, Inc*., No. 2:08-CV-1128, 2010 WL 536894 (S.D. Ohio Feb. 11, 2010); *Pasacic v. Ameriquest Mortg. Co*., No. 404CV0527, 2005 WL 1200373 (N.D. Ohio May 19, 2005).

misrepresentation claim. *See Delman v. Cleveland Heights*, 41 Ohio St. 3d 1, 534 N.E.2d 835, 838 (1989). In fact, neither Hodell's expert nor SAP's expert expressed criticism of the investigatory process (or LSi/IBIS's role therein) that lead to Hodell's purchase of Business One, and LSi/IBIS's agreement to undertake development of In-Flight add-on for that program.

Finally, negligent misrepresentation requires that Defendants made an affirmative false statement, not merely omissions. *Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 506 (6th Cir. 2003); *Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) ("In deciding whether defendants have supplied false information, Ohio courts have held that the alleged negligent misrepresentation must have been an affirmative false statement. An omission or silence will not satisfy this requirement.") Hodell does not allege any affirmative representations of its own made by LSi/IBIS that induced its reliance and its purchase of the business software at issue. Rather, the representations on which Hodell allegedly relied were made either prior to LSi/IBIS's involvement with Business One or did not come from LSi/ IBIS but from SAP instead. Neither LSi/IBIS or Hodell had any reason to believe the product was other than what SAP marketed it to be, with the capabilities to meet the needs of the companies such as Hodell to whom it marketed the product.

Thus, the Magistrate Judge committed errors of fact and law in denying LSi/IBIS's *Motion for Summary Judgment*. The Court should reject the Report and Recommendation, and enter judgment in favor of LSi/IBIS on the negligent misrepresentation claim.

**V.    CONCLUSION**

The Magistrate Judge's R&R as it relates to LSi/IBIS's *Motion for Summary Judgment* as it is clearly erroneous and contrary to law. Hodell alleged five causes of action against LSi/IBIS

in this litigation. The factual evidence and Ohio law do not support the Magistrate Judge's R&R denying LSi/IBIS's *Motion for Summary Judgment*.

Notably, the evidence demonstrates that LSi/IBIS was unaware of the inherent limitations of Business One until this litigation. Thus, LSi/IBIS cannot be liable for fraud or fraudulent inducement in this case, and the Magistrate Judge erred in failing to grant LSi/IBIS's *Motion for Summary Judgment* on the fraud and negligent misrepresentation claims. Likewise, LSi/IBIS performed its obligations as required by the Development Agreement. Thus, the Magistrate Judge erred in denying LSi/IBIS's *Motion for Summary Judgment* on the breach of contract claim.

As a result of the Magistrate Judge's clearly erroneous analysis of facts and law, the Court should reject the Magistrate Judge's R&R denying LSi/IBIS's *Motion for Summary Judgment*. Consequently, the Court should enter summary judgment in favor of LSi/IBIS.

<div style="margin-left: 50%;">

Respectfully submitted,
/s/ *Roy A. Hulme*
Roy A. Hulme (0001090)
REMINGER CO., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115
P: 216/687-1311 / F: 216/430-2241
E: rhulme@reminger.com

*Counsel for Defendants LSI-Lowery Systems, Inc. and The IBIS Group Inc.*

</div>

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically August 5, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

Respectfully submitted,
/s/ *Roy A. Hulme*
Roy A. Hulme (0001090)
REMINGER CO., L.P.A.