IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
                                                        : CASE NO. 1:08-cv-02755
HODELL-NATCO INDUSTRIES, INC.,                          :
                                                        :
                                        Plaintiff,      : <u>MEMORANDUM OF OPINION AND</u>
                                                        : <u>ORDER</u>
                -vs-                                    :
                                                        :
                                                        :
SAP AMERICA, INC., et al.,                              :
                                                        :
                                        Defendants.     
------------------------------------------------------  

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter comes before the Court on defendants SAP and SAP AG's (collectively, "SAP") objections to United States Magistrate Judge Greg White's recommendation that SAP's motion for summary judgment be denied. (Doc. 187). Also before the Court are defendants LSi-Lowery Systems, Inc. and the IBIS Group, Inc.'s (collectively "LSi-IBIS") objections to the Magistrate Judge's recommendation that LSi-IBIS's motion for summary judgment be granted in part and denied in part. (Doc. 188). The plaintiff Hodell-Natco Industries, Inc. ("Hodell") has responded to both sets of objections. (Doc. 190, 191). For the reasons that follow, the Court will overrule the objections and accept the Magistrate Judge's recommendations. Thus, SAP's motion for summary judgment will be denied, and LSi/IBIS's motion will be granted in part and denied in part.

### I. Standard of Review

This Court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Rule 72.3(b). The failure by either party to file specific objections constitutes a waiver of the right to appeal the Magistrate Judge's recommendations. Thomas v. Arn, 474 U.S. 140, 155 (1985); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508–09 (6th Cir. 1991). As such, except where clearly erroneous, any finding or recommendation of the Magistrate Judge to which the parties do not timely object is accepted by this Court.

### II. Background

Plaintiff Hodell is a wholesaler of fastener and chain products. (Doc. 26, ¶9). Prior to the events of this suit, Hodell had been using a software product called FACTS in combination with two add-on software products, In-Flight and Radio Beacon. These software products provided invoicing, billing, and accounting functions for Hodell's business. (Doc. 105-9, p. 28; Doc. 105-7, 14-20; Doc. 105-38, pp. 10-12).  Defendant IBIS was providing software support to Hodell in relation to the FACTS system. In 2003, Hodell considered replacing FACTS with a newer, scalable product that would provide it integrated financial and sales management capabilities. (Doc. 110-4, p. 7, 8). It was important to Hodell that the software be capable of accommodating its eighty then-existing users, with room for growth up to three-hundred users. (Doc. 26, ¶34; Doc. 110-4, p. 7).

2

In early 2003, Hodell's CEO Otto Reidl attended a conference in Cleveland, Ohio, where he learned about software called Business One. (Doc. 105-37, p.11). The software was developed by defendant SAP AG, and it is distributed and licensed by defendant SAP America. At that time, non-party American Express was a Channel Partner[1] of SAP. Following the conference, American Express contacted Hodell with an offer to sell Business One. (Doc. 105-37, p.11). Hodell was provided with marketing materials about Business One, which included:

> The SAP Business One Brief, which represents that Business One "helps emerging businesses, from those with 10 to several hundred employees, to streamline their operational and managerial processes." (Doc. 26, ¶18; Doc. 26-1)

> An email representing that Business One is a "seamlessly integrated solution with all the functionality necessary to run a small or mid-sized business." (Doc. 105-37, pp. 25-26; Doc. 26-2).

> The SAP Business One White Paper, which represented that SAP Business One was meant for small and medium-sized businesses and that it supports "an unlimited number of simultaneous user transactions." (Doc. 26-3).

On 20 October 2003, Mr. Reidl participated in an online webinar about Business One presented by SAP and American Express. (Doc. 105-37, p. 30). Mr. Reidl in turn discussed the product with Dale Van Leeuwen of Defendant IBIS. (Doc. 105-7, pp. 14-15). Mr. Van Leeuwen was intrigued and he contacted Dan Lowery of Defendant LSi-Lowery. (Doc. 105-7, pp. 15-16). Both Van Leeuwen and Lowery were looking for the next technology beyond FACTS, and because Business One looked like a promising

---

[1]     According to the First Amended Complaint, a "Channel Partner," also known as a "value added reseller," refers to an entity authorized to market, resell, implement, and service the SAP Business One product. (Doc. 26, ¶13).

3

option within their market, they discussed joining forces and becoming an SAP Channel Partner. (Doc. 105-7, pp. 13-16, 17). According to Mr. Van Leeuwen, he met with SAP personnel to determine whether Business One would be a good fit for Hodell. (Doc. 105-7, pp. 16-17, 18-20, 38-40). At some point thereafter, Van Leeuwen and Lowery became Channel Partners of SAP to sell and develop add-ons to Business One. (Doc. 105-9, pp. 5-7).

