UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PHILADELPHIA CONSOLIDATED HOLDING CORPORATION, d/b/a PHILADELPHIA INSURANCE COMPANIES, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:12CV1005 CDP |
| LSI-LOWERY SYSTEMS, INC., HODELL-NATCO INDUSTRIES, INC., and THE INTEGRATED BUSINESS SOLUTIONS GROUP, INC., d/b/a THE IBIS GROUP, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## JUDGMENT

As the Court has granted plaintiff's motion for summary judgment against LSi and as defendant IBIS is in default,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment is entered in favor of plaintiff Philadelphia Consolidated Holding Corporation, doing business as Philadelphia Insurance Companies, and against LSi-Lowery Systems, Inc., Hodell-Natco Industries, Inc., and The Integrated Business Solutions Group, Inc., doing business as The IBIS Group, LLC.

EXHIBIT A

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that

Philadelphia has no duty to provide a defense, coverage, or indemnity to LSi or

IBIS for the claims of Hodell, SAP America, or SAP AG under Policy Number

PHSD250284 (the 2007 policy) or under Policy Number PHSD319209 (the 2008

policy).

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of October, 2013.

- 2 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PHILADELPHIA CONSOLIDATED HOLDING CORPORATION, d/b/a PHILADELPHIA INSURANCE COMPANIES, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:12CV1005 CDP |
| LSI-LOWERY SYSTEMS, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This insurance coverage declaratory judgment case is before me on the

plaintiff's motion for summary judgment.  I heard oral arguments on the motion on

September 30, 2013.  This suit seeks a declaration that plaintiff Philadelphia

Consolidated Holding Corporation, doing business as Philadelphia Insurance

Companies, does not owe a duty to defend and indemnify its insured for claims

made in a suit pending in Ohio.

Hodell-Natco Industries, Inc. is a company that brought suit in the United

States District Court for the Northern District of Ohio against the insured, LSi-

Lowery Systems, Inc.  Hodell also sued SAP America, Inc., SAP AG, and the IBIS

Group, Inc.  In the underlying suit, Hodell seeks damages allegedly sustained when

business software purchased from and implemented by defendants failed to properly function.

LSi had two consecutive insurance policies with Philadelphia Insurance Companies. Both are "claims made" policies. The first policy was effective from April 23, 2007 to April 23, 2008 (2007 Policy), and the second policy was effective from April 23, 2008 to April 23, 2009 (2008 Policy). Philadelphia brought this declaratory judgment case asserting that the claims in the underlying suit are not covered by either policy. Philadelphia has moved for summary judgment. Because LSi failed to provide notice of claims or potential claims to Philadelphia, I will grant Philadelphia's motion for summary judgment.

## Undisputed Facts

Hodell bought business software from LSi. The product is referred to as SAP Business One, and had an add-on product, called In-Flight Enterprise. LSI agreed to integrate the products with Hodell's business. The software went live on March 1, 2007. Hodell immediately began experiencing problems with the software.

On March 13, 2007, Kevin Reidl of Hodell emailed Dan Lowery of LSi stating that there were "major issues" with the software, the issues were impacting LSi's bottom line, and Reidl expected "all parties" to work to correct the issues.

On March 14, 2007, Lowery sent an email to Reidl, informing him that Lowery had sent a memo acknowledging that "if we do not get Hodell happy, we can expect a legal issue." On March 20, 2007, Reidl again emailed Lowery and stated that if performance did not improve, Reidl would recommend that they "start the process of taking legal action." On April 7, 2007, Reidl emailed Lowery requesting that Lowery "keep your team focused on getting us fully operational." On April 11, 2007, Lowery emailed SAP to state that there were "extreme system performance issues" with the Hodell implementation, and it was causing Hodell to lose "hundreds of thousands of dollars a month." On April 19, 2007, Reidl emailed Lowery to inform him of a specific issue with the software and asking who to send the invoice to once the issues were resolved.

The 2007 policy (Policy No. PHSD250284) went into effect on April 23, 2007. LSi did not notify Philadelphia of any potential claims at that time.

In an email on April 25, 2007, Reidl told Lowery that they would "have a discussion on who will pay for the damages." That same date, Otto Reidl of Hodell emailed Lowery informing him that "our attorneys have now been brought into the loop." On May 24, 2007, Kevin Reidl emailed Lowery stating that certain consulting activities and associated costs would be LSi's burden. Reidl also stated that if the issues were not resolved, "the resulting activities on my part will make

the consulting fees/expenses seem insignificant." Reidl sent another email to Lowery on June 5, 2007 with a list of items for LSi to complete, and stated that if they were not completed, LSi would be "turning communications over to our legal advisors." Lowery responded to Kevin and Otto Reidl that same date, stating the comment on going to court "left me shaken." In a June 25, 2007 email to LSi, Kevin Reidl demanded that LSi correct certain data in the system, "or reimburse Hodell-Natco for the expense."

