UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE:  LESLEY WELLS |
| | ) | |
| -vs- | ) | |
| | ) | |
| SAP AMERICA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF HODELL-NATCO
INDUSTRIES, INC.'S MOTION IN LIMINE TO PRECLUDE THE EXPERT TESTIMONY
AND OPINIONS OF BROOKS HILLIARD
_____

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), submits the following Reply
Memorandum in support of its Motion to Preclude the Expert Testimony and Opinions of Brooks
Hilliard. [ECF #197].

## I.  <u>INTRODUCTION</u>

Mr. Hilliard's Report and proposed testimony cross the line from expert opinion to legal
advocacy.  In this regard, Mr. Hilliard seeks to "educate" the jury on whose testimony should be
believed, and whose should be disregarded.  He attempts to "help the jury understand" certain
amorphous "standards of care" that have no bearing upon how the parties actually conducted
themselves in this particular case.  In other instances, he proposes to testify on subjects which
frankly have no involvement in this case whatsoever.

Mr. Hilliard's long history as a professional expert witness does not qualify him to
supplant the role of the parties' advocates by summarizing evidence, opining on credibility, and

substituting his own view of the evidence for that of persons who were actually directly involved in the failed Business One implementation and who have actual firsthand knowledge of the subjects upon which Mr. Hilliard proposes to testify.  For these reasons, Mr. Hilliard should be precluded from testifying at trial.

## II.  MR. HILLIARD'S OPINIONS ARE INADMISSIBLE AT TRIAL

### A.  Mr. Hilliard's Opinion on the Term "Business Partner" is an Improper Legal Opinion That Usurps the Jury's Function.

SAP attempts to defend the improper legal opinion given by Mr. Hilliard by claiming that he is merely opining on an industry term of art that the jury would be incapable of understanding for itself.  However, unlike the cases upon which SAP relies, Mr. Hilliard is not interpreting the allegedly ambiguous terms of a contract.  He is telling the jury how it should interpret the use of the term "business partner" as deployed by SAP's marketing literature directed at end-users such as Hodell.  Thus, Mr. Hilliard is not testifying as to how two sophisticated software companies would have viewed SAP's use of the term business partner when negotiating a contract.  He is testifying as to how Hodell should have viewed SAP's use of that term when it reviewed SAP's marketing and informational documents.  In this regard, Mr. Hilliard is usurping the jury's role.

Additionally, Mr. Hilliard's opinion is not germane to any issue in this case, as he merely opines that "business partner" as used in the software industry does not connate any financial responsibilities inherent in a partnership for tax purposes.  It is difficult to understand how such an opinion relates to any issue in this case, as no parties are alleging the existence of "financial responsibilities" between SAP and LSi emanating from a "partnership for tax purposes."

Perhaps more troubling is that Mr. Hilliard has identified no basis for his testimony.  Rather, the Court and the jury must merely take Mr. Hilliard's word for it, and must believe that citation to a Wikipedia article, alone, is a sufficient basis for Mr. Hilliard's testimony.  Mr.

Hilliard should not be permitted to offer opinions without any basis to do so other than shaky internet articles.  Mr. Hilliard's opinion on the term business partner is unreliable and inadmissible.

      **B.**      **Mr. Hilliard's Testimony About the "Typical Responsibilities" of Parties When Implementing Software is Irrelevant and Unhelpful.**

While it is true that expert witnesses may be permitted to testify on the standard of care in various professions or industries, that is not what Mr. Hilliard is doing here.  Rather, he is simply ignoring the unrefuted testimony of several witnesses that is at odds with how he personally would assign responsibility (and later in his Report, how he assigns blame) in this particular case.  Mr. Hilliard's testimony as to the allocation of parties' "typical responsibilities" in some unidentified hypothetical software implementation is far from helpful where, as here, it bears no relation to, and flatly ignores, the _actual_ assignment of responsibilities in this particular case.

