# EXHIBIT D

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (the "Agreement"), dated as of May _____, 2004, between Dale Van Leeuwen (the "Seller") and LSI-Lowery Systems, Inc, a Missouri corporation (the "Purchaser").

## WITNESSETH:

**WHEREAS**, the Seller owns all of the shares of capital stock of The Integrated Business Solutions Group, Inc. (the "Company"), an Illinois corporation, with its principal office at 1800 Hawthorne Lane, Suite N, West Chicago, Illinois 60185, and as such, is the record and beneficial owner of all of the issued and outstanding shares of capital stock (the "Shares") of the Company.

**WHEREAS**, the Seller desires to sell and transfer the Shares to Purchaser and Purchaser desires to purchase and acquire the Shares from Seller;

**NOW, THEREFORE**, in consideration of the premises and the representations, warranties and agreements herein contained, the parties hereby agree as follows:

## DEFINITIONS

The following capitalized terms when used herein shall have the meaning indicated below:

"**Affiliate**" means, with regard to any Person, (a) any Person, directly or indirectly, controlled by, under common control of, or controlling such Person, (b) any Person in which such Person holds, directly or indirectly, of record or beneficially, five percent or more of the equity or voting securities, (c) any Person that holds, of record or beneficially, five percent or more of the equity or voting securities of such Person, (d) any Person that, through contract, other relationship or otherwise, exerts a substantial influence on the affairs of such Person or is influenced substantially in the management of their affairs by such Person, or (e) any director, officer, partner or individual holding a similar position in respect of such Person.

"**Authority**" means any governmental, regulatory or administrative body, agency or authority, any court or judicial authority or any public regulatory authority, whether international, national, federal, state or local.

"**Claim**" means any claim, lawsuit, demand, suit, litigation, proceeding, arbitration, or other dispute, whether civil, criminal, administrative or otherwise or any hearing, investigation or notice of a violation by an Authority.

"**Contract**" means any agreement, contract, commitment or other binding arrangement or understanding, whether written or oral.

"**Document(s)**" means any written material, including information stored on disk, cassette or tape, or any other device capable of being printed out into a written document.

LSI-000349

"**GAAP** " means generally accepted accounting principles, consistently applied, as in existence at the date hereof, *but expressly does not include audited statements* 5/13/04   5/18/04

"**Guarantee**" means any guarantee or other contingent liability (other than any endorsement for collection or deposit in the ordinary course of business), direct or indirect, with respect to any obligations of another Person, through an agreement or otherwise, including, without limitation, (a) any endorsement or discount with recourse or undertaking substantially equivalent to or having economic effect similar to a guarantee in respect of any such obligations and (b) any Contract (I) to purchase, or to advance or supply funds for the payment or purchase of, any such obligations, (ii) to purchase, sell or lease property, products, materials or supplies, or transportation or services, in respect of enabling such other Person to pay any such obligation or to assure the owner thereof against loss regardless of the delivery or nondelivery of the property, products, materials or supplies or transportation or services or (iii) to make any loan, advance or capital contribution to or other investment in, or to otherwise provide funds to or for, such other Person in respect of enabling such Person to satisfy an obligation (including any liability for a dividend, stock liquidation payment or expense) or to assure a minimum equity, working capital or other balance sheet condition in respect of any such obligation.

"**Indebtedness**" means with respect to any Person, any obligation of such Person for borrowed money, but in any event shall include (a) any obligation incurred for all or any part of the purchase price of property or other assets or for the cost of property or other assets constructed or of improvements thereto, other than accounts payable included in current liabilities and incurred in respect of property purchased in the ordinary course of business, (b) the face amount of all letters of credit issued for the account of such Person and all drafts drawn thereunder, (c) obligations (whether or not such Person has assumed or become liable for the payment of such obligations) secured by Liens, (d) capitalized lease obligations, and (e) all Guarantees of such Person.

"**Knowledge**" or words of similar import means, as to the Company or Seller, the knowledge of its directors, shareholders, officers or as reflected in its records.

"**Lien**" means any security interest, lien, mortgage, pledge, hypothecation, encumbrance, easement, restriction or interest of another Person of any kind or nature.

"**Material Adverse Effect**" means any circumstances, state of facts or matters which might reasonably be expected to have a material adverse effect in respect of the Company's business, operations, properties, assets, condition (financial or otherwise), results, plans, strategies or prospects.

"**Order**" means any decree, order, judgment, injunction, rule, requirement or consent of or by an Authority.

"**Person**" means any corporation, partnership, limited liability company, joint venture, organization, entity, Authority or natural person.

LSI-000350

"**Proprietary Rights**" means any patent, patent application, copyright, trademark, trade name, service mark, service name, trade secret, licenses of all of the Company's rights to sell, service and maintain software and hardware, including all customer modifications and other product modifications, any and all licenses of the Company to teach courses concerning software that it sells, know-how, confidential information or other intellectual property or proprietary rights including, but not limited to, all In-flight software and related programs and products, and all software and related programs and products for the Fastener Industry Vertical.

"**Regulation**" means any rule, law, statute, regulation, ordinance, requirement or other binding action of or by an Authority.

"**Share**" means a share of the authorized common stock of the Company.

## I. SALE AND PURCHASE

1.1   **Sale and Purchase of Shares**.   Subject to the terms and conditions of this Agreement, Seller agrees to sell to Purchaser on the date provided in Section 1.2, free and clear of all liens, pledges and encumbrances, and Purchaser agrees to purchase from Seller, all of the Shares of the Company (the "Sale").

1.2   **The Closing**.   The Sale shall be consummated at a closing (the "Closing") to be held at Seller's office on or after ~~April 12, 2004~~, or at such other place, time, and date as the parties hereto shall mutually agree.

1.3   **Delivery of Share Certificates**.   On the Closing Date, in consideration for the payment by Purchaser of the Purchase Price, the Seller shall deliver to Purchaser certificates evidencing and representing all the issued and outstanding capital stock of the Company, all of which is being sold hereunder, duly endorsed in blank or accompanied by stock powers duly executed in blank in proper form for transfer.

