IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| Plaintiff, | ) ) ) | JUDGE WELLS |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW OF SAP AMERICA, INC. AND SAP AG IN
SUPPORT OF MOTION *IN LIMINE* NO. 7 TO PRECLUDE PLAINTIFF FROM
ASSERTING THAT MISREPRESENTATIONS WERE MADE BY AMERICAN EXPRESS**

**I.    INTRODUCTION**

Through this motion, the SAP defendants seek to prevent Hodell from improperly asserting at trial that misrepresentations were made by American Express or that SAP is somehow responsible for this. Hodell admits that any representations by American Express concerned a completely different software solution than what Hodell later decided to purchase. Thus, any representations by American Express are irrelevant, would otherwise confuse the issues, and could not as a matter of law have been relied upon by Hodell in making its decision to later purchase a different software solution.

**II.    ARGUMENT**

**A.    Hodell should be precluded from that asserting misrepresentations were made by American Express or that SAP is liable for American Express's alleged statements.**

Hodell's First Amended Complaint includes eight paragraphs with allegations of alleged representations made to Hodell by American Express between October 1, 2003 and February 6,

2004.  *See* ECF No. 26 ¶¶ 19-27 (collectively referencing documents received from American Express and conversations with P. Vitantonio and M. Neuendorff of American Express).

However, as is evident from the First Amended Complaint, American Express was allegedly marketing to Hodell a software solution called "SAP Business One – The American Express Edition."  *Id*. at ¶ 19; *see also id.* at Ex. B at 2 (describing "The American Express Edition for Wholesale Distribution" as a solution already containing "an integrated Warehouse Management System.").

It is undisputed that the "SAP Business One – The American Express Edition" is *not* the same software solution Hodell later decided to purchase.  Indeed, Hodell's CEO, Otto Reidl, confirmed during his deposition that "American Express at the time was marketing to [Hodell] the American Express edition of SAP Business One" and that Hodell "ultimately decided not to go with that program."  *See* Exhibit A, Tr. O. Reidl Dep. at 297:8-13.  He further confirmed that the software Hodell ultimately "agreed to move forward with [] was the SAP Business One platform with the In-Flight add-on and the Radio Beacon integration," and that this "was not the software package that Ms. Vitantonio or American Express were marketing to Hodell."  *Id*. at 298:9-19.

In fact, there was never really any doubt that American Express's product offering was materially different than the software solution Hodell later purchased and which is at issue in this case.  *As this Court has already recognized*, Hodell later entered the Development Agreement with LSi/IBIS in December 2004, and that agreement called for LSi/IBIS to code "from scratch" and integrate with Business One the In-Flight add-on (*for inventory management functions*) and the Radio Beacon add-on (*for warehousing functions*).  *See* ECF No. 192 at 4-5.  This is obviously a different software solution than the one American Express was allegedly offering,

which according to Hodell's complaint allegations and exhibits thereto, already included integrated *warehousing functions* and did not include either In-Flight or Radio Beacon. *See* ECF No. 26 ¶ 19 (alleging the software called the "American Express edition of SAP Business One" was described as a solution that "seamlessly integrates wireless warehouse management . . . .")

What's more, Otto Reidl clearly admitted that during a conversation he had with Ms. Vitantonio of American Express on February 6, 2004, Hodell *rejected* American Express's product offering because the price was too high and Hodell was going "to shop *alternative* software." Exhibit B, O. Reidl notes dated February 6, 2004 (emphasis added); Exhibit A, Tr. O. Reidl Dep. at 293:5-294:24. Mr. Reidl documented this in his own handwritten notes:



Exhibit B, O. Reidl notes dated February 6, 2004.

Accordingly, given that American Express was marketing an entirely different software solution than the one Hodell later purchased and implemented and which is at issue in this case, any representations American Express may have made in connection with its own "American Express edition of SAP Business One" are entirely irrelevant to this case. Specifically, any such representations do not tend in any way to prove a fact that is of consequence in this action because such representations did not pertain to the software solution Hodell later purchased.

3

Thus, all of Hodell's complaint allegations concerning American Express and any information provided by or representations made by American Express must be precluded from trial. *See* Fed. R. Evid. 401 and 402.

And whatever marginal relevance Hodell might articulate would further be substantially outweighed by the fact that this "evidence" would seriously confuse the jury, mislead them on the issues that are actually in dispute, waste a huge amount of time at trial, and otherwise seriously prejudice SAP. Indeed, as an example, one can imagine that Hodell would spend a great deal of time in its opening remarks and during direct examination of Otto Reidl establishing the details of conversations Mr. Reidl may have had with American Express and documents American Express gave him. SAP would then have to take the time sorting this all out, eventually explaining the undisputed facts to the jury – that American Express marketed a different product which Hodell rejected in favor of "alternative software." Accordingly, even if Hodell's alleged communications with American Express have some marginal relevance to the real issues in dispute, the evidence should be precluded under Federal Rule of Evidence 403.

### III. CONCLUSION

Therefore, this Court should enter an order precluding Hodell from offering argument, testimony, or documents at trial suggesting that it received misrepresentations from American Express because it is undisputed that American Express marketed to Hodell a completely different software solution than what Hodell later decided to purchase; Hodell rejected American Express's offering; and thus any representations by American Express are irrelevant, would otherwise confuse the issues, and could not as a matter of law have been relied upon by Hodell.

Respectfully submitted,

/s/ Gregory J. Star
Michael J. Miller (admitted *pro hac vice*)
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
*Attorneys for SAP America, Inc. and SAP AG*