UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE: LESLEY WELLS |
| | ) | |
| -vs- | ) | |
| | ) | |
| SAP AMERICA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN OPPOSITION TO THE SAP DEFENDANTS' MOTION *IN LIMINE*
NO. 6 TO PRECLUDE PLAINTIFF AND CO-DEFENDANTS FROM OFFERING
EVICENCE OR TESTIMONY THAT THE IBIS GROUP WAS AN AUTHORIZED
MARKETER OR DISTRIBUTOR OF BUSINESS ONE**

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), through undersigned counsel, submits the following Brief in Opposition to the Motion *in Limine* No. 6 of Defendants SAP America, Inc. and SAP AG ("SAP") to preclude Hodell from asserting at trial that SAP's co-defendant, The IBIS Group, Inc. ("IBIS") was an authorized marketer or distributor of Business One. [ECF #224]("SAP's Motion). As set forth below, SAP's Motion is procedurally improper and factually infirm.

**LEGAL ARGUMENT**

I.  **SAP's Motion is Procedurally Improper and Should Not be Considered.**

SAP again asks the Court, through a pre-trial motion *in limine*, to weigh evidence and to apply the law to that evidence on issues that have previously been addressed to this Court and

not objected to by SAP.

As with most of its other pretrial "motions *in limine*," SAP's Motion #6 is nothing more than a request to have the Court decide factual and legal issues that should have been raised by SAP during the summary judgment stage but were not. SAP essentially seeks to have the Court re-open the dispositive motion process so that it may have the Court decide factual disputes that SAP did not raise when it had the opportunity. Moreover, it would have the Court decide these factual disputes without the procedural safeguards that would be afforded to Hodell during the summary judgment stage. SAP thus has forced Hodell to essentially respond to seven (7) summary judgment motions in a week's time when otherwise Hodell would have at least four weeks in which to develop the record.

For this reason, the Sixth Circuit recently held that dispositive motions masquerading as motions *in limine* should not be considered by district courts. In *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013), the Sixth Circuit made it clear, in reversing the district court's grant of a similar motion, that motions *in limine* may only be used to resolve evidentiary issues and not to resolve factual or legal disputes. Thus, it is now clearly the law in this Circuit that motions *in limine* may not be used to resolve disputes requiring the weighing of evidence, and the resolution of factual and legal disputes:

> In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial – the summary judgment motion. Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment.

*Id.* at 561 (*citing Williams v. Johnson*, 747 F.Supp.2d 10, 14 (D.D.C. 2010) and 21 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE §5037.10 (2005)).

The *Louzon* Court also rejected the defendant's attempt to circumvent this rule by injecting relevance arguments into the motion, noting that "if these tactics were sufficient, a litigant could raise any matter in limine, as long as he included the duplicative argument that the evidence relating to the matter at issue is irrelevant.  **Where, as here, the motion in limine is no more than a rephrased summary judgment motion, the motion should not be considered.**" *Id.* at 562-63 (emphasis added).  The Sixth Circuit cited to a litany of cases from both federal appellate and district Courts refusing to consider motions *in limine* similar to that filed by SAP. *See Louzon*, *supra* at 561-62.

Relying upon *Louzon*, courts within this Circuit and elsewhere have held that a motion *in limine* is procedurally improper where it "requires the Court to weigh the totality of the evidence" or "seeks relief that is dispositive in nature."  *See Hendrian v. Safety-Kleen Sys., Inc.*, 08-14371, 2014 WL 117315 (E.D. Mich. Jan. 13, 2014); *Am. Home Assur. Co. v. Greater Omaha Packing Co.*, 8:11CV270, 2014 WL 3661485 (D. Neb. July 22, 2014)(motion *in limine* improper where "the Court must do more than simply weigh the probative value against the potential for prejudice" but instead must "resolve a legal issue that is central to the merits of the case . . . * * * The resolution of such legal issues is the purpose and function of summary judgment, and the deadline for summary judgment motions has passed."); *Am. Home Assur. Co. v. Greater Omaha Packing Co.*, 8:11CV270, 2014 WL 2112865 (D. Neb. May 20, 2014) ("Cargill has moved to exclude 'any evidence of [Cargill's] 'acts or omissions' and is therefore a motion for summary judgment.")

