2014 WL 117315
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Judith A. HENDRIAN, Individually and
as Personal Representative of the Estate of
Howard G. Hendrian, Deceased, Plaintiff,
v.
SAFETY–KLEEN SYSTEMS, INC., Defendant.

No. 08–14371.  |  Jan. 13, 2014.

**Attorneys and Law Firms**

Donald A. Krispin, Duane C. Marsden, Timothy A. Swafford, The Jaques Admiralty Law Firm, PC, Detroit, MI, Raphael Metzger, Metzger Law Group, Long Beach, CA, for Plaintiff.

Cynthia M. Filipovich, Daniel J. Scully, Jr., Clark Hill, Duane C. Marsden, Jaques Admiralty Law Firm, Detroit, MI, Wesley S. Alost, Jones Carr McGoldrick LLP, Dallas, TX, for Defendant.

### *ORDER*

JULIAN ABELE COOK, JR., District Judge.

**\*1** On October 15, 2008, the Plaintiff, Judith Hendrian, acting individually and as the personal representative of the estate of her deceased husband, Howard G. Hendrian ("Hendrian"), filed this products liability action against the Defendant, Safety–Kleen Systems, Inc. ("Safety–Kleen").[1] The facts and the procedural history of this case have been described in detail by this Court in a previously entered Order denying Safety–Kleen's motion for summary judgment. (ECF No. 57 at 2–3).

To summarize, the Plaintiff alleges that her husband was exposed to a cleaning solvent while working at Ford Motor Company. This cleaning solvent (to wit, "105 Solvent") which had been produced by Safety–Kleen contained the chemical "benzene" that was allegedly carcinogenic to humans. The Plaintiff maintains that Hendrian's exposure to the 105 Solvent caused him to incur serious medical problems including an acute form of myelogenous leukemia, which ultimately led to his death in 2007. (Compl.¶ 12). In making her claims, the Plaintiff has advanced four basic theories of liability against Safety–Kleen; namely, (1) failure to warn, (2) strict liability,[2] (3) negligence, and (4) loss of consortium.

Currently before the Court are the parties' motions which address a variety of subjects that range from (1) boiler plate objections to hypothetical matters,[3] (2) requests for the Court to take judicial notice of certain facts and publications, and (3) issues that are dispositive in nature, rendering them improperly lodged for disposition at this stage of the case.[4]

### I.

According to the Federal Rules of Evidence, relevant evidence is admissible unless the United States Constitution, a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed.R.Evid. 402. Irrelevant evidence is not admissible. *Id.* Evidence is "relevant" if it tends to make a material fact more or less probable. Fed.R.Evid. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed.R.Evid. 403.

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for the exclusion of evidence in limine before trial, "[i]n general, federal district courts have the power to exclude evidence *in limine* pursuant to their inherent authority to manage trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). A court will generally reject a proffered motion in limine unless the moving party can satisfy "its burden of showing that the [targeted] evidence in question is clearly inadmissible." *Corporate Commc'n Servs. of Dayton, LLC v. MCI Commc'ns Servs., Inc.,* 2010 WL 1445169, * 1 (S.D.Ohio Apr.12, 2010) (citing *Indiana Insurance Co. v. General Electric Co.,* 326 F.Supp.2d 844, 846 (N.D.Ohio 2004)). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.*

**\*2** If the Court denies such a motion in limine, the evidence sought to be excluded by the motion will not necessarily be admitted at trial. *Id.* Indeed, the Court will consider any objections raised at trial, "even if the objection falls within the scope of a motion in limine that has been [previously]

denied." *Watts v. United Parcel Serv.*, 2013 WL 4776976, *1 (S.D.Ohio Sept.5, 2013).

Finally, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

## II.

As a preliminary matter, the Court has grouped several of the parties' motions together for purposes of eliminating duplicative analyses.

### A. ECF Nos: 78, 79, 81–87, 95, 96, 100–102, 106, 107, 110, and 111.

With respect to the above-listed motions, the parties' seek to preclude the entry of a wide variety of broad categories of evidence. As an example, the Plaintiff seeks, *inter alia,* to exclude the following from being admitted into the record of this case: (1) expert opinions that have not been previously disclosed by the Defendant (ECF Nos. 78–79); (2) allegedly improper hypothetical questions (ECF No. 82); (3) evidence of an assumption of risk (ECF No. 85); (4) arguments for jury nullification of non-economic damages (ECF No. 86); (5) evidence of the non-taxability of a personal injury award (ECF No. 87); (6) evidence of the effect of a verdict on the community (ECF No. 95); and, (7) evidence regarding the Defendant's good corporate conduct (ECF No. 96). In a similar vein, the Defendant seeks, *inter alia,* to preclude the entry of (1) media reports regarding Defendant or its witnesses (ECF No. 100); (2) evidence of unrelated diseases and medical conditions (ECF No. 101); (3) evidence of other suits or claims against the Defendant (ECF No. 102); (4) reference to irrelevant corporate conduct (ECF No. 106); reference to certain irrelevant or inflammatory matters (ECF No. 107); (5) evidence of unreliable or irrelevant studies (ECF No. 110); and (6) evidence of witness testimony to infer corporate knowledge (ECF No. 111).

All of the motions grouped under Section II–A of this Order (enumerated above), share characteristics which allow for summary treatment: namely, they are overly broad, contain little if any reference to specific evidence, and lack the requisite context necessary for the Court to make a well-reasoned decision at this juncture of the case. The courts have been clear that "[a] motion in limine that seeks to exclude broad categories of evidence should rarely be granted." *Watts,* 2013 WL 4776976, *1 (citing *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir.1975). Indeed, "[t]he better practice is to deal with questions of admissibility of evidence as they arise." *Id.* As such, the Court must, and will, deny the parties' motions in limine as they relate to ECF Nos: 78, 79, 81–87, 95, 96, 100–102, 106, 107, 110, and 111.

### B. *ECF Nos: 88, 97, 99, 109*

*3 Both parties seek to preclude the entry of certain evidence that is, under most circumstances, categorically barred at trial. Each of the motions grouped under this section, with the exception of ECF No. 109, fit this general description. Starting with ECF No. 88, the Plaintiff seeks to exclude evidence of any collateral source payments. The law in Michigan is clear that, in a personal injury action, any evidence suggesting that the loss in question was paid by a collateral source "shall be admissible to the court in which the action was brought *after* a verdict for the plaintiff and before a judgment is entered on the verdict." Mich. Comp. Laws. 600.6303(1) (emphasis added). As such, the Defendant is prohibited from introducing any evidence of collateral source payments during the course of trial.

