**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **HODELL-NATCO INDUSTRIES, INC.** | ) | |
| | ) | **CASE NO. 1:08 CV 2755** |
| **Plaintiff,** | ) | |
| | ) | **JUDGE LESLEY WELLS** |
| **v.** | ) | |
| | ) | |
| **SAP AMERICA, INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**JOINT TRIAL BRIEF OF PLAINTIFF HODELL-NATCO
INDUSTRIES, INC. AND DEFENDANTS SAP AMERICA, INC. AND SAP AG**

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), and Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), by and through their undersigned counsel, hereby submit this Joint Trial Brief.  Defendants LSi-Lowery Systems, Inc. ("LSi") and The IBIS Group, Inc. ("IBIS") are not presently represented by counsel and have not participated in the preparation of this Joint Trial Brief.

Although much of the factual background of this case is disputed among the parties, Hodell and SAP have attempted to fashion a Joint Trial Brief that will inform the Court regarding the general nature of this dispute and the claims and defenses asserted as well as provide a general description of the facts underlying those claims and defenses.  Hodell and SAP have not completed their preparation for trial, and therefore reserve the right to modify, supplement, or amend the information provided through this Joint Trial Brief as the case is prepared for trial and in response to any Orders of this Court relating to outstanding motions.

I.    **BACKGROUND INFORMATION**

   A.    **Trial Counsel**

Hodell will be represented at trial by the following attorneys from Koehler Neal LLC,

3330 Erieview Tower, 1301 East Ninth Street, Cleveland, Ohio 44114:

- P. Wesley Lambert, wlambert@koehlerneal.com, 216.539.9375; (f) (216) 916-4369

- James F. Koehler, jkoehler@koehlerneal.com, 216.539.9370; (f) 216-916-4369

- Timothy J. Fitzgerald; tfitzgerald@koehlerneal.com, 216.539.9370; (f) 216-916-4369

SAP will be represented at trial by the following attorneys from Drinker Biddle & Reath

LLP, One Logan Square, Suite 2000, Philadelphia, Pennsylvania 19103, each of whom is

admitted *pro hac vice*:

- Michael M. Miller; michael.miller@dbr.com; (215) 988-2782; (f) (215) 988-2757

- Gregory J. Star; gregory.star@dbr.com; (215) 988-2734; (f) (215) 988-2757

- Joseph M. Kelleher; joseph.kelleher@dbr.com; (215) 988-2863; (f) (215) 988-2757

No counsel is currently entered for LSi or IBIS.

   B.    **Nature of the Action**

This is an action by Hodell arising from its dissatisfaction with the performance of

enterprise resource planning ("ERP") software that was intended to run Hodell's financial, sales

management, and other related functions.  Hodell contends, *inter alia*, that the software at issue

failed to perform certain functions as warranted and that the software overall failed to ever

perform from a speed and functionality perspective in a manner that would be acceptable to

Hodell.  Hodell contends that the software caused Hodell to suffer damages.

Hodell asserts the following (remaining) claims as to SAP America and SAP AG: (1) Count 1: fraudulent inducement; (2) Count 2: fraud; (3) Count 3: breach of contract (against SAP America only); and (4) Count 5: negligent misrepresentation.

Hodell asserts the following (remaining) claims as to LSi and IBIS: (1) Count 1: fraudulent inducement; (2) Count 2: fraud; (3) Count 3: breach of contract; and (4) Count 5: negligent misrepresentation.

LSi and IBIS asserted a counterclaim against Hodell and a cross-claim against SAP; however, those claims have not been pursued and appear to have been abandoned. SAP has asserted a counterclaim and cross-claim for indemnification against LSi and IBIS.

### C.    Jurisdiction

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and no defendant is a citizen of the same state as Hodell. SAP does not contest jurisdiction.

### D.    Joint Stipulation of Facts

The following uncontested facts are to be presented at trial:

1. Hodell is a wholesaler of fastener and chain products.

2. Otto Reidl is the CEO of Hodell, and his son, Kevin Reidl, is the company's president.

3. Prior to the events of this suit, Hodell had been using a software product called FACTS in combination with two add-on software products, In-Flight and Radio Beacon.

4. These software products provided invoicing, billing, and accounting functions for Hodell's business.

5. IBIS and Mr. Van Leeuwen provided software support to Hodell for several years prior to the events that give rise to this case in relation to Hodell's prior FACTS software system.

6. In or about 2003, Hodell began considering replacing FACTS.

7. In early 2003, Hodell's CEO Otto Reidl attended a conference in Cleveland, Ohio where he learned about software called Business One. (SAP disputes having personal

knowledge as to whether Mr. Reidl attended such a conference, but does not presently plan to contest this fact.)

