UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC. ) | CASE NO. 1:08 CV 2755 |
| ) | |
| Plaintiff, ) | JUDGE:  LESLEY WELLS |
| ) | |
| -vs- ) | |
| ) | |
| SAP AMERICA, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF HODELL-NATCO INDUSTRIES, INC.'S RESPONSE TO THE SAP DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO PRECLUDE THE EXPERT REPORT AND OPINIONS OF G. WILLIAM KENNEDY**

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), through undersigned counsel and pursuant to the Court's Order dated October 2, 2014, submits the following Response to the Reply Brief filed by Defendants SAP America, Inc. and SAP AG allegedly in "further support" of their Motion to Preclude the Expert Report and Opinions of Hodell's damages expert, Dr. G. William Kennedy [ECF #204].

As set forth below, and despite its four attempts, SAP has failed to show that Dr. Kennedy's expert opinion is "clearly inadmissible" such that it should be excluded from the trial of this matter.  Because there is little that can be said on this issue that has not already been addressed to the Court, Hodell's response will be brief and to the point.  Hodell submits that the Court's decision turns on whether the Court interprets Fed.R.Evid. 702 to permit the exclusion of expert testimony where:

(1) the expert's qualifications are unchallenged by the moving party;

(2) the underlying data relied upon by the expert is unchallenged and has been confirmed by the moving party's own expert;

(3) the expert's actual mathematical calculations applied to that data are unchallenged by the moving party; and

(4) the methodology applied by the expert is accepted and unchallenged by the moving party. [ECF #199, p. 2, fn. 1].

Hodell submits that these four points are undisputed on the record before the Court, and pursuant to applicable Sixth Circuit precedent (*In re Scrap Metal* and *Bonds*, *infra*), Dr. Kennedy's expert testimony simply cannot be excluded from trial.

## I.     INTRODUCTION.

SAP's reply brief is no different than its prior three briefs attacking Dr. Kennedy's expert opinion. SAP continues to misconstrue Dr. Kennedy's actual opinion and deposition testimony, and continues its practice of citing to out-of-context sound bites from Dr. Kennedy's deposition and inapplicable case law in the hopes that the Court will simply take SAP's word for it and exclude relevant and admissible evidence. SAP's misstatement of Dr. Kennedy's opinion is clear on the record that is currently before the Court. This is why the exclusion of expert testimony through motion practice is the "exception, rather than the rule" (Fed.R.Evid.702, Adv. Comm. Notes) and is precisely why courts rarely exclude experts during motion practice before the expert has had the opportunity to testify at trial. *In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 846 (N.D. Ohio 2010)("Courts within this jurisdiction have held that rulings on motions in limine frequently should be deferred to the trial stage . . . .")

By way of example, SAP continues to quote select portions of Dr. Kennedy's deposition to argue that he admitted that he "completely ignored the issue of whether there were customers

2

willing and able to place orders, take shipment, and make payment." SAP is quoting its counsel's own questions, not Dr. Kennedy's answer. Dr. Kennedy actually testified:

> Q: Well, as I understand your testimony, you've actually just ignored completely the issue of whether there were customers willing and able to place orders, take shipment, and make payment and, therefore made no analysis of whether, in fact, 4.2 [million] additional pounds of product would have been shipped over the damages period, correct?
>
> A: That's right. I didn't try to identify the customer that didn't call or the customer that hung up, **which is not part of a lost profits calculation**.

[Kennedy Dep., 57:19-58:05](emphasis added).[1] Dr. Kennedy's clear testimony is that the information upon which SAP is focused – lost customers or particular lost sales – is simply irrelevant to an application of the before-and-after method. In order to exclude Dr. Kennedy's testimony, SAP must point to some legal authority and/or any other authority discrediting this testimony. It has failed to do so every step of the way.

