IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC. )<br><br>Plaintiff, )<br><br>v. )<br><br>SAP AMERICA, INC., et al. )<br><br>Defendants. ) | CASE NO. 1:08 CV 2755<br><br>JUDGE WELLS |

---

**SAP'S RESPONSES TO HODELL'S OBJECTIONS TO THE**

**TRIAL EXHIBIT LIST OF SAP AMERICA, INC. AND SAP AG**

---

SAP America, Inc. and SAP AG (collectively, "SAP"), through their undersigned counsel and pursuant to this Court's pretrial

order and Federal Rule of Civil Procedure 26(a)(3), hereby respond to Hodell's objections to SAP's trial exhibit designations.  SAP

reserves the right to modify these responses as needed.

| Trial Exhibit No. | Deposition Exhibit No. | Bates Range | Hodell Objection | SAP Response |
|---|---|---|---|---|
| SAP 001 | 195 | LSI01320353-LSI01320354 | Relevance Fed.R.Evid. 402, 403 | This letter from Otto Reidl to Dale Van Leeuwen, dated January 24, 2001, shows that Hodell was an experienced ERP customer that understood the software licensing and implementation |

| | | | | process.  (*See* SAP Tr. Ex. 001 ("[W]e have been around the barn several times!").)  It also shows that the Development Agreement at issue in this case was an inextricable part of a larger commercial arrangement between IBIS and Hodell to make reparations for IBIS's past implementation failures.  This undercuts Hodell's assertions, *inter alia*, that IBIS was SAP's agent; that Hodell reasonably relied on representations made by Dale Van Leeuwen; and that Hodell was a naïve customer that was misled by SAP.  *See generally* SAP's Memorandum of Law in Opposition to Hodell's Motion *in Limine* To Preclude Introduction of Issues Raised By Plaintiff During Other ERP Implementations. |
|---|---|---|---|---|
| SAP 003 | 13 | HODL00453-HODL00481 | Hearsay; Relevance; Foundation Fed.R.Evid. 402, 403, 404, 802 | This exhibit, which was produced by Hodell, consists of a document entitled "Customer Successes with SAP Business One." The 13 profiles of Business One customers contained therein show that there is a distinction between the terms "user" and "employee."  (*See* SAP Tr. Ex. 003 (showing that 3M Israel has 90 employees and 10 Business One users; Alex & Gross Communications has about 100 employees and 4 users; Atid Computers has over 100 employees and 60 users; Alu Rehab has 30 employees – and will grow to between 150 to 200 employees – and has 10 users, etc.).)  This 2003 document would have been available to Hodell over the internet before it entered into any relevant agreement with LSi and/or SAP.  (*See* Tr. Dep. O. Reidl at 274:8-275:1).  This is highly relevant to rebut Hodell's contention that the words "employees" and "users" are synonymous and/or that Hodell reasonably believed them to be synonymous prior to any relevant sale.  This exhibit is not hearsay because it will not necessarily be offered for the truth of the matter asserted (i.e., for example, that 3M Israel actually has 90 employees and 10 users), but rather to show that the words "users" and employees" are used differently in the industry and that Hodell knew or should have known.  To the extent SAP wants to use this document for the truth of the matters asserted, SAP |

| | | | | |
|---|---|---|---|---|
| | | | | reserves the right to lay a proper foundation with a witness who will testify live at trial. |
| SAP 004 | 311 | HODL003314-HODL003315 | Relevance; Improper Character Evidence Fed. R. Evid. 402, 403, 404 | This exhibit consists of an email exchange between Kevin Reidl and Dale Van Leeuwen, dated July 11, 2003, and tends to show that Mr. Van Leeuwen was the longstanding agent of Hodell.  (*See* SAP Tr. Ex. 004 (Kevin Reidl) (describing Mr. Van Leeuwen as "[o]ne of the major guiding forces behind [Hodell's] technology objectives)); *id.* (Kevin Reidl) ("I've always trusted your guidance and judgment in steering us down the right path.")); *id.* (Kevin Reidl) ("I value your judgment and our relationship on both a personal and professional level.").)  This exhibit also shows that the Business One implementation was an inextricable part of a larger commercial arrangement between IBIS and Hodell to make reparations for IBIS's past implementation failures.  (*See id.* (Kevin Reidl) ("In May, I went to bat for you before my father. He was ready to take legal action, but I proceeded to convince him [otherwise].").)  This undercuts Hodell's assertions, *inter alia*, that IBIS was SAP's agent; that Hodell reasonably relied on representations made by Dale Van Leeuwen; and that Hodell was a naïve customer that was misled by SAP.  *See generally* SAP's Memorandum of Law in Opposition to Hodell's Motion *in Limine* To Preclude Introduction of Issues Raised By Plaintiff During Other ERP Implementations. <br><br> The emails are not impermissible character evidence because they will not be used to prove action in conformity.  Rather, they will be used to show, *inter alia*, Hodell's unreasonable reliance on Mr. Van Leeuwen; that Mr. Van Leeuwen was Hodell's agent – not SAP's; Hodell's knowledge of the roles and responsibilities of clients during a sophisticated software implementation; and Hodell's understanding of the risks of a software implementation as authorized by Federal Rule of Evidence 804(b)(2). |

