IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC., | ) | CASE NO. 1:08-CV-2755 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | **SURREPLY IN OPPOSITION TO THE SAP** |
| | ) | **DEFENDANTS' MOTION IN LIMINE TO** |
| SAP AMERICA, INC., et al. | ) | **EXCLUDE DAMAGES EVIDENCE** |
| | ) | |
| Defendants. | ) | **(ORAL ARGUMENT REQUESTED)** |

Plaintiff Hodell-Natco Industries, Inc. ("Hodell") submits the following Surreply Brief in opposition to the Motion of Defendants SAP America, Inc. and SAP AG (collectively "SAP") to exclude relevant and admissible fact witness testimony relating to damages. Hodell also renews its request for oral argument on this issue.

**A.**     **Hodell Complied With Its Rule 26 Disclosure Obligations.**

Rule 26 requires a plaintiff provide "a computation of each category of damages claimed by the disclosing party . . . ." Fed.R.Civ.P. 26(a)(1)(A)(iii).  This is precisely what Hodell did more than four years ago when it provided the defendants with Initial Disclosures detailing each and every category of damages Hodell will seek at trial.  Contrary to SAP's assertion, there is no requirement in the Rule or in Sixth Circuit case law that the underlying math or methodology be provided in the Initial Disclosures, and SAP never once complained that Hodell's Initial Disclosures were inadequate or incomplete – until the eve of trial.

SAP cites cases in which a few courts from *other jurisdictions* have required the disclosing party provide "some analysis" as to how the damages dollar figure was reached.  However, no court in the Sixth Circuit has never imposed this requirement or ever required the disclosing party to provide anything more than a "computation of damages."  *See also*, *Henry's*

*Marine Serv. v. Fireman's Fund Ins. Co.*, 193 F. App'x 267, 278 (5th Cir. 2006) (damages disclosure much less specific than Hodell's did not constitute a failure to disclose).[1]

B.  **Hodell's Initial Disclosures Were Supplemented Through Otto Reidl's Deposition Testimony.**

Even accepting SAP's flawed argument that Hodell's Initial Disclosures were somehow inadequate, any inadequacy was supplemented through Otto Reidl's testimony. During deposition, SAP's counsel marked Hodell's Initial Disclosures as an exhibit and questioned Mr. Reidl for *hours* as to how he calculated each number reflected in the Initial Disclosures. Mr. Reidl did not just provide "some analysis" – he explained his calculations in painstaking detail.

SAP cannot dispute this – the proof is in the factual record submitted to this Court in the form of more than one-hundred (100) pages of deposition testimony submitted as Exhibit 1 to Hodell's Opposition Brief. (ECF Docket No. 256-1.) Instead, SAP misstates the holdings of several cases on pages 3 and 4 of its Reply to claim that "making witnesses available is not a substitute for the computation and analysis that [Rule 26] requires." (SAP Reply at 3.)

The cases cited by SAP do not stand for this proposition at all. In each case, the disclosing party either failed to make any disclosure whatsoever, or failed to produce a deposition witness with any knowledge of the party's damages theory. For example, in *Brandt Indus. v. Pitonyak Mach. Corp.*, No. 1:10-cv-0875, 2012 U.S. Dist. LEXIS 131096 (S.D. Ind. Sept. 12, 2012), the counterclaim-defendant provided absolutely no initial disclosures on damages and its 30(b)(6) witness testified that "he **did not know what PMC's alleged monetary damages were** . . . ." (emphasis added).[2] In *Silicon Knights, Inc. v. Epic Games, Inc.*,

---

[1] Further, the cases cited by SAP that imposed this additional requirement did not order the wholesale exclusion of damages evidence. SAP has not cited a single decision from any jurisdiction in which a party's damages case was excluded from trial based upon this alleged judicially-created disclosure requirement.

