## *Brandt Indus. v. Pitonyak Mach. Corp.*

United States District Court for the Southern District of Indiana, Indianapolis Division

September 12, 2012, Decided; September 12, 2012, Filed

CASE NO. 1:10-cv-0857-TWP-DML

**Reporter**

2012 U.S. Dist. LEXIS 131096; 2012 WL 4027241

BRANDT INDUSTRIES, LTD., Plaintiff, v. PITONYAK MACHINERY CORPORATION, Defendant.PITONYAK MACHINERY CORPORATION. Counter-Plaintiff, v. BRANDT INDUSTRIES, LTD., and BRANDT AGRICULTURAL PRODUCTS, LTD., Counter-Defendants.

**Subsequent History:** Reconsideration denied by, Motion granted by, Motion denied by *Brandt Indus., LTD. v. Pitonyak Mach. Corp., 2012 U.S. Dist. LEXIS 137034 (S.D. Ind., Sept. 24, 2012)*

**Prior History:** *Brandt Indus., Ltd. v. Pitonyak Mach. Corp., 2012 U.S. Dist. LEXIS 122903 (S.D. Ind., Aug. 29, 2012)*

**Counsel:** [*1] For BRANDT INDUSTRIES LTD., Plaintiff, Counter Defendant: Carrie A. Shufflebarger, Heather M. Hawkins, THOMPSON HINE LLP, Cincinnati, OH.

For PITONYAK MACHINERY CORPORATION, Defendant, Consol Counter Defendant, Counter Claimant: Aaron M. Staser, Paul B. Hunt, BARNES & THORNBURG LLP, Indianapolis, IN; Daniel T. Earle, James E. Shlesinger, PRO HAC VICE, SHLESINGER ARKWRIGHT & GARVEY, LLP, Alexandria, VA.

For PITONYAK MACHINERY CORPORATION, Consolidated, 1:11-cv-233-TWP-DML, Consol Plaintiff: Aaron M. Staser, Paul B. Hunt, BARNES & THORNBURG LLP, Indianapolis, IN; Daniel T. Earle, James E. Shlesinger, SHLESINGER ARKWRIGHT & GARVEY, LLP, Alexandria, VA.

For BRANDT INDUSTRIES LTD, Consolidated, 1:11-cv-233-TWP-DML, Consol Defendant, Consol Counter Claimant: Carrie A. Shufflebarger, THOMPSON HINE LLP, Cincinnati, OH.

For BRANDT AGRICULTURAL PRODUCTS LTD, Consolidated, 1:11-cv-233-TWP-DML, Consol Defendant, Consol Counter Claimant: Carrie A. Shufflebarger, THOMPSON HINE LLP, Cincinnati, OH.

For BRANDT AGRICULTURAL PRODUCTS, LTD., Counter Defendant: Carrie A. Shufflebarger, Heather M. Hawkins, THOMPSON HINE LLP, Cincinnati, OH.

**Judges:** Hon. Tanya Walton Pratt, United States District Judge.

**Opinion by:** Tanya Walton Pratt

## Opinion

### ENTRY [*2] ON PENDING MOTIONS IN LIMINE

This matter is before the Court on Plaintiff Brandt Industries, Ltd. ("Brandt Industries"), motion *in limine* (Dkt. 138) and Defendant Pitonyak Machinery Corporation's ("PMC") pending Motions in *Limine* (Dkt 142, 143, 144, 145 and 146). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).* Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation,

2012 U.S. Dist. LEXIS 131096, *3

relevancy, and prejudice may be resolved in context. *Id. at 1400-01*. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.*

## A. Brandt Industries' Motion in *Limine* (Dkt. 138)

Brandt Industries argues that PMC has never identified any categories or amounts of monetary damages, or any evidence or documents to support the existence of such damages it claims as a result of Brandt Industries alleged infringement, [*3] nor has PNC produced any damages computations or supporting documents for any alleged monetary damages", as required by *Federal Rule of Civil Procedure 26(a)(1)(A)(iii)*. Dkt. 138 at 4. As such, Brandt Industries moves the Court to exclude Pitonyak Machinery Corporation ("PMC") from making any reference at trial to evidence of its alleged monetary damages. PMC contends that it should be entitled to present evidence regarding the nature of the harm it suffered when Mr. Pitonyak presented testimony under *Rule 30(b)(6)* that PMC had suffered damages as a result of its customers being confused.

Pursuant to *Federal Rule of Civil Procedure 26(a)(1)(A)(iii)*, a party is required to disclose to the opposing party "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under *Rule 34* the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered...." *Fed.R.Civ.P. 26(a)(1)(A)(iii)*. Put another way, "[a] party's *Rule 26(a)(1)(A)(iii)* disclosure must state the types of damages that the [*4] party seeks, must contain a specific computation of each category, and must include documents to support the computations." *Design*

*Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006)*. In addition, *Rule 26(e)* requires a party to "supplement or correct its [*Rule 26(a)*] disclosure or response...in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect...." *Fed.R.Civ.P. 26(e)(1)(A)*.

When a party "fails to provide information or identify a witness as required by *Rule 26(a)* or *(e)* the party is not allowed to use that information or witness to supply evidence...at a trial, unless the failure was substantially justified or is harmless." *Fed.R.Civ.P. 37(c)(1)*. Further, trial courts are entrusted with broad discretion under *Rule 37(c)(1)* to determine whether a Rule 26 violation is justified or harmless. *Mid-Amer. Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)*. The Seventh Circuit has provided a list of factors a district court should consider in exercising this discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; [*5] (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)*.

In this case, PMC's *Rule 26(a)(1)(A)(iii)* disclosure stated that "PMC is currently investigating monetary damages it has suffered...but PMC has no damages computations or supporting documents at this time." Dkt. 138-1 at 4. To this day, PMC has not supplemented its *Rule 26(a)* disclosures or identified any damage computations or supporting documents following the submission of its initial disclosures. Instead, PMC argues that Brandt adequately received information of its claims of damages during its *Rule 30(b)(6)* deposition. *See* Dkt. 155 at 1-2. For example, Mr. Pitonyak responded to a question concerning how PMC was harmed, by stating that "[PMC] is losing control of our Brandt Mark in the United States on agricultural equipment. Customers are

confused. They don't know which company to go to." Dkt. 138-2 at 182-2 at 182:13-15. Accordingly, PMC argues that this testimony adequately informed Brandt as to the categories of damages it sustained. The Court disagrees.

Failure to disclose [*6] a damages computation under *Rule 26(a)(1)(A)(iii)* cannot be subsequently satisfied by a witness's *Rule 30(b)(6)* deposition testimony generally discussing damages. *See Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2012 U.S. Dist. LEXIS 63707, 2012 WL 1596722, at *5 (E.D.N.C. May 7, 2012)*. The Court finds *Silicon Knights, Inc. v. Epic Games, Inc,* to be instructive. In *Silicon Knights,* the plaintiff faced a motion to exclude its evidence and arguments related to damages at trial due to its failure to disclose its damage computations pursuant to *Rule 26(a)(1)(A)(iii). 2012 U.S. Dist. LEXIS 63707, [WL] at *1*. In response to the motion, plaintiff argued that the defendant received information of its damages during a Rule 30(b)(6) deposition from its former vice president. *2012 U.S. Dist. LEXIS 63707, [WL] at *5*. The Court rejected plaintiff's argument and held that "[Defendant's] ability to depose witnesses who had some knowledge of [Plaintiff's] damages did not satisfy *Rule 26(a)(1)(A)(iii)*. *Id.* Similar to plaintiff in *Silicon Knights,* Mr. Pitonyak's deposition testimony only generally touched on the issue of damages and did not set forth any specific damage computations supported by documentary evidence. In addition, Mr. Pitonyak testified that he did not know [*7] what PMC's alleged monetary damages were when acting as the corporation's designated deponent This type of testimony does not, under the circumstances presented here, satisfy *Rule 26(a)(1)(A)(iii). See Clayman v. Starwood Hotels & Resorts Worldwide, 343 F. Supp. 2d 1037, 1047 (D. Kan. 2004)* (concluding that under *Rule 26* "defendant [was] entitled to specific computation of plaintiff's damages and [was] entitled to...the documents and other evidentiary material on which such computation is based."). Because PMC did not

supplement its *Rule 26(a)(1)(A)(iii)* disclosure pursuant to *Rule 26(e)*, the Court must determine the appropriate remedy under *Rule 37*.

As discussed previously, *Rule 37* gives a court discretion to preclude a party from introducing evidence to establish damages when the party fails to make a *Rule 26(a)(1)(A)(iii)* disclosure. Applying the *Caterpillar* factors, PMC's assertion that it may have suffered damages due to Brandt's use of the mark at issue should not come as a complete surprise to Brandt. Here, PMC asserted in its Rule 26 disclosure that it was investigating monetary damages. However, Brandt would not have of been aware of the extent of monetary damages suffered [*8] by PMC due to its lack of computation of damages. As such, Brandt has been unfairly prejudiced because it was not reasonably apprised of the extent of PMC's alleged damages. Because the parties are less than three weeks from the start of trial, Brandt would not be in a position to cure this prejudice. Accordingly, Plaintiff's motion in *limine* is granted, and Defendant is precluded from presenting evidence or arguments at trial concerning specific computation of its alleged damages. This ruling, however, does not preclude Defendant from presenting it *Rule 30(b)(6)* testimony at trial in front of the jury, including Mr. Pitonyak's discussion of harm suffered by PMC.

## B. Defendant's Motions in *Limine* (Dkt. 142-146)

PMC has filed five motions in *limine*. The first seeks a declaration that PMC has presumptive nationwide trademark rights in the BRANDT mark. Dkt. 142. The second seeks to preclude Brandt Industries from arguing that there is no likelihood of confusion between PMC's and Brandt Industries' use of the BRANDT mark. Dkt. 143. The third seeks to preclude Brandt Industries from asserting a claim for trademark infringement. Dkt. 144. The fourth seeks to preclude Brandt Industries from [*9] mentioning or discussing at trial its federal trademark

2012 U.S. Dist. LEXIS 131096. *9

registration. Dkt. 145. The fifth seeks to limit Brandt Industries' testimony regarding advertising expenditures and trade show participation based on Brandt Industries Rule 30(b)(6) deposition. Dkt. 146. Each motion will be addressed in turn.

## 1. Presumptive Nationwide Trademark Rights (Dkt. 142)

Citing to *In re Beatrice Foods Co., 429 F.2d 466, 57 C.C.P.A. 1302 (C.C.P.A. 1970)*, PMC seeks a declaration by the Court that it has presumptive nationwide trademark rights in the BRANDT mark. The declaration PMC seeks, however, is not appropriate for a motion in *limine*. Motions in *limine* perform "a gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997)*. Here, PMC is not asking the Court to consider the admissibility of certain evidentiary submissions; rather it appears that PMC is attempting to raise legal theories that have already been considered in a motion for summary judgment as well as in a motion for reconsideration. [*10] *See* Dkt. 105 and Dkt. 126. Accordingly, the Court denies PMC's motion in *limine* on this issue.

## 2. No Likelihood of Confusion (Dkt. 143)

PMC argues that Brandt should be precluded from arguing that there is no likelihood of confusion between PMC's and Brandt's use of the BRANDT mark at trial. In particular, PMC emphasizes that Brandt based its opposition of PMC's federal registration application of the mark on the grounds that a likelihood of confusion existed between the parties' use of the mark. Because PMC's federal registration application was subsequently opposed by Brandt at the United States Patent and Trademark Office ("PTO"), it asserts Brandt is judicially estopped from arguing no likelihood of confusion exists at trial. Brandt counters PMC

arguments by asserting that it did not concede to the PTO that there is a likelihood of confusion. In addition, it asserts that judicial estoppel is not even applicable with respect to this issue because the Trademark Trial and Appeal Board ("TTAB") has yet to issue a ruling on the merits of Brandt's opposition.

After reviewing the arguments presented by both sides, the Court finds that Brandt is not precluded from litigating the issue of [*11] likelihood of confusion at trial in front of the jury. Here, PMC's judicial estoppel argument does not carry the day because it cannot establish a required element of the doctrine—that the TTAB adopted Brandt's position. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 527 (7th Cir. 1999)* (stating that one of prerequisites to the application of judicial estoppel is that "the party to be estopped must have convinced the first court to adopt its position"). At Brandt Industries request, the TTAB immediately suspended Brandt Industries' opposition proceeding against PMC, which the TTAB had a right to do in light of the filing of this present civil action. *See 37 C.F.R. § 2.117(a)* ("Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a party or parties to a pending case are engaged in a civil action or another Board proceeding which may have a bearing on the case, proceedings before the Board may be suspended until termination of the civil action or the other Board proceeding."). As such, PMC's argument that Brandt Industries convinced the TTAB of its position on the issue of likelihood of confusion cannot be sustained. Thus, [*12] Brandt Industries is not precluded from litigating the issue of likelihood confusion at trial. PMC, of course, is free to present evidence and argument of Brandt Industries inconsistent positions on this issue. Accordingly, PMC's motion in *limine* on this issue is denied.

## 3. Precluding Brandt Industries from Asserting Trademark Infringement (Dkt. 144)

Next, PMC argues that Brandt Industries should be precluded from asserting trademark infringement against it based on statements made by Mr. Gavin Semple during Brandt's Rule 30(b)(6) deposition. In support of its motion, PMC emphasizes statements made by Mr. Semple indicating that he had no knowledge of harm, actual confusion, or damage being suffered by Brandt Industries due to PMC's use of the BRANDT mark in connection with agricultural equipment. Based from these statements, PMC asserts that Brandt Industries has admitted that it has not been damaged; and therefore, it is without a remedy and must be precluded from raising the issue of trademark infringement at trial. The Court disagrees.

