IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC., | ) | CASE NO. 1:08-CV-2755 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFF'S MOTION THAT TRIAL OF** |
| SAP AMERICA, INC., et al. | ) | **THIS CASE BE CONDUCTED IN AN** |
| | ) | **ELECTRONIC COURTROOM** |
| Defendants. | ) | |

As this Court has recognized, live-witness testimony is preferable to deposition testimony at trial, regardless of whether that deposition testimony was videotaped.  [ECF #260:  Oct. 15, 2015 Tr. at 22:15-19].  Indeed, because of the unique circumstances of this case, fairness requires that the testimony of witnesses crucial to Hodell's claims be presented in a manner most closely approximating in-person testimony.

At the February 18, 2015, Final Pretrial, Hodell requested to be permitted to present live testimony from out-of-state witnesses by contemporaneous video transmission.  That process is expressly authorized by Rules 43 and 45 of the Federal Rules of Civil Procedure.  Recognizing that taking live testimony of certain witnesses – specifically, Geoffrey Ashley and Dale Van Leeuwen – would further the interests of justice, this Court ruled that Hodell would be permitted to present their testimony via contemporaneous video transmission.  [ECF #298:  Feb. 18, 2015 Tr. at 13].  Hodell immediately contacted a vendor to effectuate the Court's ruling.

The next day, however, Court personnel contacted Hodell and informed it that the courtroom in which trial was scheduled does not accommodate videoconference testimony.  Thus, Hodell was left with an order recognizing that the interests of justice favored presentation

of testimony by videoconferencing at trial, but, because of the courtroom in which trial was scheduled to occur, the impossibility of doing so.  The rescheduling of trial in this case has provided an opportunity to change the trial location so it can proceed in a manner that will be fair to all parties.

Conducting trial in this case in a courtroom at the Stokes Courthouse will further the interests of justice by carrying into effect this Court's order permitting testimony by contemporaneous video transmission.  The Stokes Courthouse has multiple electronic courtrooms that not only accommodate videoconferencing, but also allow efficient presentation of video and electronic evidence to jurors, the presiding Judge, and opposing counsel.  The efficiency and effectiveness of proceeding to trial in an electronic courtroom is recognized on the Northern District of Ohio's website:

> The streamlining of the litigation process through the implementation of advanced communication technologies has enhanced the Court's ability to meet the needs of the bar and the public, while preserving the dignity and fairness of the proceedings.
>
> Since we are five times as likely to remember something we both see and hear, the audio/visual means of presentation implemented in the courtrooms increases both efficiency and juror comprehension.
>
> With minimal training, attorneys can present photos, documents, objects, videotapes and electronic presentations to focus juror attention on critical details.
>
> \*     \*     \*
>
> Two video-conferencing cameras are focused on the judge and witness, as well as the presenter at the lectern. A camera with pan, tilt and zoom capabilities and a gooseneck mounted camera at the witness box can also be accessed.
>
> The equipment can be used for remote witness testimony, pretrial conferences or other court proceedings. The use of this technology is easily controlled from multiple touch panel controllers at the judge's bench and the lectern.[1]

The trial of this matter is now scheduled to begin on June 15, 2015, far enough in the

---

[1] http://www.ohnd.uscourts.gov/home/courtroom-support/courtroom-technology/

future that it should be possible to reserve a courtroom at the Stokes Courthouse.  Further, if it is not possible for Judge Wells to conduct the trial at the Stokes Courthouse, there should be ample time for a Judge who does conduct trials there to become familiar with the background of this case and proceed on the scheduled date.

As this Court recognized when ruling that contemporaneous video transmission would be allowed, it is critical that Hodell be able to present the testimony of two witnesses in particular, Mr. Van Leeuwen and Mr. Ashley, in that manner.  As an owner of the IBIS Group and LSi-Lowery Systems, Mr. Van Leeuwen was one of the people most responsible for selling SAP Business One to Hodell.  He will provide critical testimony regarding that sale, including the representations that SAP made to accomplish it.  He will also testify about the failed implementation of that product.  At his deposition, Mr. Van Leeuwen testified, among other things, about SAP's active involvement in the sale:

> SAP committed to and they provided support from a sales perspective, during our initial engagements with customers.  The Hodell-Natco sale, if you will, was not – was not done without the direct knowledge of SAP.  They were involved.  Dan Kraus (V.P. of SAP Business One in the U.S.) was actively involved in the sales cycle in helping us determine, you know, that this was the right solution, that, you know, that we were going to be able to . . . meet Hodell-Natco's requirements.

[ECF #138: Van Leeuwen Dep. at 49:16 to 50:25].

Although the parties arranged for Mr. Van Leeuwen's deposition to be videotaped, an error by the video technician resulted in only part of his testimony actually being videotaped.  Much of Hodell's examination of him was not recorded.  The error by the videographer was not discovered until recently when the tapes were being prepared for trial.  Thus, Hodell cannot present Mr. Van Leeuwen's testimony by videotape and, unless he can testify by videoconferencing, will be forced to read his deposition at trial.

