IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
|---|---|---|
| Plaintiff, | ) ) ) | JUDGE WELLS |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF SAP AMERICA, INC. AND SAP AG IN OPPOSITION TO PLAINTIFF'S MOTION THAT TRIAL OF THIS CASE BE CONDUCTED IN AN ELECTRONIC COURTROOM**

**I.     INTRODUCTION**

SAP strongly opposes Hodell's request to further disrupt and endanger these proceedings. The simple fact is that but for Hodell's improvident *voir dire*, a jury would have been seated on February 23, 2015, and trial would likely be nearing its conclusion. Hodell and its counsel now seize on the delay *they caused*, claiming it provides an "opportunity." But what Hodell really seeks is an opportunity to alter the reality that certain deposition testimony it elicited from out-of-state witnesses years ago has already been ruled inadmissible by this Court because, *inter alia*, the testimony is irrelevant, misleading, highly prejudicial, and consists of improper opinions.

More specifically, Hodell bases its motion primarily on its alleged need for live, remote video testimony from two witnesses, Geoff Ashley and Dale Van Leeuwen. But it is undisputed that: (1) the depositions of Messrs. Ashley and Van Leeuwen were taken and transcribed in 2012, *and already exist on videotape*; (2) these depositions were conducted in New Hampshire and Illinois, respectively, and the parties incurred the expense of traveling and conducting these

deposition in order to preserve the deposition testimony of these witnesses for use at trial; (3) the parties spent considerable effort designating, counter-designating, and objecting to deposition testimony for these witnesses for the very reason that neither would be available at trial; (4) this Court then spent its own time and resources and has already ruled on each and every one of the parties' objections to said testimony; and (5) the parties have already completed the expensive and time-consuming process of editing the videotaped deposition testimony of these witnesses for playback at trial.

Despite this, Hodell suggests that Messrs. Ashley's and Van Leeuwen's deposition testimony is somehow insufficient and should be disregarded, and that these individuals should instead be compelled to travel to remote, out-of-state, and as-yet-undisclosed locations – without any identified safeguards in place – so that they can testify during trial via contemporaneous videoconferencing.

Hodell claims that its request is standard and not controversial, but blatantly fails to mention that under Fed. R. Civ. P. 43(a), testimony by live video feed can only occur upon a showing of "good cause" and "compelling circumstances," and that this procedure is particularly disfavored when – as here – deposition testimony already exists. The truth is that Hodell is dissatisfied with this Court's rulings concerning the admissibility of deposition testimony from Messrs. Ashley and Van Leeuwen, and Hodell hopes that if it can force these witnesses to appear via remote video feed – or force this case to be reassigned to a new judge – it will somehow be able to make their inadmissible testimony admissible.

What's more, accommodating Hodell's improper strategic request at this late stage will inevitably only further delay SAP's opportunity to finally be heard in court. Indeed, Hodell has not explained where these witnesses would appear remotely; what facilities, equipment, or other

means of remote transmission are available at these unknown locations; or what procedural safeguards would be employed to ensure that this last-minute process will not taint the entire trial. Nor has Hodell indicated that any such facilities – whether in Cleveland or at the unknown remote locations – are actually available during the rescheduled trial period.

When the true circumstances are considered under the standards required by Fed. R. Civ. P. 43(a), it is clear that Hodell's motion is unfounded and amounts to little more than a backdoor effort to revisit this Court's rulings about deposition testimony.

## II. ARGUMENT

### A. Under Fed. R. Civ. P. 43(a), Contemporaneous Transmission of Live Testimony by Remote Video Feed Is Unusual and Especially Unwarranted When Deposition Testimony Already Exists

Rule 43(a) of the Federal Rules of Civil Procedure provides that "[f]or ***good cause*** in ***compelling circumstances*** and with ***appropriate safeguards***, the court ***may*** permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a) (emphasis added). Such remote testimony is essentially regarded as a measure of last resort, reserved for rare and particularly compelling circumstances, such as "when a witness is unable to attend trial for *unexpected reasons, such as accident or illness*." Advisory Notes to Fed. R. Civ. P. 43 (emphasis added); *Eller v. Trans Union, LLC*, 739 F.3d 467, 477-79 (10th Cir. 2013) ("Courts allow remote testimony in special circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a courtroom."). And this procedure is not warranted when it is merely "inconvenient for the witness to attend the trial." *Eller,* 739 F.3d at 477-79 (holding Rule 43(a) was not satisfied where witness's absence from trial was not unexpected as it had been known in advance of trial that witness was based in Portland, Oregon, and plaintiff could have made arrangements ahead of time for introducing witness's testimony by deposition); *see also Predator International, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970,

