# EXHIBIT "C"

2014 WL 1303457
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Securities and Exchange Commission, Plaintiff,
v.
Siming Yang, et al., Defendants.

Case No. 12 C 2473  |  Filed March 30, 2014  |  Signed March 31, 2014

**Attorneys and Law Firms**

Timothy Stewart Leiman, Emily Ann Heller, Jedediah Bradford Forkner, Jonathan Stephen Polish, Marlene Beth Key–Patterson, Robert J. Burson, U.S. Securities & Exchange Commission, Chicago, IL, for Plaintiff.

Jonathan R. Buck, Regina L. LaMonica, Perkins Coie LLP, Justin L. Leinenweber, Thomas More Leinenweber, Leinenweber Baroni & Daffada LLC, James L. Kopecky, Daryl M. Schumacher, Howard J. Rosenburg, Kopecky, Schumacher & Bleakley, P.C., Chicago, IL, for Defendants Prestige Trade Investments Limited and Siming Yang.

## *MEMORANDUM OPINION AND ORDER*

MATTHEW F. KENNELLY, District Judge:

*1 After a six-day trial, a jury found in favor of Siming Yang on the SEC's claim of insider trading but found in favor of the SEC against Yang on its claims of "front-running" and filing false Schedule 13(d) forms with the SEC. Yang has moved for judgment as a matter of law on the latter claims or for a new trial.

**1. JMOL motion**
A court may enter judgment as a matter of law in a party's favor only if "the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is [not] sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Clarett v. Roberts,* 657 F.3d 664, 674 (7th Cir.2011). A jury's verdict may be overturned "only if no reasonable juror could have found in the [prevailing party's] favor." *Id.* The Court "must construe the facts strictly in favor of the party that prevailed at trial." *Schandelmeier–Bartels v. Chicago Park Dist.,* 634 F.3d 372, 376 (7th Cir.2011).

Yang argues that "there was no evidence presented at trial from which the jury could have reasonably concluded that Mr. Yang made the trades that allegedly constituted front-running, and were required to be disclosed on a 13(d)." Yang Mot. at 3. The Court disagrees. The following evidence admitted at trial (catalogued by the SEC in its response to the motion) amply supported a reasonable inference that Yang made the trades:

— Yang signed account opening documents for the account in which the trades were made and sent those documents to the brokerage firm.

— The account was a joint account that he held with Caiyin Fan as joint tenants.

— Yang funded the account by transferring $596,000 from his personal bank account.

— The trades in question were large trades and involved both stock and options. They would have been, to say the least, extremely unusual trades for someone who had no background in the securities business or who had not researched Zhongpin, the company whose stock and options were traded.

— Yang was a professional in the securities business and had researched Zhongpin. Fan, by contrast, had no apparent experience in trading or analyzing stocks.

— The same IP addresses were used to place the Zhongpin trades from the Yang / Fan account, send e-mails from Yang's e-mail address, and login to the brokerage account of Prestige, which also traded in Zhongpin stock during the same period, and to which Fan had no access.

— The evidence tended to show that a single user performed all of the tasks just referenced; the activity did not overlap in time.

— The trading activity in the Yang / Fan account matched Yang's travel, in that when he was in China, trades were placed from IP addresses there, and when he was in New York, trades were placed from United States IP addresses assigned to Yang's Internet service provider.

*See* SEC Resp. at 3–4. Yang offers a different interpretation of this evidence, but the evidence provided the jury with more than enough to permit a reasonable finding that Yang

made the trades and that he did so before the trades made by Zhongpin, which moved the market and made Yang's personal trades profitable, were executed. There is no basis to overturn the jury's verdict and enter judgment in Yang's favor.

**\*2** For the same reasons, to the extent Yang seeks a new trial on the ground that the jury's verdict was against the manifest weight of the evidence (relief he hints at on page 1 of his motion), the Court denies that request as well. A court may set aside a verdict on this basis "only if no rational jury could have rendered the verdict. The ... court must view the evidence in the light most favorable to the prevailing party, leaving issues of credibility and weight of the evidence to the jury." *Lewis v. City of Chicago Police Dep't,* 590 F.3d 427, 444–45 (7th Cir.2009). Viewed in that light, the evidence amply supported the jury's verdict.

**2. Motion for new trial**

Yang also seeks a new trial, taking issue with the Court's decision not to permit Fan, who resides in China, to testify via video conference.

