# EXHIBIT "E"

## Hayden, Alex H.

| | |
|---|---|
| **From:** | Moses, Andrew P. <AMoses@brouse.com> |
| **Sent:** | Friday, February 20, 2015 11:44 AM |
| **To:** | Star, Gregory J. |
| **Cc:** | Lambert, P. Wesley; Miller, Michael J.; Hayden, Alex H. |
| **Subject:** | RE: Hodell v. SAP: Ashley Deposition Designations |

Greg,

There were only subtractions, no additions. We went through and edited by hand, so there is no redline available. Let me know if you have any further questions.

Regards,

Andrew


Andrew P. Moses
Attorney at Law



600 Superior Avenue East Suite 1600 | Cleveland | OH | 44114
tel 216.830.6823 | fax 216.830.6807
web | bio | vCard | AMoses@brouse.com
Akron | Cleveland | Lorain County

*Collective Experience. Collaborative Culture. Creative Solutions.*

**From:** Star, Gregory J. [mailto:Gregory.Star@dbr.com]
**Sent:** Friday, February 20, 2015 11:42 AM
**To:** Moses, Andrew P.
**Cc:** Lambert, P. Wesley; Miller, Michael J.; Hayden, Alex H.
**Subject:** RE: Hodell v. SAP: Ashley Deposition Designations

Andrew,

Did you add any designations that weren't included in the last exchange? Did you cut anything? Is there a redline you can provide against what you sent us on Ashley before?

As to Van Leeuwen, I'll get back to you.

-Greg

## Gregory J. Star
### Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000

Philadelphia, PA 19103-6996
(215) 988-2734 *phone*
(215) 988-2757 *fax*
(610) 209-6881 *mobile*
Gregory.Star@dbr.com
www.drinkerbiddle.com

**From:** Moses, Andrew P. [mailto:AMoses@brouse.com]
**Sent:** Friday, February 20, 2015 11:38 AM
**To:** Star, Gregory J.
**Cc:** Lambert, P. Wesley
**Subject:** Hodell v. SAP: Ashley Deposition Designations

Greg,

Here is Hodell's revised designation testimony for the Geoffrey Ashley deposition. Hodell objects to SAP's designated testimony in the Ashely deposition in the following sections:
- Page 13:11-Page 14:4 – Improper legal opinion and lack of relevance
- Page 247:21-Page 251:8 – Improper opinion testimony under Federal Rules of Evidence 701 and lack of foundation.

Also, the video for the Dale Van Leeuwen deposition has significant technical issues and Hodell has decided to read-in Van Leeuwen's testimony at trial. Please advise on how you are going to present SAP's designated testimony for Van Leeuwen. Thank you.

Regards,

Andrew

Andrew P. Moses
Attorney at Law



600 Superior Avenue East Suite 1600 | Cleveland | OH | 44114
tel 216.830.6823 | fax 216.830.6807
web | bio | vCard | AMoses@brouse.com
Akron | Cleveland | Lorain County

Collective Experience. Collaborative Culture. Creative Solutions.

DISCLAIMER: This electronic transmission contains confidential information from the law firm of Brouse McDowell, a Legal Professional Association. This information may be covered by the attorney-client privilege or constitute attorney work product. Information contained in this email is intended solely for the person or entity named above. If you are not the intended recipient of this communication, you hereby are notified that any dissemination, distribution, downloading, or copying of the contents is strictly prohibited and you are strictly prohibited from taking any action in reliance on the contents of this email. If you have received this communication in error, please notify us by reply email or contact the Firm's Client Support line at 330.535.5711, Ext. 311, and delete this email and destroy all copies. Thank you for your cooperation.

