# EXHIBIT 1

1

```
                UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

                          - - - - -


  HODELL-NATCO INDUSTRIES, INC, )
                                )
              Plaintiff,        ) Case No. 1:08CV2755
                                )
        vs.                     )
                                )
  SAP AMERICA, INC.,            )
                                )
              Defendant.        )


                          - - - - -


      TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE

        SENIOR JUDGE LESLEY WELLS, JUDGE OF SAID COURT,

              ON WEDNESDAY, FEBRUARY 18TH, 2015

              COMMENCING AT 10:30 O'CLOCK A.M.

                          - - - - -


  Court Reporter:           GEORGE J. STAIDUHAR
                            801 W. SUPERIOR AVE.,
                            SUITE 7-184
                            CLEVELAND, OHIO 44113
                            (216) 357-7128

                          - - - - -
```

Case: 1:08-cv-02755-DCN Doc #: 313-2 Filed: 05/13/15 3 of 10. PageID #: 15962
Case: 1:08-cv-02755-LW Doc #: 298 Filed: 02/27/15 2 of 52. PageID #: 15001

2

```
 1   APPEARANCES:

 2      On behalf of the Plaintiff:

 3         BROUSE McDOWELL - Akron
           BY:  P. WESLEY LAMBERT, ESQ.
 4         388 South Main Street, Suite 500
           Akron, OH 44311
 5

 6              and

 7         BROUSE McDOWELL - Cleveland
           BY:  SHARON A. LAURDE, ESQ.
 8              CHRISTOPHER J. CARNEY, ESQ.
           600 Superior Avenue, E, Suite 600
 9         Cleveland, OH 44114

10

11      On behalf of the Defendant:

12         DRINKER BIDDLE & REATH - Philadelphia
           BY:  GREGORY J. STAR, ESQ.
13              MICHAEL J. MILLER, ESQ.
                ALEX H. HAYDEN, ESQ.
14         One Logan Square
           18th & Cherry Streets
15         Philadelphia, PA 19103

16

17              - - - - -

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  Okay.
 2              MR. STAR:  Your Honor, I think if we can
 3   just pause, if Ms. Laurde actually has the names of
 4   the fifteen right now, it would help us to know who they
 5   are.
 6              THE COURT:  Yeah.
 7              MS. LAURDE:  Absolutely.
 8              THE COURT:  Okay.
 9              MS. LAURDE:  We will be calling Kevin Reidl,
10   Mr. Lowery, Mr. VanLeuwen would appear by videotape, our
11   expert, Mr. Grumble, Mr. Meland.  We do have a question
12   about Mr. Ashley, but he would certainly be a witness,
13   Mr. DeVoe —
14              THE COURT:  So you have a question, but
15   he would be a witness.  We want to know who the witness
16   is.
17              MS. LAURDE:  Mr. Ashley, there is an issue
18   with regard to Mr. Ashley that we would need to raise
19   with you, your Honor.  Up until last week, we had been
20   advised that Mr. Ashley would appear live.  SAP's counsel
21   told us he would appear live up until last week.
22              THE COURT:  Okay.
23              MS. LAURDE:  At this point, your Honor, we
24   had prepared designations with regard to his testimony
25   and received counter designations, but because he was
```

Case: 1:08-cv-02755-DCN Doc #: 313-2 Filed: 05/13/15 5 of 10. PageID #: 15964
Case: 1:08-cv-02755-LW Doc #: 298 Filed: 02/27/15 8 of 52. PageID #: 15007

8

```
 1   going to appear live, no objections were prepared by
 2   either side.
 3            So at this point, the Court would need to
 4   rule on the objections that would be proffered, but we do
 5   have an alternative to that, which I think might be a
 6   better option, and that is, under Rules 43 and 45,
 7   we could actually subpoena Mr. Ashley to appear in
 8   the District Court in which he resides and take his
 9   testimony live via video feed, and that would save the
10   Court ruling on objections.  He would be presented live,
11   and I think that would be a more acceptable option to
12   both parties.
13            THE COURT:  That's something you should
14   discuss right now and see what their response is.
15            MR. STAR:  Thank you, your Honor.  The issue
16   with Mr. Ashley, if you go back to our submission, back
17   in October of our trial list, we had indicated and has
18   been known all along Mr. Ashley has been a former SAP
19   employee living in New Hampshire, and we had said that we
20   would anticipate him to come, and he had been willing to.
21            Up until just the last couple of weeks,
22   where he informed us that he wanted what we thought was
23   too much money to actually come, he told us he wanted
24   $2,400 a day, $300 an hour, a minimum of $2,400 a day
25   to come -- and we communicated that to the other side --
```

