## *Rayco Mfg. v. Deutz Corp.*

United States District Court for the Northern District of Ohio, Eastern Division

January 14, 2010, Decided; January 14, 2010, Filed

CASE NO. 5:08 CV 00074

**Reporter**

2010 U.S. Dist. LEXIS 3153; 2010 WL 183866

RAYCO MANUFACTURING, INC., et al., Plaintiffs, v. DEUTZ CORPORATION, et al., Defendants.

**Subsequent History:** Summary judgment denied by, in part *Rayco Mfg. v. Deutz Corp., 2010 U.S. Dist. LEXIS 111058 (N.D. Ohio, Oct. 19, 2010)*

**Prior History:** *Rayco Mfg. v. Deutz Corp., 2008 U.S. Dist. LEXIS 46501 (N.D. Ohio, June 12, 2008)*

**Counsel:** [*1] For Rayco Manufacturing, Inc., Plaintiff: Gary J. Gambel, LEAD ATTORNEY, PRO HAC VICE, Murphy, Rogers & Sloss, New Orleans, LA; Peter B. Sloss, Robert H. Murphy, LEAD ATTORNEYS, Murphy, Rogers & Sloss, New Orleans, LA; Douglas A. DiPalma, Eric J. Weiss, Michael C. Cohan, Cavitch Familo & Durkin, Cleveland, OH.

For Deutz Corporation, Deutz AG, Defendants: John Q. Lewis, Richard J. Bedell, Jr., LEAD ATTORNEYS, Christopher M. McLaughlin, Jones Day - Cleveland, Cleveland, OH.

For Fecon, Inc., Intervenor: Richard D. Porotsky, Jr., Dinsmore & Shohl - Cincinnati, Cincinnati, OH.

Lisa Cupido Fogarty, Movant, Pro se, McLean, VA.

Jonathan Lee Riches, Movant, Pro se, Salters, SC.

Perez Hilton, Movant, Pro se, Endicott, NY.

For Deutz Corporation, Counter-Claimant: John Q. Lewis, Richard J. Bedell, Jr., LEAD ATTORNEYS, Jones Day - Cleveland, Cleveland, OH;

For Rayco Manufacturing, Inc., Counter-Defendant: Gary J. Gambel, Peter B. Sloss, Robert H. Murphy, LEAD ATTORNEYS, Murphy, Rogers & Sloss, New Orleans, LA; Douglas A. DiPalma, Eric J. Weiss, Michael C. Cohan, Cavitch Familo & Durkin, Cleveland, OH.

**Judges:** David D. Dowd, Jr., United States District Judge.

**Opinion by:** David D. Dowd, Jr.

## Opinion

MEMORANDUM OPINION AND ORDER

This case [*2] has become embroiled in several discovery disputes, all of which the Court referred to Magistrate Judge Pearson on September 18, 2009. ECF 105. On December 10, 2009, Judge Pearson resolved the latest dispute (ECF 124) [1] by Memorandum Opinion and Order denying the motion of the Plaintiff Rayco Manufacturing, Inc. ("Rayco") to exceed the presumptive ten-per-side deposition limit found in *Rule 30(a)(2)*. ECF 128. On December 28, 2009, Rayco filed Objections to the Magistrate Judge's Order. ECF 129. On January 6, 2010, the Defendants Deutz Corporation

---

[1]  ECF 124 was docketed as "Rayco's Fourth Notice of Discovery Dispute" but, as Judge Pearson has noted, the parties have agreed that it is correctly described as a motion for leave to take more than ten depositions. See ECF 128 at p. 1 fn. 1.

("Deutz USA") and Deutz AG filed a Memorandum in Opposition to the Objections. ECF 130.

For the reasons that follow, the Court concurs with Judge Pearson that Rayco's motion was prematurely filed. The Court will accordingly overrule Rayco's Objections (ECF 129) and affirm Judge Pearson's Order (ECF 128) with the understanding that Rayco shall be permitted to re-file its motion, if necessary, after Deutz [*3] AG complies with the terms of this Order as set forth below; and after Rayco has had the opportunity to conduct discovery of seven recently identified Deutz USA customers sufficient to enable Rayco to be more specific as to which of those witnesses it needs to depose.

The Court will first address Rayco's Objections. The Court will then address the outstanding motions for sanctions and attorney fees.

## I. Rayco's Objections to Magistrate's Order (ECF 129)

Rayco thus far has taken a total of eight fact discovery depositions. All eight were taken of employees of Deutz USA. Rayco anticipates it will need leave to take more than two additional depositions, and thus it sought leave to depose five categories of witnesses as follows:

1. Five employees of Deutz AG, all of whom reside in Europe and all of whom were identified by Deutz AG in its Answers to Interrogatories as having "some knowledge concerning the claims and relevant issues in this case." [2]

2. The _Rule 30(b)(6)_ deposition of Deutz AG to [*4] the extent that any person designated by Deutz AG as a _Rule 30(b)(6)_ witness is not included amongst the five persons already identified in Item 1 above.

3. Depending on the results of discovery to be directed towards seven of Deutz's customers (which Deutz USA recently identified pursuant to Magistrate Judge Pearson's Order entered November 25, 2009 (ECF 123)), some or all of those customers.

4. Depending on discovery, up to five of Rayco's and/or Fecon's customers residing outside of Ohio.

5. The experts designated to testify at trial.

The Court will address each category in turn, and will address the first two categories together since they are related.

## 1. The Five Deutz AG Employees Identified by Deutz AG in its Answers to Interrogatories; and

## 2. The _Rule 30(b)(6)_ Deposition of Deutz AG:

Rayco notes that Deutz AG identified the same five employees in answering interrogatories asking it to identify persons having knowledge of 23 separate topics relating to the subject engines as well as those having knowledge of the investigation into the engine failures and the causes of those engine failures. According to Rayco, Deutz AG refused to specify the particular topics as to which each of the [*5] five witnesses had knowledge. _See_ ECF 129 at p. 5.

Rayco also notes that Deutz AG has not yet designated its Rule 30(b)(6) representative(s) and thus Rayco does not yet know which of those five persons, if any, will be designated as a Rule 30(b)(6) representative. To the extent any of them are not so designated, Rayco seeks leave to depose them.

The Court concurs with Magistrate Judge Pearson that Rayco's motion for leave in this regard is

---

[2]   Rayco explains that seven Deutz AG employees were actually identified, but two of them are no longer employed by, or under the control of, Deutz AG. Thus the number is down to five Deutz AG employees.

premature. If, for example, Deutz AG designates all five of its identified employees as Rule 30(b)(6) representatives, Rayco may depose all five without leave of Court and it will only count as one deposition (*i.e.*, the corporate deposition of Deutz AG), which means that Rayco will have deposed only nine witnesses after conducting the 30(b)(6) depositions. However, Rayco's dilemma, causing it to seek leave prematurely, arises to some degree from its having insufficient information to enable it to determine precisely which witnesses it will need to depose.

For example, since Deutz AG did not specify the topics as to which each of its five identified employees has knowledge, Rayco cannot discover what each witness knows about the 23 or more identified [*6] topics without deposing each of the five witnesses. For another example, since Deutz AG has not yet designated its Rule 30(b)(6) representative(s), Rayco does not know if Deutz AG will so designate any or all of the five Deutz AG employees already identified in the Answers to Interrogatories. Supposing Deutz AG designates only two of the five identified employees as 30(b)(6) representatives, Rayco understandably does not want to be in the position of traveling to Europe to depose the two Rule 30(b)(6) witnesses; coming back home to seek leave to depose the remaining three Deutz AG employees; and then (assuming leave would be granted) having to fly back to Europe to conduct more depositions.

This problem may be resolved by Deutz AG providing further information to Rayco. Accordingly, the Court will order Deutz AG to accomplish the following by 12:00 Noon on January 22, 2010:

1. With respect to each of the five Deutz AG employee witnesses identified in its Answers to Interrogatories, specify as to which of the 23 or more topics identified by Rayco such witness has knowledge.

2. Designate its Rule 30(b)(6) representative(s) and set out specifically the matters on which each person so

designated [*7] will testify.

At that point, Rayco will presumably be informed enough to know whether or not it needs to re-file a motion for leave to depose additional Deutz AG witnesses.

