IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| --- | --- | --- |
| Plaintiff, | ) ) ) | JUDGE NUGENT |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF SAP AMERICA, INC. AND SAP AG IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO PRESENT REMOTE TRIAL TESTIMONY OR, IN THE ALTERNATIVE, TO RETAKE DEPOSITIONS**

**I.      INTRODUCTION**

SAP opposes Hodell's request to obtain remote testimony or duplicative deposition testimony from Geoff Ashley and Dale Van Leeuwen. First, the depositions of Messrs. Ashley and Van Leeuwen were taken and transcribed in 2012. Second, these depositions were conducted in New Hampshire and Illinois, respectively, with the understanding that neither of these witnesses could be compelled to appear live at trial. Third, the parties spent considerable effort designating, counter-designating, and objecting to deposition testimony for these witnesses (as well as performing the expensive and time-consuming process of editing their videotaped deposition testimony for playback at trial) for the very reason that neither would be available at trial. Further, the Court already spent its own time and resources and has already ruled on each and every one of the parties' objections to said testimony.

Hodell claims that its request is standard and not controversial, but fails to mention that under Fed. R. Civ. P. 43(a), testimony by live video feed can only occur upon a showing of

"good cause" and "compelling circumstances," and that this procedure is particularly disfavored when – as here – deposition testimony already exists. The truth is that Hodell is dissatisfied with the depositions it conducted and the Court's prior rulings concerning the admissibility of deposition testimony from Messrs. Ashley and Van Leeuwen, and Hodell hopes that if it can force these witnesses to appear via remote video feed – or force them to reappear for "trial depositions" – it will somehow be able to make their inadmissible testimony admissible.

And Hodell is wrong that either witness has important first-hand knowledge, let alone would offer testimony beyond what was already elicited during their depositions. When the true circumstances are considered under the standards required by Fed. R. Civ. P. 43(a), it is clear that Hodell's motion is unfounded and amounts to little more than a backdoor effort to revisit the Court's prior rulings about deposition testimony.

## II. ARGUMENT

### A. Under Fed. R. Civ. P. 43(a), Contemporaneous Transmission of Live Testimony by Remote Video Feed Is Unusual and Especially Unwarranted When Deposition Testimony Already Exists

Rule 43(a) of the Federal Rules of Civil Procedure provides that "[f]or ***good cause*** in ***compelling circumstances*** and with ***appropriate safeguards***, the court ***may*** permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a) (emphases added). Such remote testimony is essentially regarded as a measure of last resort, reserved for rare and particularly compelling circumstances, such as "when a witness is unable to attend trial for *unexpected reasons, such as accident or illness*." Fed. R. Civ. P. 43 advisory committee's note (emphasis added); *Eller v. Trans Union, LLC*, 739 F.3d 467, 477-79 (10th Cir. 2013) ("Courts most frequently allow remote testimony in special circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a courtroom."), *cert. denied*, 134 S. Ct. 2158 (2014).

2

And this procedure is not warranted when it is merely "inconvenient for the witness to attend the trial." *Eller*, 739 F.3d at 477-79 (holding Rule 43(a) was not satisfied where witness's absence from trial was not unexpected as it had been known in advance of trial that witness was based in Portland, Oregon, and plaintiff could have made arrangements ahead of time for introducing witness's testimony by deposition); *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970, 2014 U.S. Dist. LEXIS 12973, at *3-4 (D. Colo. Jan 31, 2014) (refusing to permit testimony by contemporaneous transmission and noting that "inconvenience of the witnesses . . . is insufficient, especially in this case, where Predator was aware of their location in advance of trial and was not surprised by 'unexpected reasons' for their unavailability.") (attached hereto as Exhibit "A.").

Moreover, it is well-recognized that "depositions, including video depositions, provide a *superior means* of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses." Fed. R. Civ. P. 43 advisory committee's note (emphasis added); *see also Sille v. Parball Corp.*, 2:07-cv-00901, 2011 WL 2680560 (D. Nev. Jul. 8, 2011) (attached hereto as Exhibit "B").

Because remote testimony "cannot be justified merely by showing that it is inconvenient for the witness to attend the trial," even where witnesses are located outside of the United States, courts regularly refuse to allow remote testimony. *Id.*; *see also, e.g.*, *Eller*, 739 F.3d at 477-79 (refusing to allow a second witness to testify from Turkey); *SEC v. Yang*, No. 12-c-2473, 2014 WL 1303457 (N.D. Ill. Mar. 30, 2014) (refusing to allow live video testimony of foreign national witnesses because, in part, the request was opposed and there had been no showing of efforts to obtain a visa and no showing that travel was prohibitively expensive) (attached hereto as Exhibit "C').

