IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC., | ) | CASE NO. 1:08-CV-2755 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR RECONSIDERATION OR,** |
| SAP AMERICA, INC., et al. | ) | **IN THE ALTERNATIVE, HEARING ON** |
| | ) | **ADMISSIBILITY OF EXPERT OPINIONS** |
| Defendants. | ) | **AND TESTIMONY OF DR. G. WILLIAM** |
| | ) | **KENNEDY** |

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), through undersigned counsel, submits the following Memorandum in Support of its Motion For Reconsideration Or, In The Alternative, Hearing On Admissibility of Expert Opinions And Testimony of Dr. G. William Kennedy. A hearing could be scheduled prior to the June 15, 2015 trial date or a proffer could occur at the time of trial itself.

I.  **INTRODUCTION**

Hodell will readily establish liability in this matter based upon SAP's own internal email traffic which states, as just one example, "Too bad we didn't stop the implementation of Business One before it started," and "Someone has sold [Business One] to the wrong customer, which is WAY above any sane B1 sweet spot (120 users!!!)" *See* Udi Ziv email, EX. 69.2.3. Recognizing this, SAP has vigorously fought to prevent Hodell from establishing damages at trial. In fact, SAP argues that neither Dr. Kennedy nor Otto Reidl, Hodell's CEO, should be permitted to testify on certain damage components.[1] On October 13, 2014, an order was entered

---

[1] Currently, there is a "Motion to Preclude Inadmissible Lay Opinion Evidence" [ECF #304] seeking to preclude Hodell's CEO, Otto Reidl, from testifying as to *his own* damages calculations. This Motion is simply a re-hash of earlier arguments made by SAP, which were rejected by Judge Wells. [*See* Order dated Jan. 28, 2015]. As this

in favor of SAP with regard to Dr. Kennedy, excluding his testimony. [ECF #248](hereinafter the "Exclusion Order").

Dr. Kennedy's testimony should be allowed. It is based upon a sound methodology, recognized and approved as such in the Sixth Circuit, and is properly applied to the facts of this case. His testimony satisfies all the rigors of Fed.R.Evid. 702 and *Daubert*. However, SAP urged, and Judge Wells concluded, that the "before and after methodology" employed by Dr. Kennedy requires steps that simply do not exist in the authoritative literature or case law applying the methodology and which are not required for the testimony to be admissible. Specifically, the Exclusion Order erroneously concluded that Hodell's expert must point to "demand" or "lost sales" before allowing any lost profits testimony based upon the "before and after" methodology. [Exclusion Order at 6-7]. By doing so, the Exclusion Order held that the before and after methodology should not be applied in this case. This is erroneous and requires reconsideration in order to avoid clear error.

Perhaps this erroneous ruling occurred because the Court did not conduct a *Daubert* hearing, or any other hearing, prior to ruling. As this Court has recognized, "a challenge to the methodology used in any particular case is better addressed by a request for a *Daubert* hearing," and it is more appropriate for the Court to evaluate an expert's testimony once it has been proffered at the time of trial. *Caterpillar Fin., Servs. Corp. v. Firstmerit Corp.*, 2008 U.S. Dist. LEXIS 22836, *2 (N.D. Ohio Mar. 21, 2008) (Nugent, J.).

Due to the importance of Dr. Kennedy's damage testimony, Hodell requests that this Court reconsider the ruling made in the Exclusion Order and either hold a *Daubert* hearing to

---

Court is aware, it is well-established law that corporate CEO's, such as Otto Reidl, are permitted to testify as lay witnesses to the damages sustained by his Company. Fed.R.Evid. 701, *Lativafter Liquidating Trust v. Clear Channel Communications, Inc.*, 345 F. App'x 46, 51 (6th Cir. 2009). SAP's attempt to cast Mr. Reidl's testimony as an expert opinion is flawed, and shows that SAP will go to great lengths to prevent damage testimony in this case.

consider the admissibility of Dr. Kennedy's testimony or, in the alternative, permit Hodell to proffer Dr. Kennedy's testimony at the time of trial and consider the admissibility of his opinions at that time.

