# EXHIBIT F

# In The Matter Of:

*Hodell-Natco Industries, Inc. v.*
*SAP America, Inc., et al.*

*Otto Reidl*
*Vol. 1*
*February 7, 2012*

**NEXTGEN | REPORTING**
Making Litigation Easier.   NextGenReporting.com
PHILADELPHIA | 215.944.5800   NEW YORK CITY | 646.470.3376   PHOENIX | 623.224.2760   SILICON VALLEY | 650.799.8020

*Original File Reidl, Otto - Vol. I.txt*
*Min-U-Script® with Word Index*

Case: 1:08-cv-02755-DCN  Doc #: 321-7  Filed: 06/01/15  3 of 6.  PageID #: 16247

Hodell-Natco Industries, Inc. v.　　　　　　　　　　　　　　　　　　　　　　　　Otto Reidl - Vol. 1
SAP America, Inc., et al.　　　　　　　　　　　　　　　　　　　　　　　　　　　February 7, 2012

Page 73

1  Q. If as of December 23rd, 2005,
2  Hodell believed that LSi was the authorized
3  agent of SAP, why would Hodell sign a license
4  agreement on December 23rd, 2005, with
5  language indicating that LSi is not the agent
6  of SAP?
7      MR. LAMBERT: I'm going to object. You
8  can ask that of Kevin, because we're getting
9  into a little more of the details surrounding
10 the execution of this agreement, and we'll let
11 you ask Kevin all about that.
12     BY MR. STAR:
13 Q. Okay. Sir, did you personally
14 have any involvement with reviewing and
15 executing the -- the license agreement with
16 SAP?
17 A. I read it, along with Kevin.
18 Q. Prior to Kevin signing it?
19 A. Correct.
20 Q. Okay. When do you recall reading
21 it prior to his signing?
22 A. Either the day he signed it or
23 shortly before.
24 Q. Okay. So you recall being aware,
25 before Kevin signed this document on behalf of

Page 74

1  Hodell, that it contained the language in
2  Section 4.1, correct?
3  A. I'm not certain that the full
4  brunt of that entered my mind.
5  Q. Okay. My question is a little
6  bit different. Let me ask it in a -- in a
7  different way though. Prior to Kevin signing
8  this document, did you read the language in
9  Section 4.1?
10 A. I read the document.
11 Q. Okay. And that would have
12 included 4.1?
13 A. Correct.
14     MR. LAMBERT: Objection.
15     BY MR. STAR:
16 Q. Yes? Yes?
17 A. Yes.
18 Q. Okay. Did -- did reading Section
19 4.1 give you or Hodell any cause for concern?
20     MR. LAMBERT: I'm going to object.
21 Outside the scope.
22     MR. STAR: Well, let me be clear. I
23 thought what we had discussed before the
24 deposition is that he'd also be testifying to
25 things that are within his personal knowledge.

Page 75

1      MR. LAMBERT: I was going to go off the
2  record to discuss that. That's fine. I think if
3  there is a way that we can -- I don't have a
4  problem with you asking Otto that as an individual
5  testifying on his own behalf, as long as it's
6  clear somehow that it's not -- he's not the
7  designee of the Plaintiff to testify on that
8  subject, that you can ask him that.
9      MR. STAR: Okay.
10     MR. LAMBERT: I don't know how we can
11 logistically accomplish that, if there is a way.
12     MR. STAR: I think practically speaking,
13 it makes little difference, because he's the CEO,
14 and we're talking about his personal knowledge,
15 but let's -- let's go through it.
16     BY MR. STAR:
17 Q. Let me just go back to where we
18 were. Your testimony was that prior to
19 Kevin's signing of this document of
20 December 23rd, 2005, you personally read the
21 entire license agreement, correct?
22 A. Correct.
23 Q. And then you would have also read
24 Section 4.1 that we have been through here?
25 A. That is correct.

Page 76

1  Q. Okay. My question then was, did
2  the language in Section 4.1 give you any cause
3  for concern when you read it, before -- before
4  Kevin signed it, signed the license agreement?
5  A. Yes.
6  Q. What concerns did it give you?
7  A. Am I asking -- answering as an
8  individual or CEO?
9      MR. LAMBERT: As an individual. Well,
10 and as a CEO.
11     THE WITNESS: This was a way for SAP to
12 limit their liability in a situation that
13 wasn't a good one possibly.
14     BY MR. STAR:
15 Q. Okay. Any other concerns that
16 were raised when you read Section 4.1 before
17 Kevin signed the document?
18 A. Yes. All of a sudden, out of the
19 blue, comes a license agreement, when three
20 years, two years, or a year earlier, we were
21 in the process of acquiring 80 licenses.
22 Q. What do you mean out of the blue?
23 A. We were never told that -- that
24 we had to sign this agreement.
25 Q. Never told by whom?

