IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAP AMERICA, INC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:08 CV 2755<br><br>JUDGE NUGENT<br><br>**MOTION FOR RECONSIDERATION**<br>**OF THE VIABILITY OF PLAINTIFF'S**<br>**TORT CLAIMS** |
|---|---|---|

Defendants SAP America, Inc. and SAP AG (collectively "SAP") hereby request that the Court reconsider prior rulings which have thus far erroneously permitted Plaintiff to proceed with tort claims for fraudulent inducement, fraud, and negligent misrepresentation.

The reasons supporting this Motion are set forth in SAP's Memorandum in Support, incorporated herein by reference.

                                                        Respectfully submitted,

                                                        /s/ Gregory J. Star
                                                        Michael J. Miller (admitted *pro hac vice*)
                                                        Gregory J. Star (admitted *pro hac vice*)
                                                        Drinker Biddle & Reath LLP
                                                        One Logan Square, Suite 2000
                                                        Philadelphia, PA 19103-6996
                                                       Telephone:  (215) 988-2700
                                                       Facsimile:  (215) 988-2757
                                                       *Attorneys for SAP America, Inc. and SAP AG*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| Plaintiff, | ) ) ) | JUDGE NUGENT |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW OF SAP AMERICA, INC. AND SAP AG
IN SUPPORT OF MOTION FOR RECONSIDERATION
OF THE VIABILITY OF PLAINTIFF'S TORT CLAIMS**

Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), through undersigned counsel, hereby request that the Court reconsider prior rulings concerning Hodell's claims of fraudulent inducement, fraud, and negligent misrepresentation, as alleged in Hodell's First Amended Complaint.[1]  *See* ECF#26 (First, Second, and Third causes of action).

**I.      INTRODUCTION**

The centerpiece of the dispute between Hodell and SAP is a December 23, 2005 License Agreement controlled by the UCC.  Through that agreement, SAP licensed Hodell a number of Business One user licenses.  Hodell was then granted specific rights with respect to the number of licenses it acquired, and the parties agreed on a series of commercial terms which would govern their relationship.  This included an express warranty, limitations of liability, and intellectual property and other rights.  *See* Exhibit A, License Agreement.

Hodell's entire case against SAP has been built around avoiding the License Agreement. Hodell has attempted to do this with a number of tort claims.  Although Hodell has so far been

---

[1] SAP is filing a separate motion addressing additional tort theories of fraudulent concealment and post-contractual fraud that Hodell did not include in its pleadings but will attempt to present at trial.

successful in avoiding dismissal of its claims for fraud, fraudulent inducement, and negligent misrepresentation, the Court has unfortunately failed to accurately apply controlling Ohio law to the undisputed facts of record. As explained below, this Court should now reconsider the prior rulings in this case concerning the viability of Hodell's tort claims against the SAP defendants and dismiss those claims as a matter of law. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (clear error of law warrants reconsideration).

## II.   ARGUMENT

### A.   The Economic Loss Rule At Least Precludes Hodell's Fraud Claim.

The economic loss rule precludes a plaintiff from recovering economic losses in tort that arise due to "a breach of duties assumed only by agreement." *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). Early on in this case, the Court correctly held that with respect to all of its tort claims (which originally included claims of negligence, fraud, fraudulent inducement, and negligent misrepresentation), Hodell was relying upon identical allegations that Business One could not support the number of users Hodell licensed from SAP. ECF No. 50 at 17-18.

There is no dispute that Hodell's supposed tort damages are identical to the damages it seeks on its breach of warranty claim against SAP. Indeed, the Court correctly concluded that all of Hodell's purported damages were economic; Hodell has never articulated a theory of non-economic damages; and Hodell has never identified any tort damages that might be independent from those it seeks for breach of contract. The Court also correctly concluded that Hodell had failed to allege any breach of duty independent of the License Agreement between Hodell and SAP, holding "Hodell has failed to allege breach of any duty independent of contract and the economic loss rule clearly bars simple negligence actions where, as here, no non-economic damages have been alleged." ECF No. 50 at 21; ECF No. 61 at 10.

