IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| --- | --- | --- |
| Plaintiff, | ) ) ) | JUDGE NUGENT |
| v. | ) ) | **MOTION FOR RECONSIDERATION OF SAP'S MOTION FOR SUMMARY** |
| SAP AMERICA, INC., et al. | ) ) | **JUDGMENT ON THE ISSUE OF AGENCY** |
| Defendants. | ) ) ) | |

Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), through undersigned counsel, hereby request that the Court enter an Order, in the form of the Proposed Order attached hereto, granting SAP's Motion for Reconsideration of SAP's Motion for Summary Judgment on the Issue of Agency.

The reasons supporting this Motion are set forth in SAP's Memorandum of Law, incorporated herein by reference.

        Respectfully submitted,

        /s/ Gregory J. Star
        Michael J. Miller (admitted *pro hac vice*)
        Gregory J. Star (admitted *pro hac vice*)
        Drinker Biddle & Reath LLP
        One Logan Square, Suite 2000
        Philadelphia, PA 19103-6996
        Telephone:  (215) 988-2700
        Facsimile:  (215) 988-2757
        *Attorneys for SAP America, Inc. and SAP AG*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755-DCN |
|---|---|---|
| Plaintiff, | ) ) ) | JUDGE NUGENT |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF SAP'S MOTION FOR SUMMARY JUDGMENT**
<u>**ON THE ISSUE OF AGENCY**</u>

Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), through undersigned counsel, hereby submit this Memorandum of Law in Support of SAP's Motion for Reconsideration of SAP's Motion for Summary Judgment on the Issue of Agency.

**I.      INTRODUCTION**

Hodell's tort claims against SAP are based on alleged pre-contractual misrepresentations about SAP's Business One software.  Hodell concedes that it did not have any direct contact with SAP until after its contract with SAP was executed and thus focuses its energy on proving that SAP is vicariously liable for IBIS/LSi's alleged misrepresentations on a theory of agency.

Two contracts should preclude Hodell's agency arguments.  First, the reseller agreement governing IBIS/LSi's and SAP's relationship clearly and unambiguously states that IBIS/LSi was an independent contractor; that IBIS/LSi was not SAP's agent; and that IBIS/LSi was not authorized to legally bind SAP in any way, including by way of representations or warranties about the software.  Second, the license agreement governing Hodell's and SAP's relationship also clearly and unambiguously reflects Hodell's acknowledgment and agreement that LSI/IBIS was an independent company; IBIS/LSi was not SAP's agent, and IBIS/LSi had no authority to make representations on behalf of, or otherwise bind, SAP.

The Court previously adopted – over SAP's objection and without explanation – the magistrate's finding that even though IBIS/LSi lacked actual authority, an agency relationship could still be implied because there was no indication that Hodell was aware of the nature of SAP's relationship with IBIS/LSi.  This was a clear error of law because the Court failed to consider Hodell's own contractual agency disclaimer.  Indeed, it is beyond peradventure that a party simply cannot invoke the benefits of an equitably implied agency relationship where that

party ***actually knows and agrees*** that that the alleged agent is an independent contractor with no actual authority to bind by way of representations or otherwise.

Hodell admits that its CEO and President both carefully reviewed the license agreement containing the agency disclaimer prior to signature and understood that it plainly operated to limit SAP's liability. It would be manifestly unjust to allow a sophisticated commercial party like Hodell to walk away from the clear and unambiguous terms of its fully integrated commercial contract simply because it now finds them inconvenient. And of course correcting this clearly erroneous ruling will promote judicial economy by focusing the upcoming trial on colorable legal theories that are at least arguably supported by the record and applicable law.

## II.     BACKGROUND

### A.     Material Facts

On December 19, 2003, SAP and LSi entered into the "SAP Business One Software Marketing and Distribution Agreement" (the "Reseller Agreement"). Exhibit A, Trial Exhibit 30. Among other things, the Reseller Agreement granted LSi the non-exclusive right to market and distribute Business One software (and related documentation) and to provide related services such as software installation, testing, and/or maintenance to prospective and current customers in the United States. *Id.* § 2.1(a); *see id.* §§ 1.4, 1.7, 1.13, 1.15, 1.19, 1.22 (defining terms).

The Reseller Agreement expressly defined the scope of the relationship between SAP and LSi:

- "Relationship. ***Reseller is an independent contractor and is not an agent***, employee, or legal representative of SAP. Reseller expressly acknowledges that it ***has no power or authority*** to accept any order for SAP, or ***to make guarantees or warranties concerning the Software*** or the delivery thereof, or to make any commitment for SAP ***or to obligate SAP in any respect whatsoever***. . . . This Agreement ***shall not be construed as creating a*** partnership, joint venture, ***agency relationship***, or granting a franchise under any applicable laws." *Id.* § 17.8 (emphasis added).

