# EXHIBIT F

# In The Matter Of:

*Hodell-Natco Industries, Inc. v.*
*SAP America, Inc., et al.*

*Otto Reidl*
*Vol. 1*
*February 7, 2012*

**NEXTGEN|REPORTING**
Making Litigation Easier.    NextGenReporting.com
PHILADELPHIA | 215.944.5800   NEW YORK CITY | 646.470.3376   PHOENIX | 623.224.2760   SILICON VALLEY | 650.799.8020

*Original File Reidl, Otto - Vol. I.txt*
*Min-U-Script® with Word Index*

Page 73

1 Q. If as of December 23rd, 2005,
2 Hodell believed that LSi was the authorized
3 agent of SAP, why would Hodell sign a license
4 agreement on December 23rd, 2005, with
5 language indicating that LSi is not the agent
6 of SAP?
7 　　MR. LAMBERT: I'm going to object. You
8 can ask that of Kevin, because we're getting
9 into a little more of the details surrounding
10 the execution of this agreement, and we'll let
11 you ask Kevin all about that.
12 　　BY MR. STAR:
13 Q. Okay. Sir, did you personally
14 have any involvement with reviewing and
15 executing the -- the license agreement with
16 SAP?
17 A. I read it, along with Kevin.
18 Q. Prior to Kevin signing it?
19 A. Correct.
20 Q. Okay. When do you recall reading
21 it prior to his signing?
22 A. Either the day he signed it or
23 shortly before.
24 Q. Okay. So you recall being aware,
25 before Kevin signed this document on behalf of

Page 74

1 Hodell, that it contained the language in
2 Section 4.1, correct?
3 A. I'm not certain that the full
4 brunt of that entered my mind.
5 Q. Okay. My question is a little
6 bit different. Let me ask it in a -- in a
7 different way though. Prior to Kevin signing
8 this document, did you read the language in
9 Section 4.1?
10 A. I read the document.
11 Q. Okay. And that would have
12 included 4.1?
13 A. Correct.
14 　　MR. LAMBERT: Objection.
15 　　BY MR. STAR:
16 Q. Yes? Yes?
17 A. Yes.
18 Q. Okay. Did -- did reading Section
19 4.1 give you or Hodell any cause for concern?
20 　　MR. LAMBERT: I'm going to object.
21 Outside the scope.
22 　　MR. STAR: Well, let me be clear. I
23 thought what we had discussed before the
24 deposition is that he'd also be testifying to
25 things that are within his personal knowledge.

Page 75

1 　　MR. LAMBERT: I was going to go off the
2 record to discuss that. That's fine. I think if
3 there is a way that we can -- I don't have a
4 problem with you asking Otto that as an individual
5 testifying on his own behalf, as long as it's
6 clear somehow that it's not -- he's not the
7 designee of the Plaintiff to testify on that
8 subject, that you can ask him that.
9 　　MR. STAR: Okay.
10 　　MR. LAMBERT: I don't know how we can
11 logistically accomplish that, if there is a way.
12 　　MR. STAR: I think practically speaking,
13 it makes little difference, because he's the CEO,
14 and we're talking about his personal knowledge,
15 but let's -- let's go through it.
16 　　BY MR. STAR:
17 Q. Let me just go back to where we
18 were. Your testimony was that prior to
19 Kevin's signing of this document of
20 December 23rd, 2005, you personally read the
21 entire license agreement, correct?
22 A. Correct.
23 Q. And then you would have also read
24 Section 4.1 that we have been through here?
25 A. That is correct.

Page 76

1 Q. Okay. My question then was, did
2 the language in Section 4.1 give you any cause
3 for concern when you read it, before -- before
4 Kevin signed it, signed the license agreement?
5 A. Yes.
6 Q. What concerns did it give you?
7 A. Am I asking -- answering as an
8 individual or CEO?
9 　　MR. LAMBERT: As an individual. Well,
10 and as a CEO.
11 　　THE WITNESS: This was a way for SAP to
12 limit their liability in a situation that
13 wasn't a good one possibly.
14 　　BY MR. STAR:
15 Q. Okay. Any other concerns that
16 were raised when you read Section 4.1 before
17 Kevin signed the document?
18 A. Yes. All of a sudden, out of the
19 blue, comes a license agreement, when three
20 years, two years, or a year earlier, we were
21 in the process of acquiring 80 licenses.
22 Q. What do you mean out of the blue?
23 A. We were never told that -- that
24 we had to sign this agreement.
25 Q. Never told by whom?

