IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAP AMERICA, INC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:08 CV 2755<br><br>JUDGE NUGENT |

## APPENDIX OF UNPUBLISHED CASES

**CASES**

*Liang v. AWG Remarketing*,
   No. 2:14-cv-99, 2015 WL 65258 (S.D. Ohio Jan. 5, 2015).........................................................1

# Tab 1

Slip Copy, 2015 WL 65258 (S.D.Ohio)
**(Cite as: 2015 WL 65258 (S.D.Ohio))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio,
Eastern Division.
HUEY JIUAN LIANG, Plaintiff,
v.
AWG REMARKETING, et al., Defendants.

No. 2:14–cv–99.
Filed Jan. 5, 2015.

Tiffany C. Miller, Bailey Cavalieri LLC, Columbus, OH, Jeffrey Chengpang Wang, Kenneth A. Ohashi, WHGC, P.L.C., Newport Beach, CA, for Plaintiff.

Alan G. Starkoff, Steven David Forry, T. Earl Levere, Ice Miller LLP, Columbus, OH, for Defendants.

*OPINION AND ORDER*

GREGORY L. FROST, District Judge.

**\*1** This matter is before the Court for consideration of Third–Party Defendant William Greenwald's motion to dismiss (ECF No. 48), Third–Party Plaintiffs Group 3 Auctions, LLC and AWG Remarketing, Inc.'s joint memorandum in opposition (ECF No. 50), and Greenwald's reply memorandum (ECF No. 51). For the reasons that follow, the Court **DENIES** the motion.

**I. BACKGROUND**

This action arises from an underlying dispute in which Plaintiff Huey Liang ("Liang"), a partner in Automotive Remarketing Xchange, LLC ("ARX"), asserts violations of the federal copyright act and various business torts against Defendants AWG Remarketing, Inc. ("AWG"), Group 3 Auctions, LLC ("Group 3"), Columbus Fair Auto Auction, Inc. ("CFAA"), and Does 1 through 10. (ECF No. 1.) The instant motion concerns the third-party complaint filed by AWG and Group 3. (ECF No. 33.) Thus, the Court will only address the background relevant to the motion at issue.

Third–Party Plaintiff AWG is an automotive remarketing company that provides various services to automobile dealer groups, independent automobile dealers, public auctions, and their clients. It is a New Jersey corporation, with its principal place of business in Franklin County, Ohio.

Third–Party Plaintiff Group 3 is the current owner of AWG. It is an Ohio limited liability company with its principal place of business in Franklin County, Ohio. Group 3 was created to purchase AWG's stock. Keith Whann, an Ohio resident, was the controlling member of Group 3.

Third–Party Defendant William Greenwald is a former majority shareholder in AWG. He is a New York resident. In 2009, Greenwald incorporated AWG. From the date of incorporation until December 2011, Greenwald was the majority owner of AWG, holding 82% interest in the company.

On December 8, 2011, Group 3 entered into a Stock Purchase Agreement ("Agreement") with Greenwald and the other stock owners [FN1] of AWG through which Group 3 purchased AWG. The Agreement set forth express warranties and representations by the parties, in addition to certain promises of indemnity. (ECF No. 33 at 3.) Pursuant to the Agreement, Greenwald expressly warranted and represented that AWG was not involved in any disputes with third parties concerning its assets. (*Id.* at 4.) AWG's assets included intellectual property. (ECF No. 48–2 at 80.) A portion of the Agreement's definition of intellectual property stated that Group 3, through the purchase, owned the copyright to "current, former and proposed versions of computer programs (including the software which is the core of AWG's business), processes, documentation, architectures, database structures, database schemas and all the source code written for and/or used by AWG." (*Id.*)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN1. Though there were other stock owners involved in the transaction, Greenwald was the only third-party defendant against whom the third-party plaintiffs brought their complaint. Thus, the Court need not further reference the additional AWG stock owners.

On October 17, 2013, Plaintiff Liang filed her complaint in the United States District Court for the Central District of California. (ECF No. 1.) The matter was subsequently transferred to this Court on January 28, 2014. (ECF No. 27.) Liang's complaint asserted that AWG had infringed on ARX's copyrights. (ECF No. 1 at 6.) Moreover, AWG had purportedly made representations to Liang that she could purchase the corporation. (*Id.* at 5.) Group 3, however, purchased AWG. (*Id.*) Based on the allegations in Liang's complaint, Group 3 and AWG concluded that Greenwald had violated the terms of the Agreement.

**\*2** Thus, on February 11, 2014, AWG and Group 3 filed a third-party complaint against Greenwald. (ECF No. 33.) Group 3 and AWG jointly asserted two causes of action against Greenwald: breach of stock purchase agreement and demand for indemnity and defense; and declaratory judgment. Group 3 asserted two additional causes of action against Greenwald: violation of § 1707.41 of the Ohio Securities Act—civil liability of seller for fraud; and violation of federal securities act. According to AWG and Group 3, they filed the third-party complaint because, "the Liang Complaint contradicts Greenwald's representations and warranties that AWG owns all of its 'Assets,' and [ ] if any copyright infringement occurred at all, it began before Group 3 purchased the AWG stock." (ECF No. 50 at 7.)

