IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HODELL-NATCO INDUSTRIES, INC. | CASE NO. 1:08 CV 2755 |
| Plaintiff, | JUDGE NUGENT |
| v. | **MOTION FOR RECONSIDERATION OF MOTION _IN LIMINE_ NO. 4 TO PRECLUDE PLAINTIFF FROM EXPANDING ITS FRAUD CLAIMS AND MAKING ASSERTIONS OF FRAUDULENT CONDUCT BEYOND THE SCOPE OF ITS FIRST AMENDED COMPLAINT** |
| SAP AMERICA, INC., et al. | |
| Defendants. | |

Defendants SAP America, Inc. and SAP AG (collectively "SAP") hereby request that the

Court reconsider the prior erroneous denial of its Motion _in Limine_ No. 4 to Preclude Plaintiff from

Expanding its Fraud Claims and Making Assertions of Fraudulent Conduct Beyond the Scope of its

First Amended Complaint.

The reasons supporting this Motion are set forth in SAP's Memorandum in Support,

incorporated herein by reference.

Respectfully submitted,

/s/ Gregory J. Star
Michael J. Miller (admitted _pro hac vice_)
Gregory J. Star (admitted _pro hac vice_)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
_Attorneys for SAP America, Inc. and SAP AG_

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| | ) | |
| Plaintiff, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| SAP AMERICA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW OF SAP AMERICA, INC. AND SAP AG IN SUPPORT OF
MOTION FOR RECONSIDERATION OF MOTION *IN LIMINE* NO. 4 TO
PRECLUDE PLAINTIFF FROM EXPANDING ITS FRAUD CLAIMS AND
MAKING ASSERTIONS OF FRAUDULENT CONDUCT BEYOND
THE SCOPE OF ITS FIRST AMENDED COMPLAINT**

Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), through undersigned

counsel, hereby request that the Court reconsider a prior ruling concerning whether Hodell may

present claims for fraudulent concealment where Hodell has not included such claims in its

pleadings and where Hodell has never alleged that SAP owed a duty of disclosure and Hodell has

instead admitted that it had nothing more than an arm's length business relationship with SAP.

This issue was first raised in SAP's prior Motion *in Limine* No. 4, which was erroneously denied by

the Court without explanation or analysis.[1]  *See* ECF No. 222.

## I.    INTRODUCTION

Since starting this case in November 2008, Hodell has consistently pled fraud claims

based only on alleged *affirmative* false statements.  Nowhere in its operative First Amended

Complaint did Hodell allege that SAP was guilty of fraudulent *concealment* or even that SAP

owed a *duty* of disclosure such that SAP could even potentially face such a claim.  ECF No. 26.

---

[1] SAP is filing a separate motion addressing the viability of the tort claims (fraudulent inducement, fraud, and negligent misrepresentation) Hodell *did* include in its pleadings.

However, during summary judgment briefing, Hodell began to suggest that it was planning to present new fraud theories – namely a pre-contractual fraudulent concealment and a post-contractual fraudulent concealment claim.  But Hodell never sought to amend its pleadings, and SAP therefore moved *in limine* asserting a number of arguments, including that: (a) Hodell did not plead, and could not as a matter of law establish, the existence of a duty to disclose because Hodell has clearly admitted that it had no special relationship with SAP and that it was at most dealing with SAP in an arm's length commercial relationship; and (b) Ohio law does not recognize a claim of post-contractual fraud or fraudulent concealment.  *See* ECF Nos. 222 and 222-1.  SAP asked that the Court confine Hodell at trial to the actual fraud claims it did plead, and to preclude Hodell from arguing or offering evidence of any alleged concealment.

Although Hodell opposed SAP's motion, it essentially acknowledged that it had never pled a claim of fraudulent concealment or alleged that SAP owed a duty to disclose.  *See* ECF No. 239 at 9.  Hodell then made no argument in support of a claim for *pre*-contractual fraudulent concealment, and instead focused its substantive arguments only on whether it could pursue a *post*-contractual fraudulent inducement claim.[2]  *See id.* at 2-3, 9-10, n.1 (Hodell arguing only that it should be allowed to present a claim of post-contractual fraudulent concealment arising from events occurring after Hodell went live on Business One in March 2007).  Finally, Hodell articulated its theory of post-contractual fraudulent concealment as this:  that SAP supposedly failed to fully disclose facts concerning its "ability and/or willingness to remedy the software's [alleged] defects."  *Id.* at 10.

The parties' briefing necessitated a ruling that: (a) SAP owed no duty of disclosure, and Hodell thus cannot be allowed to pursue any claim of fraudulent concealment (whether pre- or

---

[2] As such, SAP understands that Hodell is *not* attempting to pursue a *pre*-contractual fraudulent concealment claim and that any claim of pre-contractual fraud deals only with alleged actual false statements.

post-contractual); and (b) Hodell cannot pursue a post-contractual fraud claim for the additional

reason that SAP's alleged failure to disclose facts about its willingness/ability to repair the

software is undisputedly the province of the warranty and remedy provisions that exist in the

License Agreement between SAP, and thus this (un-pled) claim is nothing more than an assertion

that SAP fraudulently performed a contractual obligation.[3]

But the Court denied SAP's motion without a chance for SAP to reply to Hodell's

opposition, without allowing argument, and without any analysis or explanation of the reasons

for the denial.  *See* Order on Motion *in Limine* No. 4, dated Oct. 10, 2014.  In so doing, the Court

failed to apply controlling law and clearly reached the wrong decision, thus warranting

reconsideration.  *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)

(clear error of law warrants reconsideration).

