# APPENDIX

Unpublished Opinions Cited in Brief

  Cited
As of: June 12, 2015 5:20 PM EDT

# Cooley v. Valero Energy Corp.

United States District Court for the Southern District of Ohio, Eastern Division

March 20, 2012, Filed

Case No. 2:11-cv-526

**Reporter**
2012 U.S. Dist. LEXIS 40291

Christopher Cooley, Plaintiff, v. Valero Energy Corporation, et al., Defendants.

## Core Terms

vicarious liability, apparent agency, argues, personal jurisdiction, gas station, leases, place of public accommodation, alleges, motion to dismiss, genuine issue of material fact, summary judgment, sublicensees, principles, contacts, franchise agreement, disability, premises, summary judgment motion, public accommodation, franchisee, renovation, landlord, operates, station, entity, signs, fuel, owns, convenience store, actual agency

## Case Summary

### Overview

In a customer's discrimination suit under 42 U.S.C.S § 12182(a) and Ohio Rev. Code § 4112.02(G) after she was ordered out of a gas station/convenience store with her service dog and assaulted by an employee, summary judgment was denied to the store and others because genuine issues of material fact existed as to whether agency existed between them.

### Outcome

Defendants' motions to dismiss or for summary judgment denied.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Legal Entitlement

**HN1** Pursuant to Fed. R. Civ. P. 56(a), the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Evidentiary Considerations > Scintilla Rule

**HN2** The court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Legal Entitlement

**HN3** When reviewing a summary judgment motion, the court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the court must refrain from making credibility determinations or weighing the evidence. The court disregards all evidence favorable to the moving party that the jury would not be not required to believe. Summary judgment will not be granted if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Thus, the central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Business & Corporate Compliance > ... > Accessibility Requirements > Americans With Disabilities Act > Enforcement Actions

David Sporar

Case: 1:08-cv-02755-DCN  Doc #: 339-1  Filed: 06/12/15  3 of 17. PageID #: 17299

Page 2 of 11
2012 U.S. Dist. LEXIS 40291, *40291

Civil Rights Law > ... > Accessibility Requirements > Americans With Disabilities Act > Scope

**HN4** See 42 U.S.C.S. § 12182(a).

Business & Corporate Law > ... > Duties & Liabilities > Care, Good Faith & Reasonable Skill > Duty of Good Faith

Business & Corporate Law > ... > Duties & Liabilities > Negligent Acts of Agents > Joint & Several Liability

Torts > Vicarious Liability > Agency Relationships > General Overview

**HN5** The Supreme Court of the United States has determined that common law agency and vicarious liability principles are presumed incorporated into federal statutes. Vicarious liability between principles and agents is an example of such an ordinary background tort principle.

Business & Corporate Compliance > ... > Accessibility Requirements > Americans With Disabilities Act > Enforcement Actions

Civil Rights Law > ... > Accessibility Requirements > Americans With Disabilities Act > Scope

Torts > Vicarious Liability > Corporations > General Overview

**HN6** The United States District Court for the Southern District of Ohio, Eastern Division believes that vicarious liability can be applied to the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12182. The United States Congress is presumed to have enacted § 12182 against a background of ordinary vicarious liability rules. Moreover, the purpose of the ADA is to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities by invoking the sweep of congressional authority. 42 U.S.C.S. § 12101. In enacting the ADA, Congress intends to provide broad coverage. There is nothing in the Act to suggest that applying vicarious liability would be inconsistent with Congress' intent. Although subsection (a) prohibits discrimination by any person and does not define whether person covers corporations or entities, the Act refers to entity in 42 U.S.C.S. § 12182(b)(2)(A), (b)(3).

Business & Corporate Law > ... > Authority to Act > Actual Authority > Express Authority

Business & Corporate Law > ... > Establishment > Elements > Application of Agency Law Principles

Business & Corporate Law > Distributorships & Franchises > Franchise Relationships > Elements

**HN7** Under Ohio law, actual agency exists where there is a consensual relationship between the agent and principal. An agency relationship can exist as to one purpose but not another. The test is whether the employer retained control, or the right to control, the mode and manner of doing the work contracted for. The existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them. On the other hand, a distributorship relationship, without more, will not create an agency relationship. To determine whether a principal-agent relationship exists, courts consider the same factors as in the absence of a franchisor-franchisee relationship.

Business & Corporate Law > ... > Authority to Act > Actual Authority > General Overview

Business & Corporate Law > Agency Relationships > Establishment > Agency Agreements

Business & Corporate Law > ... > Establishment > Elements > Application of Agency Law Principles

**HN8** A clause disclaiming agency is not dispositive.

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Elements

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Proof

Business & Corporate Law > Distributorships & Franchises > Franchise Relationships > Elements

**HN9** Even where no actual agency relationship exists, Ohio law recognizes liability under the doctrine of apparent agency. Under Ohio law a franchisor may be vicariously liable for a franchisee's tortious conduct under a theory of apparent agency or agency by estoppel. To prove apparent agency, a plaintiff must show: (1) the principal held the agent out to the public as possessing sufficient authority to act on his behalf; and (2) the person dealing with the agent knew these facts and acting in good faith had reason to believe the agent possessed the necessary authority. Apparent authority is determined by the acts of the principal rather than the acts of the agent.

Business & Corporate Compliance > ... > Disability Discrimination > Scope & Definitions > Covered Entities

Business & Corporate Compliance > ... > Disability Discrimination > Scope & Definitions > Discriminatory Conduct

**HN10** See Ohio Rev. Code § 4112.02(G).

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > General Overview

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Evidence > Burdens of Proof > Allocation

**HN11** A plaintiff has the burden of proving personal jurisdiction. However, where the court rules on a *Fed. R. Civ. P. 12(b)(2)* motion based upon the written submissions and affidavits alone and does not conduct an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction. In such circumstances, the burden on the plaintiff is relatively slight. The court must consider the facts alleged in the complaint in the light most favorable to the plaintiff, without weighing the contrary assertions of the moving party.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Due Process

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

**HN12** Where a court has subject matter jurisdiction because of the existence of a federal question, such as here, personal jurisdiction exists over a defendant: (1) if the defendant is amenable to service of process under the forum state's long-arm statute; and (2) if the exercise of personal jurisdiction would not deny the defendant due process.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

**HN13** See *Ohio Rev. Code § 2307.382*.

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Proof

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

**HN14** Under Ohio law, personal jurisdiction can be exercised over one who acts directly or by an agent. *Ohio Rev. Code § 2307.382*.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Due Process

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

**HN15** The relevant due process inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. The court may exercise personal jurisdiction over a non-resident defendant based on either specific or general jurisdiction. General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. In contrast, specific jurisdiction is proper under circumstances where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. Specific jurisdiction may be based on a single act.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

Evidence > Inferences & Presumptions > Inferences

**HN16** In analyzing specific jurisdiction, a court applies three criteria: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. When the first two prongs are met, an inference of reasonableness arises and only the unusual case will not meet the third criteria.

