# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
                                                        : CASE NO. 1:08 CV 02755
HODELL-NATCO INDUSTRIES, INC.,                          :
                                                        :
                                     Plaintiff,         : MEMORANDUM OF OPINION AND
                                                        : ORDER
              -vs-                                      :
                                                        :
                                                        :
SAP AMERICA, INC., et al.,                              :
                                                        :
                                     Defendant.         :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is a Motion in Limine filed by plaintiff Hodell-Natco to preclude the testimony and opinions of Brooks Hilliard, MCM, CCP, as set forth in his expert report. Defendant SAP has responded in opposition. Hodell has replied. For the reasons that follow, the motion is granted in part and denied in part.

**I.**

This matter is scheduled for trial to take place on 23 February 2015. The plaintiff Hodell-Natco brought this lawsuit against defendants SAP AG and SAP America (collectively, "SAP") and LSi-Lowery Systems, Inc., and the IBIS Group (collectively, LSi/IBIS). Hodell's pending claims include fraud, fraudulent inducement, and negligent misrepresentation against all defendants; breach of contract against SAP America; and breach of warranty against LSi/IBIS. Hodell further maintains that at all relevant times LSi was acting as SAP's actual or apparent agent.

In short, this dispute arises out of an allegedly failed implementation of Enterprise Resource Planning ("ERP") software called Business One. SAP developed and marketed Business One and licensed its use to Hodell. LSi/IBIS was contracted by Hodell to implement Business One as part of a software suite that included two other programs. Hodell maintains that the software never performed as promised and that it suffered damages as a result.

In relation to issues of liability, SAP submits the expert report of Brooks Hilliard, who opines on number of topics, including background information relating to the business software industry, standard customs and practices in the industry, industry terminology, technical concepts such as the "scalability" of a software product, and software marketing, among other things. Plaintiff Hodell maintains that Mr. Hilliard should be precluded from testifying at trial. Hodell variously argues that the testimony is irrelevant; that it improperly summarizes evidence; that Mr. Hilliard opines on credibility; and that the testimony supplants the role of the jury.

**II.**

The purpose of a motion in limine is "to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." Indiana Ins. Co. v. Gen. Elec. Co., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Rule 702 of the Federal Rules of Evidence permits testimony based on "scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable. See Fed. R. Evid. 702. The trial judge must act as a gatekeeper,

2

admitting only that expert testimony which is relevant and reliable. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). As a gatekeeper, the trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable. Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 429 (6th Cir. 2007). "In short, under Daubert and its progeny, a party proffering expert testimony must show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." Sigler v. Am. Honda Motor Co., 532 F.3d 469, 478 (6th Cir. 2008) (citing Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir. 2000)).

**III.**

*Testimony as to Industry Practices, Customs, and Standards of Care*

Hodell takes issue with those portions of Mr. Hilliard's report which describe customary industry practices and standards of care that apply in the software industry. The Court agrees with Hodell that these portions of the report are irrelevant to the issues that must be decided by the jury. These include a description of the "typical responsibilities of the parties" to an ERP software implementation; an explanation of the standard industry practice whereby software companies "partner" with software implementation firms (Opinion #1); a discussion of how Hodell and LSi's method for implementing Business One was inconsistent with normal industry procedures (Opinion #2); an explanation how LSi's and Hodell's failure to heed numerous technical warnings was inconsistent with customary practices in the business software industry (Opinion #5); an explanation how Hodell's testing of the software did not meet industry standards

3

(Opinion #6); an explanation how Hodell's use of outdated, inadequate, and underpowered IT infrastructure did not meet industry standards (Opinion #7); and an explanation how the support provided by SAP after "go-live" of Business One was consistent with the normal practices and standards of care in the industry (Opinion #8).

Based on Mr. Hilliard's conclusions, it is readily apparent that SAP would like to establish that Hodell, having allegedly failed to adhere to industry standards while implementing Business One, is itself to blame for the software's unsatisfactory performance. However, it is not readily apparent how a jury's knowledge of these industry standards would assist it in deciding the claims and defenses that will actually be presented to it for resolution. SAP generally argues that "each of Mr. Hilliard's opinions is directly related to the claims and defenses at issue." But which claims? And which defenses? And how are they related? SAP doesn't say precisely. There are a variety issues for the jury, but none of them self-evidently require knowledge of an industry custom or standard of care for their resolution.

For instance, whether LSi was SAP's apparent agent depends on proof that SAP clothed LSi with the authority to act on SAP's behalf and that Hodell reasonably believed that LSi had such authority. It is not clear how knowledge of the practice of "partnering" in the business software industry would assist the jury in assessing and understanding the evidence when it decides whether SAP took steps that led Hodell to justifiably believe that LSi was SAP's agent. The defendants' agency status will be determined based on the evidence, against the standards of agency under Ohio law, not with reference to an industry standard described by Mr. Hilliard. This is not the "either-or" situation that SAP seems to suggest it is, where the jury will *either* find that

4

the parties' "relationships here were consistent with industry norms" *or* "LSi was SAP's agent." (SAP opposition, p. 12). This is a false choice. Ultimately, the jury will be instructed on the law of agency, and it will decide based on the evidence whether LSi was SAP's agent. Instead of helping, the industry custom described by Mr. Hilliard would more likely confuse the jury as it attempts to answer this question.

