IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC.  Plaintiff,  v.  SAP AMERICA, INC., et al.  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 1:08 CV 2755  JUDGE NUGENT |
|---|---|---|

_____

**RULE 50 MOTION OF SAP AMERICA, INC. AND SAP AG AS TO HODELL'S CLAIM THAT SAP BREACHED THE SAP BUSINESS ONE SOFTWARE LICENSE AGREEMENT**
_____

Rule 50 of the Federal Rules of Civil Procedure authorizes a court to grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Groeneveld Transport Efficiency, Inc. v. Lubecore Intern, Inc.*, 730 F.3d 494, 502-03 (6th Cir. 2013) (citing Fed. R. Civ. P. 50(a)).  A motion for judgment as a matter of law should be granted "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  The standard for judgment as a matter of law under Rule 50 is the same as the standard for summary judgment under Rule 56.  *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Defendants SAP America, Inc. and SAP AG (jointly, "SAP") respectfully move this Court to grant judgment as a matter of law as to Hodell's claim that SAP breached the SAP Business One Software License Agreement.  In support, SAP provides the below analysis of

Hodell's novel argument, an argument that was presented for the first time to this Court on June 26, 2015.

Section 7.1 of the License Agreement provides as follows:

<u>Warranty</u>.  SAP warrants that *the [Business One] Software will substantially conform to the functional specifications contained in <u>the Documentation</u> for six months following delivery*.  The warranty shall not apply: (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Integration Add-On, Licensee, third-party software, or third-party database.  SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects or errors that do not materially affect such performance, or that the applications contained in the Software are designed to meet all of Licensee's business requirements.  (Emphasis added.)

Section 1.2 of the License Agreement defines "Documentation" as "SAP's documentation *which is delivered to Licensee under this Agreement*."  Section 3 further explains that "the licensed Software in machine-readable format, and *the Documentation, shall be delivered as specified in the authorized order form* submitted by Licensee to SAP or the SAP Reseller ("Deliver")."  (Emphasis added.)

As Mr. Kraus explained during his deposition and confirmed again during trial, the "Documentation" discussed in Section 7.1 is contained in "the help files" of the actual software that is shipped by SAP:

> **Q.**  How do customers get the [D]ocumentation?
> **A.**  So SAP Business One was shipped on a CD originally and then a DVD. When the software is installed, one of the choices to install are the help files, and the help files are the [D]ocumentation.
> **Q.**  So a customer who got the CDs, they have the documentation?
> **A.**  They have the [D]ocumentation.

(Trial Transcript, D. Kraus, at 2045:18-2046:9; *see also* Tr. of D. Kraus Dep. at 90:13-18.)

Remarkably, on Friday, June 26, 2017, Hodell argued for the first time – 10 days into this jury trial – that Exhibit 253, a February 18, 2007 email from Dan Kraus to Michael Sotnick requesting a maintenance fee credit for Hodell, is an SAP "admission" that Business One did not

2

substantially conform to the functional specifications contained in the Documentation. But a review of this document in conjunction with Mr. Kraus's testimony precludes this claim.

As Mr. Kraus explained during trial, this email addressed a delayed delivery of a 2005 Service Pack – a delay, it should be noted, that would have affected many of SAP's thousands of Business One customers: "The customer was asking for the credit because we had had delays getting one of the service packs, a Business One 2005 service pack out the door." (Trial Transcript, D. Kraus, at 2049:23-25.) Mr. Kraus also confirmed that this 2005 Service Pack delay issue was "ultimately resolved" as soon as "[t]he service pack got shipped" and that this delay did not "have anything at all to do with the issues in this case . . . because that all happened before, before go-live." (Trial Transcript, D. Kraus, at 2050:2, 2150:17-22.)

Present during Mr. Kraus's testimony, and in possession of Mr. Kraus's deposition transcript for over three years, Hodell nevertheless argues that Mr. Kraus's statement that, if Hodell had tried to return the software "due to inability to conform to documentation, we likely would have been obligated to honor the request," is an SAP admission of a breach. But, again, as described above, "Documentation" is defined as that documentation that *accompanies the software on delivery*. "Documentation," therefore, would not include the various Service Packs or other upgrades and updates regularly issued as maintenance over the lifespan of a customer's use of Business One.

Even assuming, *arguendo*, that Mr. Kraus's email could be evidence of some purported "breach," the following facts remain: (1) the Service Pack issues were resolved prior to Go-Live, had nothing to do with the issues in this case, and could not have possibly impacted Hodell's performance; (2) Hodell (which has the burden of proof) has failed to put the Documentation into the record; (3) Hodell has not attempted to show how the software fails to

3

conform with such Documentation (assuming, again, that the Service Pack is the Documentation discussed in Section 7.1, which it is not); and (4) Hodell has not even attempted to show that any such alleged breach caused damages, let alone what those pre-go-live damages might be.  To be sure, these failures are not insignificant, and this breach of warranty claim should be dismissed. *See, e.g.*, *McLeod Addictive Disease Ctr., Inc. v. Wildata Sys. Grp., Inc*., No. 2:08-cv-570, 2010 U.S. Dist. LEXIS 20643, at *19 (S.D. Ohio Mar. 8, 2010) (a plaintiff must articulate "how the software fails to conform to published specifications").

    Respectfully submitted,

    /s/ Gregory J. Star
    Michael J. Miller (admitted *pro hac vice*)
    Gregory J. Star (admitted *pro hac vice*)
    Drinker Biddle & Reath LLP
    One Logan Square, Suite 2000
    Philadelphia, PA 19103-6996
    Telephone:  (215) 988-2700
    Facsimile:  (215) 988-2757
    *Attorneys for SAP America, Inc. and SAP AG*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 29, 2015, the foregoing was filed electronically. Notice of this filing was provided by operation of the Court's electronic filing system. Parties may access the document through the Court's electronic filing system.

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile:  (215) 988-2757