On 3 December 2003, Mr. Reidl participated in a phone conference with American Express, Mr. Van Leeuwen, and Mr. Lowery. (Doc. 155-82, pp. 7-8). According to Mr. Reidl, during this conference he was assured that Business One would support up to 500 users. (Doc. 155-82, p. 8). It was Mr. Reidl's belief that both American Express and Mr. Van Leeuwen were representing SAP. (Doc. 155-82, p. 8). Hodell contends that throughout 2004, it received additional assurances from SAP, through its Channel Partners, that Business One would support Hodell's needs. (See Doc. 155, pp. 9-10). Based on these assurances, Hodell decided to replace FACTS with Business One. However, Hodell was also aware from the start that for Business One to fulfill all its needs, two add-ons were required. (Doc. 110-3, p. 16 (160)). Hodell planned to use the add-ons it was already using with the FACTS based system, namely, Radio Beacon for warehousing functions and In-Flight for inventory management functions. These add-ons were to be coded from scratch in order to work with Business One. (Doc. 105-9, pp. 4-5). SAP authorized LSi/IBIS to develop them for use with Business One. (Doc. 105-9, pp.14-16).

On 20 December 2004, Hodell and LSi/IBIS executed a Development Agreement, which called for Hodell to order eighty user licenses of SAP's Business One

4

software at a cost of $300,000. (Doc. 26, ¶¶30-32). The agreement also called for LSi/IBIS to develop the software add-ons, eventually known as In-Flight Enterprise, for Business One. (Doc. 26, ¶75). The development period lasted over two years, during which time the code was written and the software was tested. On 23 December 2005, Hodell entered into a second agreement - the License Agreement - pursuant to which it agreed to purchase an additional 40 user licenses from IBIS. (Doc. 26, ¶46). According to SAP, the License Agreement provided a performance warranty to Hodell; disclaimed all prior representations and implied warranties; and limited SAP's liability in the event the software did not meet the performance warranty. (Doc. 110-1, p. 12).

During this time, multiple "live stress tests" were performed on the software as it was being developed. (Doc. 105-36, pp. 9-15; Doc. 105-35, pp. 3-7). The stress tests were performed on Hodell's computers, using Hodell's data, in the manner that Hodell would run its day-to-day business. (Id.). By early 2007, LSi/IBIS and Hodell agreed that the software was testing well enough that it was ready to "go live." (Doc. 105-37, p. 42; Doc. 105-39, pp. 3-5). The program went live in March 2007, but problems were immediately apparent.  According to Hodell, "[t]he system responded so slowly that Hodell-Natco's sales force was unable to reasonably respond to customer inquiries by telephone." (Doc. 26, ¶49). The system suffered from numerous other issues, including In-Flight disconnect errors; data synchronization errors between Business One and Radio Beacon; ongoing discrepancies between package-on-hand and warehouse-on-hand figures, among others. (Id.). According to Hodell, the software never performed adequately and after two years of "limping along," they scrapped it. (Doc. 110-4, p.10 (sub 147)). Hodell maintains that it spent over a million dollars for replacement software.

5

### III. Procedure

On 21 November 2008, Hodell brought this lawsuit, and on 22 April 2009, it filed

a five count Amended Complaint against SAP America, Inc, SAP AG, LSi-Lowery

Systems, Inc., and the IBIS Group. (Doc. 26). Hodell brings claims of (1) Fraudulent

Inducement; (2) Fraud; (3) Breach of Contract; (4) Negligence; and (5) Negligent

Misrepresentation. On 18 May 2009, LSi and IBIS filed a joint answer.[2] (Doc. 30). Hodell

claims that Business One never functioned as promised; that the software was sold on

the false premise that it could support its growing user requirements; and that the

defendants knew this premise to be false.

On 1 June 2009, the SAP defendants filed a motion to dismiss the Amended

Complaint. (Doc. 36). Hodell filed a brief in opposition (Doc. 40), and SAP filed a reply.

(Doc. 41). On 8 July 2010, the motion was referred to United States Magistrate Judge

Greg White for a report and a recommended decision. (Doc. 46). After hearing oral

arguments, the Magistrate Judge issued a Report and Recommendation advising that

the motion should be granted in part and denied in part. (Doc. 50). Specifically, it was

recommended that the negligence claim and the breach of contract claim, as it related

to the Development Agreement, be dismissed as to both SAP defendants. It was

recommended that the breach of contract claim, in relation to the License Agreement,

be dismissed as to SAP AG only. It was further recommended that the motion be denied

---

[2]    LSi/IBIS also filed a counterclaim against Hodell and a cross-claim against
SAP America, Inc. (Doc. 30). Hodell answered the counterclaim on 21
May 2009. (Doc. 33). On 11 June 2009, SAP AG and SAP America
answered LSi/IBIS's cross-claim and filed a cross claim of their own
against LSi/IBIS. (Doc. 37). On 16 September 2009, LSi/IBIS answered
Hodell's counterclaim and SAP's cross claim. (Doc. 43).

as to Hodell's claims of fraud, fraudulent inducement, and negligent misrepresentation. On 2 June 2011, this Court adopted the Report and Recommendation over the parties' respective objections. (Doc. 61). The SAP defendants answered the Amended Complaint on 24 June 2011. (Doc. 69).