On July 6, 2007, Lowery sent an email to an LSi colleague stating that they were likely to receive a letter from Hodell's lawyers, "Probably stating their demands for money." On July 24, 2007, Lowery was sent a letter from the law firm of Spieth, Bell, McCurdy & Newell Co., L.P.A., informing him that they had been retained by Hodell "in connection with the Development Agreement." The letter stated that the software fell short of the promised performance, and while Hodell "would like to avoid litigation . . . Hodell-Natco will pursue all legal and equitable remedies available to it." Lowery acknowledged receipt of the letter in an email dated July 26, 2007.

In a string of emails on January 23, 2008, Lowery repeatedly asked Kevin Reidl if he was intending on suing LSi. That same date, Reidl emailed Lowery

"offering you the chance to resolve this situation by refunding the TOTAL funds that we've paid to LSi that are related to software licenses and maintenance fees."[1]

The 2008 policy (Policy No. PHSD319209) went into effect on April 23, 2008.  Again, LSi had not notified Philadelphia of any claims or potential claims. On November 21, 2008, Hodell brought its lawsuit against LSi, IBIS, and SAP. LSi notified Philadelphia of the lawsuit on December 8, 2008; this was the first notice LSi gave Philadelphia of any possible claims or problems with the Hodell matter.

### Legal Standards

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its

---

[1] There are many more communications between the parties, but I have included here a representative sampling that is sufficient for the purposes of this summary judgment decision.

pleadings but by affidavit or other evidence must set forth specific facts showing

that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).

Under Missouri law, which applies to this diversity case, the rules governing

the interpretation of insurance polices are well settled.  *Columbia Mut. Ins. Co. v.*

*Schauf,* 967 S.W.2d 74, 77 (Mo. 1998).  A court must apply the general rules of

contract construction when interpreting an insurance policy, because insurance

policies are contracts.  *Todd v. Mo. United Sch. Ins. Council,* 223 S.W.3d 156, 160

(Mo. 2007).  When interpreting a contract, a court must give the contract's terms

their plain and ordinary meaning, unless a term is ambiguous.  *Farmland Indus.,*

*Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. 1997)); *Peters v. Emp'rs Mut.*

*Cas. Co.,* 853 S.W.2d 300, 301 (Mo. 1993).  A term's plain and ordinary meaning

is the meaning that an average layperson would give the term.  *Farmland Indus.,*

*Inc.,* 941 S.W.2d at 508.  In addition, a court "should not interpret policy

provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied*

*Prop. & Cas. Ins. Co.,* 307 S.W.3d 132, 135 (Mo. 2009).  Finally, in interpreting

an insurance contract, the court must "endeavor to give each provision a reasonable

meaning and to avoid an interpretation that renders some provisions useless or

redundant." *Dibben v. Shelter Ins. Co.,* 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

The burden of proving coverage is on the insured, but the burden of proving that a

claim falls within an exclusion is on the insurance company. *State Farm Fire &*

*Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo. Ct. App. 1993).

A term is ambiguous only if the terms are "reasonably and fairly open to

different constructions, and there is duplicity, indistinctness, or uncertainty of

meaning." *Miller's Classified Ins. Co. v. French*, 295 S.W.3d 524, 526 (Mo. Ct.

App. 2009) (citations and internal quotation marks omitted).  When an ambiguity

exists in an insurance policy, the court must interpret the policy in favor of the

insured. *Todd*, 223 S.W.3d at 160.  If, however, the policy is unambiguous, the

court must enforce the contract's terms as written. *Id.*

## Discussion

### *2007 Policy*

The 2007 policy provided coverage for claims "first made against the

'Insured' and *reported* to the Company by written notice *during the 'Policy*

*Period.'*" (emphasis added).  It is undisputed that LSi did not report any claim to

Philadelphia until December of 2008, well after the 2007 policy had expired.  By

the plain language of the policy, there is no coverage.  Philadelphia is not required

to show that it was prejudiced by the lack of notice, as discussed more fully in the

next section.

### *2008 Policy*

In the 2008 policy, Philadelphia agreed to pay all sums "for which you shall become legally obligated to pay as damages resulting from any claim first made against you during the policy period." The 2008 policy defined a claim as a demand for money or service arising from a wrongful act, and a wrongful act was defined as a negligent act, error, or omission committed or alleged to have been committed by the insured.

Other courts interpreting similar insurance contracts have found communications just like those between the parties here to be sufficient to constitute a claim. *See, e.g., Berry v. St. Paul Fire & Marine Ins. Co.*, 70 F.3d 981, 982 (8th Cir. 1995) (holding that a letter mentioning injuries, deeming the insured responsible for the injuries, and requesting an unspecified amount of compensation constituted a claim); *Int'l Ins. Co. v. Peabody Int'l Corp.*, 747 F. Supp. 477, 480 (N.D. Ill. 1990) (holding that a letter insisting the insured take steps to remedy "contractual shortcomings" constituted a demand for services within the definition of "claim"). The undisputed facts here clearly show that Hodell blamed LSi for the functionality problems of the Business One and In-Flight software, requested that LSi fix the issues, and expected LSi to pay the associated costs.