SAP's purported expert "business partner" LSi has admitted responsibility for overseeing the selection of Hodell's equipment to run Business One, and has acknowledged responsibility for the pre-live testing and implementation of the Business One program at Hodell.  LSi has also admitted that it was intimately aware of Hodell's proposed use of the software, its business practices and needs.   Neither Mr. Hilliard nor SAP have established any basis for hoisting these responsibilities upon an end-user such as Hodell, as Mr. Hilliard's Report attempts to do years after-the-fact.

Thus, there is no "fit" between Mr. Hilliard's testimony and the actual issues present in this case, as Mr. Hilliard cannot tie his testimony about a hypothetical assignment of responsibilities among parties in a hypothetical software implementation to the actual responsibilities undertaken by the parties in this case.  _Habecker v. Clark Equip. Co._, 36 F.3d 278, 290 (3d Cir. 1994)(discussing the requirement of a "fit" between the proposed expert

testimony and the disputed issues in the case).  SAP is not permitted to offer "expert testimony" to contradict unrefuted fact evidence merely because it would like to lay blame at Hodell's feet for the failures of SAP's Business One program.

Mr. Hilliard's testimony as to how implementation responsibilities may be divided in some hypothetical software implementation is irrelevant to how they were <u>actually</u> assigned in this case.  In this regard, Mr. Hilliard's opinion is nothing more than an attempt to contradict and supplant testimony from fact witnesses, and should not be permitted.

      **C.**      <u>**Mr. Hilliard's Proposed Testimony Regarding SAP's Marking Literature and the "Employees" vs. "Users" Debate is Unhelpful and Irrelevant**</u>.

Mr. Hilliard's opinion on how SAP's use of the term "employees" differs from the term "users" is inadmissible for the same reasons his opinion on SAP's use of "business partner" is inadmissible.  In this regard, Mr. Hilliard does nothing more than advocate SAP's position as to how Hodell ought to have interpreted SAP's use of that term in its marketing literature.  Such testimony supplants the jury's role and is inadmissible.

Unlike the cases relied upon by SAP, Mr. Hilliard is not testifying as to how a certain "industry term of art" may have been used in a contract between two companies in that industry or in a related field. Rather, as SAP admits, Mr. Hilliard's testimony is geared towards proving "that even Hodell understood the significant difference between these terms." [ECF #201, p. 11]. Of course, an expert is not permitted to testify as to a party's state of mind, which is precisely what Mr. Hilliard proposes to do here.

Mr. Hilliard also fails to identify any basis for his opinion, other than his standard reference to his "years in the industry."  Nor does he connect his purported experience with the difference between how other software companies may have used "users" and "employees" to how SAP <u>actually</u> used those terms in this case.  In this regard, it is not relevant how some other

4

unidentified software company may have deployed these terms. What is relevant to this case is how they were used by SAP, and how they were understood by Hodell. This hardly requires expert testimony, as fact witnesses from SAP and Hodell could testify on these issues. And Mr. Hilliard's testimony is not admissible solely for the purpose of opining whether Hodell should have reasonably read "employees" to be synonymous with "users." That is a role strictly for the trier of fact.

### D.   Mr. Hilliard's Opinion #1 is Unhelpful and Irrelevant.

Mr. Hilliard's Opinion #1 is actually two opinions in one, neither of which is admissible at trial. Mr. Hilliard's first purported opinion proposes to opine on SAP's reasons for establishing the partnership program at issue in this case. Of course, SAP is perfectly capable of having one of its own employees testify as to the structure and purpose of its partnership program. Expert testimony on this topic is simply unnecessary. Further, Mr. Hilliard is not permitted to testify as to SAP's motive or intent in establishing this program, which is precisely what he proposes to do despite SAP's assertion to the contrary. [See, Hilliard Report at p. 17, noting the reasons for establishing a partner program]. As the cases cited by SAP even recognize, "[s]pecialized knowledge is not required nor will it assist the trier of fact in understanding the evidence regarding motive." *IDX Systems Corp. v. St. John Health System*, N.D. Ohio No. 00-cv-71631, 2003 WL 25676069, *12 (N.D. Ohio Mar. 28, 2003)(*citing Woods v. Lecureaux*, 110 F.3d 1215, 1220 (6th Cir. 1997)).