1.4   **Purchase Price**.   The consideration to be paid by Purchaser to Seller for the Shares will be the sum of Two Hundred Thousand Dollars ($200,000.00). In addition, Purchaser will pay the premiums for a term life insurance policy for two years from the Closing on the life of the Seller in the face amount of One Hundred Thousand Dollars ($100,000.00) with Seller's wife, Traci Van Leeuwen, as beneficiary. In addition, Seller shall receive from Purchaser one hundred shares of stock representing five percent (5%) of the issued and outstanding shares of common stock of Purchaser.

1.5   **Payment of Purchase Price**.   The Purchase Price shall be paid to Seller at Closing in cash by bank wire transfer of immediately available funds to one (1) bank account designated by Seller in accordance with instructions given to Purchaser at least one (1) business day prior to the Closing. With agreement of both parties, a company check drawn on the account of Purchaser may also be used for the acquisition in lieu of wire transfer.

LSI-000351

1.6     **Effectiveness of Actions at Closing**. All actions required or permitted to be taken at the Closing shall be deemed to be contingent upon completion of the Closing, and all deliveries at Closing shall be deemed to be held in escrow pending completion of the Closing. Closing hereunder shall be deemed an acknowledgment of the receipt of, or waiver of the requirement for, each opinion, document and certificate required or contemplated by this Agreement.

## II. REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

2.1     **Corporate Organization, etc**. The Company is a corporation duly organized, validly existing and in good standing under the laws of Illinois with full corporate power and authority to carry on its business as it is now being conducted and proposed to be conducted, and to own, operate and lease its properties and assets. True, complete and correct copies of the Company's Certificate of Incorporation and By-laws as presently in effect have been delivered to Purchaser. The Company is duly qualified to do business, and is in good standing only in Illinois. The aforementioned jurisdiction is the only jurisdiction in which either the ownership or use of the properties owned or used by it, the nature of the activities conducted by it, or the conduct of its business requires such qualification.

2.2     **Subsidiaries and Affiliates**. The Company has no subsidiaries, Affiliates or investments in any Person.

2.3     **Stock Record Book**. The stock record books of the Company which have been made available to Purchaser for inspection prior to the date hereof are complete and correct in all material respects, and all requisite federal and state documentary stamps have been affixed thereon and canceled.

2.4     **Corporate Record Books**. The corporate minute books of the Company which have been made available to Purchaser for inspection are complete and correct in all material respects and contain all of the proceedings of the shareholders and directors of the Company. A true and complete list of the incumbent directors and officers of the Company is set forth in Schedule 2.4 hereto.

2.5     **Capital Stock**. The authorized capital stock of the Company consists of 1,000 shares of Common Stock, with no par value, of which 100 shares have been issued and are outstanding, and no shares of Preferred Stock.

2.6     **Title to Stock**. All of the outstanding Shares are duly authorized, validly issued and fully paid and nonassessable and are owned solely by Seller and are not subject to any lien, charge, or encumbrance.

2.7     **Authorization, etc**. The Seller has full corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement

Page 4

LSI-000352

constitutes a legal, valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms, except as the enforceability may be limited by public policy and bankruptcy, insolvency, reorganization, moratorium or other laws and principles of equity affecting the enforcement of creditors' rights generally.

2.8 **Options and Rights**. On the date of this Agreement, there are no outstanding subscriptions, options, warrants, rights, securities, contracts, commitments, understandings, or arrangements by which the Company is bound to issue any additional shares of its capital stock or rights to purchase shares of its capital stock. At the Closing Date there shall be no such subscriptions, options, warrants, rights, securities, contracts, commitments, understandings, or arrangements outstanding or in effect.

2.9 **No Violation**. To the Knowledge of Seller, the execution, delivery and performance by Seller of this Agreement, and the fulfillment of and compliance with the respective terms hereof, do not and will not (a) conflict with or result in a breach of the terms, conditions or provisions of, (b) constitute a default or event of default under (with due notice, lapse of time or both), (c) result in the creation of any Lien upon the Company's capital stock or assets pursuant to, (d) give any third party the right to accelerate any obligation under, (e) result in a violation of, or (f) require any authorization, consent, approval, exemption or other action by, notice to, or filing with any Authority pursuant to the charter documents or by-laws of Seller or the Company, or any applicable Regulation or Order or any Contract to which Seller or the Company or their respective properties are subject. Seller has complied in all material respects with all applicable Regulations and Orders in connection with the execution, delivery and performance of this Agreement and the transactions contemplated hereby.

2.10 **Financial Statements**.

(a) The Seller has heretofore delivered to Purchaser year-end balance sheets and income statements prepared by the Company's accountant in reliance upon management provided data for the fiscal year 2003 and an interim balance sheet and income statement through March 2004. Such balance sheets fairly present the financial position of the Company as of the respective dates thereof, and such statements of income fairly present the results of operations for the periods therein referred to and are hereafter referred to as the "Financial Statements."

(b) Except as set forth in Schedule 2.10 hereto, to the best Knowledge of the Seller, the Company does not have any Indebtedness or obligation or liability (whether accrued, absolute, contingent, unliquidated or otherwise, known to the Company, whether due or to become due) arising out of transactions entered into at or prior to the Closing Date, other than: (i) liabilities set forth in the Financial Statements, (ii) liabilities and obligations which have arisen after the date of the most recent Financial Statement in the ordinary course of business (none of which is a liability resulting from breach of Contract, breach of warranty, tort, infringement, Claim, or lawsuit) and (iii) other liabilities and obligations expressly disclosed in the Schedules to this Agreement or in documents delivered to Purchaser pursuant to this Agreement.