The impropriety of SAP's Motion, and many of its other "motions *in limine*," is demonstrated by the district court's summation in *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008):

> **It is worth noting that a motion in limine should not be used to resolve factual disputes or weigh evidence**. *Sigma Tool & Mach. v. Nagayama Elect. Ind. Co., Ltd.*, No 00–cv–2936, 2002 WL 34354482, at * 2 (D.D.C. Dec.18, 2002). Nor should a motion in limine be used to argue, as Ashland does here, than an item of damages may not be recovered because no reasonable person could find that it was proximately caused by the defendant's acts. That is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards. *See Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (D.Mich.1997) (motion in limine cannot be used as substitute for motion for summary judgment); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069–70 (3d Cir.1990) (motions in limine are not subject to the same procedural safeguards as motions for summary judgment). *See, e.g., Davis v. Gen. Accident Ins. Co.*, No. CIV. A 98–4736, 2000 WL 1780235, at *4 (E.D.Pa. Dec.4, 2000) (holding in an employment case that defendant's motion in limine was an improper vehicle to argue that plaintiff could not recover back and front pay because he had failed to make out a claim for constructive discharge; that argument "is untimely for a summary judgment motion and too early for a motion for judgment as a matter of law").

(Emphasis added).

SAP's Motion falls within the categories of dispositive motions disguised as motions *in limine* that should not be considered. Specifically, SAP seeks to preclude Hodell from **offering any evidence** that IBIS was an authorized SAP reseller or distributor of Business One simply because SAP contends IBIS was no so authorized. Yet, this issue was squarely addressed in Judge White's R&R, wherein he noted that LSi and IBIS **both** "admitted they that they were 'SAP partners authorized to market and service the SAP Business One product and were agents of SAP for purposes of the SAP products . . [and that they] were SAP partners and agents of SAP for the SAP products'" [ECF #182, R&R at p. 8, fn. 7, *citing* LSI/IBIS Answer [ECF #30] at ¶¶11-12]. SAP did not object to this finding in the R&R, meaning that it has waived its right to dispute the issue or assign it as error on appeal. *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).

The R&R, which was adopted by this Court, also found that "Hodell has cited sufficient evidence . . . to at least create a genuine issue of material fact as to whether SAP clothed LSi or

4

IBIS with apparent authority.  Furthermore, there is evidence, if credited, that the representations were actually made by SAP and simply relayed by LSi/IBIS." [ECF #182, R&R at p. 9, fn. 9]. While SAP disputed that LSi and IBIS were its agents, it did not object to the R&R's finding that the jury could conclude that it had "clothed LSi or IBIS with apparent authority" or that "representations were actually made by SAP and simply relayed by LSi/IBIS."  Thus, SAP has waived its right to object to these two findings, through a motion *in limine* or otherwise.

This Court adopted the R&R in whole.  [ECF #192].  The Court expressly agreed with Judge White's findings relating to LSi and IBIS, noting: "Hodell contends that throughout 2004, it received additional assurances from SAP, through its Channel Partners, that Business One would support Hodell's needs." [ECF #192, p. 4].[1] In rejecting SAP's Objections, the Court held:  "The Court disagrees.  In addition to these direct representations, the Magistrate Judge cited numerous representations made by SAP's alleged business partners and co-defendants LSi and IBIS, for which Hodell maintains SAP should be liable.  There is evidence that LSi/IBIS based its representations on the SAP marketing materials.  The Court agrees with the Magistrate Judge's observation that 'factual issues remain whether SAP could be found liable through a theory of apparent agency or agency by estoppel.'  SAP does not provide a convincing argument to the contrary." [ECF #192, p. 11].

It is clear that SAP's Motion raises issues that were briefed and addressed at the summary judgment stage.  Moreover, SAP failed to object to several aspects of the R&R as stated above. SAP may not re-litigate these factual issues under the auspisces of a motion *in limine*.