Moving to ECF Nos. 97 and 109, both of which address the Defendant's financial condition, the Court is mindful that "[s]tatements relating to the poverty of one of the parties or the wealth of the other calculated to direct the jury's attention to the need of an injured party for compensation rather than the real issues in the case are not relevant." *VSI Holdings, Inc. v. SPX Corp.,* 2005 WL 5980804, *7 (E.D.Mich. Apr.12, 2005). Here, the Plaintiff seeks to preclude the presentation of evidence pertaining to the filing of bankruptcy by the Defendant in 2000. (ECF No. 97). The Defendant counter-argues that this information is relevant to show that "the Safety–Kleen entity that existed and operated at the time of [Hendrian's] alleged exposures no longer exists." (ECF No. 158 at 6). The Court, finding that the probative value, if any, in the Defendant's bankruptcy filing is far outweighed by the danger of unfair prejudice, grants the Plaintiff's motion to preclude any evidence of this fact.

With respect to ECF No. 109, however, the Defendant seeks to preclude the admission of all evidence concerning its corporate size and financial condition. In its response to this argument, the Plaintiff maintains that the Defendant's financial viability is relevant to its design defect claim in order to satisfy Michigan's "risk utility" test which requires the movant to show, inter alia, that (1) a safer alternative existed at all of the relevant times in question, and (2) the alternative

was feasible under the circumstances. *See Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 365 N.W.2d 176, 184 (Mich.1984). The Plaintiff contends that Safety–Kleen's financial viability (or lack thereof) is relevant to the issue of whether an alternative design was practicable under the circumstances. In light of the Plaintiff's burden in this case, the Court finds that both parties must be permitted to offer evidence that is tied exclusively to the time period in question regarding the feasibility of an alternative design. Accordingly, the Court grants the Defendant's motion with respect to evidence of SafetyKleen's corporate size and current financial well-being neither of which are relevant to the claims at issue-while leaving open the prospect of considering evidence tied to Safety–Kleen's financial position during the time that Hendrian was actually exposed to 105 Solvent.

\*4 Finally, with respect to ECF No. 99, the Defendant seeks to exclude all evidence of its insurance coverage. In response, the Plaintiff appears to concur with the Defendant's request as long as the "preclusion of insurance is mutual and equally applies to preclude evidence of ... any type of insurance that might cover Plaintiff's injuries...." (ECF No. 129 at 2). Having previously determined that all evidence of collateral source payments are precluded at trial, the Court agrees with the Plaintiff's caveat and grants the Defendant's motion with this understanding.

### C. *Motions in limine Requiring Individualized Review*

For those motions in limine which do not share a common thread substantive or otherwise with the group at large, the Court has endeavored to analyze the merits of each request for relief on an individual basis in the following manner:

#### 1. *Plaintiff's Motion in limine No. 5 (ECF No: 90)*

The Plaintiff moves to exclude all evidence "that this case is lawyer driven, or that Plaintiff's counsel regularly advertise[s] for and litigate[s] toxic tort cases." (ECF No. 90). The Defendant does not oppose this request, as long as the Plaintiff is prohibited from offering evidence regarding other lawsuits involving Safety–Kleen for any purpose. The Court finds that there is no probative value in the type or volume of litigation pursued by the Plaintiff's counsel. As such, the Court will grant Hendrian's request to exclude this evidence. For reasons that will be discussed below, the Court reserves any ruling on the admissibility of prior *similar* litigation against SafetyKleen.

#### 2. *Plaintiff's Motion in limine No. 6 (ECF No: 89)*

The Plaintiff seeks to prohibit the Defendant from proffering evidence of the "allegations of cases litigated by Plaintiff's counsel that do not involve benzene or leukemia." (ECF No. 89 at 1). This particular request appears to be motivated by a belief that the Defendant intends to prejudice the jury by delving into the factual nature of previous cases in which the Plaintiff's experts have testified. Thus, it appears that this motion encompasses two different subjects, namely (1) the extent to which either party should be permitted to introduce evidence concerning unrelated cases previously litigated by counsel in this action, and (2) the permissible scope of inquiry of the parties experts' testimonial history on cross examination. Although the Defendant has essentially stipulated to the Plaintiff's first request as long as it is given reciprocal treatment, it has vigorously challenged the notion that any restriction should be placed on the parties' ability to cross-examine the testifying experts.

With respect to the first issue, the Court agrees that the mere existence of allegations in entirely unrelated and *dissimilar* matters is of no probative value and should, therefore, be excluded from evidence. To the extent that either party seeks to proffer evidence of similar matters previously litigated against Safety–Kleen, such as those cases involving benzene exposure, the Court finds that such evidence could, depending upon the circumstances, satisfy the relevance test under Fed.R.Evid. 403, and reserves ruling on the admissibility of such evidence until trial.

\*5 As to the scope of permissible cross-examination, Fed.R.Evid. 611(b) allows a party conducting cross-examination to inquire on matters touching "the subject matter of the direct examination and matters affecting the witness's credibility." Several years ago, the Eighth Circuit declared that "cross examination may embrace any matter germane to direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict or rebut testimony given by the witness." *Villanueva v. Leininger,* 707 F.2d 1007, 1010 (8th Cir.1983). Indeed, an expert witness' qualifications are critical to the jury's ability to assess credibility relating to the subject matter at issue. *See Morales v. Am. Honda Motor Co., Inc.,* 151 F.3d 500, 516 (6th Cir.1998) (noting that, because "opposing counsel was provided, and took full advantage of, the opportunity to challenge the expert's qualifications to testify in the area in question ... the trial court did not err in allowing the expert to testify.") Accordingly, notwithstanding the parties' right to object to specific matters pursued on cross examination

during trial, the Court declines to grant any prophylactic measures at this time. The Plaintiff's motion is therefore partially granted.

### 3. *Plaintiff's Motion in limine No. 14 and 20 (ECF Nos: 94 and 91)*

The Plaintiff contends that, throughout the pretrial phase of this case, the Defendant's two primary experts have failed to (1) render risk assessment opinions, and (2) identify any causes or risk factors that are unrelated to benzene, obesity, or idiopathic origin. As a result of the Defendant's claimed shortcomings, the Plaintiff now seeks to obtain an order from the Court that will preclude any line of expert testimony on subjects that were not previously disclosed. In making this motion, the Plaintiff seeks to limit the Defendant's rebuttal to her causation theory in this case. In its opposition papers, the Defendant submits that there is no rule of procedure or case law that requires a proponent-as a prerequisite to admissibility-to establish through its experts that there was correlation between a risk factor and the claimed disease. Moreover, even assuming that such authority did exist, the Defendant argues that its experts made the proper disclosures and, in fact, discussed and evaluated these very issues during their respective depositions.

In support of her argument for exclusion, the Plaintiff relies exclusively upon Fed.R.Civ.P. 26(a)(2)(B) and Fed.R.Evid. 702. Starting with the former, Rule 26 requires, *inter alia,* the proponent to disclose the identity of all testifying expert witnesses along with a written report detailing "all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i). If a party fails to comply with Rule 26, "the party is not allowed to use that information or witness to supply evidence...." Fed.R.Civ.P. 37(c)(1). Contrary to the Plaintiff's assertion, the Defendant has complied with the spirit and the letter of Rule 26. Indeed, in its Rule 26(a) disclosures, the Defendant specifically identified its testifying experts (namely, Drs. Peter Shields and David Pyatt) both of whom provided a general overview of the topical nature of their testimony. *See* (ECF No. 151 at Ex. A–B).