8.    Throughout 2003 and 2004, Hodell received materials which, *inter alia*, described Business One as a software solution for small and midsize businesses.  The information Hodell received in 2003 included marketing materials which described generally that Business One "help[ed] emerging businesses, from those with ten to several hundred employees" and that "whether you have 5 employees or 500, the solution helps emerging businesses streamline their operational and managerial processes."  (SAP disputes having personal knowledge of whether Hodell received these materials, but does not presently plan to contest this fact.)

9.    On December 20, 2004, Hodell executed a contract called the "Development Agreement Between Hodell-Natco Industries, Inc., The IBIS Group, Inc., a wholly owned company of LSi-Lowery Systems Inc. and LSi-Lowery Systems Inc (LSi)" (the "Development Agreement").

10.   Two add-on software products known as In-Flight Enterprise ("In-Flight") and Radio Beacon were integrated with Business One to provide additional functionality.

11.   On or about December 23, 2005, Hodell executed an "SAP Business One Software License Agreement" with SAP America. (the "License Agreement").

12.   Hodell went live on SAP Business One, In-Flight and Radio Beacon in March 2007.

13.   Hodell was not satisfied with the performance of SAP Business One.

14.   In March 2009, Hodell went live on a different software platform called Prophet 21 that was developed and implemented by a company called Activant, now known as Epicor.

## II.    <u>JOINT STATEMENT OF FACTS</u>

Per the Court's Trial Order, the following is an overview of the facts Hodell believes it will be able to establish at trial to support its claims against SAP in conjunction with a general overview of the witnesses and exhibits that may be used to support these facts.[1]  Because of the volume of record evidence that has been gathered in discovery, the following overview is not intended to be all-inclusive, and Hodell reserves the right to supplement or amend its statement

---

[1] Because many of the facts that would be used to support Hodell's claims against SAP would apply equally to its claims against LSi and IBIS, a separate factual recitation is not restated herein with respect to LSi and IBIS. Further, LSi and IBIS are not expected to defend the claims against them at trial, and therefore for the sake of judicial economy Hodell has not set forth a separate section of facts with respect to its claims against LSi and IBIS. The factual background for these claims is set forth in Hodell's Brief in Opposition to LSi's and IBIS's Motion for Summary Judgment.  [ECF #158],

of the facts and evidence it believes support its claims in preparation for trial or at trial.  Subject to the foregoing, Hodell submits it will be able to establish the following (which SAP generally disputes):

1. After using FACTS as its ERP software for many years, Hodell commenced a search for a software product that provided the necessary integrated financial and sales management capabilities for its growing business.  [O. Reidl; K. Reidl]

2. Hodell required software that was capable of supporting its then-existing 80 users and the growth Hodell estimated for the new software's useful life, expected to be 300 users.  [O. Reidl, Van Leeuwen; K. Reidl].

3. Hodell communicated its user capacity needs and volume requirements to all potential vendors.  [O. Reidl; K. Reidl; Van Leeuwen; Lowery].

4. Hodell was told through marketing literature published and/or approved by SAP, as well as orally by representatives of IBIS and LSi, that Business One was appropriate for companies with 300 to 500 users and provided trouble-free customization.  [O. Reidl; K. Reidl; Lowery; Van Leeuwen; Dep. Exhibits 38, 314; Exhibit A to ECF #155].

5. LSi relied upon information provided by representatives of SAP when selling Business One to Hodell, including representations by SAP employees that Business One was appropriate for companies with 300 to 500 users. [Lowery; Van Leeuwen; Woodrum].

6. SAP was aware that these representations were being made to Hodell.  [Lowery; Van Leeuwen; Ashley; Exhibit 71, 178, 292, 177].

7. Hodell reasonably believed that LSi was acting as SAP's agent (either as an express agent or as an apparent agent) when making representations regarding Business One. [O. Reidl;

K. Reidl; Lowery; Van Leeuwen; Ashley; Kraus; Dep. Exhibits 9, 29, 11, 81, 214, 73, 74, 425 ECF #30].

8. Hodell justifiably relied upon statements from SAP and LSi in deciding to purchase Business One and related software, in undertaking other significant expenses associated with acquiring and implementing the software, and foregoing other software implementation opportunities.  [K. Reidl; O. Reidl; Lowery; Van Leeuwen].

9. Hodell purchased Business One in two separate transactions:  (1) a purchase of 80 licenses in December 2004; and (2) a purchase of 40 licenses in December 2005.  [O. Reidl; K. Reidl].

10. Hodell made immediate payments in December 2004 and through 2005 towards the 80 licenses it purchased through the Development Agreement.  [O. Reidl; K. Reidl].

11. When Hodell signed the License Agreement in December 2005, it was told that the License Agreement applied only with respect to the 40 licenses it was then-purchasing pursuant to a special pricing offer.  [K. Reidl; Dep. Exhibit 29].

12. SAP Business One could not accommodate the 120 users (or even initial 80) that Hodell purchased, was certainly not capable of scaling to 300 users, and could not be easily integrated with add-on products.  [Lowery; Van Leeuwen; Guembel; Mehnert-Meland; Ziv; Dep. Exhibits 141, 69, 77, 159, 160, 402].