## II. LEGAL ARGUMENT.

SAP has now filed four separate briefs attacking Dr. Kennedy's expert opinion. Notably, not one of those briefs has cited a single legal authority excluding an expert's opinion under circumstances similar to those here. Rather, all SAP presents to the Court is its own subjective interpretation of what the law applicable to Dr. Kennedy's testimony ought to be, ignoring decades of case law directly refuting its arguments.

On the other hand, Hodell has cited to the Sixth Circuit decisions in *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008) and *United States v. Bonds*, 12 F.3d 540, 556 (6th Cir. 1993), both of which are dispositive of SAP's Motion. Under *Scrap Metal* and *Bonds*, SAP's admission on the record that it is not challenging Dr. Kennedy's methodology, the "before and after method," but that it is only questioning Dr. Kennedy's "specific application in

---

[1] Relevant portions attached as Exhibit 1.

this case" [ECF #199, p. 2, fn. 1] requires denial of SAP's Motion. *See Bonds*, 12 F.3d at 556 ("[C]riticisms about the specific application of the procedure used or questions about the accuracy of the test results do not render the scientific theory and methodology invalid or destroy their general acceptance. Those questions go to the weight of the evidence, not the admissibility.")

Despite having ample opportunity to do so, SAP has never addressed the holdings cited on Pages 7 and 8 of Hodell's Reply Brief [ECF #202], each of which held that disputes relating to a qualified expert's application of a particular methodology may be fodder for cross-examination at trial but do not permit exclusion of the testimony altogether. Indeed, several of the cited cases addressed challenges to applications of the before-and-after method or damages opinions similar to those offered by Dr. Kennedy in this matter. *In re Scrap Metal*, *supra*; *Storage Tech Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, D.Mass No. No. 02-12102-RWZ, 2006 WL 1766434, *21 (D. Mass Jun. 28, 2006)(before and after method is reliable for calculating damages, and disputes about data used in a before and after model are for the jury); *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667-68 (5th Cir. 1974)(discussing damages expert testimony and finding that disagreements over factual basis and assumptions underlying testimony went to weight of evidence and not admissibility).

SAP has since tried to backtrack from its issue-dispositive concession that it merely challenges Dr. Kennedy's specific application of the before-and-after method to the facts of this case, but has not done so effectively. SAP cites to pages from its prior briefs where it made broad and conclusory statements relating to Dr. Kennedy's methodology, but it has never actually provided the Court with any authority substantiating its argument. Even so, SAP simply cannot retreat from the truth of its own admission on Page 2 of its Reply Brief: "**SAP does not**

4

**challenge the 'before and after method' as a general approach to quantifying damages. Rather, SAP challenges Mr. Kennedy's specific application in this case."** [ECF #199, SAP Supp. Reply at p. 2, fn. 1].

Thus, SAP merely continues to quarrel with how Dr. Kennedy applied a widely accepted methodology in this particular case, and continues to wrongfully claim that Dr. Kennedy's analysis should, in its view, consider evidence of lost sales or lost customers.

Similarly, SAP's Reply continues to misapply the law applicable to damages in general, arguing that Hodell's evidence of damages is "speculative."  SAP is simply wrong that Hodell cannot prove damages.  The fact that Hodell was damaged is undisputed.  Thus, Hodell's damages calculation cannot be deemed speculative as a matter of law. *Coverdell v. Mid-S. Farm Equip. Assn.*, 335 F.2d 9, 14 (6th Cir. 1964)("In this case, the jury was warranted in finding that the plaintiff was damaged. It was not necessary for the plaintiff to prove the amount of the damages to a mathematical certainty.")  None of the cases cited by SAP are relevant to the issue currently before this Court; i.e., whether Dr. Kennedy's testimony is reliable.  The cases relied upon by SAP to claim that Hodell's damages are "speculative" did not concern the admission of expert testimony on damages.  Rather, they addressed the standard of proof for damages at either the summary judgment or trial stage.