| SAP 005 | 312 | HODL003349-HODL003351 | Relevance; Improper Character Evidence Fed.R.Evid. 402, 403, 404 | This exhibit contains an email exchange that is a continuation of the exchange contained in SAP trial exhibit 004.  It shows that Dale Van Leeuwen was the longstanding agent of Hodell.  (*See* SAP Tr. Ex. 005 (D. Van Leeuwen) (referring to Hodell-Natco as a "great partner" and mentioning the longstanding "relationship" four times in a brief email).)  This exhibit also shows that the Business One implementation was an inextricable part of a larger commercial arrangement between IBIS and Hodell to make reparations for IBIS's past implementation failures. (*See id.* (O. Reidl) ("I am personally convinced that the eWMS was promoted well beyond its capabilities, and Hodell-Natco has paid a very dear and costly price for believing in this product and the support promised by Radio Beacon and Aperum's precursor.  Who knows how far behind our competition we have fallen because we are in irons . . . with a five year old version of FACTS.  I cannot begin to measure the cost of this lack of progress.").)  This undercuts Hodell's assertions, *inter alia*, that IBIS was SAP's agent; that Hodell reasonably relied on representations made by Dale Van Leeuwen; and that Hodell was a naïve customer that was misled by SAP.  *See generally* SAP's Memorandum of Law in Opposition to Hodell's Motion *in Limine* To Preclude Introduction of Issues Raised By Plaintiff During Other ERP Implementations.<br><br>The emails are not impermissible character evidence because they will not be used to prove action in conformity.  Rather, they will be used to show, *inter alia*, Hodell's unreasonable reliance on Mr. Van Leeuwen; that Mr. Van Leeuwen was Hodell's agent – not SAP's; and Hodell's understanding of the risks of a software implementation.   *See* Fed. R. Evid. 804(b)(2).  It will also be used to rebut Hodell's contention that it was a naïve software customer who relied completely on SAP.  *See id.* |
| SAP | 17 | HODL00729 | Hearsay Fed.R.Evid. 802 | This exhibit consists of Otto Reidl's February 6, 2004 handwritten notes from a phone call with Penny Vitantonio of American |

| 008 | | | | Express in which he told Ms. Vitantonio that Hodell was no longer interested in American Express' Business One product.  (*See* Tr. O. Reidl Dep. at 293:5-9.)  The notes of Hodell's CEO and part-owner are not hearsay as they will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  They also satisfy the business record, present sense impression, and then existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
|---|---|---|---|---|
| SAP 012 | 8 | HODL00108 | Hearsay Fed.R.Evid. 802 | This exhibit consists of Otto Reidl's October 14, 2004 handwritten notes from a telephone call with Dan Lowery and Dale Van Leeuwen discussing Hodell's concerns with the contemplated purchase of Business One.  The notes of Hodell's CEO and part owner will be offered against Hodell and are not hearsay under Federal Rule of Evidence 801(d)(2).  They also satisfy the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 014 | 10 | HODL00161 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email from Dan Lowery to Kevin and Otto Reidl, dated November 1, 2004, wherein Mr. Lowery suggests that Hodell "pre-fund[] the bulk of the [Business One] project and receive the In-Flight licenses for free." (SAP Tr. Ex. 014.)  On the bottom of this email, are Otto Reidl's handwritten notes stating that IBIS's provision of free In-Flight licenses was "IBIS's restitution" for IBIS's failures during the FACTS implementation.  (Tr. O. Reidl Dep. 259:23-262:24.)  Hodell's hearsay objection is not understood.  The notes of Hodell's CEO and part owner are not hearsay as they will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  The email from Mr. Lowery are also not hearsay under Federal Rule of Evidence 801(d)(2).  In any event, both the email and the notes satisfy the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6).  To the extent Mr. Lowery is |

| | | | | |
|---|---|---|---|---|
| | | | | unavailable for trial, it further satisfies the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
| SAP 019 | 214 | LSI02069474-LSI02069477 | Hearsay, Relevance Fed.R.Evid. 402, 802 | This exhibit consists of an email discussion between Jon Woodrum, Vice President of Business Software Support at LSi, and Dale Van Leeuwen in May of 2005 in which Mr. Van Leeuwen asked Mr. Woodrum to comment on a proposed description of the In-Flight product.  Mr. Woodrum replied that "overall, I think we are taking on more than we can possibl[y] dream of completing in a 5-year window. . . . I think this is too much for LSI/IBiS to take on. . . . I don't see how we can afford or source that large of an expectation."  (SAP Tr. Ex. 019.)  In a subsequent email contained in this chain, Mr. Woodrum stated, that he didn't "want to see [LSi] have a train wreck taking on too much" and that he felt that LSi was "bordering on biting off more than [it could] chew."  *Id.*  This is highly relevant to, *inter alia*, SAP's contention that In-Flight was improperly developed and that problems with In-Flight (as opposed to Business One) contributed to the alleged performance problems at Hodell.<br><br>Hodell's hearsay objection is not understood.  Mr. Van Leeuwen, part owner of LSi, specifically asked Mr. Woodrum, Vice President of Business Software Support at LSi, to provide his "thoughts and comments" on the proposed In-Flight description.  (*See* Tr. Woodrum Dep. at 10:4-6, 12:21-13:18; SAP Tr. Ex. 019.) These emails are therefore not hearsay under Federal Rule of Evidence 801(d)(2).  These emails also satisfy the present sense impression, then-existing mental condition, and business records exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6).  Moreover, Mr. Woodrum's statements qualify as a statement against interest under Federal Rule of Evidence 804(b)(3). |
| SAP | 12 | HODL00174 | Hearsay | This exhibit consists of Otto Reidl's handwritten notes of an SAP |