[2] In *Brandt*, even though the undisclosed damages theory was excluded from trial, the court made clear that its ruling "does not prevent Defendant from presenting its Rule 30(b)(6) testimony at trial . . . ." *Id.* at 8. In other words, the

No. 5:07-CV-275-D, 2012 U.S. Dist. LEXIS 63707 (E.D.N.C. May 7, 2012), the plaintiff did not provide an initial disclosure of damages beyond stating "several million dollars" and then produced witnesses for a deposition that essentially had no knowledge of damages and had not computed damages. *Id.* at \*\*13-14.  In *Clayman v. Starwood Hotels & Resorts Worldwide*, 343 F. Supp. 2d 1037 (D. Kan. 2004), the plaintiff provided virtually no initial disclosures as to damages and the defendant did not obtain any deposition testimony describing the plaintiff's damages.  The court still declined to exclude the plaintiff's damages from trial and granted the plaintiff fifteen days to supplement its disclosures.  As to other damages the plaintiff failed to disclose, the court held:  "the failure to compute damages was harmless as defendant knew what type of damages were being sought when served with the Complaint, **did not compel compliance with Rule 26 during discovery**, and defendant received a computation of damages through plaintiff's statement of damages in the Pretrial Order." *Id.* at 1047 (emphasis added). The two other cases cited by SAP are inapposite.  *See MKB Constructors v. Am. Zurich Ins.*, No. C13-0611JLR, 2014 U.S. Dist. LEXIS 137495 (W.D. Wash. Sept. 29, 2014) (excluding new damages calculation presented *for the first time* after the discovery cutoff); *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70 (D. Mass. 2008) (plaintiff never actually computed damages or disclosed its damages calculation to the opposing party until after the discovery cutoff).[3]

    Unlike the cases cited by SAP, Mr. Reidl explained his calculation of damages to SAP three years ago.  While a court may exclude undisclosed evidence under Rule 37, it may not exclude that *which has in fact been disclosed and not objected to in a timely manner.*

---

court recognized the defendant was entitled to testify consistent with the 30(b)(6) testimony it provided to the plaintiff.  This underscores the fundamental flaw in SAP's Motion – Mr. Reidl is absolutely entitled to testify at trial consistent with his deposition testimony, including his deposition testimony on Hodell's damages.

[3] The *AVX* court also noted that the plaintiff had clear knowledge that the defendant considered its damages disclosures to be "incomplete or incorrect" when the defendant filed a motion to compel more complete responses. *Id.* at 77.  It is undisputed that SAP never filed such a motion because it had full and complete disclosure of Hodell's damages through Hodell's initial disclosures and Mr. Reidl's deposition.  SAP never complained about alleged inadequate disclosures until now.

### C. Hodell Never Committed to Presenting Damages Testimony Solely Through Dr. Kennedy.

SAP incredibly claims that Hodell always intended to present its damages case *solely* through expert testimony and further claims that Hodell is required to adhere to this alleged strategy. In doing so, SAP mischaracterizes documents and deposition discourse through the selective use of excerpted statements. For example, SAP claims that Hodell objected to producing a 30(b)(6) witness on damages because they are "the subject of anticipated expert testimony." The actual document states that Hodell objected *to the extent* the testimony would be subject to expert testimony, but that Hodell *would* permit Otto Reidl to testify as to *his own* calculations. SAP omits this relevant language.

SAP also continues to omit relevant discourse from Mr. Reidl's deposition. Hodell *never* pigeonholed its damages testimony to be presented *solely* through expert testimony. On the contrary, when the Court reviews pages 330 through 440 of Mr. Reidl's deposition transcript, it will see that Mr. Reidl willingly provided complete and detailed testimony regarding his calculations without any objection.

### D. Otto Reidl is Entitled to Testify As A Fact Witness Regarding the Harm Caused to His Company Under Rule 701.

SAP next claims that Mr. Reidl, Hodell's CEO who possesses personal and direct knowledge of the financial harm inflicted upon Hodell by SAP's dysfunctional software, cannot testify because his *own* damages calculations "require expertise that Mr. Reidl admits he lacks." (SAP Reply at 6.) This is flatly untrue. The evidence will show that Mr. Reidl has direct, personal knowledge of *all facts* upon which he will testify. The damages numbers he will present are his own, prepared in the course and scope of his position as Hodell's CEO. There is simply no legal basis to exclude a fact witness from testifying based upon his own personal

4

knowledge regarding damages suffered by his company. To the extent SAP believes that Mr. Reidl's calculations are subject to attack, it may cross-examine him at trial.