PMC's request to preclude Brandt Industries from raising an infringement claim at this stage in the litigation through a motion in *limine* is inappropriate. [*13] *See Jonasson, 115 F.3d at 440*. Furthermore, while "[a] corporation is bound by its Rule 30(b)(6) testimony...this does not mean that the witness has made a judicial admission that formally and finally decides an issue." *Canal Barge Co. v. Commonwealth Edison Co., No. 98 C 0509, 2001 U.S. Dist. LEXIS 10097, 2001 WL 817853, at *1 (N.D. Ill. July 19, 2001)* (internal quotations and citation omitted). In its Complaint, Brandt Industries has alleged that it has suffered damages due to PMC's use of the BRANDT mark and seeks injunctive relief and, as such, may present evidence at trial in support of its claims. *See* Dkt. 1. For these reasons, PMC's motion in *limine* on this issue is denied.

## 4. Preclude Mention of Brandt's Federal Trademark Registration (Dkt. 145)

PMC seeks to preclude Brandt from mentioning or discussing at trial its federal trademark registration. In the Entry on Defendant's Motion for Summary Judgment (Dkt. 105), the Court dismissed Brandt Industries' claim alleging infringement of its federally registered trademark in connection with custom manufacture and fabrication of machines and railroad equipment. *See* Dkt. 105 at 18-19. Because the dispute in this present action involves the BRANDT mark in connection [*14] with agricultural equipment, the Court finds that references to Brandt's federally registered trademark would likely cause confusion amongst the jury members. Additionally, Brandt has indicated that it has no intention of introducing evidence of its federal trademark registration at trial. Accordingly, PMC's motion in *limine* on this issue is granted, and Brandt is hereby precluded from mentioning or discussing its federal trademark registration.

## 5. Limit Testimony as to Advertising Expenditures and Trade Show Participation (Dkt. 146)

Lastly, PMC argues that Brandt Industries should be precluded from presenting testimony regarding advertising expenditures and trade show participation based on Brandt Industries Rule 30(b)(6) deposition. Specifically, it alleges that Brandt Industries' corporate representative, Mr. Semple, was not adequately prepared for his deposition and, as such, provided limited answers to questions concerning Brandt's advertising expenditures and trade show attendance. *See Canal Barge, 2001 U.S. Dist. LEXIS 10097, 2001 WL 817853 at *1* (noting that the designated witness of a corporation under *Rule 30(b)(6)* represents the knowledge and opinions of the business on specific topics and the corporation [*15] "must adequately prepare [the] witness[] to address these matters"). A Rule 30(b)(6) deponent's testimony does not represent the knowledge or opinions of the deponent, but that of the business entity. *United States v. Taylor, 166 F.R.D. 356 at 361*. In effect, the deponent is "speaking for the corporation," presenting the corporation's position on the topic. *Id.* The deponent must testify to both the facts within the knowledge of the business entity and the entity's opinions and subjective beliefs, including the entity's interpretation of

Case: 1:08-cv-02755-DCN  Doc #: 265-1  Filed: 01/19/15  6 of 35.  PageID #: 14621

Page 6 of 6
2012 U.S. Dist. LEXIS 131096, *15

events and documents. *Id.* Because Mr. Semple represented the knowledge of the corporation, PMC seeks to limit evidence of Brandt's advertising expenditures and trade show attendance to the information and documents referenced by Mr. Semple at Brandt's Rule 30(b)(6) deposition.

In response to PMC's arguments, Brandt claims that Mr. Semple was adequately prepared and consistently referenced documents produced by Brandt during the deposition that indicated its advertising expenditures and trade show participation. However, it asserts that "PMC's counsel opted to memory test Mr. Semple without the data he provided, making it impossible for Mr. Semple to [*16] fully answer PMC's questions on advertising expenditure and tradeshow information." Dkt. 169 at 4. In reviewing the designated portions of Mr. Semple's Rule 30(b)(6) deposition, it appears Mr. Semple did reference documents containing information that were produced by Brandt; however, the manner of questioning by PMC's did not allow him to refer to such documents. "[A] deponent must testify to both the facts within the knowledge of the business entity and the entity's opinions and subjective beliefs, including the entity's interpretation of events and documents." *Canal Barge, 2001 U.S. Dist. LEXIS 10097, 2001 WL 817853 at *1.* Here,

it appears that Mr. Semple was not asked or given an opportunity to refer to a number of documents that Brandt Industries produced which would have assisted him in adequately addressing the issues of advertising expenditures and trade show participation. Further, it is unclear to the Court what specific evidence PMC seeks to exclude. As such, the Court will take this motion *in limine* under advisement and counsel should be prepared to further discuss this motion at the final pretrial conference.

## C. Conclusion

For the reasons set forth above, Brandt Industries Motion in *Limine* Dkt. 138 [*17] and PMC's Motion in *Limine* Dkt. 145 are **GRANTED**, PMC's Motions in *Limine* Dkt. 142, 143, 144 are **DENIED** and PMC's Motion *in Limine* Dkt. 146 is **UNDER ADVISEMENT**.

SO ORDERED.

9/12/2012

/s/ Tanya Walton Pratt

Hon. Tanya Walton Pratt, Judge

United States District Court

Southern District of Indiana

## *Silicon Knights, Inc. v. Epic Games, Inc.*

United States District Court for the Eastern District of North Carolina, Western Division

May 7, 2012, Decided; May 7, 2012, Filed

No. 5:07-CV-275-D

**Reporter**

2012 U.S. Dist. LEXIS 63707; 2012 WL 1596722

SILICON KNIGHTS, INC., Plaintiff, v. EPIC GAMES, INC., Defendant.

**Subsequent History:** Costs and fees proceeding at, Motion granted by, in part, Motion denied by, in part, Injunction granted at, in part, Injunction denied by, in part, Stay denied by *Silicon Knights, Inc. v. Epic Games, Inc., 2012 U.S. Dist. LEXIS 160529 (E.D.N.C., Nov. 7, 2012)*

**Prior History:** *Silicon Knights, Inc. v. Epic Games, Inc., 2011 U.S. Dist. LEXIS 147633 (E.D.N.C., Dec. 22, 2011)*

## Case Summary

### Overview

The court found that plaintiff's disclosure of a new damages computation more than two years after the close of discovery and approximately one week before trial would surprise and prejudice defendant. Plaintiff's failure to comply with *Fed. R. Civ. P. 26(a)(1)(A)(iii)* and *Rule 26(e)* deprived defendant of the opportunity to prepare, and thus has prejudiced defendant. Defendant would be surprised and profoundly prejudiced by whatever new computation of damages plaintiff sought to propound and support. Good cause simply did not exist to delay trial and reopen discovery.

### Outcome

The motion to preclude was granted in part.

**Counsel:** [*1] For Silicon Knights, Inc., an Ontario (Canada) Corporation, Plaintiff, Counter Defendant: Betsy Cook Lanzen, Hayden J. Silver, III, LEAD ATTORNEYS, Marina Chase Carreker, Womble Carlyle Sandridge & Rice, PLLC, Raleigh, NC.

For Epic Games, Inc., a Maryland Corporation, Defendant: Douglas W. Kenyon, R. Dennis Fairbanks, LEAD ATTORNEYS, Canon Pence, Sean Michael Braswell, Hunton & Williams, LLP, Raleigh, NC; Hayden J. Silver, III, LEAD ATTORNEY, Womble Carlyle Sandridge & Rice, PLLC, Raleigh, NC.

For Ubisoft, Inc., unknown: Pearlynn G. Houck, LEAD ATTORNEY, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC.

For Epic Games, Inc., a Maryland Corporation, Counter Claimant: Douglas W. Kenyon, LEAD ATTORNEY, Hunton & Williams, LLP, Raleigh, NC.

**Judges:** JAMES C. DEVER III, Chief United States District Judge.

**Opinion by:** JAMES C. DEVER III

## Opinion

### ORDER

On April 27, 2012, Epic Games, Inc. ("Epic" or "defendant") filed a motion to preclude Silicon Knights, Inc. ("SK" or "plaintiff") from offering evidence of, or arguments about, SK's monetary damages at trial [D.E. 721]. Epic also filed a supporting memorandum with attached exhibits [D.E. 722]. On May 1, 2012, SK responded in opposition and attached exhibits [D.E. 744]. On

May [*2] 2, 2012, the court held the pretrial conference, during which it heard arguments on Epic's motion. As explained below, the court grants the motion in part and precludes SK from offering evidence of, or arguments about, a computation of SK's monetary damages on SK's claims. If SK prevails on any of its claims, it shall receive an award of nominal damages (i.e., $1.00) as to any such claim. This order, however, does not bar SK from offering evidence of, or making arguments about, Epic's alleged damages on its counterclaims.

I.

*Federal Rule of Civil Procedure 26(a)(1)(A)(iii)* requires a party to disclose to its opposing party "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." *Fed. R. Civ. P. 26(a)(1)(A)(iii)*. A party cannot fulfill this requirement by providing "undifferentiated financial statements; it requires a 'computation,' supported by documents." *Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006)*; see *Bullard v. Roadway Express, 3 F. App'x 418, 420-21 (6th Cir. 2001)* [*3] (per curiam) (unpublished); *Frontline Med. Assocs., Inc. v. Coventry Health Care, 263 F.R.D. 567, 569 (C.D. Cal. 2009)* ("Simply producing financial statements . . . is not sufficient."); *Shock v. Aerospace Integration Corp., No. 3:08cv304/RV/EMT, 2009 U.S. Dist. LEXIS 22435, 2009 WL 595923, at *4-5 (N.D. Fla. Mar. 6, 2009)*. Instead, a party's *Rule 26(a)(1)(A)(iii)* disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations. See, e.g., *Design Strategy, Inc., 469 F.3d at 295*.

*Rule 26(e)* requires a party to "supplement or correct its [*Rule 26(a)*] disclosure or response . . .

in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." *Fed. R. Civ. P. 26(e)(1)(A)*. Moreover, a party may supplement its *Rule 26(a)(1)(A)(iii)* "computation" by producing an expert report (including documents) that complies with *Rule 26(a)(1)(A)(iii)*. Furthermore, when a party receives additional documents that it intends to use to prove its damages, or when its previous damages computation becomes otherwise inadequate, a party must supplement its *Rule 26(a)(1)(A)(iii)* [*4] computation. See *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1229 n.2 (10th Cir. 1999)*; *Hertz v. Luzenac Am., Inc., No. CIVA04CV1961LTBCBS, 2006 U.S. Dist. LEXIS 25945, 2006 WL 994431, at *10 (D. Colo. Apr. 13, 2006)* (unpublished).

When a party "fails to provide information or identify a witness as required by *Rule 26(a)* or *(e)*, the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Fed. R. Civ. P. 37(c)(1)*. *Rule 37(c)(1)* provides trial courts wide discretion to remedy violations of *Rule 26(a)* or *Rule 26(e)*. In exercising its "broad discretion," a trial court determines whether a party's failure to comply with *Rule 26(a)* or *Rule 26(e)* was "substantially justified or is harmless" by considering

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)*.

A.

In [*5] its motion to exclude, Epic argues that

1. In its *Rule 26(a)* disclosures, SK identified several categories of alleged injury for which it seeks to recover in this action but failed to provide any computation of its alleged damages as required by *Rule 26(a)(1)(A)(iii)*. Instead, SK deferred to "expert analysis and computation."

2. In supplementing its initial disclosures, SK never provided a computation of its alleged damages.

3. SK proffered the report of Terry Lloyd for its expert analysis and computation of damages. SK did not proffer any other expert witness on the issue of damages.

4. On December 22, 2011, this Court excluded Lloyd's report and precluded him from testifying about damages in this action.

5. Pursuant to *Rule 37(c)(1)*, the failure to disclose information required under *Rule 26(a)* results in that information being precluded from use at trial unless the failure to disclose was substantially justified or harmless. SK's failure to disclose its computation of damages was neither substantially justified nor harmless.

Def.'s Mot. Exclude [D.E. 721] 1-2. In its memorandum, Epic notes that SK served its initial disclosures on October 3, 2007. Def.'s Mem. Supp. Exclude [D.E. [*6] 722] 1. In a section of its initial disclosures entitled "COMPUTATION OF DAMAGES," SK identified several categories of alleged injury and stated,

As set forth in its Complaint, SK has been severely damaged by Defendant and SK has several bases upon which it may recover compensatory and punitive

damages, as well as other relief, from Epic. Those specific damages calculations will be the subject of expert analysis and computation. In good faith, however, SK believes that its damages will total several million dollars due to fraud and other tortuous [sic] conduct, breach of contract and substantial damages from ill-gotten gains from collecting the license fees under false pretenses should be disgorged.

. . .

Documents in support of SK's damages will be produced upon a mutually agreeable date, to the extent such documents have not already been produced. In addition, some of the documents in support of SK's monetary damages are in the possession, custody, and control of third parties, including Defendant. SK anticipates that its continuing investigation of this matter and/or discovery in this action may lead to additional information, witnesses, and/or documentation relevant to SK's damages [*7] in this action, and SK expressly reserves its right to supplement this damage computation with such additional information, witnesses, expert analysis, and/or documentation as required by the Federal Rules of Civil Procedure.

Def.'s Mem. Supp. Mot. Exclude, Ex. 1 ("SK's Initial Disclosures") 18-19.

On July 15, 2008, SK served its first supplemental initial disclosures. Def.'s Mem. Supp. Mot. Exclude, Ex. 2 ("SK's First Supplemental Initial Disclosures"). SK provided the identical disclosure as to "COMPUTATION OF DAMAGES." Id. 25.