Mr. Ashley, a former SAP employee, is similarly crucial to Hodell's case.  Among other

things, he testified about the importance of the Hodell account to SAP:

> Q: Is it fair to say that Hodell was a high profile account in November 2005?
> A: Yes.
> Q: Why is that?
> A: Two reasons, at least two reasons. One, because of the size of the opportunity. The second would have been because of the brand recognition of Hodell in their market.
> Q: Isn't the third that LSi was developing this add-on that would allow SAP to get into a different –
> A: That would be the brand. That would be the brand piece that I referred to, yes. It would give us (SAP) the ability to get into a market segment.
> Q: And that would be In-Flight Enterprise, right?
> A: Correct.

[ECF #143: Ashley Dep. at 95:17 to 96:08]. Mr. Ashley testified that his team was updated on the Hodell sale weekly. [Ashley Dep. at 101:09-20].[2]

He was the author of several emails damaging to SAP's position in this case that will likely be admissible if he testifies live. In one email, sent to a current SAP employee in 2011 *while this litigation was pending*, Mr. Ashley cautioned that his testimony would not be helpful to SAP:

> I have no problem with you giving out my contact information but before you do, you might want to let SAP know that I would not be a very good resource. In point-of-fact, SAP screwed this up. Did the partner have issues – sure. **But there were numerous cries for help from the partner and SAP either blew them off, gave WRONG information, or took sides and made the partner look bad.**

Mr. Ashley forwarded the email to LSi's owner, Dan Lowery, and stated:

> ***I told them, in no uncertain terms, that SAP did NOT want me as any kind of "witness" as I would tell the truth – SAP screwed this up.
>
> I let them know that **SAP pushed the partner to take the deal and then SAP (Dan Kraus) threw the partner under the bus.**

[Plaintiff Trial Exhibit 173 (emphasis added), attached as Exhibit 1].

---

[2] Further complicating matters, Mr. Ashley testified for much of his deposition under the mistaken belief that his employment with SAP began in 2005 – after Hodell had signed the Development Agreement. At the end of his deposition, Mr. Ashley recalled that he had started working at SAP in 2004 - thus rendering much of the testimony confusing at best.

4

Similarly, in another email to LSi's owner, Dan Lowery, *also while the litigation was pending*, Mr. Ashley was critical of SAP's having sold a product to Hodell that was not ready for market:

> I have always told SAP, Dan [Kraus], lawyers, etc. that **this was a case where we had a product not ready for prime time**, a partner relying on documentation that SAP put together, a prospect/customer relying on SAP to back their commitments, and frankly, a solution that could have worked if anyone at SAP would have wanted to take the time to get you there.

[Plaintiff Trial Exhibit 174 (emphasis added), attached as Exhibit 2].[3] Mr. Ashley admitted in his deposition that he authored and sent both emails.

SAP's counsel, at the October 15, 2014, pretrial, originally represented to both the Court and Hodell that Mr. Ashley would appear at trial. [ECF #260: Oct. 15, 2014 Tr. at 27:14-18]. Hodell prepared for trial for over three months based on that representation. Then, with less than two weeks remaining before trial, citing costs, SAP reversed course and revealed that it no longer intended to make arrangements for Mr. Ashley to appear. When Hodell offered to bear those costs, SAP represented that Mr. Ashley was demanding a substantial *quasi*-expert fee. When Hodell offered to pay that fee, SAP demanded a signed "statement of work" before Mr. Ashley would appear. The fact is that the likelihood of Mr. Ashley appearing at trial is, at best, small. Moreover, the only way he will testify live is if Hodell pays him an exorbitant sum of money to secure his appearance. Hodell should be able to avail itself of the Federal Rules permitting out-of-state witnesses to testify via contemporaneous video transmission as this Court previously authorized.

If this trial is not held in the Stokes Courthouse, the effectiveness of the testimony from these two central witnesses could be substantially compromised. When the Court also considers the vast amount of documents that will be presented, as well as other technological needs that

---

[3] Hodell by no means concedes that these emails will be inadmissible if Mr. Ashley does not testify live and Hodell is required to play his videotaped deposition at trial.

will arise with a trial of this scope, it is clear that the trial should be heard in the Stokes Courthouse in an electronic courtroom in order to carry out the interests of all parties involved in conducting a fair, efficient, and expedient trial. There are hundreds of pages of exhibits that will be presented to the jurors during trial that will be presented most effectively in the electronic courtroom setting. There are also at least two additional deposition videos[4] that will need to be played for the jury even if contemporaneous video testimony is taken for Mr. Van Leeuwen and Mr. Ashley.

      For these reasons, Plaintiff moves the Court to conduct the trial of this matter in an electronic courtroom at the Stokes Courthouse. Alternatively, if it is not possible for Judge Wells to conduct the trial at the Stokes Courthouse, Hodell requests the Court to ask that the case be reassigned to a Judge who will be able to do so.

Dated March 2, 2015         Respectfully submitted,

                   /s/ *P. Wesley Lambert*
                   Christopher J. Carney (0037597)
                   Sharon A. Luarde (0071625)
                   P. Wesley Lambert (0076961)
                   BROUSE MCDOWELL
                   600 Superior Ave. E., Suite 1600
                   Cleveland, Ohio 44114
                   (216) 830-6830 phone
                   (216) 830-6807 fax
                   CCarney@brouse.com
                   SLuarde@brouse.com
                   WLambert@brouse.com
                   *Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

[928481]

---

[4] Hodell still intends to play the videotaped depositions of Jon Woodrum and Udi Ziv at trial even if contemporaneous video transmission is permitted.