3

2014 U.S. Dist. LEXIS 12973, at *3-4 (D. Colo. Jan 31, 2014) (refusing to permit testimony by contemporaneous transmission and noting that "inconvenience of the witnesses . . . is insufficient, especially in this case, where Predator was aware of their location in advance of trial and was not surprised by 'unexpected reasons' for their unavailability.") (attached hereto as Exhibit "A.").

Moreover, it is well-recognized that "depositions, including video depositions, provide a *superior means* of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses." Advisory Notes to Fed. R. Civ. P. 43 (emphasis added); *see also Sille v. Parball Corporation*, 2:07-cv-00901, 2011 WL 2680560 (D. Nev. Jul. 8, 2011) (attached hereto as Exhibit "B").

The use of remote testimony "must be approached cautiously," and "*[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances*." Advisory Notes to Fed. R. Civ. P. 43 (emphasis added). Because remote testimony "cannot be justified merely by showing that it is inconvenient for the witness to attend the trial," even where witnesses are located outside of the United States, courts regularly refuse to allow remote testimony. *See, e.g.*, *Eller,* 739 F.3d at 477-79 (refusing to allow a second witness to testify from Turkey); *SEC v. Yang,* No. 12-c-2473, 2014 WL 1303457 (N.D. Ill. Mar. 30, 2014) (refusing to allow live video testimony of foreign national witnesses because, in part, the request was opposed and there had been no showing of efforts to obtain a visa and no showing that travel was prohibitively expensive) (attached hereto as Exhibit "C').

And, as in the instance case, where the witness's location outside the subpoena power of the Court has been known for years, good cause and compelling circumstances simply do not

4

exist. *See, e.g.*, *Sille*, 2011 WL 2680560, at *1 (finding no compelling circumstances to justify live video feed and noting that "[t]here is nothing unexpected concerning the ability of Plaintiff's witnesses to attend. Norway and New York have remained the same distance from Las Vegas, Nevada during the entire pendency of this action.").

Where courts have permitted contemporaneous video transmission, they have been careful to ensure that the circumstances are truly compelling. *See, e.g.*, *Jennings v. Bradley*, 419 F. App'x 594, 598 (6th Cir. 2011) (three witnesses posed security threats and the fourth would be deprived of necessary mental health support if he had to testify in person); *El-Hadad v. UAE*, 496 F.3d 658, 669 (D.C. Cir. 2007) (requiring a foreign national to prove that he had pursued and repeatedly been denied a visa to the U.S. before permitting contemporaneous testimony); *In re Vioxx Products Liability Litigation*, 439 F.Supp.2d 640, 641-44 (E.D. La. 2006) (allowing live video feed where witness possessed critical information and *had not been deposed*, action was a *bellwether trial for multidistrict litigation* involving thousands of lawsuits, and defendant's refusal to voluntarily produce the witness was for purely tactical advantage); *Dagen v. CFC Group Holdings, Ltd.*, No. 00-cv-5682, 2003 WL 22533425 (S.D.N.Y. Nov. 7, 2003) (permitting multiple employees residing in Hong Kong to testify via live feed because employer raised valid visa concerns, legitimate business concerns, and prohibitive costs as reasons – and because defendant would suffer potentially incurable prejudice if the court excluded the testimony) (attached hereto as Exhibit "D"); *Edwards v. Logan*, 38 F. Supp.2d 463, 465-68 (D. Va. 1999) (allowing live video feed where transporting the inmate-witness from New Mexico to Virginia would be an expensive security risk, and staying the action until the prisoner's release could cause a decade-long delay).

Here, Hodell has known for years that Messrs. Ashley and Van Leeuwen both fall outside the subpoena power of this Court, and Hodell most certainly "could reasonably foresee the circumstances" it now offers to justify live video transmission. Indeed, the parties plainly *did* anticipate these circumstances, having preserved on videotape the testimony of nearly every witness in this matter, at least in part, to ensure efficient presentation at trial should any witness be unable or unwilling to appear.