Fan was also sued by the SEC. At one point, it appeared she had been served with summons, but it now appears that she did not receive the summons. That aside, however, Yang was fully aware during the discovery process that Fan had not appeared in the case via counsel and, because she is a friend of his, he was obviously aware that she lived in China. Thus he fully knew there was a chance she would not appear at trial. He could have sought to take her deposition at any time during the discovery process or prior to trial. This would have given the SEC an opportunity to question her in person prior to trial and to investigate any leads or other information she offered. However, Yang did not take steps to secure her testimony prior to trial via deposition or otherwise. Instead, he waited until the eleventh hour and brought up the issue of video testimony for the first time in an unsupported oral request at the final pretrial conference. The Court requested briefs and decided the matter in a written order. *See SEC v. Yang,* Order of Dec. 31, 2013 (dkt. no. 233). The Court adopts its earlier analysis in full and attaches a copy of that order to this one as an Appendix.

Yang has offered nothing new on this point in his post-trial motion. The Court also notes that the story regarding why Fan could not or would not appear has changed, or at least evolved, since defense counsel first raised the matter at the final pretrial conference on December 19. In his written motion filed on December 23, Yang said that Fan was unlikely to be able to attend

> primarily due to the challenges for a citizen of the People's Republic of China to obtain a travel visa to the United States. For example, it appears that these witnesses would have to deposit a significant amount of funds in a bank account prior to obtaining a visa for travel.... Caiyin Fan is trying to make travel arrangements to come to Chicago for trial in this matter. But as noted above, the visa process is challenging and she may be unable to attend the trial.

Defs.' Mot. to Present Trial Testimony by Video Conference ¶¶ 1, 2. In court on January 3, defense counsel said that Fan expected to arrive in the U.S. on January 12 so that she could testify on January 13. Trial Tr. 10. On January 8, defense counsel said that Fan had reported she was coming and "as far as I know they have the visas." Trial Tr. 884. On January 10, defense counsel reported for the first time a completely different reason for Fan's possible non-appearance: he stated that Fan's husband was concerned she would be arrested if she came to the US. Finally, Fan's affidavit submitted in connection with Yang's post-trial motion, though it repeats the point about her husband's concern, gives a completely new reason: "my husband is a Mayor of a city who was then in the annual audit process conducted by the Central Government, which requires retaining the passports for himself and his spouse until the audit closes. I was eventually unable to retrieve my passport in time from the Central Government therefore could not come to U.S to testify." Fan Affid. ¶ 22.

**\*3** The bottom line, as the Court concluded in its pretrial ruling, is that if Yang had exercised even a modicum of diligence and taken appropriate steps earlier, or during the discovery process, he would have been able to secure Fan's testimony in an appropriate way, via deposition or otherwise. However, Yang did not exercise due diligence, despite the fact that the possibility of Fan's inability to appear at a trial halfway around the world was obvious. For these reasons and those described in the earlier order, the Court's ruling precluding a video appearance does not entitle Yang to a new trial.

### Conclusion

For the reasons stated above, the Court denies defendant Yang's motion for judgment as a matter of law or in the alternative for a new trial [docket no. 261].

### *ORDER ON DEFENDANTS' MOTION TO PRESENT TRIAL TESTIMONY BY VIDEO CONFERENCE*

This case is set for trial during the first week of January 2014. The Court set the trial date on November 19, 2013, a few days after it denied defendants' motion for summary judgment. At the final pretrial conference, held on December 20, 2013, defendants raised the issue of presenting testimony of certain witnesses by video from other locations, primarily the People's Republic of China. Plaintiff objected, and the Court raised certain concerns as well and requested briefs.

Defendant formally moved on December 23, 2013 to permit video testimony from four witnesses. Three of them, Caiyin Fan (also a named defendant who has not appeared or responded to the complaint), Zhen Lin He, and Leslie Lu, live in China. The fourth, Judy Hu, lives in New York City but "is almost nine months pregnant." Defs.' Motion ¶ 5. Plaintiff opposes defendants' motion.

Federal Rule of Civil Procedure 43(a) provides that

> [a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed.R.Civ.P. 43(a). The advisory committee notes to Rule 43(a) provide guidance what may constitute "good cause in compelling circumstances with appropriate safeguards":

Contemporaneous transmission of testimony from a different location is permitted only on showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place. Contemporaneous transmission may be better than an attempt to reschedule the trial, particularly if there is a risk that other—and perhaps more important—witnesses might not be available at a later time.