**************************************

Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's

Princeton office is Jonathan I. Epstein, and the partner responsible for the firm's Florham Park office is Andrew B. Joseph.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message. Thank you very much.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# In The Matter Of:
*Hodell-Natco Industries, Inc. v.*
*SAP America, Inc., et al.*

*Geoffrey Ashley*
*March 16, 2012*

**NEXTGEN REPORTING**

Making Litigation Easier.    NextGenReporting.com

PHILADELPHIA | 215.944.5800   NEW YORK CITY | 646.470.3376   PHOENIX | 623.224.2760   SILICON VALLEY | 650.799.8020

*Original File 2012-01663.TXT*
*Min-U-Script® with Word Index*

Page 1

```
                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF OHIO
                     EASTERN DIVISION


    HODELL-NATCO            )  Case No. 1:08 CV 2755
    INDUSTRIES, INC.,       )
                            )  Judge:  Lesley Wells
              Plaintiff,    )  Magistrate Judge:
                            )     Greg White
    vs.                     )
                            )     VOLUME I
    SAP AMERICA, INC., et   )
    al.,                    )
                            )
              Defendants.   )



         AUDIOVISUAL DEPOSITION OF GEOFFREY ASHLEY

         DATE:   Friday, March 16, 2012
         TIME:   9:24 a.m.
         PLACE:  Residence Inn
                 91 Hall Street
                 Concord, New Hampshire


    NEXTGEN REPORTING

    Registered Professional Reporters
```

Page 2

```
 1  APPEARANCES:
 2  ON BEHALF OF THE PLAINTIFF:
 3      MR. P. WESLEY LAMBERT, ESQ.
        Koehler, Neal, LLC
 4      3330 Erieview Tower
        1301 East Ninth Street
 5      Cleveland, Ohio 44114
        (216) 539-9370
 6      wlambert@koehlerneal.com
 7  ON BEHALF OF THE DEFENDANT, SAP AMERICA, SAP AG:
        MR. GREGORY J. STAR, ESQ.
 8      Drinker, Biddle, Reath
        One Logan Square
 9      Suite 2000
        Philadelphia, Pennsylvania 19103
10      (215) 988-2734
        Gregory.Star@dbr.com
11
    ON BEHALF OF THE DEFENDANT, LSi:
12
        MR. ROY A. HULME, ESQ.
13      Reminger & Reminger
        1400 Midland Building
14      101 Prospect Avenue, West
        Cleveland, Ohio 44115
15      (216) 687-1311
        rhulme@reminger.com
16
17  ALSO PRESENT:   Kevin Reidl
18                  J.T. McGinn, Videographer
```

Page 3

```
 1                  I N D E X
 2  EXAMINATION                                 PAGE
 3  BY MR. STAR.............................   4-247
 4  BY MR. LAMBERT..........................  14-254
 5  BY MR. HULME............................     228
 6
 7              E X H I B I T   I N D E X
 8  NO.              EXHIBIT                    PAGE
 9  Exhibit 172   E-mail string dated January 19,
                  2009                            21
10
    Exhibit 173   E-mail string dated December 29,
11                2011                            27
12  Exhibit 174   E-mail string dated January 3,
                  2012                            37
13
    Exhibit 175   Excerpt of a PowerPoint
14                Presentation                    57
15  Exhibit 176   E-mail dated December 22,
                  2005                           100
16
    Exhibit 177   E-mail dated January 2, 2007   112
17
    Exhibit 178   E-mail dated February 10,
18                2006                           133
19  Exhibit 179   Outlook Calendar               146
20  Exhibit 180   E-mail                         190
21  Exhibit 181   E-mail                         198
```

Page 4

```
 1           P R O C E E D I N G S
 2           GEOFFREY ASHLEY,
 3  having first been duly sworn, testified as
 4  follows:
 5           EXAMINATION BY MR. STAR:
 6  Q.  Good morning.  Mr. Ashley, I want to cover a
 7  few topics with you quickly, sir.  You're a
 8  former SAP employee, correct?
 9  A.  That's correct.
10  Q.  Can you run through your employment history
11  with SAP and tell me what job positions you
12  held and how long you were in them?
13  A.  Yes, starting with SAP in roughly the
14  beginning of November, '05, I was hired as
15  the director of channel sales for
16  North America, and the product was the SAP
17  Business One Solution.
18      So my responsibilities were the
19  management of all the partners, the partner
20  community, through all of the resources
21  internally, so I had sales, pre-sales,
22  channel managers, pre-sales recruiters, that
23  kind of stuff.  So that was how I started
24  with SAP.
25      I was in that role until 2008, I think,
```

| Hodell-Natco Industries, Inc. v. | Geoffrey Ashley |
|---|---|
| SAP America, Inc., et al. | March 16, 2012 |