1  we are not willing to do that for lots of reasons.
2           As far as having a witness like that appear
3  by video conference, we can certainly discuss it.
4  Mr. Lambert and I had discussions about that topic with
5  other witnesses, and we didn't think that actually works,
6  and I had the understanding — maybe I am wrong — that
7  the technology in this particular building didn't allow
8  for it anyway.
9           MS. LAURDE: As far as the technology is
10 concerned, it is easy in this time period to come up with
11 the technology in order to accommodate that. We have
12 reached out to a vendor to ensure that they could bring
13 in the equipment needed here and ensure the District
14 Court he would have the technology in order to transmit
15 the witness.
16          And frankly, having a live witness is much
17 more compelling than having a witness read from a
18 deposition transcript or just showing video clips.
19 Mr. Ashley is, in fact, a pretty critical witness for
20 us.
21          There are a couple of e-mails that
22 Mr. Ashley had written with his employment after SAP
23 where he made statements such as "you know, this was a
24 case where we had a product not ready for prime time, a
25 partner relying on documentation that SAP put together,

```
 1   we were relying on those commitments, and SAP, frankly,
 2   messed up."
 3            So Ashley is important as far as proving
 4   material facts in our case, and having him live would
 5   serve the interest of justice more than just reading
 6   deposition transcripts.
 7            MR. STAR:  So again, Mr. Ashley lives in
 8   New Hampshire.  It was known at the time, and his
 9   deposition was videoed.  We have the video.  The quality
10   is pretty good, so like other witnesses, designations and
11   portions of his videotape could be played.
12            Ms. Laurde wrote e-mails -- Mr. Ashley wrote
13   e-mails, and indeed, he wrote them, but those e-mails
14   were written, and he was questioned about those e-mails
15   at his deposition, and counsel had them.  So our view of
16   this, your Honor, we don't think it is necessary or
17   appropriate to try to -- and I don't know if Mr. Ashley
18   -- I would have to look at the rule -- I don't know if he
19   could be compelled to suggest to appear at a different
20   courthouse and not in this courtroom.
21            THE COURT:  Actually, we do that frequently.
22            MR. STAR:  But here I don't think it is
23   necessary because he was deposed on all those issues, and
24   there is a videotape, and like other witnesses who appear
25   here and available, we can just have his designations
```

```
 1   come in.  And Ms. Laurde is right, we would need to get
 2   those designations in front of your Honor and have those
 3   ruled on.
 4              MS. LAURDE:  Your Honor, I certainly
 5   understand SAP's not wanting him here live.  I think
 6   Mr. Ashley is going to be a tremendous witness for us.  I
 7   think that he will be able to present himself much more
 8   fully to the jury via video.  This happens frequently,
 9   and the rules allow for it.  I think it would give the
10   jury a better appreciation for Mr. Ashley and his
11   credibility and his testimony.  He is a very important
12   witness for us.
13              And frankly, up until last week, SAP told us
14   he was going to be here.  I mean, we had one week notice
15   that he wasn't going to appear, and we can arrange for
16   him to appear.  And SAP, frankly, you know, Mr. Star is
17   saying he is not necessary, but he is necessary, and we
18   can arrange for him to appear through Veritex or some
19   other vendor.
20              So the best option is to have him appear at
21   the District Court in which he resides, and Mr. Star can
22   cross-examine him on his exhibits.
23              MR. STAR:  So the last thing I would say,
24   your Honor, I obviously haven't said that Mr. Ashley is
25   not perhaps a necessary witness; all I said, it is not
```

```
 1   necessary to do a live video link of this man because we
 2   do have a very, a thorough video recorded deposition of
 3   him that can easily be ruled on and brought in.
 4           The parties have already done the
 5   designations and exchanged those with each other as I
 6   recall going back to last year.  We just hadn't bothered
 7   to lodge objections because we had believed that he was
 8   willing to come, but now he told us he wants the
 9   ridiculous amount of money just to appear as a fact
10   witness, and even having him appear by this video link as
11   he communicated to me, he would still want all this
12   money.
13           And then the question is:  Who is going to
14   pay that?
15           So I think the short answer is, we ought to
16   get his deposition designations in front of your Honor,
17   get them ruled upon, and that's what his testimony ought
18   to be.
19           MS. LAURDE:  Your Honor, I can only
20   reiterate that Mr. Ashley is an important witness for us,
21   and if we are willing to bear the cost of the video
22   transmission, I don't understand Mr. Star's concern.
23           Why does it matter to him if he
24   cross-examines him live versus have the deposition read
25   in?  I mean, the reality is, we are entitled to have this
```

```
 1  witness here live.  We were told he would be live up
 2  until a week ago.  If we bear the cost of ensuring the
 3  video transmission works, Mr. Star can cross-examine him
 4  all he wants.
 5              THE COURT:  Isn't that so?
 6              MR. STAR:  Certainly, I could cross-examine
 7  him if he is through the video conferencing.
 8              THE COURT:  Right.
 9              MR. STAR:  The big issue with Mr. Ashley —
10  first off, I want the record to be clear we never made
11  any promise about the man.  It was always known he was a
12  former employee and had no control on him.  It was only
13  recently he sprung on us he wants all this money, and we
14  communicated that.
15              Yes, we can cross-examine by video.  I just
16  think that isn't necessary because all they want to ask
17  him has been asked, and he has given the answers he
18  wants.
19              THE COURT:  Well, I think you have the right
20  to have him go forward.
21              MS. LAURDE:  Thank you, your Honor.
22              THE COURT:  Okay.  So what else have we gone
23  through?
24              MR. MILLER:  We were going through witness
25  list.
```