### 3. Some or All of the Seven Deutz Customers Identified Pursuant to ECF 123:

Once again, the Court concludes that Rayco's motion for leave in this regard is premature. Rayco may re-file its motion after obtaining documents from Deutz's customers to determine whether or not Rayco needs to depose any of them.

### 4. Depending on Discovery, up to Five of Rayco's and/or Fecon's Customers Residing Outside of Ohio:

With respect to the Rayco/Fecon customers residing outside Ohio, Rayco first notes that this "end-user" customer testimony is necessary to demonstrate that the engine problems at issue were not caused by customer misuse as contended by defendants. Rayco then states:

> Further, it should be considered that the vast majority of Rayco's and Fecon's end-user customers are located outside the state of Ohio. As a result, the only way their testimony can be obtained and presented at trial is by deposition.
>
> Accordingly, there is ample justification for granting Rayco (and Fecon) leave to take the depositions of their end user customers [*8] (up to five) regardless of the presumptive limit of ten total depositions.

ECF 129 at p. 13.

The language above leaves the Court uncertain as to what type(s) of depositions Rayco intends to take of its end-user customers. In other words, the

Court cannot determine whether Rayco intends to take discovery depositions, trial depositions, or both. Since Rayco filed (albeit prematurely) a motion for leave to exceed the ten-per-side deposition limit as to these customers, it appears that Rayco's intent might be to take fact discovery depositions, in which case Rayco will of course need to re-file its motion after obtaining discovery sufficient to enable it to identify specifically which customers it needs to depose. On the other hand, since Rayco makes it a point to submit that most of its customers are located outside the state of Ohio so that "the only way their testimony can be obtained and presented at trial is by deposition," it appears that Rayco's intent might be to take trial depositions since the customers are beyond the Court's subpoena power and are thus "unavailable" within the meaning of _Rule 32(a)(4)(D)_. Or perhaps Rayco intends to take discovery depositions first, and then to [*9] proceed with trial depositions.

Trial depositions (also known as "preservation depositions" or "de bene esse depositions") are not treated as part of the discovery process to which the _Rule 30(a)(2)(A)(i)_ ten-per-side deposition limit applies. _See, e.g., Bouygues Telecom, S.A. v. Tekelec, Inc., 238 F.R.D. 413 (E.D. North Carolina 2006); EEOC v. Beauty Enterprises, Inc., 2008 U.S. Dist. LEXIS 66356, 2008 WL 3892203 (D. Connecticut 2008). See also, Burket v. Hyman Lippitt, P.C., 2008 U.S. Dist. LEXIS 30088, 2008 WL 1741875 at *3 (E.D. Mich. 2008)_ (court's discovery cut-off order had "nothing to do with de bene esse depositions").

Accordingly, depending upon the purpose (or purposes) of the end-user customer depositions (_i.e._, whether Rayco intends to take discovery depositions, trial depositions, or both), the taking of such depositions may or may not be an appropriate subject of a re-filed motion for leave to exceed the presumptive ten-per-side discovery deposition limit set forth in _Rule 30(a)(2)(A)(i)_.

**5. The Experts Designated to Testify at Trial**:

Expert witness depositions do not count towards the ten-per-side deposition limit of _Rule 30(a)(2)(A)(i)_; and the Deutz defendants have conceded as much. _See_ ECF 130 at p. 3 fn. 2. Accordingly, Rayco [*10] does not need leave of Court to depose the designated experts.

## II. The Outstanding Motions for Sanctions and Attorney Fees

The Court will now address three outstanding motions for sanctions and attorney fees which the Court previously deferred ruling upon by Orders entered June 22, 2009 (ECF 92) and September 18, 2009 (ECF 105), to wit: Rayco's motion for sanctions filed June 8, 2009 (ECF 77); Fecon's motion for sanctions filed June 12, 2009 (ECF 83); and Deutz USA's motion for an award of attorney fees and expenses filed June 15, 2009 (ECF 84). All three motions ensued from one or more of the many discovery disputes in this case. While the Court regrets that the parties did not manage to come to terms about so many discovery issues, the Court does not find that the conduct of any party has thus far fallen to the level of conduct warranting sanctions. The three motions (ECF 77, ECF 83, and ECF 84) will therefore be denied.

In addition to the three motions just addressed, the Court notes that in the last sentence of Rayco's Third Notice of Discovery Dispute filed November 4, 2009 (ECF 115), Rayco has claimed entitlement to fees and costs relating to the filing of the said Notice. To the [*11] extent that sentence can be construed as a motion for sanctions, the Court finds the motion to be without merit and it is denied.

## III. Conclusion

For the reasons set forth above, the Court rules as follows:

1. Plaintiff Rayco's Objections (ECF 129) are overruled; and the Magistrate Judge's

Memorandum Opinion and Order filed December 10, 2009 (ECF 128) is affirmed with the understanding that Rayco shall be permitted to re-file its motion for leave to take more than ten depositions, if necessary, after Deutz AG has provided further information to plaintiffs as set forth below in this Order; and after Rayco has had the opportunity to discover documents sufficient to enable Rayco to be more specific as to which Deutz customers and which Rayco/Fecon customers it needs to depose as part of the discovery process.

2. Deutz AG shall accomplish the following by 12:00 Noon on January 22, 2010:

a. With respect to each of the five Deutz AG employee witnesses identified in its Answers to Interrogatories, specify as to which of the 23 or more topics identified by Rayco such witness has knowledge.

b. Designate its Rule 30(b)(6) representative(s) and set out specifically the matters on which each person [*12] so designated will testify.

3. Rayco's motion for sanctions filed June 8, 2009 (ECF 77); Fecon's motion for sanctions filed June 12, 2009 (ECF 83); and Deutz USA's motion for an award of attorney fees and expenses filed June 15, 2009 (ECF 84), are denied.

4. To the extent that the last sentence of Rayco's Third Notice of Discovery Dispute filed November 4, 2009 (ECF 115) can be construed as a motion for sanctions, the motion is denied.

The Court reminds the parties that, absent extraordinary circumstances, the Court intends to adhere to the case management schedule set forth in its Order filed October 27, 2009 (ECF 112). The parties are encouraged to review ECF 112 and to recognize that the April 30th fact discovery cut-off date is fast approaching.

Lastly, the parties engaged in private mediation at an earlier stage in these proceedings and the case could not be successfully resolved at that time. However, the parties have now conducted a substantial amount of discovery and, if all parties wish to again pursue mediation in an effort to resolve this matter, they should so notify the Court.

IT IS SO ORDERED.

January 14, 2010

Date

*/s/ David D. Dowd, Jr.*

David D. Dowd, Jr.

U.S. District Judge

## *Burket v. Hyman Lippitt, P.C.*

United States District Court for the Eastern District of Michigan, Southern Division

April 11, 2008, Argued ; April 11, 2008, Filed

Case No. 05-72110, Case No. 05-72171, Case No. 05-72221

**Reporter**

2008 U.S. Dist. LEXIS 30088

JACK BURKET, et al., JENNIFER ADAMS, et al., WILLIAM CLIFF, et al., Plaintiffs, v. HYMAN LIPPITT, P.C., et al., Defendants.

**Subsequent History:** Summary judgment granted, in part, summary judgment denied, in part by, Claim dismissed by, Motion granted by, Motion denied by *Burket v. Hyman Lippitt, P.C., 2008 U.S. Dist. LEXIS 33546 ( E.D. Mich., Apr. 23, 2008)*

**Prior History:** *Burket v. Hyman Lippitt, P.C., 2008 U.S. Dist. LEXIS 20703 ( E.D. Mich., Mar. 17, 2008)*

**Counsel:** For Jack Burket, Linda Burket, Norma Eansor, Susan I. Lindquist as Trustee of the Susan I. Lindquist Living Trust, John McLauglin, L.L.C., John McLaughlin, McLaughlin Ford, Incorporated, McLaughlin Enterprises, Incorporated, Jaymac, Incorporated, C. B. S. Agency, Incorporated, Britney Holdings, Limited, (2:05-cv-72110-PJD-MKM), Plaintiffs: Andrew H. Wilson, LEAD ATTORNEY, Wilson Campilongo, San Rafael, CA; James B. Eggenberger, LEAD ATTORNEY, Eggenberger Law Offices, Southfield, MI; Larry W. Bennett, Giarmarco, Mullins, Troy, MI; Steven C. Susser, Young & Susser, Southfield, MI.