3

Where courts have permitted contemporaneous video transmission, they have been careful to ensure that the circumstances are truly compelling. *See, e.g.*, *Jennings v. Bradley*, 419 F. App'x 594, 598 (6th Cir. 2011) (three witnesses posed security threats and the fourth would be deprived of necessary mental health support if he had to testify in person); *El-Hadad v. UAE*, 496 F.3d 658, 669 (D.C. Cir. 2007) (requiring a foreign national to prove that he had pursued and repeatedly been denied a visa to the U.S. before permitting contemporaneous testimony); *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 641-44 (E.D. La. 2006) (allowing live video feed where witness possessed critical information and *had not been deposed*, action was a *bellwether trial for multidistrict litigation* involving thousands of lawsuits, and defendant's refusal to voluntarily produce the witness was for purely tactical advantage); *Dagen v. CFC Grp. Holdings, Ltd.*, No. 00-cv-5682, 2003 WL 22533425 (S.D.N.Y. Nov. 7, 2003) (permitting multiple employees residing in Hong Kong to testify via live feed because employer raised valid visa concerns, legitimate business concerns, and prohibitive costs as reasons – and because defendant would suffer potentially incurable prejudice if the court excluded the testimony) (attached hereto as Exhibit "D"); *Edwards v. Logan*, 38 F. Supp. 2d 463, 465-68 (W.D. Va. 1999) (allowing live video feed where transporting the inmate-witness from New Mexico to Virginia would be an expensive security risk, and staying the action until the prisoner's release could cause a decade-long delay).[1]

Here, Hodell has known for years that Messrs. Ashley and Van Leeuwen both fall outside the subpoena power of this Court, and Hodell most certainly "could reasonably foresee the

---

[1] This Court's May 12, 2015 Trial Order recognizes these very principles.  Indeed, with respect to witnesses who will not appear live, the Order first provides (apparently as the default procedure) that the parties may designate and offer deposition testimony at trial.  ECF 312 at 5.  The Order next provides that prior approval may be obtained for remote witness testimony, but is very clear to state that the request must be "justified by sufficient cause," and that "remote testimony is *not* generally an acceptable substitute for presenting a live witness [and] is *not* available to obtain testimony from witnesses who will be merely inconvenienced by having to appear in person, *or because a party merely hopes to minimize their own cost of litigation*."  *Id*. at 6 (emphasis added).

circumstances" it now offers to justify live video transmission. In fact, the parties plainly *did* anticipate these circumstances, having preserved on videotape the testimony of nearly every witness in this matter, at least in part, to ensure efficient presentation at trial should any witness be unable or unwilling to appear.[2]

> **B. There Is No Good Cause or Compelling Circumstances to Disregard Geoff Ashley's Existing Deposition Testimony and Force Him to Testify Via Remote, Contemporaneous Video Transmission; Nor Is There Justification for Re-deposing Mr. Ashley for Trial.**

Mr. Ashley was deposed on March 16, 2012 in Concord, New Hampshire. Hodell's president, Kevin Reidl, along with its attorneys, traveled from Cleveland; SAP's attorney traveled from Philadelphia. It was well known to Hodell at that time that Mr. Ashley was a former SAP employee who was not under SAP's control and that Mr. Ashley was plainly outside of this Court's subpoena power. In order to best preserve Mr. Ashley's testimony for use at trial, the parties arranged for the deposition to be transcribed and recorded on video.

Contrary to Hodell's claim that Mr. Ashley is somehow "critical" to this case, Mr. Ashley's personal knowledge about the facts of this case is *extremely limited*: Mr. Ashley was not hired by SAP until November 2004 and had not heard of Hodell prior to his joining SAP (*see* Ashley Dep. Transcript, at 96:15-22, 239:25-240:11 (attached hereto as Exhibit "E")); Mr. Ashley served in a sales management role that did not typically involve direct contact with customers (*see id.*, at 11:4-21); Mr. Ashley was not involved at all in the Hodell sales cycle or in

---

[2] And, of course, Rule 30(a)(2)(B) of the Federal Rules of Civil Procedure recognizes that witnesses cannot typically be deposed more than once. Rule 30(a)(2) provides that a court should apply the standards enunciated in Rule 26(b)(2) (limiting discovery that is either unreasonably duplicative, not performed when there was ample opportunity to do so, or where the expense outweighs the benefit) when considering a second deposition. *See* Fed. R. Civ. P. 30. Hodell ignores these Rules and instead suggests that it is "commonplace" for witnesses to be compelled to a trial deposition. But Hodell fails to address the real issue – whether a trial deposition is ever warranted where a witness' testimony was previously taken and preserved for trial, where all parties were fully aware that the witness could not later be compelled to appear in person at trial, and where the parties incurred significant expense in conducting those depositions in the first place. None of the cases Hodell cites deals with this question, and the fact is that Hodell does not face any prejudice by having the already existing videotaped deposition testimony of Messrs. Ashley and Van Leeuwen presented at trial.