## II. BACKGROUND

Dr. Kennedy submitted his expert report in this matter on July 18, 2012. Dr. Kennedy's Report opined that Hodell suffered economic losses in excess of $8.2 million arising from three damages components analyzed by him:

**Number 1:** $3.24 million in losses calculated by comparing productivity during two time periods: (1) the five years preceding the failed SAP Business One implementation; and (2) the two year period of time Hodell was using SAP Business One. The loss was measured in terms of pounds of product Hodell's work force did not ship during the time it used Business One, an accepted measure as determined by the United States Department of Labor;

**Number 2:** $3.964 in losses arising from Hodell's inability to complete an acquisition that was near completion, measured in terms of the value of the business to be acquired versus what Hodell had agreed to pay for it; and

**Number 3:** $1.062 million measured in terms of Hodell's expenses to acquire SAP Business One and related costs, plus additional return on its investment based upon Hodell's cost of capital – a number reached by analyzing Hodell's borrowing interest rates from 2007 through 2009.

SAP moved to exclude Dr. Kennedy's opinions and testimony through a motion *in limine* filed February 22, 2013. On October 13, 2014, Judge Wells issued the Exclusion Order. The Court made this critical ruling with only the briefing, a declaration from Dr. Kennedy, and deposition testimony taken by SAP's counsel. The Court never heard Dr. Kennedy testify on

direct examination, fully explaining the damage calculation in a logical and cogent manner. Indeed, the Court ruled without the benefit of either a *Daubert* hearing or an oral argument. Additionally, the Court subsequently ordered that Hodell could not even proffer Dr. Kennedy's testimony at trial [ECF #290], foreclosing any opportunity for Dr. Kennedy to fully explain his expert opinion.

There are several undisputed facts about Dr. Kennedy's testimony:

- Dr. Kennedy is qualified to testify as a damages and valuation expert; this was unchallenged by SAP.

- Dr. Kennedy employed the before and after methodology to calculate Hodell's lost productivity/efficiency damages; a methodology accepted in the Sixth Circuit. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008).

- SAP admitted in its papers that it was not challenging this methodology; only its application to this case. [ECF #199, P.2, fn 1].

- Dr. Kennedy's measure for productivity and efficiency by evaluating output per hour worked (here, pounds of product shipped by hour worked) is an accepted metric adopted by the United States Bureau of Labor Statistics.

If a *Daubert* hearing is held, this Court will learn, among other items:

- Dr. Kennedy, using the before and after methodology, concluded Hodell was less efficient or productive during the damage period at issue, and properly assigned a dollar figure to that loss in productivity. Even the Exclusion Order agreed with Dr. Kennedy's conclusion that Hodell was less productive and efficient during the damage period. [Exclusion Order at 4].

- Dr. Kennedy's opinion does not rest on lost sales or orders, as SAP urges. In cases of

- business interruption and disruption, lost sales are virtually impossible to prove because of the difficulty in proving that orders "would have come in" or "should have come in" but for the defendant's conduct.

- Instead, Dr. Kennedy employed a damage calculation that focused on lost productivity or efficiency. This calculation is proper because Hodell will prove that the SAP Business One installation was a failure that prevented Hodell from properly running its business (taking, processing, and shipping orders). As a result of this implementation failure, Hodell's business was economically damaged.

- In his calculation, Dr. Kennedy properly compared productivity levels during a five-year baseline period, immediately before the two-year damage period, to the productivity levels during the two-year damage period. In performing his analysis, Dr. Kennedy determined productivity and efficiency declined during the damage period. Dr. Kennedy determined it was a statistically significant difference and he properly assigned a dollar value to the loss in productivity.

- Dr. Kennedy's calculation of equating productivity to the number of pounds of product shipped per labor hour is endorsed by the United States Department of Labor. It is also a proper number to apply to a distributor such as Hodell, a company that ships steel products such as nuts, bolts, and chains – items that have a consistent weight over time. In fact, this is a number Hodell has historically used to measure productivity.

- Contrary to the Exclusion Order's erroneous conclusion, Otto Reidl and Dr. Kennedy *will testify* that an increase or decrease in productivity has a substantial impact on profits. [Exclusion Order at 6]. It is basic accounting and economics (if not just

5

common sense) that a decrease in worker output; i.e., productivity and efficiency, will result in a decrease in profit and impact the company's bottom line.

- Further, the Exclusion Order found that while Hodell's productivity declined during the damage period, in 2008 "it experienced a record year in *gross sales*" and "Hodell's *gross profits*" for 2008 exceeded the average for the previous five years. [Exclusion Order at 6, *emphasis added*]. This conclusion misses the point. It is basic accounting that a business can still make money in a given year, but suffer from operating inefficiencies that kept it from making as much as it should. It is this decrease in *productivity* that Dr. Kennedy measured.