Case: 1:08-cv-02755-DCN Doc #: 321-7 Filed: 06/01/15 4 of 6. PageID #: 16248

Hodell-Natco Industries, Inc. v.
SAP America, Inc., et al.
Otto Reidl - Vol. 1
February 7, 2012

Page 221

1  the document if he thought he shouldn't have,
2  right?
3  A.  Right.
4  Q.  Okay.  I'm trying to find out
5  from you what the Hodell state of mind was at
6  the time --
7  A.  We agonized --
8  Q.  -- you signed this document?
9  A.  -- over it.  That's the best I
10 can say.
11 Q.  What do you mean agonized over
12 it?
13    MR. LAMBERT: Again, if you're asking
14 what the Hodell state of mind is at the time
15 this document was executed, that's the
16 belief --
17    MR. STAR: Fine.  He can testify in his
18 individual capacity.
19    BY MR. STAR:
20 Q.  What -- what do you mean you
21 agonized over it?  You mean you agonized over
22 signing this license agreement?
23 A.  Yes.
24 Q.  Why?
25 A.  Because of the burden it would

Page 222

1  put on us if this failed.
2  Q.  Okay.  What burden did you think
3  would be put on you if it failed?
4  A.  For the 40 licenses that we had
5  to add in order to -- in order to get those,
6  we signed this, we would have no protection.
7  Q.  Where in this document does it
8  say anything about 40 licenses in this license
9  agreement, sir?
10 A.  It doesn't, sir.  We have an
11 earlier agreement where we purchased 80
12 licenses.
13 Q.  And you're referring to the
14 development agreement, right?
15 A.  I'm referring to our purchase
16 order and the invoice for the 80 licenses.
17 Q.  Are you aware that the court in
18 this case has already held as a matter of law
19 that neither SAP America, nor SAP AG, was
20 actually a party to the development agreement
21 or your purchase order; you aware of that?
22    MR. LAMBERT: Objection.
23    THE WITNESS: Yes.
24    BY MR. STAR:
25 Q.  You're also aware that the court

Page 223

1  in this case has already held as a matter of
2  law that SAP AG was not a party to the license
3  agreement signed on December 23rd, 2005,
4  correct?
5     MR. LAMBERT: Objection.
6     THE WITNESS: Yep.
7     BY MR. STAR:
8  Q.  Okay.  So you're aware that the
9  court in this case has already concluded that
10 the only contract, written contract, between
11 an SAP Defendant and Hodell is the license
12 agreement which is between Hodell and SAP
13 America, correct?
14 A.  Correct.
15 Q.  Okay.  And you're also aware that
16 the only way in which Hodell was given the
17 right to use any SAP software, was by signing
18 this license agreement with SAP directly,
19 correct?
20    MR. LAMBERT: Objection.
21    BY MR. STAR:
22 Q.  You can answer the question.
23 A.  Repeat that -- repeat the
24 question.
25    MR. LAMBERT: If it's the same

Page 224

1  question, this is Otto testifying --
2     MR. STAR: Fine.
3     MR. LAMBERT: -- individually.
4     MR. STAR: That's fine.
5     BY MR. STAR:
6  Q.  Sir, you -- you're personally
7  aware that the only way in which Hodell had
8  any right at all to use any -- any SAP
9  software was by signing this license agreement
10 with SAP America, correct?
11    MR. LAMBERT: Objection.
12    THE WITNESS: I'm not an attorney, but
13 I suspect that answer -- that is correct.
14    BY MR. STAR:
15 Q.  Okay.  In December of 2005, did
16 Hodell have legal representation?  Was there
17 an attorney that you used regularly?
18 A.  Please repeat that question.
19 Q.  In December of 2005, did Hodell
20 have legal representation?
21 A.  On whether we signed this
22 contract or not?
23 Q.  No, in general.
24 A.  Yes, we did.
25 Q.  Who was your attorney in December