2

But the Court failed to dismiss Hodell's other tort claims (for fraud, fraudulent inducement, and negligent misrepresentation), reasoning that the economic loss rule merely prohibits simple negligence claims. ECF No. 50 at 18-22. However, at the very least, the Court should have also applied the economic loss rule to dismiss Hodell's fraud claim. Indeed, although SAP has never understood the difference, Hodell has maintained that its fraud claim is distinct from its fraudulent inducement claim and is apparently based on a different duty. *See* ECF No. 234 at 8 (Hodell arguing that its fraud and fraudulent inducement claims are distinct).

In considering the application of the economic loss rule, the Court previously relied only on cases dealing with whether fraudulent inducement and negligent misrepresentation claims may survive the economic loss rule. *See* ECF No. 50 at 20-21(citing *Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874 (N.D. Ohio 2005) (holding economic loss rule may not apply to fraudulent inducement because such a claim may arise from a non-contractual duty)); *see also* ECF No. 61 at 10-11 (same). For example, the Court relied on *Marine Direct v. Dougherty Marine, Inc.*, No. 2:06-cv-0100, 2007 U.S. Dist. LEXIS 1414 (S.D. Ohio Jan. 8, 2007), where the plaintiff asserted a claim of "fraud." The *Marine Direct* court held that since the parties were in privity, the plaintiff's tort claim seeking payment of contractually-based commissions would be barred by the economic loss rule, but then construed the plaintiff's claim as one for fraudulent inducement, not just fraud, and allowed the claim to survive.

Moreover, this Court has held that the economic loss rule *does bar fraud claims*. *See Parma Cmty. Gen. Hosp. v. Premier Anesthesia of Parma*, No. 1:09-cv-325, 2011 U.S. Dist. LEXIS 11035, at *13 (N.D. Ohio Feb. 4, 2011) (Nugent, J.) ("[T]he 'economic loss' doctrine bars Parma from pursuing damages through a cause of action for fraud."). Likewise, other courts have held that the economic loss rule bars fraud claims (though not necessarily claims for

3

fraudulent inducement or negligent misrepresentation). *Bush Truck Leasing, Inc. v. Dynamex, Inc.*, No. 1:09-cv-354, 2011 U.S. Dist. LEXIS 1720 (S.D. Ohio Jan. 7, 2011) (applying economic loss rule to pure fraud claim but not fraudulent inducement claim).

Accordingly, the Court previously erred in refusing to dismiss Hodell's fraud claim under the economic loss rule because that claim (according to Hodell) is distinct from its fraudulent inducement claim. The Court's prior holding that "Hodell has failed to allege breach of any duty independent of contract" applied equally to Hodell's simple negligence and fraud claims. ECF No. 50 at 21; ECF No. 61 at 10. Therefore, Hodell's fraud claim should be dismissed.

**B.     All of Hodell's Tort Claims Otherwise Fail Under Controlling Ohio Law.**

In any event, *all* of Hodell's tort claims should have been dismissed under controlling Ohio law because (a) Hodell has ultimately been unable to point to a promise or obligation that arose outside of the License Agreement; and (b) Hodell's purported damages are identical to those it seeks for breach of contract.

Ohio law provides that "'the existence of a contract action excludes the opportunity to present the same case as a tort claim.'" *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). Ohio law includes *two rules* that must each be met in order to pursue tort claims in the face of a contract.

*First*, a tort claim must be based on a breach of "a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp.*, 684 N.E.2d at 1270 (citing *Battista v. Leb. Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976)). *Second*, "[i]n addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the

4

breach of the contract." *Textron Fin. Corp.*, 684 N.E.2d at 1271 (citing *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 63 (S.D. Ohio 1986)); *see also Parma Cmty. Gen. Hosp.*, 2011 U.S. Dist. LEXIS 11035, at*9-13 ("[C]laims for fraud are not permitted when the damages resulting from the alleged fraud are not distinct from the damages available under a breach of contract claim.").