2

- "No Representations or Warranties. ***Reseller shall not make any representations or warranties as to the performance of the Software***, Maintenance, or other services on behalf of SAP or SAP AG, ***or otherwise bind SAP or SAP AG***. SAP's warranty obligations, limitations, and liabilities related to the SAP End User License Agreement with Reseller Licensee shall be solely as stated therein." *Id.* § 12.3 (emphasis added).

- "Accountability. RESELLER SHALL BE RESPONSIBLE FOR ACCURATELY AND COMPLETELY REPRESENTING THE SOFTWARE AND ITS SERVICES. RESELLER SHALL ASSUME ANY FINANCIAL AND LEGAL LIABILITY FOR THE QUALITY, RELIABILITY, AND ACCURACY OF ALL REPRESENTATIONS M ADE BY RESELLER, ITS EMPLOYEES, AGENTS, AND CONSULTANTS REGARDING THE SOFTWARE, WHETHER ORAL OR WRITTEN, BEYOND WHAT IS CONTAINED IN THE DOCUMENTATION AND OTHER SASP OFFICIALLY SANCTIONED MATERIALS, AND SHALL ASSUME PRIMARY RESPONSIBILITY FOR ALL COMMUNICATIONS ASSOCIATED WITH ANY CLAIMS, PROBLEMS, OR OTHER COMPLAINTS AS TO QUALITY, FUNCTION, PURPOSE, AND COMPATIBILITY IN ACCORDANCE WITH THE DOCUMENTATION WHENEVER THE SOFTWARE IS REFERENCED, DEMONSTRATED, OR ADVERTISED." *Id.* § 4.5.

- "Best Efforts. Reseller shall use its best efforts to market and license the Software and market and provide Maintenance and support services. RESELLER DOES SO AT ITS OWN RISK AND FOR ITS OWN ACCOUNT EXCEPT AS OTHERWISE SET FORTH HEREIN." *Id.* § 2.6.

On December 24, 2004, IBIS/LSi and Hodell entered into the "Development Agreement Between Hodell-Natco Industries, Inc., The IBIS Group Inc., a wholly owned company of LSi-Lowery Systems, Inc. and LSi-Lowery Systems Inc. (LSI)" (the "Development Agreement").[1] Exhibit B, Trial Exhibit 291. The Development Agreement called for Hodell to make five installment payments of $60,000 (for a total purchase price of $300,000) in exchange for 80 Business One licenses and other necessary programs and services. *Id.* at 1. It expressly stated:

- Hodell would "advance" the first three installments as a "down payment" for the licenses with the first installment being due at signing, the second being due 150 days after signing, and the final being due 300 days after signing.

- Hodell would make the fourth installment when IBIS/LSi ordered the software from SAP.

- Hodell would make the final installment upon successful implementation.

---

[1] On May 18, 2004, IBIS became a wholly owned subsidiary of LSi.

3

Hodell's own financial records show that Hodell made the first three installment payments to IBIS/LSi as contemplated by the Development Agreement on December 21, 2004 (Hodell Check No. 354550); May 20, 2005 (Hodell Check No. 358638); and November 10, 2005 (Invoice No. 00034B), respectively.  Exhibit C, Trial Exhibit 606 at 1-3.  The fourth payment – which was due when LSi ordered the Business One licenses from SAP – was made on December 21, 2005 (Hodell Check No. 360330).[2]  *Id.* at 4.

The next day – December 22, 2005 – IBIS/LSi submitted an order form to SAP for 80 licenses.  Exhibit D, Trial Exhibit 138.  One day later – December 23, 2005 – Hodell and SAP entered into the "SAP Business One Software License Agreement" (the "License Agreement").  Exhibit E, Trial Exhibit 252.  Among other things, the License Agreement granted Hodell a license to use the "Software," which was defined as "the SAP Business One software product . . . delivered to [Hodell] hereunder pursuant to the order for the Software . . . placed by [Hodell or IBIS/LSi]. . . ."  *Id.* §§ 1.10, 2.1(a).

The License Agreement expressly defined the scope of the relationship between SAP and IBIS/LSi and contains Hodell's express acknowledgment and agreement to it, as follows:

> SAP RESELLER RELATIONSHIP/PRICE AND PAYMENT.  "***Licensee acknowledges and agrees*** that the ***SAP Reseller*** through which Licensee has arranged for the Procurement of this Agreement or from which Licensee receives any services related to the Software ***is not the agent of SAP.  The SAP Reseller is an independent company, person, or entity with no authority to bind SAP or to make representations or warranties on behalf of SAP.***  SAP makes no representations or warranties as to such authorized distributor or reseller, or with any other third party, related to the performance of the products or services of such entities and fully disclaims any such warranties . . . ."