Page 221

1  the document if he thought he shouldn't have,
2  right?
3  A.  Right.
4  Q.  Okay.  I'm trying to find out
5  from you what the Hodell state of mind was at
6  the time --
7  A.  We agonized --
8  Q.  -- you signed this document?
9  A.  -- over it.  That's the best I
10  can say.
11  Q.  What do you mean agonized over
12  it?
13      MR. LAMBERT: Again, if you're asking
14  what the Hodell state of mind is at the time
15  this document was executed, that's the
16  belief --
17      MR. STAR: Fine.  He can testify in his
18  individual capacity.
19      BY MR. STAR:
20  Q.  What -- what do you mean you
21  agonized over it?  You mean you agonized over
22  signing this license agreement?
23  A.  Yes.
24  Q.  Why?
25  A.  Because of the burden it would

Page 222

1  put on us if this failed.
2  Q.  Okay.  What burden did you think
3  would be put on you if it failed?
4  A.  For the 40 licenses that we had
5  to add in order to -- in order to get those,
6  we signed this, we would have no protection.
7  Q.  Where in this document does it
8  say anything about 40 licenses in this license
9  agreement, sir?
10  A.  It doesn't, sir.  We have an
11  earlier agreement where we purchased 80
12  licenses.
13  Q.  And you're referring to the
14  development agreement, right?
15  A.  I'm referring to our purchase
16  order and the invoice for the 80 licenses.
17  Q.  Are you aware that the court in
18  this case has already held as a matter of law
19  that neither SAP America, nor SAP AG, was
20  actually a party to the development agreement
21  or your purchase order; you aware of that?
22      MR. LAMBERT: Objection.
23      THE WITNESS: Yes.
24      BY MR. STAR:
25  Q.  You're also aware that the court

Page 223

1  in this case has already held as a matter of
2  law that SAP AG was not a party to the license
3  agreement signed on December 23rd, 2005,
4  correct?
5      MR. LAMBERT: Objection.
6      THE WITNESS: Yep.
7      BY MR. STAR:
8  Q.  Okay.  So you're aware that the
9  court in this case has already concluded that
10  the only contract, written contract, between
11  an SAP Defendant and Hodell is the license
12  agreement which is between Hodell and SAP
13  America, correct?
14  A.  Correct.
15  Q.  Okay.  And you're also aware that
16  the only way in which Hodell was given the
17  right to use any SAP software, was by signing
18  this license agreement with SAP directly,
19  correct?
20      MR. LAMBERT: Objection.
21      BY MR. STAR:
22  Q.  You can answer the question.
23  A.  Repeat that -- repeat the
24  question.
25      MR. LAMBERT: If it's the same

Page 224

1  question, this is Otto testifying --
2      MR. STAR: Fine.
3      MR. LAMBERT: -- individually.
4      MR. STAR: That's fine.
5      BY MR. STAR:
6  Q.  Sir, you -- you're personally
7  aware that the only way in which Hodell had
8  any right at all to use any -- any SAP
9  software was by signing this license agreement
10  with SAP America, correct?
11      MR. LAMBERT: Objection.
12      THE WITNESS: I'm not an attorney, but
13  I suspect that answer -- that is correct.
14      BY MR. STAR:
15  Q.  Okay.  In December of 2005, did
16  Hodell have legal representation?  Was there
17  an attorney that you used regularly?
18  A.  Please repeat that question.
19  Q.  In December of 2005, did Hodell
20  have legal representation?
21  A.  On whether we signed this
22  contract or not?
23  Q.  No, in general.
24  A.  Yes, we did.
25  Q.  Who was your attorney in December

Page 229

information. I mean, he didn't -- he's testified he didn't go to the lawyer that he had for 20 years, and I'm asking -- and yet he agonized over this document, and I'm asking him why he didn't go to his lawyer.