On March 26, 2014, Greenwald filed a motion to dismiss the third-party complaint. (ECF No. 48.) The motion is fully briefed and ripe for this Court's review.

## II. ANALYSIS

### A. Personal Jurisdiction

*i. Standard of Review*

Defendant's threshold argument is that this Court should dismiss Plaintiffs' third-party complaint based on lack of personal jurisdiction. (ECF No. 48 at 13.) Personal jurisdiction may be found to exist in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state. *Estate of Thomson v. Toyota Motor Corp. Worldwide,* 545 F.3d 357, 361 (6th Cir.2008) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996)). Alternatively, personal jurisdiction may exist in cases in which the subject matter of the lawsuit arises out of or is related to a defendant's contacts with the forum. *Id.* Though the rule itself is not referenced in Greenwald's motion, Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of cases for lack of personal jurisdiction. When considering a properly supported motion to dismiss under Rule 12(b)(2), a district court has discretion to decide the motion upon the affidavits alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989)).

A plaintiff bears the burden of establishing the existence of personal jurisdiction. *Estate of Thomson,* 545 F.3d at 360 (6th Cir.2008) (citing *Brunner v. Hampson,* 441 F.3d 457, 462 (6th Cir.2006)). However, where a Rule 12(b)(2) motion is decided "solely on written submissions and affidavits ... rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight.' " *Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 544, 549 (6th Cir.2007) (citing *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988)). Thus, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to

Slip Copy, 2015 WL 65258 (S.D.Ohio)
**(Cite as: 2015 WL 65258 (S.D.Ohio))**

defeat dismissal." *Theunissen,* 935 F.2d at 1458. "The pleadings and affidavits submitted must be viewed in a light most favorable to" the plaintiff, and the court "should not weigh 'the controverting assertions of the party seeking dismissal.' " *Id.* at 1459 (citing *Serras,* 875 F.2d at 1214). This rule is in place because the Sixth Circuit has stated that it wants "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]" *Id.*

**\*3** Plaintiffs insist that Greenwald's declaration, which Defendant submitted as an attachment to his motion to dismiss (ECF No. 48–1), is defective. Additionally, Plaintiffs seek to have Defendant's exhibits thrown out based on the documents' purported inadmissibility. Despite Plaintiffs' issues with the affidavit and the exhibits, the Court need not strike them in order to conduct a just analysis of the motion to dismiss. Indeed, the threshold is inarguably lower when the movant has submitted an affidavit in support of its motion to dismiss. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) ("[w]hen ... a district court rules on a [12(b)(2) motion] without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.") (internal citation omitted). In such instances, the plaintiff need only demonstrate a *prima facie* showing of personal jurisdiction. *See Neogen Corp. v. Neo Gen Screeening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002) (citing *Compuserve,* 89 F.3d at 1262). The Court, then, will not strike the affidavit and the exhibits, but will consider the submissions in the light most favorable to Plaintiffs.

*ii. Ohio's Long–Arm Statute*

Defendant contends that it is not subject to personal jurisdiction pursuant to Ohio's long-arm statute. (ECF No. 48 at 14 .) This Court does not agree. " 'A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law-and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution.' " *Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir.2012) (citing *Int'l Techs. Consultants v. Euroglas S.A.,* 107 F.3d 386, 391 (6th Cir.1997) (citation omitted). However, constitutional concerns of due process limit the application of this law. *Theunissen,* 935 F.2d at 1459 (citing *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980)). The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits." *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen,* 70 Ohio St. 232, 236 (Ohio 1994) (*per curiam* )). Thus, "when Ohio's long-arm statute is the basis for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether a defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met." *Estate of Thomson,* 545 F.3d at 361 (citing *Walker v. Concoby,* 79 F.Supp.2d 827, 831 (N.D.Ohio 1999)).

Pursuant to Ohio law, "personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn,* 667 F.3d at 712 (citing *Kauffman Racing Equip., LLC v. Roberts,* 126 Ohio St.3d 81, 85, 930 N.E.2d 784 (2010); *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 235, 638 N.E.2d 541 (1994)). Ohio's long-arm statute provides:

> **\*4** (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev.Code § 2307.382.