## II.  ARGUMENT

### A.  Hodell's Has Never Alleged, And Cannot As A Matter of Law Establish, That SAP Owed A Duty to Disclose Any Particular Information.

As this Court has held, "[i]n order to plead fraudulent concealment, a plaintiff must allege

both a wrongful failure to disclose certain information, and a duty to disclose that information."

*Loyd v. Huntington Nat'l Bank*, No. 1:08-cv-2301, 2009 U.S. Dist. LEXIS 51858, at *52 (N.D.

Ohio June 18, 2009) (Nugent, J.).  "The duty to disclose arises ***only when*** one party has

information 'that the other [party] is entitled to know because of a fiduciary or other similar

relationship of trust and confidence.'"  *Id*. at *53 (emphasis added) (citing *State v. Warner*, 564

N.E.2d 18, 39 (1990); *Chiarella v. United States*, 445 U.S. 222, 224-25 (1980)); *see also*

*McCarthy v. Ameritech Publ'g, Inc*., 763 F.3d 469, 480 (6th Cir. 2014) ("Ohio law imposes a

duty to disclose material information 'when one party has information that the other [party] is

---

[3] Of course, SAP does not concede that the software was defective or that, if it was, SAP failed in any manner to honor its contractual warranty.

entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" (citations omitted)).

A duty to disclose does not exist in ordinary business transactions.  *See Strategy Grp. for Media v. Lowden*, 2013-Ohio-1330, ¶ 29 (Ohio Ct. App. Mar. 21, 2013) (the existence of a duty to disclose is dependent on whether there was "a fiduciary relationship or some other relationship of special trust and confidence" or alternatively the relationship was "merely a business transaction."); *Showe Mgmt. Corp. v. Kerr*, 2004-Ohio-2557, ¶ 32 (Ohio Ct. App. May 20, 2004) ("In an arm's length business transaction, 'each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other.'" (citation omitted)); *Steinfels v. Ohio Dep't of Commerce, Div. of Sec.*, 719 N.E.2d 76, 82 (Ohio Ct. App. 1998) (no duty to disclose as a matter of law where there is no evidence of a fiduciary relationship or other similar relationship of trust and confidence and "the evidence shows [that] this was an arm's length transaction").

Here, Hodell simply did not allege the existence of a special relationship let alone the details of the particular information Hodell believes SAP was under a duty to disclose.  Nor does the record allow for the reasonable inference that one existed.  Indeed, it is undisputed that SAP and Hodell are commercial parties to a December 23, 2005 written software License Agreement controlled by the UCC.  *See* Exhibit A; ECF No. 26, ¶ 76 (Hodell conceding that the UCC applies).  Therefore, Ohio law presumes that SAP and Hodell were in an arm's length deal and that SAP did not owe a duty to disclose.  *See, e.g.*, *Strategy Grp. for Media v. Lowden*, 2013-Ohio-1330, ¶ 29 (Ohio Ct. App. Mar. 21, 2013).

And even more importantly, Hodell's President and CEO, Otto Reidl, testified on behalf of Hodell and clearly admitted that Hodell had no relationship with SAP prior to signing the

4

License Agreement in 2005 and that Hodell never met or spoke with SAP until March 2007.

Exhibit B., Tr. O. Reidl Dep. at 42:8-45:15; 184:20-185:16 (admitting Hodell did not meet SAP

until after Business One went live).  And Mr. Reidl further admitted that to the extent any

relationship did exist between Hodell and SAP, it was nothing more than arm's length:

> Q.  . . . At the time that you signed the license agreement in December of
> 2005, *did Hodell believe that it had any special relationship with SAP*
> *America, or SAP AG, such that it was in a position of trust or confidence*
> *with SAP*?
> MR. LAMBERT: Objection.
> THE WITNESS: ***I don't believe it was a special relationship***. I believe a
> company of SAP's stature requires an up and up relationship with all their
> clients.
> Q. So you'd agree that when you signed the license agreement, ***you had***
> ***nothing more than a business to business, or arm's length relationship***
> ***between Hodell and SAP, correct***?
> A. ***Correct***.

Tr. O. Reidl Dep. at 236:8-24 (emphases added).  Accordingly, Hodell's own admissions

preclude a finding that SAP owed a duty to disclose, and thus completely bar any purported

fraudulent concealment claim.