Civil Rights Law > ... > Accessibility Requirements > Americans With Disabilities Act > Accommodations

Business & Corporate Compliance > ... > Accessibility Requirements > Americans With Disabilities Act > Enforcement Actions

Civil Rights Law > ... > Accessibility Requirements > Americans With Disabilities Act > Scope

**HN17** By its terms, the Americans with Disabilities Act, *42 U.S.C.S. § 12182(a)*, includes landlords. *42 U.S.C. § 12182(a)* imposes liability for discrimination by any person who owns, leases or leases to, or operates a place of public accommodation. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract. 28 C.F.R. § 36.201(b). Direct landlord liability conforms to the legislative intent as well.

**Counsel:** [*1] For Christopher Cooley, Plaintiff: Avonte Darius Campinha-Bacote, Campinha Bacote LLC, Columbus, OH.

For Valero Energy Corporation, Valero Marketing and Supply Company, Defendants: William R Post, LEAD ATTORNEY, Baker & Hostetler LLP, Columbus, OH; Melissa Dunlap Palmisciano, Columbus, OH.

For JATT Bros LLC, Defendant: David William Douglas, LEAD ATTORNEY, Columbus, OH.

For DT Stores LLC, Demir Tahiraj, Defendants: John Clooney Cahill, LEAD ATTORNEY, Nationwide Insurance Columbus Trial Division, Columbus, OH.

**Judges:** MICHAEL H. WATSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MICHAEL H. WATSON

# Opinion

### OPINION AND ORDER

Plaintiff Christopher Cooley ("Plaintiff") sues Valero Energy Corporation ("VEC"), Valero Marketing and Supply Company ("VMSC"), JATT Bros. LLC ("JATT"), Pap Oil Company LLC ("Pap Oil"), DT Stores LLC ("DT Stores"), Demir Tahiraj, and John Does 1 and 2 (collectively, "Defendants") in connection with his attempt to enter a gas station with a service animal. Three Defendants, VEC, VMSC, and JATT, move to dismiss. ECF Nos. 12, 13, 17.

### I. FACTUAL BACKGROUND

Plaintiff asserts the following facts. Plaintiff has vision and hearing impairments and relies on the assistance of a guide dog. Am. Compl. ¶ 3, ECF No. [*2] 19. On May 6, 2011, Plaintiff and his sister were driving and stopped at "a Valero Gas Station" in Columbus, Ohio to buy gas and purchase coffee. *Id.* ¶ 14. Plaintiff walked into the gas station with his guide dog and was confronted by Demir Tahiraj, an employee who told Plaintiff to leave because pets were not allowed in the store. *Id.* ¶ 14. Plaintiff tried to explain to Mr. Tahiraj that the dog was a guide dog, not a pet. *Id.* Mr. Tahiraj did not listen and instead yelled at Plaintiff to get out. *Id.* Plaintiff again tried to explain his situation to Mr. Tahiraj, but Mr. Tahiraj continued to scream, threaten Plaintiff, and insist Plaintiff leave the store. *Id.* ¶ 15-16. Instead of leaving, Plaintiff pulled out his service identification card and walked to the back of the store to pour a cup of coffee. *Id.* ¶ 17. Mr. Tahiraj came after him, raised his fist as if to strike Plaintiff, but instead grabbed Plaintiff by the collar after Plaintiff's sister intervened. *Id.* ¶ 17; Mem. Opp. VMSC Mot. Dismiss 7, ECF No. 25. Mr. Tahiraj called the police, and Plaintiff called 9-1-1. *Id.* ¶ 18, Mem. Opp. VMSC Mot. Dismiss 7, ECF No. 25.

Plaintiff's complaint lists seven counts. In Count One, Plaintiff [*3] alleges violations of Title III of the Americans with Disabilities Act ("ADA"), specifically *42 U.S.C. § 12182(a)* and 28 C.F.R. § 36.104. In Count Two, Plaintiff alleges violations of *Ohio Revised Code § 4112.02(G)*. Counts Three and Four allege the Ohio torts of battery and assault. Count Five alleges the Ohio tort of intentional infliction of emotional distress. Count Six alleges the Ohio tort of negligent infliction of emotional distress; Count Seven alleges the Ohio tort of negligent hiring, retention and/or supervision.

Plaintiff describes the relationship between Defendants as follows: VEC is the parent company of VMSC. Through VMSC, VEC enters into distributor agreements to market and sell Valero's products. VMSC has a franchise agreement with Pap Oil, which gave Pap Oil the right to distribute and sell Valero gasoline and other products and to use the Valero marks in selling those products. In return, Pap Oil can only distribute Valero gasoline and products to Valero-branded fuel dispensing stations that VMSC approves in writing. Pap Oil may designate sublicensees, and Plaintiff alleges JATT and/or DT Stores are sublicensees. JATT owns the premises on which the gas station is [*4] located and rents those premises to DT Stores, which operates the gas station. Demir Tahiraj is DT Stores' incorporator, and John Does 1 and 2 were employees working at the time the incident occurred. Mem. Opp. VMSC Mot. Dismiss 89, ECF No. 25; Am. Compl. ¶¶ 4-11, ECF No. 19.

Defendants do not dispute this basic arrangement between the parties, but they do dispute the extent to which any agency or apparent agency existed between VEC and VMSC and the other Defendants.

### II. VMSC'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

VMSC moves to dismiss Plaintiff's complaint with prejudice, or in the alternative moves for summary judgment. VMSC Mot. Dismiss, ECF No. 13. In responding, Plaintiff argues his claims survive either standard and argues throughout that there is a genuine issue of material fact. Pl. Resp. 19, ECF No. 25. Because both parties have briefed the issue as one for summary judgment and offered evidence outside the pleadings, the Court will treat VMSC's motion as one for summary judgment.

**A. Standard of Review**

**HN1** Pursuant to *Federal Rule of Civil Procedure 56(a)*, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material [*5] fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*.