The same is true of the other industry standards described by Mr. Hilliard. SAP fails to sufficiently explain how any of them relate to the claims and defenses in this case. The plaintiff's other claims include fraudulent or negligent misrepresentation; breach of contract; breach of warranty; and the question of punitive damages. SAP fails to explain how any of these issues would be resolved based on whether a standard of care has been met. This is not a negligence case, where the cause of action necessarily requires an understanding of the applicable standard of care. Further, although the jury must ultimately decide whether SAP adhered to the applicable standard of care when it represented the capabilities of Business One to Hodell, it is unclear how any of the standards described by Mr. Hilliard would assist the jury on this score. In sum, it is not apparent, and SAP fails to adequately describe, how an understanding of any industry standard of care fits the issues that the jury must actually decide.

SAP vaguely asserts that these industry customs and standards would assist the jury in deciding the "central question of who is responsible for the alleged failed implementation." The Court would, perhaps, accept this argument if there were an active question of comparative negligence in this case, but Hodell's negligence claim was dismissed long ago. SAP has not made the case that comparative negligence is a recognized defense to any of the claims that are active in this case. The jury will not be

5

called upon to apportion responsibility for the allegedly failed implementation of Business One. As such, the jury will not be required to gauge the parties actions against any standard of care in order to determine which of them was responsible. Furthermore, after due consideration, the Court concludes that SAP has failed to establish that any of Mr. Hilliard's industry standard testimony would assist the jury in wrestling with any of SAP's stated defenses.

SAP cites a number of cases to support its contention that expert testimony as to standard industry practices is admissible in a case such as this. The Court is not persuaded, as these cases are inapposite. First, in K & D Distributors, Ltd. v. Aston Grp. (Michigan), Inc., 354 F. Supp. 2d 761, 765 (N.D. Ohio 2005), a seller of custom computer software warranted to the buyer that it would complete the work "in a professional manner." The buyer claimed breach of warranty on the ground that the seller failed to perform the work in accordance with the agreement. The court determined that expert testimony was required on an ultimate fact in issue, i.e. whether the seller performed the work "in a professional manner." The court reasoned that because "the parties contracted for a specific duty of care," resolution of the issue required "evidence of what a similar professional would have done under like circumstances." The court concluded that an expert was necessary because "[t]he conduct of a professional under these circumstances is not within the jury's general knowledge and experience." Id. at 766. K & D Distributors is plainly distinguishable from the present case because SAP cites no language from any of the contracts indicating that the parties agreed to act pursuant to a standard of care. Nor does SAP cite contract

6

language that would otherwise require an understanding of an industry standard in order to ascertain the meaning of that contract language.

In <u>Brown v. Wal-Mart Stores, Inc.</u>, 198 F.3d 244 (6th Cir. 1999), an injured plaintiff brought a negligence claim against Wal-mart after an aerosol can fell off a store shelf and struck her in the eye, causing severe and permanent damage. A panel of the Sixth Circuit affirmed the trial court's decision to permit expert testimony that the shelving practices at Wal-mart were not within the accepted industry safety standard. <u>Brown</u> is distinguishable from the present case. One of the necessary elements of a negligence claim is breach of the applicable standard of care. As such, it was helpful to the jury in <u>Brown</u> to understand the applicable standard of care. In the present case, there is no negligence claim, and, as already discussed, SAP cites no issue whose resolution would turn on a jury's understanding of customs and standards in the business software industry.

<u>McGowan v. Cooper Industries, Inc.</u>, 863 F.2d 1266, 1271 (6th Cir. 1988), is similarly inapposite. <u>McGowan</u>, like <u>Brown</u>, was a negligence case, which does not support SAP's position.

The Court concludes that Mr. Hilliard's testimony as to the various industry practices and standards of care in the business software industry is irrelevant to the issues the jury must decide. Therefore, Hodell's motion will be granted as to Mr. Hilliard's description of the "typical responsibilities of the parties" to an ERP software implementation; his explanation of the standard industry practice whereby software companies "partner" with software implementation firms (Opinion #1); his discussion of how Hodell and LSi's method for implementing Business One was inconsistent with

7

normal industry procedures (Opinion #2); his explanation how LSi's and Hodell's failure to heed numerous technical warnings was inconsistent with customary practices in the business software industry (Opinion #5); his explanation how Hodell's testing of the software did not meet industry standards (Opinion #6); his explanation how Hodell's use of outdated, inadequate, and underpowered IT infrastructure did not meet industry standards (Opinion #7); and his explanation how the support provided by SAP after "go-live" of Business One was consistent with the normal practices and standards of care in the industry (Opinion #8).

*The meaning of the term "Business Partner"*

As indicated above, Hodell holds the position that LSi was acting as an actual or apparent agent of SAP. Hodell contends that SAP's references to LSi as its "business partner" supports this position. In his report, Mr. Hilliard opines on the meaning of the term "business partner" in the context of the software industry. Hodell argues that Mr. Hillard should not be permitted to testify as to the legal significance of this term.