A case management conference was held on 30 June 2011. (Doc. 71). Discovery commenced. After a number of phone conferences, extensions of case deadlines, and the resolution of a discovery dispute by Magistrate Judge White, LSi/IBIS filed a motion for summary judgment on 6 September 2012. (Doc. 105). On 7 September 2012, the SAP defendants filed for summary judgment (Doc. 110), and Hodell moved for summary judgment on LSi/IBIS's counterclaim (Doc. 109). On 16 November 2012, after the motions were briefed, the case was referred to Magistrate Judge White for Report and Recommendation. (Doc. 170). On 1 February 2013, the parties attended a settlement conference before the Magistrate Judge, which was unsuccessful. (Doc. 175). On 28 February 2013, the parties argued their motions orally before Judge White. (Doc. 178).

On 13 June 2013, the Magistrate Judge issued two R&Rs. In the first, he recommended that the SAP defendants motion for summary judgment be denied. (Doc. 182). In the second, he recommended that LSi/IBIS's motion for summary judgment be granted in part and denied in part. (Doc. 183). Specifically, it was recommended that summary judgment be granted as to Hodell's negligence claim against LSi/IBIS and denied as to all other claims. It was also recommended that Hodell's motion for judgment on the pleadings/motion for summary judgment be denied in its entirety. (Doc. 183). On 22 August 2013, the SAP defendants and LSi/IBIS filed objections, respectively. (Doc. 187, 188). Hodell responded on 22 August 2013. (Doc. 190, 191).

Hodell does not object to the recommendation that its motion for summary judgment be denied. That recommendation will accordingly be accepted.

### IV. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)).

### V. Discussion

#### A. SAP's Objections

##### *1. Whether the Magistrate Judge Failed to Properly Consider the Evidence*

The Magistrate Judge recommended denying SAP's motion for summary judgment with respect to the plaintiff's claims of fraud/fraudulent inducement, negligent misrepresentation, and breach of contract. SAP contends that this conclusion was erroneous, because the Magistrate Judge failed to consider a number of facts that came to light during discovery.

First, SAP states that while Hodell alleges that Business One was never properly implemented, Hodell's president later admitted that Hodell "ran its business" using Business One from March 2007 until April 2009. SAP notes that Hodell was using the software at the time this suit was filed. This argument suggests either that Hodell has

8

conceded that it has not suffered damages or that no representation made by SAP, if any, was false.

In response, Hodell contends that SAP's argument mischaracterizes some facts while ignoring others. While Hodell admits that Business One was *installed* in Hodell's facility for two years, it maintains that the software never functioned as promised. The Court agrees with Hodell that there is sufficient record evidence to show that Business One did not perform as promised. According to Kevin Reidl, Hodell's president, during 2007 the company was "limping along" using workarounds, as a result of Business One's speed and performance issues. (Doc. 141, p. 149; Doc. 142, pp. 129-30). Evidence also exists to show that LSi admitted that Business One did not perform adequately for Hodell. (Doc. 149, pp. 125-26, 138-39, 159). SAP's Business One sales director admitted the same. (Doc. 137-1, pp. 93-94). Further, in 2007, Business One's lead developer stated, "Someone has sold to the wrong customer, which is WAY above any sane [Business One] sweet spot (120 users!!!), and obviously they are experiencing severe performance issues." (Doc. 155-11, p. 3). And the same developer later stated, "There is not much we can do here. . . . There is no doubt that this is not a [Business One] customer. . . ." (Doc. 154, p. 122). In the Court's view, SAP's suggestion that Hodell successfully "ran its business" using Business One is belied by the above-cited evidence.

SAP next challenges the Magistrate Judge's conclusion that SAP made representations regarding Business One's capabilities prior to the signing of the 2004 Development Agreement or the 2005 License Agreement. SAP cites the deposition testimony of Otto Reidl which indicates that Hodell never had any direct contact with

SAP at any time prior to execution of the 2005 License Agreement. (Doc. 110-3, pp. 198-99). SAP maintains that because Hodell did not receive any representations, promises, advice or guidance from SAP prior to entering either contract, its misrepresentation claims fail as a matter of law.