Even if these requests did not constitute a claim, the 2008 policy would still not cover the underlying suit. The policy contained an exclusion for any claim

arising out of a wrongful act committed prior to the policy period for "which [the insured] had any basis to believe might reasonably be expected to give rise to a claim." What matters for the purpose of such policy language is not the insured's subjective belief regarding a likely claim, but what the objective evidence shows is a reasonable expectation. *See Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*, 969 S.W.2d 749, 754 (Mo. 1998); *City of Brentwood, Mo. v. Northland Ins. Co.*, 397 F. Supp. 2d 1143, 1148 (E.D. Mo. 2005). Hodell informed LSi of the software issues almost immediately after the "go live" date, and as early as March 14, 2007, LSi acknowledged that if the problems were not resolved "we can expect a legal issue." The ongoing communications between the parties over the course of the next year provide clear objective evidence that a claim might reasonably have been expected.

Defendants nonetheless argue that LSi was not required to provide notice to Philadelphia because the claims or potential claims were not of a type covered by the policies, there was no "triggering event," and there was no prejudice to Philadelphia. In support of the first point, defendants cite a number of non-Missouri cases for the proposition that "if a claim is generally recognized as a demand for something . . . the something demanded must be something *that is covered by the policy.*" *Upper Allen Tp. V. Scottsdale Ins. Co.*, No. 1:CV921557,

- 9 -

1994 WL 772759, at *9 (M.D. Pa. Apr. 29, 1994). *See also Nat'l Union Fire Ins.*
*Co. of Pittsburgh v. Willis*, 139 F. Supp. 2d 827, 833-34 (S.D. Tex. 2001); *City of*
*Pittsburgh v. Am. Asbestos Control Co.*, 629 A.2d 265, 242-43 (Pa. Commw. Ct.
1993); *McMillen Eng'g, Inc. v. Travelers Indem. Co.*, 744 F. Supp. 2d 416, 426
(W.D. Pa. 2010); *Penn Tank Lines, Inc. v. Liberty Surplus Ins. Corp.*, No.
10CV178, 2011 WL 2117949, at *7 (E.D. Pa. May 27, 2011).

Whether or not these cases should apply here is immaterial, because the
result would be the same. Even ignoring all of the earlier communications holding
LSi responsible for the software problems and demanding money and services, the
July 24, 2007 letter from Hodell's attorneys informed LSi that, if necessary, Hodell
"will pursue *all* legal and equitable remedies available to it." (emphasis added).
The objective evidence shows that LSi should have reasonably expected a *covered*
claim might be raised.

Additionally, there is no requirement that a discreet "triggering event"
precede a claim. The language of the policy refers to "a negligent act, error, or
omission," and under Missouri law I must give the contract's terms their plain and
ordinary meaning. *Farmland Indus., Inc.*, 941 S.W.2d at 508. Nothing in the plain
language of the contract precludes an ongoing alleged wrong from constituting "a
negligent act, error, or omission," nor does this conflict with the ordinary meaning

of those terms.  The undisputed facts show that LSi was aware that Hodell held LSi responsible for the faulty implementation of the Business One and In-Flight software, as well as failing to properly support or rectify issues with the software once it went live.

Defendants also argue that Philadelphia must prove it was prejudiced by LSi's failure to timely notify Philadelphia of the claims or potential claims.  This argument is simply not supported by the law.  Missouri courts have repeatedly held that under a claims-made policy, as the one at issue here, there is no need to prove prejudice.  *See, e.g., Wittner*, 969 S.W.2d at 754 ("[T]o excuse a delay in notice beyond the policy period would alter a basic term of the insurance contract").  Defendants also cite Missouri regulation 20 CSR 100-1.020, which states: "No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time following any loss, unless this failure operates to prejudice the rights of the insurer."  However, this exact argument has been considered and rejected by the Eighth Circuit in *Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634 (8th Cir. 1996), and I find no reason to depart from that holding here.

Finally, defendants argue that the present case is distinguishable because the notice requirement appears in an exclusion, rather than a condition precedent, and

- 11 -

exclusions must be more strictly construed against the insurer.  In addition to the
fact that the caselaw is silent as to whether such a distinction matters regarding
prejudice, I also find that the undisputed facts show Philadelphia has in fact
suffered prejudice here.  As was the case in *Wittner*, Philadelphia "was denied an
opportunity to manage and attempt to reach an early and relatively inexpensive
resolution" of the claim.  969 S.W.2d at 755.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment
[#50] is granted, and plaintiff is entitled to a declaration that it is not obligated to
indemnify or defend LSi on this claim.

A separate judgment is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of October, 2013.