Indeed, Mr. Hilliard makes no effort to analyze the actual business partner relationship between SAP and LSi in this case, and thus makes no effort to connect it to his alleged experience with the generic partnering process referenced in his report.

Additionally, Mr. Hilliard makes the extreme argument that "no organization" that has

ever used ERP software would be able to do so without signing a license agreement.  Mr. Hilliard's hyperbolic statement is unhelpful, as what other software purchasers may have done in other implementations is irrelevant to what <u>actually</u> occurred here.  In this regard, Mr. Hilliard again attempts to supplant the jury's function by testifying as to what Hodell knew or should have known.

E.       **SAP Fails to Identify Any Basis For Mr. Hilliard's Opinion #2.**

Mr. Hilliard's Opinion #2 is nothing more than advocacy by a purported expert witness as to how the jury should view certain evidence and testimony that may be admitted at trial. While Mr. Hilliard attempts to lay blame at Hodell's feet for the shortcoming in SAP's software, neither Mr. Hilliard nor SAP identify the particular "customs and practices" Hodell supposedly failed to follow or their origin.  SAP's Opposition is nothing more than an urging that the Court take Mr. Hilliard's word for it, as Mr. Hilliard does nothing more than refer to his supposed experience in the industry as the basis for his testimony.  As the court stated in *First Specialty Ins. Corp. v. Ward N. Am. Holding, Inc.*, D. Kan. no. 04-2359, 2006 WL 6225115, *2 (D. Kan. Nov. 1, 2006), "[a]n expert opinion without an exploration of the criteria upon which such opinion is based does not assist the jury to 'understand the evidence or determine a fact in issue.'" (*citing* Fed.R.Evid. 702)).

Mr. Hilliard's usage of the terms "unprofessional" and "unusual" are highly prejudicial and should not be permitted absent strong evidence that his opinion is based upon some reliable methodology and foundation.  Thus, Mr. Hilliard's failure to identify any industry procedures or standards – other than those concocted for purposes of his Report – is fatal to this aspect of his testimony.

6

F.     **Mr. Hilliard's Opinion #3 and Opinion #4 Do Nothing More Than Comment Upon Evidence.**

While SAP's Opposition refers to Mr. Hilliard's third and fourth opinions as a rebuttal to the opinions given by Hodell's expert, Helmuth Guembel, it is nothing of the sort.  Indeed, Mr. Hilliard does not even stake out a position contrary to Mr. Guembel's.  Rather, he merely comments upon whether the evidence supports Mr. Guembel's opinion.  In this regard, Mr. Hilliard's "opinions" are nothing more than advocacy for SAP; they are not expert opinions at all and should not be admitted at trial.  A jury viewing the evidence at trial could just as easily determine whether the evidence at trial supports Mr. Guembel's opinion, or whether it should be disregarded or diminished.  This is hardly the role of expert testimony.

When viewed in its entirety, it is clear that Mr. Hilliard proposes to do nothing more than comment upon evidence in the record that SAP believes may contradict the opinions given by Mr. Guembel.  This is a function for attorneys, not for expert witnesses whose opinions should be based upon their own investigation, observations and conclusions – not solely those of fact witnesses who can just as easily testify based upon their own firsthand knowledge.

Mr. Hilliard does not undertake any of the scientific analysis engaged in by Mr. Guembel relating to Business One's two-tier architecture and its inherent limitations.  Rather, he merely summarizes evidence in the record he believes may disprove Mr. Guembel's opinion, in the nature of how an attorney might cross-examine Mr. Guembel at trial.  Expert testimony is unnecessary to summarize or interpret evidence.  Testimony may be presented from the fact witnesses that actually made the statements summarized by Mr. Hilliard.