LSI-000353

2.11     **Employees.** Schedule 2.11 hereto sets forth a complete list of all officers, directors and key employees (meaning those earning more than $50,000.00 annually) of the Company, together with a description of the rate and basis for their total compensation. Schedule 2.11 hereto sets forth a complete list, including the parties, of all employment, consulting and noncompete Contracts to which the Company is a party.

2.12     **Absence of Certain Changes.** Except as set forth on Schedule 2.12 hereto, to the Knowledge of the Seller, there has not been  (a) any Material Adverse Change in the business, operations, properties, assets, condition (financial or otherwise) or results of the Company;  (b) any damage, destruction or loss, whether covered by insurance or not, having a Material Adverse Effect, with regard to the Company;  (c) except as set forth in Schedule 2.12 hereto, any declaration, setting aside or payment of any dividend or distribution (whether in cash, stock or property) in respect of the Company's capital stock or any redemption or other acquisition of such stock by the Company;  (d) except as set forth on Schedule 2.12, any increase in the compensation payable to or to become payable by the Company to its officers or key employees except for merit increases, budgeted increases incident to promotions in the ordinary course of business or any adoption of or increase in any bonus, insurance, pension or other employee benefit plan, payment or arrangement made to, for or with any such officers or key employees of the Company;  (e) any entry into any Contract which involves annual consideration in excess of $15,000.00, including without limitation, any borrowing or capital expenditure, not in the ordinary course of business;  or (f) any change by the Company in accounting methods or principles.

2.13     **Contracts.**

(a)     Except as set forth in Schedule 2.13 hereto, to the Knowledge of Seller, as of the date hereof, the Company is not a party or subject to any written or oral:

(i)     Pension, profit sharing, stock option, employee stock purchase or other plan providing for deferred or other compensation to employees or any other employee benefit plan, or any Contract with any labor union;

(ii)     Contract relating to loans to officers, directors or Affiliates;

(iii)     Contract relating to the borrowing of money or the mortgaging, pledging of or otherwise placing a Lien on any asset of the Company;

(iv)     Guarantee of any obligation;

(v)     Contract under which the Company is lessee of or holds or operates any property, real or personal, owned by any other party, except for any lease of real or personal property under which the aggregate annual rental payments do not exceed $15,000.00;

(vi)     Contract under which the Company is lessor of or permits any third party to hold or operate any property, real or personal, owned or controlled by the Company;

LSI-000354

(vii)    Contract prohibiting it from engaging in any business or competing anywhere in the world;

(viii)   Contract involving an amount in excess of $15,000.00 for the purchase, acquisition or supply of inventory and other property and assets whether for sale or otherwise;

(ix)     Contracts with dealers or distributors involving an amount in excess of $15,000.00;

(x)      Employment Contracts, consulting, sales commissions or marketing Contracts; or

(xi)     Contracts providing for "take or pay" or similar unconditional purchase or payment obligations;

(xii)    Any other Contract which is material to its operations and business prospects or involves a consideration in excess of $15,000.00 annually.

(b)      To the Seller's Knowledge, the Company has performed in all material respects all obligations required to be performed by it and is not in default in any material respect under or in breach of, nor in receipt of any claim of default or breach under, any Contract of the type required to be reflected in Schedule 2.13, and no event has occurred which, with the passage of time or the giving of notice or both, would result in a default or breach.

2.14    **True and Complete Copies.**  Copies of Contracts and documents delivered and to be delivered hereunder by Seller are and will be true and complete copies of such contracts and documents.

2.15    **Title and Related Matters.**

(a)      Except as set forth in Schedule 2.15 hereto, the Company owns no real property and has good and indefeasible title to all personal property and other assets as reflected in the Financial Statements or acquired after the date of the most recent Financial Statement, free and clear of all Liens and restrictions on transfer, except (I) statutory Liens not yet delinquent, (ii) the rights of customers of the Company with respect to inventory or work in progress under orders or contracts entered into by the Company in the ordinary course of business, (iii) mechanics', carriers', workers', repairmen's, warehousemen's, or other similar Liens arising in the ordinary course of business in respect of obligations not overdue or which are being contested in good faith and covered by a bond in an amount at least equal to the amount of the Lien, (iv) zoning ordinances and easements, restrictions and other matters of record, (v) deposits or pledges to secure workmen's compensation, unemployment insurance, old age benefits or other social security obligations in connection with, or to secure the performance of, bids, tenders, trade contracts not for the payment of money or leases, or to secure statutory obligations or surety or appeal bonds or other pledges or deposits for purposes of like nature in the ordinary course of business.  All properties used in the Company's business

LSI-000355

operations as of the date of the most recent Financial Statement are reflected in the Financial Statements in accordance with and to the extent required by GAAP.

(b)     None of the assets belonging to the Company are or will be on the Closing Date subject to any Contracts of sale or lease, except contracts for the sale of inventory in the ordinary and regular course of business.

2.16    **Litigation**.  Except as set forth in Schedule 2.16 hereto, there is no Claim pending or, to the best Knowledge of Seller, threatened against the Company which, if adversely determined, would have a Material Adverse Effect on the Company, nor is there any Order outstanding against the Company having a Material Adverse Effect on the Company.

2.17    **Tax Matters**.  Except as set forth in Schedule 2.17 hereto, the Company has filed all federal, state, foreign and local tax reports, returns, information returns and other documents (collectively "Tax Returns") required to be filed by the Company and has duly paid all relevant taxes, including without limitation income, gross receipts, net proceeds, alternative or add-on minimum, ad valorem, value added, turnover, sales, use, property, personal property (tangible and intangible), stamp, leasing, lease, user, excise, duty, franchise, transfer, license, withholding, payroll, employment, foreign, fuel, excess profits, occupational and interest equalization, windfall profits, severance, and other charges (including interest and penalties) (collectively "Taxes") due or claimed to be due by federal, state, or local authorities (collectively "Taxing Authorities").  All Taxes applicable for all periods prior to the Closing Date have been paid or fully reserved against in accordance with GAAP, except as provided in Schedule 2.17 hereto.  All Taxes which are required to be withheld or collected by the Company have been duly withheld or collected and, to the extent required, have been paid to the proper Taxing Authority or properly segregated or deposited as required by applicable laws.  There are no Liens for Taxes upon any property or assets of the Company, except for Liens for Taxes not yet due and payable.  The Company has not executed any waiver of the statute of limitations on the right of the Internal Revenue Service or any other Taxing Authority to assess additional Taxes or to contest the income or loss with respect to any Tax Return.