In case there was any doubt, SAP's Motion does not cite to or rely upon any case law applying the Federal Rules of Evidence that would justify granting its Motion.  Indeed, SAP

---

[1] The Court defined "Channel Partners" as "an entity authorized to market, resell, implement, and service the SAP Business One product."  [ECF #192 at p. 3, fn. 2].

5

makes only a passing reference to select Rules of Evidence with little explanation as to how they should apply here.

Rather than apply the Rules of Evidence, SAP asks the Court to weigh evidence as to SAP's version of the record evidence, and asks the Court to rule that only its interpretation of this evidence could be accepted by the jury. Of course, the time for weighing the sufficiency and legal effect of evidence is at the summary judgment stage, not with the filing of pretrial motions *in limine*.

Because SAP seeks the wholesale exclusion of evidence based upon its own unsupported view of the factual record, its Motion is nothing more than a disguised motion for summary judgment that should not be considered at this stage of the proceedings.

## II. SAP's Recitation of the Record Evidence is Inaccurate.

Even if SAP's procedurally improper "motion *in limine*" is considered, SAP has failed to carry its burden of demonstrating that this evidence is inadmissible for any purpose. "The court has the power to exclude evidence in limine only when evidence is **clearly inadmissible on all potential grounds**. *Cf. Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)(emphasis added).

SAP has not met this "high standard." Specifically, SAP's sole argument that there is no evidence in the record from which the jury could conclude that IBIS was authorized to sell Business One to Hodell is inaccurate.

6

First and foremost, SAP's Motion is defeated by the very deposition testimony it cites. SAP cites to testimony by Dale Van Leeuwen, the sole shareholder of IBIS, wherein he asserted that IBIS was in fact an authorized SAP reseller. SAP cites to at least two instances where Mr. Van Leeuwen testified that IBIS was an authorized SAP reseller. Indeed, Mr. Van Leeuwen's testimony was much more unequivocal than SAP would have this Court believe. For example, Mr. Van Leeuwen testified

> Q. I want to talk a little bit about the relationship between IBiS, LSi, and SAP.
> A. Okay.
> Q. LSi and IBiS were what's referred to as a channel partner. Is that a correct term?
> A. Yes.
> Q. When did IBiS become an SAP channel partner?
> A. I'm going to have to say early summer 2004, without having an exact date.
> Q. Can you explain or summarize how the channel partner system, with respect to SAP, worked from your perspective?
> A. Yeah. There is a -- there's an annual fee associated with the access to PartnerEdge, so you sign up for becoming a partner. You have qualifications that have to be met as far as competency from a sales perspective, from a technical perspective. There's training that's available to you as a result of paying that initial PartnerEdge fee. Marketing material becomes available to you, access to the internal portal for partners, based on the product that you are licensed to sell, becomes available to you. Technical resources you get -- I believe you get a -- you certainly get the SDK, the software development kit, available to you, and, I believe, we had an internal development system that was available to us. I can't remember that for sure, but I believe that was the case.
> *   *   *
> Q. Was your firm encouraged to leverage its partnership with SAP as part of the sales cycle of Business One to prospective customers?
> *   *   *
> A. Yes. We were expected to leverage our relationship and sell SAP product, and that was certainly our intent to do that.

[Van Leeuwen Dep. at 66:02-67:19].[2] Mr. Van Leeuwen further testified that he attended an SAP Field Kickoff Meeting ("FKOM") in January 2004 and took notes regarding presentations

---

[2] Mr. Van Leeuwen's deposition has been previously filed with the Court. [ECF #111-1]. Relevant portions of his deposition are attached as Exhibit 1.

7

made to SAP reseller partners. [Van Leeuwen Dep. at 71:07-75:13]. These notes have previously been filed with the Court as Deposition Exhibit 33 [ECF #155-4].

In an attempt to exclude relevant evidence, SAP selectively quotes from Mr. Van Leeuwen's deposition hoping that the Court will ignore Mr. Van Leeuwen's actual testimony when viewed in its full context. For example, SAP quotes four passages from Mr. Van Leeuwen's deposition on Page 4 of its Motion. Aside from ignoring the above testimony, SAP omits relevant portions from these quotes in favor of an ellipsis. The second full "quote" provided by SAP actually reads:

> Q. Is it your testimony that IBiS was an actual SAP channel partner or reseller?
> A. I believe -- again, the timing was so close that I believe IBiS held its own partnership with SAP for maybe some window of time, a couple weeks, before the -- before the relationship with LSi took place. It may or may not have been.