*6 With respect to the experts' reporting obligations, each of them disclosed several risk factors,[5] and stated more generally that "Like AML, the underlying cause of the majority of MDS cases is unknown. It has been estimated that 80% (or more) of all MDS cases are de novo or idiopathic...." *Id.* at Ex. D. The Plaintiff essentially suggests that the Court should limit the experts' testimony because of their failure or inability to identify each and every possible cause of Hendrian's MDS. This argument fails where, as here, the experts have been clear from the beginning that the root cause of MDS is often idiopathic in nature. Indeed, the Plaintiff has failed to direct the Court to any authority which suggests that Rule 26 requires an expert to definitively identify all possible causes of Hendrian's condition.

Finally, and without further elaboration, the Plaintiff summarily states that "if any expert or other witness at trial attempts to relay information to the jury that there is any other or additional risk factors ... such statements or purported evidence would be based on pure speculation and would be barred by Rule 702(b)...." (ECF No. 91). This argument is unavailing for a number of reasons. First, as mentioned earlier, the Defendant's experts opined that the root cause of Hendrian's MDS could have been idiopathic in nature. In fact, in coming to this conclusion, Dr. Shields' report contains a work cited page providing reference to over 400 individual sources while Dr. Pyatt's report contains nearly 100. Thus, it appears that these expert witnesses considered a whole host of risk factors which ultimately culminated in their collective opinion that the cause could have been idiopathic. Second and perhaps most telling of all, the Plaintiff, in failing to analyze any of the factors under Fed.R.Evid. 702, has not expressed any objections to any of the sources cited in the experts' reports. Without more, the Court must, and does, deny the Plaintiff's motions to limit the Defendant's expert testimony.

### 4. *Defendant's Motion in limineECF No. 103*

Turning now to the Defendant's motions in limine, the first of the lot seeks to exclude "reference to proposition 65 warnings as evidence of benzene content, carcinogenicity, or causation." Proposition 65 is a California state law which requires a business to disclose the presence of certain chemical constituents contained in products distributed in the state. Cal. Health & Safety Code § 25249.5. The Defendant concedes that while this information may be evidence that such a warning was provided, it is neither relevant nor sufficient for purposes of establishing causation or the actual benzene content of 105 Solvent. In support of its position, the Defendant directs the Court to the attention of *Mitchell v. Gencorp,* holding that a government agencies' "threshold of proof is reasonably lower than that appropriate in tort law, which traditionally requires ... a plaintiff to prove that it is more likely than not that another individual has caused him or her harm." 165 F.3d 778, 783 (10th Cir.1999). It should be noted that the Plaintiff's response does not make any reference

of her intention to use the Proposition 65 warnings to establish causation or the chemical content of 105 Solvent. (ECF No. 139).

*7 The Court agrees with the Defendant, but only as it pertains to the exclusion of the Proposition 65 warnings for purposes of establishing causation or the benzene content of 105 Solvent. Certainly, the Plaintiff is entitled to introduce these warnings to establish the fact that they may have differed in substance and form from those issued in Michigan. As such, the Court grants the Defendant's motion in part and defers any remaining objections to trial.

### 5. *Defendant's Motion in limineECF No. 104*

The Defendant seeks to prohibit the Plaintiff from introducing evidence of the so-called "Dittmar Memorandum"; a memo written by Paul Dittmar, Safety–Kleen's manager of product and process development, to Hyman Bielsky, Safety–Kleen's general counsel. According to the Defendant, the Dittmar Memorandum was written in 1991 and describes a process for potentially removing all benzene from Safety–Kleen's products. (ECF No. 104 at 7). While the Defendant makes no claim of privilege with respect to this document, it contends that it should be withheld from evidence for all purposes because it is irrelevant to Hendrian's exposure and has no bearing on the Plaintiff's design defect claim. The Plaintiff submits that the Dittmar Memorandum is relevant for a number of purposes including, *inter alia,* (1) the presence of benzene in 105 Solvent, (2) Safety–Kleen's knowledge that "[a] properly designed fractionation system [would] ... totally remove benzene ....", and (3) the economic feasibility of implementing a system capable of removing the benzene. (ECF No. 140 at 3).

At this juncture, the Court is not persuaded that the Dittmar Memorandum should be excluded from evidence for all purposes at trial. Indeed, it clearly concerns the crux of the claims at issue: namely, exposure to benzene and the practicality of safer alternatives to the chemical composition of 105 Solvent. Moreover, the Dittmar Memorandum makes clear that, in as early as 1991, Safey–Kleen was on notice that some level of benzene-arguably or not-was present in the parts washer solvent. *See* (ECF No. 140 at Ex. A). While it is conceivable that this document could be offered for some purpose contrary to the Rules of Evidence, the Defendant is free to object to those issues at trial at the appropriate time. For the reasons thus stated, the Defendant's motion is denied.

### 6. *Defendant's Motion in limineECF No. 105*

The Defendant seeks to exclude the depositions of several former Safety–Kleen executives that were taken in a different, albeit substantively related, action. According to the Plaintiff, each of the depositions was taken in connection with a case that was pending in the Los Angeles (California) Superior Court; namely, *Talley v. Safety–Kleen,* Case No; 784605. In *Talley,* the plaintiff alleged that his occupational exposure to the 105 Solventthe same product used by Hendriancaused him to develop Acute Myelogenous Leukemia ("AML"). The plaintiff's counsel in *Talley* deposed most of Safety–Kleen's officers and managing agents, eighteen of which Hendrian seeks to use at the trial in the case at bar. In addition to the factual similarity between *Talley* and this case, the Plaintiff maintains that (1) the identified deponents are former employees of Safety–Kleen, all of whom reside outside the subpoena power of this Court, (2) the depositions were noticed as trial depositions and videotaped as such, and (3) Safety–Kleen's then counsel exercised his client's right to vigorously defend the depositions. (ECF No. 141 at 5–6).