13. SAP and/or LSi knew that Business One would not perform adequately based upon Hodell's anticipated user count; and/or SAP and/or LSi knew or were reckless in not knowing that there was a likelihood that Business One would not perform adequately under the conditions in which it was to be deployed at Hodell.  [Guembel; Van Leeuwen; Ziv; Dep. Exhibits 69, 160, 159, 173, 174].

14. Hodell experienced severe performance problems which manifested through non-performing functions of the Business One software and through slow general performance of the software.  [O. Reidl; K. Reidl; Clark; Van Leeuwen; Lowery; Woodrum; Ashley; Kraus; Dep. Exhibits 60, 67; 426].

15. SAP concealed its knowledge during 2007 that Hodell's implementation of Business One was doomed to fail and could not be remedied.  SAP hoped that it would be able to persuade Hodell to remain on Business One so that Hodell could serve as a referenceable customer and not damage Business One's reputation in the United States.  SAP also hoped that it would be able to find a replacement SAP platform to sell to Hodell rather than allow Hodell to move to another company's software.  [K. Reidl; O. Reidl; Lowery; Ashley; Dep. Exhibits 69, 77, 159, 160].

16. Hodell suffered damages arising from costs incurred in purchasing and implementing the software, as well as a result of its inability to service its customers in an efficient manner. Hodell's damages were exacerbated the concealment of SAP and/or LSi of their knowledge that the software would not perform adequately. [O. Reidl; K. Reidl; Dr. Kennedy; Lowery; Woodrum; Dep. Exhibits 89, 161, 160].

Per the Court's Trial Order, the following is an overview of the facts SAP believes it will be able to establish at trial to support its defenses to Hodell's claims in conjunction with a general overview of the witnesses and exhibits that may be used to support these facts.  Because of the volume of record evidence that has been gathered in discovery, the following overview is not intended to be all-inclusive, and SAP reserves the right to supplement or amend its statement of the facts and evidence it believes support its claims in preparation for trial or at trial.  Subject

to the foregoing, SAP submits it will be able to establish the following (which Hodell generally disputes):

1. All of the information Hodell received and considered concerning Business One in 2003 came from Dale Van Leeuwen of IBIS (which had no relationship with SAP), and from individuals at non-party American Express (which promoted its own Business One package different from that at issue in this case).  [O. Reidl; K. Reidl].

2. Hodell had no contact whatsoever with SAP until early 2007.  [O. Reidl].

3. Hodell knew Business One alone was insufficient for its needs and that it required the development of new software by LSi/IBIS, which Hodell knew could impact the success of any future software implementation.  [O. Reidl; D. Van Leeuwen].

4. SAP did not represent, nor did it authorize anyone to represent, to Hodell that Business One was capable of handling Hodell's particular needs or that it would support over 300 users for Hodell specifically.  [D. Kraus; R. Mehnert-Meland].

5. SAP made no representation at all concerning the actual software solution Hodell hired LSi/IBIS to create from scratch, let alone that such non-existent software was or would be capable of supporting any of Hodell's needs.  [Hodell witnesses; D. Kraus; R. Mehnert-Meland].

6. To the extent anyone told Hodell that Business One could specifically support its alleged need for 300 or more users, Hodell was in possession of contrary information from SAP and failed to contact SAP about this or otherwise engage in any appropriate due diligence.  [O. Reidl].

7. Hodell understood the risks involved with a new software development that essentially had to be built from scratch by LSi and IBIS.  To offset this risk, Hodell would profit if

the In-Flight application was later resold to other companies in the chain and fastener industry.  Specifically, Hodell contemplated that if In-Flight was a success and could be resold, Hodell would recover the money it paid to LSi and IBIS to develop In-Flight because Hodell was "taking the risk up front."  [Development Agreement; O. Reidl; K. Reidl].

8.  Hodell entered the Development Agreement with IBIS/LSi with the understanding that Hodell was to receive "unlimited user licenses for In-Flight . . . at no charge" from LSi and IBIS; such licenses were being provided to Hodell for free as payment of restitution stemming from a prior dispute Hodell had with IBIS, which did not involve SAP or SAP software.  [O. Reidl].

9.  LSi executed an "SAP Business One Software Marketing and Distribution Agreement" with SAP America on December 19, 2003.  Through this agreement, LSi became a "reseller" of Business One with authority to market and distribute SAP Business One software.  This agreement further provided that LSi was "an independent contractor and is not an agent, employee, or legal representative of SAP . . . [with] no power or authority to . . . make any guarantees or warranties concerning [Business One] or the delivery thereof, or to make any commitments for SAP or to obligate SAP in any respect whatsoever."  [Marketing Agreement].

10. SAP had no such reseller relationship with IBIS.  On December 31, 2003, IBIS executed a "Limited Term SAP Business One Software Development Kit License" with SAP America.  Through that agreement, IBIS acquired the right to create separate, stand-alone applications that could be used along with Business One.  IBIS had no other contractual

or business relationship with SAP, and IBIS was not authorized to license or sell
Business One software itself.  [Development Kit License].