By relying upon these decisions, it is clear that SAP's Motion is nothing more than a dispositive motion on the issue of damages disguised as an expert motion *in limine*.  SAP's Reply now makes it clear that its challenge to Dr. Kennedy's opinion is not actually a challenge to his methodology or actual opinion at all, but rather is a challenge to the sufficiency of the evidence supporting Hodell's claim for damages.  Yet, SAP never moved for summary judgment on this issue when it had the chance, and the Sixth Circuit has made it clear that such a challenge

may not be mounted through a motion *in limine*. Challenges to the sufficiency of evidence must be raised either at the summary judgment stage or after the presentation of evidence at trial. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)(motions *in limine* may not be used to argue the sufficiency of evidence or the viability of claims, including claims for damages); *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008); *Sigma Tool & Mach. v. Nagayama Elect. Ind. Co., Ltd.*, No 00–cv–2936, 2002 WL 34354482, at * 2 (D.D.C. Dec.18, 2002)("Nor should a motion in limine be used to argue, as Ashland does here, than an item of damages may not be recovered because no reasonable person could find that it was proximately caused by the defendant's acts. That is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards."). "Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

Based upon the arguments in SAP's two most recent briefs, it is clear that it is merely challenging the sufficiency of evidence by creatively captioning its argument as a motion *in limine*. The Sixth Circuit in *Louzon* was clear that such challenges to the sufficiency of evidence may not be made through a motion *in limine*.

Even so, SAP's actual challenge to the sufficiency of the data relied upon by Dr. Kennedy is without merit. Specifically, as he noted time and again during his deposition, Dr. Kennedy's opinion does not calculate lost profits from sales that did not occur, and does not rely whatsoever on underlying proof of lost customers or lost orders. Rather, Dr. Kennedy calculates the impact on profits Hodell should have realized on sales that actually did occur and which are reflected in Hodell's actual financial records. His opinion is "[b]ased on **actual data**, and not conjecture, a comparison of the productivity in a five-year period prior to the installation of the

6

[Business One] package and during the two-year period when the package was functioning." [Kennedy Dep., 38:09-39:01](emphasis added). *See also*, Kennedy Dep., 69:22-70:04("The lost profit calculation uses not speculative but actual costs that were being incurred by the company in . . . each of the months during the damage period.").

SAP's misguided approach is demonstrated by its argument that Hodell "had its best year ever" in terms of sales while running Business One. While SAP is free to argue this irrelevant issue to the jury, its argument is infirm because Dr. Kennedy has steadfastly stated that his calculation does not focus or rely upon lost sales. The number of sales made by Hodell during the damages period, by itself, is not relevant. What Dr. Kennedy's opinion calculates is the amount of lost profitability on **actual sales** made by Hodell during the damages period. [*See* Kennedy Dep., 50:07-17, testifying that his calculations "quantify the impact of the drop in efficiencies" and showed, "a material decline in productivity during the period we are calling the damages period" as a way to "quantify the impact on the profitability of the business as a result of that."].

SAP's argument also fails by basic financial analysis principles. SAP argues that Dr. Kennedy's analysis is flawed by referencing Hodell's **gross** sales and **gross** profit figures before and during the damages period – numbers that are completely irrelevant to the analysis at issue here, which focuses upon the **net** financial impact during the damages period.

Aside from failing to cite any applicable legal authority whatsoever, SAP has not provided the Court with a single authoritative article or publication discrediting Dr. Kennedy's methodology or his opinion in general. Thus, Dr. Kennedy's testimony is "rebutted" only by SAP's say-so. SAP's own personal view as to how Dr. Kennedy ought to have applied the before and after methodology to the facts in this case is wholly insufficient to preclude Dr.

7

Kennedy's testimony from trial.