| 023 | | | Fed.R.Evid. 802 | web demo dated October 31, 2005 (*i.e.*, before the execution of the License Agreement with SAP) in which Mr. Reidl expressed "concern" over the ability of Business One to handle larger databases.  Mr. Reidl is the Plaintiff's CEO and his notes will be offered against Hodell to show, among other things, that Hodell knew about potential performance issues that Business One might encounter with larger databases such as Hodell's.  This is not hearsay under Federal Rule of Evidence 801(d)(2).  This email also satisfies the present sense impression, then existing mental condition, and business record exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 024 | 5 | HODL00494 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>The exhibit consists of a November 2005 article on Business One taken from the internet that was produced from Hodell's own files.  It says that Business One is aimed at companies with 10-100 users.  It is not hearsay because SAP will not necessarily offer it for the truth of the matter asserted, but rather to show that Hodell was on notice before it signed the License Agreement that Business One was being described as appropriate for companies with less users than Hodell alleges it needed.  This is highly relevant to questions, *inter alia*, of reasonable reliance and proximate and factual cause.  This document also qualifies as a business record of both SAP and Hodell under Federal Rule of Evidence 803(6) the foundation for which SAP is allowed to lay at trial. |
| SAP 025 | 196 | HODL003561-HODL003563 | Relevance; Character Evidence; Hearsay Fed.R.Evid. 402, 43, 404, 802 | This exhibit consists of an email discussion between Amy Poidomani of LSi/IBIS and Kevin Reidl in which Mr. Reidl states that "Radio Beacon has been a tremendous failure at our site." (SAP Tr. Ex. 025.)  This is highly relevant to, *inter alia*, SAP's argument that Radio Beacon significantly contributed to the alleged performance problems at Hodell and to the issue of Hodell's reasonable reliance. |

| | | | | Hodell's hearsay objection is not understood.  Kevin Reidl is the President and part owner of Hodell.  His email will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  Mr. Reidl's emails also satisfy the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3) and (6).<br><br>Mr. Reidl's emails are not impermissible character evidence because they will not be used to prove conformity.  Rather, they will be used to show, *inter alia*, Hodell's unreasonable reliance and Hodell's understanding and assumption of the risks associated with Radio Beacon under Federal Rule of Evidence 804(b)(2). |
|---|---|---|---|---|
| SAP 026 | 138 | SAP00000432-SAP00000433 | Hearsay<br>Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This document consists of two orders for SAP licenses; the first, dated December 22, 2005, reflects Hodell's order of 80 licenses; whereas, the second, dated December 10, 2007, reflects Hodell's order of 20 more.  Hodell's orders are not hearsay under Federal Rule of Evidence 801(d)(2) and satisfies the business records exception under Federal Rule of Evidence 803(6). |
| SAP 029 | 142 | LSI01057508-LSI01057510 | Relevance;<br>Hearsay<br>Fed.R.Evid. 402, 802 | This exhibit contains an email discussion between Dan Lowery and Jon Woodrum, Vice President of Business Software Support at LSi, in late February of 2006 regarding the In-Flight development.  Mr. Woodrum told Mr. Lowery, "I don't want to take ownership of this project in the customer's eyes because, for one, I couldn't look them in the eye or even talk to them on the phone about this project, so we will need to decide how that goes." (SAP Tr. Ex. 29.)  Mr. Woodrum explained that this meant that he "felt like [LSi] was not being totally up front with the status of the project with [Hodell]" and that this was an example of Mr. Woodrum feeling as though the In-Flight development was being mismanaged.  (Tr. Woodrum Dep. 101:24-103:7.)  This exhibit is |

| | | | | highly relevant to, *inter alia*, the question of whether In-Flight was improperly developed and significantly contributed to Hodell's alleged performance issues.<br><br>Hodell's hearsay objection is not understood.  Mr. Woodrum was the Vice President of Business Software Support at LSi and actively involved in the Hodell implementation. His emails will be offered against LSi under Federal Rule of Evidence 801(d)(2). The emails also satisfy the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6) and the statements against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
|---|---|---|---|---|
| SAP 031 | 294 | N/A | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>The exhibit consists of a series of emails between and among Eddy Neveaux, Dale Van Leeuwen, and others, dated late February and early March of 2006, in which Mr. Van Leeuwen described some aspects of Hodell's environment, and Eddy Neveaux responded by alerting LSi that "[SAP has] had some reports of issues in performance with large data sets in the SAP Business One product."  (SAP Tr. Ex. 294.)<br><br>This exhibit is not hearsay because SAP will not necessarily offer it for the truth of the matter asserted.  Rather, SAP presently intends to offer this exhibit to show that SAP warned LSi in early 2006 that there were reports of performance issues with Business One in customers like Hodell.  In any event, this is plainly admissible under the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP | 293 | N/A | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood. |

| 032 | | | | This email from Eddy Neveaux to Dan Lowery and Dale Van Leeuwen, dated February 27, 2006, satisfies the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6). |
|---|---|---|---|---|
| SAP 033 | 306 | LSI01057798 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This email from Eddy Neveaux to Joe Guagenti, dated December 19, 2005, satisfies the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6). |
| SAP 034 | 308 | LSI01057801 | Hearsay Fed.R.Evid. 802 | The email from Avery Myrick, Vice President at LSi, to Joe Guagenti, Technical Services Director at LSi, dated March 13, 2006, shows that SAP told LSi at least as early as March of 2006 that Hodell was "a bit out of scope" and that SAP had not "performed formal tests with this hardware" so it was hard to gauge how well Business One would perform.  (SAP Tr. Ex. 034.)  This is not hearsay because SAP will not necessarily offer this document for the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  Rather, SAP will offer it to show that SAP told LSi these things and that LSi was therefore on notice.  In any event, the email also satisfies the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6).  The email also satisfies the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
| SAP 035 | 143 | LSI01057845-LSI01057846 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This email from Joe Guagenti, Technical Services Director at LSi, to Avery Myrick, Vice President at LSi, dated March 14, 2006 shows that LSi knew at least a year before Hodell decided to go |