Mr. Reidl's calculations do not require "specialized knowledge" beyond that which any closely-held company's CEO would possess when tracking his company's financial performance year-over-year. This is recognized by the Advisory Committee notes to Rule 701. Further, it is black letter law that a company's owner may testify as to business losses caused by a defendant's conduct. *See Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co.*, 418 F. App'x 327, 331 (5th Cir. 2011) (CEO permitted to testify based upon personal knowledge of lost income suffered by business); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213 (11th Cir. 2003) (noting "most courts have permitted owners and officers to testify . . . without the necessity of qualifying the witness as an . . . expert. Such opinion testimony is admitted not because the experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business."); *Patio Enclosures, Inc. v. Four Seasons Marketing Corp.*, 9th Dist. Summit No. 22458, 2005-Ohio-4933, ¶¶63-64 (allowing company CFO's testimony on damages estimates based upon personal knowledge of company's financial history). Damages for increased overhead costs are regularly awarded as a component of damages in Ohio, and business owners regularly testify as fact witnesses as to the amount of these damages. *See, e.g., World Metals, Inc. v. AGA Gas, Inc.*, 142 Ohio App.3d 283, 289-290, 755 N.E.2d 434 (9th Dist.2001).

Indeed, Mr. Reidl's calculations are markedly different from those performed by Dr. Kennedy. Specifically, while Dr. Kennedy opined that Hodell's productivity loss from March 2007 to March 2009 equated to $3,240,000 in damages, Mr. Reidl calculated Hodell's increased overhead costs to be $2,600,000 during this same time period. As Mr. Reidl clearly testified, this

5

number reflects increased overhead costs paid by Hodell due to increased staffing costs incurred to keep Hodell operational during the time it was running the non-performing SAP software. While Dr. Kennedy opined that the lost acquisition of PCBC cost Hodell $3,964,000, Mr. Reidl's cash flow calculation yielded a damage number of $1,500,000.  Mr. Reidl's calculations were performed before Dr. Kennedy was retained, utilize "simple math" to yield entirely different numbers, and as his trial testimony will demonstrate, were based upon his own personal knowledge as a fact witness of the damage inflicted upon Hodell's business This is precisely the type of testimony permitted by Rule 701 and prevailing case law.

E. **SAP's Proposed Sanction is Impermissible.**

The Sixth Circuit succinctly disapproved of the defendants' conduct in *Concrete Materials Corp., Inc. v. C.J. Mahan Constr. Co.*, No. 95-6657, 1997 U.S. App. LEXIS 6218, 110 F.3d 63 (6th Cir. 1997) for the same reasons SAP's Motion must be denied: "Despite the fact that Concrete Materials **made what appear to have been good faith initial disclosures** and responses to Mahan Construction's interrogatories, as well as the fact that their responses included plausible explanations as to why their responses were adequate, Mahan Construction **never requested the district court's assistance in obtaining anything further**." *Id.* at *4. (Emphasis added).

This is precisely what has occurred here.  Hodell submitted good faith Initial Disclosures detailing the categories and amount of damages it would seek.  Hodell's Initial Disclosures complied with the letter of Rule 26(a)(1)(A)(iii) and the law of this Circuit -- as no court in this Circuit has adopted the standard now being urged by SAP.  If SAP believed it was entitled to more extensive analysis pursuant to the non-binding cases it cites from other jurisdictions, it was incumbent upon SAP to bring that issue to light four years ago, not a few months before trial.

6

SAP's Motion must be seen for what it is – a last-ditch effort to exclude record evidence from trial under the guise of an untimely motion *in limine* filed in bad faith.

>Respectfully submitted,
>
>/s/ P. Wesley Lambert
>Christopher J. Carney (0037597)
>Sharon A. Luarde (0071625)
>P. Wesley Lambert (0076961)
>BROUSE MCDOWELL
>600 Superior Ave. E., Suite 1600
>Cleveland, Ohio 44114
>(216) 830-6830 phone
>(216) 830-6807 fax
>CCarney@brouse.com
>SLuarde@brouse.com
>WLambert@brouse.com
>
>*Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 19, 2015, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the document through the Court's electronic filing system.

>/s/ P. Wesley Lambert
>P. Wesley Lambert, Esq. (0076961)
>*Attorney for Plaintiff Hodell-Natco Industries, Inc.*