On March 23, 2009 and December 4, 2009, SK again supplemented its initial disclosures. See Def.'s Mem. Supp. Mot. Exclude, Ex. 3 ("SK's Third Supplemental Initial Disclosures"); Def.'s

Case: 1:08-cv-02755-DCN  Doc #: 265-1  Filed: 01/19/15  10 of 35.  PageID #: 14625

Page 4 of 11
2012 U.S. Dist. LEXIS 63707, *7

Mem. Supp. Mot. Exclude, Ex. 4 ("SK's Third [sic] Supplemental Initial Disclosures"). These supplements do not include a section entitled "COMPUTATION OF DAMAGES." See SK's Third Supplemental Initial Disclosures; SK's Third [sic] Supplemental Initial Disclosures.

On December 4, 2009, non-expert discovery closed and on June 4, 2010, expert discovery closed. See Mar. 5, 2010 Order Amending Scheduling Order [D.E. 492] 1; Oct. 2, 2009 Order Amending Scheduling Order [D.E. 400] 2; Scheduling [*8] Order [D.E. 33].

Before the close of expert discovery, SK produced the report of its damages expert, Terry Lloyd ("Lloyd") ("Lloyd Report") [D.E. 564-1-3], and Lloyd's report in rebuttal to Epic's claimed damages ("Lloyd Rebuttal Report") [D.E. 621-2]. The Lloyd Report contains a "computation of each category of damages" claimed by SK and a discussion of the documents or other evidentiary material on which the computation was based. See Lloyd Report [D.E. 564-1] 41; cf. Fed. R. Civ. P. 26(a)(1)(A)(iii). The Lloyd Report constitutes a supplement under Rule 26(e) and satisfied SK's obligation under Rule 26(a)(1)(A)(iii). See Fed. R. Civ. P. 26(e). On May 26, 2010, Epic deposed Lloyd. See [D.E. 564-4].

On July 8, 2011, Epic moved to exclude Lloyd's reports and testimony [D.E. 620]. The motion and SK's opposition were fully briefed. On November 30, 2011, the court held a hearing on Epic's motion to exclude. On December 22, 2011, the court granted Epic's motion to exclude expert evidence from Lloyd regarding SK's damages and in rebuttal to Epic's damages. See Lloyd Order [D.E. 697]. The court determined that Lloyd's reports and proposed testimony were based on an unreliable methodology and [*9] therefore were not admissible. Id. 10-32.

**B.**

In opposing Epic's motion to exclude, SK initially focuses on whether Epic complied with Rule 26(a)(1)(A)(iii) and Rule 26(e). Specifically, SK argues that Epic's initial disclosures and supplements concerning its computation of damages under Rule 26(a)(1)(A)(iii) were inadequate. Pl.'s Mem. Opp'n Mot. Exclude [D.E. 744] 3, 9-10, 16-17; see Pl.'s Mem. Opp'n Mot. Exclude, Ex. 6 ("Epic's Initial Disclosures") 7-8. Thus, according to SK, if this court precludes SK from offering at trial evidence of, or arguments about, SK's monetary damages, then the court likewise must bar Epic from offering at trial evidence of, or arguments about, Epic's monetary damages. Pl.'s Mem. Opp'n Mot. Exclude 3, 16-17.

The court rejects SK's argument. The record shows that Epic timely produced Phillip Beutel's ("Beutel") expert report ("Beutel Report") during discovery in this case [D.E. 636-7]. Just as the Lloyd Report was SK's Rule 26(e) supplement to its Rule 26(a)(1)(A)(iii) computation, the Beutel Report constitutes Epic's Rule 26(e) supplement to its Rule 26(a)(1)(A)(iii) computation. See Fed. R. Civ. P. 26(e). The Beutel Report remains in the case; therefore, [*10] this court need not explore whether Epic's initial disclosures, independent of the Beutel Report, satisfied Rule 26(a)(1)(A)(iii). In contrast to the Beutel Report, the Lloyd Report is no longer in this case as a result of the court's December 22, 2011 ruling. Accordingly, this court must determine whether, independent of the Lloyd Report, SK complied with Rule 26(a)(1)(A)(iii) and Rule 26(e). If SK did, it may present such evidence and argument to the jury. If SK did not, the court must determine the remedy under Rule 37(c)(1) for SK's non-compliance.

Not surprisingly, SK argues that, independent of the Lloyd Report, it complied with Rules 26(a)(1)(A)(iii) and 26(e). First, SK notes that it stated in its initial and first supplemental initial disclosures that it expected its damages for the various claims in its complaint to be "several million dollars . . . ." Pl.'s Mem. Opp'n Mot. Exclude 4. SK then argues that these statements

were adequate damages computations. See id. However, a *Rule 26(a)(1)(A)(iii)* disclosure must include "more than a lump sum statement of the damages allegedly sustained." *City & Cnty. of S.F. v. Tutor-Saliba Corp., 218 F.R.D. 219, 221 (N.D. Cal. 2003)*. Instead, [*11] the rule "contemplates some analysis," including an analysis of the damages sought as to each claim. *Id. at 221-22* (collecting cases). SK's statements that it expected its damages to be "several million dollars" lack precision and analysis. Accordingly, SK did not satisfy its *Rule 26(a)(1)(A)(iii)* obligation with these statements. Moreover, SK stated in the same documents that its "specific damages calculations will be the subject of expert analysis and computation." SK's Initial Disclosures 18; SK's First Supplemental Initial Disclosures 25. This statement bolsters the conclusion that SK did not intend for its "several million dollars" statement to serve as its *Rule 26(a)(1)(A)(iii)* disclosure. Rather, SK clearly intended to supplement under *Rule 26(e)*.

SK also argues that it responded to Epic's request for "documents relating to . . . damages" with "several million pages of documents." Pl.'s Mem. Opp'n Mot. Exclude 4 (quotation and emphasis omitted). [1] However, SK does not contend that the disclosed documents include a specific damages computation. See id. Disclosing damages-related documents alone, without disclosing a computation based on such documents, does not satisfy a party's [*12] *Rule 26(a)(1)(A)(iii)* obligation. See,

e.g., *Design Strategy, Inc., 469 F.3d at 295*; *Bullard, 3 F. App'x at 420-21*; *Gould Paper Corp. v. Madisen Corp., 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009)* (holding that defendants' disclosure of "six hundred and twenty-nine pages . . . which document[ed] and detail[ed] the basis for [defendants'] damage claim" did not satisfy *Rule 26(a)(1)(A)(iii)* (quotation omitted)).

Similarly, SK argues that Epic served interrogatories and requests for admission that raised damages-related issues to which SK responded. Pl.'s Mem. Opp'n Mot. Exclude 4-5; see Pl.'s Mem. Opp'n Mot. Exclude, Ex. 4 ("Epic's Second Set of [*13] Interrogatories") 9-11. [2] However, SK does not argue (or produce evidence showing) that it included in its interrogatory responses or in its responses to requests for admission specific damages computations supported by documentary evidence. See *Gillum v. ICF Emergency Mgmt. Servs., L.L.C., Civil Action No. 08-314-C-M2, 2009 U.S. Dist. LEXIS 43344, 2009 WL 1458200, at *3 (M.D. La. May 21, 2009)* (holding that "vague assertions of damages" contained in interrogatory answers do not fulfill a party's *Rule 26(a)(1)(A)(iii)* obligation); cf. *Fed. R. Civ. P. 26(a)(1)(A)(iii)*.

Next, SK argues that it produced "multiple witnesses on financial and damages related topics . . . ." Pl.'s Mem. Opp'n Mot. Exclude 5 (emphasis omitted). For example, SK notes that before deposing SK's president, Dennis Dyack ("Dyack"), [*14] and SK's chief financial officer, Mike Mays

---

[1] Specifically, SK states that it disclosed its

(1) profit and loss statements; (2) books; (3) ledgers; (4) audited and unaudited annual reports; (5) tax returns and associated schedules; (6) every videogame development contract; (7) every amendment to those videogame development contracts; and (8) the various schedules of man-hours, expenses, and anticipated profits connected with those videogame development contracts.

Pl.'s Mem. Opp'n Mot. Exclude 2. SK also notes that it disclosed specific exhibits that may have some bearing on its damages. Id. 9.

[2] SK attached a copy of Epic's interrogatories to its opposition memorandum. SK, however, did not attach its answers to those interrogatories. See Epic's Second Set of Interrogatories. Thus, the court does not know SK's responses. Moreover, Epic's interrogatories do not lend themselves to responses that would include specific damages computations supported by documentary evidence. Cf. *Fed. R. Civ. P. 26(a)(1)(A)(iii)*.

("Mays"), under *Rule 30(b)(6)*, Epic stated its intention to ask Dyack and Mays damages-related questions. *Id.* 8. SK then argues that "Epic voluntarily elected not to pursue damages inquiries" when deposing Dyack and Mays. *Id.* SK also contends that Epic received information about SK's damages during the deposition of Robert DePetris ("DePetris"), a former SK vice president. *See id.* 5, 8.

In response to SK's argument, Epic noted at oral argument on the motion to exclude that it did ask Mays about damages during SK's *Rule 30(b)(6)* deposition and that Mays stated that he "[had] not calculated an amount" of SK's damages. *See* Mays Dep. [D.E. 621-4] 6 (Dep. 20). As for DePetris, DePetris did testify generally as to the revenue SK expected to generate from Too Human. *See* DePetris Dep. [D.E. 533-18] 53-57 (Dep. 210-25). However, DePetris did not compute SK's alleged damages, much less offer documents to support such a computation. *See id.* Moreover, Epic correctly notes that making witnesses available is not a substitute for the computation and analysis that *Rule 26(a)(1)(A)(iii)* requires. *See, e.g., Design Strategy, Inc.,* 469 F.3d at 295-96.

In *Clayman v. Starwood Hotels & Resorts Worldwide,* 343 F. Supp. 2d 1037 (D. Kan. 2004), [*15] plaintiff made an argument similar to SK's when trying to defend its failure to otherwise disclose a damages computation. *Id. at 1047* ("Plaintiff claims that defendant has not been prejudiced because defendant had the opportunity to discover information about plaintiff's damages through the deposition of Dr. Younger, and therefore such non-compliance [with *Rule 26(a)(1)(A)(iii)*] is harmless."). The court rejected plaintiff's argument, holding that "defendant [was] entitled to a specific computation of plaintiff's damages, and [was] entitled to . . . the documents and other evidentiary material on which such computation is based." *Id*; see *Sauer v. Exelon Generation Co., LLC, No. 10 C 3258, 2011 U.S.*

*Dist. LEXIS 90511, 2011 WL 3584780, at *9-10 (N.D. Ill. Aug. 15, 2011).* As in *Clayman,* Epic's ability to depose witnesses who had some knowledge of SK's damages did not satisfy *Rule 26(a)(1)(A)(iii).* In sum, independent of the Lloyd Report, SK did not comply with *Rule 26(a)(1)(A)(iii).*

## C.

*Rule 26(e)* required SK to supplement its *Rule 26(a)(1)(A)(iii)* disclosure "in a timely manner" after SK learned that its disclosure was materially "incomplete or incorrect . . . ." *See Fed. R. Civ. P. 26(e).* SK did not provide a damages [*16] computation other than the ones contained in the Lloyd Report. Therefore, in light of the expiration of the period for SK to disclose its experts, *see* Mar. 5, 2010 Order Amending Scheduling Order 1, this court's order excluding Lloyd and his reports made SK's statement that its damages would "be the subject of expert analysis and computation," *see* SK's Initial Disclosures 18; SK's First Supplemental Initial Disclosures 25, materially incorrect on December 22, 2011. *See Fed. R. Civ. P. 26(e)(1)(A).* Moreover, the court's exclusion of the Lloyd Report resulted in SK's having failed to disclose to Epic a damages computation that complied with *Rule 26(a)(1)(A)(iii).* Since December 22, 2011, SK has yet to supplement its *Rule 26(a)(1)(A)(iii)* computation pursuant to *Rule 26(e).* The court therefore must determine the appropriate remedy under *Rule 37.*

## D.

*Rule 37(c)(1)* gives a court discretion to preclude a party from introducing evidence to establish damages when the party fails to make a *Rule 26(a)(1)(A)(iii)* disclosure or fails to properly supplement its *Rule 26(a)(1)(A)(iii)* disclosure pursuant to *Rule 26(e).* See *S. States, 318 F.3d at 597-98; Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 512 n.10 (4th Cir. 2002);* [*17] see also *Gould Paper, 614 F. Supp. 2d at*

*490-91* (holding that defendants' statement in their *Rule 26(a)* disclosure that they intended to prove counterclaim damages through expert testimony, and defendants' subsequent failure to disclose such expert-based evidence, justified application of *Rule 37(c)(1)* to limit defendants to seeking nominal damages); *AVX Corp. v. Cabot Corp., 252 F.R.D. 70, 76-81 (D. Mass. 2008)* (holding that plaintiff's failure to timely supplement its damages computation subjected plaintiff to *Rule 37(c)(1)*, and that plaintiff could not use the supplemental response in opposing defendant's motion for summary judgment). Under *Rule 37(c)(1)*, the court's inquiry focuses on whether SK's failure to comply with *Rule 26(a)(1)(A)(iii)* and *Rule 26(e)* was "substantially justified or is harmless." *Fed. R. Civ. P. 37(c)(1)*. SK has the burden of proving either substantial justification or harmlessness. *See, e.g., S. States, 318 F.3d at 596-98; AVX Corp., 252 F.R.D. at 78*. Two cases from other circuits are instructive in assessing whether SK's failure to comply was substantially justified or is harmless. See *Fed. R. Civ. P. 37(c)(1)*. In *MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344 (Fed. Cir. 2005)*, [*18] the Federal Circuit applied Fourth Circuit law and affirmed the district court's disallowance, under *Rule 37(c)(1)*, of plaintiff's non-expert damages evidence. *See id. at 1356-58*. In MicroStrategy Inc., plaintiff disclosed that it intended to prove its alleged damages through an expert's testimony and his three reports. *Id. at 1353*. Shortly before trial, the district court excluded plaintiff's expert damages evidence, finding that the evidence was based on "a flawed methodology . . . ." Id. After the district court excluded plaintiff's expert damages evidence, plaintiff did not supplement its *Rule 26(a)(1)(A)(iii)* disclosure. *Id. at 1356*. However, at trial, plaintiff attempted to introduce non-expert evidence to prove damages. Id. The district court

found that plaintiff had violated *Rule 26(e)* and disallowed the evidence pursuant to *Rule 37(c)(1)*. Id. On appeal, plaintiff argued that the district court abused its discretion under Southern States and that the district court should have admitted the proffered damages evidence. *Id. at 1356-57*. The Federal Circuit disagreed, holding that plaintiff's new damages evidence surprised and prejudiced defendant, that plaintiff "could not cure [*19] the surprise without postponing trial and reopening discovery," and that most of the proposed evidence had been in plaintiff's possession "for over a year before trial." *Id. at 1357*. The Federal Circuit conceded that the proffered damages evidence was of great importance to plaintiff; however, this fact did not "tip the scale in favor of [plaintiff], particularly where [plaintiff] alone [was] to blame for creating [the] situation." Id.