Hodell offers no explanation for what safeguards it would put in place to ensure that remote testimony would not further delay and endanger these proceedings. And the fact is that Hodell does not face any prejudice by having the already existing videotaped deposition testimony of Messrs. Ashley and Van Leeuwen presented at trial. Indeed, of the 18 witnesses called in this matter, 14 are scheduled to appear live at trial, while just four will have their videotaped testimony played for the jury. Hodell has no quarrel with presenting the testimony of two other witnesses – Jon Woodrum and Udi Ziv – via their pre-recorded depositions, and as explained below, there is simply no reason why the testimony of Messrs. Ashley and Van Leeuwen should not be presented to the jury in the same manner.

> **B.** **There Is No Good Cause Or Compelling Circumstances To Disregard Geoff Ashley's Existing Deposition Testimony and Endanger These Proceedings By Forcing Him to Testify Via Remote, Contemporaneous Video Transmission**

Mr. Ashley was deposed on March 16, 2012 in Concord, New Hampshire. Hodell's president, Kevin Reidl, along with its attorneys, traveled from Cleveland; SAP's attorney traveled from Philadelphia. It was well known to Hodell at that time that Mr. Ashley was a former SAP employee who was not under SAP's control and that Mr. Ashley was plainly outside of this Court's subpoena power. In order to best preserve Mr. Ashley's testimony for use at trial, the parties arranged for the deposition to be transcribed and recorded on video.

6

Contrary to Hodell's claim that Mr. Ashley is somehow "crucial" to this case, Mr. Ashley's personal knowledge about the facts of this case is extremely limited: Mr. Ashley was not hired by SAP until November 2004 and had not heard of Hodell prior to his joining SAP (*see* Ashley Dep. Transcript, at 96:15-22, 239:25-240:11); Mr. Ashley served in a sales management role that did not typically involve direct contact with customers (*see id.*, at 11:4-21); Mr. Ashley was not involved at all in the Hodell sales cycle or in any evaluation of the technical needs or requirements of Hodell prior to the signing of the December 2005 License Agreement (*see id.*, at 10-12, 98:22-99:16, 108:14-21); Mr. Ashley did not communicate with Hodell about signing the License Agreement and had no knowledge about what was represented to Hodell about the License Agreement (*see id.*, at 81:16-23); and Mr. Ashley's knowledge of the Hodell transaction, prior to the License Agreement, was essentially limited to information found in sales reports (*see id.*, at 96:23-98:4).

In any event, Mr. Ashley's deposition testimony was successfully recorded in full; was the subject of designations, counter-designations, and objections; and this Court has already ruled on which portions of his testimony are admissible and inadmissible at trial. (ECF #292, 295.) After ruling on the parties' designations and objections, the edited portions of Mr. Ashley's videotaped testimony amount to barely more than *one hour* of playtime.

Hodell fails to show any compelling need to disregard Mr. Ashley's deposition testimony and force Mr. Ashley to instead testify remotely by videoconference. Indeed, Hodell first points to testimony Mr. Ashley *already gave* about the alleged "high profile" of the Hodell account within SAP.[1] Hodell fails to note that it already designated this testimony for playback to the jury, SAP did not object to this specific testimony, and thus that this testimony will come into

---

[1] Hodell's citation to pages 95:17-96:08 of Mr. Ashley's deposition is incorrect. The testimony quoted in Hodell's motion appears at lines 98:5 to 98:21 of Mr. Ashley's deposition.

7

trial via Mr. Ashley's videotaped deposition. (*See* ECF #289, 291, 292, 295.) As such, the very testimony Hodell is most concerned with will actually be put before the jury.

Second, Hodell incorrectly claims that "Mr. Ashley testified that his team was updated on the Hodell sale weekly."[2] This was *not* Mr. Ashley's actual testimony. Instead, it was this:

> Q. Do you recall how often your team was updated on the Hodell sale?
>
> A. *I have no idea*. Again, weekly. I mean, that would have been normal cadence." (emphasis added).