Other possible justifications for remote transmission must be approached cautiously. Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses. Deposition procedures ensure the opportunity of all parties to be represented while the witness is testifying. An unforeseen need for the testimony of a remote witness that arises during trial, however, may establish good cause and compelling circumstances. Justification is particularly likely if the need arises from the interjection of new issues during trial or from the unexpected inability to present testimony as planned from a different witness.

*4 Good cause and compelling circumstances may be established with relative ease if all parties agree that testimony should be presented by transmission. The court is not bound by a stipulation, however, and can insist on live testimony. Rejection of the parties' agreement will be influenced, among other factors, by the apparent importance of the testimony in the full context of the trial.

A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances. Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known, to enable other parties to arrange a deposition, or to secure an advance ruling on transmission so as to know whether to prepare to be present with the witness while testifying.

...

Safeguards must be adopted that ensure accurate identification of the witness and that protect against influence by persons present with the witness. Accurate transmission likewise must be assured.

Other safeguards should be employed to ensure that advance notice is given to all parties of foreseeable circumstances that may lead the proponent to offer testimony by transmission. Advance notice is important to protect the opportunity to argue for attendance of the witness at trial. Advance notice also ensures an opportunity to depose the witness, perhaps by video record, as a means of supplementing transmitted testimony.

Fed.R.Civ.P. 43, 1996 advisory committee notes.

**1. Subjects of the witnesses' testimony**

Defendants describe the anticipated subjects of these witnesses' testimony as follows. Caiyin Fan is identified as the "primary" account holder on a brokerage account on which defendant Yang is identified as the "secondary" account holder. Yang is charged with making or causing trades through this account in violation of the securities laws, on the basis that the trades involved illegal insider trading and that they involved "front running" larger trades being made by Yang's company Prestige Trade Investments Ltd. Yang has testified that Fan made the trades, and one assumes that Fan, if she testifies, will support Yang's statements. Defendants say that Yang "will testify about the formation of the ... account and the trades in the account" and "will corroborate that Yang did not have an ownership interest in the securities in the account." Defs.' Motion ¶ 2. Defendants did not take or seek to take Fan's deposition during the period for discovery in this case.

Zhen Lin He is said to have traveled with Yang to observe the retail operations of Zhongpin, the entity whose stock and options Yang is alleged to have traded illegally. According to defendants, He has photographs of some of Zhongpin's establishments on his camera and will testify about the due diligence that Yang conducted before purchasing Zhongpin securities. Defendants say that He's testimony will "corroborate[ ] that the Zhongpin securities were purchased only after due diligence, and that purported illegal insider information had nothing to do with the purchases." *Id.* ¶ 3. Defendants did not take or seek to take He's deposition during the period for discovery.

Leslie Hu will also render testimony regarding Yang's due diligence regarding Zhongpin. His deposition was taken during discovery.

Finally, Judy Hu lives in New York City but, as previously noted, is pregnant and is expected to give birth soon. She worked at an investment bank during the relevant period and would testify that she had repeated correspondence with Yang concerning Zhongpin prior to the trades in question. Defendants say that her testimony, like that of Hu and He, will corroborate Yang's contention that the alleged inside information had nothing to do with the purchases in question. *Id.* ¶ 5.

**2. Grounds asserted as "good cause in compelling circumstances"**

*5 Defendants say that the three witnesses who reside in China are attempting to make travel plans to come to Chicago to testify. *Id.* ¶ 1. They argue that the Court should permit them to testify via video conference from Hong Kong, to which they apparently can travel without difficulty, for the following reasons:

> Defendants anticipate ... that it may not be possible to have one or more of these witnesses present for the trial. This is primarily due to the challenges for a citizen of the People's Republic of China to obtain a travel visa to the United States. For example, it appears that these witnesses would have to deposit a significant amount of funds in a bank account prior to obtaining a visa for travel.

*Id.* Defendants further state that Fan is "trying to make travel arrangements" to come to trial but "the visa process is challenging and she may be unable to attend the trial." *Id.* ¶ 2. They say that He "has also looked into the possibility of traveling to the United States for trial, and has reported that he may not be able to obtain the appropriate paperwork to travel to the United States." *Id.* ¶ 3. As to Lu, defendants say that he "is involved with the care of his terminally ill father." *Id.* ¶ 4. Defendants provide no further details about any of this, and they support none of it by affidavits from the witnesses, documentation, or any other evidence (such as specific information regarding the requirements for obtaining a visa). They add nothing in their reply brief, except for the following statements regarding Fan and Lu: "Caiyin Fan is

making efforts to travel to the United States and defense counsel is optimistic that she will appear live," and Lu "is taking care of his elderly, ill father in China and cannot travel at this time." Defs.' Reply at 2.