Page 101

1  Q.  What was the goal, the goal you reference in
2  that first sentence?
3  A.  It would be revenue.
4  Q.  What was the number?
5  A.  Oh, honestly, I can't remember. It was a
6  quarterly goal. I would be guessing. 5
7  million. I don't know. I honestly don't
8  remember.
9  Q.  Is this an e-mail you sent out frequently?
10 A.  Well, it wasn't a template, but I would
11 communicate with my team all the time, sure.
12 Q.  Did you send out like a periodic e-mail that
13 you would send out, or is there something
14 specific that precipitated this particular
15 communication?
16 A.  Well, I was brand new at that time, still
17 getting to know the team, tying to pull
18 everybody together, trying to send out
19 messages, trying to get everybody to work as
20 a team, all that kind of stuff. I hate to
21 say it, but kind of a rah-rah communication.
22 Q.  You make the statement -- if Mr. Star doesn't
23 object, I'm going to point it out. Right
24 here.
25 A.  Okay.

Page 102

1  Q.  "We have kept our eyes focused on the goal
2  though product-related issues have distracted
3  us and derailed our plans."
4  A.  Um-hum.
5  Q.  What were you referring to there?
6  A.  I have no idea. It could have been delays.
7  I mean, remember, again, I'm on board 30 days
8  when this went out, maybe a little more than
9  that, 45 days. So it would have been
10 whatever I had learned up to that time. I
11 don't remember.
12 Q.  That's what I am interested in knowing.
13 You had only been with SAP for maybe two
14 months, right?
15 A.  Um-hum.
16 Q.  And you're aware already of product-related
17 issues with respect to Business One, correct?
18 A.  I was beginning to learn of whatever issues
19 might have been around, yes.
20 Q.  Were you briefed on those issues upon
21 becoming employed by SAP?
22 A.  No, not at all.
23 Q.  How did they come to your attention?
24 A.  Talking to my people, talking to our
25 partners, you know, coming on board and due

Page 103

1  diligence, just getting on the phone and
2  getting out there and meeting.
3  Q.  Do you recall any specific issues you are
4  referring to in that sentence?
5  A.  I don't. I don't recall specific issues.
6  Q.  Do you recall any issues at all around
7  December of 2005 that you remember
8  discussing?
9  A.  I don't. If I had another e-mail that could
10 help me remember, I might, but I don't
11 remember exactly. I mean, floods and natural
12 disasters, obviously, that's a hurricane, but
13 I don't remember what the product issues
14 were.
15 Q.  Up in that first paragraph, you make a
16 statement that you need to drive each of the
17 partners to meet their commitments?
18 A.  Um-hum.
19 Q.  What kind of commitments are you talking
20 about?
21 A.  Forecast. So if they say I'm going to do $3
22 million this quarter, they need to do $3
23 million this quarter.
24 Q.  How often did partners communicate with you
25 or your team about their forecasts?

Page 104

1  A.  Weekly at least. I mean, specific deals
2  could be daily, but we would get weekly
3  updates.
4  Q.  Do you recall how often your team was updated
5  on the Hodell sale?
6  A.  I have no idea. Again, weekly. I mean, that
7  would be the normal cadence. So Ted should
8  have been talking to -- I don't know if it's
9  Dan, but Dan's VP of sales or whoever it
10 would have been on a regular basis.
11 Q.  Who was in your job before you?
12 A.  Actually, Dan Kraus, I guess, would have been
13 in my job before me.
14 Q.  Okay.
15 A.  The position as I took it didn't exist, but
16 Dan would have been the closest thing to it.
17 Q.  He was handling your responsibilities and
18 then they brought you in to promote him?
19 A.  Pretty much. Pretty much.
20 Q.  Turn to the next page. At the end of that
21 top paragraph, you make this statement, "Make
22 no mistake. This was not the culture one
23 year ago. Our partners wouldn't have allowed
24 these opportunities to slip into the next
25 calendar year, but it now as a matter of