For Hyman Lippitt, P. C., John Doe 1-50, Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, (2:05-cv-72110-PJD-MKM), Defendants, ThirdParty Plaintiffs: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, LEAD ATTORNEY, Young & Susser, Southfield, MI.

For Terry Givens, (2:05-cv-72110-PJD-MKM), Defendant: T.S. Givens, LEAD ATTORNEY, Clinton Township, MI; Steven C. Susser, LEAD ATTORNEY, Young & Susser, Southfield, MI.

For Leonard Disguiseppe, Robert Wink, Andrew Wilson, Agave, Ltd., Andrus Pukke, (2:05-cv-72110-PJD-MKM), ThirdParty Defendants: Steven C. Susser, Young & Susser, Southfield, MI.

For Keith Mohn, (2:05-cv-72110-PJD-MKM), Counter Claimant: Thomas H. Blaske, LEAD ATTORNEY, John F. Turck, Blaske & Blaske, Ann Arbor, MI; Jack J. Mazzara, Mazzara Law Firm, Grosse Pointe Woods, MI; Steven C. Susser, Young & Susser, Southfield, MI.

For Michael Burchard, Andrew Wilson, (2:05-cv-72110-PJD-MKM), ThirdParty Defendants: Andrew H. Wilson, Wilson Campilongo, San Rafael, CA; Steven C. Susser, Young & Susser, Southfield, MI.

For Mohn Asset Management, L.L.C., Mohn Financial Group, L.L.C., Keith Mohn, Laurence Mohn, (2:05-cv-72110-PJD-MKM, 2:05-cv-72221-PJD-MKM), ThirdParty Defendants: Jack J. Mazzara, LEAD ATTORNEY, Lanalee C. Farmer, Mazzara Law Firm, Grosse Pointe Woods, MI; Steven C. Susser, Young & Susser, Southfield, MI.

For Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, Hyman Lippitt, P. C., (2:05-cv-72110-PJD-MKM, 2:05-cv-72171-PJD-MKM), Counter Claimants:

Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, Young & Susser, Southfield, MI.

For Laurence Mohn, (2:05-cv-72110-PJD-MKM), Counter Defendant: Jack J. Mazzara, LEAD ATTORNEY, Lanalee C. Farmer, Lanalee C. Farmer, Mazzara Law Firm, Grosse Pointe Woods, MI; Steven C. Susser, LEAD ATTORNEY, Young & Susser, Southfield, MI.

For Agave, Ltd., Michael Burchard, J. Patrick Kisor, Andrus Pukke, Andrew Wilson, (2:05-cv-72110-PJD-MKM), ThirdParty Defendants: Steven C. Susser, Young & Susser, Southfield, MI.

For Keith Mohn, (2:05-cv-72110-PJD-MKM), Counter Claimant: Jack J. Mazzara, Mazzara Law Firm, Grosse Pointe Woods, MI; John F. Turck, Thomas H. Blaske, Blaske & Blaske, Ann Arbor, MI; Steven C. Susser, Young & Susser, Southfield, MI.

For Hyman Lippitt, P. C., Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, (2:05-cv-72110-PJD-MKM), Counter Defendants: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, Young & Susser, Southfield, MI.

For Andrew Wilson, (2:05-cv-72110-PJD-MKM), Counter Claimant: Andrew H. Wilson, LEAD ATTORNEY, Wilson Campilongo, San Rafael, CA; Steven C. Susser, Young & Susser, Southfield, MI.

For Terry Givens, (2:05-cv-72110-PJD-MKM), Counter Defendant: Steven C. Susser, LEAD ATTORNEY, Young & Susser, Southfield, MI; T.S. Givens, Clinton Township, MI.

For John Doe 1-50, (2:05-cv-72110-PJD-MKM), Counter Defendant: Rodger D. Young, Steven C. Susser, Young & Susser, Southfield, MI.

For Wilson Campilongo, L. L. P., (2:05-cv-72110-PJD-MKM), Counter Defendant:

Steven C. Susser, Young & Susser, Southfield, MI.

For Agave, Ltd., Michael Burchard, (2:05-cv-72110-PJD-MKM), ThirdParty Defendants: Steven C. Susser, Young & Susser, Southfield, MI.

For Mohn Asset Management, L.L.C., Mohn Financial Group, L.L.C., Keith Mohn, Laurence Mohn, (2:05-cv-72110-PJD-MKM), ThirdParty Defendants: Jack J. Mazzara, Lanalee C. Farmer, Mazzara Law Firm, Grosse Pointe Woods, MI; Steven C. Susser, Young & Susser, Southfield, MI.

For Andrus Pukke, Leonard Disguiseppe, Robert Wink, (2:05-cv-72110-PJD-MKM), ThirdParty Defendants: Steven C. Susser, Young & Susser, Southfield, MI.

For Andrew Wilson, (2:05-cv-72110-PJD-MKM, 2:05-cv-72221-PJD-MKM), ThirdParty Defendant: Andrew H. Wilson, Wilson Campilongo, San Rafael, CA; Steven C. Susser, Young & Susser, Southfield, MI.

For Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, Hyman Lippitt, P. C., (2:05-cv-72110-PJD-MKM), Counter Claimants: Rodger D. Young, Steven C. Susser, Young & Susser, Southfield, MI.

For Jennifer Adams, Michael Baratta, Michelle Baratta, Beverly Benczik, Joseph Berry, Curtis Callahan, Douglas Chapple, Brent Chitwood, Debbie Chitwood, Philip Church, Ronald Cutler, Carol A. Cutler, John Diguiseppe, Joanne Diguiseppe, Michael Distefano, Herman Drazick Trustee of the Drazick Trust, George Dussich, Robert Eggenberger, Walter Everett, David A. Farough Trustee of the David A. Farough Revocable Trust, Jerald Farough, James Felter, Valerie Felter, Marion Felter, Jillane Giesin, Stephen P. Gronkiewcz, Deborah Hanson, Donald Hedeen, Donald Hedeen Trustee of the Carl E.

2008 U.S. Dist. LEXIS 30088, *30088

Hedeen Trust, Donald Hedeen Trustee of the Laura M. Hedeen Trust, Philip Hernandez, Barbara Hernandez, Joseph K. Howell, Joseph K. Howell Trustee of the Howell Trust, Margaret Howell, William Jarvis, Peter E. Johnson, Rita Lograsso, Dennis Meidinger, Jack Miner, II, Kathryn P. Mohn Trustee of the Kathryn P. Mohn Living Trust, Laurence F. Mohn, Laurence F. Mohn Trustee of the Laurence F. Mohn Living Trust, Stephen Morris, Pamela Munro, Frances Piccinini, Keith Pierce, Pinehurst Investments, Edward M. Prokopp, Edward M. Prokopp Trustee of the Edward M. Prokopp Revocable Living Trust U/A/D 7/23/98, Linda R. Pushman, Lyle M. Pushman, Lyle M. Pushman Trustee of the Revocable Living Trust of Lyle M. Pushman, Janet Rebone, Gary Roby, Lawrence Rose, Christopher G. Saari Trustee of the Christopher G. Saari Revocable Living Trust, Wayne Saari, Watyne Saari Trustee of the Family Trust of Wayne K. and Margaret M. Saari Revocable Living Trust, Nikolay Tchopev, Elyce Turba, Sharon Uhes, Valeri D. Vitale Trustee of the Valeri D. Vitale Revocable Trust, Neil Vonfeldt, James Voss Trustee of the James C. Voss Trust, David A. Farough, (2:05-cv-72171-PJD-MKM), Plaintiffs: Andrew H. Wilson, LEAD ATTORNEY, Wilson Campilongo, San Rafael, CA; James B. Eggenberger, LEAD ATTORNEY, Eggenberger Law Offices, Southfield, MI; Larry W. Bennett, Giarmarco Mullins, Troy, MI.

For Hyman Lippitt, P. C., John Doe 1-50, Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, (2:05-cv-72171-PJD-MKM, 2:05-cv-72221-PJD-MKM), Defendants: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, LEAD ATTORNEY, Young & Susser, Southfield, MI.