any evaluation of the technical needs or requirements of Hodell prior to the signing of the December 2005 License Agreement (*see id.*, at 10-12, 98:22-99:16, 108:14-21); Mr. Ashley did not communicate with Hodell about signing a License Agreement with SAP and had no knowledge about what was represented to Hodell about the License Agreement (*see id.*, at 81:16-23); and Mr. Ashley's knowledge of the Hodell transaction, prior to the License Agreement, was essentially limited to information found in sales reports (*see id.*, at 96:23-98:4).

In any event, Mr. Ashley's deposition testimony was successfully recorded in full; was the subject of designations, counter-designations, and objections; and the Court already ruled on which portions of his testimony are admissible and inadmissible at trial. (ECF 292, 295.) After ruling on the parties' designations and objections, the edited portions of Mr. Ashley's videotaped testimony amount to barely more than *one hour* of playtime.

Hodell has also failed to show that Mr. Ashley is actually unavailable. At most, Hodell argues that it does not want to reimburse Mr. Ashley for his time and expenses to travel from New Hampshire to attend trial. But as this Court's Trial Order makes clear, remote testimony is not available "because a party merely hopes to minimize their own cost of litigation." ECF 312 at 6.

And the fact is that Hodell has known for years that Mr. Ashley is not under SAP's control. Leading up to the initially-scheduled trial date in October 2014, SAP was under the impression from Mr. Ashley that he would appear in person at trial. However, trial was later rescheduled to February 23, 2015. In early February, Mr. Ashley informed SAP's counsel that he was unwilling to appear unless he was reimbursed for his time at the rate of $2,400 per day, which is $300 per hour based on an 8-hour minimum, and reimbursed for all travel expenses. SAP very quickly informed Hodell on February 11, 2015 that it was no longer making

6

arrangements for Mr. Ashley to appear live due to these costs. *See* Email chain between G. Star and W. Lambert, Feb. 11-13, 2015 (attached hereto as Exhibit "F"). The next day, Hodell stated it would pay for Mr. Ashley's "reasonable costs," and SAP provided Hodell with the details of what Mr. Ashley was requesting. *Id*. A week later, Hodell confirmed again that it would "pick up the tab for Mr. Ashley's appearance in person at trial," yet Hodell never followed up on this and has now reversed position.[3] *See* Email chain between W. Lambert and G. Star, Feb. 19-20, 2015 (attached hereto as Exhibit "G"); *see also* Ltr. from M. Miller to Hon. L. Wells, Feb. 20, 2015 (attached hereto as Exhibit "H").

      **C.**      **There Is No Good Cause or Compelling Circumstances to Disregard Dale Van Leeuwen's Existing Deposition Testimony and Force Him to Testify Via Remote, Contemporaneous Video Transmission; Nor Is There Justification for Re-deposing Mr. Van Leeuwen for Trial**

Hodell's argument concerning the need for Mr. Van Leeuwen to appear live via remote video feed fails to recount that, as of October 15, 2014, Hodell had informed the Court and SAP that Mr. Van Leeuwen – with whom SAP has had no contact – *would appear in person at trial*. It was not until a February 18, 2015 pre-trial hearing – *five days before trial* – that Hodell actually confirmed to the Court and to SAP that Mr. Van Leeuwen would *not* appear live. To this day, Hodell has never explained why Mr. Van Leeuwen was suddenly unable or unwilling to appear in person at trial. Nor has Hodell explained whether it has since sought Mr. Van Leeuwen's commitment to attend the rescheduled trial in person. Thus, it is far from certain that Mr. Van Leeuwen is actually unavailable for trial.

---

[3] Moreover, Hodell's suggestion that leave was already granted regarding remote testimony from Mr. Ashley tells only half the story. Although Judge Wells did suggest verbally on February 18, 2015 – without actually considering the standards for remote testimony under Rule 43(a) – that Mr. Ashley could appear remotely, her Honor then withdrew this and ordered that Mr. Ashley's testimony (and that of Mr. Van Leeuwen) would be presented by deposition. *See* Transcript of Feb. 27, 2015 Hearing at 7:17-13:20; ECF 292, 295. Thus, on February 20 and February 23, 2015, Judge Wells ruled on the parties' respective deposition designations for Mr. Ashley.