- Contrary to the Exclusion Order, Dr. Kennedy's calculation does not require "evidence that there was a demand for Hodell's product commensurate to the amount of product that *could have been shipped*" during the damage period. [Exclusion Order at 6]. Such an argument turns the before and after methodology on its head and is contrary to well-established law.

- Dr. Kennedy did not opine, as suggested in the Exclusion Order, that "Hodell could have shipped an additional 254,177[2] pounds of product if it had been operating at *full capacity*." [Exclusion Order at 5, *emphasis added*]. Dr. Kennedy does not assume operation at fully capacity at any point in time.

- Instead, Dr. Kennedy concluded that based upon a five-year baseline calculation, for the amount of labor effort expended, 254,177 pounds of additional product should have been shipped during September 2007 (the example month used by the Exclusion Order). The baseline itself is not calculated with Hodell operating at full capacity –

---

[2] The Exclusion Order used the month of September 2007 as an example of Dr. Kennedy's analysis. In September 2007, Hodell shipped 254,177 *less* pounds of product than it had historically shipped.

6

instead, it incorporates all fluctuations in worker performance that existed for an extensive period of time including absences, illness, down times, etc. Applying that baseline to the two-year damage period incorporates all these variations, and does not – in any manner – assume full capacity.

The Exclusion Order is the result of a fundamental failure to understand and properly analyze Dr. Kennedy's opinions. Fortunately, a ruling on a motion *in limine* is a preliminary ruling that may be reconsidered at any time, including within the context of a trial. It is Hodell's request that this Court reconsider the Exclusion Order and hold a *Daubert* hearing to address these misconceptions or, at a minimum, permit Hodell to proffer Dr. Kennedy's testimony into the record outside the presence of the jury at trial. If permitted to do so, Hodell will demonstrate that Dr. Kennedy's testimony is admissible as it satisfies the requirements of Fed.R.Evid. 702 and *Daubert*.

### III. LEGAL ANALYSIS

#### A. Standard of Review for a Motion for Reconsideration

The Sixth Circuit has held that a motion to reconsider may be treated under Fed.R.Civ.P. 59(e) as a motion to alter or amend a judgment. *See Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). Motions to reconsider may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Hodell submits that the Exclusion Order should be reconsidered to prevent a clear error of law and the ensuing manifest injustice Hodell will suffer if its damages expert is excluded from testifying at trial. Hodell submits that Dr. Kennedy's testimony is admissible, and that SAP failed to satisfy its heavy burden of demonstrating that Dr. Kennedy's testimony was clearly

7

inadmissible. *In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 822 (N.D. Ohio 2010). In the Exclusion Order, Judge Wells simply misunderstood how the "before and after" damage calculation is performed. In so doing, the Exclusion Order accepted the arguments of SAP's lawyers without the benefit of a hearing and without citing a single case or secondary authority supporting its re-writing of the before and after methodology. Unsupported arguments regarding how Dr. Kennedy ought to have calculated damages were adopted over the sworn testimony of an indisputably qualified expert witness that has applied this methodology without ever being excluded from trial.

The Exclusion Order is clear error and should be reconsidered, either through a *Daubert* hearing or by allowing Hodell to proffer Dr. Kennedy's testimony at trial.

### B. The Exclusion Order Turns The Before and After Methodology On Its Head By Requiring A Showing of A Corresponding "Demand" For The Amount Of Product That Should Have Been Shipped

All parties to this litigation agree that the before and after methodology is a reliable method for proving damages, and the United States Supreme Court as well as the Sixth Circuit have endorsed its use.[3] *See Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 260 (1946) (applying the method in federal antitrust litigation); *In re Scrap Metal*, 527 F.3d at 529-30. The methodology is sound, but Judge Wells accepted SAP's argument on how the calculation should be performed. In the Exclusion Order, the Court improperly concluded that Dr. Kennedy was required to establish a corresponding demand for the product "commensurate to the amount of product that could have been shipped." [Exclusion Order at 6]. This holding is an incorrect application of the before and after methodology as evidenced by the fact that neither the Exclusion Order nor SAP cited to a single case or any authoritative literature applying it in this

---

[3] SAP conceded in its papers that "SAP does not challenge the 'before and after method' as a general approach to quantifying damages. Rather, SAP challenges Mr. Kennedy's specific application in this case." [ECF #199, p. 2, fn 1].