Page 229

1  information. I mean, he didn't -- he's
2  testified he didn't go to the lawyer that he
3  had for 20 years, and I'm asking -- and yet he
4  agonized over this document, and I'm asking
5  him why he didn't go to his lawyer.
6      MR. LAMBERT: Again, first of all, Otto
7  isn't the one that signed this document.
8  Kevin is. If you want to ask Kevin, that's
9  fine.
10     MR. STAR: Well, I will also ask Kevin
11 the question, and -- but Otto has testified
12 here today that he reviewed this document in
13 detail, and that his son would not have signed
14 this document if he didn't approve it, and
15 that they agonized over the document.
16     BY MR. STAR:
17 Q. Sir, given your testimony that
18 you reviewed this document before it was
19 signed by your son, that you agonized over the
20 document, and you had some concerns, why
21 didn't you go to Mr. Kratus or somebody else
22 in his firm to review it?
23 A. Two reasons. Number one, we both
24 speak English, we can read, and we were
25 dealing with a worldwide organization that, in

Page 230

1  our view, could be trusted at the time.
2  Q. Okay. Is that it?
3  A. Yeah.
4  Q. Okay. So you understood what you
5  were signing then? It was in plain English,
6  as you say, right?
7  A. (Witness nods head.) Yes.
8  Q. Okay. Including paragraph 11.9,
9  which says that this is the entire agreement,
10 and that all previous representations,
11 discussions and writings are merged in and
12 superseded by this agreement, correct?
13 A. I already answered that question.
14 Q. Okay. We'll let you stand by
15 your prior answer.
16 Your third cause of action here, sir, is
17 for breach of contract. And in the complaint, you
18 allege that SAP had breached both the development
19 agreement and the license agreement. As we've
20 already established, the only remaining claim
21 against SAP for breach of contract is a claim that
22 SAP America breached a warranty obligation in the
23 license agreement. You understand that?
24     MR. LAMBERT: Objection.
25     THE WITNESS: I'm not an attorney.

Page 231

1      BY MR. STAR:
2  Q. Okay. But you're aware that the
3  court dismissed any claim against SAP America
4  or SAP AG that it had breached the development
5  agreement, correct?
6  A. Correct.
7  Q. And you're aware that the court
8  dismissed any claim against SAP AG that it
9  breached the license agreement, correct?
10 A. I don't recall.
11 Q. Paragraph 84 of the complaint
12 states that in the event Hodell-Natco should
13 be deemed bound to the terms of the SAP
14 Business One software license agreement for
15 the 2005 purchase of 40 CMR -- pardon me --
16 CRM user license -- licenses -- the Plaintiff
17 alleges that the warranty set forth in
18 paragraph 7.1 was breached, as the software
19 did not substantially conform to the
20 functional specifications contained in the
21 documentation.
22 What specifically does Hodell contend
23 about the SAP Business One software that it did
24 not substantially conform to the functional
25 specifications contained in the documentation?

Page 232

1      MR. LAMBERT: Again, that's going to be
2  Kevin's area of testimony.
3      BY MR. STAR:
4  Q. Okay. Do you have any
5  understanding in your individual capacity as
6  to what is -- what you mean by the
7  "documentation" referenced in paragraph 84 of
8  the complaint?
9  A. Among various documents, the
10 elements that talked about productivity
11 improvement, efficiencies, reduction of
12 cost --
13 Q. Okay.
14 A. -- speed of access to data.
15 Q. If you look at the license
16 agreement for me, sir, again, Exhibit G.
17 Exhibit G, sir. Paragraph 1.2 is titled
18 Documentation. It says it means SAP's
19 documentation, which is delivered to licensee,
20 which is Hodell, under this agreement. Do you
21 see that?
22 A. Yes.
23 Q. Okay. Are you on paragraph 1.2,
24 sir?
25 A. 7.1.

Page 237

1  second.
2  (Whereupon, an off-the-record discussion
3  was held at 4:13.)
4  (Whereupon, the deposition was continued
5  until the following day.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 238

1              CERTIFICATE OF THE REPORTER
2        I, Angela A. O'Neill, a Registered Professional
3  Reporter and Notary Public, authorized to administer oaths and to
4  take and certify depositions, do hereby certify that the
5  above-named witness was by me, before the giving of their
6  deposition, first duly sworn to testify the truth, the whole
7  truth, and nothing but the truth to questions propounded at the
8  taking of the foregoing deposition in a cause now pending and
9  undetermined in said court.
10       I further certify that the deposition above-set forth
11  was reduced to writing by me by means of machine shorthand and was
12  later transcribed from my original shorthand notes; that this is a
13  true record of the testimony given by the witness; and that said
14  deposition was taken at the aforementioned time, date, and place,
15  pursuant to notice or stipulations of counsel.
16       IN WITNESS WHEREOF, I have set my hand and seal this
17  14th day of February, 2012.
18                    *Angela A. O'Neill*
19       _____
           Angela A. O'Neill, RPR
20         My Commission Expires:  Aug. 10, 2012
21
22
23
24
25