These two rules apply to all tort claims – including claims for fraud, fraudulent inducement, and negligent misrepresentation. *See Textron Fin. Corp.*, 684 N.E.2d at 1270-72 (applying rules to hold that fraud and negligent misrepresentation claims should have been dismissed by trial court); *Phelps v. MacConnell*, No. 3:12-cv-344, 2014 U.S. Dist. LEXIS 105472, at *20-28 (S.D. Ohio Aug. 1, 2014) (applying rules to dismiss a variety of tort claims including fraudulent inducement and negligent misrepresentation).

Setting aside for the moment whether Hodell's tort claims are based on a duty independent from the License Agreement, the Court should have previously dismissed all of Hodell's tort claims because Hodell has failed to come forth with any actual tort-based damages that are in addition to those attributable to any alleged breach of contract. Indeed, in its operative First Amended Complaint, each of Hodell's claims request identical damages of "at least $1.5 million." *See* ECF No. 26 ¶ 1 (generally alleging damages applicable to all causes of action); ¶¶ 65, 73, 86, 90, and 95 (repeating identical boiler-plate damages allegations for each cause of action); p. 26 (requesting identical damages for each cause of action). And Hodell has never changed this or articulated some difference between its contract and tort damages. This alone is dispositive of Hodell's remaining tort claims, and those claims must now be dismissed. *See Textron Fin. Corp.*, 684 N.E.2d at 1270-72; *see also Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-cv-36, 2014 U.S. Dist. LEXIS 137329, at *21-22 (S.D. Ohio Sept. 29, 2014) (in

the context of a software license agreement, dismissing plaintiff's fraud and misrepresentation claims because the plaintiff did "not identify any evidence of 'actual damages attributable to the wrongful acts of the [Defendant] which are in addition to those attributable to the breach of contract.'" (citation omitted)); *Phelps*, 2014 U.S. Dist. LEXIS 105472, at *20-28 (dismissing variety of tort claims including fraudulent inducement and negligent misrepresentation because there was no "plausible conclusion that [plaintiff] suffered actual damages beyond the financial harm arising from Defendants' alleged breach of contract."); *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834 (S.D. Ohio 2013) (dismissing gross negligence claim because it fails to allege actual damages beyond the loss attributable to defendant's alleged breach of contract, and holding that request for punitive damages does not cure this failure); *B&P Co. v. TLK Fusion Entm't, LLC*, No. 3:11-cv-276, 2013 U.S. Dist. LEXIS 26131, at *29 (S.D. Ohio Feb. 26, 2013) (dismissing fraudulent misrepresentation and negligent misrepresentation claims where damages sought were "virtually identical" to alleged breach of contract damages); *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, No. 5:08-cv-1342, 2009 U.S. Dist. LEXIS 65867 (N.D. Ohio July 27, 2009) (granting summary judgment on fraudulent inducement claim because plaintiff failed to establish a genuine issue with respect to damages existing in addition to those attributable to a breach of contract).

On top of this, Hodell's tort claims simply recast purely contractual promises and obligations into tort claims, which is an independent reason why those claims should have been dismissed. It is undisputed that SAP and Hodell are commercial parties to a software License Agreement controlled by the UCC. *See* License Agreement. Hodell has admitted that it had no interaction with SAP prior to signing that License Agreement in December 2005. In short, there was no relationship between SAP and Hodell. Hodell has admitted that whatever relationship

did exist was purely a business-to-business, arm's length relationship that did *not* involve any special trust or confidence. *See* Exhibit B, Tr. O. Reidl Dep. at 236:8-24.[2]

It is also undisputed that, consistent with the UCC, the License Agreement clearly articulated the potential liabilities and allocated the losses that could exist by and between Hodell and SAP. *See Loyd v. Huntington Nat'l Bank*, No. 1:08-cv-2301, 2009 U.S. Dist. LEXIS 51858, at *19 (N.D. Ohio June 18, 2009) ("The UCC has created a statutory scheme to assess liability and otherwise allocate losses arising in the commercial context."). For example, SAP and Hodell agreed on an express limited warranty and further agreed that SAP had disclaimed all other warranties, express or implied, including any implied warranties of merchantability or fitness for a particular purpose. License Agreement §§ 7.1, 7.2. Hodell also agreed to an express limitation of liability provision which, among other things, disclaimed damages for lost profits and other special, incidental, or consequential damages. *Id*. § 9.3. And Hodell agreed that the License Agreement constituted its entire agreement with SAP and that "all previous representations, discussions, and writings are merged in, and superseded by, this Agreement." *Id*. § 11.9.