*Id.* § 4.1 (emphasis added).

---

[2]  Hodell never remitted the final installment.  *See* Trial Exhibit 606.

4

Hodell's CEO, Otto Reidl, personally reviewed the License Agreement – including Section 4.1 quoted above – before Hodell executed it.  Exhibit F, Tr. O. Reidl at 75:17-25.  Mr. Reidl "agonized" over whether Hodell should sign it given the liability limitations contained therein.  *Id.* at 221:7-10.  Mr. Reidl explained that Section 4.1 in particular gave him "cause for concern" because he understood that it "was a way for SAP to limit their liability in a situation that wasn't a good one possibly."  *Id.* at 76:1-13.  However, Mr. Reidl concedes that he fully understood it because it was written in "plain English."  *Id.* at 229:17-230:7.  Hodell's President, Kevin Reidl, also reviewed the License Agreement before signing it on behalf of Hodell, and he too understood it to limit SAP's liability. Exhibit G, Tr. K. Reidl at 253:7-16.

### B.  Procedural History

On September 7, 2012, SAP filed a motion for summary judgment, arguing, *inter alia*, that the License Agreement controlled Hodell's and SAP's relationship and thus Hodell's tort claims failed as a matter of law.[3]  (ECF No. 110.)  Hodell opposed SAP's motion, arguing, *inter alia*, that SAP was vicariously liable for IBIS/LSi's alleged misrepresentations because IBIS/LSi was allegedly acting with SAP's actual or apparent authority.  (ECF No. 155.)  In Reply, SAP explained that the Reseller Agreement clearly and unambiguously disclaimed agency and limited LSi's authority to make representations or otherwise bind SAP *and* that the License Agreement contained Hodell's clear and unambiguous acknowledgment and agreement that it understood all of this.  (*See* ECF No. 163 at 18-19 (citing Trial Exhibits 30 § 17.8 and 252 § 4.1).)

On June 13, 2013, Magistrate Judge White recommended that SAP's motion be denied.  In his Report and Recommendation, he concluded that there remained factual issues as to whether IBIS/LSi was SAP's agent or otherwise acted with its authority.  (ECF No. 182 at 8 n.7.)  However, he reached this erroneous conclusion by failing to consider Hodell's clear and

---

[3] SAP also raised this issue in a motion to dismiss.  (ECF No. 36.)

unambiguous acknowledgment and agreement in the License Agreement that IBIS/LSi was nothing more than an *independent contractor*; that IBIS/LSi was *not* SAP's agent; and that IBIS/LSi did *not* have the power to bind SAP through representations or otherwise. (*Id.*)

SAP objected to the Report, asserting, once again, that the License Agreement explicitly disclaimed agency. (ECF No. 187.) Nonetheless, Judge Wells adopted the Report and issued an Order denying SAP's motion without any discussion of the agency issue. (ECF No. 192.) This was a clear error of law that should be corrected now. *See GenCorp v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (providing that a motion for reconsideration "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice" (internal citations omitted)).

**III.    ARGUMENT**

Hodell should be precluded from presenting evidence or arguing that IBIS/LSi was SAP's agent or that SAP is in any way vicariously liable for the alleged misrepresentations of IBIS/LSi because the fully integrated contractual agreements between and among SAP, IBIS/LSi, and Hodell clearly and unambiguously demonstrate that Hodell ***understood and agreed*** that IBIS/LSi was an independent contractor; that IBIS/LSi was not SAP's agent; and that IBIS/LSi had no authority to bind SAP with representations or otherwise. As a consequence there is no genuine issue that (a) IBIS/LSi was not SAP's agent and had no authority (real or apparent) to bind SAP; and (b) Hodell is estopped from arguing or presenting extrinsic evidence to the contrary by operation of the parol evidence rule.

    **A.    IBIS/LSi Was Not SAP's Agent and Hodell Knew It**

Magistrate Judge White held that SAP could be liable on a theory of apparent authority or agency by estoppel by reasoning that "there [was] no indication that Hodell was aware of [the Reseller Agreement] or the terms contained therein." (ECF No. 182 at 8-9 n.7.) This was clear

6

error because the Court failed to account for the License Agreement's agency disclaimer and the profound effect such a disclaimer has upon the viability of equitable agency theories.