MR. LAMBERT: Again, first of all, Otto isn't the one that signed this document. Kevin is. If you want to ask Kevin, that's fine.

MR. STAR: Well, I will also ask Kevin the question, and -- but Otto has testified here today that he reviewed this document in detail, and that his son would not have signed this document if he didn't approve it, and that they agonized over the document.

BY MR. STAR:

Q. Sir, given your testimony that you reviewed this document before it was signed by your son, that you agonized over the document, and you had some concerns, why didn't you go to Mr. Kratus or somebody else in his firm to review it?

A. Two reasons. Number one, we both speak English, we can read, and we were dealing with a worldwide organization that, in

Page 230

our view, could be trusted at the time.

Q. Okay. Is that it?

A. Yeah.

Q. Okay. So you understood what you were signing then? It was in plain English, as you say, right?

A. (Witness nods head.) Yes.

Q. Okay. Including paragraph 11.9, which says that this is the entire agreement, and that all previous representations, discussions and writings are merged in and superseded by this agreement, correct?

A. I already answered that question.

Q. Okay. We'll let you stand by your prior answer.

Your third cause of action here, sir, is for breach of contract. And in the complaint, you allege that SAP had breached both the development agreement and the license agreement. As we've already established, the only remaining claim against SAP for breach of contract is a claim that SAP America breached a warranty obligation in the license agreement. You understand that?

MR. LAMBERT: Objection.

THE WITNESS: I'm not an attorney.

Page 231

BY MR. STAR:

Q. Okay. But you're aware that the court dismissed any claim against SAP America or SAP AG that it had breached the development agreement, correct?

A. Correct.

Q. And you're aware that the court dismissed any claim against SAP AG that it breached the license agreement, correct?

A. I don't recall.

Q. Paragraph 84 of the complaint states that in the event Hodell-Natco should be deemed bound to the terms of the SAP Business One software license agreement for the 2005 purchase of 40 CMR -- pardon me -- CRM user license -- licenses -- the Plaintiff alleges that the warranty set forth in paragraph 7.1 was breached, as the software did not substantially conform to the functional specifications contained in the documentation.

What specifically does Hodell contend about the SAP Business One software that it did not substantially conform to the functional specifications contained in the documentation?

Page 232

MR. LAMBERT: Again, that's going to be Kevin's area of testimony.

BY MR. STAR:

Q. Okay. Do you have any understanding in your individual capacity as to what is -- what you mean by the "documentation" referenced in paragraph 84 of the complaint?

A. Among various documents, the elements that talked about productivity improvement, efficiencies, reduction of cost --

Q. Okay.

A. -- speed of access to data.

Q. If you look at the license agreement for me, sir, again, Exhibit G. Exhibit G, sir. Paragraph 1.2 is titled Documentation. It says it means SAP's documentation, which is delivered to licensee, which is Hodell, under this agreement. Do you see that?

A. Yes.

Q. Okay. Are you on paragraph 1.2, sir?

A. 7.1.

Page 237

1 second.
2 (Whereupon, an off-the-record discussion
3 was held at 4:13.)
4 (Whereupon, the deposition was continued
5 until the following day.)

Page 238

1                 CERTIFICATE OF THE REPORTER
2       I, Angela A. O'Neill, a Registered Professional
3 Reporter and Notary Public, authorized to administer oaths and to
4 take and certify depositions, do hereby certify that the
5 above-named witness was by me, before the giving of their
6 deposition, first duly sworn to testify the truth, the whole
7 truth, and nothing but the truth to questions propounded at the
8 taking of the foregoing deposition in a cause now pending and
9 undetermined in said court.
10       I further certify that the deposition above-set forth
11 was reduced to writing by me by means of machine shorthand and was
12 later transcribed from my original shorthand notes; that this is a
13 true record of the testimony given by the witness; and that said
14 deposition was taken at the aforementioned time, date, and place,
15 pursuant to notice or stipulations of counsel.
16       IN WITNESS WHEREOF, I have set my hand and seal this
17 14th day of February, 2012.
18 *Angela A. O'Neill*
19 _____
     Angela A. O'Neill, RPR
20    My Commission Expires: Aug. 10, 2012
21
22
23
24
25