Defendant asserts that the complaint fails to set forth specific allegations under which the long-arm statute would apply. Relying on his declaration, Defendant points to specific facts that demonstrate the lack of personal jurisdiction, including that: Group 3 and AWG defrauded Greenwald in the stock transaction; Greenwald is an aged New York resident with no Ohio contacts; and Greenwald has never conducted sales activity of any kind in Ohio. (ECF No. 48 at 16.) Finally, Defendant contends that Plaintiffs' theory-that the sale of stock to an Ohio limited liability company alone can be sufficient to establish personal jurisdiction-would set a "terrible precedent with significant consequences in the business world." (*Id.*)

Plaintiffs insist that they have sufficiently established personal jurisdiction. Plaintiffs assert that this Court's personal jurisdiction over Defendant can be shown under three of the enumerated actions pursuant to the Ohio long-arm statute. First, Plaintiffs claim that Defendant transacted business in Ohio, evidenced by Defendant's month-long negotiations with Group 3, an Ohio buyer, Greenwald's receipt of a large sum of money emanating from Ohio, Greenwald's requirement under the transaction to mail the AWG stock certificates to lender's counsel in Ohio, and Greenwald's promise to indefinitely indemnify Group 3 and AWG in Ohio. Next, Plaintiffs contend that Greenwald caused injury to Group 3 through selling less valuable assets than Group 3 had paid for, by defending copyright litigation by Liang, and preventing Group 3 from using the assets in the promised manner. Finally, Plaintiffs argue that Defendant misrepresented the assets and value of AWG, and deceitfully sold AWG stock despite knowing about decreased company value.

**\*5** This Court finds that Plaintiffs have estab-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

lished personal jurisdiction pursuant to Ohio's long-arm statute. In his affidavit, Defendant acknowledges the "Ohio connection" derived from the transaction between Greenwald, AWG, and Group 3. (ECF No. 48–1 at 2.) Whether such a connection resulted from alleged conspiracy, or Plaintiffs' efforts to defraud Defendant, is irrelevant to the Ohio long-arm inquiry required under the personal jurisdiction analysis. Under R.C. § 2307.382, Defendant transacted business in Ohio.

iii. Due Process

The Court must next determine whether Plaintiffs have established personal jurisdiction in accordance with the Due Process Clause of the United States Constitution. A suit cannot be maintained where jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1948) ("due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ") (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). As to the due process inquiry for specific jurisdiction, the Sixth Circuit established in *Southern Machine Corp. v. Mohasco Industries, Inc.* a three-prong test for determining whether such jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir.1968).

i. Purposeful availment

"The purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction[.]" *Calphalon Corp.,* 228 F.3d at 721 (citing *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1300 (6th Cir.1989)). As the "constitutional touchstone" of personal jurisdiction, purposeful availment exists where a defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In a case where personal jurisdiction was purportedly based on a contract between the nonresident defendant and the Ohio-based business, the Sixth Circuit has explained:

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. There is a difference between what World–Wide Volkswagen calls a mere "collateral relation to the forum State," and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws." An understanding of this difference is important to the proper application of the "purposeful availment" test.

**\*6** The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequence of their activities."

*Calphalon Corp.,* 228 F.3d at 721–22 (citing *Burger King,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490, and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendant argues that Plaintiffs have not met the purposeful availment prong. According to Defendant, his contacts in Ohio were merely fortuitous, and arise out of Plaintiffs' late decision to make Group 3 the buyer of AWG's shares. Defendant contends that subsequent communications with the Group 3 parties were conducted with the sole purpose of closing the deal, and are not sufficient to establish purposeful availment. Moreover, Greenwald insists that he did not make an "intentional decision to target Ohio and in fact had no intention of selling shares to anyone in Ohio" until Plaintiffs formed Group 3. (ECF No. 48 at 19.)

Plaintiffs counter that Greenwald purposefully availed himself under Ohio's laws when he intentionally negotiated and contracted with Group 3 for the sale of goods and the promise of indemnity. Plaintiffs assert that Greenwald reached out to Group 3 to negotiate and complete the transaction and was aware that Group 3 was an Ohio entity. Additionally, Plaintiffs insist that Defendant knew that he would have to transmit stock certificates to lender's counsel in Ohio under the Agreement. Plaintiffs contend that Defendant understood he was creating relationships and obligations with Ohio citizens, highlighted by the indefinite indemnity promise found in the Agreement.

Plaintiffs further argue that, under the effects test set forth in *Calder v. Jones,* 465 U.S. 783, 788–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), personal jurisdiction is appropriate. Pursuant to the effects test, "personal jurisdiction exists where an individual purposefully directs activities towards the forum state with the intent to cause harm there." *Scotts Co. v. Aventis S.A.,* 145 F. App'x 109, 113 (6th Cir.2005). Defendant offers no response to Plaintiffs' effects test argument.