> **B.**      **Any Assertions of Fraudulent Concealment or Post-Contractual Fraud Fail**
> **As A Matter of Law Because They Merely Relate To The Alleged Breach of**
> **A Contractual Duty and Seek Damages Identical to Those For Breach of**
> **Contract.**

Ohio law provides that "'the existence of a contract action excludes the opportunity to

present the same case as a tort claim.'"  *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684

N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th

Cir. 1981)).  Ohio law includes ***two rules*** that must each be met in order to pursue tort claims in

the face of a contract.

***First***, a tort claim must be based on a breach of "a duty owed separately from that created

by the contract, that is, a duty owed even if no contract existed."  *Textron Fin. Corp. v.*

*Nationwide Mut. Ins. Co.*, 684 N.E.2d at 1270 (citing *Battista v. Leb. Trotting Ass'n*, 538 F.2d

5

111, 117 (6th Cir. 1976)).  **Second**, "[i]n addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract."  *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d at 1271 (citing *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 63 (S.D. Ohio 1986)); *see also Parma Cmty. Gen. Hosp. v. Premier Anesthesia of Parma*, No. 1:09-cv-325, 2011 U.S. Dist. LEXIS 11035, at *9-13 (N.D. Ohio Feb. 4, 2011) (Nugent, J.) ("[C]laims for fraud are not permitted when the damages resulting from the alleged fraud are not distinct from the damages available under a breach of contract claim.").

In *Textron*, the court made clear that when the underlying duty is contractual, a defendant cannot be held liable in tort based on allegations of intentional failures, intentional omissions, or intentional concealment.  *Textron Fin. Corp.* 684 N.E.2d at 1270 ("Nationwide's duty to obtain consent for the 4128 upgrade was purely contractual.  The additional allegation of an intentional failure to obtain Textron's consent to the upgrade by claiming concealment does not change the contractual nature of Textron's claim.")  The court further made clear that, under Ohio law, "[t]he motive of a breaching party is irrelevant to a contract action" and that allowing plaintiff to hold a defendant "liable for fraud based upon actions constituting a breach of contract would be to 'abandon the venerable rule that the motive of a breaching party to a contract is irrelevant to the merit of the promisee's claim, and would allow parties to convert contract actions into actions in tort by attacking the  motive of the breaching party . . . .'"  *Id*. at 1270-71 (internal citations omitted).

With respect to its supposed concealment/post-contractual fraud theory, Hodell argues that, after it went live on Business One in March 2007, SAP allegedly failed to disclose certain

facts about its "ability and/or willingness to remedy the software's [alleged] defects."  ECF No. 239 at 10; *see also id.* at 2-3, 9, n.1.  However, it is undisputed that the License Agreement: (a) provided Hodell with an express warranty concerning Business One, specifically including defects in the software; and (b) limited Hodell's remedies concerning Business One and any of the "Services" related to Business One, "whether due to SAP's negligence or breach of any other duty," to repair, re-performance, or repayment:

7.    PERFORMANCE WARRANTY/MAINTENANCE.
7.1   Warranty.  SAP warrants that the Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery.  The warranty shall not apply:  (i) if the Software is not used in accordance with the Documentation; or (ii)  if the defect is caused by a Modification, Integration Add-On, Licensee,  third-party software, or third party database.  SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.

* * *

9.    LIMITATIONS OF LIABILITY.
9.1   Licensee's Remedies.  Licensee's sole and exclusive remedies for any damages or loss in any way connected with the Software or Services furnished by SAP and its licensors, whether due to SAP's negligence or breach of any other duty, shall be, at SAP's option: (i) to bring the performance of the Software into substantial compliance with the functional specifications;  (ii) re-performance of Services; or (iii) return of an appropriate portion of any payment made by Licensee to its SAP Reseller with respect to the applicable portion of the Software or Services.

License Agreement, §§ 7.1, 9.1.

It cannot be disputed that the License Agreement itself was the ***sole source*** of any duty SAP may have had to remedy any defects related in any way to Business One.  To be sure, Hodell will rely upon the same factual allegations in support of its claim that SAP breached the License Agreement's warranty.  And (as explained more fully in SAP pretrial Motion For Reconsideration of The Viability of Plaintiff's Tort Claims), any damages Hodell seeks for breach of contract are identical to those it would seek on any fraudulent concealment/post-contractual fraud claim.

III.    <u>**CONCLUSION**</u>

Accordingly, the Court should now hold that Hodell cannot present (un-pled) claims for pre-contractual or post-contractual fraudulent concealment or other supposed post-contractual fraud.  Hodell admits the requisite duty to disclose did not exist because it had no special relationship with SAP, and such claims further fail because Hodell is simply recasting contractual promises and duties as post-contractual tort claims and, in any event, Hodell has no tort damages in addition to those it seeks for breach of contract.

Respectfully submitted,

/s/ Gregory J. Star
Michael J. Miller (admitted *pro hac vice*)
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorneys for SAP America, Inc. and SAP AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of June 2015, a copy of the foregoing Motion for Reconsideration of Motion *in Limine* No. 4 to Preclude Plaintiff from Expanding its Fraud Claims and Making Assertions of Fraudulent Conduct Beyond the Scope of its First Amended Complaint, and supporting memorandum of law and exhibits, was filed electronically and served.

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)