**HN2** The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; see also *Petty v. Metro. Gov't. of Nashville-Davidson Cnty., 538 F.3d 431, 438-39 (6th Cir. 2008)*.

**HN3** When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*; *Henderson v. Walled Lake Consol. Sch., 469 F.3d 479, 487 (6th Cir. 2006)*. The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves, 530 U.S. at 150-51*. Summary judgment will not be granted if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable [*6] jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*; *Barrett v. Whirlpool Corp., 556 F.3d 502, 511 (6th Cir. 2009)*. Thus, the central issue is '"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Anderson, 477 U.S. at 251-52*.

**B. Discussion**

VMSC argues the complaint fails to state a claim against it under *Federal Rule of Civil Procedure 12(b)(6)*. With respect to Plaintiff's ADA claim, VMSC argues Plaintiff has not alleged, and could not show even if he did allege, that VMSC owned, leased, or operated a place of public accommodation, as required under *§ 302* of the ADA. VMSC Mot. Dismiss 3, ECF No. 13. In support of its motion for summary judgment, VMSC offers the affidavit of David Parker, the Senior Vice President, Product Supply and Wholesale Marketing of VMSC, who swore VMSC does not own, lease or operate the gas station at issue or the property on which it is located. Parker Aff. ¶ 9, ECF No. 13-1.

Plaintiff responds that it is not suing VMSC for directly liability under *§ 12182(a)* but rather is claiming vicarious [*7] liability under theories of actual and apparent agency. Pl. Resp. Opp. 4, ECF No. 25. Plaintiff argues there are genuine issues of fact as to whether such actual or apparent agencies exist. *Id.* at 2.

A preliminary issue that the Court must decide, therefore, is whether *§ 12182(a)* provides for vicarious liability.

**i. The ADA Permits Vicarious Liability**.

Plaintiff's federal claim is brought under *§ 302* of the ADA, which states:

> **HN4** No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*42 U.S.C. § 12182(a)*.

**HN5** The Supreme Court of the United States has determined that common law agency and vicarious liability principles are presumed incorporated into federal statutes. *Meyer v. Holley, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)*. *Meyer* involved interpretation of the Fair Housing Act ("FHA") which, like the ADA, was silent about vicarious liability. *Id. at 285*. The Supreme Court determined that actions brought under the FHA were essentially tort actions and reiterated [*8] that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Id.* (citation omitted). Vicarious liability between principles and agents is an example of such an ordinary background tort principle. *Id.*

The Sixth Circuit has not decided specifically whether vicarious liability applies to Title III of the ADA, but it has extended common law principles of vicarious liability to the Fair Credit Reporting Act ("FCRA") and Title I of the ADA. *Jones v. Federated Finan. Reserve Corp, 144 F.3d 961, 965-66 (6th Cir. 1998)* (finding vicarious liability based on apparent authority was consistent with Congress' intent behind the FCRA); *Johnson v. City of Saline, 151 F.3d 564, 568 (6th Cir. 1998)* (applying common law agency principles to determine whether plaintiff was an employee under Title I of the ADA). Important to the Sixth Circuit's decision in *Jones* was the principle that corporations can only act

through their agents, and failure to allow vicarious liability would allow corporations to even wilfully violate the statute. Therefore, the Act's goal of [*9] deterrence would be subverted without allowing apparent authority as a basis for vicarious liability. *Jones, 144 F.3d at 966*. Moreover, this Court has previously applied common law agency principles to federal statutes in the context of franchisor-franchisee relationships, though not under the ADA. *Taylor v. Checkrite, Ltd., 627 F. Supp. 415, 416 (S.D. Ohio 1986)* (determining whether franchisee was franchisor's agent in the FCRA and Fair Debt Collection Practices Act context).

With these principles in mind, *HN6* the Court believes that vicarious liability can be applied to *§ 12182* of the ADA. Congress is presumed to have enacted *§ 12182* against a background of ordinary vicarious liability rules. Moreover, the purpose of the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" by "invok[ing] the sweep of congressional authority . . . ." *42 U.S.C. § 12101*. In enacting the ADA "Congress intended . . . to provide broad coverage." ADA Amendments Act of 2008, *PL 110-325 (Sept. 25, 2008)* (re-defining "disability"). There is nothing in the Act to suggest that applying vicarious liability would be inconsistent [*10] with Congress' intent. Although *subsection (a)* prohibits discrimination by "any person" and does not define whether person covers corporations or entities, the Act refers to "entity" in *subsection (b)(2)(A)* and *(b)(3)*. *42 U.S.C. § 12182(b)(2)(A), (b)(3)*. The Department of Justice further noted that a "private entity" can own, lease (lease to) or operate a place of public accommodation. 28 C.F.R. § 36.104. The Court is aware of only one circuit to have addressed whether *§ 12182* includes vicarious liability. *Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034, 1036 (8th Cir. 1998)* did not extend principles of vicarious liability to *§ 12182*. *Pona* was decided before *Meyer*, however. For the reasons discussed above, the Court finds that vicarious liability does apply to *§ 12182* of the ADA.

**ii. A Genuine Issue of Material Fact Exists as to Whether Actual or Apparent Agency Exists.**

VMSC argues that summary judgment must be granted on the issue of whether it is liable under theories of actual or apparent agency. Plaintiff argues the existence of agency (either actual or apparent) is a question of fact for the jury.

*HN7* Under Ohio law,[1] actual agency exists "where there is a consensual relationship between [*11] the agent and principal." *Brainard v. Am. Skandia Life Assur. Corp., 432 F.3d 655, 661 (6th Cir. 2005)*. An agency relationship can exist as to one purpose but not another. *Id. at 662*. "The test is whether 'the employer retain[ed] control, or the right to control, the mode and manner of doing the work contracted for.'" *Beddia v. Goodin, 957 F.2d 254, 257 (6th Cir. 1992)* (quoting *Councell v. Douglas, 163 Ohio St. 292, 126 N.E.2d 597 (1955))*. "The existence of a franchisor—franchisee relationship between persons does not in itself preclude the existence of a principal—agent relationship between them." *Bricker v. R & A Pizza, Inc., 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011)* (internal citations and quotations omitted). On the other hand, a distributorship relationship, without more, will not create an agency relationship. *Premier Bus. Group, LLC v. Red Bull of N. Am., Inc., Case No. 08—CV—01453, 2009 U.S. Dist. LEXIS 91647, 2009 WL 3242050 (Sept. 30, 2009)*. "To determine whether a principal-agent relationship exists, courts consider the same factors as in the absence of a franchisor—franchisee relationship." *Id. at 623* (internal quotation omitted). Thus, the central question for actual agency is whether VMSC had control over DT Stores. [*12] Typically, the question of an agency relationship is one of fact, rather than one of law. *Brainard, 432 F.3d at 661*.