The Court agrees with Hodell that Mr. Hillard may not testify on a question of law. Chavez v. Carranza, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible."). Therefore, insofar as Mr. Hillard might testify as to the legal signficance of the term "business partner" Hodell's motion is granted. However, this is not to say that Mr. Hillard is precluded from offering his opinion as to the meaning of the term "business partner" as the term is understood within the software industry. An expert witness may offer testimony defining terms of art, science, or trade. See Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co., LLC, No.

8

3:04CV7621, 2008 WL 668242, at *3 (N.D. Ohio Mar. 4, 2008). Therefore, Hodell's motion is denied in the latter respect.

### *"Employees" vs. "Users"*

An SAP Business One marketing brochure states that "SAP Business One targets organizations with . . . five to 500 employees." The parties debate whether the word "employees" refers to the number of *users* of the software or the number of *employees* in a company. As Hodell sees it, the word "employee," as it is used in the above sentence is equivilent to the word "user." On this basis, Hodell claims that SAP misrepresented the types of companies for which Business One was suitable.

In his report, SAP's expert offers an opinion as to the meaning of the terms "employees" and "users" as those terms are understood in the software industry. According to Mr. Hilliard, the word "user" is a term of art that is distinct from the word "employee."

Hodell argues that Mr. Hilliard's opinion on this subject is unhelpful and irrelevant. The Court disagrees. As noted, one of Hodell's claims in this case is that SAP misrepresented the number of users that SAP Business One could accommodate. Bearing on this claim is the meaning of the words "employee" and "user" as those words are understood in the software industry. Expert testimony on the meaning of terms of art is admissible. Therefore, Mr. Hilliard's opinion on this issue is relevant and admissible.

### *Opinions 3 & 4*

In his third and fourth opinions, Mr. Hilliard offers a rebuttal to the opinion of Hodell's expert, Mr. Gümbel. Specifically, in the third opinion, Mr. Hilliard opines that "there is no supportable basis for Mr. Gümbel's assertion that SAP's Business One ERP

9

Case: 1:08-cv-02755-DCN Doc #: 357-1 Filed: 06/28/15 11 of 12. PageID #: 20054
Case: 1:08-cv-02755-DCN Doc #: 326-7 Filed: 01/26/15 10 of 11. PageID #: 14062

Software was incapable of scaling up to support a business the size of Hodell." And in the fourth opinion, he concludes, "[a]lthough the SAP Business One software had a marketing focus on smaller companies, that does not imply that it was incapable of running satisfactorily for companies the size of Hodell."

Hodell maintains that these opinions are unhelpful to the jury because they are merely a summary of fact evidence without any of Mr. Hilliard's own analysis. While the Court acknowledges that portions of the third and fourth opinions include a recitation of fact evidence, Mr. Hilliard does offer technical knowledge that would be helpful to the jury on relevant issues. In particular, he defines scalability and offers an opinion calling into question Mr. Gümbel's assertion that Business One was not scalable to Hodell's needs. Mr. Hilliard opines that Mr. Gümbel's opinion is suspect because it favors theoretical factors over a more reliable metric -- actual measured results.

Mr. Hilliard takes issue with Mr. Gümbel's opinion that Business One's alleged performance issues resulted from its "two-tiered architecture." Mr. Hilliard notes that many major ERP software products using "two-tiered architecture" will support more than one-hundred users with satisfactory response times.

Mr. Hilliard offers insight into the manner in which the response time of Business One was measured, contending that extended response times occurred as a result of the placement of orders with hundreds of line items. Mr. Hilliard offers reasons why test cases involving hundreds of line items are not representative of the software's capabilities.

Mr. Hilliard offers a rebuttal to Mr. Gümbel's assertion that SAP's marketing of Business One to customer's with fewer than 70 users supports the proposition that the

10

software was not scalable. Mr. Hilliard contends that in his experience as a marketing executive for computer companies, "there are numerous reasons why a technology business may target a particular market for one of its products that have little to do with the inherent capabilities of the product." Mr. Hilliard goes on to offer some of those reasons.

Mr. Hilliard should not be precluding from offering a counterpoint to Mr. Gümbel's opinion as to Business One's technical limitations. Therefore, Hodell's motion is denied with respect to Mr. Hilliard's third and fourth opinions.

**IV.**

For the reasons stated above, Hodell's motion in limine is granted in part and denied in part (resolving Doc. 197). Specifically, the motion is granted as to Mr. Hilliard's explanation of the various standards of care in the business software industry (including Opinions 1-2, 5-8 and his description of the "typical responsibilities of the parties" to an ERP software implementation).

The motion is denied with respect to Mr. Hilliard's third and fourth opinions; his testimony regarding the terms "users" and "employees"; and his testimony regarding the term "business partner."

IT IS SO ORDERED.

                                            /s/ Lesley Wells
                                      UNITED STATES DISTRICT JUDGE

Date: 26 January 2015