In the Court's view, notwithstanding Mr. Reidl's testimony, Hodell has provided sufficient evidence to show that prior to the signing of the agreements, SAP otherwise made representations to Hodell directly through its marketing literature. One document, referred to as "The SAP Business One Brief," indicates that Business One "helps emerging business, from those with 10 to several hundred employees." It further states, "Whether you have 5 employees or 500, the solution helps emerging businesses." (Doc. 155-59). SAP's former director of the Business One channel, Daniel Kraus, acknowledged that this literature was intended for prospective customers. (Doc. 137, p. 60). Hodell also provides a document entitled the "SAP Business One White paper" which claims that Business One supports "an unlimited number of simultaneous user transactions." (Doc. 155-77, p. 7). This evidence would support a finding that SAP represented to Hodell that the Business One software could accommodate at least 120 users.

SAP contends that even if the marketing materials could be construed as a misrepresentation on its part, Mr. Reidl admitted that Hodell did not rely on those materials. (See Doc. 129-1, pp. 35 (sub p. 135)). Thus, SAP argues that Hodell cannot satisfy the necessary element of justifiable reliance to support its fraud and misrepresentation claims. The Court disagrees. In addition to these direct representations, the Magistrate Judge cited numerous representations made by SAP's

10

alleged business partners and co-defendants LSi and IBIS, for which Hodell maintains SAP should be liable. There is evidence that LSi/IBIS based its representations on the SAP marketing materials. The Court agrees with the Magistrate Judge's observation that "factual issues remain whether SAP could be found liable through a theory of apparent agency or agency by estoppel." SAP does not provide a convincing argument to the contrary.

SAP also argues that the Magistrate Judge erred by failing to consider other alleged admissions in discovery, including Hodell's CEO Otto Reidl's testimony that at the time the License Agreement was signed, he believed that "SAP knew that [Business One] would not handle [Hodell's needs]." Based on this testimony, SAP contends that Hodell could not have justifiably relied on any representation made by SAP. Viewing this evidence, as it must, in favor of the non-moving party Hodell, the Court disagrees. Mr. Reidl stated, "It's my belief that by this time SAP knew that [the software] would not handle the number of users. . . . That's my personal impression." (Doc. 129-1, p. 29 (subp. 109). A rational trier of fact could reasonably reject SAP's interpretation of this language and conclude that Mr. Reidl was testifying as to SAP's knowledge at the time, not his own. This objection is overruled.

### 2. Fraudulent Inducement

In addition to the factual arguments noted above, SAP challenges the Magistrate Judge's legal reasoning with respect to Hodell's claims of fraud and fraudulent inducement. SAP maintains that contrary to the Magistrate Judge's recommendation, Hodell's breach of contract claim forecloses its claims of fraud.

11

Generally, "the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim." Wolfe v. Continental Cas. Co., 647 F.2d 705, 710 (6th Cir. 1981). A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed. Battista v. Lebanon Trotting Assn., 538 F.2d 111, 117 (6th Cir. 1976). In this instance, the Magistrate Judge concluded that SAP's alleged false promise that Business One would accommodate the required number of users was in breach of a duty separate from the License Agreement.

On *de novo* review, it is the Court's opinion that the Magistrate Judge's conclusion was not in error. In Ohio, there is a common law duty to refrain from making fraudulent representations to induce a party to enter a contract. Onyx Envtl. Servs. v. Maison, 407 F.Supp.2d 874, 879 (N.D.Ohio 2005). The Supreme Court of Ohio has stated that a claim of fraudulent inducement often involves "a misrepresentation of facts outside the contract or other wrongful conduct [inducing] a party to enter into the contract." ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 503, 692 N.E.2d 574, 578 (Ohio 1998).

In the present case, there is sufficient evidence to show that SAP, either directly or through agency principles, knowingly misrepresented the capabilities of Business One to induce Hodell to enter the License Agreement, thus breaching a duty collateral to the contract. As set forth in the Report and Recommendation, there are numerous instances of Hodell being informed that Business One was capable of supporting

12

hundreds of users. (See Report and Recommendation, Doc. 182, pp. 9-10). There is also ample evidence that this representation was false. Further, as described by the Magistrate Judge, there is evidence by which it might be inferred that those representations were known to be false by the parties making them. (See Report and Recommendation, Doc. 182, p. 11-12).

Further buttressing the conclusion that this claim occurred "outside the contract," is the fact that the representation that Business One could accommodate at least 120 users was not inconsistent with any provision in the Licensing Agreement. As explained by the Magistrate Judge, the Licensing Agreement is silent as to Business One's optimal number of users. Magistrate Judge White reasoned that

> [h]ad the License Agreement stated that [Business One] could only handle thirty users, or that SAP did not make any representations or guarantees as to the number of users Business One could handle, the parol evidence rule might well bar evidence of contradictory terms.

(Report and Recommendation, Doc. 182, p. 24).