Further, Mr. Hilliard attempts to point to other software programs running a two-tier architecture as evidence that Business One would be scalable to Hodell's needs.  Yet, Mr. Hilliard makes no effort to explain the similarities, and admitted differences, between these

programs and Business One.  Nor does he analyze how those similarities and differences may impact his opinion.  Whether some other software program may have been able to scale to Hodell's needs is completely irrelevant to whether the software at issue here – SAP Business One – could have scaled to fit Hodell.  Mr. Hilliard has made no effort whatsoever to analyze Business One – indeed he has not spoken with a single SAP employee to investigate or support his position.  Mr. Hilliard's attempt to comment upon, summarize and explain fact-witness testimony and evidence at trial should be precluded.

### G.  Mr. Hilliard's Opinion #5 is Nothing More than Advocacy That Summarizes and Interprets Evidence Without Any Foundation to Do So.

Mr. Hilliard's opinions as to the "technical warnings" that Hodell allegedly "ignored" without getting "customary guidance" is unreliable speculation.  SAP admits that Mr. Hilliard has not even identified the "normal guidance" Hodell should have obtained, nor does he identify the "normal and customary action" Hodell should have taken.  Rather, SAP argues that this gaping hole in Mr. Hilliard's opinions is not relevant because of certain "red flags" that should have been apparent.  Yet, there is no way for this testimony to be helpful to the jury without having some independent basis to identify what Hodell should have actually done in this situation – something Mr. Hilliard fails to identify.

In reviewing Mr. Hilliard's fifth opinion, it is clear that his "opinion" is nothing more than a bullet-point list of evidence he thought might be a "red flag" during the implementation process.  Yet, there is no explanation or analysis of _why_ this purported information was a "red flag," whether (and why) it was Hodell's responsibility to identify it as a "red flag," or the basis upon which Mr. Hilliard assigns responsibility to Hodell.

The only decision cited by SAP, _Sharkey v. J.P. Morgan Chase & Co._, 978 F.Supp.2d 250 (S.D.N.Y. 2013) is easily distinguishable, as it concerned an accountant's testimony as to

whether <u>another professional in a related field</u> would have reasonably recognized certain red flags of illegal activity.

Here, Mr. Hilliard, a proffered expert in the software implementation field, is not being offered for the purpose of testifying whether another software implementation expert should have recognized red flags.  Rather, he seeks to testify as to whether a layperson such as Hodell's president and/or CEO should have recognized certain alleged red flags.  Expert testimony is unnecessary to assess the conduct of laypersons such as Hodell.  A jury of laypersons is capable of determining whether Hodell knew or should have known of red flags in the implementation of Business One and, if so, what should have been done about it.

### H.    Mr. Hilliard's Opinion #6 Impermissibly Weighs Evidence.

Mr. Hilliard's Opinion #6 is nothing more than the weighing of evidence and an attempt to tell the jury how it should decide a certain issue.  Specifically, Mr. Hilliard's opinion regarding Hodell's testing of Business One before going live is not an expert opinion at all, but rather, is a summary of testimony given by a single ex-LSi employee regarding certain testing performed at Hodell prior to going live.

Of course, Ms. Weissman's testimony was directly contradicted by other fact witnesses, and Mr. Hilliard expressly admitted he chose to disbelieve this contrary evidence in favor of Ms. Weissman's testimony.  [Hilliard Dep., 157].  Thus, it is clear SAP would have Mr. Hilliard testify as an expert witness based upon nothing more than his opinion as to whose testimony should be believed.

Further, as he does repeatedly throughout his Report, Mr. Hilliard attempts to assign responsibility to Hodell for testing SAP's system and deciding whether it was operating sufficiently to support going live.  Mr. Hilliard cites no standard for assigning Hodell this

responsibility, nor does he point to any evidence in the record showing that it was Hodell's responsibility to determine when, and whether, the system was functioning sufficiently well to justify going live.

SAP attempts to diminish the effect of Mr. Lowery's deposition testimony, wherein he admitted that Hodell was entitled to, and did in fact, rely upon LSi when deciding whether to go live on Business One. Yet, SAP ignores that no contrary evidence exists in the record, and Mr. Lowery's testimony is particularly relevant given that he is LSi's president. Mr. Hilliard may not be proffered as an expert witness solely for the purpose of substituting his opinion in place of record evidence in order to advocate on SAP's behalf.