2.18    **Compliance With Law and Applicable Government Regulations**.  Except as disclosed in Schedule 2.18, to the best of Seller's Knowledge the Company is presently in compliance in all material respects with regard to its operations, practices, real property, plants, structures, machinery, equipment and other property, and all other aspects of its business, with all applicable Regulations and Orders, including, but not limited to, all Regulations relating to the safe conduct of business, environmental protection, quality and labeling, anti-trust, Taxes, consumer protection, equal opportunity, discrimination, health, sanitation, fire, zoning, building and occupational safety.  Except as set forth in Schedule 2.18 hereto, to Seller's Knowledge, there are no Claims pending, or threatened, nor has the Company received any written notice, regarding any violations of any Regulations and Orders enforced by any Authority claiming jurisdiction over the Company including any requirement of OSHA or any pollution and environmental control agency (including air and water).

2.19    **Employee Plans**.

Page 8

LSI-000356

(a)     For purposes of this Section 2.19 the following terms have these meanings:

(i)     "Qualified Defined Contribution Plan" means a plan or arrangement described in Section 3(34) of ERISA which is qualified under Code Section 401(a).

(ii)    "Qualified Defined Benefit Plan" means a plan or arrangement defined in Section 3(35) of ERISA which is qualified under Code Section 401(a).

(iii)   "Employee Welfare Benefit Plan" means a plan or arrangement as defined in Section 3(1) of ERISA.

(iv)    "Pension Plan" means collectively all Qualified Defined Contribution and Qualified Defined Benefit Plans listed on <u>Schedule 2.19</u>.

(v)     "Welfare Plans" means collectively the Employee Welfare Plans listed on <u>Schedule 2.19</u>.

(b)     Other than an employer sponsored Simple IRA and group health insurance sponsored by the Company, with respect to all employees and former employees of the Company, to Seller's Knowledge, the Company does not presently maintain, contribute to or have any liability (including current or potential multi-employer plan withdrawal liability) under any (I) Employee Pension Benefit Plan, as defined in Section 3(2) of ERISA, which is not qualified under Code Section 401(a), (ii) Qualified Defined Contribution Plan, (iii) Qualified Defined Benefit Plan, (iv) funded or unfunded medical, health or life insurance plan or arrangement for present or future retirees or present or future terminated employees which is an Employee Welfare Benefit Plan, or (v) any other Employee Welfare Benefit Plan. To Seller's Knowledge, the Company is not in violation of the Fair Labor Standards Act and does not have any obligations pursuant to the Consolidated Omnibus Budget Reconciliation Act, or its Illinois corollary.

2.20    **Intellectual Property.**   The Company has all legal right into all the Proprietary Rights, and does hereby convey and assign to the purchaser all legal right and title thereto. The Company has the right to use all such Proprietary Rights, and except as otherwise set forth therein, each of such Proprietary Rights is, and will be on the Closing Date, free and clear of all royalty obligations and Liens. To the Knowledge of the Seller, there are no claims pending or threatened against the Company that its use of any of the Proprietary Rights infringes the rights of any person. Seller has no Knowledge of any conflicting use of any of such Proprietary Rights.

2.21    **Customer Warranties.**   Except as set forth in <u>Schedule 2.21</u> hereto, to the Knowledge of Seller, there are no pending, nor threatened, material Claims under or pursuant to any warranty issued by the Company, whether expressed or implied, on products or services sold prior to the date of this Agreement by the Company that are not disclosed or referred to in the Financial Statements and which are not fully reserved against.

2.22    **Labor Relations.**   Except as set forth in <u>Schedule 2.22</u> hereto, the Company has no collective bargaining agreements and there have been no strikes, work stoppages nor any demand

Page 9

LSI-000357

for collective bargaining by any union or labor organization; there is no dispute or controversy with any union or other organization of the Company's employees and no arbitration proceedings pending or to the best Knowledge of Seller threatened involving a dispute or controversy affecting the Company.

2.23  **Environmental Matters.**  Except as disclosed on Schedule 2.23 hereto, to Seller's Knowledge:  (a) neither the Company's business nor its operation thereof violates any applicable Environmental Law in effect as of the date hereof; (b) the Company does not store or use any pollutants, contaminants or hazardous or toxic wastes, substances or materials on or at any such property or facilities except for inventories of chemicals which are used or to be used in the ordinary course of the Company's business (which inventories have been stored or used in accordance with all applicable Environmental Permits and all Environmental Laws, including all so-called "Right to Know" laws); (c) The Company has not received any notice from any Authority or any private person or entity that the Company's business or the operation of any of its facilities is in violation of any Environmental Law or any Environmental Permit or that it is responsible (or potentially responsible) for the cleanup of any pollutants, contaminants, or hazardous or toxic wastes, substances or materials at, on or beneath any of the Company's property, or at, on or beneath any land adjacent thereto or in connection with any waste or contamination site;  (d) The Company is not the subject of Federal, state, local or private litigation or proceedings involving a demand for damages or other potential liability with respect to violations of Environmental Laws;  (e) the Company has not buried, dumped, disposed of, or spilled or released material quantities of any pollutants, contaminants or hazardous wastes, substances or materials on, beneath or adjacent to any of its property or any property adjacent thereto;  and (f) no by-products of any manufacturing process employed in the operation of the Company's business which may constitute pollutants, contaminants or hazardous or toxic wastes, substances or materials under any Environmental Law are currently stored or otherwise located on any of the Company's property in a manner prohibited by any Environmental Law.