[Van Leeuwen Dep. at 210:3-5]. SAP again completely misstates Mr. Van Leeuwen's testimony on pages 239-240 of his deposition in the fourth "quote" it provides to the Court on page 5 of its Motion. Mr. Van Leeuwen's actual testimony was as follows:

> Q. Does that refresh your recollection as to whether, in fact, The IBiS Group as of April of 2004 was actually an SAP reseller?
> A. It doesn't. It doesn't jog my memory. I don't know.
> Q. When you were making -- strike that. This'll be 297. (Exhibit No. 297 marked as requested.)
>
> BY THE WITNESS:
> A. The only reason I mentioned that I'm almost 100 percent sure that there was a separate agreement for IBiS is the note that is on here for LSi, just kind of jogged my memory. And that was: SAP is aware that LSi currently has a relationship with Aperum, Inc., a software company products of -- for distribution industry. This was a big issue -- I had mentioned previously that I was a president of the ASPA, which was the Aperum Solution Partners Association, and there was a lot of concern in regards to partners taking on a competitive line. And I was pointed at as having --having issue being president of the ASPA and having a competitive line.
> Q. You're looking at page 27 of the reseller agreement between SAP and LSi?
> A. Yes. And that just jogged my memory. That's -- that's all. Of that condition taking place as related to IBiS.

8

> Q. So as we sit here right now, is it your belief that as of April 2004, for instance, IBiS Group – The IBiS Group itself, separate and apart from LSi, was an actual reseller --
> A. Reseller.
> Q. -- of Business One?
> A. Yes. We -- yeah. I'm pretty sure that we had signed a reseller agreement before LSi did.

[Van Leeuwen Dep. at 239:01-240:13]. Mr. Van Leeuwen did not waver on his testimony. [*See e.g.,* Van Leeuwen Dep. at 283:03-285:06].

Thus, SAP's only real contention is **not** that Mr. Van Leeuwen could not recall whether IBIS was an SAP reseller, it is really that Mr. Van Leeuwen did not confirm his belief enough times or to SAP's own satisfaction. Further, Mr. Van Leeuwen's testimony is by no means the only evidence Hodell would be able to submit to the jury on this issue, and as stated above, LSi and IBIS **admitted** this fact in their Answer to the Amended Complaint. SAP has had the benefit of years of discovery to address this issue, but has instead resorted to completely misquoting Mr. Van Leeuwen's deposition testimony in a motion *in limine* on the eve of trial.

Of course, it is ultimately for the jury to decide whether to believe Mr. Van Leeuwen or to believe SAP. SAP is free to present contrary evidence at trial, if it actually has any such evidence aside from selectively misquoting testimony. There is ample evidence from which the jury could conclude that IBIS was an authorized SAP reseller, and it simply inappropriate for SAP to argue that this issue should be removed from the jury's consideration on a motion *in limine* given the Sixth Circuit's holding in *Louzon*.

## **CONCLUSION**

SAP's Motion is procedurally improper and should be denied. At the very least, it is an issue for the jury to decide as to whether IBIS was an authorized SAP business partner or reseller. The jury is perfectly capable of hearing the testimony and assessing what, if any weight

to give it.

          Respectfully submitted,

          */s/* P. Wesley Lambert
          P. WESLEY LAMBERT (0076961)
          wlambert@koehlerneal.com
          KOEHLER NEAL LLC
          3330 Erieview Tower, 1301 East 9th Street
          Cleveland, Ohio  44114
          (216) 539-9370
          (216) 916-4369   (*facsimile*)
          *Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of these pleadings will also be emailed and sent by federal express to the following parties:

**LSI-Lowery Systems, Inc.**
c/o Chris Kellett
cpk@carmodymacdonald.com

**IBIS Group, Inc**
1800 W. Hawthorne Lane, Suite N
W. Chicago, IL 60185

/s/ P. Wesley Lambert
P. WESLEY LAMBERT (0076961)