*8 Federal Rule of Evidence 804 provides for the admission of former testimony that was taken during a different proceeding that "is now offered against a party who had-or, in a civil case, whose predecessor in interest had-an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed.R.Evid. 804(b)(1)(B). The Advisory Committee Notes indicate that modern decisions require the substantial "identity of issues as a means of insuring that the former handling of the witness was the equivalent of what would now be done if the opportunity were presented." *Id.* at Advisory Committee Notes. Indeed, "[t]he opportunity to develop testimony offered at another proceeding is not established by presence alone." *United States v. Taplin,* 954 F.2d 1256, 1258 (6th Cir.1992). Thus, the gravity and the totality of the issues must substantially align in order to show that the party-in-interest had a similar motive to develop the testimony at issue. Finally, the moving party must also show that each of the declarants meet the criteria for being unavailable established under Fed.R.Evid. 804(a). [6]

An examination of the Defendant's primary argument appears to be that Safety–Kleen had no motive to spend the additional time or resources to develop the testimony in the *Talley* matter. The Court disagrees. First, the mere fact that the plaintiff in *Talley* deposed at least eighteen management level executives from Safety-Kleen is indicative of the potential

seriousness of the matter. Moreover, although the Defendant maintains that many of the prior cases involved "different facts, different solvents, and different parts washers", the Court is only concerned with the *Talley* matter which, interestingly, the Defendant has elected not to address with any level of specificity. As such, the Court is left only with the Plaintiff's uncontested assertion that the plaintiff in *Talley* allegedly developed AML following his occupational exposure to the 105 Solvent. Surely there is no reasonable basis to suggest that the case at bar is any different.

Finally, with respect to Safety–Kleen's motive to vigorously defend the *Talley* action, it seems reasonable to suggest that, when faced with a products liability action involving a heavily marketed substance, the prospect of derivative actions would be enough to inspire a vigorous defense. [7]

As such, the Court denies the Defendant's motion, but only with respect to the eighteen depositions that have been identified in the Plaintiff's response. *See* (ECF No. 141 at 3–4).

### 7. *Defendant's Motion in limine ECF No. 108*

The Defendant seeks an order that, if granted, would prohibit the Plaintiff from referring to 105 Solvent as "hazardous waste." According to the Defendant, "hazardous waste", as defined by the Resource Conservation and Recovery Act ("RCRA"),[8] is a term of art that pertains to the "tracking, transportation and disposal of a substance as it flows through various streams of commerce." (ECF No. 108 at 7). The Defendant maintains that, even if 105 Solvent had been properly classified as "hazardous waste" under the RCRA, this characterization has no bearing on the Plaintiff's allegations and creates a substantial danger of unfair prejudice against Safety–Kleen. In her response, the Plaintiff contends that this evidence is necessary to rebut the testimony of Safety–Kleen's experts and, more fundamentally, to inform the jury "of the true nature of SafetyKleen 105 Solvent." (ECF No. 128 at 3).

\*9 According to the RCRA, "hazardous waste" means "a *solid waste,* or combination of solid wastes...." 42 U.S.C. § 6903(5) (emphasis added). Solid waste is in turn defined as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility, and other *discarded* material, including solid, liquid, or semisolid, or contained gaseous material ...." § 6903(27) (emphasis added). In other words, under the RCRA, a material or product is not classified as "waste" until *after* it is discarded by the end-user. As such, the Defendant's argument fails from a substantive perspective. At no time during Hendrian's exposure to 105 Solvent was it properly classified as "waste" under the RCRA.

Moreover, even assuming, *arguendo,* that the Defendant's argument was (1) substantively valid, and (2) relevant under Fed.R.Evid. 401, any probative value of attaching this highly prejudicial descriptor to the product is "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury...." Fed.R.Evid. 403. This is especially true where, as here, there are a number of ways to prove the underlying implication that is associated with "hazardous waste": namely, by identifying the chemical constituents of 105 Solvent and demonstrating their propensity to be harmful to one's health. As such, the Defendant's motion to prohibit the Plaintiff from characterizing 105 Solvent as "hazardous waste" under the RCRA is granted.

### 8. *Defendant's Motion in limine ECF No. 112*

The Defendant seeks to exclude all evidence of material data safety sheets ("MSDS"), warnings, labels, and safe use instructions for (1) Safety–Kleen 105 Solvent unrelated to benzene; and (2) products, solvents or machines not alleged to have been used by the Plaintiff.

With respect to its first request, the Defendant maintains that because the "Plaintiff pled and proceeded with this manner as a benzene case, any evidence regarding inadequacies or insufficiencies of MSDS, warnings, labels, and safe use instructions for [ 105 Solvent] unrelated to benzene" are irrelevant. (ECF No. 190 at 6). The Plaintiff disagrees, arguing that although benzene was ultimately responsible for Hendrian's death, there is evidence to suggest that some of the other harmful constituents within the solvent may have played a contributing role.

Even assuming, *arguendo,* that the Plaintiff is correct in contending that some of the identified constituents in the 105 Solvent aggravated or enhanced the benzene's toxicity, the Court notes that the Plaintiff has not claimed that anything other than benzene was *independently* capable of causing her husband's demise.[9] Under these circumstances, the Court concludes that the warnings, the MSDS, the labels, as well as the "safe use" instructions that are unrelated to benzene have no direct bearing on the underlying claim and, as a

consequence, are not relevant under Fed.R.Evid. 401. Indeed, benzene is the only chemical mentioned by name in the complaint, which appears to be consistent with the Plaintiff's theory of the case.

*10 Moving to the second issue, the Defendant maintains that the Plaintiff should not be permitted to expand the universe of parts washers or solvents to those outside the scope of the Plaintiff's complaint, and, further, that all evidence of the warnings and instructions related to same are likewise irrelevant. According to the Plaintiff, Safety–Kleen manufacturers two products that are safer than 105 Solvent; namely, a highly refined solvent known as "Premium Gold Solvent" and "150 Solvent", both of which contain virtually no benzene. (ECF No. 143 at 2). Likewise, the Plaintiff maintains that Safety–Kleen has two safer machines available for use, "which suck toxic solvent vapors away from operators' breathing zones...." *Id.* The Plaintiff contends that she should be permitted to offer evidence of "safer feasible alternatives" in support of her design defect claim under Michigan law. The Court agrees in part.

As discussed, the Court has construed the Plaintiff's strict liability claim as a design defect claim under Michigan law. Recognizing that it is the Plaintiff's initial burden to establish a prima facie case of liability against the Defendant, the Court finds that evidence of feasible safer alternatives to the allegedly defective product (i.e., 105 Solvent) are relevant to the issues in play. However, the Court also notes that the Plaintiff has not made any reference in the complaint to the mechanism utilized by her husband during the course of his employment at the Ford Motor Company; namely, the "sink-on-a-drum parts washer." As such, evidence of safer alternative equipment is not relevant for purposes of trial. Finally, with respect to the relevant time period, the Plaintiff maintains that Hendrian's exposure to the 105 Solvent was limited to "1990 and continuing through [to] 1993." (ECF No. 1–3 at 4). This time period likewise controls the universe of safer alternatives available to Safety–Kleen. As such, the Court (1) grants the Defendant's motion with respect to the MSDS, the warnings, the labels, and those safe use instructions that are unrelated to benzene, (2) grants the Defendant's motion relating to the admissibility of evidence as it pertains to safer alternative equipment, and (3) denies the Defendant's motion with regard to safer alternatives to the use of 105 Solvent within the time period thus described.