11. On December 30, 2004, Hodell entered into the "Inflight Enterprise Development
Agreement" with IBIS/LSi.  SAP was not a party to the Development Agreement.  Hodell
hired LSi to develop the In-Flight and Radio Beacon add-ons, integrate those add-ons
with Business One, and implement the overall software solution for Hodell.
[Development Agreement].

12. No SAP software was acquired under the Development Agreement.  Instead, it was
agreed between IBIS/LSi and Hodell that the Business One software would be licensed
from SAP at a later date, and this occurred when Hodell signed a License Agreement
with SAP on December 23, 2005.  [Development Agreement; D. Van Leeuwen; License
Agreement]

13. Pursuant to the License Agreement with SAP America, Hodell: (a) acquired the right to
use SAP's Business One software; (b) was granted a warranty as to the performance of
that software; (c) disclaimed all prior representations and implied warranties; and (d)
agreed to limit SAP's liability in the event the software did not meet the performance
warranty.  [License Agreement; O. Reidl; K. Reidl].

14. Hodell fully understood the terms of the License Agreement and did not contact SAP
with any concerns.  [O. Reidl; K. Reidl].

15. Hodell took delivery of the Business One software after signing the License Agreement
and acquired 80 licenses from SAP America.

16. Hodell and IBIS/LSi mismanaged the development of In-Flight and the Radio Beacon add-ons and otherwise mismanaged the implementation of this software solution.  [B. Hilliard; M. Weissman; J. Woodrum].

17. Among other things, Hodell and IBIS/LSi mismanaged the testing of the software solution, failed to fully and properly stress test the software, failed to maintain a parallel legacy system at go-live, and failed to make a reasonable decision to go-live on the software.  [T. Phillips; M. Weissman; B. Hilliard].

18. The limited stress testing that was performed revealed significant performance issues with the overall software solution and missing functionality in the In-Flight and Radio Beacon add-ons.  Yet Hodell decided to go-live on the software over the recommendation of its IT director.  Neither Hodell nor IBIS/LSi involved SAP in the pre-go-live testing or in the decision to go-live in March 2007.  [T. Phillips; B. Hilliard].

19. In response to Hodell's post-go-live complaints, SAP devoted significant resources and time to resolving Hodell's complaints.  Over the course of 2007, SAP made significant improvements in the performance of the overall solution and was candid in its assessment of the future performance of the solution for Hodell.  [E. Neveux; P. Killingsworth; D. Kraus; G. Ashley; M. Weissman; J. Guagenti].

20. Hodell's performance issues were caused by a variety of factors unrelated to Business One and outside of SAP's control or responsibility, including significant issues with In-Flight, Radio-Beacon, and Hodell's own business processes and overall environment.  [E. Neveux; P. Killingsworth; D. Kraus; G. Ashley; M. Weissman; J. Guagenti; B. Hilliard].

21. SAP contests Hodell's assertion that Business One caused Hodell to suffer any damages.  [G. Osborne].

## III.  STATEMENT OF LAW

### A.  Fraud and Fraudulent Inducement

According to Ohio law, in order to maintain a cause of action for fraud, a plaintiff must demonstrate the following:

(a)  a representation or, where there is a duty to disclose, concealment of a fact;

(b)  which is material to the transaction at hand;

(c)  made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;

(d)  with the intent of misleading another into relying upon it;

(e)  justifiable reliance upon the representation or concealment; and

(f)  a resulting injury proximately caused by the reliance.

[ECF #182:  R&R at p. 7](citing *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 10 Ohio St. 3d 167, 169 (Ohio 1984) and *Magical Farms, Inc. v. Land O'Lakes, Inc.*, 356 Fed. Appx. 795 (6th Cir. 2009)).

To prove fraudulent inducement, a plaintiff must demonstrate the same elements necessary to prove an action for fraud. [ECF #182, R&R at p. 8](citing *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 741 (S.D. Ohio 2009)).

### B.  Negligent Misrepresentation

Under a claim for negligent misrepresentation in Ohio, a defendant who, "in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating

12

the information." [ECF #182, R&R at p. 17](citing *David A. Flynn, Inc. v. GMAC*, 345 Fed. Appx. 974, 977 (6th Cir. 2009) ; *Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 505-06 (6th Cir. 2003)); *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 41 Ohio St. 3d 1, 10 (Ohio 1989)).

Under Ohio law, a claim for negligent misrepresentation must be based on an affirmative false statement. *See Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 506 (6th Cir. 2003) ("[A] negligent misrepresentation claim only lies for an affirmative false statement, not an omission."); *Leal v. Holtvogt*, 702 N.E.2d 1246, 1253 (Ohio Ct. App. 1998); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1269 (Ohio Ct. App. 1996).