SAP does nothing to credibly dispute Dr. Kennedy's testimony cited above, arguing only that it doesn't agree with it. But more importantly, the issue of whether SAP **can** credibly dispute Dr. Kennedy's analysis is not appropriately resolved by the exclusion of evidence through a pre-trial motion *in limine*. SAP may present its challenges to this testimony through cross-examination at trial. Its theories as to **how** Dr. Kennedy should have applied the before-and-after method to Hodell's financial data – the accuracy and reliability of which remains unchallenged – may be presented to the jury through cross-examination. But SAP may not preclude him from testifying altogether merely because it refuses to believe Dr. Kennedy's explanation as to his application of an accepted methodology. "[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir.1995); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)(noting "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.").

Finally, SAP continues to improperly cite to the decision in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). However, it has utterly failed to explain how this case is applicable to a non-patent infringement case. "The Panduit test is **a tool that the patentee uses to carry its initial burden of showing causation** in fact . . . ." *IGT v. Alliance Gaming Corp.*, 2:04-CV-1676-RCJ-RJJ, 2008 WL 7084605 (D. Nev. Oct. 21, 2008). (Emphasis added). SAP has not cited to a single case applying *Panduit* to a case similar to the one before the Court. Counsel for Hodell has located eleven (11) citations to *Panduit* in this Circuit: ten (10) district court cites and one (1) cite by the Sixth Circuit Court of Appeals. Each and every case dealt with a patent infringement dispute. SAP has noted no cases applying

*Panduit* outside the context of a patent infringement case, presumably because there are none. *Panduit* is inapplicable, and is demonstrative of the fact that SAP has been unable to locate any actual, applicable legal authority justifying the granting of its Motion.[2]

### III.  CONCLUSION

The issue before the Court is whether Dr. Kennedy's testimony, which has never been excluded in any other case in which he has been designated, is admissible.  The issue is not which party's version of Dr. Kennedy's testimony is to be believed or whose interpretation of the factual record is to be believed.  Here, Dr. Kennedy's qualifications are not challenged, nor is the underlying data upon which his opinion rests.  Accordingly, Dr. Kennedy's testimony is admissible and should not be excluded from the trial of this matter.

Respectfully submitted,

*/s/* P. Wesley Lambert
P. WESLEY LAMBERT (0076961)
wlambert@koehlerneal.com
KOEHLER NEAL LLC
3330 Erieview Tower, 1301 East 9th Street
Cleveland, Ohio 44114
(216) 539-9370
(216) 916-4369   (*facsimile*)
*Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

---

[2] It is beyond question that the *Panduit* case is not applicable to the testimony at issue.  But even in the patent infringement cases to which it applies, courts have held that *Panduit* is not the only means of proving causation in patent infringement cases.  "Generally, the *Panduit* test **has been applied when a patentee is seeking lost profits for a device covered by the patent in suit**. However, *Panduit* is not the *sine qua non* for proving 'but for' causation. If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable. Moreover, other fact situations may require different means of evaluation, and failure to meet the *Panduit* test does not *ipso facto* disqualify a loss from being compensable." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995).  It is also clear that SAP is misstating the application of *Panduit* and its requirement for the proof of "lost sales" or "demand" for the infringed product.  It is sufficient to demonstrate evidence of sales of the product **in general,** not specific sales or specific demand lost.  There is no dispute in this case that Hodell has demonstrated a demand and market for the products it sells.  And even under Panduit, which addresses **causation**, the standard for proving damages is no different than in non-patent cases.  *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, C79-2074, 1989 WL 81270, *1 (N.D. Ohio Feb. 2, 1989).  Again, *Panduit* is completely inapplicable to this case, but even under SAP's strained attempt to apply it here, SAP simply gets the analysis wrong.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of these pleadings will also be emailed and sent by regular United States mail to the following parties:

**LSI-Lowery Systems, Inc.**
c/o Chris Kellett
cpk@carmodymacdonald.com

**IBIS Group, Inc**
1800 W. Hawthorne Lane, Suite N
W. Chicago, IL 60185

/s/ P. Wesley Lambert
P. WESLEY LAMBERT (0076961)