| | | | | live that Hodell's number of users was out-of-scope. This email is not hearsay because Mr. Guagenti's email will be offered against LSi under Federal Rule of Evidence 801(d)(2). This email also satisfies the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6) and the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
|---|---|---|---|---|
| SAP 038 | 318 | HODL006028-HODL006030 | Hearsay Fed.R.Evid. 802 | This exhibit contains an email discussion between Kevin Reidl and Jon Woodrum in April 2006 showing that Mr. Reidl knew the importance of testing a solution before go live. (*See* SAP Tr. Ex. 038 (K. Reidl) ("[W]e've been burned on the past on this and want to avoid any more burns in the future.").) It also shows that Hodell is an experienced and sophisticated consumer of business software. The email is not hearsay as it will be offered against Hodell under Federal Rule of Evidence 801(d)(2). The emails also satisfy the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6). |
| SAP 039 | 125 | N/A | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit. As a general matter, Hodell's objection to it is therefore not understood.<br><br>This exhibit is a reprint of a Dell article from May of 2006 that was produced from LSi's files. Among other things, it states "Dell PowerEdge servers can be reliable, robust platforms for the SAP Business One application. However, when these platforms support other applications in addition to SAP Business One, performance can degrade." (SAP Tr. Ex. 039.) It further describes an average-sized environment as one with ten concurrent users and concludes, among other things, that workstations should be upgraded. This document is not hearsay because SAP will not necessarily offer it for the truth of the matters asserted, but rather for the fact that LSi was on notice of published limitations of |

| | | | | Business One prior to the decision to go live. |
|---|---|---|---|---|
| SAP 041 | 198 | LSI02102107-LSI02102109 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of an email from Jon Woodrum to Ross Elliot and Dan Lowery, dated October 14, 2006, in which Mr. Woodrum recounts, *inter alia*, an on-site installation of SAP and Radio Beacon at which time "SAP could not give [LSi] a confirmation that this performance would be satisfactory with the number of users, items, customers, that [Hodell] has . . . ." (SAP Tr. Ex. 041.) Mr. Woodrum clarified that this meant that "SAP couldn't confirm that its software and Radio Beacon would perform satisfactorily." (Tr. Woodrum Dep. at 134:11-14.) This is highly relevant to Hodell's claim that SAP made misrepresentations about the suitability of its software as it would be implemented at Hodell. The email is not hearsay because it will be offered against LSi under Federal Rule of Evidence 801(d)(2). It also satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6) and the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
| SAP 043 | 144 | LSI01070047-LSI01070048 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email from Keith Winn, a member of Hodell's IT department, to Avery Myrick, LSi's Vice President of Technical Services, that was forwarded to Jon Woodrum, dated November 14, 2006, in which Mr. Winn states "I installed the Gig Switch last night. Everything seems to be working nicely. Kevin [Reidl] and I did a little test running SAP without InFlight. SAP ran very nicely. We installed InFlight and SAP began to crawl." (SAP Tr. Ex. 043.) This exhibit is not hearsay as it will be offered against Hodell under Federal Rule of Evidence 801(d)(2). It also satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6) and the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |

| SAP 044 | 145 | HODL008081 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email from Jon Woodrum to Kevin Reidl, dated November 14, 2006, in which Mr. Woodrum states "We know there is a performance issue to be satisfied before go live.  And we know that lies in/with the In-flight Add-On."  (SAP Tr. Ex. 044.)  This exhibit is not hearsay because it will be offered against LSi under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record exception under Federal Rule of Evidence 803(6) and the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
| SAP 046 | 227 | HODL009060- HODL009060 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This exhibit consists of an email from Jon Woodrum to Kevin Reidl, dated December 22, 2006, in which Mr. Woodrum states "I think we could and should plan to go live even when dealing with a less than a 'what we really need' performance . . . ."  (SAP Tr. Ex. 046.)  This exhibit is not hearsay because it will be offered against LSi under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record exception under Federal Rule of Evidence 803(6) and the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
| SAP 047 | 299 | N/A | Relevance; foundation Fed.R.Evid. 402, 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This exhibit consists of an email sent by Kevin Reidl to Hodell's employees in its Cleveland, Cincinnati, and Milwaukee locations on January 2, 2007 in which Mr. Reidl instructed his employees how to stress test the solution.  This is highly relevant to, among other things, SAP's proximate cause defense that Hodell's inadequate testing caused its alleged damages.  This exhibit is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also qualifies as a business record under Federal Rule of Evidence 803(6).  There is no lack of |

| | | | | |
|---|---|---|---|---|
| | | | | foundation, and Mr. Reidl will be present at trial. |
| SAP 053 | 47 | HODL010078 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of an email from Dan Lowery to Kevin Reidl, dated February 5, 2007, in which Mr. Lowery tells Mr. Reidl "[l]ooks like you have your first commission coming in soon too." This is relevant to show motive, plan, and intent. This exhibit is not hearsay because it will be offered against LSi under Federal Rule of Evidence 801(d)(2). It also satisfies the business records exception under Federal Rule of Evidence 803(6). To the extent Mr. Lowery is unavailable for trial, it further satisfies the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
| SAP 057 | 151 | SAP00002279-SAP00002280 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email from Geoff Ashley to a number of people at SAP dated April 17, 2007. The email recounts a phone call among SAP, LSi, and Hodell during which LSi "commented that they originally sold this 'solution' to Hodell as something that was designed for companies of '250 million in revenue' with up to 500 users." Mr. Ashley continued to state that "[t]here was stunned silence on the phone from the SAP team as Hodell confirmed that this was their understanding of what was purchased." *Id*. This email satisfies the business records, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(6). The statements attributed to LSi and Hodell will also be offered against these parties under Federal Rule of Evidence 801(d)(2). |
| SAP 060 | 302 | LSI01074120 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email from Marcia Weissman, an implementation consultant at LSi, to Jon Woodrum, dated April 23, 2007, in which Ms. Wesimman recounts the experience of a sales entry person who experienced performance problems with "'super customers' – the ones with 1000+ shit-to's and hundreds of lines on each order" but "flew through it – it was a snap" when entering an order for "one of the 'normal' customers." This email satisfies the business records exception under Federal Rule of Evidence 803(6). |