The Fifth Circuit reached a similar result in *CQ, Inc. v. TXU Mining Co., L.P., 565 F.3d 268, 279-80 (5th Cir. 2009)*. In CQ, Inc., after the district court excluded plaintiff's expert damages evidence, the court granted defendant's motion in limine to prevent plaintiff from offering other, non-expert damages evidence. *Id. at 279*. The district court did so after finding that plaintiff had violated *Rule 26(e)* by failing "to provide notice of [its] alternative computations . . . ." Id. The Fifth Circuit affirmed. *Id. at 280*. Considering factors similar to the Southern States factors, the Fifth Circuit held that the district court did not abuse its discretion under *Rule 37(c)(1)*. Id. [3] The Fifth Circuit cited plaintiff's failure to "offer[] any justification [*20] for its failure to disclose the damages calculations or their underlying evidence," and concluded that "given the advanced stage of the litigation, permitting the new evidence would not have been harmless." Id. Like the Federal Circuit in MicroStrategy Inc., the Fifth Circuit recognized the evidence's importance to

---

[3]  The Fifth Circuit considered four factors in determining whether the district court had abused its discretion: "(1) [plaintiff's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [defendant] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc., 565 F.3d at 280*.

plaintiff, but held that this factor did not establish that the district court had abused its discretion when the evidence was "not essential to [plaintiff's] underlying recovery." _Id._ [4]

The court follows the Federal and Fifth Circuits and excludes SK's non-expert-based damages evidence pursuant to _Rule 37(c)(1)_. The _Southern States_ factors support this result. _See S. States, 318 F.3d at 597_.

First, SK's disclosure of a new damages computation more than two years after the close of discovery and approximately one week before trial would surprise and prejudice Epic. _See_ Def.'s Mem. Supp. Mot. Exclude 5. In opposition to this conclusion, SK argues that Epic only "cursorily alleges . . . that it has been prejudiced" and that Epic "does not provide a single supporting fact." Pl.'s Mem. Opp'n Mot. Exclude 14. However, SK's statement does not reflect Epic's argument. Epic correctly states that it "has no notice of the amount of monetary damages SK may now claim or the calculations SK has used to determine that amount." Def.'s Mem. Supp. Mot. Exclude 5. _Rule 26(a)(1)(A)(iii)_ and _Rule 26(e)_ are designed to provide an opponent that computation and analysis during discovery. _See AVX Corp., 252 F.R.D. at 79_. The opposing party may then prepare to meet that evidence via cross examination and via [*22] evidence in its rebuttal case (such as its own expert witness). SK's failure to comply with _Rule 26(a)(1)(A)(iii)_ and _Rule 26(e)_ has deprived Epic of this opportunity, and thus has prejudiced Epic. Indeed, the prejudice to Epic is manifest if SK were allowed to present at trial a damages computation never revealed to Epic before it came

from the witnesses' lips at trial. SK also argues that "Epic possesses the documents underlying SK's damages claims" and therefore will not be surprised by SK's damages evidence at trial. _See_ Pl.'s Mem. Opp'n Mot. Exclude 15-16. However, SK erroneously assumes that Epic should be able to glean a computation of each category of SK's damages as to each claim from the "several million pages of documents" disclosed during discovery. _Id._ 4 (emphasis omitted). The court rejects this assumption and finds that Epic would be surprised and profoundly prejudiced by whatever new computation of damages SK might seek to propound and support.

Second, the trial will begin on May 14, 2012. Witnesses are scheduled to come from throughout the United States and Canada. Even if SK immediately provided Epic with a new damages computation supported by documentary evidence, [*23] SK's new computation would not cure Epic's surprise and prejudice. Rather, Epic undoubtedly would want to depose whoever these witnesses are about these new computations and would want to have time for Beutel to analyze and respond to the new computations. Discovery, however, is long closed, and the May 14, 2012 trial date is nigh. This court cannot cure the surprise SK's untimely disclosure would cause without cancelling the trial and rescheduling it. The case has been pending since 2007 and the trial has been set. Good cause simply does not exist to delay trial and reopen discovery. _See MicroStrategy Inc., 429 F.3d at 1357_ ("[Plaintiff] could not cure the surprise without postponing trial and reopening discovery."). [5]

---

[4]  The Fifth Circuit also affirmed the district court's allowing plaintiff to seek damages of $110,419.17 because plaintiff, in addition to its dismissed expert damages computation, had timely disclosed a proper damages computation reflecting that amount. _CQ, Inc., 565 F.3d at 280 n.7_. Despite SK's suggestion to the contrary, _see_ Pl.'s Mem. [*21] Opp'n Mot. Exclude 11, SK has never provided such an alternative computation to Epic.

[5]  Had SK made such supplementation shortly after the court issued its December 22, 2011 order excluding Lloyd and his reports, or after Epic first sought to exclude SK's damages evidence on January 13, 2012 [D.E. 700], this court may have been able to craft a remedy short of exclusion. However, SK's idleness until the eve of trial ensures that the second and third _Southern States_ factors (i.e., the ability of Epic to cure the surprise and the extent to which a solution [*24] would disrupt the trial) support granting Epic's motion.

2012 U.S. Dist. LEXIS 63707, *23

Third, SK does not adequately explain its failure, either during discovery or in the almost five months since the court issued its December 22, 2011 order excluding Lloyd and his reports, to provide Epic with a damages computation in compliance with *Rule 26(a)(1)(A)(iii)* and *Rule 26(e)*.

Fourth, proving damages is admittedly important to SK's case; therefore, the fourth *Southern States* factor favors SK. However, this single factor does not tilt the scale in SK's favor when it "is only one of five [factors] . . . [and SK] alone is to blame for creating this situation," id., and when the evidence "is not essential to [SK's] underlying recovery." *CQ, Inc., 565 F.3d at 280*. Accordingly, *Southern States* supports excluding evidence and argument of SK's alleged damages pursuant to *Rule 37(c)(1)*.

In opposition to this conclusion, SK emphasizes that its failure to supplement its *Rule 26(a)(1)(A)(iii)* disclosure was not in bad faith. See Pl.'s Mem. Opp'n Mot. Exclude 12-14. Thus, SK suggests that it is entitled to a warning and an opportunity to correct its mistake before the court applies "a severe sanction" and grants Epic's motion. Id. [*25] In support, SK cites *Mutual Federal Savings & Loan Ass'n v. Richards & Associates, Inc., 872 F.2d 88 (4th Cir. 1989)*, and *Hathcock v. Navistar International Transportation Corp., 53 F.3d 36 (4th Cir. 1995)*, for the proposition that the court must find that SK acted in bad faith before granting Epic's motion and that the court must give SK an opportunity to cure the *Rule 26* violation. See Pl.'s Mem. Opp'n Mot. Exclude 12-14.

The cited cases do not help SK. Notably, in both cases, the Fourth Circuit considered whether the district courts had made the findings necessary to support default judgment sanctions under *Rule 37(b)*. See *Fed. R. Civ. P. 37(b)(2)(A)(vi)*; *Hathcock, 53 F.3d at 40-41*; *Richards & Assocs., 872 F.2d at 92-94*. But *Rule 37(b)* and *Rule 37(c)(1)* require different analyses. In *Southern States*, the Fourth Circuit made clear that, unlike a default judgment sanction under *Rule 37(b)*, an exclusion sanction under *Rule 37(c)(1)* need not be supported by a finding that the nondisclosing party acted in bad faith. *S. States, 318 F.3d at 596* ("[E]xcluding evidence only when the nondisclosing party acted in bad faith would undermine the basic purpose of *Rule 37(c)(1)*: preventing surprise [*26] and prejudice to the opposing party[:] [a]nd, requiring proof that the nondisclosing party acted in bad faith would improperly shift the burden of proof away from that party on the exclusion issue." (citation omitted)); accord *Design Strategy, Inc., 469 F.3d at 296*.

Epic's motion to exclude rests on *Rule 37(c)(1)*, not *Rule 37(b)*. See Def.'s Mot. Exclude 1. Thus, *Southern States*, not *Hathcock* or *Richards & Associates*, controls the analysis. Moreover, granting Epic's motion is not "tantamount to a dismissal" of SK's claims, as SK suggests. See Pl.'s Mem. Opp'n Mot. Exclude 12. In addition to declaratory relief, see Compl. [D.E. 1] ¶¶ 152-55, SK may still seek and recover nominal damages on all of its claims. Specifically, at trial, SK will assert claims under North Carolina law for fraud, negligent misrepresentation, breach of warranty, breach of contract (under common law and statute), and unfair competition (under common law and the Unfair and Deceptive Trade Practices Act ("UDTPA")). See id. ¶¶ 93-104, 118-32, 140-51; Mar. 24, 2011 Order [D.E. 605] 1-2. Under North Carolina law, "once a cause of action is established, [a] plaintiff is entitled to recover, as a matter of law, nominal [*27] damages . . . ." *Hawkins v. Hawkins, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992)* (quotation and alteration omitted); see also *D.G. II, LLC v. Nix, 713 S.E.2d 140, 149-50 (N.C. Ct. App. 2011)* (discussing an award of nominal damages in a breach of contract action); *United Leasing Corp. v. Guthrie, 192 N.C. App. 623, 634, 666 S.E.2d 504, 511 (2008)* (discussing an award of nominal damages on fraud, negligent misrepresentation, and UDTPA

claims); *Martin-Kahill Ford Lincoln Mercury, Inc. v. Skidmore, 62 N.C. App. 736, 739, 303 S.E.2d 392, 393-94 (1983)* (discussing an award of nominal damages on a breach of warranty claim). Thus, SK will be able to present evidence (e.g., testimony from one of SK's officers) that Epic's alleged conduct damaged SK, but will not be allowed to provide a computation of damages. [6] Moreover, in accordance with the North Carolina pattern jury instructions, the court will instruct the jury to award nominal damages (i.e., $1.00) on any claim that it finds that SK proved.

In opposing Epic's motion, SK also cites two district court opinions in which courts have declined to exclude evidence under *Rule 37(c)(1)*. See Pl.'s Mem. Opp'n Mot. Exclude 13-15. However, the cited cases are distinguishable. In *Millers Capital Insurance Co. v. Big Star Tobacco Warehouse of Wilson, No. 5:00-CV-739-BO(2), 2001 U.S. Dist. LEXIS 26263, 2001 WL 36105902 (E.D.N.C. Nov. 27, 2001)* (unpublished), the court held that "exclusion of testimony under [*Rule 37(c)(1)*] is] a severe sanction, appropriate only for willful and substantial abuse of the discovery process." *2001 U.S. Dist. LEXIS 26263, [WL] at *6.* Because the court found that defendant's failure to timely disclose its expert witnesses' reports under *Rule 26(a)(2)(B)* had been a negligent mistake that defendant was willing and able to correct well before the yet-to-be-scheduled trial, the court denied plaintiff's motion to exclude defendant's experts from testifying. Id. However,

*Millers Capital* predated the Fourth Circuit's decision in *Southern States*. In *Southern States*, the Fourth Circuit effectively overruled the portion of the *Millers Capital* court's opinion requiring a finding of "willful and substantial abuse of the discovery process" to [*29] invoke *Rule 37(c)(1)*. Compare *Millers Capital, 2001 U.S. Dist. LEXIS 26263, 2001 WL 36105902, at *6, with S. States, 318 F.3d at 597-98.* [7]

Additionally, SK relies on *Carotek, Inc. v. Textron Fastening Systems, Inc., Civil Action No. 3:05-CV-395-MKR-DCK, 2008 U.S. Dist. LEXIS 31382, 2008 WL 1777829 (W.D.N.C. Apr. 16, 2008)* (unpublished). See Pl.'s Mem. Opp'n Mot. Exclude 15. In *Carotek, Inc.*, the court applied the *Southern States* factors and determined that defendant's failure to disclose certain documents that plaintiff had requested during discovery did not support excluding those documents. *Carotek, Inc., 2008 U.S. Dist. LEXIS 31382, 2008 WL 1777829, at *3-4.* The court found that plaintiff could have mitigated any surprise that it incurred by "avail[ing] itself of discovery mechanisms . . . in a more timely fashion" and that defendant's failure to disclose the documents stemmed from defendant's good faith and reasonable belief that plaintiff already possessed the documents. Id. In addition, the case had yet to be scheduled for trial. *2008 U.S. Dist. LEXIS 31382, [WL] at *4.* [*31] Unlike in *Carotek, Inc.*, discovery here had ended when SK's *Rule 26(a)(1)(A)(iii)* disclosure became inadequate. Accordingly, Epic's only

---

[6]  The amount of such evidence that SK will be allowed to introduce at trial will be subject to the court's discretion under *Federal Rule of Evidence 403* given that SK is limited to recovering nominal [*28] damages on each of its claims.