And Hodell fails to mention that although it initially designated this obviously speculative and inadmissible testimony, it withdrew this designation just three days before trial. (*See* Exhibit "E," Email from A. Moses to G. Star, dated Feb. 20, 2015, attaching Hodell's Final Testimony Designations for G. Ashley[3]). Thus, besides the obvious contradiction in Hodell's position, having Mr. Ashley testify live will not change the fact that he has no personal knowledge of this topic, nor will it somehow render his speculative testimony admissible.

Hodell next argues that it must be permitted to broadcast Mr. Ashley via live video feed because Mr. Ashley authored emails "that will *likely* be admissible if he testifies live."[4] But Hodell blatantly fails to explain that *this Court already sustained SAP's objections* to Mr. Ashley's testimony that relates to these very emails. (*See* ECF # 292, SAP Objections to G. Ashley Deposition at 17:23-36:20, 37:24-53:24.) And while this Court initially withheld ruling on the admissibility of these emails, it is obvious that since Mr. Ashley's testimony about the

---

[2] Hodell's citation to page 101:09-20 of Mr. Ashley's deposition is incorrect. The referenced testimony appears at lines 104:4-7 of Mr. Ashley's deposition.

[3] The original attachment to Mr. Moses's email was 92-pages long. For ease of reference, Exhibit "E" contains only the relevant pages of Mr. Ashley's deposition transcript.

[4] The emails were marked by Hodell as Exhibits 173 and 174. They are plainly irrelevant, unduly prejudicial, and otherwise consist of inadmissible opinions offered by Mr. Ashley well *after* his employment ended with SAP.

emails is inadmissible (a result that is the same whether his testimony is live or by deposition), the emails themselves are inadmissible as well.

Hodell also contends (in a footnote) that "much of" Mr. Ashley's deposition testimony is "confusing" because he initially testified that he began his employment with SAP in 2005, but later clarified that he started with SAP in 2004. Yet Hodell fails to detail any part of Mr. Ashley's admissible testimony might be rendered confusing because of this. Moreover, at the time of his deposition, Hodell did not appear confused, made no effort to clarify any testimony, and never raised this as an issue until now – one week *after* trial in this case first began.

Finally, the fact remains that if Hodell truly needs Mr. Ashley to appear in person at trial, it has all of the information and tools necessary to have him do so without disrupting these proceedings any further. Mr. Ashley has maintained that he is willing to appear in person if he is reimbursed for his expenses and his time. Hodell simply does not want to incur those costs.[5]

    **C.**    **There Is No Good Cause Or Compelling Circumstances To Disregard Dale Van Leeuwen's Existing Deposition Testimony and Endanger These Proceedings By Forcing Him to Testify Via Remote, Contemporaneous Video Transmission**

Hodell's argument concerning the need for Mr. Van Leeuwen to appear live via remote video feed fails to recount that, as of October 15, 2014, Hodell had informed the Court and SAP that Mr. Van Leeuwen – with whom SAP has had no contact – *would appear in person at trial*. It was not until the February 18, 2015 pre-trial hearing – *five days before trial* – that Hodell actually confirmed to this Court and to SAP that Mr. Van Leeuwen would *not* appear live. To this day, Hodell has never explained to this Court or to SAP why Mr. Van Leeuwen was

---

[5] Contrary to Hodell's assertions, SAP never represented that Mr. Ashley would absolutely appear live. While it had been SAP's expectation that Mr. Ashley would appear live, SAP was always clear that Mr. Ashley was not under SAP's control; thus, SAP always reserved the right to present Mr. Ashley's deposition testimony at trial, and it chose to exercise this right when recently informed of Mr. Ashley's minimum daily rate for testifying. Moreover, SAP never "demanded a signed 'statement of work' before Mr. Ashley would appear." Mr. Ashley requested this statement of work himself, and SAP merely passed this request on to Hodell's counsel.

9

suddenly unable or unwilling to appear in person at trial. Nor has Hodell explained whether it has since sought Mr. Van Leeuwen's commitment to attend the rescheduled trial in person. Thus, it is far from certain that Mr. Van Leeuwen is actually unavailable for trial.

In any event, Mr. Van Leeuwen's deposition testimony was taken on July 18, 2012, in Chicago, Illinois. Hodell's president, Kevin Reidl, also attended this deposition in person along with Hodell's counsel and counsel for SAP, and all parties were well aware that Mr. Van Leeuwen was outside of the Court's subpoena power.