### 3. Judy Hu

Plaintiff does not object to presentation of the testimony by Hu (who lives in New York City) under the terms and conditions proposed by defendants. The Court approves this request because it has been sufficiently established that she *cannot* travel due to the advanced stage of her pregnancy, a factor that defendants could not have anticipated during the period for fact discovery, which ended more than nine months ago. The Court's approval is, however, conditioned on defendants promptly making the necessary logistical arrangements with court staff (specifically, courtroom technology administrator Joseph Novak) and on the compatibility of the court's video conferencing equipment with the equipment that is available at the proposed remote location in New York City. In addition, a person duly authorized to administer oaths must be present at the location in New York City where Hu will appear to testify and will be required to verify that no one else is present during the course of her testimony and that she does not confer with anyone during the course of her testimony. The parties are also expected to agree upon and make appropriate arrangements to have any exhibits that will be shown to Hu present and available at the location where she will appear to testify.

### 4. Caiyin Fan, Zhen Lin He, and Leslie Lu

As to witnesses Fan, He, and Lu, defendants have failed to make a persuasive showing of "good cause in compelling circumstances" as required by Rule 43(a). There are, to be sure, cases in which courts have found it appropriate to permit witnesses who reside abroad to testify by video conference. *See, e.g.,El–Hadad v. United Arab Emirates,* 496 F.3d 658, 668–69 (D.C.Cir.2007); *Lopez v. Miller,* 915 F.Supp.2d 373, 396 (E.D.N.Y.2013). But in *Lopez,* the opposing party "[did] not contest the propriety of the videoconference." *Lopez,* 915 F.Supp.2d at 396 n.9. And in *El–Hadad,* "before permitting the testimony, the district court insisted that El–Hadad prove he had pursued and repeatedly been denied a visa to the United States." *El–Hadad,* 496 F.3d at 669. No similar showing, or anything close to it, has been made here. Among other things, defendants have offered no evidence regarding any efforts by any of these witnesses to obtain a visa or that any of them has been denied a visa or has not succeeded in obtaining one, let alone why. In addition, defendants make a vague and unsupported claim that to obtain a visa, a Chinese citizen must post funds, but they do not say how much and do not attempt to establish that the sum is prohibitively expensive for any of the witnesses in question.

**\*6** Undue expense associated with international travel may, in some circumstances, qualify as good cause, *seeLopez v. NTI, LLC,* 748 F.Supp.2d 471, 480 (D.Md.2010), but in *Lopez,* the parties seeking to testify remotely established that they were impecunious and thus could not reasonably be expected to travel to the United States to testify. *See id.* Defendants have made no attempt to make such a showing here.

The Court also notes that assuming there are, in fact, insurmountable obstacles obtaining a visa to travel to the United States or that travel is prohibitively expensive for one or more of these witnesses, all of that certainly was known, or at least knowable with due diligence, while discovery was proceeding. Hu's deposition was taken, and her deposition testimony can be offered at trial—as it can for any witness who, for whatever reason, is unable to appear or beyond the subpoena power. As to Fan and He, because the circumstances that constitute the purported obstacles to their appearance were known or knowable, defendants could have taken the steps necessary to obtain their testimony via deposition while fact discovery was still open. As the advisory committee notes to Rule 43(a) state, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial *for unexpected reasons,*" and "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." Fed.R.Civ.P. 43, 1996 advisory committee notes (emphasis added).

The Court acknowledges the potential importance of the testimony of the two witnesses who reside in China whose depositions were not taken, but the importance of their testimony was no doubt known to defendants long ago (and Fan's non-appearance as a defendant likewise was known long ago). This ought to have spurred defendants to take the appropriate steps to take and preserve their testimony far sooner than the eve of trial.[1] *See, e.g.,Rodriguez v. SGLC, Inc.,* No. 2:08–cv–01971, 2012 WL 3704922, at \*3 (E.Cal. Aug. 24, 2012) ("[T]he circumstances confronting Plaintiffs can hardly be construed as unforeseen.").

## Conclusion

For the reasons stated in this order, the Court grants in part and denies in part defendant's motion to present trial testimony by video conference [dkt. no. 228]. The motion is granted as to Judy Hu, subject to the conditions stated in this order. The motion is otherwise denied.

Date: December 31, 2013

Footnotes

1 The Court is willing to entertain a prompt renewed request by defendants to present the testimony of Fan and Lu by video conference if defendants can cure the deficiencies identified in this order and can overcome the other arguments asserted by plaintiff.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.