For Terry S. Givens, (2:05-cv-72171-PJD-MKM, 2:05-cv-72221-PJD-MKM), Defendant: T.S. Givens, LEAD ATTORNEY, Clinton Township, MI; Steven C. Susser, Young & Susser, Southfield, MI.

For John Doe, (2:05-cv-72171-PJD-MKM), ThirdParty Plaintiff: Rodger D. Young, LEAD ATTORNEY, Young & Susser, Southfield, MI.

For Hyman Lippitt, P. C., Douglas A. Hayman, Norman Lippitt, John Sellers, Brian O'Keefe, (2:05-cv-72171-PJD-MKM), ThirdParty Plaintiffs: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, Young & Susser, Southfield, MI.

For Hyman Lippitt, P. C., (2:05-cv-72171-PJD-MKM), ThirdParty Defendant: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, Young & Susser, Southfield, MI.

For Michael Burchard, Andrew Wilson, (2:05-cv-72171-PJD-MKM), ThirdParty Defendants: Andrew H. Wilson, Wilson Campilongo, San Rafael, CA.

For Mohn Asset Management, L. L. C., Mohn Financial Group, L. L. C., Keith Mohn, (2:05-cv-72171-PJD-MKM), ThirdParty Defendants: Jack J. Mazzara, LEAD ATTORNEY, Lanalee C. Farmer, Mazzara Law Firm, Grosse Pointe Woods, MI.

For John Doe 1-50, (2:05-cv-72171-PJD-MKM), Counter Claimant: Rodger D. Young, LEAD ATTORNEY, Young & Susser, Southfield, MI.

Neil Vonfeldt, (2:05-cv-72171-PJD-MKM), Counter Defendant, Pro se, Melbourne, FL.

For Laurence F. Mohn, (2:05-cv-72171-PJD-MKM), Counter Defendant: Jack J. Mazzara, LEAD ATTORNEY, Lanalee C. Farmer, Mazzara Law Firm, Grosse Pointe Woods, MI.

For Leonard Disguiseppe, (2:05-cv-72171-PJD-MKM), ThirdParty Defendant: Sean M. Walsh, LEAD ATTORNEY, Giarmarco, Mullins, Troy, MI.

For Andrew Wilson, (2:05-cv-72171-PJD-MKM), ThirdParty Defendant: Andrew H. Wilson, Wilson Campilongo, San Rafael, CA.

For Laurence F. Mohn, (2:05-cv-72171-PJD-MKM), Cross Defendant: Jack J. Mazzara, LEAD ATTORNEY, Mazzara Law Firm, Grosse Pointe Woods, MI.

For Hyman Lippitt, P. C., John Doe 1-50, Douglas Hyman, Brian O'Keefe, John Sellers, (2:05-cv-72171-PJD-MKM), Counter Claimants: Rodger D. Young, Steven C. Susser, Young & Susser, Southfield, MI.

Michael Baratta, (2:05-cv-72171-PJD-MKM), Counter Defendant, Pro se, Alpharetta, GA.

For Hyman Lippitt, P.C., Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, (2:05-cv-72171-PJD-MKM), Counter Defendants: Rodger D. Young, Steven C. Susser, Young & Susser, Southfield, MI.

For Terry Givens, (2:05-cv-72171-PJD-MKM), Counter Defendant: T.S. Givens, Clinton Township, MI.

For John Doe 1-50, (2:05-cv-72171-PJD-MKM), Counter Defendant: Rodger D. Young, Young & Susser, Southfield, MI.

For William Cliff, Donald Lemire, Thomas Roderick, (2:05-cv-72221-PJD-MKM), Plaintiffs: Andrew H. Wilson, LEAD ATTORNEY, Wilson Campilongo, San Rafael, CA; James B. Eggenberger, LEAD ATTORNEY, Eggenberger Law Offices, Southfield, MI; Larry W. Bennett, Giarmarco, Mullins, Troy, MI.

For Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, Hyman Lippitt, P. C., (2:05-cv-72221-PJD-MKM), ThirdParty Plaintiffs: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, LEAD ATTORNEY, Young & Susser, Southfield, MI.

For Agave, Ltd., J. Patrick Kisor, (2:05-cv-72221-PJD-MKM), ThirdParty Defendants: Steven C. Susser, Young & Susser, Southfield, MI.

For Michael Burchard, (2:05-cv-72221-PJD-MKM), ThirdParty Defendant: Andrew H. Wilson, Wilson Campilongo, San Rafael, CA; Steven C. Susser, Young & Susser, Southfield, MI.

For Andrus Pukke, (2:05-cv-72221-PJD-MKM), ThirdParty Defendant: Steven C. Susser, Young & Susser, Southfield, MI.

For John Doe 1-50, (2:05-cv-72221-PJD-MKM), ThirdParty Plaintiff: Rodger D. Young, LEAD ATTORNEY, Steven C. Susser, Young & Susser, Southfield, MI.

For Agave, Ltd., Michael Burchard, J. Patrick Kisor, (2:05-cv-72221-PJD-MKM), ThirdParty Defendants: Steven C. Susser, Young & Susser, Southfield, MI.

For Andrew Wilson, (2:05-cv-72221-PJD-MKM), Counter Claimant: Steven C. Susser, Young & Susser, Southfield, MI.

For Norman Lippitt, Douglas Hyman, Brian O'Keefe, John Sellers, Hyman Lippitt, P. C., John Doe 1-50, (2:05-cv-72221-PJD-MKM), Counter Defendants: Rodger D. Young, Steven C. Susser, Young & Susser, Southfield, MI.

For Terry S. Givens, (2:05-cv-72221-PJD-MKM), Counter Defendant: Steven C. Susser, Young & Susser, Southfield, MI; T.S. Givens, Clinton Township, MI.

**Judges:** [*1] PRESENT: THE HONORABLE PATRICK J. DUGGAN, U.S. DISTRICT COURT JUDGE.

**Opinion by:** Patrick J. Duggan

2008 U.S. Dist. LEXIS 30088, *1

## Opinion

**OPINION AND ORDER DENYING HYMAN LIPPITT'S MOTION TO QUASH DEPOSITION OF NON-PARTY**

At a session of said Court, held in the U.S. District Courthouse, Eastern District of Michigan, on April 11, 2008.

PRESENT: THE HONORABLE PATRICK J. DUGGAN, U.S. DISTRICT COURT JUDGE

This matter is before the Court on Defendant Hyman Lippitt's Motion to Quash the Non-Party Deposition of Robin Cotterell filed on March 27, 2003. Plaintiffs and Counter/Third-Party Defendants Keith and Laurence Mohn (the "Mohns") have filed a responses to Hyman Lippitt's motion. Having reviewed the parties' filings, the Court sees no need for oral argument, and is therefore dispensing with oral argument in accordance with Local Rule 7.1(e)(2).

## I Background

The above-captioned matters are three separate but related lawsuits alleging Exchange Act and state law violations: *Burket, et al. v. Hyman Lippitt, et al.*, Case No. 05-72110; *Adams, et al. v. Hyman Lippitt, et al.*, Case No. 05-72171; and *Cliff, et al. v. Hyman Lippitt P.C., et al.*, Case No. 05-72221. All three of these lawsuits were filed in late May or early June 2005. Pursuant to the most [*2] recent amended scheduling order entered in each of these cases on April 20, 2007, discovery was scheduled to be "completed by" August 31, 2007.

The instant dispute stems from Plaintiffs' March 24, 2008 re-notice of deposition of non-party witness, Robin Cotterell. Plaintiffs' re-notice schedules the deposition of Mr. Cotterell for April 18, 2008 in St. Kitts, a island in the West Indies. Plaintiffs assert that Mr. Cotterell's testimony will undermine the defenses and counterclaims of Defendants. [1] (Pls.' Resp. Br. at 3.) According to Plaintiffs, "Mr. Cotterell, for personal reasons, refuses to come to the United States." (*Adams* Doc. No. 299, Cotterell Aff. P 5.) "Several years ago he was the subject of baseless criminal proceedings in the State of New York." [2] (*Id.* Although Plaintiffs state that Mr. Cotterell "remains free to travel to the U.S. at his leisure," (*id.*), "he has no desire to return to the country that -- in his estimation -- subjected him to an unjust and arbitrary prosecution." (*Id.* For these reasons, Plaintiffs would like to depose Mr. Cotterell to preserve his testimony for trial.