In any event, Mr. Van Leeuwen's deposition testimony was taken on July 18, 2012, in Chicago, Illinois. Hodell's president, Kevin Reidl, also attended this deposition in person along with Hodell's counsel and counsel for SAP, and all parties were well aware that Mr. Van Leeuwen was outside of the Court's subpoena power.

Mr. Van Leeuwen was the sole principal of IBIS and is presently an owner of LSi. His deposition testimony was the subject of designations, counter-designations, and objections, and this Court has already ruled on which portions of his testimony are admissible and inadmissible at trial. *See* ECF 277. Notably, the Court sustained nearly 70% (34 of 50) of SAP's objections to Hodell's designations, and it is obvious (as it is concerning Mr. Ashley's testimony) that Hodell is unhappy with the Court's rulings and is hoping that if Mr. Van Leeuwen appears live, it will somehow be able to put questions before Mr. Van Leeuwen designed to elicit inadmissible and prejudicial testimony and further disrupt these proceedings.

Indeed, Hodell has made no real effort to explain why Mr. Van Leeuwen must appear via contemporaneous video feed or why his deposition should be retaken. Nor has Hodell explained that this procedure would ever be appropriate for a witness who is a principal owner of a party defendant. At best, Hodell cites to Mr. Van Leeuwen's already existing deposition testimony regarding SAP's alleged involvement in the sale of Business One to Hodell. But this testimony was designated by Hodell for use at trial, and the Court has ruled that it is admissible. ECF 277.

Hodell's only other explanation is that a technical issue resulted in a portion of Mr. Van Leeuwen's deposition going unrecorded on video. But that testimony was transcribed, and simply because portions of Mr. Van Leeuwen's deposition testimony may need to be read into the record – an event that occurs every day in courts across the country – is hardly a reason to support Hodell's requested relief.

**D.     Hodell's Shotgun Argument Regarding Other Witnesses Misses the Mark.**

Hodell generically mentions a number of other witnesses and, without any detail, suggests that it be granted a blanket order that it can either compel their remote testimony or retake all of their depositions.  SAP strongly opposes this request, and it is unnecessary as well.

Specifically, with regard to Daniel Lowery, *Hodell* has repeatedly confirmed that Mr. Lowery is attending trial in person.  In fact, when the parties appeared before Judge Wells in February to begin trial, Hodell had maintained that it was in contact with Mr. Lowery and that he was appearing in person to testify.  SAP has had no contact with Mr. Lowery, and to the extent he is not going to appear in person, Hodell should notify the Court and SAP right away, and the parties should designate portions of his prior deposition testimony.[4]

Hodell also mentions current SAP employees Paul Killingsworth and Edward Neveux. As SAP has confirmed many times, these witnesses are expected to appear live at trial. Moreover, SAP has agreed that it will bear the cost of bringing these witnesses to appear during Hodell's case-in-chief (as Hodell belatedly requested just one week before the start of the first trial), and SAP reserves the right to call them again during its case.

As to former SAP employees Daniel Kraus and Ralf Mehnert-Meland, SAP confirms once again that it has been in contact with these witnesses and, although they are not subject to SAP's control, continues to anticipate that they will appear live at trial.  The parties previously agreed that although Hodell wanted to call these witnesses during its case, these witnesses would only appear once – during SAP's case – and that Hodell could exceed the scope of SAP's direct examination to the extent necessary.

---

[4] As with every other witness who will testify at trial, Mr. Lowery was previously deposed over the course of two days.  His testimony spans four volumes.  Retaking his deposition and then designating appropriate testimony would no doubt delay the start of trial.

9

**III. CONCLUSION**

Having failed to show good cause, compelling circumstances, or appropriate safeguards required under Fed. R. Civ. P. 43(a), Hodell's request for remote testimony from Messrs. Ashley and Van Leeuwen should be denied.  Likewise, Hodell should not be permitted to selectively re-depose these two witnesses (or any others).  If Hodell is dissatisfied with the existing deposition testimony of these witnesses, it should instead take the steps necessary to secure their agreement to appear live at trial.

Respectfully submitted,

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorney for SAP America, Inc. and SAP AG*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 15th day of May 2015, the foregoing Memorandum of SAP America, Inc. and SAP AG in opposition to Plaintiff's Motion for Leave to Present Remote Trial Testimony or, in the Alternative, to Retake Depositions, along with exhibits thereto, was filed and served electronically via ECF.

                                                        /s/ Gregory J. Star

                                                         Gregory J. Star (admitted *pro hac vice*)