8

manner.

As noted by the American Institute of Certified Public Accountants, the "Before And After" Method:

> Compares the plaintiff's performance before the event or action causing lost profits to the plaintiff's performance after that even or action. The underlying theory is that, "but for" the defendant's action, the plaintiff would have experienced the same level of revenues and profits after the event or action as the plaintiff did before that event or action.

Richard A. Pollack, *Calculating Lost Profits*, AICPA, 2006. This methodology does not require a corresponding showing of "demand" equivalent to the lost profits calculated through application of the before and after method. Logically, to do so, would eviscerate the before and after methodology altogether. If a plaintiff could prove lost customers, lost orders, and a corresponding "demand," it would never need to rely on the "before and after " method because it would just submit evidence of its lost demand into the record.

Requiring a showing of a "demand" equal to the corresponding lost profits calculated using the before and after methodology is akin to requiring that Hodell identify each and every customer that decided not to place an order. Of course, this type of evidence would be impossible to develop in most cases, and for this reason, is not required as part of a lost profit analysis using the before and after methodology.

As just one example demonstrating the Exclusion Order's flawed analysis, in a lawsuit filed by a class of gasoline mini-market franchisees, the plaintiffs claimed the gasoline purchased from defendant, ARCO, was defective and caused them to suffer lost profits. The franchisees did not point to every customer who drove away and they did not identify a "demand" for the product. However, the Court concluded they were entitled to damages for lost profits and stated:

> Thus, if prior to the manufacture of defective gasoline the plaintiffs sold 100,000 gallons per month every month and then as a result of the defective gasoline, they

9

> sold only 60,000 gallons per month every month until ARCO discontinued that gasoline, then the plaintiffs have lost the profits they would have received on 40,000 gallons per month for the three year claimed period.

*AM/PM Franchise v. Atlantic Richfield*, 584 A.2d 915, 922 (PA 1990). The Court did not require the franchisee plaintiff to establish that there was a "demand" for this gasoline. In fact, the Court was presented with the corollary to that argument and stated, "The defendant's argument that the plaintiffs sold all the gasoline they bought misses the point. While they may have sold every gallon, they sold significantly fewer gallons during the period that ARCO allegedly delivered nonconforming gasoline." *Id*.

Similarly, in *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796 (7th Cir. 2013), the Seventh Circuit Court of Appeals reversed exclusion of an expert's testimony that relied upon the before and after method. Just as Dr. Kennedy did, the expert used a benchmark period prior to the event at issue and then calculated damages by applying an estimated "growth rate" to the company's revenue. *Id.* at 802. The Seventh Circuit held that the expert's testimony was admissible and did not require the expert to prove that there was unmet customer demand sufficient to fulfill the estimated growth rate. Just as Dr. Kennedy did, the Seventh Circuit found it significant that the expert "accessed and used actual data about [the plaintiff's] past performance when he calculated the growth rate." *Id.* at 809. The Seventh Circuit found that by excluding the expert's testimony based upon questions regarding "the soundness of the factual underpinnings of his calculation," the district court "supplanted the adversarial process with its admissibility determination . . . ." *Id.* at 801.

In *B-K Cypress Log Homes, Inc. v. Auto-Owners Ins. Co.*, No. 1:09-cv-211, 2012 U.S. Dist. LEXIS 73773 (N.D. Fla. May 25, 2012), an expert used the before and after methodology to calculate damages in a manner strikingly similar to Dr. Kennedy's opinion. The expert

10

testified that his calculation "does not depend on sales loss but focuses on changes in variable costs of production and associated profit margins." *Id.* at *10. The court found that while the defendant and its expert had "criticized the application of the methodology . . . their criticisms are appropriately raised by way of cross examination" of the expert and the plaintiff's other witnesses underlying the damages calculation. "It remains within the province of the jury to consider and weigh such evidence and determine whether in fact some or all of the damages determined by Dr. Stephenson are causally connected to Auto-Owners' actions." *Id.* at *14.