Although Hodell has alleged that SAP made a promise outside of the License Agreement about the number of users Business One could support, the reality is that the License Agreement

---

[2] The admitted lack of any relationship, let alone a special relationship, is also dispositive of Hodell's negligent misrepresentation claim. *See Cuyahoga Metro. Hous. Auth. v. 10-8 Sys*., No. 1:05-cv-0980, 2006 U.S. Dist. LEXIS 8340, at *13-14 (N.D. Ohio Mar. 2, 2006) (Nugent, J.) ("[Plaintiff's] Amended Complaint fails to allege that a special relationship existed between it and ETEC. As such, its claim for negligent misrepresentation must be dismissed." (citing *Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (noting that a "core requirement" of negligent misrepresentation under Ohio law is that a special relationship exist between the parties))); *see also Dawes v. BAC Home Loans Servicing LP*, No. 1:10-cv-02637, 2011 U.S. Dist. LEXIS 66507, *19-20 (N.D. Ohio Apr. 27, 2011) (Report and Recommendation) (White, J.), *adopted by* 2011 WL 2489895 (N.D. Ohio June 22, 2011) (Nugent, J.). The Court previously erred in allowing Hodell's negligent misrepresentation claim to proceed, and it should be dismissed now both because it fails to clear the hurdles set forth by *Textron* and because there was never a basis for this claim due to the lack of anything but, at most, a contractual relationship between SAP and Hodell. *See Picker Int'l*, 6 F. Supp. 2d at 689 (an ordinary contractual relationship is not enough to support a negligent misrepresentation claim).

expressly applies to the particular number of user licenses Hodell acquired and thus contains the exclusive obligation SAP owed concerning the number of users.  More specifically, as SAP previously asserted on summary judgment, the License Agreement expressly defines the "Software" as follows:

> 1.10    "Software" means (i) the SAP Business One software product, developed by or for SAP and/or SAP AG and delivered to Licensee [i.e., Hodell] hereunder ***pursuant to the order for the Software (including without limitation present and future orders)*** placed by [Hodell] or on its behalf by an SAP Reseller . . . ."

*See* License Agreement § 1.10 (emphasis added); *see also* ECF No. 110-1 at 12.

It is also undisputed that a year prior to the License Agreement, Hodell entered into a December 24, 2004 Development Agreement with "The IBIS Group Inc., a wholly owned company of LSi-Lowery Systems, Inc. and LSi-Lowery Systems Inc. (LSi)."  Exhibit C, Trial Exhibit 291.  The Development Agreement expressly provided that Hodell would eventually purchase 80 Business One user licenses and that IBIS/LSi would *order* these Business One user licenses from SAP.  *See id.* (providing that Hodell would "purchase . . . 80 user licenses of SAP Business One Software" and that IBIS/LSi will "order[] the software from SAP . . . .").

It is undisputed that a year later, on December 22, 2005, IBIS/LSi submitted an order to SAP for 80 Business One user licenses.  Exhibit D, Trial Exhibit 138.  One day later – December 23, 2005 – Hodell and SAP entered into the License Agreement.  And it is undisputed that no prior order had ever been placed with SAP regarding Hodell, and that the 80 Business One user licenses were not delivered to Hodell until after SAP received the actual order for these licenses and after the License Agreement was signed.  *See, e.g.*, Exhibit E, Tr. K. Reidl at 251:5-7.