In Ohio, apparent authority exists where (a) "the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority"; and (b) "the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.2d 655, 662-63 (6th Cir. 2005) (citations omitted). Similarly, agency by estoppel "rests upon the theory that one has been led to rely upon the appearance of agency to his detriment." *Johnson v. Wagner*, 49 N.E.2d 925, 928 (Ohio 1943).

Neither theory applies here because the contracts governing the relationships between and among SAP, IBIS/LSi, and Hodell plainly document that Hodell understood that IBIS/LSi was an independent contractor and did not have the authority to bind SAP, including by way of representations about the software.

The Reseller Agreement clearly and unambiguously expresses SAP's and IBIS/LSi's intent to create an independent contractor relationship and to avoid an agency relationship. *See* Trial Exhibit 30 § 17.8 ("Reseller is an *independent contractor* and is *not an agent*, employee, or legal representative of SAP . . . . This Agreement *shall not be construed as creating a[n] . . . agency relationship*. . . ." (emphasis added)). Likewise, the License Agreement clearly and unambiguously reflects Hodell's understanding and acceptance of this relationship. *See* Trial Exhibit 252 § 4.1 ("Licensee acknowledges and agrees that the SAP Reseller . . . *is not the agent of SAP*. The SAP Reseller is an *independent company*, person, or entity. . . ." (emphasis added)).

7

The Reseller Agreement also clearly and unambiguously provides that IBIS/LSi did not have the authority to legally bind SAP in any way, including by way of representations about the software.  *See* Trial Exhibit 30 § 17.8 ("Reseller expressly acknowledges that it has *no power or authority* to accept any order for SAP, or *to make guarantees or warranties concerning the Software* or the delivery thereof, or to make any commitment for SAP or *to obligate SAP in any respect whatsoever*." (emphasis added)); *id.* § 12.3 ("Reseller s*hall not make any representations or warranties* as to the performance of the Software . . . on behalf of SAP or SAP AG, *or otherwise bind SAP or SAP AG*." (emphasis added)).  Likewise, the License Agreement clearly and unambiguously reflects Hodell's understanding and acceptance of IBIS/LSi's lack of authority to bind SAP in these ways.  *See* Trial Exhibit 252 § 4.1 ("The SAP Reseller is an independent company . . . w*ith no authority to bind SAP*." (emphasis added)).

Magistrate Judge White's erroneous opinion, adopted (without explanation) by Judge Wells, focused solely on the Reseller Agreement and failed to consider Hodell's own contractual acknowledgments and agreements in the License Agreement.  When both the Reseller Agreement *and* the License Agreement are considered, there is simply no genuine issue that (a) IBIS/LSi was an independent contractor (not agent) that did *not* have actual authority to bind SAP with representations about the software; and that (b) Hodell completely understood and agreed that IBIS/LSi was an independent contractor (not agent) that did not have that authority.  Hodell simply cannot invoke the benefits of an equitably implied agency relationship where Hodell ***actually knew and agreed*** that no such agency relationship existed.[4]  *See, e.g.*, *Dayton*

---

[4] This is particularly true here where Hodell's knowledge was explicitly memorialized in a fully integrated, commercial contract that Hodell's senior leadership carefully reviewed and contemporaneously understood to limit SAP's liability in precisely the way Hodell now seeks to avoid.  *See* Tr. O. Reidl at 75:17-76:13, 221:7-10, 229:17-230:7; Tr. K. Reidl at 253:7-16.  Whether Hodell was aware of the Reseller Agreement is irrelevant because Hodell had its own contract, the License Agreement, that also documented that IBIS/LSi was simply an independent contractor with no authority to bind SAP.  Hodell may not have been aware of the Reseller Agreement, but Hodell was aware of the relevant and material terms on the matter of agency set forth in the License Agreement, which

8

*Bread Co. v. Mont. Flour Mills Co.*, 126 F.2d 257, 261 (6th Cir. 1942) ("If, however, a third person dealing with an agent knows he is acting under a circumscribed and limited authority and that his act is in excess of or an abuse of the authority actually conferred, then clearly the principal is not bound."); *Holloway v. Howerdd*, 536 F.2d 690, 696 (6th Cir. 1976) (holding that purchasers who understood that salesman sold stock to them independent of his firm could not recover against the firm on the basis of apparent authority); *Anderson v. Int'l Union*, 370 F.3d 542, 551-52 (6th Cir. 2004) (similar); *Ogden v. Transcontinental Airport of Toledo, Inc.*, 177 N.E. 536, 538 (Ohio Ct. App. 1931) (holding that one cannot rely on apparent authority where one has been informed of a limitation to that authority).