This Court finds that Plaintiffs have met the purposeful availment prong. The facts presented do not show that Greenwald's connection to Ohio was simply fortuitous, as he asserts it to be. Rather, it is undisputed that Greenwald contracted with Group 3, an Ohio company. The Sixth Circuit has found that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanction for the consequences of their activities." *Air Products,* 503 F.3d at 551 (quoting *Burger King,* 471 U.S. at 473). Though a contract with an out-of-state actor alone is insufficient to satisfy purposeful availment, the Court should also consider factors such as " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.' " *Id.* (citing *Burger King,* 471 U.S. at 479). Here, the month-long negotiations between the parties, taken with the indefinite indemnity clause, rises to the level of purposeful availment. Based on Greenwald's decision to enter into a contract with an Ohio company, he should have anticipated that he could be haled into court in Ohio.

ii. Arising from

**\*7** Under the second *Southern Machine* prong, the claim for relief must arise out of the defendant's activities in the forum. *See Southern Mach.,* 401 F.2d at 381. A claim for relief can be of whatever type, as long as it has "a substantial connection with the defendant's in-state activities." *Id.* at 384 n. 27. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Id.* at 384 n. 29 (citations omitted). The Sixth Circuit has also stated that a "lenient standard ... applies when evaluating the arising from criterion." *Bird v. Parsons,* 289 F.3d at 875.

Defendant insists that he had no contact with Ohio initially, and that lack of contact did not change when ARX became part of the discussion. Defendant also claims that the complaint fails to explain how the assertion of copyright infringement concerns the contacts between Defendant and Ohio. Plaintiffs counter that the causes of action inarguably arise from the various aspects that were part of the creation and execution of the Agreement. Moreover, Plaintiffs contend that "Greenwald pur-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

posefully availed himself of Ohio's laws by negotiating and executing the [Agreement] and the Third–Party Complaint seeks relief relative to the [Agreement]." (ECF No. 50 at 20.) Accordingly, Plaintiffs assert that the arising from prong is satisfied.

The Court finds that Plaintiffs have met the second prong of the personal jurisdiction analysis. As set forth countless times in this opinion, the Parties entered into an Agreement in which Defendant sold assets to an Ohio company. The dispute, in turn, arises from conflict regarding the Agreement. Thus, the operative facts here are clearly linked to Defendant's contact with Ohio.

iii. Substantial connection and reasonableness

The third prong of the *Southern Machine* test requires that a plaintiff show that "the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach.,* 401 F.2d at 381. This element exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Nationwide Mut. Ins. Co. v. Tamariz–Wallace,* No. C2–08–1148, 2009 WL 1850612, at *5 (S.D.Ohio June 19, 2009) (citing *Burger King,* 471 U.S. at 477–78; *World–Wide Volkswagen,* 444 U.S. at 292 ). " 'In considering whether the exercise of jurisdiction is reasonable, the court should consider, amongst others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.' " *Id.* (quoting *Air Products,* 503 F.3d at 554–55).

**\*8** Defendant claims that being haled into Ohio for a lawsuit would be a "huge burden" for Greenwald, who is an "elderly man who cannot travel easily to this forum." (ECF No. 48 at 20.) Regarding the interest of the forum state, Defendant simply asserts that he has no prior contacts with Ohio, and did not conduct any business or have any other connection with Ohio. Defendant insists that the Plaintiffs do not have any valid interest in obtaining relief by way of the complaint. Finally, Defendant references a pending action in New Jersey, maintaining that New Jersey has an interest in securing the most efficient resolution of the controversy.

Plaintiffs retort that, insofar as Greenwald has legitimate health concerns that render him unable to travel, modern technologies practically eliminate that issue. Additionally, the Plaintiffs are willing and able to cooperate in mitigating Greenwald's amount of travel. Plaintiffs dismiss Defendant's argument regarding the forum state, claiming that they relate to purposeful availment rather than reasonableness. Plaintiffs similarly disregard Defendant's reference to the New Jersey lawsuit, stating that it does not involve the third-party complaint or AWG. According to Plaintiffs, the resolution of the New Jersey lawsuit will not resolve the controversy set forth by the Liang complaint or the third-party complaint. Finally, Plaintiffs assert that they have a vested interest in resolving the lawsuit in this forum, in turn preventing them from engaging in a separate lawsuit in a different forum that would require the presentation of the evidence given in this case. Plaintiffs maintain that such an action would result in piecemeal litigation.

The Court finds that the third prong necessary to establish personal jurisdiction has been satisfied. When the first two elements of the *Southern Machine* test have been met, an inference arises that the third is also present. *Theunissen,* 935 F.2d at 1461. Even without such an inference, Plaintiffs have set forth a substantial connection, in which they have shown that this Court's exercise of personal jurisdiction is reasonable. Though Defendant does offer arguments in an effort to show a lack of connection, he simply does not show that the exercise of personal jurisdiction here would be unreasonable.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Accordingly, Plaintiffs have established that this Court may properly assert personal jurisdiction over both Parties. The Court, then, must address Defendant's outstanding arguments regarding Plaintiffs' alleged failure to state a claim upon which relief can be granted.

## B. Failure to State a Claim on Which Relief can be Granted

### i. Standard of Review

Defendant moves for dismissal of the causes of action brought against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When ruling upon a Rule 12(b)(6) motion, the Court is required to accept the well pleaded factual allegations contained in the pleading as true, construe them in the light most favorable to the non-moving party, and determine whether the factual allegations present any plausible claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**\*9** A complaint must present "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To be considered plausible, a claim must be more than merely conceivable. *Id.* at 556; *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir.2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right of relief above the speculative level...." *Twombly,* 550 U.S. at 555; *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir.2008).