VMSC argues it did not have control over individual gas stations and argues the franchise agreement between VMSC and Pap Oil specifically states it should not be construed as a contract of agency. Parker Aff. ¶ 7, ECF No. 13-1. VMSC also argues the franchise agreement is only between it and its distributor, Pap Oil; VMSC has no contractual relationship with JATT, DT Stores, or their respective employees. VMSC contends that the only supervisory authority VMSC has over sublicensees relates to retail pricing, advertising, and/or motor fuel dispensing practices. VMSC Mot. Dismiss 7, ECF No. 13; VMSC Reply 6, ECF No. 37.

Plaintiff asserts the clause disclaiming agency is not dispositive and cites other provisions of the franchise agreement, which Plaintiff argues shows VMSC retains control over sublicensees. Pl. Resp. 9-16, 20, ECF [*13] No. 25. The Court agrees with Plaintiff that *HN8* a clause disclaiming agency is not dispositive. See *Agosto v. Leisure World Travel, Inc., 36 Ohio App. 2d 213, 216, 304 N.E.2d 910 (Ohio Ct. App. Tenth Dist. 1973)*.

Moreover, reasonable jurors could differ as to whether the franchise agreement retains VMSC control over important aspects of the operation of sublicensees, creating an actual

---

[1] The Court continues to agree with the reasoning set out in *Taylor, 627 F. Supp. at 417 n. 2*: applying Ohio common-law rules of agency (to a federal statute) is appropriate in the context of agency relationships between a franchisor and franchisee.

Case: 1:08-cv-02755-DCN  Doc #: 339-1  Filed: 06/12/15  8 of 17.  PageID #: 17304

Page 7 of 11
2012 U.S. Dist. LEXIS 40291, *13

agency relationship. For example, the franchise agreement states that the "'Valero' branded fuel dispensing stations" will be operated by Distributor (Pap Oil) "subject to the terms and conditions of this Agreement." Franchise Agmt. ¶ B, ECF No. 13-1. Those terms acknowledge "VMSC's right to provide communications directly to its Dealer(s) regarding requirements for each Station as set forth in this Agreement ...." Id. ¶ 6. VMSC may issue directives and requirements concerning the use of Marks, with which sublicensees must "immediately comply." Id. ¶ 7(C). VMSC may also request "renovation and modernization of the Stations' premises ... to reflect the then-current specifications and image of the Valero brand." Id. If VMSC requests such renovations or modernizations, Pap Oil must either make or require its sublicensees to [*14] make those changes within the time specified by VMSC and in a manner satisfactory to VMSC. Id.

Therefore, VMSC retained the right to communicate directly with sublicensees and to issue mandatory directives with respect to the use of the "Marks" and with respect to renovation and modernization of the sublicensees' gas stations. The language concerning renovation is not clearly limited to preclude requiring renovations and modernizations for compliance with the ADA, and limits the right only to changes to premises that reflect the "then-current specifications and image of the Valero brand." As such, it is subject to interpretation as to whether that provision allows VMSC to require renovation for compliance with the ADA, including adding handicapped parking spaces at the convenience stores, ramps, or allowance of guide dogs on the premises, when such compliance would fit within VMSC's current specifications or be required to maintain its current image. Based on the evidence presented, a reasonable jury could interpret the provision as granting VMSC such right of control over individual sublicensees.

Plaintiff also asserts apparent agency as a theory of liability. HN9 Even where no actual agency [*15] relationship exists, Ohio law recognizes liability under the doctrine of apparent agency. "Under Ohio law a franchisor may be vicariously liable for a franchisee's tortious conduct under a theory of apparent agency or agency by estoppel...." *Bricker, 804 F. Supp. 2d at 623*. To prove apparent agency, a Plaintiff must show: (1) the principal held the agent out to the public as possessing sufficient authority to act on his behalf; and (2) the person dealing with the agent knew these facts and acting in good faith had reason to believe the agent possessed the necessary authority. *Ohio State Bar Ass'n v. Martin, 118 Ohio St. 3d 119, 126, 2008 Ohio 1809, 886 N.E.2d 827 (2008)* (construing apparent agency in franchisee—franchisor context). Apparent authority is therefore determined by the acts of the *principal* rather than the acts of the agent. *Id.*

VMSC argues that it is too far removed from DT Stores and/or Demir Tahiraj for the latter to be considered VMSC's agents. The Court does not agree with VMSC that the degree to which it is removed from DT Stores itself resolves the issue of apparent agency. The issue is whether VMSC held DT Stores out as its agent, regardless of what the actual relationship was. Moreover, because [*16] apparent agency deals with whether the principal held another party out as its agent, whether VMSC actually had control over DT Stores and/or its employees pursuant to the franchise agreement is inapplicable to this analysis.

With respect to the first prong, there is a genuine issue of material fact as to whether Valero held out the gas station as its agent. Plaintiff argued a "Valero" sign was posted on the canopy over the gas pumps, the gas pumps themselves, and the sign displaying the gas prices. Plaintiff also provided the photos and has authenticated them in his affidavit.[2] VMSC's argument that Valero does not appear on the convenience store is not well taken. A reasonable jury could find the signs near the gas pumps would lead a reasonable person to conclude that the convenience store associated with the pumps was also a Valero store.

VMSC [*17] argues the signs are not enough to create an apparent agency. Under Ohio law, however, they are. Apparent agency applies when the apparent agent is permitted to use the principal's business or trade name. *Broock v. Nutri/System, Inc., 654 F. Supp. 7, 10 (S.D. Ohio 1986)* (quoting *Agosto v. Leisure World Travel, Inc., 36 Ohio App. 2d 213, 304 N.E.2d 910 (Ohio Ct. App. Tenth Dist. 1973)*. The Ohio Supreme Court has specifically rejected VMSC's argument that the mere provision of corporate logos does not constitute a holding out for apparent agency purposes. *Shaffer v. Maier, 68 Ohio St. 3d 416, 418, 1994 Ohio 134, 627 N.E.2d 986 (1994)* (finding trademark signs sufficient to present question of apparent agency to jury in case involving aviation fuel industry). Even if VMSC were correct, Plaintiff presented evidence in addition to the signs. Plaintiff has presented evidence that the Valero website holds its franchisees out as its agents to

---

[2] The photos have been authenticated and are offered merely to show that the signs read "Valero." They are not offered for the truth of any matter asserted herein and therefore would not be inadmissable hearsay. A jury would be permitted to consider the photos as they relate to the issue of whether Valero held out the gas station as its agent.

the public, including that the website states Valero will sometimes pay to convert a gas station into a "Valero" branded gas station and touts the "courteous and friendly personnel" of its Valero Branded Locations.[3] Plaintiff has created a genuine issue of material fact as to the first element of apparent [*18] agency.