The Court disagrees with SAP's contention that Magistrate Judge's focus on whether terms of the Licensing Agreement are consistent with the alleged false representations creates "an exception that swallows the rule." According to SAP, the Magistrate Judge's reasoning allows for the untenable result that "any promise that is not memorialized in a later integrated written contract is necessarily collateral to the contract." The Court disagrees with this assessment, because the promise at issue in this instance is not just "any promise." Rather, it was a false representation made in breach of a common law duty independent of the Licensing Agreement. As such, the

13

alleged misrepresentations, being collateral to the written agreement, properly form the basis of Hodell's claim of fraudulent inducement.

None of the authorities cited by SAP in its objections undermine the Magistrate Judge's conclusion. First, in Graphic Enterprises, Inc. V. TAS International, Inc., 2000 WL 330059 (Ohio Ct. App. March 13, 2000), the plaintiff claimed fraud independent of a contract for the sale of copy machines. The plaintiff argued that the defendant fraudulently failed to disclose that "remanufactured" machines actually meant "used" machines. Id. at *5. The court rejected the claim and reasoned that

> [a]ssuming, arguendo, [the defendant] fraudulently misrepresented the true character of "remanufactured" copy machines to [plaintiffs], we find the nature of [the defendant's] conduct, be it fraudulent or negligent, is irrelevant as such does not change the contractual nature of appellant's claim. Any alleged failure by [the defendant] to supply conforming goods is purely an issue of whether [the defendant] breached the contract.

Id.

Graphic Enterprises is distinguishable from the present case. That court's rejection of the plaintiff's fraud claims turned on the "contractual nature" of the claims, in that they amounted to nothing more than the allegation that the defendant failed to supply conforming goods. The Graphic Enterprises court further reasoned that the fraud claim failed because the plaintiffs did not offer "evidence of damages which were distinct from, and in addition to, those [the plaintiffs] claimed were suffered due to [the defendant's] alleged breach of the contract." Id. In the present case, the question of whether fraud damages are distinct contract damages is not presently at issue. Moreover, Hodell's fraud claims do not simply restate its breach of contract claims. Instead, as described above, Hodell sets forth sufficient evidence to show that it was

14

induced to enter the Licensing Agreement on the basis of numerous false representations. <u>Graphic Enterprises</u> is inapposite.

    <u>Cuthbert v. Trucklease Corp.</u>, 2004 WL 1879023 (Ohio Ct. App. 2004), is also distinguishable. In that case, the plaintiff alleged negligence because a car rental agency failed to ensure that he had insurance coverage under a rental agreement. The court rejected the plaintiff's tort claims because they were not distinct from his breach of contract claim. The court reasoned that "any purported duties and responsibilities relating to [the defendant] procuring insurance on behalf of [the plaintiff] arose out of that contract." <u>Id.</u> at *10. In contrast, as already discussed, Hodell has provided evidence to demonstrate breach of a duty independent of the Licensing Agreement.

    The Court accordingly accepts the Magistrate Judge's recommendation that summary judgment be denied as to Hodell's fraudulent inducement claims in relation to the Licensing Agreement.

    In addition, because SAP does not object to the Magistrate Judge's recommendation that summary judgment be denied as to Hodell's claim that SAP fraudulently induced the Development Agreement transaction, that recommendation is accepted as well.

### 3. Negligent Misrepresentation

    SAP takes issue with the Magistrate Judge's recommendation that Hodell's negligent misrepresentation claim survive summary judgment. According to SAP, the Magistrate Judge erred because he failed to recognize that the viability of a claim of negligent representation depends on the existence of a "special relationship" between the parties. As noted by SAP, some Ohio courts have limited claims of negligent

15

misrepresentation to plaintiffs who allege injury by a certain class of professionals, "who are in the business of supplying information to others, . . . such as 'attorneys, surveyors, abstractors of title and banks dealing with no-depositors' checks.'" Middlefield Banking Co. v. Deeb, 2012 Ohio 3191, P31. SAP argues that because it is not a member of this class of professionals, the claim fails as a matter of law.

As observed by the Magistrate Judge, there is also authority that rejects the requirement that a "special relationship" exist between the parties. National Mulch and Seed, Inc. v. Rexius Forest By-Products, Inc., No. 2:02cv1288, 2007 WL 894833, at *10 (S.D. Ohio Mar. 22, 2007). National Mulch advises that "a special relationship is not a formal element of a negligent misrepresentation claim under Ohio law." Id. The more essential consideration is whether the "defendant suppl[ied] false information for the guidance of the plaintiff in its business transactions." Id.