## I.     Mr. Hilliard's Opinion #7 Lacks Foundation and Merely Summarizes One Party's View of the Evidence.

Mr. Hilliard's Opinion #7 is based exclusively upon the testimony of a single ex-LSi employee who himself admitted he was unqualified to assess or evaluate Hodell's IT environment. Mr. Hilliard's opinion on this subject is speculation in its purest form, as he is reliant solely upon the observation of this admittedly unqualified individual to render his opinion.

More troubling, Mr. Hilliard's Opinion #7 is really nothing more than a summary of Mr. Guagenti's observations with a "conclusion" tacked on at the end. Mr. Hilliard does not explain how or why the alleged deficiencies in Hodell's IT infrastructure could have contributed to performance issues with the Business One software. Rather, he makes the gargantuan leap to his conclusion solely by summarizing Mr. Guagenti's testimony and drawing unexplained conclusions therefrom.

As with most of his other opinions, Mr. Hilliard is being offered solely to contradict the record evidence and supplant the jury's role in interpreting that evidence. Indeed, Mr. Hilliard

contradicts the testimony of SAP's own 30(b)(6) witness, who admitted that SAP has no evidence that Hodell's IT environment contributed to its performance problems running Business One.  [Killingsworth Dep., 36:06-10].  Mr. Hilliard should not be permitted to testify as an expert solely to summarize Mr. Guagenti's testimony, disregard SAP's own testimony, and then tell the jury how it ought to resolve this issue at trial.

### J.  Mr. Hilliard's Opinion #8 Lacks Any Foundation or Basis for Reliability.

As with most of his other opinions, Mr. Hilliard's Opinion #8 requires that the Court and jury simply "take his word for it" as to the normal industry practices with which SAP supposedly complied.  Neither Mr. Hilliard nor SAP in its Opposition make any effort to identify the basis for this "standard of care."  Indeed, all Mr. Hilliard does is regurgitate certain evidence in the record and then leap to the conclusion that SAP therefore met this amorphous "standard of care."

Again, as stated in the *First Specialty* opinion cited above, "[a]n expert opinion without an exploration of the criteria upon which such opinion is based does not assist the jury to 'understand the evidence or determine a fact in issue.'" (*citing* Fed.R.Evid. 702)).  There is simply no identification of the standards upon which Mr. Hilliard is basing his opinion, and no way for the Court or jury to evaluate the basis for these unidentified standards in Mr. Hilliard's Report.  Again, without reliably identifying any "standard of care" that was or was not met, the parties are left to take Mr. Hilliard's word for it without any basis to contradict or examine the foundation underlying his opinion.

## III.  CONCLUSION

SAP should not be permitted to present Mr. Hilliard's testimony as that of an "expert" when Mr. Hilliard does nothing more than summarize and regurgitate others' testimony and then instruct the jury as to how it ought to view that testimony.  In this regard, Mr. Hilliard functions

11

as nothing more than an adjunct advocate for SAP's position rather than as an expert witness envisioned by Fed.R.Evid. 702.

Without providing an explanation or identification of the "standards" upon which his testimony is based, or the origin or support for the "industry customers" upon which he relies, Mr. Hilliard's opinions and testimony are simply unreliable, unhelpful, and should be precluded from trial.

Respectfully submitted,

*/s/* P. Wesley Lambert
JAMES F. KOEHLER (0007904)
jkoehler@koehlerneal.com
TIMOTHY J. FITZGERALD (0042734)
tfitzgerald@koehlerneal.com
P. WESLEY LAMBERT (0076961)
wlambert@koehlerneal.com
KOEHLER NEAL LLC
3330 Erieview Tower, 1301 East 9th Street
Cleveland, Ohio  44114
(216) 539-9370
(216) 916-4369   *(facsimile)*
*Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that this Reply Brief complies with the page limitations for non-dispositive motions in standard track cases.

*/s/ P. Wesley Lambert*
P. WESLEY LAMBERT (0076961)

### CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2014, a copy of the foregoing Reply Brief was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/* P. Wesley Lambert
P. WESLEY LAMBERT (0076961)