2.24  **Dealings With Affiliates.**  Schedule 2.24 hereto sets forth a complete list, including the parties, of all Contracts to which the Company is, will be or has been a party, at any time from _____ to the Closing Date, and to which any Affiliates are also a party.

2.25  **Insurance.**  The Company currently has, and through the Closing Date will have, insurance contracts or policies (the "Policies") in full force and effect which, to Seller's Knowledge, provide for coverages that are usual and customary as to amount and scope for businesses which are similar to the Company and are approximately the same size as the Company, ~~including coverage for errors and omissions.~~  Schedule 2.25 hereto lists all insurance contracts or policies issued and effective that relate to liability or excess liability insurance (collectively the "Liability Policies"), including the name of the insurer, the types, dates and amounts of coverages.

2.26  **Accounts Receivable; Inventories.**  To the Knowledge of Seller, (I) the accounts receivable of the Company reflected in the Financial Statements and such additional accounts receivable as are reflected on the books of the Company on the date hereof are good and collectible except to the extent reserved against thereon (which reserves have been determined based upon actual prior experience and are consistent with prior practices); (ii) all such accounts receivable

LSI-000358

(except to the extent so reserved against) are valid, genuine and subsisting, arise out of bona fide sales and deliveries of goods, performance of services or other business transactions and are not subject to defenses, set-offs or counterclaims; and (iii) the inventories reflected on the Financial Statements and held by the Company on the date hereof do not include any items which are not usable or saleable in the ordinary course of business of the Company. Except as set forth on Schedule 2.26 hereto, all such inventories are owned free and clear and are not subject to any Lien or encumbrance except to the extent reserved against or reflected in the Financial Statements.

2.27 **Brokerage.** There are no claims for brokerage commissions, finders' fees or similar compensation in connection with the transactions contemplated by this Agreement based on any arrangement or agreement binding upon Seller or the Company.

2.28 **Disclosure.** To Seller's Knowledge, neither this Agreement, nor any of the Schedules, attachments, written statements, documents, certificates or other items prepared for or supplied to Purchaser by or on behalf of the Company with respect to the transactions contemplated hereby contains any untrue statement of a material fact or omits a material fact necessary to make each statement contained herein or therein not misleading. There is no fact which The Company has not disclosed to Purchaser in writing and of which The Company or any of its officers, directors or executive employees ~~is aware~~ and which ~~could reasonably be anticipated to have~~ a Material Adverse Effect. have actual Knowledge ^the Company Knows has

III. **REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser represents and warrants to the Company as follows:

3.1 **Organization, Standing and Power.** Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Missouri and has all requisite corporate power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

3.2 **Authority.** The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate and shareholder action on the part of Purchaser, and this Agreement is a valid and binding obligation of Purchaser enforceable in accordance with its terms, except as the enforceability may be limited by public policy and bankruptcy, insolvency, reorganization, moratorium or other laws and principles of equity affecting the enforcement of creditors' rights generally. Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance by Purchaser with any of the provisions hereof, will (I) conflict with or result in a breach of any provision of the charter documents or by-laws of Purchaser, or (ii) violate any law, statute, rule or regulation or any order, writ, injunction or decree applicable to Purchaser or to any of its properties or assets. No consent or approval by or filing with any governmental authority is required in connection with the execution and delivery by Purchaser of this Agreement, or the consummation by Purchaser of the transactions contemplated hereby.

LSI-000359

3.3 **Brokers.** Purchaser has not employed any broker or finder or incurred any liability for any brokerage fees, commissions or finders' fees in connection with the transactions contemplated hereby.

3.4 **Financial Resources.** As of the date of this Agreement and at the Closing, Purchaser has and will have the financial resources to consummate the transactions hereunder.

3.5 **Warranties regarding Stock:** Purchaser warrants that there are no tax liabilities for undistributed S corporation income. Further, Purchaser will indemnify Seller to be held harmless if such situation arose.

*[handwritten: 3.6 (Seller)]* *[handwritten: to through date of Purchase]*

## IV.  COVENANTS

4.1 **Conduct of Business by the Company.** From the date hereof until the Closing Date or the date, if any, on which this Agreement is earlier terminated (the "Termination Date"), and except as has previously been disclosed to Purchaser in writing or as permitted by this Agreement or any Schedule hereto, the Seller covenants and agrees that he has and shall continue to cause the Company to:

(i) conduct its operations according to its ordinary course of business, subject to such business plans as have heretofore been disclosed to Purchaser in writing;

(ii) not enter into, assume or amend in any material respect any agreement, contract or commitment of the character referred to in Section 2.13 hereof, except in the ordinary course of business (which shall be taken to include expenditures normally associated with the operation of the Company's business and not exceeding $15,000.00) or with the express written consent of Purchaser;

(iii) use its best efforts to preserve intact its business organization and goodwill and maintain satisfactory relationships with suppliers, distributors, customers and others having business relationships with it;

(iv) neither declare nor pay any dividends (in cash, property or securities) on its outstanding shares of capital stock nor purchase or otherwise acquire or propose to acquire any outstanding shares of its capital stock;

(v) not issue, or sell, or authorize or propose the issuance or sale of additional shares of common stock or any other class of capital stock except as contemplated by this Agreement, or securities convertible into any such shares, or any rights, warrants or options to acquire any such shares or other convertible securities;

(vi) not amend its Articles of Incorporation or By-Laws, except as may be required by the transactions contemplated by this Agreement;

(vii) not cancel or permit any insurance policies to lapse or terminate, unless renewed or replaced by like coverage;

*[handwritten bottom margin: 3.6 is will distribute all tax ... to seller, at least the amount of funds necessary to any tax liabilities for LSI on the Company Revenues through this agreement ...]*

Page 12

(viii)    not merge, consolidate or agree to merge or consolidate with or into any other corporation;

(ix)    replace or replenish inventory as depleted in the ordinary course of business, and conduct normal maintenance on equipment and properties according to normal maintenance procedures;

(x)    not incur, assume or guarantee any Indebtedness not reflected in the Financial Statements, except in the ordinary course of business or for purposes of consummating the transactions contemplated by this Agreement, and in any case only after consultation with Purchaser;

(xi)    not (a) solicit, directly or indirectly, or authorize or permit any director, officer, employee, investment banker, attorney, accountant or other representative of it to solicit any offer to acquire a substantial equity or debt interest in it, or any assets of it except in the ordinary course of business, (b) except as contemplated by this Agreement, provide any third party which may be considering such an acquisition with any information concerning the business properties or financial condition of it or afford any such third party access to the properties, books or records of it, or (c) enter into any negotiations for, or any agreement or understanding which provides for, such an acquisition by any person.