### 9. *Defendant's Motion in limineECF No. 113*

Consistent with the Defendant's motion to exclude the MSDS, the warnings, the labels, and the safe use instructions unrelated to benzene, it now seeks a much broader order that will prohibit the Plaintiff from making reference to any other chemicals in the 105 Solvent. In making this motion, the Defendant submits that the Plaintiff has purposefully chosen to litigate this matter as a benzene exposure case. In its view, she should be prohibited from ambushing her adversary with new and otherwise independent theories of causation at trial. The Plaintiff, while agreeing that the complaint is focused on benzene, maintains that "[s]ince the complaint identified the product[,] and since Safety–Kleen was aware of the product's constituents from its own testing ... [it] cannot be prejudiced...." (ECF No. 135 at 3).

*11 The Court disagrees with the Plaintiff's position. First and foremost, nowhere in the complaint does the Plaintiff specifically identify the product at issue; i.e., the 105 Solvent. Indeed, the only specificity that is contained within the complaint is the repeated reference to benzene which appears at least fifteen times over eight pages. Moreover, the Court notes that the Plaintiff has not responded to the Defendant's accusation that its "experts have calculated Hendrian's exposure to and formulated opinions regarding benzene, no other chemical or constituent." (ECF No. 191 at 3). The Plaintiff's failure to respond to this assertion is telling.

To the extent that the Plaintiff maintains that the presence of the other chemicals caused an increase in the absorption rate of benzene or otherwise aggravated Hendrian's injury *stemming from the benzene,* counsel is permitted to explore this line of argument. For purposes of clarity, however, the Plaintiff is prohibited from introducing any evidence for the purpose of suggesting that Hendrian's death was the result of some independent factor unrelated to benzene. As such, the Court grants the Defendant's motion in part with the limitation thus described.

### 10. *Defendant's Motion in limineECF No. 114*

With respect to this last motion in limine, the Defendant seeks to exclude any reference to "annual waste recharacterization reports." According to the Defendant, Safety–Kleen annually performs testing on the waste streams of a number of its customers nationwide. The purpose of this testing is to determine the appropriate waste codes that should be applied pursuant to various regulations. (ECF No. 114 at 8). The Defendant anticipates that the Plaintiff will attempt to offer these reports as evidence of the benzene content of 105 Solvent, which, it contends, is improper because

(1) the reports characterize numerous *waste* streams (i.e. spent solvent) none of which originated from Hendrian's employer during the relevant time period, and (2) the reports and underlying data do not focus on the 105 Solvent, but rather the chemical analysis of dozens of waste streams considered together. The Plaintiff's response, while failing to address either of the Defendant's primary arguments, is essentially that because the 105 Solvent may have been included in a given report which contains some evidence of benzene, they should be permitted at trial. The Court disagrees. There is simply no foundational basis upon which to admit the seemingly randomly generated reports of various *spent* product taken from a multitude of sites, none of which appear to be the location where Hendrian actually worked. The Defendant's motion is granted.

### D. *Miscellaneous Matters*

In addition to the thirty three motions in limine that have already been evaluated and resolved, the Plaintiff has filed a motion concerning a dispositive matter (ECF No. 76), and both parties request the Court to take judicial notice of certain evidence in advance of trial. (ECF Nos. 117 and 168). The Court will address each in turn.

### 1. *Plaintiff's Motion For An Order that Non–Economic Damages Are Not Limited By Michigan Compiled Laws § 600.2946*

*12 On October 25, 2013, the Plaintiff filed a motion seeking the entry of an order that would confirm that Hendrian's damages in this case are not limited by Mich. Comp. Laws § 600.2946. This pleading is based upon an allegation that Safety–Kleen had actual knowledge that the 105 Solvent was defective and likely to cause leukemia.

Setting aside the merits of the Plaintiff's request, this so-called motion in limine is procedurally deficient for at least two reasons. First, the Plaintiff is seeking relief that (1) requires the Court to weigh the totality of the evidence, and (2) seeks relief that is dispositive in nature. Indeed, while the Plaintiff has premised her request under the cloak of a motion in limine, the Sixth Circuit has been clear that "[i]n light of their limited purpose, motions in limine should not be used to resolve factual disputes...." *Louzon v. Ford Motor Co.,* 718 F.3d 556, 561 (6th Cir.2013) (internal citations omitted). Indeed, "a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial-the summary judgment motion." *Id.* To conclude otherwise, "not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." *Id.*

Here, the true nature of the Plaintiff's request is evident from the first page of her motion, where she argues that, as a matter of law, "Safety–Kleen had actual knowledge its product, SafetyKleen 105 Solvent was defective and substantially likely to cause leukemia. Not only did SafetyKleen have this knowledge, but Safety–Kleen then willfully disregarded that knowledge ... thereby satisfying the exception to the statutory cap on non-economic damages...." (ECF No. 76 at 5). Resolution of this issuewhether the Plaintiff's evidence is sufficient as a matter of lawrequires a summary judgment analysis. Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). More importantly, however, the Plaintiff's motion "does not require any rulings relating to the admissibility of evidence at trial." *Louzon,* 718 F.3d at 561.

Finally, notwithstanding the guidance by the Sixth Circuit in *Louzon,* the Scheduling Order from the Court which governs this matter mandates that all dispositive motions must be filed on or before January 27, 2012. (Text only Order, December 15, 2011). In short, nearly two years has passed and the Plaintiff has failed to offer any explanation as to why the Court should accept her grossly tardy filing. *See Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir.2003) (quoting Fed.R.Civ.P. 16, 1983 committee's notes) ("[A] court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' ") As such, the Court denies the Plaintiff's motion.

### 2. *Motions Seeking Judicial Notice of Certain Records*

*13 Both parties have requested the Court to take judicial notice of certain statutes, regulations, and publications. More specifically, the Plaintiff has asked the Court to take judicial notice of certain passages within (1) 40 C.F.R 61; (2) a U.S. Department of Labor's Occupational Safety and Health Administration publication, "Cancer in the Rubber Industry"; (3) a California Department of Health Services publication," Health Effects of Benzene: Part B; and (4) the transcript from a United States Senate hearing on April 6–7, 1971.

On the other hand, the Defendant's numerous requests can be grouped into the following general categories: (1) federal statutes and regulations; (2) Michigan statutes; (3) *Industrial*

*Union Department, AGL–CIO v. American Petroleum Institute, et al.,* 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980); (4) publications from the Environmental Protection Agency, U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry, and the National Institute for Occupational Safety and Health; and (5) publications from the following institutions: World Health Organization, International Agency for Research on Cancer, American Conference of Industrial Hygienists, and the American National Standard for Hazardous Industrial Chemicals.[10]

Under Federal Rule of Evidence 201(b), "[t]he Court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Public records and government documents are generally considered "not to be subject to reasonable dispute." *U.S. ex rel. Dingle v. BioPort Corp.,* 270 F.Supp.2d 968, 971 (W.D.Mich.2003) *aff'd sub nom. Dingle v. Bioport Corp.,* 388 F.3d 209 (6th Cir.2004) (citations omitted). This includes public records and government documents available from reliable sources on the Internet. *See, e.g., Grimes v. Navigant Consulting, Inc.,* 185 F.Supp.2d 906, 913 (N.D.Ill.2002) (taking judicial notice of stock prices posted on website).