\* \* \*

SAP believes that all defendants will be entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 because Hodell cannot satisfy the elements of its fraud/fraudulent inducement or negligent misrepresentation claims because, *inter alia*:

- No false representation of material fact was made by any of the defendants. Hodell contends that it was told that Business One could handle at least 300 users. SAP denies that it made, either directly or indirectly, any such statement to Hodell. In any event, Business One can indeed support companies with more than 300 users, and thus no false statement of fact was made to Hodell.

- There is no actionable misrepresentation based on SAP's advertising literature because that literature was not false, it was not directed specifically to Hodell, and at most contained mere puffery.

- All representations made by SAP about Business One were contained in the License Agreement, which contained an integration clause. Any pre-contractual representations that may have been made to Hodell were merged into and superseded by the License Agreement. The License Agreement is a valid and binding contract between SAP America and Hodell, and it bars Hodell's claims and otherwise precludes Hodell from recovering the damages it seeks.

- Hodell was acquiring multiple software products and hired LSi/IBIS to implement and integrate those products, including the In-Flight add on, which was to be a custom development for Hodell. There is no allegation that any defendant made any

13

representation to Hodell about the integrated solution, and any such representation would merely be a statement of opinion because the integrated solution did not exist at the time.

- None of the defendants actually intended to mislead Hodell.

- To the extent a false representation was made by any defendant, Hodell failed to conduct its own due diligence and otherwise was not justified in relying upon the representation. *See Lucas Ford, LLC v. Ford Motor Credit Co.*, No. 3:09CV451, 2011 U.S. Dist. LEXIS 51141, *10-11 (N.D. Ohio May 12, 2011) (dismissing fraudulent inducement claim where plaintiff "presented no evidence as to its due diligence").

- To the extent a misrepresentation was made to Hodell by LSi and/or IBIS, the SAP defendants deny that they are vicariously liable for such misrepresentation.

- The SAP defendants are not the proper type of defendant for a negligent misrepresentation claim because they are in the business of manufacturing and selling software, and are not in the business of supplying information or advice. Moreover, Hodell did not seek any guidance or advice from SAP, and Hodell admits that its first contact with SAP did not occur until early 2007. *See Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212 (Ohio 1982).

- Hodell's claims are barred because Hodell assumed the risk of any injury arising from any of the defendants' allegedly tortious conduct; alternatively, Hodell was contributorily and/or comparatively negligent, and its claims are either barred or its recovery is limited by its own negligence. Specifically, Hodell was aware through testing of the integrated software solution that there were performance issues. Hodell was also aware that those performance issues were not resolved. Hodell was advised by its own subject matter experts not to go live. Yet Hodell proceeded to go-live on the software solution and thus expressly and/or impliedly assumed the risk of any injury and/or was comparatively negligent. *Anderson v. Ceccardi*, 451 N.E.2d 780 (Ohio 1983); *Briere v. Lathrop Co.*, 258 N.E.2d 597 (Ohio 1970).

- No damages were factually or proximately caused by any false representation. Any damages Hodell may have suffered were a result of Hodell's own acts or omissions or the acts or omissions of parties for whom SAP is not responsible. Hodell otherwise failed to mitigate its damages.

- Hodell has otherwise failed to prove damages.

  - Hodell's lost profits damages theory is factually and legally deficient. Under Ohio law, lost profits must be proven with reasonable certainty and must not be remote or speculative. *The ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, 2008 U.S. Dist. LEXIS 84289 at *24-25 (S.D. Ohio Oct. 21, 2008) (citing *Charles R. Combs Trucking, Inc. v. Intern'l Harvester Co.*, 466 N.E.2d 883 (Ohio 1984)). Hodell has not done so.

14

- Lost profits were not in the contemplation of the parties, and Hodell expressly agreed in the License Agreement that it would not be entitled to lost profits or other consequential damages from SAP.

- Hodell's lost profits theory is legally and factually untenable, and its alleged lost profits are remote, speculative, and contradicted by Hodell's own testimony.  *See* SAP's Motion *in Limine* to Preclude the Expert Report and Testimony of G. William Kennedy.

- Ohio law prohibits Hodell from recovering lost profits or other consequential damages on its negligent misrepresentation claim.  The remedies available for negligent misrepresentation are limited to only actual damages.  *The ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, 2008 U.S. Dist. LEXIS 84289, at *22-23 (S.D. Ohio Oct. 21, 2008) (citing *Telxon Corp v. Smart Media of Del., Inc.,* 2005 Ohio 4931, P99 (2005)); *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Management*, 87 Ohio App. 3d 613, 634 (Ohio Ct. App., Cuyahoga County 1993) ("[C]laim for negligent misrepresentation is limited to 'out-of-pocket' losses."); 1-2 Anderson's Ohio Consumer Law § 2.13 (damages for negligent misrepresentation "are limited to out of pocket loss; punitive damages, benefit-of-the-bargain damages, and damages for emotional distress are not recoverable.").