| SAP 061 | 303 | LSI01353251-LSI01353253 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit contains an email from Eric Johnson, an In-Flight developer at LSi, to Joe Guagenti, dated April 25, 2007. It is relevant because it shows that Hodell's own internal people were causing performance issues. It satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |
|---|---|---|---|---|
| SAP 063 | 320 | LSI02121661-LSI02121663 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email from Jon Woodrum to Kevin Reidl, dated May 22, 2007, in which Mr. Woodrum states, "[t]he visit to the [Saint Louis] store was a really good one. . . . Marty entered a 91 line order. It never slowed down throughout the order and took 2-3 seconds to update when finished. They say it does get slower as the day unfolds (more users, more activity) but I didn't notice much difference during the hours we were there." (SAP Tr. Ex. 063.) The exhibit also contains a second email from Kevin Reidl to Dan Lowery, reproducing the email sent by Mr. Woodrum, dated the same day. These emails are not hearsay because they will be offered against Hodell under Federal Rule of Evidence 801(d)(2). They also satisfy the business records exception under Federal Rule of Evidence 803(6). |
| SAP 064 | 321 | HODL015836-HODL015838 | Hearsay Fed.R.Evid. 802 | This exhibit consists of emails between and among Kevin Reidl and Jon Woodrum, dated May 22, 2007. The email from Mr. Reidl to Jon Woodrum at 7:32 AM forwards an email written by Keith Winn, a member of Hodell's IT staff, that contains statements such as "[o]verall speed seems to be improved, not great but better"; "I personally entered a 90 line number order and there is improvement, again not great, but better. Adding the order upon completion was much improved." The emails from Mr. Reidl adopted those comments. The email from Mr. Woodrum at 8:53 AM states, among other things, that "[i]n an almost 4-hr time period at [Hodell's Saint Louis location], where I specifically asked to see any worst case situation, no one reported a terribly long hold up, and I observed first hand all morning a much improved workable application." Mr. Reidl himself testified that |

| | | | | |
|---|---|---|---|---|
| | | | | he had no reason to doubt the accuracy of what Mr. Woodrum was saying. (*See* Tr. K. Reidl at 356:10-16.) Mr. Reidl's comments, as well as the comments he adopted from his IT person, will be offered against Hodell under Federal Rule of Evidence 801(d)(2). In any event, all of the emails qualify as business records, present sense impression, and then-existing mental conditions under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 066 | 441 | SAP00015462-SAP00015470 | Hearsay; Foundation Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This email from Cain Woodrum, a member of LSi's project team, to a number of people at SAP and LSi including Jon Woodrum, Joe Guagenti, Dan Kraus, Paul Killingsworth, and Ross Elliot, dated June 8, 2007, contains examples of where Mr. Woodrum claimed "the SAP program seems to slow down."  This qualifies as a business record under Federal Rule of Evidence 803(6). |
| SAP 067 | 258 | SAP00001064 – SAP00001072 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This email from Dan Kraus, dated September 13, 2007, forwards an email from Paul Killingsworth written the same day that summarizes the timeline showing "what has been done to support this customer" in an attempt to determine a way forward for Hodell.  The summary was meticulously created by Mr. Killingsworth from over 333 emails, phone call logs, and other records.  This exhibit satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 068 | 307 | SAP00011741-SAP00011744 | Hearsay Fed.R.Evid. 802 | This email from Joe Guagenti to Paul Killingsworth, dated September 14, 2007, is an admission from LSi on a number of issues including the fact that SAP's post-go-live efforts resulted in significant performance improvements.  This email satisfies the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |

| SAP 069 | 260 | SAP00011834 – SAP00011836 | Hearsay Fed.R.Evid. 802 | This exhibit contains an email discussion between and among Dan Kraus, Michael Sotnick, and Udi Ziv, et al. in early April 2007 in which SAP is looking to find a way to help resolve Hodell's performance complaints.  The emails satisfy the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6).  Also, Hodell itself plans to use some of the emails in this chain as part of its case in chief, and SAP should therefore be able to complete the set under Federal Rule of Evidence 106. |
| SAP 070 | 165 | SAP00005988-SAP00005991 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email discussion between Eddie Neveaux and Gadi Barnea reproducing and discussing testing results reached by Mr. Barnea when he was on-site at Hodell. These emails satisfy the business record and present sense impression exceptions to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 071 | 167 | SAP00004427, SAP00004429 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email discussion between Eddie Neveaux and developer Trinidad Martinez, who was a member of Mr. Neveaux's team, in which they discussed, *inter alia*, their findings from an analysis of Hodell's "dot net profiler logs" – that In-Flight was not developed according to best practices and was causing significant delay – and Mr. Neveaux's first-hand observations of various issues at Hodell affecting performance (e.g., that there "ARE MANY issues" with Hodell's citrix environment and the size of its data files but that the performance he witnesses was not bad.)  (SAP Tr. Ex. 071.)  These emails satisfy the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6). |
| SAP 072 | 166 | SAP00003167-SAP00003168 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood. <br><br>This exhibit consists of an email from Eddie Neveaux to Paul |