[7]  Moreover, *Millers Capital* is factually distinguishable. In *Millers Capital*, the court rested its decision in part on defendant's willingness to immediately disclose the evidence at issue, and the fact that plaintiff would receive this evidence well before trial. See Millers Capital, 2001 U.S. Dist. LEXIS 26263, 2001 WL 36105902, at *5-6. Here, in contrast, SK has known that its *Rule 26(a)(1)(A)(iii)* disclosure was inaccurate since the court issued its order excluding Lloyd and his reports on December 22, 2011. Moreover, SK has known of Epic's alleged prejudice from SK's failure to disclose an alternative damages computation since Epic first sought to exclude evidence of and argument on SK's damages on January 13, 2012 [D.E. 700]. Nonetheless, SK still has not provided a new damages computation to Epic, and the trial will begin on May 14, 2012. SK suggests that it is willing and able to supplement its *Rule 26(a)(1)(A)(iii)* disclosure "if the Court believes that SK should somehow provide further information regarding its damages to Epic before trial . . . ." Pl.'s Mem. Opp'n Mot. Exclude 16. SK's belated [*30] attempt to supplement its *Rule 26(a)(1)(A)(iii)* disclosure, however, falls short. Unlike the *Millers Capital* defendant's credible statement that it would cure its *Rule 26* violation in a way that would mitigate plaintiff's prejudice, SK's offer to supplement its *Rule 26(a)(1)(A)(iii)* disclosure would not cure the obvious prejudice to Epic.

remedy for SK's failure to attempt to supplement its disclosure was Epic's *Rule 37(c)(1)* motion, which Epic made promptly. Moreover, as noted, after the court issued its order excluding Lloyd and his reports. SK could not have credibly believed that its *Rule 26(a)(1)(A)(iii)* disclosure was adequate. Carotek, Inc. merely reflects the principle that the outcome of <u>Southern States</u>'s prescribed balancing test is fact-specific. The facts here, unlike those in <u>Carotek, Inc.</u>, support exclusion.

Finally, nothing in this order precludes SK from presenting financial information or other evidence to undercut Epic's damages calculations. Notably, at oral argument on the motion to exclude, the parties discussed whether certain money that SK received from Microsoft was revenue or a loan. They also referenced certain costs that may arguably be deducted in calculating Epic's damages on its copyright counterclaim. Nothing in this order prevents SK from presenting relevant evidence on damages in defending against any of Epic's counterclaims.

II.

In sum, in accordance  [*32] with this order, the court GRANTS IN PART Epic's motion to exclude evidence of and argument on damages from SK [D.E. 721]. The court DENIES AS MOOT Epic's motion for leave to file a motion <u>in limine</u> [D.E. 700].

SO ORDERED. This 7 day of May 2012.

/s/ James C. Dever III

JAMES C. DEVER III

Chief United States District Judge

<u>MKB Constructors v. Am. Zurich Ins. Co.</u>

United States District Court for the Western District of Washington

September 29, 2014, Decided; September 29, 2014, Filed

CASE NO. C13-0611JLR

**Reporter**
2014 U.S. Dist. LEXIS 137495

MKB CONSTRUCTORS, Plaintiff, v. AMERICAN ZURICH INSURANCE COMPANY, Defendant.

**Subsequent History:** Reconsideration denied by *MKB Constructors v. Am. Zurich Ins. Co., 2014 U.S. Dist. LEXIS 141374 (W.D. Wash., Oct. 2, 2014)*

**Prior History:** *MKB Constructors v. Am. Zurich Ins. Co., 2014 U.S. Dist. LEXIS 78883 (W.D. Wash., May 27, 2014)*

**Counsel:** [*1] For MKB Constructors, a Washington joint venture, Plaintiff: A Richard Dykstra, LEAD ATTORNEY, Peter J Mullenix, FRIEDMAN RUBIN (SEATTLE), SEATTLE, WA; Kenneth R Friedman, FRIEDMAN RUBIN (BREMERTON), BREMERTON, WA.

For American Zurich Insurance Company, an Illinois corporation, Defendant: Elaine Videa, Jonathan R. Gross, LEAD ATTORNEYS, PRO HAC VICE, MOUND COTTON WOLLAN & GREENGRASS, EMERYVILLE, CA; Jose Dino Vasquez, KARR TUTTLE CAMPBELL, SEATTLE, WA.

**Judges:** JAMES L. ROBART, United States District Judge.

**Opinion by:** JAMES L. ROBART

# Opinion

ORDER

## I. INTRODUCTION

Before the court is Defendant American Zurich Insurance Company's ("American Zurich") *Federal Rule of Civil Procedure 37(c)(1)* motion for sanctions against Plaintiff MKB Constructors ("MKB") seeking to exclude at trial MKB's supplemental damages computation which MKB disclosed after the discovery cutoff.[1] (Mot. (Dkt. # 115).) The court has considered the motion, all submissions filed in support of or opposition thereto, the balance of the record, and the applicable law. Being fully advised, the court GRANTS American Zurich's motion, STRIKES MKB's supplemental response to American Zurich's Interrogatory 2(a), and further ORDERS the supplemental damages computation contained therein excluded from use [*2] at trial.

## II. BACKGROUND

---

[1] American Zurich entitled its motion as one "to preclude evidence at trial of Plaintiff's new claim presented after the close of discovery." (*See* Mot. at title page (bolding and capitalization omitted).) MKB asserts that American Zurich's motion constitutes a motion in limine and argues that it is in violation of Local Rule 7(d)(4), which requires that all motions in limine be filed in one motion and without a reply memorandum. *See* Local Rules W.D. Wash. LCR 7(d)(4); (Resp. at 1-2; Sur-reply (Dkt. # 124).) MKB asks the court to strike American Zurich's later filed motions in limine (AZ MIL (Dkt. # 121)), as well as American Zurich's reply memorandum to this motion. (Sur-reply at 3.) The court, however, is satisfied that American Zurich is entitled to bring a motion seeking relief under *Rule 37(c)(1)* independently of its motions in limine. *See, e.g., Continental Cars, Inc. v. Mazda Motor of Am., Inc.*, No. C11-5266 BHS, 2012 U.S. Dist. LEXIS 149615, 2012 WL 4903253, at *1 (W.D. Wash. Oct. 16, 2012) (resolving defendant's "motion for *Rule 37* relief"). Accordingly, the court DENIES MKB's motion in its sur-reply to strike American Zurich's motions in limine and American Zurich's reply memorandum to the present motion.

Case: 1:08-cv-02755-DCN  Doc #: 265-1  Filed: 01/19/15  19 of 35.  PageID #: 14634

Page 2 of 10
2014 U.S. Dist. LEXIS 137495. *3

This case [*3] is about an insurance dispute. MKB is a Washington joint venture comprised of Derian, Inc. and R. Scott Constructors, Inc. (Am. Compl. (Dkt. # 35) ¶ 1.) MKB contracted with the Lower Yukon School District ("LYSD") for a project, which included "the procurement, delivery and placement of gravel fill" for a new building pad and driveway upon which a school building would be built. (Id. ¶ 6.) American Zurich issued MKB a "Builders Risk" policy for the period of June 15, 2012, to October 31, 2012, which provided MKB with insurance coverage related to the LYSD project. (See id. ¶ 8.) A dispute arose between MKB and LYSD about the volume of fill required to be placed on the building pad. Eventually, LYSD terminated its contract with MKB (7/22/14 Videa Decl. (Dkt. # 94) Ex. 32),

and withheld payment of the remaining contract balance of $1,436,419.40 (see id. Ex. 33 at MKB000012). MKB and LYSD entered into arbitration before finally settling their dispute (see generally id. Ex. 35). As part of their settlement, LYSD paid MKB $1,436,419.40. (Id. at 2.)

MKB notified American Zurich that it was placing a claim under its Builders Risk policy for the damages or losses it had incurred with respect to earth [*4] movement beneath the LYSD building pad. (Id. Ex 39.) On December 28, 2012, MKB sent a letter to American Zurich submitting the "specific monetary damages" that MKB was claiming under the Policy "as a direct result of earth movement." (Id. Ex. 40 at 2.) The specific items MKB listed in its letter included:

| A. Contract Balance: | $1,436,419.40 | |
| B. Additional Foundational Materials: | $669,508.99 | (Tab A) |
| C. Incidental Costs: | $464,268.10 | (Tab B) |
| Markup & Overhead: | $208,880.62 | (Tab B) |
| Policy Deductible (Earth Movement): | $~100,000.00 | |
| Legal and Professional Fee: | $TBD | |
| | $2,679,095.11 | |

(7/22/14 Videa Decl. Ex. 40; 7/22/14 Mullenix Decl. Ex. 32.) With respect to the $669,508.99 claimed for additional foundational materials, MKB originally calculated "that 4,773 tons of extra [gravel] fill, beyond plan quantities, had cost them that amount of money." (See 8/27/14 Videa Decl. (Dkt. # 115) Ex. 10 (MKB Supp. Resp. to 1st Int.) at 8.)

Throughout this litigation, MKB has repeatedly affirmed that it is claiming the foregoing specific cost items originally listed in its December 28, 2012, letter to American Zurich. In its May 31, 2013, Initial Disclosures, MKB identified the same costs as those listed in its December 28, 2012, letter.[2] (MKB Initial Disclosures [*5] (Dkt. # 115-6) at 5, 8 (Ex. A), 9 (Ex. C).) On August 21, 2013, in response to Interrogatory No. 2 of

American Zurich's First Set of Interrogatories, which asked MKB to "[i]dentify with specificity each and every item of cost MKB contends it is owed under the Policy," MKB again referenced its December 28, 2012, letter to American Zurich and its Initial Disclosures. (MKB Resp. to 1st Int. (Dkt. # 115-6) at 15 ("... MKB has summarized and provided backup documentation for these costs before for American Zurich in MKB's initial disclosures and its December 28, 2012, claim submission ....").) Finally, on February 18, 2014, during the course of American Zurich's Rule 30(b)(6) deposition of Mr. Jensen on behalf of MKB, MKB's counsel stated, "Let me just tell you MKB's legal position which is that we're seeking everything in this December 28th letter .

[2]  MKB's Initial Disclosures also asserted a claim for $500,000.00 as "Additional Amounts Claimed by LYSD." (MKB Initial Disclosures at 9 (Ex. A).) This claim is no longer at issue because MKB did not pay LYSD for any liability in the arbitration. MKB's Initial Disclosures also include various mark-ups as a percentage of the MKB's claims for "Earth [*6] Movement" and the "Incidental Costs." (See id.)

. . ." (2/18/14 Jensen Dep. (Dkt. # 115-7) at 35:3-5.)

On June 5, 2014, MKB served a timely answer to a discovery request from American Zurich asking MKB to identify "with specificity the physical loss or damage to the building pad or foundation at the Project as alleged in MKB's response to American Zurich's Interrogatories, Set One, Interrogatory No. 1."[3] (MKB Resp. to 3d Int. (Dkt. # 106-4) at 56.) During the course of its response, MKB told American Zurich that the amount of earth settlement it intended to prove at trial was equivalent to "9,869 tons of fill." (MKB Resp. to 3d Int. (Dkt. # 106-4) at 61-62.) MKB also told American Zurich that it intended to rely on the following witnesses to prove this amount: "Maria Kampsen, . . . Bill Nesheim, Andy Romine, and Tony Wilson." (*Id.* at 62.) American Zurich deposed each of these individuals following MKB's June 5, 2014, interrogatory response. (*See* MKB SJ Reply (Dkt. # 112) at 5, n.22.) Nowhere in MKB's June 5, 2014, interrogatory response, however, does it indicate that MKB's original damages computation had changed based on the new amount of settling ("9,869 tons of fill") that MKB now disclosed. (*See generally* MKB Resp. to 3d Int.)

Pursuant to the court's November 7, 2013, scheduling order, the discovery period closed on June 23, 2014. (Sched. Ord. (Dkt. # 38) at 1.) On July 17, 2014, more than three weeks following the close of discovery, and just five days before the deadline for dispositive motions, MKB sent via email a Second Supplemental Response to American Zurich's First Set of Interrogatories to American Zurich.[4] (8/27/14 Videa Decl. Ex. 10 (MKB Supp. Resp. to 1st Int.) at 7-9.) MKB's July 17, 2014, supplemental response to Interrogatory No. 2 states for the first time that

MKB is entitled to $1,384,324.63 in damages for the 9,869 tons of gravel fill that it first identified in its June 4, 2014, interrogatory response. (*See id.*)

It is unclear based on MKB's supplemental discovery response whether the new damages calculation of $1,384,324.63 is intended to replace its original claim for $669,508.99 in additional foundational [*8] materials, its original claim for the contract balance of $1,436,419.40, both, or neither. Indeed, the court is uncertain if MKB intends to replace its entire previous damages computation, totaling 2,679,095.11, with the new computation, or only a portion of it, and if so, which portion.