Mr. Van Leeuwen's deposition testimony was the subject of designations, counter-designations, and objections, and this Court has already ruled on which portions of his testimony are admissible and inadmissible at trial. (*See* ECF #277.) Notably, the Court sustained nearly 70% (34 of 50) of SAP's objections to Hodell's designations, and it is obvious (as it is concerning Mr. Ashley's testimony) that Hodell is unhappy with this Court's rulings and is hoping that if Mr. Van Leeuwen appears live, it will somehow be able to put questions before Mr. Van Leeuwen designed to elicit inadmissible and prejudicial testimony and further disrupt these proceedings.

Indeed, Hodell has made no real effort to explain why Mr. Van Leeuwen must appear via contemporaneous video feed. At best, Hodell cites to Mr. Van Leeuwen's already existing deposition testimony regarding SAP's alleged involvement in the sale of Business One to Hodell. But this testimony was designated by Hodell for use at trial, and this Court has ruled that it is admissible. (ECF #277.)

Hodell's only other explanation is that a technical issue resulted in a portion of Mr. Van Leeuwen's deposition going unrecorded on video. But that testimony was transcribed, and simply because portions of Mr. Van Leeuwen's deposition testimony may need to be read into

10

the record – an event that occurs every day in courts across the country – is hardly a reason for uprooting this trial to a new courtroom, much less transferring this six-year-old case to a new judge *after* trial first began and just three months before the rescheduled trial date.

### D. Hodell's Other Alleged Concerns Do Not Warrant the Relief It Seeks

Hodell's last argument for why this trial must be moved to a new courtroom – and perhaps even put before a new judge – is because of the so-called "vast" amount of documents and "other technological needs that will arise . . . ." But this case's record is not a new phenomenon. And although the record for trial is large, it is hardly of the magnitude that would necessitate a change in courtrooms.

Hodell filed its Complaint in November 2008; the vast majority of document discovery was completed years ago; and the parties filed their exhibit lists nearly half a year ago. The case was assigned to this Court more than six years ago, and it was common knowledge that the trial would occur in Courtroom 328 of the Howard M. Metzenbaum U.S. Courthouse. Indeed, this is exactly where the parties appeared years ago for the initial case management conference, and again on October 15, 2014 and February 18, 2015 for pretrial conferences. The parties were instructed time and again to make arrangements for any technological needs, but Hodell never before raised any issue.

Hodell is simply bemoaning the fact that Courtroom 328 lacks video conferencing capabilities (which is irrelevant for the reasons stated above), but this should not have come as a surprise. Indeed, during the October 15, 2014 pretrial conference, Hodell informed the Court that it wanted to explore the option of using videoconferencing during trial. (ECF #260, at 13:2-19.) For its part, SAP was clear that it did not agree with this approach and took the time to investigate the issue after the conference and learned that videoconference was not possible. Thus, when Hodell *next* raised the issue fourth months later during the February 18, 2015 pretrial

11

conference – less than three business days before trial began – SAP's counsel again objected and stated that, in any event, videoconferencing was not possible. (ECF #298, at 9:2-8.) Hodell disputed this, but once it took the time to investigate for itself, learned that SAP was correct. If the use of videoconferencing was as important as Hodell now suggests, one would expect that Hodell would have acted differently and not waited until the hours before trial to bother to look into the issue.

### III.     CONCLUSION

Having failed to articulate any need to further disrupt and delay these proceedings – and failing to even attempt to show good cause, compelling circumstance, or appropriate safeguards required under Fed. R. Civ. P. 43(a) – Hodell's motion should be denied. SAP is not, however, opposed to working with Hodell and outside vendors to address Hodell's concerns about displaying exhibits to the jury electronically. This is something SAP believes the parties are fully capable of addressing between themselves, off-the-record, and without unnecessary motions.

Respectfully submitted,

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
*Attorney for SAP America, Inc. and SAP AG*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2015, the foregoing Memorandum of SAP America, Inc. and SAP AG in Opposition to Plaintiff's Motion That Trial of This Case Be Conducted in an Electronic Courtroom was filed and served electronically via ECF.

/s/ Gregory J. Star

Gregory J. Star (admitted *pro hac vice*)