In a letter dated August 22, 2007, counsel for the Mohns, Jack Mazzara, provided counsel for the Hyman Lippitt Defendants a notice of deposition for Mr. Cotterell. (Pls.' Resp. Ex. D.) The notice, dated August 23, 2007, informed Defendants that the Mohns "will take the telephone deposition" of Mr. Cotterell on August 30, 2007. (*Id.* Ex. E.) The Hyman Lippitt Defendants, [3] in a letter dated August 28, 2007, objected to the Mohns' notice on four separate grounds: (1) it failed to comply with *Rule 28(b) of the Federal Rules of Civil Procedure*; (2) it had no legal effect in St. Kitts; (3) there had been no stipulation by counsel or a court order authorizing a telephonic deposition; and (4) the deposition of Mr. Cotterell must take place in the United States where he is subject to the jurisdiction of the United States Federal Courts. (Hyman Lippitt's Mot. Ex. 1.) Mr. Cotterell was not deposed on August 30, 2007; nor has he been deposed.

---

[1]  Plaintiffs proffered Mr. Cotterell's affidavit in support of their response to one of  [*3] the Hyman Lippitt Defendants' motions for summary judgment. (*See Adams*, Doc. No. 260.)

[2]  In his affidavit, Mr. Cotterell states that he was "acquitted of each and every charge on the 4th of December 2000." (Cotterell Aff. P 19.)

[3]  The "Hyman Lippitt Defendants"  [*4] include Hyman Lippitt, P.C., Norman Lippitt, Douglas Hyman, Brian O'Keefe, and John Sellers.

Case: 1:08-cv-02755-DCN  Doc #: 313-3  Filed: 05/13/15  11 of 21.  PageID #: 15980

Page 6 of 7
2008 U.S. Dist. LEXIS 30088, *2

On March 12, 2008, counsel for Plaintiffs sent an email informing counsel for the Hyman Lippitt Defendants that Mr. Cotterell "agreed to be deposed in London, Ontario on [March 17, 2008] at 11:00 am." (Hyman Lippitt's Mot. P 8.) The next day, Hyman Lippitt filed an "Emergency Motion To Quash Deposition of Non-Party To Be Held In Canada On Two Business Days' Notice And/Or To Preclude Use of Same At Trial." On March 13, 2008, this Court referred Hyman Lippitt's emergency motion to Magistrate Mona K. Majzoub. Plaintiffs and the Mohns filed responses to Hyman Lippitt's emergency motion, and on March 14, 2008, Magistrate Judge Majzoub granted Hyman Lippitt's emergency motion finding that (1) the deposition was untimely as it was noticed six months after the close of discovery and Plaintiffs failed to show good cause for taking Mr. Cotterell's deposition, and (2) Plaintiffs failed to provide reasonable notice.

Plaintiffs, on March 14, 2008, and the Mohns, on March 16, 2008, appealed Magistrate Judge Majzoub's order granting Hyman Lippitt's emergency motion. On March 17 2008, this Court issued an Opinion [*5] and Order affirming Magistrate Judge Majzoub "because it [did] not believe that Magistrate Judge Majzoub's finding that the notice of Mr. Cotterell's deposition was not reasonable was 'clearly erroneous.'" (3/17/08 Op. & Or. at 4.) In the March 17, 2008 Opinion and Order, this Court stated that it "expresse[d] no opinion on the propriety of a subsequent notice of Mr. Cotterell's deposition." (Id. A week after this Court issued the March 17, 2008 Opinion and Order, Plaintiffs re-noticed Mr. Cotterell's deposition for April 18, 2008 to preserve his testimony for use at trial. [4]

## II. Discussion

Hyman Lippitt again moves to quash Mr. Cotterell's deposition, asserting four reasons why Mr. Cotterell's deposition [*6] should be quashed. First, Hyman Lippitt argues that the deposition is untimely because discovery has been closed for seven months. Second, Hyman Lippitt asserts that Plaintiffs' statement that Mr. Cotterell's deposition is to "preserve testimony for trial" is irrelevant. The third reason Hyman Lippitt contends Plaintiffs' re-notice should be quashed is that Plaintiffs have failed to make a showing of good cause. Finally, Hyman Lippitt avers that allowing Mr. Cotterell to be deposed "at this late date would be unduly and unfairly prejudicial to Hyman Lippitt." (Hyman Lippitt's Br. at 7.)

Plaintiffs and the Mohns argue that Hyman Lippitt's reference to the close of discovery is irrelevant. Second, Plaintiffs argue that Defendants have known of Mr. Cotterell for years and they previously agreed that his deposition could be taken after the close of discovery; therefore, according to Plaintiffs, Hyman Lippitt will not suffer any prejudice if Mr. Cotterell's deposition goes forward. On the contrary, Plaintiffs contend that if they are not permitted to depose Mr. Cotterell, they will not be able to present his testimony should these cases go to trial. Finally, Plaintiffs contend that even [*7] if there is no distinction between a trial deposition and a discovery deposition, they have made a showing of "good cause" to allow the deposition.

As an initial matter, this Court's scheduling order setting a date by which discovery shall be completed was intended to set a date to close discovery; it had nothing to do with de bene esse depositions. Furthermore, based on the specific facts and circumstances involved in the present dispute, this Court finds that Plaintiffs can take the de bene esse deposition of Mr. Cotterell on

---

[4]  The Court notes that there are two separate motions for summary judgment filed by the Hyman Lippitt Defendants currently pending. The Hyman Lippitt Defendants have also filed a "Motion for Dismissal of 7 Plaintiffs for Failure to Comply with Court's Order to Produce Returns," which is also pending. Moreover, Defendant Givens filed a motion for summary judgment on March 21, 2008. The Court will assume for the purposes of its analysis of the present motion that there will be a trial.

2008 U.S. Dist. LEXIS 30088, *7

April 18, 2008 in St. Kitts. [5] When weighing the prejudice each side may incur, the Court is persuaded that the prejudice Plaintiffs would suffer if Mr. Cotterell is not deposed outweighs the potential prejudice to Hyman Lippitt. Hyman Lippitt argues that if Mr. Cotterell's testimony is unfavorable, it would be denied "the opportunity to conduct additional discovery to disprove or rebut [Mr.] Cotterell's testimony." [6] (Hyman Lippitt's Br. at 6.) However, as Plaintiffs contend, they submitted Mr. Cotterell's affidavit in response to one of the Hyman Lippitt Defendants' motions for summary judgment. Therefore, Mr. Cotterell's testimony will not be a complete surprise [*8] to Hyman Lippitt. [7] Finally and most importantly, if Mr. Cotterell's April 18, 2008 deposition does not go forward, Plaintiffs and the Mohns would almost certainly be deprived of the opportunity to present the testimony of a witness they believe will be favorable to their claims at trial.

Accordingly,

**IT IS ORDERED** that Hyman Lippitt's Motion to Quash Deposition of Non-Party is **DENIED**.

/s/ PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

---

[5]  Even if Plaintiffs are required to make a showing of "good cause" to take the *de bene esse* deposition of Mr. Cotterell on April 18, 2008, the Court finds that such a showing has been made.

[6]  Technically, because the Court's scheduling order setting August 31, 2007 as the discovery deadline has never been modified, the same would be true for the depositions that have occurred after the discovery deadline.

[7]  Furthermore, issues relating to the use of the deposition or whether certain testimony should or should not be admitted are issues the trial court can deal with at the time the deposition is offered.

*Armstrong v. Shirvell*

United States District Court for the Eastern District of Michigan, Southern Division

September 11, 2013, Decided; September 11, 2013, Filed

CASE NO. 11-11921

**Reporter**

2013 U.S. Dist. LEXIS 129526; 2013 WL 4833948

CHRISTOPHER ARMSTRONG, PLAINTIFF, v. ANDREW SHIRVELL, DEFENDANT.

**Subsequent History:** Affirmed in part and reversed in part by, Remanded by *Armstrong v. Shirvell, 2015 U.S. App. LEXIS 1782 (6th Cir.) (6th Cir. Mich., 2015)*

**Prior History:** *Armstrong v. Shirvell, 2012 U.S. Dist. LEXIS 81745 ( E.D. Mich., June 13, 2012)*

**Counsel:** [*1] For Christopher Armstrong, Plaintiff, Counter Defendant: Deborah L. Gordon, Sarah Prescott, LEAD ATTORNEYS, Bloomfield Hills, MI.