So too, here. Hodell's expert was able to establish through application of the before and after methodology that Hodell's productivity suffered during the damage period equivalent to a decline of 4,266,050 in pounds shipped, which equated to revenue of $9,033,075 and lost profits of $3,239,555. [Exclusion Order at 7]. The Exclusion Order notes that the testimony shows an unspecified number of sales were lost but that "the record reveals no other demand for Hodell's product that went unmet and certainly no demand for 4.2 million pounds of product valued at $9,033,075." [*Id.*]. However, that is not the law and it is not required for the proper application of the before and after methodology. By identifying and using a proper baseline, the level of demand is incorporated into the calculation itself. In other words, Hodell's own records establish a history and level of demand – that is what is being used and applied through the five-year baseline in this case. Hodell, like the plaintiffs referenced above, should not be required to identify each and every lost sale in order to proffer its expert damages testimony on this issue. Further, while allegations of a purported lack of demand may be proper for cross-examination, this is not a basis for excluding Dr. Kennedy's opinion altogether. *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993).

### C. The Court's Exclusion Order Indicates There Was A Failure To Understand Dr. Kennedy's Opinion And A *Daubert* Hearing On The Admissibility Of Dr. Kennedy's Testimony Should Be Held

It is frequently considered to be a best practice in this Circuit to conduct a *Daubert* hearing before excluding expert testimony. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000) (holding that *Daubert* hearing should have been held prior to exclusion of expert testimony and remanding for further proceedings); *Busch v. Dyno Nobel*, 40 F. App'x 947, 961 (6th Cir. 2002) (remanding proceedings for *Daubert* hearing); *United States v. Smithers*, 212 F.3d 306, 318 (6th Cir. 2000) ("The district court should have conducted a hearing under *Daubert* and analyzed the evidence to determine whether Dr. Fulero's proffered testimony reflects scientific knowledge, and whether the testimony was relevant and would have aided the trier of fact."); *Havard v. Baxter Int'l., Inc.*, No. 1:92CV0863, 2000 U.S. Dist. LEXIS 21316, *9 (N.D. Ohio Jul. 21, 2000) (noting the Sixth Circuit "has intimated that conducting a hearing on the issue [of admitting expert testimony] is optimal"). In fact, this Court has held that the decision on admissibility of expert testimony should not be reached outside the context of proffer at time of trial or in a *Daubert* hearing. *Caterpillar Fin., Servs. Corp.*, 2008 U.S. Dist. LEXIS 22836 at *2 (Nugent, J.). That is precisely what Hodell requests – either a *Daubert* hearing or a proffer at time of trial.

Conducting a *Daubert* hearing will allow Dr. Kennedy to present his damage calculation; subject him to cross examination; and allow for full oral argument. By doing so, this Court will have had the opportunity to fully understand Dr. Kennedy's damage opinion and Dr. Kennedy can respond to any concerns the Court may have had with regard to his testimony. Further, given that the Court did not have a hearing to resolve these issues, this case is one in which the Sixth Circuit could hold, similar to *Jahn* and *Smithers*, that a *Daubert* hearing should have been

conducted prior to the exclusion of Dr. Kennedy's testimony. Hodell submits that such a hearing should be held now. Hodell was not afforded the benefit of a *Daubert* hearing and is further subject to an Order [ECF #290] precluding it from even proffering Dr. Kennedy's proposed testimony into the record at trial. Hodell believes that a *Daubert* hearing will not only allow the trial court record to be fairly developed, but will also highlight, and hopefully prevent, clear error from occurring if the Exclusion Order is left to stand without the benefit of the Court hearing Dr. Kennedy's admissible testimony.

### D. The Exclusion Order Disregarded Established Sixth Circuit Case Law In Favor Of Inapplicable Decisions From Other Circuits

The Exclusion Order also commits clear error by excluding Dr. Kennedy's testimony because he allegedly failed "to account for a lack of demand as a potential cause of the productivity decline . . . ." [Exclusion Order at 10]. A damages expert, and even an expert testifying on causation, is not required to eliminate all potential causes in order for his testimony to be admissible. By imposing this requirement, the Exclusion Order disregarded Sixth Circuit precedent directly on point established by *Jahn v. Equine Services, PSC*, 233 F.3d 382, 390 (6th Cir. 2000) (holding that not even a *causation* expert is required to eliminate all other possible causes of injury) and *S.-E. Coal Co. v. Consolidation Coal Co.*, 434 F.2d 767, 794 (6th Cir. 1970) (allegation that damages were caused by "economic factors was for the jury's consideration and determination, . . . as is the question of the credibility of the witnesses used in showing damages . . .").