Despite this, Judge Wells previously failed to recognize that any promise or duty relating the number of users was actually covered by the License Agreement.  In addition to overlooking

8

the definition of "Software," which incorporates the number of users actually licensed pursuant to the order SAP received on December 22, 2005, Judge Wells failed to consider the fact that the License Agreement expressly defines "Named Users" as "any combination of users listed by permitted functionality and any other SAP-required information and licensed by SAP to [Hodell] under this Agreement *pursuant to the order* for the Software placed by [Hodell] or on its behalf by an SAP Reseller," and the fact that throughout the License Agreement, the Software is consistently described in terms of the number of actual "Named User" licenses Hodell acquired "***pursuant to the order for the Software (including without limitation present and future orders)***" placed with SAP.  License Agreement, §§ 1.6, 1.10 (emphasis added).

For example, the License Agreement provides that "[e]ach user accessing the Software must be a ***Named User*** and must limit access to those functions for which SAP has granted the specific user license ***pursuant to the official order form*** for the Software."  *Id*. at § 2.1(a) (emphasis added).  Delivery of the Software was even defined by specific reference to the "order form" submitted to SAP.  *See id*. at § 3 ("DELIVERY.  So long as licensee makes payment in accordance with Section 4, the licensed Software in machine-readable formal, and the Documentation, shall be delivered ***as specified in the authorized order form*** submitted by Licensee to SAP or the SAP Reseller ("Delivery")).  And, of course, the warranty to which SAP and Hodell agreed was that the "Software [as already defined in terms of the actual order placed with SAP] will substantially conform to the functional specifications contained in the Documentation for six months following delivery [which was also defined in terms of the actual order placed with SAP]."  *Id*. at § 7.1.

It is undisputed that SAP received an order for 80 Business One user licenses on December 22, 2005.  *See* Trial Exhibit 138.  This and any subsequent orders were expressly

9

incorporated into the License Agreement, and therefore any promise or representation about the actual number of user licenses Hodell acquired is covered by the License Agreement. Thus, any duty SAP owed with respect to the number of users actually licensed arises solely from the License Agreement, and cannot support a separate tort claim. At the very least, this would preclude Hodell from pursuing a tort claim based on promises about the actual number of users Hodell licensed.[3]

Hodell should not be able to avoid this conclusion or expand its claims by simply alleging that it was given other promises about Business One. Hodell's theory has been that in addition to promises about the actual number of users it did license, it also was told that Business One could support much higher user counts (of between 300 and 500 users) and that this promise was therefore independent of SAP's contractual promises and duties. But it is undisputed that Hodell never actually licensed 300 or 500 users (either for Business One or with its current software provider), and allowing Hodell to pursue tort claims on such a theory would require that the Court ignore the actual contractual promises and obligations the parties made, and would contradict well-settled Ohio law requiring that a tort claim be based on a duty that would exist even in the absence of a contract. *See, e.g.*, *Textron Fin. Corp.*, 684 N.E.2d at 1270-72. But the Court need not grapple with this because it is undeniable that Hodell's supposed tort damages are identical to its alleged breach of contract damages, and thus must be dismissed. *Id*.

---

[3] Hodell contends that it acquired 40 additional limited Business One user licenses, called CRM licenses, for a total of 120 Business One licenses. There is no record of an order form for these 40 licenses, but giving Hodell the benefit of the doubt that 120 licenses were actually ordered, there can be no dispute that the License Agreement incorporates all 120 licenses and thus covers all duties and promises with respect to the licenses Hodell actually acquired.

10

### III. CONCLUSION

Accordingly, the Court should now hold that Hodell's tort claims fail as a matter of law. Hodell's fraud claim fails under the economic loss rule, and *all* of Hodell's tort claims – for fraud, fraudulent inducement, and negligent misrepresentation – further fail because Hodell is simply recasting contractual promises and duties as tort claims and, in any event, Hodell has no tort damages in addition to those it seeks for breach of contract.

Respectfully submitted,

/s/ Gregory J. Star
Michael J. Miller (admitted *pro hac vice*)
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorneys for SAP America, Inc. and SAP AG*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2015, a copy of the foregoing Motion for Reconsideration of the Viability of Plaintiff's Tort Claims, and supporting memorandum of law and exhibits, was filed electronically and served.

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)