These plain and unambiguous contractual provisions mean exactly what they say and the Court need look no farther than them to decide the agency issue against Hodell as a matter of law. Indeed, when the issue of agency is addressed by a written contract between and among commercial parties, it becomes a matter of law for the court to decide by looking to the contract's plain language. *Indus. Comm'n v. Laird*, 186 N.E. 718, 719 (Ohio 1933); *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 219 (6th Cir. 1992); *Urban Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x 495, 509-12 (6th Cir. 2007). Moreover, in Ohio, "the interpretation of written contracts terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Liang v. AWG Remarketing*, No. 2:14-cv-99, 2015 WL 65258, at *11 (S.D. Ohio Jan. 5, 2015). "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 1990). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract."

---

effectively mirrored the Reseller Agreement. Magistrate Judge White was therefore wrong to focus on this non-issue and fail to consider the License Agreement.

9

*City of St. Marys v. Auglaie City Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007).  The contractual agency provisions at play here are fatal to Hodell's agency theories, and the Court's plainly erroneously decision on the agency issue should be corrected now.

> **B.  The Parol Evidence Rule Precludes Hodell from Contradicting the License Agreement with Extrinsic Evidence of Agency**

Ohio law provides that, absent fraud or mistake, a final, integrated contract cannot be varied, contradicted, or supplemented by extrinsic evidence.  *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (citing 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4)). The rule exists to protect the integrity of contracts and is applied with particular rigidity in the context of a UCC transaction between sophisticated parties.  *Ed Schory & Sons, Inc. v. Francis*, 662 N.E.2d 1074, 1080 (Ohio 1996); *Columbus Trade Exch., Inc. v. AMCA Int'l Corp.*, 763 F. Supp. 946, 955 n.14 (S.D. Ohio 1991).

Here, Hodell agreed – by way of the License Agreement – that IBIS/LSi was an independent contractor; that IBIS/LSi was not SAP's agent; and that IBIS/LSi had no authority to make binding representations about the software or to otherwise bind SAP.  Trial Exhibit § 4.1.  The License Agreement is indisputably a fully integrated agreement.  *See id.* § 11.9 ("This Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee and all previous representations, discussions, and writings are merged in, and superseded by, this Agreement.").  Thus, Hodell cannot be heard to argue or present evidence that IBIS/LSi *was not* an independent contractor; that IBIS/LSi *was* SAP's agent; or that IBIS/LSi *did* have authority to make representations that bound SAP as this flatly contradicts the terms of its agreement.[5]

---

[5] Likewise, neither IBIs/LSi (nor Hodell on its behalf) may contradict the terms of the Reseller Agreement that specifically provide that IBIS/LSi was an independent contractor; IBIS/LSi was not SAP's agent; and that IBIS/LSi did not have the authority to bind SAP.  *See* Trial Exhibit 30 at § 17.11 (also a fully integrated agreement).

10

SAP understands that Hodell will argue that the fraud exception is applicable here, but that is simply not true.  Indeed, the parol evidence rule cannot be "side-stepped by a fraudulent inducement claim *which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing.*"  *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 456 (6th Cir. 2005) (emphasis added) (citing *Galmish*, 734 N.E.2d at 790).

Here, Hodell wants to argue that IBIS/LSi – robed with indicia of agency by SAP – made material misrepresentations about the performance capability of the software that fraudulently and/or negligently induced Hodell to enter into the License Agreement with SAP.  This does not satisfy the fraud exception because the inducements to sign (i.e., alleged extra-contractual agency representations) were flatly contradicted by the terms of the License Agreement itself (i.e., "Reseller . . . is not the agent of SAP [and] is an independent company").  *See Schory & Sons*, 662 N.E.2d at 1081 (explaining that a party may not "say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed").

The parol evidence rule thus provides a separate basis for the relief sought by SAP.

## IV. CONCLUSION

For these reasons, Hodell should be precluded from arguing or presenting evidence that (a) IBIS/LSi was SAP's agent as opposed to a mere independent contractor or that (b) IBIS/LSi had authority to make representations or warranties about the software on behalf of SAP or to otherwise bind SAP in any way.  Hodell should also be precluded from recovering against SAP on any theory predicated on IBIS/LSi's alleged agency, including on any claim predicated on an alleged misrepresentation by IBIS/LSi as to the prospective performance of the software.

Respectfully submitted,

/s/ Gregory J. Star
Michael J. Miller (admitted *pro hac vice*)
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorneys for SAP America, Inc. and SAP AG*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June, 2015, a copy of the foregoing Motion for Reconsideration of SAP's Motion for Summary Judgment on the Issue of Agency, and supporting Memorandum of Law was filed electronically and served.

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)