### ii. Choice-of-law

As an initial matter, the Court must address the law governing the Agreement. Though neither Party presents an in-depth argument regarding choice-of-law, it is clear that Plaintiffs and Defendant disagree as to which state's laws govern the Agreement. Defendant asserts that, since the contract between Group 3 and Greenwald is for the sale of stock in a New Jersey company, it is governed by New Jersey law. Plaintiffs disagree, stating that the Agreement contains no choice-of-law provision, thereby making Ohio law the proper choice.

The Supreme Court of Ohio has held that an actual conflict between Ohio law and the law of another jurisdiction must exist before a court should undertake a choice-of-law analysis. *Glidden Co. v. Lumbermens Mut. Cas. Co.,* 112 Ohio St.3d 470, 474–75, 861 N.E.2d 109, 115 (2006). Therefore, if two states use the same substantive rules of law or resolution of the substantive issues would produce the same result under either state's law, Ohio law governs. *Mecanique C.N.C., Inc. v. Durr Envtl., Inc.,* 304 F.Supp.2d 971, 975–76 (S.D.Ohio 2004) (applying Ohio choice-of-law rules).

Here, the Agreement does not include a choice-of-law provision. Thus, for each count at issue, the Court must determine whether Ohio law or New Jersey law is proper. If the relevant laws of New Jersey and Ohio do not conflict, the Court will apply Ohio law. *See Glidden,* 112 Ohio St.3d at 474–75, 861 N.E.2d 109.

### iii. Plaintiffs' claims for indemnity

Defendant argues that Plaintiffs cannot bring a claim for indemnification as a matter of law. Section 9(a) of the Agreement, entitled "Hold Harmless and Indemnity: By Seller," dictates the scope

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

of Greenwald's indemnity. It states, in relevant part:

> Within the scope set forth in the first paragraph of this Section 9(a), the indemnity owed by Greenwald shall be (1) for the applicable statute of limitations as to claims related to unpaid taxes, (2) indefinitely for (a) claims regarding ownership or options to acquire ownership of share of stock in AWG, (b) claims regarding ownership or options to acquire ownership of the Assets, and (c) claims by Greenwald's family members. All other indemnity obligations shall terminate on the eighteen (18) month anniversary of the Closing Date.

**\*10** (ECF No. 48–2 at 86–87.)

Defendant contends that Plaintiffs cannot bring a claim for indemnification for two reasons. First, Defendant, relying on certain language in the Agreement, asserts that the claim is time-barred. (*See* ECF No. 48 at 24.) Defendant claims that, because the third-party complaint was not brought until February 11, 2014, and the closing date was December 8, 2011, the third-party complaint falls outside the 18–month window given for "all other indemnity obligations." (ECF No. 48–2 at 87.) Second, Defendant insists that such a claim is prohibited by the language of the Agreement. Defendant notes that the Agreement stated that "AWG has no ownership in Microsoft Office or other third party software used by AWG in the ordinary course of its business." (*Id.* at 25, 861 N.E.2d 109) (citing ECF No. 48–2 at 84). Accordingly, Defendant argues that Plaintiffs did not have ownership rights in the third-party software, in turn barring the indemnification claim.

Plaintiffs counter that their indemnification claim is not time barred. Plaintiffs claim that Defendant's argument is predicated on an incomplete description of the relevant Agreement provision. Accordingly, Plaintiffs proffer that the question is actually whether the Liang complaint challenges ownership of any of the Assets referenced in Section 9(a). Plaintiffs insist that, upon comparing Liang's definition of the ARX program against Greenwald's definition of the Assets described in the Agreement, it is "difficult to comprehend how the ARX program would not constitute any of [the Assets set forth in the Agreement]." (ECF No. 50 at 25 .) Plaintiffs, therefore, argue that their claim falls within the "indefinitely" portion of Section 9(a), rendering it to be timely filed.

Plaintiffs next assert that the alleged "Microsoft Word carve-out" does not prohibit them from bringing their indemnity claim. Plaintiffs note that the Liang complaint describes the ARX program as a source code and dedicated internet webpages that were integrated into the AWG product. That description, according to Plaintiffs, is distinctly different than that of Microsoft Office or Microsoft Outlook, both of which are stated to be commodity add-on applications. Thus, Plaintiffs argue that the "Microsoft Word carve-out" does not apply to the ARX program, in turn making Plaintiffs' indemnity claim viable.