Plaintiff has also presented a genuine issue of material fact as to the second element of apparent agency. Plaintiff offered an affidavit stating that he could see the Valero signs and thought it was a good idea to stop for gas at that station. Cooley Aff. ¶ 4, ECF No. 25-1. Plaintiff further stated that it is his experience that larger corporations tend to train their employees on anti-discrimination laws and that he therefore feels safer patronizing such businesses. Id. ¶ 5. He stated he did not know the station was independently owned and did not see any sign indicating the convenience store was owned by any company other than Valero. Id. ¶ 9. Plaintiff has therefore created a genuine issue of material fact as to whether he believed Valero held the gas station, and its employee Mr. Tahiraj, out as a Valero agent and whether he believed Mr. Tahiraj had authority to make ADA reasonable accommodations decisions for Valero.[4]

With respect to violation of the ADA, Plaintiff has created a genuine issue of material fact as to both actual agency and apparent agency, and VMSC's motion for summary judgment is denied.

### iii. VMSC Motion to Dismiss for Claims Arising Under Ohio Revised Code § 4112.02(G) and the Ohio Torts is Denied.

Having denied VMSC's motion for summary judgment with respect to ADA liability, the Court now turns to VMSC's remaining arguments. VMSC argues it is entitled to summary judgment with respect to Plaintiff's claim under Ohio Revised Code § 4112.02(G) because Plaintiff does not allege VMSC is a proprietor, employee, keeper or manager of a place of public accommodation.

The Ohio disability discrimination law states:

   HN10 It shall be an unlawful discriminatory practice:

   ...

   For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons [*20] applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev. Code § 4112.02(G).

VMSC has only argued it cannot be directly liable under Ohio law. Plaintiff has not argued direct liability, however. Pl. Resp. 4, ECF No. 25. Plaintiff argues that common law principles of vicarious liability apply to § 4112.02 and torts, including intentional torts. VMSC has not argued that vicarious liability cannot apply to § 4112.02 or the Ohio torts or otherwise cannot withstand a motion for summary judgment as to these claims. Instead, VMSC has argued only that no agency exists. As the Court has found the existence of agency to be a question for trial, summary judgment is denied with respect to Plaintiff's § 4112.02 and Ohio tort claims.

### III. VEC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

VEC argues this Court lacks personal jurisdiction over it. *HN11* Plaintiff has the burden of proving personal jurisdiction. *Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)*. However, where the Court [*21] rules on a 12(b)(2) motion based upon the written submissions and affidavits alone and does not conduct an evidentiary hearing, a plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)* (internal quotation omitted). In such circumstances, the burden on Plaintiff is relatively slight. *Air Prod. and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 549 (6th Cir. 2007)*. The Court must consider the facts alleged in the complaint in the light most favorable to the plaintiff, without weighing the contrary assertions of the moving party. *Id.*

*HN12* Where a court has subject matter jurisdiction because of the existence of a federal question, such as here, personal

---

[3] The statements on the website are statements of a party-opponent and are therefore properly considered in this summary judgment motion.

[4] The Court agrees with VMSC that any evidence offered by Plaintiff as to the representations made by Valero on its website [*19] with respect to holding out franchisees as agents should not factor into the analysis of whether Plaintiff believed the gas station was owned by Valero. VMSC Reply 10, ECF N. 37. Plaintiff has not offered evidence that he reviewed the website prior to his decision to enter the gas station convenience store.

Case: 1:08-cv-02755-DCN Doc #: 339-1 Filed: 06/12/15 10 of 17. PageID #: 17306

Page 9 of 11
2012 U.S. Dist. LEXIS 40291, *21

jurisdiction exists over a defendant: (1) if the defendant is amenable to service of process under the forum state's long-arm statute; and (2) if the exercise of personal jurisdiction would not deny the defendant due process. *Bird, 289 F.3d at 871*.

### A. Personal Jurisdiction Exists Under the Ohio Long-Arm Statute.

In pertinent part, the Ohio long-arm statute, *Ohio Revised Code § 2307.382*, provides:

> **HN13** (A) A court may exercise personal jurisdiction over a person who acts directly [*22] or by an agent, as to a cause of action arising from the person's:
> 
> (1) Transacting any business in this state;
> 
> (2) Causing tortious injury by an act or omission in this state;
> 
> * * *
> 
> (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

*Ohio Rev. Code § 2307.382*.

Plaintiff argues that the Court has personal jurisdiction over VEC because VEC has direct sufficient contacts with Ohio, JATT and DT Stores have contacts with Ohio and are the apparent agents of VEC, and personal jurisdiction can be exercised over VEC because VMSC and another subsidiary, Valero Renewable Fuels Company, LLC, are alter egos of VEC. Pl. Resp. 2, ECF No. 26.

**HN14** Under Ohio law, personal jurisdiction can be exercised over one who acts directly "or by an agent." *Ohio Rev. Code § 2307.382*. A threshold question, therefore, is whether DT Stores was VEC's agent (apparent or otherwise). See *Lachman v. Bank of Louisiana in New Orleans, 510 F. Supp. 753, 759 (N.D. Ohio 1981)* (analyzing apparent agency as basis for personal jurisdiction). The Court has already found that a genuine issue of material fact exists as to whether [*23] VMSC held out DT Stores as its apparent agent. The entity in this analysis is VEC, but the same reasoning applies because VEC is the parent company of VMSC. There is a genuine issue of material fact as to whether "Valero" held out DT Stores as its agent, and a reasonable jury could differ as to whether the agent was so held out by VMSC, VEC, or both.

Second, Plaintiff made a *prima facie* showing that the alleged actions of Mr. Tahiraj occurred in Ohio and created a tortious injury. Plaintiff's complaint alleges that Mr. Tahiraj works at the DT Store (which is located in Columbus, Ohio) and that the action occurred there. Am. Compl., ECF No. 19.