The Magistrate Judge concluded that National Mulch's approach was more persuasive than any authority on this subject that was cited by SAP. Because he determined that Hodell had supplied facts that could satisfy the standard as explained by National Mulch, he recommended that summary judgment be denied as to the negligent misrepresentation claim. SAP maintains this was error, but fails to explain why, except for repeating the same arguments and citing the same cases already rejected by both the Magistrate Judge and this Court. Because SAP fails to provide a convincing argument that the Magistrate Judge should be reversed, his recommendation is accepted.

16

*4. Breach of Contract*

SAP America argues that the Magistrate Judge erred by recommending that summary judgment be denied as to Hodell's breach of contract claim. The relevant provision of the Licensing Agreement reads as follows:

> 7.1 Warranty. SAP warrants that the Software will substantially conform to the functional specifications contained in the documentation for six months following delivery. The warranty shall not apply: (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database.

(Doc. 110-12, Ex. K). SAP argues that Hodell's failure to offer any evidence that Business One failed to meet the functional specifications forecloses the need for trial.

The Court disagrees. As discussed by the Magistrate Judge, Hodell provided sufficient evidence to meet its summary judgment burden. As an example, Dan Kraus, Director of the Business One channel for SAP America, sent an email in which he stated that "[i]f [Hodell] had requested the return of software due to inability to conform to documentation, we likely would have been obligated to honor the request." During his deposition, Mr. Kraus explained that by "documentation" he meant "the documentation in the software that talks about the functionality in terms of how it performs." In addition, Hodell's president, Kevin Reidl, testified at length to specific issues relating to the functionality of Business One, as they are specified in paragraph 49 of the Amended Complaint. In the Court's view, the Magistrate Judge properly concluded that issues of material fact exist as to whether SAP breached the Licensing Agreement.

Because none of SAP's objections has merit, the Court accepts the Magistrate Judge's recommendation that SAP's motion for summary judgment be denied.

17

**B. LSi/IBIS's Objections**

LSi/IBIS maintains that the Magistrate Judge erred by recommending that that summary judgment be denied with respect to Hodell's claims of fraud and fraudulent inducement. To prove fraud, a plaintiff must demonstrate:

> (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

Cohen v. Lamko, Inc., 10 Ohio St. 3d 167, 169, 462 N.E.2d 407, 409 (1984). LSi/IBIS maintains that Hodell has not presented sufficient evidence to satisfy the first, third, or fifth elements of its fraud claim and that Magistrate Judge erred by concluding otherwise.

LSi/IBIS first argues that there is no evidence that it made any "independent representations" as to the quality and capacity of Business One. According to LSi/IBIS, any representation that it may have made in this regard has its source with SAP. As a consequence, LSi/IBIS argues, it cannot be held liable. This argument has no merit. As noted by the Magistrate Judge, LSi/IBIS fails to identify any authority to support the proposition that a viable fraud claim depends on the existence of false representation that was made "independently." (See Doc. 183, p. 8).

LSi/IBIS also argues that Hodell has not presented evidence that LSi/IBIS made a representation "with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred." It is LSi/IBIS's position that it was only passing along bad information obtained from SAP,

18

and that when it did so it was unaware that the information was false. The Magistrate

Judge recognized that evidence exists to support LSi/IBIS's contention, since Mr. Van

Leeuwen testified that he was told by three SAP representatives that Business One was

appropriate for a business of Hodell's size. Further, a jury may find that LSi/IBIS held

the honest belief that Business One could accommodate Hodell's needs based on

SAP's marketing materials which advised that the software was appropriate for

businesses with five to 500 employees. On the other hand, the Magistrate Judge

correctly recognized that there is also evidence by which a jury could reasonably infer

otherwise. The following evidence cited by the Magistrate Judge would permit a

reasonable inference that LSi/IBIS knew or acted with disregard to the fact that the

software was incompatible with Hodell's needs:

> During his deposition, Dan Kraus, Director of the Business One channel for SAP America, stated that in 2003 and 2004, SAP did not market B1 in terms of users. To his knowledge, B1 has never been marketed in terms of the number of users it could handle. (Doc. 128-1, pp. 42-43).

> During a partner meeting held on September 13-14, 2004, prior to the signing of the Development Agreement, according to the notes taken by a Jon Woodrum, at Mr. Lowery's direction, Mr. Kraus stated that the ideal B1 customer has "simple business processes" and "10 users." (Doc. 150, pp. 469-472; Doc. 158-35).

> During the deposition of Ralf Mehnert-Meland, the former director of business development for SAP America, he stated that Mr. Lowery of LSi "mis-sold" Business One to Hodell. (Doc. 152, pp. 13-14, 101-103). He stated that "we had no idea that ... a customer had been told this would be good for 250 users." Id. at 83.