4.2    **Access to Information.**

(a)    Between the date of this Agreement and the Closing Date, Seller covenants and agrees that it shall give Purchaser and its authorized representatives (including lenders) reasonable access at reasonable times to all of the Company's plants, offices, warehouses and other facilities and to all of its books and records. In addition, Seller covenants and agrees that he shall permit Purchaser and its authorized representatives to make such inspections as they may reasonably require and shall cause the Company's officers to furnish Purchaser, and its authorized representatives, as the case may be, with such financial and operating data and other information with respect to the business and properties of the Company as Purchaser and its authorized representatives may from time to time reasonably request.

(b)    Purchaser shall hold and shall cause its Affiliates and respective consultants and advisors to hold in the strictest confidence all documents and information concerning the Company furnished to Purchaser in connection with the transactions contemplated by this Agreement and shall not release or disclose such information to any other person, except such persons as need to have access to such documents and information and shall have first been advised of the confidentiality provision of this Section. The documents and information provided to Purchaser by Seller shall not be used in any manner that is adverse or detrimental to Seller or the Company or its Affiliates. In exercising rights of access under this Section, Purchaser shall keep a record of the information and documents furnished to them and of the location of the information and documents. If this Agreement is terminated, such confidence shall be maintained and, if requested by Seller, Purchaser shall immediately return to the Company all copies of all documents and written information

Page 13

LSI-000361

furnished to it or its respective agents, representatives or advisors and shall destroy all documents, memoranda, notes, other materials and copies thereof whatsoever prepared by or on behalf of Purchaser based on the documents and information furnished to Purchaser and its advisors and such destruction shall be certified in writing to the Company by the President of Purchaser.

(c)   Seller shall hold and shall cause its respective consultants and advisors to hold in the strictest confidence all documents and information concerning Purchaser and its respective Affiliates furnished to Seller in connection with the transactions contemplated by this Agreement and shall not release or disclose such information to any person except such persons as need to have access to such documents and information and shall have first been advised of the confidentiality provision of this Section. The documents and information provided to Seller by Purchaser and its representatives shall not be used in any manner that is adverse or detrimental to Purchaser or its Affiliates.

(d)   Seller shall keep a record of the information and documents furnished to it and of the location of such information and documents. If this Agreement is terminated, such confidence shall be maintained and, if requested by Purchaser, Seller shall immediately return to Purchaser or destroy all copies of all documents and written information furnished to it or its respective agents, representatives or advisors.

4.3   **Best Efforts.** Subject to the terms and conditions herein provided, each of the parties hereto covenants and agrees that it will use its best efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to: consummate and make effective the transactions contemplated by this Agreement.

4.4   **Indemnifications.**

(a)   Subject to the following provisions of this Section 4.4(a), Seller agrees to indemnify and hold harmless Purchaser from any and all loss, damage, liability and reasonable costs, expenses, attorneys' fees and court costs ("Indemnifiable Losses") sustained, suffered or incurred by Purchaser as a result of the breach of any representation, warranty, covenant or agreement of Seller in this Agreement.

(b)   The representatives, warranties, conditions and covenants made in this Agreement shall survive Closing for a period of one year and shall be unaffected by any investigation by any party at any time.

4.5   **Employment Agreements.** All present employment, consulting and non-compete Contracts, if any, disclosed in the Schedules hereto shall continue in full force and effect in accordance with their terms.

4.6   **Completion of Schedules.** The parties hereto acknowledge that this Agreement has been executed prior to the preparation of all of the disclosure Schedules referenced herein. Seller agrees to proceed with due diligence to cause the preparation of all of such Schedules within two business days from the execution hereof. From time to time thereafter and prior to Closing, Seller may supplement or amend said Schedules. Upon review and acceptance of such Schedules by

LSI-000362

Purchaser, such Schedules shall be identified to this Agreement by the initials of an authorized representative of each party hereto.

## V. ACTION PRIOR TO THE CLOSING

The parties hereto covenant and agree to take the following actions between the date hereof and the Closing Date:

5.1 **Preserve Accuracy of Representations and Warranties.** The parties hereto shall not voluntarily take any action which would render inaccurate any representation or warranty contained herein, except in the ordinary course of business; in such event, the party whose representation or warranty has become inaccurate shall promptly notify the other party of such inaccuracy in writing.

5.2 **Satisfaction of Conditions.** Each of the parties hereto agrees to use reasonable efforts with due diligence and in good faith to satisfy promptly all conditions to the obligations of the parties hereto in order to expedite the consummation of the transactions contemplated hereby.

5.3 **Further Assurances.** Subject to the terms and conditions of this Agreement, the parties hereto shall use their best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective as promptly as possible the transactions contemplated by this Agreement, and to cooperate with each other in connection with the foregoing, including without limitation using all reasonable efforts (a) to obtain all necessary waivers, consents and approvals from other parties to loan agreements, leases, mortgages and other contracts, (b) to obtain all necessary consents, approvals and authorizations as are required to be obtained under any federal, state or foreign law or regulation, (c) to lift or rescind any injunction or restraining order or other order adversely affecting the ability of the parties to consummate the transactions contemplated hereby, (d) to effect all necessary registrations and filings, including submissions of information requested by governmental authorities, and (e) to fulfill all conditions to the obligations of the parties under this Agreement.