In her motion, the Plaintiff has asked the Court to take judicial notice of four isolated comments from the EPA, OSHA, California Department of Health Services, and the U.S. Senate. The Court notes that the Plaintiff's approach limiting her request to four specific passages without regard to the broader surrounding context is, on its face, highly suspect. Indeed, even assuming, *arguendo,* that the sources in question were of the type and quality typically endorsed by Rule 201, taking judicial notice of only selected excerpts requires the Court to ignore other provisions which may have a bearing on the facts. *See United States v. Judge,* 846 F.2d 274, 276 (5th Cir.1988) (denying request to take judicial notice of select portions of DEA manual). The Court will thus consider the entirety of the source material from which the proffered statements originated, taking judicial notice of the entire publication or nothing at all.

*14 Pursuant to 44 U.S.C. § 1507, "[t]he contents of the Federal Register shall be judicially noticed...." As such, the Court grants the Plaintiff's request with respect to the entirety of 40 C.F.R 61. *See* (ECF No. 117 at Exhibit B). Likewise, the Court agrees that "OSHA regulations are subject to judicial notice" *City of Wichita, Kan. v. U.S. Gypsum Co.,* 72 F.3d 1491, 1496 (10th Cir.1996), and thus accepts the publication appended to the Plaintiff's motion at Exhibit C: namely, "Cancer in the Rubber Industry: The Risks and What You Can Do About Them." As for the epidemiological study undertaken by the California Department of Health Services, however, the Plaintiff offers nothing beyond the blanket assertion that "[i]t is not uncommon for Courts to take judicial notice of such items as official reports ...." in support of her assertion that the accuracy of this particular study cannot reasonably be questioned. (ECF No. 117 at 11). Moreover, the Plaintiff has failed to provide the Court with a copy of the entire report, attaching thereto only "Part B" to her motion. Finding that the Plaintiff has not provided the Court with any confidence in the credibility or the reliability of this publication, the Court declines to take judicial notice of Exhibit D to her motion. Finally, the Court is likewise not obliged to take judicial notice of the U.S. Senate hearing, which as noted above, has been attached as Exhibit E to the Plaintiff's motion. Although the fact that the hearing took place may not be open to dispute, "the contents of [the] testimony, particularly when offered for the truth of the matters asserted, evince considerable dispute." *Ridenour v. Collins,* 692 F.Supp.2d 827, 830 (S.D.Ohio 2010) (refusing to take judicial notice of testimony elicited during Ohio Senate committee hearing).

Prior to addressing the six broad categories of evidence tendered by the Defendant, the Court notes that while this motion includes nearly seventy individual offerings-totaling well over two thousand pages of records-there is less than a single page of briefing dedicated to an analysis of the underlying subject matter. *See* (ECF No. 168 at 7). As stated, "[i]n order for a court to take judicial notice of a fact, a party must supply a reliable source of verification for the fact." *Pearce v. Faurecia Exhaust Sys., Inc.,* WL 2884748. *6 (S.D.Ohio July 13, 2012) *aff'd,* 529 F. App'x 454 (6th Cir.2013). In light of the Defendant's utter failure to provide the Court with an ample discussion-let alone any authority in support of its voluminous request, the Court must and will refuse to take judicial notice of all forms of evidence that cannot "be accurately and readily determined." Fed.R.Evid. 201. Operating under this understanding, the Court holds as follows:

**a.** *Group 1–Federal statutes and regulations*
Pursuant to 44 U.S.C. § 1507, the Court grants the Defendant's request to take judicial notice of the federal regulations in

Exhibits 9–14, 16–21 and 23. With respect to the various federal statutes in the Defendant's request, the Court notes that "in recent years the terminology of 'judicial notice' has shifted.' " *United States v. Dedman,* 527 F.3d 577, 587 (6th Cir.2008). Indeed, in several modern opinions the Sixth Circuit has cabined the concept of judicial notice to facts alone. *Id.* "The effect of such a semantic move is largely minimal because judges are still entitled-and indeed required-to determine the applicable law, even if that law is the law of other states." *Id.* Thus, "judicial notice is generally not the appropriate means to establish the legal principles governing the case." *Toth v. Grand Trunk R.R.,* 306 F.3d 335, 349 (6th Cir.2002). As such, the Court denies the Defendant's request with respect to exhibits 1–8 and 22.

#### b. *Group 2–Michigan statutes*

*15 For the same reasons identified above, the Court also declines to take judicial notice of all Michigan statutes encompassed within the Defendant's request, namely: Exhibits 55–68.

#### c. *Group 3–Industrial Union Department, AGL–CIO v. American Petroleum Institute, et al*

The Defendant requests the Court to take judicial notice of a Supreme Court case decided in 1980. "[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979). Finding no direct relationship between the case proffered by the Defendant and the proceedings currently before the Court, this request is denied as it relates to Exhibit 15.

#### d. *Group 4–Government Publications*

The Defendant proffers several reports and publications from a number of different governmental bodies. While courts are generally willing to take judicial notice of data and pronouncements issued by the federal government, such as Environmental Protection Agency research (*Nebraska v. EPA,* 331 F.3d 995, 998 n. 3 (D.C.Cir.2003)); State Department travel warnings (*Parsons v. United Tech. Corp.,* 243 Conn.66, 700 A.2d 655, 665 n.18 (Conn.1997)); and a federal fisheries management plan approved by formal rule (*City of Charleston v. A Fisherman's Best Inc.,* 310 F.3d 155, 172 (4th Cir.2002), *cert. denied,* 539 U.S. 926, 123 S.Ct. 2573, 156 L.Ed.2d 602 (2003)), the Defendant has failed to proffer any authority to the Court which even suggests that these particular publications satisfy the minimum requirements set forth under Rule 201. Moreover, the Court is unable to determine if it has been provided with full and complete copies of each of the sources grouped under this category. As such, the Court declines to take judicial notice of Exhibits 24–25, 34–37, and 44–47.

#### e. *Group 5—International and commercial publications*

The documents in this category hailing from international organizations and private agencies are arguably even less reliable than those identified under Group 4. Once again the Defendant has failed to offer any legitimate argument which suggests that the documents within this group are of the type and character that should be formally recognized by the Court based upon their individual or collective trustworthiness. Accordingly, the Court declines to take judicial notice of Exhibits 26–33, 38–43, and 48–54.