- Hodell's claim for damages stemming from a lost business acquisition is remote and speculative, and Hodell's expert testimony on this theory is inadmissible.  *See* SAP's Motion *in Limine* to Preclude the Expert Report and Testimony of G. William Kennedy.

- Hodell's out-of-pocket cost calculation is incorrect and Hodell's expert testimony on this calculation is inadmissible.  *See* SAP's Motion *in Limine* to Preclude the Expert Report and Testimony of G. William Kennedy

- Hodell's request for punitive damages on its fraud claim fails as a matter of law because punitive damages may be awarded in fraud cases only upon a showing of malice.  The Ohio Supreme Court defines "malice" as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Malone v. Courtyard by Marriott P'ship*, 659 N.E.2d 1242 (1996) (quoting *Preston v. Murty*, 512 N.E.2d 1174 (Ohio 1987)).

- There is no evidence in the record that any defendant acted with malice, and no reasonable fact finder could conclude that malice existed.  SAP asserts that the jury in this case should not be given an instruction on punitive damages because the facts simply do not support such an instruction, and giving a punitive damages instruction would unfairly prejudice SAP and the other defendants and lead the jury to believe that there may have been malicious conduct.  *See Logsdon v. Graham Ford Co.*, 54 Ohio St. 2d 336, 340 (Ohio 1978) (finding that defendant concealed a material fact but that it was an error for the trial court to instruct the

15

jury on punitive damages because there was insufficient evidence of malice or wanton misconduct).

- Furthermore, Hodell expressly agreed in the License Agreement that it would not be entitled to punitive damages from SAP.

As to certain of these defenses, Hodell expressly denies that they may be asserted in this case as the Court has already previously ruled that SAP's representations were not puffery, that Hodell's damages claims are not limited by the License Agreement to the extent the agreement was procured by fraud, that Hodell's damages resulting from the Development Agreement transaction are not barred by the License Agreement (a point which Hodell believes SAP has not contested in any of its briefs), that SAP is not a proper defendant for a negligent misrepresentation claim, and that the pre-contractual misrepresentations giving rise to Hodell's fraud claims were not merged into the License Agreement.

Hodell disputes the remaining arguments raised by SAP for the reasons stated in Hodell's Brief in Opposition to the SAP Defendants' Motion for Summary Judgment [ECF #162] and disputes the assertions made by SAP relating to Hodell's recoverable damages.

### C.   **Hodell's Claim for Punitive Damages**

Hodell asserts that it is entitled to recover punitive damages due to the fraudulent conduct in this case. *Stuckey v. Online Resources Corp.*, 909 F.Supp.2d 912, 948 (S.D. Ohio 2012)(citations omitted); *Onyx Environmental Services, LLC v. Maison*, 407 F.Supp.2d 874, 880 (N.D. Ohio 2005) (citing *Locafrance U.S. Corp. v. Interstate Distribution Services, Inc.*, 6 Ohio St.3d 198, 202, 451 N.E.2d 1222 (1983).

Ohio Revised Code § 2315.21 governs the award of punitive damages in "tort actions," which the statute defines as "civil action[s] for damages for injury or loss to person or property." O.R.C. § 2315.21(A)(1).  Hodell assert that under the statute, punitive damages are recoverable from a defendant in a tort action if both of the following requirements are met:

16

(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

(2) The trier of fact has returned a verdict or has made a determination pursuant to (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.

O.R.C. § 2315.21(C)(1)-(2).

In cases alleging fraud, punitive damages are recoverable where the fraud is aggravated by the existence of malice or ill will or the wrongdoing is particularly gross or egregious. *Cronkelton v. Guaranteed Constr. Servs.*, 2013-Ohio-328, 988 N.E.2d 656, ¶30 (Ohio App. 2013). Although "malice" is not defined by the statute, in *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus (Ohio 1987), the Ohio Supreme Court defined malice as "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge" or, alternatively, "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *See also Digital & Analog Design Corp. v. North Supply Co.*, 44 Ohio St.3d 36, 540 N.E.2d 1358 (Ohio 1989),

As set forth above and in SAP's Motion *in Limine* No. 3, SAP believes Hodell's request for punitive damages on its fraud claim fails as a matter of law and that the jury should not be informed about or instructed on punitive damages. Hodell has opposed that Motion and asserts that it should be denied on the basis that it is procedurally improper because, *inter alia*, its claim for punitive damages may not be decided upon a motion *in limine*. [ECF #237].

**D.     Hodell's Claim for Breach of Express Warranty Against SAP America (Count III of the First Amended Complaint)**

Hodell asserts that SAP America breached an express warranty contained at Section 7.1 of the License Agreement between Hodell and SAP America. Section 7.1 of the License Agreement states:

> 7.1 Warranty. SAP [America] warrants that the [Business One] Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery. The warranty shall not apply: (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database.  SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.