| | | | | Killingsworth, dated October 17, 2007, in which Mr. Neveaux summarized his first-hand observations and results obtained from testing he did on-site at Hodell.  This satisfies the business record exception under Federal Rule of Evidence 803(1), (3), and (6). |
|---|---|---|---|---|
| SAP 073 | 168 | SAP00004430-SAP00004433 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This exhibit consists of an email from Eddie Neveaux to Paul Killingsworth, dated October 17, 2007, in which Mr. Neveaux summarized his first-hand observations and results obtained from testing he did on-site at Hodell.  This satisfies the business record exception under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 074 | 304 | LSI02140460-LSI02140462 | Hearsay; Relevance Fed.R.Evid. 402, 802 | This email exchange between Terry Phillips, an IT Project Manager at Hodell, and Eric Johnson from LSi dated November 1, 1007 reveals Mr. Phillips's conclusion that "some serious issues with slowness" were due to factors other than SAP.  This is highly relevant to SAP's defense that alleged performance problems were not caused by Business One.  This exhibit is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business records, present sense impression, and then-existing state of mind exceptions under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 076 | 305 | LSI01359656-LSI01359660 | Hearsay Fed.R.Evid. 802 | This email from Eric Johnson to Dan Lowery, dated November 5, 2007, reflects Mr. Johnson's first-hand observations and conclusions that the performance problems remaining in November 2007 were being caused by the Radio Beacon software, not Business One.  This email satisfies the business record, present sense impression, and then-existing state of mind exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 077 | 153 | N/A | Hearsay Fed.R.Evid. 802 | This email from Dan Lowery to Joe Guagenti, dated November 6, 2007, shows that Mr. Lowery ordered his employees to refrain from providing InFlight code to Apollo for purposes of evaluating whether it was properly coded.  This email is not hearsay because |

| | | | | |
|---|---|---|---|---|
| | | | | it will be offered against LSi under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record, present sense impression, and then-existing mental condition exception to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 080 | 330 | N/A | Hearsay; Relevance Fed.R.Evid. 802 | This exhibit consists of an email discussion between Joe Vislocky, Hodell's Director of IT, and Karen Murphy, a third-party consultant Mr. Vislocky retained to determine if LSi had configured anything wrong, dated December 12, 2007.  (*See* Tr. Vislocky Dep. 41:14-42:7.)  Mr. Vislocky stated to Ms. Murphy that Terry Phillips, Hodell's IT Project Manager, had implemented the diagnostic tool Ms. Murphy had recommended and that it revealed "may things.  Mostly bad!  We are 'critical' on all servers."  (SAP Tr. Ex. 080.)  This is highly relevant to SAP's defense that Business One did not cause the alleged performance issues, but rather, they were caused by, *inter alia*, Hodell's inadequate technical architecture (including servers).  These emails are not hearsay because they will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  They also qualify as business records under Federal Rule of Evidence 803(6). |
| SAP 081 | 210 | ACC000360-ACC000361 | Hearsay Fed.R.Evid. 802 | This exhibit contains emails between and among Terry Phillips, Hodell's IT Project Manager, and various people at Accellos such as Ross Elliot and Anatoliy Boyko, dated December 13, 2007, discussing changes Mr. Phillips made to LSi scripts that made "a huge difference in performance."  (SAP Tr. Ex. 081.)  Mr. Phillips email is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  The emails also satisfy the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 082 | 113 | SAP00002829-SAP00002831 | Hearsay Fed.R.Evid. 802 | This exhibit consists of an email exchange between Dan Lowery and Michael Sotnick in which Mr. Sotnick answered Mr. Lowery's question of "why Hodell 'runs slow.'"  (SAP Tr. Ex. 082.)  This email satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |

| SAP 083 | 331 | N/A | Hearsay Fed.R.Evid. 802 | This email between Joe Vislocky, Hodell's Director of IT, and Karen Murphy, dated December 28, 2007, shows that Hodell did not have sufficient servers when it went live with Business One. Mr. Vislockey's email is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2). It also satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 084 | 265 | SAP00012912 | Hearsay Fed.R.Evid. 802 | These emails between Paul Killingsworth and Michael Sotnick satisfy the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 085 | 332 | N/A | Hearsay Fed.R.Evid. 802 | This email from Karen Murphy to Joe Vislocky, dated March 3, 2008, shows that Hodell did not have adequate hardware when it went live with Business One. It is not hearsay as it will be offered against Hodell under Federal Rule of Evidence 801(d)(2). It also satisfies the business record exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 086 | 457 | SAP00014307-SAP00014309 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit. As a general matter, Hodell's objection to it is therefore not understood.<br><br>This email between Paul Killingsworth and Jim Gillespie satisfies the business record exception under Federal Rule of Evidence 803(6). |
| SAP 087 | 266 | SAP00003324 – SAP00003326 | Hearsay Fed.R.Evid. 802 | Hodell has listed this exhibit as a potential trial exhibit. As a general matter, Hodell's objection to it is therefore not understood.<br><br>These emails satisfy the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 088 | 317 | HODL039901-HODL039952 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This is Hodell's master agreement with Epicor/Activant, the software vendor from whom Hodell licensed Business One's replacement. This document is highly relevant to show that Business One was not the catastrophic failure alleged by Hodell because Hodell did not act like a customer facing catastrophe in its acquisition and implementation of follow-on software. |