In its supplemental discovery response, MKB suggests that it is no longer claiming the some of the specific figures it identified in its Rule 26 damages computation, but rather utilizing those figures simply to support its new calculation. For example, MKB states that it "is not claiming that [American] Zurich is required to pay MKB [the 'Contract Balance' of $1,436,419.40] simply because LYSD decided to withhold earned contract proceeds," but rather that the Contract Balance of $1,436,419.40 "demonstrates that MKB had a financial and insurable interest in the covered property . . . [and] also provides evidence of the price of the fill that was lost due to settlement, as that is the amount that LYSD withheld from MKB on the contract in order to pay for another contractor to finish the Phase One work." (*Id.* at 7-8.) MKB also states that "[t]he number for additional foundational materials ($669,508.99) is . . . useful for [*9] calculating a unit price of the fill that was lost below original ground." (*Id.* at 8.) MKB then uses this figure to calculate a unit price of $140.27 per ton. (*Id.*) Multiplying this figure by 9,869 tons, MKB arrives at its new damages

---

[3]  In its response [*7] to American Zurich's Interrogatory No. 1, MKB had stated: ". . . MKB sustained direct physical loss or damage to covered property (the building pad or foundation), resulting from a covered cause of law (earth movement, sinking, and shifting)." (MKB Resp. to 1st Int. at 13.)

[4]  MKB's supplemental response was not verified until August 6, 2014. (Mot. at 6-7.)

calculation of $1,384,324.63. (*See id.* at 9.) Yet, during the course of its July 17, 2014, supplemental interrogatory response, MKB never expressly clarifies if its new damages computation of $1,384,324.63 is intended to replace all or only a portion of its previous damages computation, or if its new damages calculation is intended to be in addition to its previous computation. The later option seems unlikely to the court, but MKB never explicitly clarifies its intent with respect to the new $1,384,324.63 figure.

On July 22, 2014 (the deadline for filing dispositive motions), the parties filed dueling motions for summary judgment. (*See* MKB SJ Mot. (Dkt. # 91); AZ SJ Mot. (Dkt. # 93).) American Zurich moved for summary judgment with respect to all of the cost items listed in MKB's December 28, 2012, claim letter and MKB's *Rule 26(a)* initial disclosures. (*See* AZ SJ Mot. at 12-18.) In its order on the parties' motions for summary judgment, the court granted American Zurich's motion [*10] for summary judgment on the $1,436,419.40 contract balance on grounds that it was undisputed that LYSD had already paid MKB this amount in settlement of the arbitration proceedings between them. (*See* 9/25/14 Order (Dkt. # 128) at 16-24.) In its response to American Zurich's summary judgment motion, MKB never discusses its new damages computation of $1,384,324.63 (which it had sent to American Zurich five days before the dispositive motions deadline), how the new calculation relates to its previous damages computation in any way, or how the court should consider the new computation in relation to American Zurich's motion for summary judgment. (*See generally* MKB SJ Resp. (Dkt. # 107).)

Further, in its response to American Zurich's present motion, MKB again fails to clarify how its new damages computation of $1,384,324.63 relates to the specific items listed in its original damages computation. In response to American Zurich's present motion, MKB states that "the real dispute at the heart of [American Zurich's] motion is that of how to characterize the $1,436,419.40 in withheld contract proceeds that has been part of MKB's claim since December 2012."[5] (Resp. (Dkt. # 120) at 2.) Yet, MKB [*11] never subsequently clarifies it position concerning how the $1,436,419.40 contract balance should be characterized in relation to its new damages computation. MKB never explicitly states whether the $1,384,324.63 figure is intended to replace the $1,436,419.40 figure or is intended to be in addition to it. In a convoluted argument, MKB posits that "[t]he only thing that has changed since [its original damages calculation] is that MKB has decided to present a more conservative claim to the jury based on what it has learned in discovery," and that it "no longer intends to present a 16,883 ton loss, but a 9,869 ton loss." (*Id.* at 4.) Yet, MKB never explains from where it derives the 16,883 ton loss or what portion of its original damages computation is represented by that figure either.[6] Thus, despite MKB's assertion that its new damages computation is more conservative than its original, the court is at a loss as to how the new damages computation actually relates to MKB's original damages computation. Ultimately, MKB never explains if its new damages calculation replaces all or just a part of the original computation, and its arguments in this regard are completely opaque. The court is forced to [*12] conclude that MKB's arguments are

---

[5]  MKB's responsive memorandum was filed on September 8, 2014, prior to the court's September 25, 2014, order granting American Zurich's motion for summary judgment with respect to the contract balance on grounds that LYSD paid MKB $1,436,419.40 in settlement after MKB initiated arbitration proceedings against LYSD.

[6]  In its reply memorandum in support of its motion for partial summary judgment, MKB states that the 16,883 ton loss is based on the 4,773 tons that is represented by the $669,508.99 of additional foundational materials claimed in its original damages computation, plus 12,110 additional tons of fill that MKB alleges still remained to be placed to fulfill the requirements of the Phase I contract. (MKB SJ Reply (Dkt. # 112) at 3.) Once again, however, MKB never explains from where it derived the 12,110 ton figure or how that figure relates to its original damages claim.

intended to confuse rather than elucidate the issue.

This matter is presently scheduled for a jury trial on October 20, 2014, which is just three weeks away. Because MKB did not disclose its new damages computation until after the close of discovery and just five days prior to the [*13] dispositive motions deadline, American Zurich moves under *Federal Rule of Civil Procedure 37(c)(1)* for sanctions to prohibit MKB from using its newly revealed damages computation at trial. (*See generally* Mot.)

In its response, MKB "does not dispute that its claim, and the documents supporting that claim, were required to have been produced to [American] Zurich in discovery." (Resp. at 2.) Although MKB acknowledges that it did not provide the actual damages computation of $1,384,324.63 until after the discovery cutoff, MKB argues that American Zurich is not prejudiced because MKB provided American Zurich with all of the information it needed to come up with the new computation on its own during the discovery period. (*See* Resp. at 7-9.) In particular, MKB states:

> . . . MKB supplied [American] Zurich with . . . exhaustive documentation of the project in response to [American] Zurich's first set of requests for production. For instance, MKB provided [American] Zurich with 5,355 pages of documents, including invoices, timesheets, and anything else [American] Zurich could possibly want in determining how much anything project-related actually cost. [American] Zurich has everything its expert says is needed to determine the cost [*14] to repair a 9,869 ton loss.

(Resp. at 9.) MKB also argues that if the court "concludes MKB should have made some greater disclosure than it did," the court should impose a lesser sanction than the exclusion of MKB's new damages computation. (*Id.* at 10.) Specifically, MKB asks the court to limit any sanction to allowing American Zurich to re-depose Mark Jensen (who MKB previously designated as *Federal Rule of Civil Procedure 36* deponent) and permitting American Zurich's cost expert to issue a supplemental report on the issue of the cost to repair a 9,869 ton settlement loss. (Resp. at 10.)

The court now considers the merits of American Zurich's motion and MKB's response.

## III. ANALYSIS

*Federal Rule of Civil Procedure 26(a)(1)(A)* provides in relevant part that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party—who must also make available for inspection or copying as under *Rule 34* the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." *Fed. R. Civ. P. 26(a)(1)(A)(iii)*. *Rule 26(a)(1)(A)* requires a party to disclose both "a computation of each category of damages," as [*15] well as the documents and other evidentiary material underpinning the computation. *Id.* In addition, *Rule 26(e)(1)(A)* requires that "[a] party who has made a disclosure under *Rule 26(a)* . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Fed. R. Civ. P. 26(e)(1)(A)*.

*Federal Rule of Civil Procedure 37(c)(1)* "forbid[s] the use at trial of any information required to be disclosed by *Rule 26(a)* that is not properly disclosed." *R & R Sails, Inc. v. Ins. Co. of Pa., 673*

2014 U.S. Dist. LEXIS 137495, *15

F.3d 1240, 1246 (9th Cir. 2012) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)* and *Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008)*). Specifically, *Rule 37(c)(1)* provides:

> If a party fails to provide information or identify a witness as required by *Rule 26(a)* or *(e)*, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, [*16] including any of the orders listed in *Rule 37(b)(2)(A)(i)-(vi)*.[7]

*Fed. R. Civ. P. 37(c)(1)*. The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *R & R Sails, 673 F.3d at 1246* (citing *Torres v. City of L.A., 548 F.3d 1197, 1213 (9th Cir. 2008)*.

As explained above, under *Rule 26(a)*, MKB was required to serve a computation of damages on American Zurich, and under *Rule 26(e)*, MKB was required to supplement its damages computation in a timely manner. MKB failed to comply with these requirements when it revised its damages computation on July 17, 2014, after the close of discovery on June 23, 2014. Under any reasonable interpretation and application of *Rule 26(a)* and *(e)*, MKB's supplemental [*17] disclosure of its revised damages computation on July 17, 2014, as well as the specific methodology it used to compute those damages, was untimely.

MKB, however, tries to minimize the impact of the untimeliness of its disclosure by asserting that it had provide American Zurich prior to the discovery cutoff with everything American Zurich needed to devise the revised damages computation on its own. (*See* Resp. at 9.) MKB, however, is required to produce not only the materials on which the computation can be formulated, but the computation itself. *See Fed. R. Civ. P. 26(a)(1)(A)(iii)* ("A party must . . . provide . . . a computation of each category of damages claimed by the disclosing party."). "The plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages." *Jackson v. United Artists Theatre Circuit, Inc., 278 F.R.D. 586, 593 (D. Ariz. 2011)* (citing *Design Strategy, Inc. v. Davis, 469 F.3d 284, 294-95 (2nd Cir. 2006)*). Simply providing documents or other information and assuming that

---

[7]    The remedies provided in *Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vi)* include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part; [or]

(vi) rendering a default judgment against the disobedient party[.]

*Fed. Civ. P. 37(b)(2)(A)(i)-(vi)*.

2014 U.S. Dist. LEXIS 137495, *17

the defendant will somehow divine the plaintiff's damages computation from those documents or other information is insufficient and not in accord with the requirements of *Rule 26(a)* and *(e)*. As the language of *Rule 26(a)(1)(A)(iii)* indicates, for disclosure purposes, damages are determined not by actual cost, but by what the party claims. *See Patton v. Wal-Mart Stores, Inc., NO. 2:12-cv-02142-GMN-VCF, 2013 U.S. Dist. LEXIS 77757, 2013 WL 6158461, at \*4 (D. Nev. Nov. 20, 2013).* [\*18] The court concludes that MKB failed to comply with *Rule 26(e)* when it failed to timely supplement its damages computation within the discovery period. Thus, the burden now rests with MKB to show that its failure was substantially justified or harmless. *See R & R Sails, 673 F.3d at 1246.*

The court first considers whether MKB's conduct was substantially justified. Unfortunately, MKB offers no explanation for why it did not provide its revised damages computation during the discovery period. As noted above, MKB argues that American Zurich had everything it needed to calculate MKB's revised damages on June 5, 2014, when MKB told American Zurich in a discovery response that the amount of settling it intended to prove at trial was equivalent to 9,869 tons of fill. (*See* MKB Resp. at 9.) If this is true, however, then MKB also had everything it needed to supplement and produce its own revised damages computation within the discovery period. As discussed above, there can be no doubt that MKB was under an obligation to do so. *See Fed. R. Civ. P. 26(e)(1)(A).* The court does not presume to know MKB's (or its counsel's) precise state of mind when MKB failed to timely supplement its damages computation. Whether intentional or not, [\*19] MKB's failure to timely comply with its obligations to supplement its initial disclosures under *Rule 26(e)* gives the appearance of gamesmanship and of attempting to impair American Zurich's ability to marshal a timely defense for trial. Thus, the court concludes that MKB has failed to meet its burden of

demonstrating that its conduct was substantially justified.

The court next considers whether MKB's untimely disclosure of its revised damages computation was harmless. As discussed above, the fact that the MKB provided other documents or information within the discovery period from which American Zurich might have divined MKB's revised $1,384,324.63 damages calculation is insufficient to avoid prejudice or harm to American Zurich. MKB had repeatedly told American Zurich that it intended to rely on the damages calculation provided to American Zurich in its December 28, 2012, letter. American Zurich was entitled to rely on MKB's disclosures. American Zurich was not required to guess that MKB might attempt to prove some other damages calculation at trial that MKB had not yet disclosed during discovery. American Zurich has been deprived of the opportunity to conduct discovery aimed at investigating, [\*20] evaluating, and testing MKB's new damages computation. Indeed, American Zurich retained experts based on MKB's original damages computations, and American Zurich moved for summary judgment and has prepared for trial on that basis too. MKB has not met its burden of demonstrating that its failure to timely supplement its damages computation was harmless.

Under the foregoing circumstances, the court would be justified in barring MKB from utilizing its revised damages computation at trial. Nevertheless, in the Ninth Circuit, the court is required to consider whether an exclusionary ruling would amount to dismissal of a claim. *See R & R Sails, 673 F.3d at 1247.* If so, then the court is further required to consider whether the noncompliance at issue involved willfulness, fault, or bad faith and also to consider the availability of

2014 U.S. Dist. LEXIS 137495, *20

lesser sanctions.[8] *Id*. Where, however, exclusion would not amount to dismissal, the court is not required to make such findings. *See id. at 1248, n.1*; *see also Hill v. Dep't of Homeland Sec., 570 Fed. App'x 667, 667 (9th Cir. 2014)* (ruling that district court did not abuse discretion in excluding late disclosed computation of damages because the exclusion order did not prevent the plaintiff from presenting a claim and she was permitted to testify about her damages). Subject [*21] to this court's September 25, 2014, ruling on summary judgment, MKB may still rely on its original damages computation at trial. Thus, excluding MKB's revised damages computation would not amount to a dismissal of its claim.