Andrew Shirvell, Defendant, Pro se, North Babylon, NY.

For Andrew Shirvell, Defendant: Philip J. Thomas, Grosse Pointe Park, MI; Robert G. Fleming, Robert G. Fleming, Attonrey at Law, Williamston, MI; Andrew L. Shirvell, North Babylon, NY.

Curtis Jackson, Movant, Pro se, ADRIAN, MI.

Andrew Shirvell, Counter Claimant, Pro se, North Babylon, NY.

For Andrew Shirvell, Counter Claimant: Philip J. Thomas, Grosse Pointe Park, MI; Robert G. Fleming, Robert G. Fleming, Attonrey at Law, Williamston, MI; Andrew L. Shirvell, North Babylon, NY.

For Michael Ondejko, Interested Party: Jeanmarie Miller, State of Michigan, Department of Attorney General, Lansing, MI.

**Judges:** ARTHUR J. TARNOW, SENIOR UNITED STATES DISTRICT JUDGE.

**Opinion by:** ARTHUR J. TARNOW

# Opinion

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [199] AND DEFENDANT'S MOTION FOR NEW TRIAL OR MOTION TO AMEND THE JUDGMENT REGARDING DAMAGES [200]**

## I. Introduction

Before the Court are Defendant Andrew Shirvell's Renewed Motion for Judgment as a Matter of Law [199] and Motion for New Trial or Motion to Amend the Judgment Regarding [*2] Damages [200], filed on September 21, 2012.

Beginning on August 7, 2012, a jury trial was held on Plaintiff's claims of defamation, invasion of privacy/false light, intentional infliction of emotional distress, and stalking. On August 16, 2012, the jury found in favor of Plaintiff on all claims. The jury awarded Plaintiff damages in the amount of $4.5 million.

In the instant motions, Defendant seeks judgment as a matter of law on all claims, a new trial, and in the alternative, a remittitur of the damages awarded.

For the reasons stated below, Defendant's Renewed Motion for Judgment as a Matter of

Law [199] and Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200] are **DENIED**.

## II. Analysis

### A. Judgment as a Matter of Law

Defendant Shirvell brings his Renewed Motion for Judgment as a Matter of Law [199] pursuant to _Federal Rule of Civil Procedure 50_. In ruling on a renewed motion for judgment as a matter of law after a verdict has been returned, this Court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. _Fed. R. Civ. Pro. 50(b)_. In reviewing a motion for judgment as a matter of law, this Court must consider the evidence   [*3] in the light most favorable to the non-moving party, and must give that party the benefit of all reasonable inferences. _Tuck v. HCA Health Servs. of Tenn., 7 F.3d 465, 469 (6th Cir. 1993)_(citations omitted). In considering the evidence, this Court "may not weigh the evidence or make credibility determinations, as these are jury functions." _Jackson v. Quanex Corp., 191 F.3d 647, 657 (6th Cir. 1999)_(citations omitted). Moreover, dismissal is improper "where the nonmovant presented sufficient evidence to raise a material issue of fact for the jury." _Id._ (citations omitted). Therefore, the decision to grant judgment as a matter of law is appropriate "'whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" _Id._(quoting _O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir. 1975))_.

### i. Defamation and Invasion of Privacy/False Light

Defendant Shirvell first argues that Plaintiff Armstrong is not a private individual, and is instead either a public figure, a public official, or a limited-purpose public figure, and therefore the jury's finding of negligent defamation  [*4] must be vacated as a matter of law. To make a showing

of defamation under Michigan state law four elements must be proven:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication [defamation per quod].

_Mitan v. Campbell, 474 Mich. 21, 24, 706 N.W.2d 420 (2005)_ (internal citations omitted). When the plaintiff is a public official or public figure, the plaintiff has the additional burden of showing clear and convincing evidence of actual malice on the part of the defendant. _Faxon v. Michigan Republican State Cent. Comm., 244 Mich. App. 468, 474, 624 N.W.2d 509 (Mich. Ct. App. 2001)_. Actual malice means that the "injurious falsehood was made knowing that it was false or with reckless disregard for whether it was true." _Id._

A public figure is a person who holds "pervasive power" or as to whom there is "clear evidence of general fame or notoriety in the community and pervasive involvement in the affairs of society." _Gertz v. Robert Welch, Inc., 418 U.S. 323, 352, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)_.  [*5] Courts may not "lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes." _Id._ The "designation has been applied sparingly," only to "those persons whose names have become household words." _Bufalino v. Detroit Magazine, Inc., 433 Mich. 766, 788-89, 449 N.W.2d 410 (1989)_.

"What determines whether an officer is a public official for _First Amendment_ purposes is the presence or absence of 'substantial responsibility' and 'control' over governmental processes that affect the lives, liberty and property of citizens."

2013 U.S. Dist. LEXIS 129526, *5

*Woodruff v. Ohman, 29 Fed. Appx. 337, 348 (6th Cir. 2002)* (citing *Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S. Ct. 669, 15 L. Ed. 2d 597 (U.S. 1966)*).

A limited purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz, 418 U.S. at 351*. A controversy for these purposes must be more than a cause celebre or a matter that attracts public attention. *Time, Inc. v. Firestone, 424 U.S. 448, 454, 96 S. Ct. 958, 47 L. Ed. 2d 154 (U.S. 1976)*; *Wolston v. Reader's Digest Ass'n, 443 U.S. 157, 167, 99 S. Ct. 2701, 61 L. Ed. 2d 450 (1979)*. The defamer cannot be the person actually engaged in and affected by [*6] the alleged controversy. *See, e.g., Hutchinson v. Proxmire, 443 U.S. 111, 135, 99 S. Ct. 2675, 61 L. Ed. 2d 411 (1979)* ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making claimant a public figure.").

During trial, this Court ruled that Plaintiff Armstrong was a private individual. Defendant Shirvell now presents much the same evidence as previously shown to the Court, and again argues that Armstrong is a public figure, a public official, or a limited-purpose public figure. Specifically, Defendant argues that the election of Plaintiff Armstrong as the student body president at the University of Michigan, mention of Armstrong's name in news publications as the first openly gay student president, and Armstrong's public statements openly identifying his sexual orientation render Plaintiff Armstrong a public figure.

Again, this Court does not find Defendant's arguments persuasive. The mention of Plaintiff Armstrong in a limited number of mostly local news publications does not render Armstrong a "household word[]." *Bufalino, 433 Mich. at 789*. Moreover, Plaintiff's position as student body president did not provide Plaintiff with control or responsibility for government processes, [*7] and therefore, does qualify him as a public official. *Woodruff, 29 Fed. Appx. at 348*. Finally, Defendant Shirvell also fails to identify a public controversy in which Plaintiff was involved, other than the attention brought on Plaintiff by Defendant's own statements and actions. Defendant suggests that through Armstrong's advocacy on behalf of lesbian, gay, bisexual, and transgender people, and his open identification of his own sexual orientation, Plaintiff has "thrust himself into public controversy." However, the only showing Defendant attempts to make of an actual controversy is a one-sentence quote from an article that simply identifies Plaintiff as the first openly gay student president of the University, and states that Plaintiff intended to pursue creating a gender-neutral campus housing option. Again, a matter of public interest is not in and of itself a public controversy. As such, Plaintiff is also not a limited-purpose public figure.

Therefore, as this Court ruled at trial, Plaintiff is a private individual for the purposes of Defendant's claims. Moreover, a private plaintiff that is able to prove actual malice is entitled to damages associated with this claim, including [*8] damages to reputation or feelings. *Glazer v. Lamkin, 201 Mich. App. 432, 437, 506 N.W.2d 570 (Mich. Ct. App. 1993)*.

Defendant then argues that the evidence presented at trial does not support the jury's finding of actual malice. Defendant basis this argument on his own testimony, in which he states that he believed the statements he made pertaining to Plaintiff Armstrong were true. However, Defendant's state of mind was a material issue of fact for consideration by the jury. *See Jackson, 191 F.3d at 657*. This Court must consider Defendant's testimony in the light most favorable to Plaintiff, and the Court may not make any determinations as to the credibility of this evidence, for that is the role of the jury. *See id.* Therefore, this Court declines to overrule the jury's verdict as to the claim of actual malice.