Further, under established Sixth Circuit precedent, this causation argument – which requires the weighing of competing evidence submitted by SAP and Hodell – should not have even been considered by the Court. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (motions *in limine* may not be used to argue the sufficiency of evidence or the viability of

13

claims, including claims for damages).

Disregarding *Jahn*, *S.-E. Coal*, and *Louzon*, the Exclusion Order relied upon two inapplicable cases from the Seventh and Eighth Circuits that not even SAP found sufficiently applicable to cite. [Exclusion Order at 10]. Neither case has any application here.

In *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158 (7th Cir. 1987), an antitrust case, the Seventh Circuit *did not* exclude the expert's testimony. Rather, the Seventh Circuit merely remanded the case for a retrial on damages because the plaintiff had not established causation by tying its damages to the defendants' alleged anti-competitive behavior. *Id.* at 1165.

Similarly, in *Craftsman Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761 (8th Cir. 2004), the Eighth Circuit evaluated the testimony of an expert proffered to establish that the defendant's anti-competitive conduct was an "unreasonable restraint of trade" that required application of the "rule of reason" analysis unique to antitrust cases. The antitrust "rule of reason" analysis requires the expert to "incorporate all aspects of the economic reality," a standard that is not at issue here.

Simply put, *Isaksen* and *Craftsman Limousine* are inapposite and it was clear error to ignore Sixth Circuit precedent that is directly on point.[4] Hodell submits that holding a *Daubert* hearing is necessary not only to ensure the completeness of the record before this Court, but also to address the issues raised above.

---

[4] Neither case was cited by or relied upon by SAP in its briefing, and because no hearing was held, Hodell did not have an opportunity to address their applicability to the trial court. However, Hodell notes that the Southern District of Ohio rightfully rejected a similar argument based upon *Craftsman Limouosine* in *Wedgewood L.P. v. Twp. of Liberty*, 2010 U.S. Dist. LEXIS 124657, *10 (S.D. Ohio Nov. 24, 2010), noting that arguments similar to those contained in the Exclusion Order are issues that must be resolved by the jury.

14

### E. The Exclusion Order Mistakenly Held That Dr. Kennedy's Lost Opportunity Testimony Rested Upon His Lost Profit Analysis

The Exclusion Order further excluded Dr. Kennedy's second opinion measuring Hodell's losses resulting from Hodell's lost acquisition of a competing company. The Exclusion Order did not hold that any aspect of Dr. Kennedy's valuation testimony was unreliable. Instead, the Exclusion Order mistakenly held that Dr. Kennedy's valuation opinion was inadmissible solely because "it is entirely dependent upon Dr. Kennedy's inadmissible assertion that Hodell suffered" lost profits. [Exclusion Order at 13].

Again, Dr. Kennedy is a *damages expert*, not a liability expert. His opinion as to the fair market value of the target company Hodell was unable to acquire is just that – a valuation opinion. His testimony was never proffered to show *why* Hodell lost the acquisition (i.e., because of lost profits or for any other reason). He was simply calculating the target company's fair market value. If Hodell does not establish causation *at trial* through one or more fact witnesses, then Dr. Kennedy's valuation testimony may be inadmissible. However, a damages expert's testimony is not inadmissible merely because the defendant claims in a motion *in limine* that causation cannot be established. *Louzon*, *supra*.

## IV. CONCLUSION

Based upon the foregoing, Hodell requests that the Court hold a *Daubert* hearing prior to trial for the purpose of evaluating the admissibility of Dr. Kennedy's expert opinions and testimony. At a minimum, Hodell should be permitted to proffer Dr. Kennedy's testimony into the record at trial outside the jury's presence.

Dated: May 26, 2015                              Respectfully submitted,

*/s/ P. Wesley Lambert*
Christopher J. Carney (0037597)
Sharon A. Luarde (0071625)
P. Wesley Lambert (0076961)
BROUSE MCDOWELL
600 Superior Ave. E., Suite 1600
Cleveland, Ohio 44114
(216) 830-6830 phone/(216) 830-6807 fax
CCarney@brouse.com
SLuarde@brouse.com
WLambert@brouse.com
*Attorneys for Plaintiff Hodell-Natco Industries, Inc.*

[935398]