Defendant relies mainly on New Jersey law in his arguments in this section, but references only Ohio law when discussing breach of contract in the subsequent section of his brief. Because the indemnity clause at issue is a provision of the contract, the Court cannot apply the laws of New Jersey solely to the indemnity clause, while applying Ohio law to every other portion of the Agreement. *See Battle Memorial Institute v. Nowsco Pipeline Services, Inc.,* 56 F.Supp.2d 944, 950–51 (S.D.Ohio 1999) (citing *Travelers Indemnity Co. v. Trowbridge,* 41 Ohio St.2d 11, 13–14, 321 N.E.2d 787 (1975) (rev'd on other grounds) ("indemnity ... arises from contract, express or implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement.")). Accordingly, the Court will apply Ohio law to the Agreement as a whole.

**\*11** Even if the Court needed to conduct a choice-of-laws analysis, Ohio law would be applied properly to the Parties' Agreement. The Sixth Circuit has explained the contours of the applicable

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

state law involved:

> Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court. *Parrett v. Am. Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir.1993) (applying Ohio law); *Potti v. Duramed Pharmaceuticals, Inc.,* 938 F.2d 641, 647 (6th Cir.1991) (applying Ohio law); *see also Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271, 272–73 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term."). "The role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cty. Bd. of Commrs.,* 115 Ohio St.3d 387, 875 N.E.2d 561, 566 (2007). "The intent of the parties is presumed to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 667 N.E.2d 949, 952 (1996); *accord State ex. rel Petro v. R.J. Reynolds Tobacco Co.,* 104 Ohio St.3d 559, 820 N.E.2d 910, 915 (2004). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys,* 875 N.E.2d at 566; *accord Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978) ( "[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."). However, "[e]xtrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham,* 667 N.E.2d at 952; *accord R.J. Reynolds,* 820 N.E.2d at 915. Nevertheless, a court "is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties" in the terms of their written contract. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261–62 (2003).

> *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 763 (6th Cir.2008). See also *Cook v. All State Home Mortg., Inc.,* 329 F. App'x 584, 588 (6th Cir.2009) ("The Ohio Supreme Court has held that if a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined." (citing *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271, 272 (1984))).

**\*12** The court of appeals has further discussed the issue of ambiguity in a contract under Ohio law rather extensively, stating:

> Contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia,* 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003) (quoting *Potti v. Duramed Pharmaceuticals, Inc.,* 938 F.2d 641, 647 (6th Cir.1991)); *see also King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988). "[C]ourts may not use **extrinsic evidence** to create an **ambiguity**; rather, the **ambiguity** must be patent, i.e., **apparent** on the **face** of the contract." *Covington,* 784 N.E.2d at 190. In determining whether contractual language is ambiguous, the contract "must be construed as a whole," *Tri–State Group, Inc. v. Ohio Edison Co.,* 151 Ohio App.3d 1, 782 N.E.2d 1240, 1246 (2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick,* 50 Ohio App. 277, 197 N.E. 923, 926 (1934)), so as "to give reasonable effect to every provision in the agreement." *Stone v. Nat'l City Bank,* 106 Ohio App.3d 212, 665 N.E.2d 746, 752 (1995); *see also Burris v. Grange Mut. Co.,* 46 Ohio St.3d 84, 545 N.E.2d 83, 88 (1989) ("The meaning of a contract is to be gathered

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." (quoting *Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984))). "[C]ommon words appearing in the written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander,* 374 N.E.2d at 150.

If the language in the contract is ambiguous, the court should generally construe it against the drafter. *See Central Realty Co. v. Clutter,* 62 Ohio St.2d 411, 406 N.E.2d 515, 517 (1980); *Mead Corp. v. ABB Power Generation, Inc.,* 319 F.3d 790, 798 (6th Cir.2003) (applying Ohio law).

*Savedoff,* 524 F.3d at 763–64.

Pursuant to New Jersey law, the terms of a contract are considered ambiguous if they are "susceptible to at least two reasonable alternative interpretations." *Nester v. O'Donnell,* 301 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div.1997) (citing *Kaufman v. Provident Life and Case. Ins. Co.,* 828 F.Supp. 275, 282–83 (D.N.J.1992), aff'd 993 F.2d 877 (3d Cir.1993)). "To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their plain and ordinary meaning." *Id.* (citing *Kaufman,* 828 F.Supp. at 283). The district court of New Jersey has explained the steps required in resolving contractual ambiguity:

To decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear. Rather, we "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Sheet Metal Workers [v. 2300 Group, Inc.],* 949 F.2d [1274] at 1284 [3d Cir.1991] (brackets in original) (quoting *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980)). Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. *Id.;* [ *International Union v.] Mack Trucks,* 917 F.2d [107] at 111 [3d Cir.1990]; *see also* Restatement (Second) of Contracts § 223 cmt. b (1981) ( "There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown...."). Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.,* 989 F.2d 132, 135 (3d Cir.1993). And once a contract provision is found to be ambiguous, extrinsic evidence must be considered to clarify its meaning. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir.1994); *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1234 (3d Cir.1991).