Last, the causes of action arise directly from the act causing a tortious injury and therefore meet the requirement of *Ohio Revised Code § 2307.382(C)*. Thus, Plaintiff has made a *prima facie* showing of personal jurisdiction under Ohio's long-arm statute under an apparent agency theory.

### 2. Personal Jurisdiction Exists Under Principles of Due Process.

**HN15** The relevant Due Process inquiry is "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would [*24] comport with 'traditional notions of fair play and substantial justice.'" *Theunissen, 935 F.2d at 1459* (quoting *Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*. The Court may exercise personal jurisdiction over a non-resident defendant based on either specific or general jurisdiction. See *Bird, 289 F.3d at 873*. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Id. (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989))*. In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id. at 874* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984))*. Specific jurisdiction may be based on a single act. *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd., 91 F.3d 790, 794 (6th Cir. 1996)*. In this case, Plaintiff has not articulated [*25] whether he attempts to establish general or specific jurisdiction, but the Court finds that Plaintiff has made a *prima facie* showing of specific jurisdiction.

**HN16** In analyzing specific jurisdiction, the Court applies three criteria, derived from *Southern Machine Co. v. Mohasco Indus., 401 F.2d 374 (6th Cir. 1968)*.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.

Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen, 935 F.2d at 1460* (internal quotations and citations omitted). In considering these three factors, the Court may consider the actions of VEC's apparent agents, and assuming for the determination of the motion to dismiss that DT Stores was an agent of VEC, "it follows that the minimum contacts with Ohio of the agent were also minimum contacts of the principal." *Lachman, 510 F. Supp. 753, 760 (N.D. Ohio 1981)*. DT Stores availed itself of the laws of Ohio by doing business here. [*26] Plaintiff's claim arises out of that business. These two prongs being met, "an inference of reasonableness arises" and "only the unusual case will not meet the third criteria." *Air Prod., 503 F.3d at 554*. DT Stores does not contest personal jurisdiction, and it is certainly reasonable to exercise jurisdiction over DT Stores. If DT Stores is VEC's agent, it is also reasonable to exercise personal jurisdiction over VEC.

Because Plaintiff has established a *prima facie* showing of personal jurisdiction under an apparent agency theory, the Court does not address Plaintiff's remaining arguments. VEC's motion to dismiss is denied.

### III. JATT's MOTION TO DISMISS

JATT moves to dismiss Plaintiff's complaint for failure to state a claim under *Rule 12(b)(6)*. JATT Mot. Dismiss 1, ECF No. 17. JATT's sole argument is that the complaint only alleges actions taken by John Does 1 and 2, who are employees of DT Stores, which is the entity that owns and operates the gas station. JATT argues that it is merely the landlord of the property, and the complaint does not contain allegations of wrongful conduct undertaken by JATT. *Id.* at 2. Therefore, JATT argues, Plaintiff's complaint fails to state a claim against [*27] it. In response, Plaintiff argues *§ 12182(a)* holds landlords liable. Pl. Resp. 5, ECF No. 21.

The Court agrees with Plaintiff. *HN17* By its terms, *§ 12182(a)* includes landlords. *42 U.S.C. § 12182(a)* (imposing liability for discrimination by "any person who owns, leases (or leases to), or operates a place of public accommodation."). Further, the implementing regulations state:

> Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

28 C.F.R. § 36.201(b); *see also* Americans with Disabilities Act Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities, at III-1.2000 (explaining that the allocation of responsibility for complying with the obligations is only effective as between the parties, and each remain fully liable for compliance with the ADA relating to the place of public accommodation). Direct landlord liability conforms to the legislative intent [*28] as well. The Committee on the Judiciary stated with respect to the clarification that the prohibition against full and equal enjoyment applies to "any person who owns, leases (or leases to), or operates a place of public accommodation":

> This amendment makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public accommodation itself, has obligations under this Act. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations....
>
> Similarly, a doorman or guard to an office building containing public accommodations would be required, if requested, to show a person who is blind to the elevator or to write a note to a person who is deaf regarding the floor number of a particular office....
>
> The amendment also clarifies that entities which lease public accommodations are covered by the requirements of this title.

H.R. Rep. No. 101-485(111), at 55-56 (1990).

Plaintiff's complaint alleges JATT is the owner of the premises on which the gas station is located and leases the premises to DT Stores and/or Demir Tahiraj. Compl. [*29] ¶ 6, ECF No. 19. This is sufficient to state a claim for direct landlord liability under the ADA.

Further, Plaintiff states vicarious liability against JATT using Ohio agency principles and alleges JATT actively solicits invitees to the gas station, provides fuel for DT Stores, and exercises control over DT Stores. These allegations are sufficient to state a claim for vicarious liability.

Consequently, JATT's motion to dismiss for failure to state a claim is denied.

## IV. DISPOSITION

Defendants' motions to dismiss or for summary judgment are denied. The Clerk shall terminate ECF Nos. 12, 13, and 17.

**IT IS SO ORDERED.**

/s/ Michael H. Watson

MICHAEL H. WATSON, JUDGE

UNITED STATES DISTRICT COURT

Ⓐ Neutral
As of: June 12, 2015 5:21 PM EDT

# [Ray v. Zeis](#)

Court of Appeals of Ohio, Sixth Appellate District, Erie County

December 4, 1992, Decided

Court of Appeals No. E-92-02

**Reporter**
1992 Ohio App. LEXIS 6045; 1992 WL 355221

Steve Ray, et al. Appellants v. R.A. Zeis, et al. Appellees

**Prior History:**  [*1]  Trial Court No. 90-CV-583

## Core Terms

trial court, summary judgment, build, Designer, summary judgment motion, assigned error, plans

## Case Summary

**Procedural Posture**

Plaintiff home owners challenged the judgment of the Erie County Court of Common Pleas (Ohio), which granted summary judgment in favor of defendant architectural firm in the owners' action for damages related to the builder's alleged breach of contract in the construction of a new home as a firm licensee. The owners contended that the circumstances justifiably allowed them to believe that the builder was the firm's agent.

**Overview**

The owners sought review of the trial court's judgment granting summary judgment in favor of the firm in response to the owners' breach of contract claims alleging the firm's liability for the builder as a license of the firm to construct the owners' home using a patented design of the firm. The owners contended that the trial court erred in granting summary judgment in favor of the firm because the firm, through its representations, allegedly led the owners to reasonably believe that the builder was an agent of the firm. The firm contended that the language of their advertising clearly stated that the builder was an independent contractor and that the firm had no actual liability for the building of the owners' home. The court on appeal reversed the judgment of the trial court based on its determination that the trial court erred in granting summary judgment in favor of the firm because of the existence of a genuine issue of material fact regarding whether the owners reasonably believed that the builder was an agent of the firm.