> A document produced by LSi released by SAP to its Business One partners in March of 2005, prior to the signing of the License Agreement towards the end of December 2005, states as follows: "In future releases, SAP Business One will focus on the needs of businesses with 10 to 100 employees. While SAP Business One continues to meet the needs of many larger businesses of up to 250 employees, by concentrating on companies with 10-100 employees, we will

be able to more rapidly increase penetration of the small and midsize market ..." (Doc. 158, p. 5).

A document produced by LSi, created by Gadi Samia of SAP in 2005, states as follows: "SAP Business One is an affordable, integrated business management solution designed specifically for small and midsize companies (10-100 employees)." (Doc. 158-37, p. 4). It also indicates that the Business One "sweet spot" is for "very small business" of 1-100 employees. Id. at 6.

In an email written by Mr. Mehnert-Meland, he stated that "Hodell asked the right question today: 'Did we buy the wrong solution with SAP Business One.' Based on what we know now, the answer is 'yes' as Lowery completely oversold SAP Business One.... SAP Business One was never advertised for companies with up to $250mm in revenues and 500 users." (Doc. 158-45). In another email, he stated that "Lowery needs to take responsibility for the mis-sell." (Doc. 158-43).

Mr. Kraus also confirmed that he sent an email, marked as Exhibit 159, which stated that "[t]he partner clearly has misrepresented the [Business One] solution." (Doc. 158-44; Doc. 128-1, p. 125).

Geoffrey Ashley is a former employee of SAP who was hired in November 2005 as the director of channel sales for North America for SAP's Business One software. (Doc. 143, p. 4.) He stated that while "SAP definitely defined or gave a range for employees. I don't recall seeing anything saying how many users, because it's almost impossible to know." Id. at 72

(Report and Recommendation, Doc. 183, pp. 9-10). LSi/IBIS fails to explain how Judge White erred by relying on this evidence to reach the conclusion that "a reasonable juror could further find that the information was transmitted to Hodell with either knowledge of its falsity or with such recklessness that knowledge of the falsity may be inferred." The objection is accordingly overruled.

Next, LSi/IBIS maintains that Judge White incorrectly concluded that the evidence supports the element of justifiable reliance. LSi/IBIS argues that because Hodell independently investigated Business One prior to any involvement on the part of LSi/IBIS, Hodell could not have justifiably relied on any representation that LSi/IBIS might have later made with regard to Business One. As the Court understands it,

20

LSi/IBIS seems to be arguing that by forming a prior independent basis for believing that Business One would accommodate its needs, Hodell either could not possibly rely on LSi/IBIS's representations or Hodell was not justified in doing so. Neither argument has merit. First, LSi/IBIS fails to offer any reasoned explanation as to how Hodell's own investigation forecloses reliance on LSi/IBIS's representations. There is no apparent reason why, despite its independent belief, Hodell could not also have relied on the representations of a company that took a meeting with SAP to "evaluate whether [Business One] might be a fit for Hodell. . . ."  And, because Hodell did independently investigate Business One, it would be all the more justified in relying on LSi/IBIS's representations since they were consistent with its own findings. Moreover, the record evidence described in Hodell's response to LSi/IBIS's objections supports a finding of justifiable reliance. LSi/IBIS's objection is accordingly overruled.

Next, LSi/IBIS objects to the recommendation that summary judgment be denied in relation the Hodell's breach of contract claim. LSi/IBIS argues that it fulfilled all its obligations under the Development Agreement to develop In-Flight Enterprise for Business One. The Magistrate Judge concluded that the Development Agreement could reasonably be construed to obligate LSi/IBIS to *successfully* implement In-Flight for Business One. Because the contract was not clear and unambiguous as to what constituted "successful implementation," Judge White concluded that the definition of "successful implementation" may depend on extrinsic evidence, which should be considered by the trier of fact. Further, because record evidence suggests that In-Flight was not successfully implemented, the Magistrate Judge recommended denying the LSi/IBIS's motion in relation to the breach of contract claim.

LSi/IBIS argues that Judge White erred because when he reviewed the Development Agreement, he failed to consider the following language:

Project Description: The development of the IBIS Group's In-Flight Enterprise application and its integration into SAP Business One Software for Hodell-Natco Industries, Inc.

According to LSi/IBIS this language means that "the project is for the development and integration of In-flight for Business One." Thus, LSi/IBIS argues, because it fulfilled this obligation, Hodell cannot demonstrate that LSi/IBIS breached the Development Agreement.

LSi/IBIS offers no clear explanation as to how the language contained in the "Project Description" undercuts the Magistrate Judge's conclusion that a reasonable interpretation of the contract is that LSi/IBIS was obligated to *successfully* implement In-Flight Enterprises. As noted by the Magistrate Judge, "the Development Agreement . . . affirmatively and unequivocally states that [payment] 'will be due on successful implementation.'" It is not readily apparent how Judge White could be said to have erred in light of the language contained in the Project Description. Nor does LSi/IBIS challenge the conclusion that evidence exists to show that In-flight was not successfully implemented. Because LSi/IBIS has essentially failed to object to Judge White's recommendations on this point, those recommendations are accepted by this Court.