## VI. CONDITIONS PRECEDENT TO THE CLOSING

6.1 **Conditions Precedent to Obligations of Purchaser.** The obligations of Purchaser under this Agreement to consummate the Merger shall be subject to the satisfaction, on or prior to the Closing Date, of the following conditions, any of which may be waived at the option of Purchaser:

(a) There shall have been no material breach by Seller in the performance of any of its covenants herein.

(b) The representations and warranties of Seller contained or referred to in this Agreement shall be true and correct in all material respects on the Closing Date as if made anew as

LSI-000363

of the Closing Date (except for changes occurring in the ordinary course of business, changes contemplated or permitted by this Agreement and representations and warranties made as of a specified date, which shall be true and correct in all material respects as of such date).

(c)     There shall have been delivered to Purchaser a certificate to the effect of paragraphs (a) and (b) of this Section 6.1, dated the Closing Date, and signed by Seller.

(d)     There shall not have been issued and be in effect any injunction restraining or prohibiting consummation of the transactions contemplated by this Agreement.

(e)     All corporate action necessary to authorize the execution, delivery and performance of this Agreement by The Seller and the consummation of the transactions contemplated hereby shall have been duly and validly taken, and a good standing certificate and certified copies of all Board of Directors resolutions authorizing the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby shall be delivered to Purchaser.

(f)     Purchaser shall have received from counsel to The Seller, an opinion, dated the Closing Date and in the form of Exhibit 6.1(f) hereto.

(g)     Seller shall have obtained all consents, approvals, orders, permits, licenses or other authorizations required by any applicable law or regulation or by any interest or agreement to which Seller is a party.

(h)     There shall have been no Material Adverse Change since the date of this Agreement. Purchaser shall have received certificates (which shall be addressed to Purchaser and its lenders), dated the Closing Date, of the president and chief financial officer of the Company, certifying to the foregoing.

(i)     All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be reasonably satisfactory in substance and form to Purchaser's counsel, and the Company shall have made available to Purchaser for examination the originals or true, complete and correct copies of all records and documents relating to the business and affairs of the Company which Purchaser may reasonably request in connection with said transaction.

(j)     Seller shall have furnished Purchaser with such other and further documents and certificates, including certificates of the Company's officers and others, as Purchaser shall reasonably request in light of customary practice in transactions of this kind to evidence compliance with the conditions set forth in this Agreement.

6.2     **Conditions Precedent to Obligations of The Seller**.  The obligations of Seller under this Agreement shall be subject to the fulfillment on or prior to the Closing Date of the following conditions, any of which may be waived at the option of Seller:

(a)     Purchaser shall have fully performed its covenants herein.

LSI-000364

(b)     The representations and warranties of Purchaser contained or referred to in this Agreement shall be true and correct in all material respects on the Closing Date as if made anew as of the Closing Date.

(c)     There shall have been delivered to Seller a certificate to the effect of paragraphs (a) and (b) of this Section 6.2, dated the Closing Date, and signed by an executive officer of Purchaser.

(d)     There shall not have been issued and be in effect any injunction restraining or prohibiting consummation of the transactions contemplated by this Agreement.

(e)     The Seller shall have received from counsel to Purchaser an opinion dated the Closing Date and in the form of Exhibit 6.2(e) hereto.

(f)     Purchaser shall have obtained all consents, approvals, orders, permits, licenses or other authorizations required by any applicable law or regulation or by any interest or agreement to which Purchaser is a party.

(g)     All corporate action necessary to authorize the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transaction contemplated hereby shall have been duly and validly taken, and good standing certificates and certified copies of all Board of Directors and shareholder resolutions authorizing the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby shall be delivered to Seller.

(h)     All corporate and other proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be reasonably satisfactory in substance and form to Seller's counsel, and Purchaser shall have made available to Seller for examination the originals or true, complete and correct copies of all records and documents relating to the business and affairs of Purchaser which Seller may reasonably request in connection with said transaction.

(i)     Seller shall have received certificates by the Secretary of Purchaser as to the Articles of Incorporation and By-laws of Purchaser and the resolutions adopted by the directors and shareholders of Purchaser in connection with this Agreement.

(j)     Purchaser shall have furnished Seller with such other and further documents and certificates, including certificates of Purchaser's officers and others, as Seller shall reasonably request in light of customary practice in transactions of this kind of evidence compliance with the conditions set forth in this Agreement.

## VII.   TERMINATION

7.1     **Events of Termination**.  This Agreement may be terminated and abandoned at any time prior to the Closing:

LSI-000365

(a)    By mutual written consent of Purchaser and Seller; or

(b)    By Seller or Purchaser if the other party shall have failed to comply in any material respect with any of the provisions of this Agreement for a period of twenty (20) days after the other party shall have notified the non-complying party of such failure to comply in writing, or

(c)    By Purchaser if prior to completion of the Closing there shall have been a material breach of any of the Seller's representations or warranties contained in this Agreement, and such breach remains uncured (i) for more than twenty (20) days following written notice of the breach, or (ii) at the Closing, whichever first occurs; provided, however, that Purchaser shall not be permitted to terminate this Agreement based upon its own breach;  or

(d)    By Purchaser if the Schedules are not reasonably acceptable to Purchaser at or prior to Closing; or

(e)    By Seller if prior to completion of the Closing there shall have been a material breach of any of Purchaser's representations or warranties contained in this Agreement, and such breach remains uncured (i) for more than twenty (20) days following written notice of the breach, or (ii) at the Closing, whichever first occurs; provided, however, that Seller shall not be permitted to terminate this Agreement based upon its own breach; or

7.2    **Specific Performance**.  The parties hereto acknowledge that damages may be an inadequate remedy for a breach of this Agreement and that the obligations of the parties shall be specifically enforceable in the event of breach but the availability of specific performance shall in no way limit the availability of damages.