### III.

For the reasons explained above, the Court holds as follows:

1. ECF Nos: 76, 78–79, 81–87, 91, 94–96, 100–102, 104–107, and 110–111 are denied.

2. ECF Nos: 88, 90, 97, 99, 108, 109, and 114 are granted to the extent that this directive is consistent with the opinion of the Court; and

3. ECF Nos: 89, 103, 112–113, 117, and 168 are granted in part and denied in part consistent with the Court's opinion.

*16 IT IS SO ORDERED.

Footnotes

1     The Court has interchanged "Defendant" and "Safety-Kleen" without any intention of giving emphasis or significance to the arguments or the positions of either party in this controversy.

| | |
|---|---|
| 2 | The Court has interpreted the Plaintiff's claim for strict liability (which is not recognized as an enforceable tort under Michigan law) as a design defect claim in product liability. (ECF No. 57 at 11). |
| 3 | On November 4, 2013, the Court referred six other motions in limine to Magistrate Judge Mark A. Randon. (ECF No. 123). These motions concerned various *Daubert* challenges and related objections to anticipated expert testimony. |
| 4 | The motions that are currently under consideration are as follows: (1) by the Plaintiff, ECF Nos: 76, 78, 79, 81–92, 94–97, and 117; and (2) by the Defendant, ECF Nos: 99–114, and 168. |
| 5 | *See* (ECF No. 151 at Ex. C–D). |
| 6 | The Plaintiff alleges that all of the witnesses are located outside of the Court's subpoena power. (ECF No. 141 at 4). |
| 7 | Note further that the Defendant's attempt to analogize the two actions at issue in *Harville v. Vanderbilt University, Inc.*, 95 Fed. Appx. 719, 725 (6th Cir.2003)one being a child protection proceeding filed by the state and the other a civil tort liability suit against a universityis simply without merit. |
| 8 | 42 U.S.C. § 6901 et seq. |
| 9 | By way of example, the Plaintiff specifically notes that if " Safety–Kleen [had] provided a cancer warning because of the perchloroethylene content of the solvent, the warning would also have served to warn of the cancer hazard of *benzene.* " (ECF No. 143 at 6) (emphasis added). The only warning necessary to provide notice of the alleged carcinogenic effect of benzene is the benzene warning itself. |
| 10 | The Court notes that the Defendant's motion is unopposed. |

Case: 1:08-cv-02755-DCN Doc #: 243-2 Filed: 10/08/14 12 of 15. PageID #: 13891

American Home Assur. Co. v. Greater Omaha Packing Co., Inc., Not Reported in...
2014 WL 3661485

2014 WL 3661485
Only the Westlaw citation is currently available.
United States District Court,
D. Nebraska.

AMERICAN HOME ASSURANCE COMPANY
and Cargill Meat Solutions Corporation, Plaintiffs,
v.
GREATER OMAHA PACKING
COMPANY, INC., Defendant.

No. 8:11CV270.  |  Signed July 22, 2014.

**Attorneys and Law Firms**

Thomas A. Grennan, Gross, Welch Law Firm, Omaha, NE, for Plaintiff.

David J. Stubstad, Jordan W. Adam, Michael F. Coyle, Patrick S. Cooper, Fraser, Stryker Law Firm, Omaha, NE, for Defendant.

### MEMORANDUM AND ORDER

LYLE E. STROM, Senior District Judge.

*1 This matter is before the Court on plaintiff Cargill Meat Solution's ("Cargill") motion to exclude certain invoice terms and conditions that defendant Greater Omaha Packing Company ("GOPAC") seeks to offer at trial (Filing No. 480).

### I. Background

GOPAC started selling beef to Cargill as part of Cargill's "approved supplier program" in 2007. This program involved a specific contract between the parties that included specific guarantees that the shipments would be—among other things—"not adulterated" and "able to be legally transported or sold." The agreement also provided for damages "that are a direct and proximate result of [GOPAC]'s actions." In the fall of 2007, a substantial amount of beef traced to Cargill was recalled due to multiple instances of consumers contracting E. coli. Cargill alleges that the tainted meat was supplied to Cargill by GOPAC and has brought suit on the basis of the explicit guarantee in the parties' contract as well as implied warranty of merchantability and implied warranty of fitness for a particular purpose.

The present motion involves invoices that GOPAC claims to have sent to Cargill contemporaneous to every shipment of meat—some 350 up to and including the allegedly contaminated shipment. Said invoices included a page entitled "TERMS AND CONDITIONS OF SALE" that states "THIS WARRANTY IS THE EXCLUSIVE WARRANTY PROVIDED AND IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, CONDITION, OR FITNESS FOR A PARTICULAR PURPOSE or use." The invoice also limits GOPAC's liability to the price of the goods sold and claims to be the exclusive agreement regarding the sale. Cargill claims not to have received any such invoices and produced no such invoices in response to discovery requests. Cargill also asserts that discovery served on other GOPAC customers did not yield any invoices. The parties also dispute whether it was GOPAC's policy to send the invoices before, after, or contemporaneously with the shipments of product—an act that would constitute full performance of the contract.

### II. Analysis

As a preliminary matter, GOPAC argues that the motion in limine to exclude the invoices should be treated as a late-filed motion for summary judgment because it seeks the resolution of legal issues outside of simple relevance calculations. The substance of the motion will determine whether the Court will construe it as motion for summary judgment or a motion in limine. *See Bliss v. BNSF Rwy. Co.,* No. 4:12CV3019, 2013 WL 5570231, at *2 (D.Neb. Oct. 9, 2013). "A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.' " *Id.* (citing *Louzon v. Ford Motor Co.,* 718 F.3d 556, 561 (6th Cir.2013). "A motion in limine is used 'to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions;' in contrast, a motion for summary judgment is a mechanism for resolving non-evidentiary matters prior to trial." *Id.*

*2 Cargill argues that the invoices are non-probative and prejudicial because the disclaimers contained therein are ineffective. However, the sole reason GOPAC intends to submit the invoices is to prove its affirmative defense against the warranty claims. Thus, in order for the Court to determine whether the invoices are relevant, the Court must do more than simply weigh the probative value against the potential for prejudice. Rather, Cargill asks that the Court to resolve a legal issue that is central to the merits of the case: whether the warranties are effective and, in turn, whether GOPAC's

Case: 1:08-cv-02755-DCN Doc #: 243-2 Filed: 10/08/14 13 of 15. PageID #: 13892

American Home Assur. Co. v. Greater Omaha Packing Co., Inc., Not Reported in...
2014 WL 3661485

affirmative defense is valid. The resolution of such legal issues is the purpose and function of summary judgment, and the deadline for summary judgment motions has passed. Further, whether the disclaimers are fully effective depends on certain facts, some of which are contested and some of which have not been fully developed for the Court. At this point in the proceedings, the effectiveness of the disclaimers is an issue best left for resolution at trial. Accordingly,

IT IS ORDERED that plaintiff's motion is denied.