SAP America believes it will be entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 because Hodell cannot prove the above-mentioned elements because, *inter alia*:

- Hodell must prove by the greater weight of the evidence that the Business One software it received from SAP failed to conform to SAP's "Documentation," but Hodell will offer no such evidence at trial.  *McLeod Addictive Disease Ctr., Inc. v. Wildata Sys. Group, Inc.*, 2010 U.S. Dist. LEXIS 20643, *19 (S.D. Ohio Mar. 8, 2010) (granting summary judgment where "[p]laintiff has not articulated how the software fails to conform to published specifications").

- Hodell can only recover for the breach of an express warranty where the alleged defect is discovered during the warranty period.  The License Agreement provides a six-month warranty period.  Hodell received the Business One software in 2005 and did not raise any complaint with SAP until 2007, more than six months after the software was delivered.  *M. L. Simmons v. Bellman Plumbing*, NO. 67832, 1995 Ohio App. LEXIS 2831, *8-9 (Ohio Ct. App. July 6, 1995) (one can only recover for breach of express warranty if defects discovered within the warranty period; otherwise a general warranty of fitness would be created).

- Hodell otherwise cannot prevail on its claim because Hodell received and accepted the Business One software and Hodell did not reject the Business One software within a reasonable time or within the six-month warranty period.  Acceptance of the Business One software will exist if:

> (a) Hodell had a reasonable opportunity to inspect Business One and after such reasonable opportunity, Hodell signified to SAP America by words or conduct that the Business One software conformed to the contract or that Hodell would keep the Business One software in spite of any non-conformity; or

18

(b) Hodell had a reasonable opportunity to inspect the Business One software and after such reasonable opportunity, Hodell failed to make an effective rejection of the Business One software.  In order to make an effective rejection, Hodell must have, within a reasonable time after SAP made the Business One software available, notified SAP that Hodell is rejecting the goods.  What is a "reasonable time" depends on all the facts and circumstances in evidence.

See Ohio Rev. Code § 1302.64.

- Hodell did not provide SAP America with timely notice of a breach.  A buyer who has accepted goods must notify the seller of any claimed breach by the seller or be barred from any recovery.  The notice may be written or oral.  The notice is sufficient if it alerts the seller that there is a problem with the goods.  It need not state all that is wrong with the goods.  The notice must be given by the buyer within a reasonable time after the buyer should have discovered the breach.  Ohio Rev. Code § 1302.65(C)(1).

- Even if there was a breach, Hodell's damages are either precluded or at least limited by Ohio law and by the License Agreement.

  - If there was a breach, but Hodell accepted the Business One software and did not give notice to SAP America within a reasonable time after Hodell should have discovered the breach, then Hodell is barred from any remedy against SAP America even if SAP America was not harmed by the failure to give proper notice.  See Ohio Rev. Code § 1302.65(C)(1).

  - Alternatively, if there was a breach but either (a) Hodell did not accept the Business One software or (b) Hodell did accept the Business One software but Hodell then provided SAP America with sufficient and timely notice of that breach, Hodell may be entitled to limited damages.  See Ohio Rev. Code § 1302.88.

  - If SAP America breached the express warranty and Hodell accepted the Business One software but also timely notified SAP America of the breach, then Hodell is entitled to no more than the difference between the value of the Business One software at the time and place Hodell accepted it and the value the Business One software would have had if it had been as SAP America warranted.  See Ohio Rev. Code § 1302.88.

  - Any damages Hodell could recover are further limited by the License Agreement's limitation of damages provision, which is enforceable under Ohio law.  See Ohio Rev. Code § 1302.93.

Hodell disputes the remaining arguments raised by SAP for the reasons stated in Hodell's Brief in Opposition to the SAP Defendants' Motion for Summary Judgment [ECF #162] and disputes the assertions made by SAP relating to Hodell's recoverable damages.

### E.  Hodell's Claim for Breach of Contract Against LSi and IBIS (Count III of the First Amended Complaint)

Hodell states the following, which has not been responded to by LSi or IBIS since neither is represented by counsel and neither has otherwise participated in this filing.

The evidence will show that LSi breached its contractual obligations under the Development Agreement.  First and foremost, the Development Agreement states as its primary purpose:  "The development of The IBIS Group's (IBIS) In-Flight Enterprise application and its integration into SAP Business One software, for Hodell-Natco Industries, Inc. (Hodell Natco)." The Development Agreement further provides that Hodell's down payment will be used "in the development effort of In-Flight Enterprise programs and the respective integration of In-Flight Enterprise into SAP Business One software."  Thus, the Development Agreement, by its plain language, required LSi to:  (1) develop the In-Flight solution; and (2) successfully integrate the In Flight software into Business One.

LSi failed to perform its contractual obligation to deliver a fully-functional, integrated solution to Hodell.  To the extent LSi contends that the B1 software, and not In Flight, caused the implementation to fail, that allegation merely gives LSi a potential claim against SAP for indemnification.  It does not absolve LSi from liability for breaching its obligation to deliver a functioning software solution under the Development Agreement.