| | | | | This contract is not hearsay as it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |
|---|---|---|---|---|
| SAP 089 | 273 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of an email discussion between and among Jay Sheldon, the Activant/Epicor Project Manager for Hodell's implementation of Prophet 21, and Michael Lovelace, the Activant/Epicor salesperson who sold Prophet 21 to Hodell, dated September 16, 2008, in which Mr. Sheldon states, among other things, "[t]his implementation is a beast" and that he did not think there was enough time to bring Hodell live on-time.  (SAP Tr. Ex. 089.)  This is highly relevant to SAP's contention that Hodell's approach to licensing and implementing Prophet 21 shows that Business One did not have the catastrophic effect on Hodell's business that Hodell claims it did.  These emails satisfy the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rules of Evidence 803(1), (3), and (6). |
| SAP 090 | 281 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | Hodell has listed this exhibit as a potential trial exhibit.  As a general matter, Hodell's objection to it is therefore not understood.<br><br>This exhibit contains the "Business Analysis" that Jay Sheldon of Epicor/Activant prepared for Hodell prior to the Hodell implementation.  Among other things, it captures analysis done by Mr. Sheldon of Hodell's situation running Business One (i.e., the "current state analysis") that are highly relevant to Hodell's claim that Business One was catastrophic to its business.  (Tr. Sheldon Dep. 185:16-21.  This exhibit also captures statements made by Hodell that are also highly relevant to Hodell's damages claims. This analysis satisfies the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |

| | | | | |
|---|---|---|---|---|
| | | | | The Hodell statements contained therein are not hearsay as they will be offered against Hodell under Federal Rule of Evidence 801(d)(2). |
| SAP 091 | 278 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of a report prepared by Dan Cole of Epicor/Activant in connection with a two-day on-site facility inspection conducted by Epicor/Activant when Hodell was running Prophet 21.  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.  This report satisfies the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 092 | 276 | HODL038362-HODL038363 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of an email from Joe Vislocky, Hodell's IT Director, to Terry Phillips, Hodell's IT Project Manager, dated May 6, 2009.  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.  It also tends to show that all implementations have problems after go-live.

This email is not hearsay under Federal Rule of Evidence 801(d)(2).  It also satisfies the business records exception under Federal Rule of Evidence 802(6). |
| SAP 093 | 274 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of an email exchange between Jay Sheldon and Joe Vislocky, dated May 22, 2009, in which Mr. Sheldon indicates that a "stern memo is about to come out from Kevin [Reidl]."  (SAP Tr. Ex. 093.)  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.  This email will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business records, present sense impression, and then-existing state of mind exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP | 277 | N/A | Relevance; Hearsay | This exhibit contains an email from Kevin Reidl to a number of recipients at Epicor/Activant including Jay Sheldon and Michael |

| 094 | | | Fed.R.Evid. 402, 802 | Lovelace dated May 22, 2009 in which Kevin Reidl delivers the "stern memo" referenced in Mr. Vislocky's email to Mr. Sheldon of the same date.  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.  This email will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record exception under Federal Rule of Evidence 803(6). |
| SAP 095 | 280 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit contains an email from Joe Vislocky to Jay Sheldon, dated July 1, 2009 in which Mr. Vislocky states "The folks are getting 'work-around burnout' over here and are starting to revolt.  I wish I was kidding!!"  (SAP Tr. Ex. 095.)  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.  This email is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 096 | 279 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of a report prepared by Neal Van Walbeck of Epicor/Activant in connection with a two-day on-site facility inspection conducted by Epicor/Activant when Hodell was running Prophet 21.  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.   This report satisfies the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 097 | 275 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit contains an email from Ellen Daniels, Hodell's Purchasing Manager, to John Chopan, dated August 25, 2009, in which Ms. Daniels states "As I stated to several people at Activant already, more than 90% of my items are Slow.  More than 90%! . . . I want to be clear that Hodell-Natco purchased P21 because we wanted to get away from spending our time on software problems and get back to what we do – we distribute fasteners.  I have struggled since go-live to have Activant truly handle the software |

| | | | | |
|---|---|---|---|---|
| | | | | issues so I can go back to being Hodell's Purchasing Manager." (SAP Tr. Ex. 097.)  This is relevant to issues of causation, damages, and problems Hodell experienced on its subsequent ERP system.  This is not hearsay as it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the present sense impression, business record, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 098 | 325 | HODL03108; HODL03110 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit contains an email from Kevin Reidl to Kathy Crusco, dated September 25, 2009, in which Mr. Reidl explains why he has not yet remitted full payment for Prophet 21 related services.  Mr. Reidl explains "I agreed to make payments AND pay maintenance on a system that does not currently work for us.  Our business is off 25%, but our headcount is up since the day we went live on P21 – any efficiency we had has vanished with the implementation of this software. . . ." (SAP Tr. Ex. 098.)  This is highly relevant to Hodell's damages claims for lost profits by way of alleged lost productivity.  This email is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record, present sense impression, and then-existing mental state exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 099 | 326 | HODL03136-HODL03139 | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit contains an email from Kevin Reidl to Bill Patton dated December 18, 2009 in which Mr. Reidl states that "I was advised yesterday that there has been a -$200K impact in bottom line profits directly related to our historical low levels of productivity since going live on this software on 4/1/09."  (SAP Tr. Ex. 099.)  This is highly relevant to Hodell's damages claim for lost profits by way of lost productivity.  This email is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2).  It also satisfies the business record, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence |

| | | | | 803(1), (3), and (6). |
|---|---|---|---|---|
| SAP 100 | 327 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This is an email from Joe Vislocky, Hodell's IT Director, to Jay Sheldon, dated January 15, 2010, in which Mr. Vislocky states that Prophet 21 "has potential but is ruining our business, especially WWMS. I hope the product grows up soon. I'd love to recommend P21 to my friends, but how do I show them the reduced productivity (50% lower than our all-time lowest levels) while saying how 'great' P21 is?" (SAP Tr. Ex. 100.) This is highly relevant to Hodell's damages claim for lost profits by way of lost productivity. This email is not hearsay because it will be offered against Hodell under Federal Rule of Evidence 801(d)(2). It also satisfies the present sense impression, business record, and then-present state of mind exceptions to the hearsay rule under Federal Rule of Evidence 803(1), (3), and (6). |
| SAP 101 | 4 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit consists of screenshots of pages from Hodell's website dated February 6, 2012, which contains a list of Hodell's "Manufacturing Partners." (SAP Tr. Ex. 101.) This is relevant to Hodell's assertion that LSi was the apparent agent of SAP for the purpose of making representations regarding Business One. This exhibit will be offered against Hodell and is therefore not hearsay under Federal Rule of Evidence 801(d)(2). It also satisfies the business records exception under Federal Rule of Evidence 803(6). |
| SAP 103 | 120 | N/A | Relevance; Hearsay Fed.R.Evid. 402, 802 | This exhibit contains notes written by Jon Woodrum. (Tr. Lowery Dep. 226:3-449:4.) Among other things, the notes reflect Mr. Woodrum's statement that "I feel totally void of confidence that this project can go forward at the scope apparently envisioned by Dale and [Hodell]. I recall up front asking how much we could furnish and funds to take on what appeared to be more than SAP themselves are putting into the product. I now feel the scope is truly as broad as the conversations that have taken place." (SAP Tr. Ex. 103.) This is highly relevant to SAP's defense that the |

| | | | | InFlight program was not properly developed and contributed to the alleged performance issues.  These notes are not hearsay because they will be offered against LSi under Federal Rule of Evidence 801(d)(2).  The notes also satisfy the business records, present sense impression, and then-existing mental condition exceptions to the hearsay rule under Federal Rule of Evidence 803(6) and the statement against interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). |
|---|---|---|---|---|
| SAP 105 | 459 | N/A | Relevance; Untimely produced; lack of foundation; Hearsay Fed.R.Evid. 402, 802 | This spreadsheet is an SAP business record listing the Business One customers in North America with 50 or more Business One users.  Among other things, it shows that (as of the time it was created) there were more than twenty Business One customers in the United States and Canada that had more Business One users than Hodell.  This is highly relevant to Hodell's assertion that SAP made misrepresentations about Business One's suitability for a company with a certain number of users.  It is also highly relevant to rebut the testimony of Hodell's liability expert, Helmut Gumbel, who opined generally that Business One is inappropriate for a company with greater than seventy users.  Contrary to Hodell's representations to the Court, this document was produced over two years ago in advance of Mr. Killingsworth's deposition.  Mr. Killingsworth laid a proper foundation for this document at his deposition (despite Hodell's strategic decision to move onto a different exhibit once it was apparent that Mr. Killingsworth was ready to give line-by-line testimony) and will be available at trial.  (*See* Tr. Killingsworth Dep. at 197:7-201:20.)  The exhibit satisfies the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 106 | N/A | 2SAP00000001 | Relevance; Untimely produced; lack of foundation; Hearsay | This spreadsheet is an SAP business record listing the Business One customers worldwide with fifty or more users.  This is highly relevant to Hodell's assertion that SAP made misrepresentations about Business One's suitability for a company with a certain number of users.  It is also highly relevant to rebut the testimony |

| | | | Fed.R.Evid. 402, 802 | of Hodell's liability expert, Helmut Gumbel, who opined generally that Business One is inappropriate for a company with greater than seventy users.  This document was timely produced to Hodell on September 9, 2014 pursuant to Federal Rule of Civil Procedure 26(e).  Mr. Killingsworth has been identified by SAP as the person most knowledgeable about these documents, and Mr. Killingsworth will be available at trial.  The exhibit satisfies the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |
| SAP 107 | N/A | 2SAP00000002 | Relevance, Untimely produced; lack of foundation; Hearsay Fed.R.Evid. 402, 802. | This spreadsheet is an SAP business record listing the Business One customers worldwide with 100 or more users.  Among other things, it shows that there are 33 Business One customers with 500 or more Business One users and 71 Business One customers with 300 or more Business One customers.  This is highly relevant to Hodell's assertion that SAP made misrepresentations about Business One's suitability for a company with a certain number of users.  It is also highly relevant to rebut the testimony of Hodell's liability expert, Helmut Gumbel, who opined generally that Business One is inappropriate for a company with greater than seventy users.  This document was timely produced to Hodell on September 9, 2014 pursuant to Federal Rule of Civil Procedure 26(e).  Mr. Killingsworth has been identified by SAP as the person most knowledgeable about these documents, and Mr. Killingsworth will be available at trial.  The exhibit satisfies the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). |

Respectfully submitted,

/s/ Gregory J. Star

Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorney for SAP America, Inc. and SAP AG*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2014, copies of the foregoing responses to Hodell's objection to the trial exhibit list of SAP America, Inc. and SAP AG  was filed and served electronically on Hodell-Natco Industries, Inc. via ECF and was sent by First Class Mail pursuant to Fed. R. Civ. P. 5(b)(2)(F) to the following parties:

**LSI-Lowery Systems, Inc.**
c/o Timothy K. Kellett
911 Washington Ave., Suite 400
St. Louis, MO 63101

**IBIS Group, Inc**
c/o Dale Van Leeuwen
1800 W. Hawthorne Lane, Suite N
West Chicago, IL  60185


/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)