Even if the court were to consider willfulness, fault, bad faith, and the availability of lesser sanctions, however, the court would still conclude that exclusion is the appropriate sanction here. In the absence of any explanation from MKB as to why it failed to adhere to its *Rule 26(e)* obligations to provide timely supplementation of its damages computation, the court is forced to conclude that MKB's failure was willful. Indeed, as discussed above when the court considered whether MKB's [*22] conduct was substantially justified, MKB's conduct in failing to timely supplement its damages computation when it had all the information it needed to do so within the discovery period, and its failure to provide the court with a coherent explanation for its dilatory conduct, gives the appearance of bad faith.

The court also concludes that imposing lesser sanctions is not a viable solution and cannot remedy the harm and prejudice that MKB's late disclosure has already caused. MKB suggests that, instead of excluding its revised damages computation, the court should permit American Zurich to (1) re-depose Mark Jensen (who MKB previously designated as its *Federal Rule of Civil Procedure 30(b)(6)* deponent) and (2) issue a supplemental report by one of its costs experts. (Resp. at 10.) Permitting American Zurich to reopen Mr. Jensen's deposition would be of only minimal assistance to American Zurich, however, because MKB has asserted that it is relying on the testimony of a variety of witnesses for its revised damages computation, including Maria Kampsen, Bill Nesheim, Andy Romine, Tony Wilson, and perhaps others. (Resp. at 7; *see also* 8/27/14 Videa Decl. Ex. 10 (MKB Supp. Resp. to 1st Int.) at 9 ("These issues were explored more fully at MKB's 30(b)(6) depositions, [*23] at the depositions of Richard Norman, at the deposition of Steve Nourse, and at the depositions of Andy Romine and Bill Nesheim.").) Because American Zurich did not know about MKB's revised damages computation at the time it deposed these witnesses, American Zurich would need (at a minimum) the opportunity to re-depose all of these witnesses to limit any prejudice. Further, although American Zurich's costs expert can address pricing issues, he cannot opine on geotechnical issues. Despite MKB's protestations to the contrary, the court concludes that American Zurich would be entitled to supplement the reports of other experts as well—not just its costs expert—in response to MKB's revised damages computation. After all, the revised damages computation is expressly based on a different volume of earth settlement (9,869 tons of fill) than MKB had previously relied upon in formulating its original damages computation (4,773 tons of fill).

Thus, the additional discovery required to mitigate the prejudice to American Zurich if the court were to allow the introduction of MKB's revised damages computation at trial would be far more

---

[8]  The Ninth Circuit identified several factors that the district court may consider in deciding whether to impose *Rule 37(c)(1)*'s exclusion sanction where the sanction would amount to dismissal of a claim. Those factors include (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Wendt v. Host International, Inc., 125 F.3d 806, 814 (9th Cir. 1997)*.

extensive than suggested by MKB. Under such circumstances, it [*24] would be impossible for the parties to hold onto their current trial date, which is only about three weeks away. If, instead of excluding the use of MKB's supplemental damages computation at trial, the court were to reopen discovery to mitigate the prejudice to American Zurich, the court will be forced to reschedule the trial date as well. The late disclosure of information required by *Rule 26* is not harmless when it requires the court to reopen discovery and reschedule the trial date. *See Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (as amended) ("Disruption to the schedule of the court and other parties . . . is not harmless.").

In addition, the court spent considerable time and resources analyzing and deciding the parties' recent motions for summary judgment. A large portion of American Zurich's motion was based on MKB's original damages computation. (*See* AZ SJ Mot. (Dkt. # 93) at 12-18.) If the court were to permit MKB to proceed to trial on the basis of its untimely revised damages computation, MKB could effectively escape the consequences of the court's rulings on summary judgment with respect to its original damages computation or render those rulings irrelevant. In addition, American Zurich would be deprived of any opportunity [*25] to test MKB's revised computation in a pre-trial dispositive motion. The court sets case schedules and asks the parties to adhere to those schedules specifically to avoid situations like this where both the parties' and the court's time and resources are at stake. If the court permits MKB to rely on its untimely supplemental damages computation at trial, then much of the time and resources devoted by both the parties and the court in the recent round of dispositive motions will have been for naught. Sanctions other than the exclusion of the MKB's untimely supplemental damages calculation at trial simply cannot mitigate this prejudice.

Courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed. *See, e.g., CQ Inc. v. TXU Mining Co., 565 F.3d 268 (5th Cir. 2009); 24/7 Records v. Sony Music Entm't, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008)*. In *Hoffman v. Construction Protective Services, 541 F.3d 1175 (9th Cir. 2008)*, the Ninth Circuit affirmed the district court's order excluding plaintiffs' damages evidence because they failed to provide any computation of damages prior to the pretrial conference. The court stated that the late disclosure was not harmless because it would have most likely required the trial court to create a new briefing schedule and perhaps re-open discovery, [*26] rather than simply set a trial date. *Id. at 1179*. The same is true here.

Trial is set for October 20, 2014—just over three weeks away. Even if the court were to reopen discovery to permit American Zurich to investigate MKB's new damages computation, three weeks would be insufficient time. Thus, the parties' trial date would be lost and the court would be required to reschedule it. Further, much of the time and expense incurred by the parties and the court in briefing and deciding the parties' motions for summary judgment would be wasted if the court were to permit MKB to proceed to trial based on its untimely revised damages computation. Thus, the court GRANTS American Zurich's motion for *Rule 37* sanctions against MKB, and ORDERS that MKB may not use its untimely supplemental damages computation at trial.

## IV. CONCLUSION

Based on the foregoing and for good cause shown, the court GRANTS American Zuirch's motion for *Rule 37* sanctions against MKB (Dkt. # 115) and ORDERS MKB not use to its untimely supplemental damages computation at trial.

Dated this 29th day of September, 2014.

/s/ James L. Robart

2014 U.S. Dist. LEXIS 137495, *26

JAMES L. ROBART
United States District Judge

## Concrete Materials Corp. v. C.J. Mahan Constr. Co.

United States Court of Appeals for the Sixth Circuit

March 28, 1997, FILED

NO. 95-6657

**Reporter**
1997 U.S. App. LEXIS 6218

CONCRETE MATERIALS CORPORATION, INC., Plaintiff-Appellee, v. C. J. MAHAN CONSTRUCTION COMPANY, Defendant-Appellant.

**Notice:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Subsequent History:** Reported in Table Case Format at: _110 F.3d 63, 1997 U.S. App. LEXIS 11167_.

**Prior History:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY. 94-00422. Forester. 11-29-95.

**Disposition:** AFFIRMED.

## Case Summary

### Procedural Posture

Defendant contractor sought review of a judgment from the United States District Court for the Eastern District of Kentucky, entered in favor of plaintiff material supplier in an action for breach of contract to supply constructions materials to the contractor.

### Overview

In connection with a highway construction project, the construction contractor obtained a written offer from a materials supplier for prices of materials required for the project, including the costs of the concrete and of the ice to cool it. Although no agreement was reached immediately, an agreement was eventually reached on the price of concrete; however, after the first delivery, a dispute developed over the cost of the ice set forth in the original quotation. The contractor refused to further perform until the dispute was resolved. The materials supplier brought an action for breach of contract. The jury found that a contract had existed and that the contractor breached the contract, thus entitling the materials supplier to damages including lost profits and prejudgment interest. On appeal, the court affirmed the judgment holding that, because the existence of the contract was ambiguous, the district court properly submitted the issue to the jury. The court further held that the material supplier's evidence of lost profits was properly admitted because the materials supplier had complied with its obligation to disclose its damages as required by _Fed. R. Civ. P. 26(a)(1)(C)_.

### Outcome
The court affirmed the judgment.

**Counsel:** For CONCRETE MATERIALS CORPORATION, INCORPORATED, Plaintiff - Appellee: James T. Gilbert, Coy, Gilbert & Gilbert, Richmond, KY.

For C.J. MAHAN CONSTRUCTION COMPANY, Defendant - Appellant: Roger L.

Sabo, Schottenstein, Zox & Dunn, Columbus, OH. James W. Smirz, Landrum & Shouse, Lexington, KY. C. Stanley Willis, III, Hilliard, OH. For SAFECO INSURANCE COMPANY OF AMERICA, a Washington State domiciled insurance company, Defendant - Appellant: James W. Smirz, (See above). C. Stanley Willis, III, (See above).

**Judges:** BEFORE: LIVELY, MERRITT and DAUGHTREY, Circuit Judges.

## Opinion

**PER CURIAM.** This appeal arises from a diversity action, based on contract, that resulted in a jury verdict in the plaintiff's favor. The defendant, now the [*2] appellant, contends that (1) the question of whether or not a contract existed between the parties should not have been submitted to the jury; (2) the district court erred in permitting the introduction of certain evidence concerning lost profits; (3) the court erred in excluding a defense witness; and (4) the award of pre-judgment interest was improperly calculated.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The relationship between the parties resulted from defendant C. J. Mahan Construction Company's successful bid on a $ 31 million bridge project on Interstate 75 in Kentucky and an offer by plaintiff Concrete Materials Corporation to provide the necessary concrete for the project. That written offer was made on October 21, 1993, and included the costs of the concrete and of the ice to cool it, as required by the state. It also provided for a 2 percent per month interest rate on overdue bills, for applicable sales taxes, and for hauling. Although no agreement was reached immediately, discussions continued between the two companies. After some negotiation, they came to an agreement as to the cost for the provision of the concrete itself for the project. This term of the agreement [*3] was documented in a letter from C. Jeffrey

Mahan to Concrete Materials dated January 24, 1994.

Shortly thereafter, construction began and Concrete Materials provided the first load of concrete to Mahan Construction. A problem arose with the billing for this load. Concrete Materials included charges for the cost for ice set forth in the original quotation, $ .18 per pound. Mahan Construction refused to pay this amount, claiming that this term was not included in their final agreement, threatening to terminate the business relationship unless the ice question could be settled, and refusing any further payments until the matter was resolved. This dispute continued for several months, Mahan Construction arguing that no agreement for ice had been made at all, and Concrete Materials arguing that their original quote held. In the end, no resolution was achieved, and Concrete Materials filed the present action in state court. It was removed to the United States District Court for the Eastern Division of Kentucky upon request of the defendant, Mahan Construction, due to the diversity of citizenship of the parties and to the fact that the amount in controversy was greater than $ 50,000.

In [*4] the district court below, a jury found that a contract had existed between Mahan Construction and Concrete Materials that included the quotations in the October offer, that Mahan Construction had breached the contract, and that Mahan Construction owed Concrete Materials a total of $ 307,734.43 in damages ($ 87,561.81 for work already done under the contract and owed on Mahan's open account with Concrete Materials, and $ 220,172.62 for breach of the contract). The court entered judgment in this amount against the defendant. After the trial, Concrete Materials made a motion for pre-judgment interest on the open account portion of the damages, which was granted, thereby increasing the total award to $ 342,747.63. This appeal followed.

## II. *DISCUSSION*

**A.** *Submission of the Contract Dispute to the*

## Jury

Mahan Construction claims on appeal that the contract question in this case should not have been submitted to the jury, because there was no dispute as to the terms of the contract. Under Kentucky law, if the terms of a contract are unambiguous, there is no question of fact for the jury. *Hunter v. Wehr Constructors, Inc., 875 S.W.2d 899, 901 (Ct.App.Ky. 1993).* Instead, [*5] the court should enforce the contract as a matter of law. *Id.* Whether or not a contract existed between the parties, however, is a question of fact for the jury. *Id.* We review *de novo* a trial court's determination of the absence or presence of ambiguity, because that determination presents a question of law. *Id.; see also University Hills, Inc. v. Patton, 427 F.2d 1094, 1099 (6th Cir. 1970).*

Mahan Construction argues that the January 24, 1994, letter that it sent to Concrete Materials contained all the provisions of the contract and was clear on its face. Because this contract was unambiguous, the defendant contends, the trial judge erred as a matter of law in submitting the question to the jury at all. This argument ignores Concrete Materials's asserted interpretation of the factual situation: that its October offer was accepted by Mahan Construction, with changes made only to the price for the concrete itself and all other provisions remaining in place.

We conclude that Mahan Construction cannot prevail in its insistence that the contract provisions were unambiguous as a matter of law, because the plaintiff's interpretation of the situation is also plausible under [*6] the applicable state law. In Kentucky, it is possible for a contract to be formed "in any manner sufficient to show agreement . . . even though the moment of its making is

undetermined," *Ky. Rev. Stat. Ann. § 355.2-204* (Michie 1996), and for additional terms to be submitted as part of the acceptance of an offer. *Id. § 355.2-207.* Concrete Materials has offered evidence sufficient to support a jury finding that the January letter from Mahan was an acceptance of the earlier offer and that it did not contain terms about the ice because those terms had been previously determined by the communications from Concrete Materials to Mahan in October and remained unchanged. [1] Because the existence of a contract was ambiguous, and the terms thereof were certainly ambiguous, the district court properly submitted the factual determination on this issue to the jury.

[*7] **B. *Evidence of Lost Profits***

Prior to trial, the parties in this action engaged in discovery. Concrete Materials submitted initial disclosures, as required by *Fed.R.Civ.P. 26,* including their computation of the damages they claimed. Additionally, the plaintiff submitted responses to the defendant's Interrogatories and Requests for Documents. Although some of these responses could arguably be considered incomplete, and one response included an objection to producing certain documents, the defendant made no effort to gain more information through a motion to compel or a court order.