Case: 1:08-cv-02755-DCN  Doc #: 313-3  Filed: 05/13/15  16 of 21.  PageID #: 15985

Page 4 of 9
2013 U.S. Dist. LEXIS 129526, *8

Next, Defendant argues that the jury's findings on the claims of defamation and invasion of privacy /false light should be vacated as a matter of law because the statements at issue are substantively true, constitute constitutionally protected speech, or are rhetorical hyperbole. Plaintiff's complaint included nearly forty allegedly actionable statements made by Defendant. At trial, the jury was  [*9] presented with approximately fifteen pages of allegedly defamatory statements. Defendant's Motion for Judgment as a Matter of Law [199], now before the Court, makes no specific mention to any particular statement, and instead refers the Court to two previous filings, Defendant's February 24, 2012 Motion for Summary Judgment [111] and a January 21, 2011 response to a grievance filed with the attorney grievance committee. These two documents make specific reference to less than half of the statements at issue in this case. Of the unspecified statements, Defendant also fails to delineate which statements he alleges are true, which are allegedly protected opinion speech, and which are allegedly rhetorical hyperbole. This Court cannot dismiss the jury verdict based on Defendant's generalized claims.

Defendant also asserts that the findings as to the claims of defamation and invasion of privacy/false light should be vacated as a matter of law because they are unsupported by evidence of damages. This Court may remit the damages awarded Plaintiff by the jury only if "the award clearly exceeds the amount which, under the evidence in the case was the maximum that a jury could reasonably find  [*10] to be compensatory for the plaintiff's loss." *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996)(internal quotation marks and citations omitted). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience,...or (3) the result of a mistake, we must let the award stand." *Id.* (internal quotation marks and citations omitted).

Defendant argues that because Plaintiff was supported by his university and family while Defendant made the statements at issue, Plaintiff then did not suffer any damage to his reputation. However, Defendant Shirvell fails to note that in addition to reputational damages, the jury instructions also allowed for damages for imputation of criminal offenses, as well as damages to Plaintiff's feelings. *See Glazer v. Lamkin, 201 Mich. App. at 437.* Given the evidence of the pervasiveness of Defendant's conduct presented at trial, damages to Plaintiff's emotional well-being presented a genuine issue of fact to the jury. Reviewing all evidence in a light most favorable to Plaintiff, Defendant's argument here fails, and the jury's verdict is upheld.

Defendant Shirvell then argues that the findings as to the  [*11] claims of defamation and invasion of privacy/false light must be vacated as a matter of law because Plaintiff cannot obtain money damages for both claims based on the same statements. Defendant specifically argues that the jury awarded damages for the two claims based on all the same statements. While "double recovery" of damages is generally not permitted, Defendant presents no evidence that the jury in fact based its ruling as to the claims of defamation and invasion of privacy/false light based on precisely the same statements. *See Woodruff , 29 Fed. Appx. at348 (6th Cir. 2002)* (citing *General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 333, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (U.S. 1980)).* In fact, the verdict form specifically instructed the jury to mark which statements supported their findings as to each claim. Therefore, Defendant Shirvell's argument as to possible double recovery of damages is without merit.

*ii. Stalking*

Next, Defendant Shirvell argues that the jury's finding on the claim of stalking is not supported by the evidence presented at trial, because Defendant's activities are constitutionally protected forms of expression.

2013 U.S. Dist. LEXIS 129526, *11

Under Michigan law, a plaintiff "may maintain a civil action against [*12] an individual who engages in conduct that is prohibited under *section 411h* or *411i* of the Michigan penal code." *M.C.L. § 600.2954(1)*. Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *M.C.L. § 750.411h(1)(d)*. The statute also defines "harassment" as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." *M.C.L. § 750.411h(1)(c)*. "Unconsented contact" means:

> any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is [*13] not limited to, any of the following: (i) Following or appearing within the sight of that individual. (ii) Approaching or confronting that individual in a public place or on private property. (iii) Appearing at that individual's workplace or residence. (iv) Entering onto or remaining on property owned, leased, or occupied by that individual. (v) Contacting that individual by telephone. (vi) Sending mail or electronic communications to that individual. (vii) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

*M.C.L. § 750.411h(1)(e)*.

Defendant specifically argues that he made no direct contact with Plaintiff, and that his four alleged protests, "Chris Armstrong Watch" blog, and videotaping of police activity at Plaintiff's home, are protected or legitimate activity. He also argues that Plaintiff failed to show that any contact was "uncontested," because Plaintiff failed to directly communicate to Defendant that he wished for Defendant's conduct to cease. However, the statute not only specifically notes that this uncontested contact includes activities initiated without consent, not only continued without consent, but also that harassment [*14] is not "limited to" this unconsented contact. As for Defendant Shirvell's alleged protected activities, at trial, Plaintiff presented testimonial evidence questioning the legitimacy of Defendant's activities, such as Defendant's failure to record the criminal activity he allegedly witnessed at Plaintiff's home. Making all inferences in favor of the nonmovant, Defendant's claim here also fails.

### iii. Intentional Infliction of Emotional Distress

Finally, Defendant Shirvell argues that the jury's finding as to the claim of intentional infliction of emotional distress must be vacated because it is unsupported by the evidence produced at trial.

A showing of intentional infliction of emotional distress requires: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *N. Pointe Ins. Co. v. Emanuel Steward & Emanuel Steward Enters., 2004 Mich. App. LEXIS 615, at *10 (Mich. Ct. App. Mar. 4, 2004)*(internal quotation marks and citations omitted). Defendant argues again that his conduct at issue in this case is constitutionally protected and alternatively, does not meet the required level of outrageousness. *See id. at *10-12* ("...conduct [*15] has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Again,

Defendant has not delineated what conduct and which statements are protected. Moreover, Defendant's arguments as to the outrageousness of his conduct do not overcome the required showing that there are "no disputed issues of fact" or that "reasonable minds would not differ" on the fact issue. *Jackson, 191 F.3d at 657* (quoting *O'Neill, 511 F.2d at 513 (6th Cir.)*. Therefore, the jury's verdict as to this claim stands.

## B. New Trial

Alternatively, Defendant Shirvell also brings a separate Motion for New Trial [200] under *Federal Rule of Civil Procedure 59*. Following a jury verdict, a new trial is permitted "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir. 1996)*(internal quotation marks and citations [*16] omitted). Defendant makes eight separate arguments as to errors made at trial.

First, Defendant argues that because the jury verdict form included many statements not originally identified in Plaintiff's complaint, Defendant was prejudiced during trial. Defendant raised this objection prior to trial, raising the same arguments, and they were rejected by this Court. For the same reasons, the Court deny's Defendant a new trial on this claim.

Defendant then contends that this Court's exclusion of a series of articles prejudiced him because they would have allowed him to better argue that Plaintiff was a public figure, and to better represent Defendant's state of mind. As Defendant himself asserts, *Federal Rule of Civil Procedure 61* demands that, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the

court or a party—is ground for granting a new trial...the court must disregard all errors and defects that do not affect any party's substantial rights." *Fed. R. Civ. P. 60*. Defendant has not shown that the exclusion of these articles tramped on his substantial rights or was so seriously erroneous as to violate the requirements of justice.

Third, [*17] Defendant argues that this Court's exclusion of two witnesses, Konrad Siller, a Washtenaw County Assistant Prosecutor, and Kelly Cunningham, the director of public affairs for the University of Michigan, resulted in an unfair trial. Along with Siller's testimony, Defendant asserts that he sought to admit into evidence a document entitled: "Washtenaw County Prosecutor's Memorandum denying Plaintiff Armstrong's request for criminal 'stalking' charges based on *First Amendment* grounds, dated October 26, 2010, and written by Chief APA Konrad Siller." Defendant argues that Siller's testimony and this report would have shown that Defendant had not been criminally charged because of his *First Amendment* rights. Defendant asserts that Cunningham's testimony would have allowed him to show that Plaintiff Armstrong intended to go on the Anderson Cooper Show in October 2010 in order to speak about Defendant Shirvell and that Plaintiff is a public figure. Defendant also contends that the exclusion of these witnesses prejudiced him because Plaintiff used Defendant's failure to call witnesses at trial against him.