**\*13** *United States v. Bryant,* 556 F.Supp.2d 378, 457 (D.N.J.2008). Moreover, "in New Jersey, 'contract interpretation is usually a question of law.' " *Cont'l Cas. Co. v. Honeywell Int'l, Inc.,* No. 1:08–CV–1410, 2009 WL 313127, at \*8 (N.D.Ohio Feb.6, 2009) (citing *SmithKline Beecham Corp. v. Rohm & Haas Co.,* 89 F.3d 154, 159 (3d Cir.1996) (internal citations omitted)).

This Court finds that Ohio law does not conflict with New Jersey law regarding the interpretation of ambiguous contracts. Thus, even if a choice-of-law analysis were necessary, an application of Ohio law would be proper.

The Parties disagree over the scope of the indemnity clause, particularly whether it encompasses the ARX program, and in what capacity. Though the Assets referenced throughout the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Agreement are parsed out in the relevant provisions of the Agreement (*see* ECF No. 48–2 at 80–83, 98), it is clear, based on the Parties' arguments, that the reach of what Plaintiffs own is in dispute. Under Ohio law, contract interpretation is a matter of law. The Court, however, may use "[e]xtrinsic evidence ... to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham,* 667 N.E.2d at 952.

Defendant has not shown that Plaintiffs' assertion for breach of the Agreement and demand for indemnity fails to state a claim upon which relief can be granted. (ECF No. 33 at 67.) Insofar as the Parties' arguments hinge on contract interpretation, the ambiguity in the contract merits further clarity, which can be resolved with extrinsic evidence later in this litigation. *See Astar Abatement, Inc. v. Cincinnati City School Dist. Bd. of Educ.,* Case No. 1:11–cv–587, 2012 WL 481799, at *4–5 (S.D.Ohio Feb.14, 2012) (after initially finding that the contractual language was ambiguous, the Court determined it may need to examine extrinsic evidence to determine the parties' intent, and thus did not dismiss the breach of contract claim). Accordingly, Defendant's motion to dismiss Plaintiffs' indemnity claim is denied.

*iv. Plaintiffs' claims for breach of contract, declaratory judgment, and securities violations*

Defendant contends that Plaintiffs have further failed to state a claim upon which relief can be granted for breach of contract, declaratory judgment, and securities claims.[FN2] Defendant argues that Plaintiffs have offered only insufficient facts to support their claims, thereby neglecting to demonstrate in their complaint how Greenwald is responsible for breaching the Agreement or violating the securities laws. (ECF No. 48 at 27.) Defendant claims that Plaintiffs' complaint "made no allegations of pre-closing copyright infringement whatsoever." (*Id.* at 28.) Moreover, Defendant insists that Plaintiffs' complaint indicates that "the copyrighted works in question were developed by Liang ... [then] were revealed to AWG when the closing occurred; and that [Plaintiffs] *then* committed various acts of post-closing. No pre-closing allegations were made." (*Id.* at 29) (emphasis in original). Finally, Defendant states that, even if the Court made all inferences in Plaintiffs' favor, the Agreement clearly stated that the warranties by Greenwald do not include warranties as to third-party software.

> FN2. The Court applies Ohio law to Plaintiffs' breach of contract claim.

**\*14** Plaintiffs argue that Greenwald's focus on post-closing versus pre-closing infringement is too narrow a reading of the Liang complaint. Plaintiffs contend that the Liang complaint does not limit its allegations to post-closing infringement, and does not differentiate between AWG's actions before and after the transaction. According to Plaintiffs, "a fair reading of the Liang complaint does not result in the conclusion that all of the alleged copyright infringement occurred after the transaction." (ECF No. 50 at 27.) Plaintiffs assert that Greenwald's argument, even if it were correct, is essentially moot because "Group 3 only owns the AWG that existed as of the transaction closing date—if that December 8, 2011 AWG did not include the so-called ARX program, then Greenwald misrepresented that fact and indemnity lies." (*Id.* at 28.) Similarly, Plaintiffs insist that, because AWG was the same company before and after the transaction, AWG's actions constituted copyright infringement whether it happened on December 7, 2011 or December 9, 2011. Thus, Plaintiffs maintain that Defendant is liable for his pre-closing actions.

Defendant has failed to demonstrate that Plaintiffs' claims for breach of contract, declaratory judgment, and securities violations do not state claims upon which relief can be granted. Defendant focuses only on his belief that he did not commit any pre-closing copyright infringement, but fails to address the other claims, despite referencing them at the outset of his argument. Neither Party's arguments are particularly clear, as both Plaintiffs and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2015 WL 65258 (S.D.Ohio)
**(Cite as: 2015 WL 65258 (S.D.Ohio))**

Defendant have seemingly combined their argument for each Count set forth in Plaintiffs' complaint. Despite that lack of clarity, Defendant has not shown this Court that Plaintiffs have failed to state a claim upon which relief can be granted. As set forth *supra,* section B.iii., insofar as it is relevant to the arguments regarding breach of contract, declaratory judgment, and securities violations, the Parties' dispute over the terms of the Agreement warrants further discussion. Accordingly, the Court will not dismiss Plaintiffs' claims at this stage in the litigation.