**Outcome**

The court reversed the judgment of the trial court and remanded the matter for further proceedings.

## LexisNexis® Headnotes

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > Judgments > Summary Judgment > General Overview

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

Civil Procedure > ... > Summary Judgment > Supporting Materials > Discovery Materials

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > Timing of Motions & Responses

Evidence > ... > Documentary Evidence > Writings > General Overview

**HN1** In Ohio, when courts are considering whether summary judgment should be granted, they are guided by the provisions of *Ohio R. Civ. P. 56(C)*. which states in part: Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in

the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

> Business & Corporate Law > Agency Relationships > General Overview
>
> Business & Corporate Law > Agency Relationships > Authority to Act > General Overview
>
> Business & Corporate Law > ... > Authority to Act > Apparent Authority > General Overview
>
> Business & Corporate Law > ... > Duties & Liabilities > Causes of Action & Remedies > Burdens of Proof
>
> Business & Corporate Law > ... > Establishment > Elements > General Overview

**HN2** A parent agency exists if evidence shows that (1) a principal held an agent out to the public as possessing sufficient authority to embrace a particular act in question, or knowingly permitted him to act as having such authority, and (2) that a person dealing with an agent knew of those facts and, acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority.

> Business & Corporate Law > Agency Relationships > General Overview
>
> Business & Corporate Law > Agency Relationships > Establishment > General Overview
>
> Business & Corporate Law > ... > Establishment > Estoppel, Necessity, & Ostensible Agency > General Overview
>
> Business & Corporate Law > ... > Establishment > Estoppel, Necessity, & Ostensible Agency > Agency by Estoppel

**HN3** Agency by estoppel prohibits a party from later disclaiming an agency relationship if the party allows circumstances to exist which reasonably lead a third person to believe that they are dealing with an agent of the party, and the third party detrimentally relies on that belief.

**Counsel:** John Latchney, Kevin Zeiher, John Spore, Robert Hendrix, for appellants.

William Bartle, W. Patrick Murray, for appellees.

**Judges:** George M. Glasser, P.J., Peter M. Handwork, J., James R. Sherck, J., CONCUR.

## Opinion

*DECISION AND JUDGMENT ENTRY*

On December 26, 1990 appellants, Steve and Mary Ray filed a complaint in the Erie County Court of Common Pleas against R.A. Zeis and against appellee Scholz Master Builders, Inc. [1] The complaint contained allegations that R.A. Zeis and appellee had jointly and severally breached a contract to build a house for appellants. The complaint also contained allegations that appellee and R.A. Zeis had breached implied and expressed warranties, had committed fraud, and had caused appellants to suffer mental anguish. R.A. Zeis filed an answer and counterclaim in which it was alleged that appellants demanded changes during the building of the home and did not pay for the additional costs created by those changes. R.A. Zeis, therefore, sought payment in his counterclaim for the disputed amount. Appellee filed a cross claim against R.A. Zeis for breach of contract, arguing that R.A. Zeis owed appellee money under [*2] a contract signed by R.A. Zeis and appellee setting forth terms under which R.A. Zeis could use house designs created by appellee. Discovery was conducted in the case and on August 16, 1991 appellee filed a motion for summary judgment. The trial court file-stamped an order accepting the filing of the motion for summary judgment *instanter.* Appellants filed a memorandum in opposition to appellee's motion for summary judgment. The next document filed was a motion from appellants requesting permission to amend their complaint to include additional claims for causes of action under the Consumer Sales Practices Act and the Deceptive Trade Practices Act. Appellee filed a memorandum in opposition to that motion, arguing that the trial court had already verbally indicated that it was granting appellee's motion for summary judgment, and that appellants' motion to amend their complaint was filed only for purposes of delay. On December 26, 1991, the trial court file-stamped a judgment entry in which it granted summary judgment to appellee, dismissed appellants' complaint against appellee with prejudice, and indicated there was no just cause for delay of an appeal. Appellants filed a notice [*3] of appeal on January 24, 1992 and have presented seven assignments of error for this court's consideration. The seven assignments of error are:

---

[1] While there were two defendants originally named in the complaint, only one of the original defendants, Scholz Master Builders, Inc., appears as an appellee in this court.

I. "The Trial Court Erred In Granting Defendant, Scholz Master Builders, Inc.'s, Motion For Summary Judgment Since Competent Evidence Was Presented From Which Reasonable Minds Could Conclude That From The Perspective Of A Third Party, Such As Plaintiffs, Zeis And Scholz Were Engaged In A Joint Venture To Construct Plaintiffs' "Scholz Home".

II. "The Trial Court Erred In Granting Defendant, Scholz Master Builders, Inc.'s, Motion For Summary Judgment Since Even If An Independent Contractor Relationship Existed Between Zeis and Scholz, There Was Competent Evidence Of Estoppel Through Induced Reliance, Upon Which The Trier Of Fact Could Reasonably Impose Liability Upon Defendant, Scholz Master Builders, Inc., For The Acts of Zeis.

III. "The Trial Court Erred In Granting Defendant, Scholz Master Builders, Inc.'s, Motion For Summary Judgment On Plaintiffs' Claims Of Liability Based On The Doctrine Of Agency By Estoppel Through Induced Reliance By Failing To Construe The Evidence Strictly In Favor Of The Plaintiffs, And Failing To [*4] Grant The Plaintiffs The Benefit Of Every Reasonable Inference In Support Of Their Claims.

IV. "The Trial Court Erred In Granting Defendant, Scholz Master Builders, Inc.'s, Motion For Summary Judgment By Requiring The Plaintiffs To Prove That They Had No Means Of Knowing The Truth, Rather Than Evaluating The Acts Of Scholz Which Led Plaintiffs To Reasonably Believe That Zeis Was Its Agent, And That Both Zeis And Scholz Were Working jointly To Build Plaintiffs' "Scholz Home".

V. 'When A Designer Of A Home Does Not Sell Its Design Directly To The Public, But Only Through Builders It Selects, And Advertises To The Public That Those Companies Are Its Master Builders, The Designer Has Expressly And Impliedly Warranted To The Purchaser That The Builder Will construct Its Design Properly With Quality Workmanship And Materials, And The Designer Is Liable To The purchaser For Defects In Materials And Workmanship.