LSi/IBIS also argues that Hodell's implied warranty theories fail. First, LSi/IBIS argues that Hodell cannot establish a breach of the implied warranty of merchantability because Business One is a good that is "one-of-a-kind, new, or for which there is not yet a market to which to compare the good." (Doc. 188, p.18).

Goods are not merchantable when they are "not of an acceptable quality when compared to that generally acceptable in the trade for goods of the kind." Price Bros. Co. v. Philadelphia Gear Corp., 649 F.2d 416, 424 (6th Cir. 1981). LSi/IBIS contends that because the combination of In-Flight Enterprise with Business One had not previously existed in the industry, there are no other "goods of the kind" by which its quality may be judged. As such, it maintains that no implied warranty of merchantability exists in this instance.

LSi/IBIS relies on Price Brothers to support its argument. In that case, the parties

contracted for the sale of components to be installed in a highly complex piece of machinery. The components had never before been used in machinery of that type. The specific machinery was itself new and had never been operated with or without the components.

Id. at 424. The owners of the machinery sued the seller of the components, arguing a breach of implied warranties. The court held that

In these circumstances no average or usual standards for determining ordinary performance or quality for the components can be determined, and no warranty of merchantability arises from the transaction.

Id.

This Court is not persuaded that Price Brothers forecloses Hodell's claim that LSi/IBIS breached the implied warranty of merchantability. There is no dispute that In-Flight had never been paired with Business One and that, in this way, the good was unique. However, this is not to say that no other goods of the kind exist in the trade. Unlike the situation in Price Brothers, In-Flight was an existing product that had been previously paired with FACTS, the software product used by Hodell before it switched to Business One. Further, Business One was itself an existing product. Based on these

23

distinguishing facts, LSi/IBIS does not make a convincing case that there is "no average or usual standard[ ] for determining ordinary performance or quality. Id. at 424. LSi/IBIS does not explain why the applicable standard of merchantability could not be determined with reference to how Business One and In-Flight (or similar software) had performed in the past.

LSi/IBIS also argues that it is entitled to summary judgment on Hodell's claim that it breached the implied warranty of fitness for a particular purpose. In order to recover under an implied warranty of fitness for a particular purpose under Ohio Rev. Code § 1302.28, Plaintiff must prove the following two elements:

> First, the seller must be aware at the time of contracting of a particular purpose for which the buyer intends to use the goods. Second, the buyer must rely on the seller's skill or judgment to select or furnish goods suitable for that particular purpose.

Price Bros. Co. v. Philadelphia Gear Corp., 649 F.2d 416, 423 (6th Cir. 1981) (citing Ohio Rev. Code Ann. § 1302.28). LSi/IBIS maintains that Hodell's claim fails because it cannot establish that it relied on LSi/IBIS's skill or judgment to select either In-Flight or Business One.

In response, Hodell presents the testimony of Mr. Van Leeuwen, which states that he "had a very good understanding of Hodell-Natco's business processes, just because of the length of engagement and the relationship [he] had with them." (Doc. 138, p. 52). Further, Mr. Van Leeuwen acknowledged that Hodell was relying on LSi's judgment and skills in selecting Business One and In-Flight. In the Court's view, Hodell has presented evidence by which a jury could conclude that Hodell relied on LSi/IBIS skill or judgment to select the software products.

24

Finally, LSi/IBIS argues that the Magistrate Judge erroneously recommended that summary judgment be denied as to Hodell's claim of negligent misrepresentation. LSi/IBIS maintains that under Ohio law Hodell cannot recover under theories of both fraud and negligence based on the same course of conduct. See Textron Financial Corp. v. Nationwide Mutual Ins. Co., 115 Ohio App. 3d 137, 149 (Ohio Ct. App. 1996). While this is certainly true, since a defendant cannot act both intentionally and negligently in relation to the same conduct, it is not a problem at this stage of the proceedings. As noted by Hodell, while a plaintiff cannot ultimately recover on both theories, it may try both claims, alternatively, before a judge or jury.

**VI. Conclusion**

For the reasons stated above, the Magistrate Judge's R&Rs are adopted by this Court.  SAP's motion for summary judgment is denied. (Resolving Doc. 110). LSi/IBIS's motion for summary judgment is granted in part and denied in part. (Resolving Doc. 105). Specifically, the motion is granted as to Hodell's negligence claim and denied in other respects. Hodell's motion for judgment on the pleadings/motion for summary judgment is denied. (Resolving Doc. 109).

IT IS SO ORDERED.

   /s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 31 March 2014

25