## VIII.  MISCELLANEOUS

8.1    **Notices**.    All notices and other communications required or permitted hereunder shall be in writing and, unless otherwise provided in this Agreement, shall be deemed to have been duly given when delivered to the addressees at the addresses specified below:

(a)  If to Purchaser to:
    Dan Lowery
    LSI-Lowery Systems, Inc.
    1329 Horan Drive
    Fenton,  Missouri 63026

    With a copy to:
    Timothy K. Kellett, Esq.
    Horas, Radice & Dean, L.L.C.
    1600 S. Brentwood Blvd., Suite 770
    St. Louis, Missouri 63144

(b)  If to Seller to:

Page 18

LSI-000366

Dale Van Leeuwen
40W037  Red  Hawk Ct
St Charles  IL  60175

With a copy to:

    Richard Hudzik, Esq.
    Wiedel, Hudzik, Russ & Philipp
    4915 Main Street
    Downers Grove, Illinois 60515

or to such other address or addresses as any such party may from time to time designate as to itself by like notice.

    8.2    **Expenses.**  Except as otherwise expressly provided herein, each party shall pay any expenses incurred by it incident to this Agreement and in preparing to consummate the transactions provided for herein.

    8.3    **Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of Purchaser, Seller and their respective successors and permitted assigns, but shall not be assignable or delegable in whole or in part without the prior written consent of all parties, which shall not be unreasonably withheld.

    8.4    **Waiver.**  Purchaser, on the one hand, and Seller, on the other hand, by written notice to the other, may (a) extend the time for performance of any of the obligations or other actions of the other under this Agreement, (b) waive any inaccuracies in the representations or warranties of the other contained in this Agreement or in any document delivered pursuant to this Agreement, (c) waive compliance with any of the conditions or covenants of the other contained in this Agreement, or (d) waive or modify performance of any of the obligations of the other under this Agreement; provided, however, that no party may without the consent of the other make or grant such extension of time, waiver of inaccuracies or compliance, or waiver or modification of performance with respect to its own obligations, representations, warranties, conditions, or covenants hereunder. Except as provided in the preceding sentence, no action taken pursuant to this Agreement shall be deemed to constitute a waiver of compliance with any representations, warranties, covenants or agreements contained in this Agreement and shall not operate or be construed as a waiver of any subsequent breach, whether of a similar or dissimilar nature.

    8.5    **Entire Agreement.**  This Agreement, together with the Schedules, which are expressly incorporated herein, and the Exhibits hereto supersedes any other agreement, whether written or oral, that may have been made or entered into by Seller or Purchaser (or by any director, officer or representative of such parties) relating to the matters contemplated hereby. This Agreement (together with the Schedules, which are expressly incorporated herein, and the Exhibits hereto) constitutes the entire agreement by and between the parties and there are no agreements, representations or commitments except as expressly set forth herein, with exception to an employment agreement

5/18/04

5/18/04

Page 19

8.6     **Amendments, Supplements**.  This Agreement may be amended or supplemented at any time by additional written agreements, as may mutually be determined by the parties hereto to be necessary, desirable or expedient to further the purposes of this Agreement, or to clarify the intention of the parties hereto.

8.7     **Limitations on Rights of Other Persons**.  Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give any person, firm, corporation or entity other than the parties hereto any rights or remedies under or by reason of this Agreement or any transaction contemplated hereby, except as herein otherwise provided.

8.8     **Applicable Law**.  This Agreement, being entered into in the State of Missouri, and the legal relations among the parties hereto shall be governed by and construed in accordance with the substantive laws of the State of Missouri, without giving effect to the principles of conflict of laws thereof.  The parties consent to the subject matter and personal jurisdiction of the Circuit Court of the County of St. Louis, Missouri or the Federal District Court, Eastern District of Missouri for all matters arising under this Agreement.  The parties agree to accept service of process by certified mail or receipted courier addressed to the parties at the addresses set forth in the notice provisions herein.

8.9     **Execution in Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

8.10    **Titles and Headings**.  Titles and headings to sections herein are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

8.11    **Recovery of Litigation Cost**.  If any legal action or other proceeding is brought by any party hereto against the other party for the enforcement of this Agreement or because of an alleged dispute, default or misrepresentation in connection with the provisions of this Agreement, the prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

8.12    **Severability**.  If any provision of this Agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision contained herein, or render the same invalid, inoperative or unenforceable to any extent whatsoever.

8.13    **Arbitration.**  Except as otherwise expressly provided in this Agreement, any controversy or claim arising out of or relating to this Agreement or any other agreement contemplated hereunder, or the interpretation or breach hereof or thereof, shall be submitted to binding arbitration conducted in St. Louis County, Missouri, in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association, unless otherwise agreed. If the parties are unable to agree on the selection of an arbitrator to resolve the dispute within fifteen (15) days of either party giving the other party notice of its intent to invoke this Section, then either

Page 20

party may make a request of the American Arbitration Association for a list of qualified potential arbitrators from which the parties shall select an arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association. If no arbitrator is thus selected within fifteen (15) days after such list is submitted to the parties, either party may request the American Arbitration Association to select such arbitrator. All expenses and fees of the arbitrator and any other expenses of the arbitration will be borne equally by Purchaser and Seller unless the arbitrator in the award assesses such expenses against one of the parties or allocates such expenses other than equally between the parties. Each party will bear its own attorneys' fees and expenses, unless the arbitrator finds that the claim or defense of any party was frivolous or lacked a reasonable basis in fact or law, in which case the arbitrator may assess against such party all or any part of the attorneys' fees and expenses of the other party. The determination of such arbitrator shall be final and binding upon the parties and judgment may be entered thereupon in any court having jurisdiction thereof.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement by their duly authorized officers the day and year first above written.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES HERETO.

"PURCHASER"

LSI-LOWERY SYSTEMS, INC.

By: _____

Name: Daniel J. Lowery
Title: President

"SELLER"

_____     5/18/04
Dale Van Leeuwen

LSI-000369