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:08-cv-02755-DCN Doc #: 243-2 Filed: 10/08/14 14 of 15. PageID #: 13893

American Home Assur. Co. v. Greater Omaha Packing Co., Inc., Not Reported in...
2014 WL 2112865

2014 WL 2112865
Only the Westlaw citation is currently available.
United States District Court,
D. Nebraska.

AMERICAN HOME ASSURANCE COMPANY
and Cargill Meat Solutions Corporation, Plaintiffs,
v.
GREATER OMAHA PACKING
COMPANY, INC., Defendant.

No. 8:11CV270.  |  Signed May 20, 2014.

**Attorneys and Law Firms**

Thomas A. Grennan, Gross, Welch Law Firm, Omaha, NE, for Plaintiffs.

David J. Stubstad, Jordan W. Adam, Michael F. Coyle, Patrick S. Cooper, Fraser, Stryker Law Firm, Omaha, NE, for Defendant.

### MEMORANDUM AND ORDER

LYLE E. STROM, Senior District Judge.

*1 This matter is before the Court on the motion (Filing No. *311* ) of the plaintiff Cargill to exclude evidence that Cargill was a "contributing cause" for the purpose of disclaiming GOPAC's warranties. Plaintiff Cargill has filed an accompanying brief (Filing No. 312) and index of evidence (Filing No. 313). The defendant filed a brief (Filing No. *399* ) in opposition to the motion. Cargill then replied with a brief (Filing No. 409) and index of evidence (Filing No. *410* ) in support of its motion. The Court will deny the motion.

### I. FACTUAL BACKGROUND

An *E. coli* outbreak occurred in 2007 and gravely injured several people. An investigation traced the *E. coli* back to a ground-beef patty manufacturer, Cargill Meat Solutions, Corp. ("Cargill"), who is the plaintiff in this case along with American Home Assurance Company ("Assurance"). The plaintiffs have brought various contract claims against the defendant, Greater Omaha Packing, Corp. ("GOPAC"). Essentially, the plaintiffs claim that GOPAC sold Cargill meat contaminated with the *E. coli* strain in violation of a contract between GOPAC and Cargill.

Cargill used four sources of beef to produce the ground beef patties in question. Those sources were Lone Star Beef Processors, L.P. ("Lone Star"), Beef Products, Inc. ("BPI"), Frigorifico PUL ("Frigorifico"), and GOPAC. After production, Cargill distributed the patties across the United States. In the Fall of 2007, multiple people became ill due to *E. coli* O157:H7 (Filing Nos. 328, at 1; 278, at 3). The Center for Disease Control ("CDC") began to track the illness. The CDC compiled a "Line List" which comprised 54 people affected by the *E. coli* outbreak. After identifying 54 people affected by the *E. coli* strain, the CDC found that 27 of them reported exposure to Cargill's burgers (Filing No. 278, at 4). Cargill recalled approximately 845,000 pounds of product and has settled numerous claims against it with those injured by the contaminated meat.

At the center of the current motion is a one-page Guarantee between Cargill and GOPAC. Filing No. *313–1*, at 2. It is titled "General and Continuing Pure Food/Hold Harmless Guarantee." GOPAC guaranteed to Cargill that all articles, comprising each shipment or other delivery would not be adulterated, which included being free of *E. coli*. GOPAC further guaranteed that its articles would be legally transportable or sold. The Guarantee also stated it would be "void in the event any act or omission by [Cargill] shall be a **contributing cause** to any loss otherwise covered by the terms of this Guarantee."*Id.* (emphasis added).

In preparation for trial, GOPAC has retained several expert witnesses to testify that Cargill was a contributing cause to the *E. coli* outbreak. Cargill moves under Federal Rules of Evidence Rules 402 and 403 to exclude all evidence of Cargill's acts or omissions after GOPAC delivered its product to Cargill (Filing No. 311, at ¶ 1, ¶ 3). First, the Court addresses the scope of its analysis.

### II. LAW

*2 The Court must evaluate whether Cargill's pending motion is merely a motion *in limine* or a motion for summary judgment. Though Cargill labeled the motion as one "*in limine*," the substance of the motion will determine whether the Court will construe it as such. *See Bliss v. BNSF Rwy. Co.,* No. 4:12cv3019, 2013 WL 5570231, at *2 (D.Neb. Oct. 9, 2013). "A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Id.* (citing *Louzon v. Ford Motor Co.,* 718 F.3d 556, 561 (6th Cir.2013)."A motion in limine is used 'to narrow the evidentiary issues for trial and to eliminate unnecessary trial

Case: 1:08-cv-02755-DCN Doc #: 243-2 Filed: 10/08/14 15 of 15. PageID #: 13894

American Home Assur. Co. v. Greater Omaha Packing Co., Inc., Not Reported in...
2014 WL 2112865

interruptions;' in contrast, a motion for summary judgment is a mechanism for resolving non-evidentiary matters prior to trial."*Id.* Circuit courts have reversed district courts for granting *in limine* motions to bar the presentation of all evidence in support of the non-moving party's affirmative defenses in contravention of the procedural protections of the federal rules of civil procedure regarding summary judgment. *Id.; Louzon,* 718 F.3d at 562 (citing *Meyer Intellectual Props. Ltd. v. Bodum, Inc.,* 690 F.3d 1354, 1378 (Fed.Cir.2012); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069–70 (3d Cir.1990); *Mid–Am. Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1363 (7th Cir.1996)). Therefore, the denial of this motion turns on whether Cargill's motion seeks to exclude all evidence of one of GOPAC's affirmative defenses.

### III. DISCUSSION

GOPAC has asserted the affirmative defense that "[t]o the extent that the Guarantee alleged in Plaintiffs' Complaint existed, such Guarantee is void for reasons including, but not limited to, the acts or omissions of Plaintiffs and/or their Affiliates as set forth therein."Filing No. 40, ¶ 14. This affirmative defense references the Guarantee and includes evidence of Cargill's failure to use finished-product testing,[1] Cargill's production and shipment of the burgers, Cargill's use of dated GOPAC product, and Cargill's failure to irradiate its burgers. Filing No. 399, at 9–10. Cargill has moved to exclude "any evidence of Carill's 'acts or omissions' " and is therefore a motion for summary judgment.

The close for motions for summary judgment in this case was March 3, 2014. Filing No. 18, at 2. Cargill filed the instant motion on March 10, 2014—seven days after the deadline for summary judgment. Filing No. 311. Therefore, the motion was improper and untimely. Because the Court cannot exclude all evidence of GOPAC affirmative defense in a motion *in limine,* the Court will deny the motion. *See Bliss v. BNSF Rwy. Co.,* No. 4:12cv3019, 2013 WL 5570231, at *2.

IT IS ORDERED that plaintiff Cargill's motion is denied.

Footnotes

1  Cargill has filed a separate motion *in limine* to exclude specific evidence regarding finished-product testing. Filing No. 301.

End of Document                                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.