Furthermore, the evidence will show that LSi failed to deliver key functionality aspects of the In Flight software, and as of 2008, LSi was still working out "bugs" with In Flight.  LSi's

former lead developer admitted that the InFlight development project was "rushed" and "under manned." Mr. Guagenti testified that "I think we could have done much better in hindsight." Mr. Guagenti acknowledged that, as late as 2008, key functionality for In Flight had not been coded and delivered to Hodell. Mr. Guagenti acknowledged that LSi ultimately abandoned the In Flight solution, and pulled all support for the solution from Hodell. Additionally, Mr. Woodrum acknowledged that LSi accepted progress payments from Hodell for the development of In Flight when, in fact, the development was behind schedule.

Further, LSi has acknowledged that its contractual obligations under the Development Agreement included responsibilities for assessing Hodell's network and infrastructure to make sure it could support the integrated B1 solution, and to test the integrated solution to make sure it was working properly prior to allowing Hodell to go live on the software. Mr. Guagenti acknowledges that LSi did not even have a staff capable of assessing Hodell's network.

**F.      SAP's Counterclaim and Cross-Claim for Indemnification Against LSi and IBIS**

SAP contends that pursuant to the December 19, 2003 Marketing Agreement between SAP America and LSi, LSi was granted limited authority to market and distribute Business One to customers. LSi was not authorized to make misrepresentations about Business One, and LSi expressly agreed to indemnify SAP as follows:

> 4.      The Distribution Agreement contained the following provision:
>
> 14.4      Indemnification of SAP.  Reseller shall indemnify SAP [America], SAP AG and its licensors against all claims, liabilities, and costs and expenses, including reasonable legal fees, reasonably incurred in the defense of any claim (other than for infringement of intellectual property rights specified in Section 14.3 above) including but not limited to any recalls, claims, suits, or other complaints arising out of (i) any misrepresentations or modifications made by Reseller relating to the Software, or (ii) Reseller's unauthorized Use, distribution, sublicensing, or

21

reproduction of the Software licensed under this Agreement, or (iii) as set forth in Section 17.8, or (iv) Reseller's breach of Section 7.5, or (v) any federal, state, or local sales, use, property, excise, service or similar taxes (excepting taxes on SAP's income) and related costs, interest and penalties paid or payable to SAP, or (vi) Reseller's breach of sections 3.3 or noncompliance with applicable U.S. or foreign law with respect to the use or transfer of the Proprietary Information outside the United States by Reseller; provided that, SAP promptly notifies Reseller in writing of such claim and that Reseller is permitted to control fully the defense and any settlement of the claim.

Based on Hodell's allegations, under the terms of the Marketing Agreement and/or pursuant to principles of common law, SAP is entitled to indemnity and/or contribution from LSi in connection with Hodell's claims against SAP and/or LSi is otherwise liable to SAP for all or part of Hodell's claims against SAP.

## IV.  OTHER INFORMATION

### A.  Expert Qualifications

Hodell intends to present expert testimony at trial from Helmuth Gümbel and G. William Kennedy.  The qualifications of these experts are set forth in their respective expert reports.  SAP has filed a motion *in limine* concerning Mr. Kennedy.  Hodell has opposed that motion.

SAP intends to present expert testimony at trial from Brooks Hilliard and Geoffrey Osborne.  The qualifications of these experts are set forth in their respective expert reports. Hodell has filed a motion *in limine* concerning Mr. Hilliard.  SAP has opposed that motion.

### B.  Modification of Claim and Waivers

Hodell and SAP believe that the LSi and IBIS defendants have failed to pursue their counterclaim against Hodell and their cross-claim against SAP.  Accordingly, those counterclaims and cross-claims asserted by LSi and IBIS have been waived and should be dismissed as a matter of law prior to trial.

### C.  Damages

Hodell asserts generally that it is entitled to recover the following categories of damages: (1) damages for costs incurred purchasing the software programs at issue above and related costs associated with the training, implementation and maintenance of this software; (2) lost profitability resulting from decreased productivity caused by the Defendants' conduct; and (3) damages associated with the lost value associated with Hodell's acquisition of a target company caused by the Defendants' conduct.

SAP disputes all such damages.

Respectfully submitted,

/s/ P. Wesley Lambert
James F. Koehler (0007904)
jkoehler@koehlerneal.com
Timothy J. Fitzgerald (0042734)
tfitzgerald@koehlerneal.com
P. Wesley Lambert (0076961)
wlambert@koehlerneal.com
Koehler Neal Llc
3330 Erieview Tower, 1301 East 9th Street
Cleveland, Ohio  44114
Telephone: (216) 539-9370
Facsimile: (216) 916-4369
*Attorneys for Plaintiff Hodell-Natco Industries, Inc*.

/s/ Gregory J. Star
Michael J. Miller (admitted *pro hac vice*)
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorneys for SAP America, Inc. and SAP AG*