Indeed, Mahan Construction did nothing else with regard to these questions or documents until shortly before trial, when it made a motion in limine "to prevent the introduction of any evidence by Plaintiff . . . specifically concerning its profit, and/or its expected profit on the construction project which is the subject of this action." Arguing in support of this motion, Mahan Construction claimed that

---

[1]  On appeal, the factual conclusions of the trier of fact with regard to the existence of a contract "are binding on appeal unless [the appellate] court is left with a definite and firm conviction that a mistake has been made. It is the appellant who must shoulder the burden of proving such a mistake, and this burden is not met merely by demonstrating a conflict in the testimony, nor by seeking to redetermine the credibility of witnesses. Moreover, the appellate court must review the facts in the light most favorable to the present appellee." *United State Tile and Composition Roofers, et al. v. G & M Roofing and Sheet Metal Co., Inc., 732 F.2d 495, 498 (6th Cir. 1983).*

in order to dispute a claim for lost profits and specific investment, it would be necessary for Defendants to obtain expert witnesses to examine documents and render an opinion as [*8] to the legitimacy of the claims and as to the reasonableness of the compilation. Having received no backup information, it is impossible for Defendants to obtain an expert to examine that information.

The trial court, in considering this motion, held that because "Mahan did not follow up on its discovery requests by contacting Concrete Materials' counsel or by seeking to invoke the aid of the Court through a motion to compel," Mahan was "precluded from challenging this evidence at this late date." Thus, the motion in limine was denied.

This court reviews a district court's interpretation of the Federal Rules of Evidence *de novo*, because such a construction is a question of law. *U.S. v. Breitkreutz, 977 F.2d 214, 221 (6th Cir. 1992)*. Mahan Construction now claims that the district court erred in failing to exclude evidence of lost profits at trial. It bases this claim on *Fed.R.Civ.P. 26(a)(1)(C)*, which states the following:

(1) Initial Disclosures. Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to other parties:

. . .

(C) a computation of any category of [*9] damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the

nature and extent of injuries suffered; . . . .

*Fed.R.Civ.P. 26(a)(1)(C)*. Mahan Construction asserts that Concrete Materials did not comply with this discovery rule, arguing that it did not make available all the documents upon which its computations of damages were based. Mahan Construction insists that this alleged failure on Concrete Materials's part brings into play the sanction set forth in *Rule 37(c)(1)*:

(1) A party that without substantial justification fails to disclose information required by *Rule 26(a)* or *26(e)(1)* shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

The defendant argues that because Concrete Materials did not, in [*10] its opinion, comply with the initial discovery requirements of *Rule 26*, the district court had no discretion to allow the presentation of this evidence at trial.

Mahan Construction's argument on this issue rests on a great deal of assumption and confidence in its own opinions. The defendant has never established, or attempted to establish, that the information that Concrete Materials failed to produce comes within of *Rule 26(a)*. The applicability of the sanctions under *Rule 37(c)(1)*, like other discovery matters, falls within the sound discretion of the trial court. Although it is true that a party's failure to comply with *Rule 26*'s requirements results in automatic sanctions, such sanctions do not come into play merely because one party suddenly insists that *Rule 26(a)* has been violated.

Despite the fact that Concrete Materials made what appear to have been good faith initial

1997 U.S. App. LEXIS 6218, *10

disclosures and responses to Mahan Construction's interrogatories, as well as the fact that their responses included plausible explanations as to why their responses were adequate, Mahan Construction never requested the district court's assistance in obtaining anything further. Without having established that [*11] these documents were discoverable under *Rule 26(a)* or any other discovery rule, the defendant cannot insist upon their exclusion under *Rule 37(c)*. [2] The district court did not abuse its discretion in denying Mahan's motion in limine and allowing Concrete Materials to present evidence on lost profits at trial.

[*12]  Mahan Construction also claims that Concrete Materials did not meet its burden of proof on its claim of lost damages. It argues that the evidence as to lost damages was admitted improperly and, therefore, should not be considered, and that even if the evidence was properly admitted, it failed to establish the amount of the damages with "reasonable certainty" as required by Kentucky law and, therefore, cannot be the basis for any lost profits recovery.

The first aspect of this claim is evidentiary in nature. Mahan Construction claims that the trial court erred in allowing Concrete Materials to admit into evidence a two-page document that included its computation of lost damages. The fault, however, lies with Mahan Construction for failing to object to this document in a timely manner. According to the Federal Rules of Evidence,

> error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context [*13] . . . .

*Fed.R.Evid.  103(a)*.  In this case, Mahan Construction failed to object to the document at the time that it was offered for admission. It is thus precluded from raising objection to it post-trial or on appeal.

Even if the defendant were not barred from raising this objection at this time, it would lose on the merits of the claim. Mahan Construction argues that this document contained a "summary" of information that brings it under *Federal Rules of Evidence 1006*, which reads as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place [sic]. The court may order that they be produced in court.

*Fed.R.Evid.  1006*.  According to Mahan Construction, the plaintiff's document of lost profits is a summary, which was never supported by the requisite underlying documentation. Concrete Materials responds that all relevant underlying documentation was in fact provided. Our review of the record convinces [*14] us that the plaintiff is correct on this point. Hence, the only question before us is whether the information

---

[2]  The advisory committee notes to *Fed.R.Civ.P. 37(c)* warn of the potential for a disclosing party's abuse of this mandatory exclusion rule, stating that "preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party." *Fed.R.Civ.P. 37(c)* advisory committee notes to 1993 Amendment. This case seems to present the opposite situation, in which the party requesting disclosure tries to take advantage of the mandatory exclusion: failing to bring what it considers a deficiency in the discovery to the attention of the court or the disclosing party, then attempting to have evidence on an entire aspect of the disclosing party's claim automatically excluded because of that alleged deficiency.

provided by Concrete Materials was sufficient to support the jury's finding and computation of lost profits.

In determining the existence and the amount of lost profits, we apply the law of the forum state. *Anchor v. O'Toole, 94 F.3d 1014, 1020 (6th Cir. 1996)*. Under Kentucky law, "loss of anticipated profits as an element of recoverable damages for breach of contract is fully recognized . . . ." *Illinois Valley Asphalt, Inc. v. Harry Berry, Inc., 578 S.W.2d 244, 245 (Ky. 1979)*. A party claiming lost profits bears the burden of proving its claim with "sufficient evidence on which a reasonable inference as to the amount of damage can be based." *Id. at 246*. However, "mere uncertainty as to the amount will not preclude recovery." *Id. at 245*. The Kentucky Supreme Court has recognized that although "damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty," that "no court, including this one, can elucidate a single definition of 'reasonable certainty' which may be used as a yardstick in all cases." [*15] *Pauline's Chicken Villa, Inc. v. K.F.C. Corp., 701 S.W.2d 399, 401 (Ky. 1985)*. Basically, the law in Kentucky requires a trial court to look at the evidence presented on a case-by-case basis and determine whether a jury can make a reasonable inference as to the amount of lost profits.

Concrete Materials submitted information explaining their calculations of their lost profits and documents to support them. Given the Kentucky standard for setting forth evidence on lost profits, we conclude that the district court did not err in allowing the jury to make a determination as to Concrete Materials's lost profits. Plainly, the method of calculating lost profits did not rise to the level of clear error or manifest injustice necessary to require reversal despite Mahan Construction's failure to object or to seek more information.

## C. *Exclusion of the Defendant's Impeachment*

The determination of admissibility of evidence falls purely within the sound discretion of the trial court. *U.S. v. Rural Route 1, Box 137-B, Cutler, Ohio, 24 F.3d 845, 852 (6th Cir. 1994)*; *Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir. 1980)*. This court reviews a trial court's decisions [*16] regarding the admissibility of evidence for an abuse of discretion. *Rural Route 1, supra, 24 F.3d at 852*; *Logan, supra, at 790*. See also *Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 587 (6th Cir. 1994)*. An "abuse of discretion" in this context is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan, supra, at 790*. Absent such a conviction, the decisions of the trial court must stand.

In this case, Mahan Construction argues that the trial court abused its discretion in excluding the testimony of Sally Ramspell. The district judge disallowed Ramspell's testimony "as to prior dealings of Mr. Robertson [president of Concrete Materials and a witness at trial] and how he had changed terms and conditions of contracts in the past to save money," finding that it was irrelevant. At trial, Mahan Construction argued that Ramspell's testimony would "be as to a similar experience in similar circumstances. It will go to the credibility of the plaintiff . . . ." When asked to identify the similar circumstances, trial counsel stated that the witness would describe another situation in which "the bottom line motive . . . is profit." [*17] On appeal, Mahan argues that in this case, Ramspell's testimony is admissible under *Fed.R.Evid. 404(b)*, [3] specifically under the exception that allows character evidence for the

---

[3]  *Fed.R.Evid. 404(b)* states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

purpose of showing intent. [4] We conclude that under either of these hazily articulated theories of admissibility, Mahan Construction cannot succeed on this claim of error.

[*18] The district judge refused to admit the evidence at trial, finding that "this testimony is not relevant to the issues here. And if it is relevant, I think it would be confusing to the jury. So I'm not going to allow it under Rule 403." Additionally, the trial judge stated, "I think the jury is going to have to make a decision based on the testimony of what we have, and I just don't think that this witness is going to add anything at all to it." This decision was plainly reasonable and supported by the Federal Rules of Evidence. Mahan Construction's assertion that this evidence was relevant as to intent or credibility, and therefore should have been admitted, is not supported by the Federal Rules of Evidence and, in any event, this exclusion does not rise to the level of abuse of discretion on the part of the trial judge.

## D. Calculation of Pre-judgment Interest

Finally, Mahan Construction appeals the decision of the district court with regard to its award of pre-judgment interest on a portion of the total damages award. After the trial, Concrete Materials made a motion to amend the judgment "to include pre-judgment interest on the portion of the judgment representing [*19] the open account of $ 87,561.81 from and after May 30, 1994." It submitted that 2 percent per month, an amount included on the forms used in its original quotation to Mahan Construction as a "finance charge" to "be added to all past due accounts," was the appropriate calculation rate. Arguing in support of its motion to amend the judgment, Concrete Materials maintained that this amount was an open account and thus liquidated, and that the

contractual interest rate was the appropriate calculation rate "since the jury found that a contract existed based on the offer in the quotation and the acceptance by the Defendant in its letter of January 24, 1994." The trial court agreed with Concrete Materials, and granted the requested interest at the requested rate.

In assessing pre-judgment interest, a federal court sitting in diversity applies the law of the forum state. *Rhea v. Massey-Ferguson, 767 F.2d 266, 270 (6th Cir. 1985)*. Under Kentucky law, the determination of pre-judgment interest is a question of equity within the discretion of the trial judge. *Nucor Corp. v. General Elec. Co., 812 S.W.2d 136, 144-45 (Ky. 1991)*. The trial judge's decision awarding pre-judgment interest [*20] is then subject to review only for abuse of discretion. *Id. at 145; see also E.E.O.C. v. Kentucky State Police Dept., 80 F.3d 1086, 1097* (6th Cir.), *cert. denied, 136 L. Ed. 2d 302, 117 S. Ct. 385 (1996)*.

Under Kentucky law, "interest runs as a matter of right on a liquidated demand, and, in the case of an unliquidated claim, the allowance of interest rests in the discretion of . . . the court trying the case." *Nilson-Newey & Co. v. Ballou, 839 F.2d 1171, 1176 (6th Cir. 1988)* (internal citations omitted). In the instant case, the district judge correctly determined that the amount due Concrete Materials on the open account constituted "liquidated damages" and thus was automatically subject to prejudgment interest. As the Kentucky Supreme Court held in *Nucor, supra,*

> when the damages are "liquidated," pre-judgment interest follows as a matter of course. Precisely when the amount involved qualifies as "liquidated" is not always clear, but in general "liquidated" means "made certain by agreement of the parties or by operation of law." . . .

---

[4] On the same page of its brief that Mahan refers to this exception to the rule excluding character evidence as the reason that Ramspell's testimony should have been admitted, it asserts that "the court's exclusion was erroneous because it was based upon the fact that this was 'inadmissible character evidence' . . . . That is not the basis or the need for testimony taken."

1997 U.S. App. LEXIS 6218, *20

Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price.

_812 [*21] S.W.2d 136, 141 (Ky. 1991)_ (internal citations omitted).

Nor do we find the district court erred in employing the 2 percent per month compounded interest rate to the concrete portion of the account. The calculation method for pre-judgment interest in Kentucky falls within the discretion of the trial court. _E.E.O.C. v. Kentucky State Police Dept., supra, 80 F.3d at 1097._ Like the decision to award it at all, this aspect of pre-judgment interest assessment is also subject only to abuse of discretion review. _Id._ Under Kentucky law, "the legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate . . . ." _Ky. Rev. Stat. Ann. § 360.010._ The trial court, recognizing that the jury had specifically found a contract based on Concrete

Materials's October document, employed the 2 percent interest rate included in that document. Based on the jury's finding of a contract, this determination was supportable as part of the agreement between the parties and thus does not constitute an abuse of discretion. Additionally, "the decision whether to award compound or simple interest is in the trial [*22] court's discretion," _Kentucky State Police Dept., supra, 80 F.3d at 1098,_ and the defendant cites no relevant authority (nor have we found any) to support its contention that compound interest was inappropriate in this case. For this reason, the district court's use of the 2 percent compounded monthly interest rate cannot be said to constitute an abuse of discretion.

### III. _CONCLUSION_

For the reasons set out above, we AFFIRM the judgment of the district court in all respects.