As the Court previously held, Siller's testimony and report were properly excluded from [*18] trial because his failure to prosecute Defendant Shirvell is irrelevant to the issues before the jury, and is unduly prejudicial. Moreover, the pertinent statute specifically states that a "civil action may be maintained...whether or not the individual who is alleged to have engaged in conduct prohibited...has been charged or convicted." *M.C.L. § 600.2954(2)*. In addition, the exclusion of both Siller and Cunningham did not effect Defendant's substantive rights at trial.

Case: 1:08-cv-02755-DCN  Doc #: 313-3  Filed:  05/13/15  19 of 21.  PageID #: 15988

Page 7 of 9
2013 U.S. Dist. LEXIS 129526, *18

Next, Defendant Shirvell argues that this Court's failure to instruct the jury on Defendant's affirmative defenses prejudiced Defendant. Defendant Shirvell presented this Court with these defenses in the form of proposed jury instructions on July 29, 2012. These defenses focus on the possible truth of the statements at issue as well as the use of rhetorical hyperbole and opinions. The instructions read to the jury included the assertion that "[d]efamation is a statement which is false in some material respect," as well as that the "meaning of a statement is that meaning which, under the circumstances, a reasonable person who hears or reads the statement reasonably understands to be the meaning intended." These portions [*19] of the instructions given to the jury largely encapsulate the affirmative defenses presented by Defendant. Therefore, Defendant Shirvell was not prejudiced by the exclusion of the affirmative defenses written by him.

Fifth, Defendant contends that he was prejudiced by the inclusion of the *de bene esse* depositions of Eric Restuccia and Tom Manatos, and the testimony of Ashley Schwedt and Mical Degraaff. Defendant previously filed a motion to quash and a motion in limine regarding Restuccia and Manatos before this Court. He incorporates those motions here, and makes no other argument. Defendant contends that these depositions were scheduled at the last moment and inconvenienced him as a pro se and out-of-state party. The practice of taking *de bene esse* depositions prior to trial is often common practice known to practitioners, and a practical resolution to a witnesses' unavailability. *See El Camino Res., Ltd. v. Huntington Nat'l Bank, 2009 U.S. Dist. LEXIS 36704, at *15-16 (W.D. Mich. Apr. 30, 2009).* While these depositions may have inconvenienced Defendant Shirvell, Defendant provides no explanation as to how this inconvenienced substantially prejudiced him at trial.

As for Schwedt and [*20] Degraaff, Defendant argues that the testimony of these two trial witnesses should be excluded because Plaintiff failed to provide Defendant with summaries of the expected testimony as detailed in Magistrate Judge Komives' February 3, 2012 order. However, Plaintiff provided Defendant discovery disclosures in February and again in March. Defendant deposed witness Schwedt. Again, Defendant fails to provide this Court any evidence of prejudice caused by any discovery delay as to these two witnesses.

Next, Defendant Shirvell argues that Plaintiff's questioning of Defendant regarding his termination from employment with the Michigan Attorney General's office was prejudicial. The exchange proceeded as follows:

> Q: Well, it's relevant because you said a few minutes ago in this courtroom that Chris Armstrong persecuted you. I asked was anybody persecuted while Chris was President, and you said you were.
>
> A: Right.
>
> Q: And then I asked you what the persecution was, and you listed some things. And at your dep you also said you were persecuted because you lost your job.
>
> A: Right, at the dep I stated that. I didn't say that here today.
>
> Q: Well, I realize that, but I am reminding you of what you have told [*21] me the reasons were previously. So, now I'm asking you a few questions about it.

"Admission of improper evidence at trial will not warrant a new trial unless a different ruling would have caused a different outcome at trial." *Hillside Prods. v. County of Macomb, 389 Fed. Appx. 449, 459 (6th Cir. 2010).* Defendant did not object to this line of questioning at trial, nor has Defendant now shown how the exclusion of this testimony would have resulted in a different outcome. *Id.*

2013 U.S. Dist. LEXIS 129526, *21

(noting that the alleged misconduct was not timely objected to.) Therefore, the admission of this testimony does not merit a new trial.

Next, Defendant objects to this Court's rulings limiting arguments relating to *First Amendment* and restricting the jury's application of the *First Amendment*. Defendant Shirvell specifically notes the Court's instruction to the jury as follows: "[w]ith regard to the defamation claim, you may not consider whether the *First Amendment* applies, nor whether any statement is an opinion. You must consider the laws I give it to you." The Court's jury instruction was neither improper nor prejudicial because the application of any *First Amendment* protections is a legal issue decided by the Court [*22] rather than the jury. The jury was properly instructed as to the elements of a claim of defamation, including the whether the statements at issue were false. Defendant also states that " Plaintiff Armstrong's counsel was given free reign throughout the trial to discuss the *First Amendment* in any manner she pleased," but offers no citation. Therefore, Defendant's claims here are without merit and the request for new trial is denied.

Finally, Defendant argues that the conduct of Plaintiff's counsel at trial resulted in prejudice. Specifically, Defendant objects to counsel's decorum while questioning Defendant and during counsel's cross-examination. "When a new trial is requested on the basis of counsel's conduct, there must be clear prejudice that would justify a new trial." *Hillside Prods., 389 Fed. Appx. at 459* (citations omitted). Defendant Shirvell has failed to show how counsel's conduct was clearly prejudicial to his case, and therefore his request for new trial is again denied.

## C. Remittitur of Damages

In Defendant Shirvell's second alternative, Defendant seeks new trial or an amendment of the judgment because of a grossly excessive damage

award. Defendant reiterates his arguments [*23] as to damages and the jury's award to Plaintiff made earlier in Defendant's Motion for Judgment as a Matter of Law [199]. *See supra* at 8-9. Defendant also requests that all compensatory damage awards are reduced to a nominal award of one dollar, because Plaintiff suffered no economic loss. Defendant then asserts that the exemplary awards are unconstitutional.

As stated previously, this Court may grant remittitur only if "the award clearly exceeds the amount which, under the evidence in the case was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Bickel, 96 F.3d at 156* (internal quotation marks and citations omitted). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience,...or (3) the result of a mistake, we must let the award stand." *Id.* (internal quotation marks and citations omitted). Moreover, the district court's review of a motion for remittitur is reviewed under an abuse of discretion standard. *Id.*

The Sixth Circuit Court has delineated three factors in considering whether a punitive damages award is constitutionally excessive: "(1) the degree of reprehensibility of the conduct; [*24] (2) the disparity between the harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages and the civil penalty imposed in comparable cases." *BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574-75, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (U.S. 1996)*. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id. at 575*. "While there is no exchange rate for converting reprehensibility into dollars, an award at a minimum 'should reflect the enormity of the offense.'" *Gibson v. Moskowitz, 523 F.3d 657, 664 (6th Cir. 2008)* (quoting *BMW of N. Am., Inc., 517 U.S. at 575*).

First, Defendant's argument as to Plaintiff's lack of economic loss in regards to compensatory

damages is without merit, as stated above, as the jury was to also consider non-economic damages, such has harm to Plaintiff's well-being and reputation. *See supra* at 8-9. As to Defendant's argument of an unconstitutional award, Defendant specifically contends that his actions were not reprehensible because he acted in good faith. Defendant made this argument to the jury, and the jury found against the Defendant. Through its award [*25] the jury has shown the degree to which it found Defendant's actions reprehensible. This Court must give all inferences to the Plaintiff in reviewing this question of fact presented to the jury. Moreover, the jury's punitive award constitutes one fifth of its total award of damages to Plaintiff. Defendant attempts to argue that this award is excessive. However, courts have upheld awards with similar ratios of compensatory to punitive awards. *See Fastenal Co. v. Crawford, 609 F.Supp.2d 650 (E.D. Ky. 2009); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003); BMW of N. Am., Inc., 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (U.S. 1996).*

Therefore, Defendant Shirvell's request for new trial based on excessive damages and request for the remittitur of damages is denied.

### III. Conclusion

For the reasons stated above, Defendant's Renewed Motion for Judgment as a Matter of Law [199] and Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200] are DENIED.

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law [199] is **DENIED.**

**IT IS HEREBY ORDERED** that Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200] is **DENIED.**

### SO ORDERED.

/s/ Arthur J. Tarnow

ARTHUR J. TARNOW [*26]

SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 11, 2013