*v. Plaintiffs' fraud claims*

Defendant's final argument addresses Plaintiffs' fraud claims-Count III of Plaintiffs' complaint is brought under Ohio Revised Code § 1707.41 and Count IV is an alleged violation of federal securities laws. Section 1707.41(A) states:

> In addition to the other liabilities imposed by law, any person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts, unless the offeror or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the omitted facts to be not material.

**\*15** Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). To satisfy this rule, plaintiffs are required to " 'allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.' " *Farnsworth v. Nationstar Mortg., LLC,* 569 F. App'x 421, 430 (6th Cir.2014) (quoting *Sanderson v. HCA–The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir.2006) (internal quotation omitted). *See also United States v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 642 (6th Cir.2003) (explaining that Rule 9(b) requires a plaintiff to state with particularity the circumstances of fraud-"i.e., the time, place, and substance"). Thus, although the *circumstances* of the fraud must be stated with requisite particularity, a complaint need not include evidence. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 680 n. 9 (6th Cir.1988). What is required is simply sufficient notice of the nature of the claim. *Id.* at 680; *American Town Ctr. v. Hall 83 Assocs.,* 912 F.2d 104, 109–10 (6th Cir.1990).

When deciding whether there is fair notice or a lack of particularity, a court must consider the heightened standard of Rule 9(b) in light of the policy of simplified pleadings set forth in Rule 8. *Michaels Bldg. Co.,* 848 F.2d at 679; *American Town Ctr. .,* 912 F.2d at 109. For this Court to consider only the particularity of Rule 9(b) would be too narrow and inappropriate considering the simplicity and flexibility in pleading contemplated by the Rules. *Michaels Bldg. Co.,* 848 F.2d at 679. Further, the Sixth Circuit Court of Appeals has held that Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for plaintiffs to achieve particularity is held exclusively by the opposing party. *Id.* at 680. Rule 9(b) therefore does not require plaintiffs to be omniscient, and it is not intended to prevent courts from reaching the truth behind a case. *Id.* Rather, the main purpose behind Rule 9(b) is to provide notice of a plaintiff's claim to a defendant so that the defendant may be able to prepare an informed responsive pleading. *Id.* at 679; *Coffey v. Foamex, L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993).

Defendant insists that neither of Plaintiffs' fraud claims is plead sufficiently, and thereby fails

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

to meet the standard under ORC § 1707.41(A) or Rule 9(b). Defendant asserts that the complaint contains no allegations of materially false statements or omitted material facts upon which the aggrieved party relied. Drawing a comparison between the Agreement and statements made in Plaintiffs' complaint, Defendant contends that Plaintiffs' allegations of Defendant's failure to disclose (ECF No. 33 at ¶ 23, 25) are "built on [ ] entirely frivolous interpretation[s] of the underlying complaint ... and [are] barred by the express terms of the [Agreement]." (ECF No. 48 at 30.)

**\*16** Plaintiffs challenge Defendant's claim that the complaint lacks the details required for a fraud claim. Citing to various sections of their complaint, Plaintiffs argue that it sets forth the "who, what, when, where, and how" of the securities violations, rendering their claim for relief plausible. (ECF No. 50 at 29) (internal quotation omitted). Regarding Defendant's side-by-side comparison of the Agreement and Plaintiffs' complaint, Plaintiffs assert that the " 'Microsoft Word carve-out' does not apply to the ARX program that is the subject of the Liang Complaint (and therefore the subject of the Third–Party Complaint.)" (*Id.* at 30.)

This Court finds that Plaintiffs' fraud claims were plead with the requisite particularity required under Rule 9(b) and O.R.C. § 1707.41(A). Thus, the burden falls on Defendant to show that the claims warrant dismissal. Much like the arguments made in earlier sections, the Parties disagreement over the scope of the Agreement forms the basis of their dispute. Though the fraud claims are not, on their face, breach of contract claims, it is clear that contract interpretation weighs heavily on the Parties' arguments. As set forth previously, this Court finds it inappropriate to dismiss claims at this phase of the litigation that are at least somewhat reliant on the Agreement, the ambiguity of which merits further attention. Defendant has neglected to demonstrate how Plaintiffs' fraud allegations fail to state a claim upon which relief can be granted. Thus, the Court denies Defendant's motion to dismiss Plaintiffs' fraud allegations.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant Greenwald has failed to show that Plaintiffs AWG and Group 3's complaint should be dismissed due to lack of personal jurisdiction or based on Plaintiffs AWG and Group 3's failure to state a claim upon which relief can be granted. Accordingly, the Court **DENIES** Defendant Greenwald's motion to dismiss. (ECF No. 48.)

**IT IS SO ORDERED.**

S.D.Ohio,2015.
Huey Jiuan Liang v. AWG Remarketing
Slip Copy, 2015 WL 65258 (S.D.Ohio)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.