VI. "A Designer Of A Product Who Markets The Product To The Public Not As A Design, But As A Finished Product, Through A Network Of Builders Which Only It Establishes And Controls, Is, As A Matter Of Law, Responsible For the Wrongful Acts Of The Builder Which The Designer [*5] Has Selected To Make The Finished Product Available To The Consuming/Purchasing Public, Irrespective Of The Characterization Of The Legal Relationship As Between The Design And The Designer's Authorized Builder, Since It Is The Designer Who *Controls* Who can Build Its Products, Not The Consumer/Purchaser.

VII. "The Trial Court Erred In Granting Scholz Master Builders, Inc.'s Motion For Summary Judgment On Plaintiffs' Fraud Claim Directly Against Scholz When Competent Evidence Was Presented Showing That Scholz' Advertising Was Deliberately Designed To Induce Homebuyers/Consumers To Enter Into Contracts For The Building Of A Scholz Home With A Scholz Master Builder, Such as Zeis, Based On The False Representation That Scholz And The Builder Would jointly Work Together To Build Plaintiffs Home, And That The Builder Would Meet High Standards Of Quality Construction As Set By Scholz."

 [*6] *HN1* In Ohio, when courts are considering whether summary judgment should be granted, they are guided by the provisions of Civ.R. 56(C) which state in pertinent part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C).

Keeping this standard in mind, this court will review the decision of the trial court to grant summary judgment in this case.

The undisputed facts in this case are as follows. Appellants [*7] decided during the 1980's that they wished to hire a contractor to build a new home for them. They also decided after seeing a book of Scholz designs, Scholz advertisements and model homes built from Scholz plans, that they wanted to build a Scholz home. They talked with the builder who had built their first home, and he informed them that he could not build Scholz homes. They then talked with a second builder who said he would build them the home they wanted, but would change the front exterior of the house. Appellants were afraid that arrangement might be against the law, since the house plans they wanted to follow were copyrighted, so they continued looking for a builder who

was authorized to build the house they wanted. Appellant Mary Ray called the headquarters for appellee in Toledo, Ohio and explained that appellants wanted to know which builders in their area could build a Scholz home. She was given the name of R.A. Zeis, a builder in Tiffin, Ohio. Appellants then contacted R.A. Zeis. They met with him at a construction site where he was building a Scholz home. They also toured a Scholz home he had built several years earlier and talked with the owners of that home. [*8] A contract was drawn up for R.A. Zeis to build a Scholz home for appellants. Both appellants are named in the contract, but only one, appellant Steve Ray, signed the contract. No representative from Scholz was present or signed the contract. Construction began on the home after the contract was signed in March 1990. A dispute arose between appellants and the builder about what amount of money remained to be paid to the builder. Appellants argued they paid the full amount due. The builder argued more money was due because of several changes appellants ordered from the original plans while the house was under construction. When the dispute was not resolved, the builder left the job before the house was completed. Appellants contacted appellee to complain about the situation and about several items they believed were not properly built. An attorney working for appellee contacted the builder and told him to settle the problems; when he did not, appellee revoked the license it had issued to the builder to allow him to build homes using designs provided by appellee. Appellee is an architectural firm which draws plans and designs for luxury homes. Appellee will accept applications [*9] from independent home builders for a license issued by appellee to the builder to use designs and plans for homes provided by appellee in return for a fee and a percentage of the price received by the builder for building the home. The license agreement specifies that the builder is an independent contractor in relation to appellee.

Appellants' seven assignments of error will be considered together, as all relate to one central issue: was summary judgment improperly granted in this case? As was previously noted, the threshold issue to determine, when considering whether summary judgment is appropriate, is whether there are any genuine issues of material fact in dispute. The main thrust of all the arguments presented by appellants is that the circumstances surrounding their dealing with R.A. Zeis and appellee led them to reasonably believe that R.A. Zeis was an agent of appellee. Appellee counters by pointing to specific language in some of the advertisements which appellants read, and which appellants contend contributed to their belief that R.A. Zeis was an agent of appellee. The language states that appellee works with a network of locally owned, independent home builders. [*10] Appellee argues that the language used was clear, and appellants could not have been misled into believing that appellee had any connection to the actual building of a house. Whether or not appellants reasonably believed R.A. Zeis was an agent of appellee is a question of fact. The question is a material issue in this case, since appellee could be liable for the actions of an agent, even if the agent exists only by estoppel, or by apparent agency. The Supreme Court of Ohio has stated that *HN2* a parent agency exists if evidence shows: "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."

*Master Consolidated Corp. v. BancOhio Natl. Bank (1991), 61 Ohio St.3d 570*, at the syllabus. *HN3* Agency by estoppel follows a similar test, prohibiting a party from later disclaiming an agency relationship if the party has allowed circumstances to exist which reasonably lead [*11] a third person to believe they were dealing with an agent of the party, and a third party detrimentally relied on that belief. See *Ridenour v. Neufer (1989), 64 Ohio App.3d 453, 454-455*. Appellants presented testimony in their depositions which showed they believed R.A. Zeis was acting as a Scholz builder. A jury could choose to believe or disbelieve that testimony. Accordingly, to the extent that assignments of error one, two, three, four, five, six, and seven stand for the proposition that summary judgment was improper in this case, they are well-taken. [2]

 [*12] Arguments raised by appellants relating to claims based upon the Consumer Sales Practices Act or the Deceptive Trade Practices Act are not properly before this court. Appellants first alleged those causes of action in a proposed amended complaint which the trial court did not grant leave to file. The ruling of the trial court denying leave to file was never challenged in this court by assignment of

---

[2] This court is not able to make specific rulings on some of the alleged grounds for the assignments of error because they allege or infer specific findings by the trial court that are not part of the record. In fact, the only specific finding from the trial court which is part of the record is the finding that appellee was entitled to summary judgment. No explanation as to why the court believed summary judgment should be granted in favor of appellee appears in the judgment entry granting summary judgment or in any other part of the record.

error. Since the amended complaint was not filed, the issue was never before the trial court and will not be considered for the first time on appeal.

Because a genuine issue of material fact remains in dispute, summary judgment cannot be granted. The judgment of the Erie County Court of Common Pleas is reversed. Appellees are ordered to pay the costs of this appeal. This case is remanded for further proceedings consistent with this decision.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See also 6th Dist.Loc.App.R. 4, amended 1/1/80.

George M. Glasser, P.J.

Peter M. Handwork, J.

James R. Sherck, J.

CONCUR.