IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
| --- | --- | --- |
| Plaintiff, | ) ) ) | JUDGE NUGENT |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) ) | |

**SAP'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S TORT CLAIMS**

Defendants SAP America, Inc. and SAP AG (collectively, "SAP"), through undersigned counsel, hereby submit the following Rule 50 Motion for Judgment as a Matter of Law on Plaintiffs Tort Claims.

The reasons supporting this Motion are set forth in SAP's Memorandum of Law, incorporated herein by reference.

                        Respectfully submitted,

                        /s/ Gregory J. Star
                        Michael J. Miller (admitted *pro hac vice*)
                        Gregory J. Star (admitted *pro hac vice*)
                        Drinker Biddle & Reath LLP
                        One Logan Square, Suite 2000
                        Philadelphia, PA 19103-6996

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC. | ) | CASE NO. 1:08 CV 2755 |
|---|---|---|
| Plaintiff, | ) ) ) | JUDGE NUGENT |
| v. | ) ) | |
| SAP AMERICA, INC., et al. | ) ) | |
| Defendants. | ) ) ) | |

_____

**SAP'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S TORT CLAIMS**
_____

Defendants SAP America, Inc. and SAP AG respectfully provide the below supplemental Rule 50 argument and analysis for the Court's further consideration:

### A. Hodell's Fraud and Fraudulent Inducement Claims Fail as a Matter of Law

Hodell's fraud and fraudulent inducement claims have failed as a matter of law because (1) Hodell has not proven a false representation of material fact; (2) the allegedly fraudulent statements identified by Hodell are not material; (3) SAP cannot be held liable for statements of LSi/IBIS; (4) there is no evidence of intent to mislead; (5) Hodell has failed to prove justifiable reliance; and (6) Hodell failed to prove proximate cause.

#### 1. Hodell has not proven a false representation of material fact

Hodell claims that it was verbally told Business One could handle at least 300 users. However, the undisputed evidence shows that Business One could support companies with more than 300 users. For example, Paul Killingsworth testified Business One was successfully tested in 2004 with 300 and 500 users. *See* Trial Tr. June 18, 2015 at 792-807 (P. Killingsworth); Trial

Exhibit 453 at 7-10 (SAP Business One Sizing Guide July 2004); Trial Exhibit 122 at 6-7 (SAP Business One Sizing Guide August 2004); Trial Exhibit 126 at 8 (Business One Sizing Guide Prepared by IBM April 2004).  Mr. Killingsworth further testified that many companies successfully ran Business One with many more than 300 users and continue to do so.  *See* Trial Tr. June 18, 2015 at 775-786, 807-813 (P. Killingsworth); Trial Exhibit 700 (list of over 2,000 global companies with 50 or more users); Trial Exhibit 834 (list of global companies with 50 or more users in 2003/2004); *see also* Trial Tr. June 29, 2015 at 2572-2574 (B. Hilliard) (explaining that the vast majority of companies in the 100-300 user band ran Business One on a single system).  This evidence is undisputed and thus no false statement of material fact was made to Hodell as a matter of law.

Hodell also claims that it received false representations as to the number of users Business One could handle by way of SAP marketing materials.  Specifically, Hodell has identified three exhibits that contain the alleged misrepresentations that Hodell alleges it relied upon in purchasing Business One, namely Exhibits 314, 617, and 618.  Hodell has explored these exhibits ad nauseam during the course of this trial.  And yet, Hodell has still not identified a single passage that was false.

- Exhibit 314 contains two generic pieces of SAP Business One marketing literature (an SAP Business One Brief and an SAP Solution Brief).  The former states "[t]he solution helps emerging businesses, from those with 10 to several hundred employees, to streamline their operational and managerial processes." Ex. 314 at 2.  The latter states "whether you have 5 employees or 500, the solution helps emerging businesses streamline their operational and managerial processes." Ex. 314 at 5.  It is undisputed that neither of these documents contains any discussion of "users."  *See* Trial Tr., dated June 18, 2015 at 788 (P. Killingsworth) (the word "employees" in Ex. 314 does not mean "users"); Trial Tr., dated June 29, 2015 (B. Hilliard) (explaining that the terms "employees" and "users" have different meanings in the software industry).  And these generic advertising materials cannot be reasonably construed to say anything other than that if you are a company with up to 500 employees, you might want to take a look at Business One.  *See, e.g.*, Ex. 314 at 2 ("Take a look at the powerful new SMB solution from the largest business software vendor in the world – SAP Business One."); Trial Tr.

2

      June 18, 2015 at 788-790 (P. Killingsworth) ("[W]hat we're saying is, 'Look, if you're a company that fits this demographic, chances are that Business One could be a good fit for you; you need to come take a look at us.'").  Indeed, the only "evidence" supporting the notion that the word "employees" in this exhibit refers to the separate and different word "users" is Hodell's bald say-so.  There is simply no reasonable way for the jury to conclude that when this exhibit discusses "employees" it is discussing anything other than "employees."

- Exhibit 617 is an American Express advertisement for a different version of Business One than that purchased by Hodell.  And in any event, all it says is that "[t]he Business One solution effectively supports companies with as few as ten and as many as several hundred employees."  Ex. 617 at 6.  Again, there is no mention of the word "users" among this high-level, generic marketing document.

- Exhibit 618 is an SAP Business One Whitepaper.  It states "[t]o secure critical business and system processes, a robust MS-SQL 2000 database is used.  It supports an unlimited number of simultaneous user transactions."  There is no reasonable way for the jury to construe this passage to refer to anything other than the MS-SQL 2000 database, which the record indisputably reveals is a software product published by Microsoft – not SAP.  And in any event, there has not been any testimony that any of the problems allegedly experienced by Hodell were caused by the MS-SQL 2000 database.

None of these exhibits contains an actionable representation as a matter of law because none of the statements contained therein were false.

        **2.**      **The allegedly fraudulent statements identified by Hodell are not material**

      As noted, Hodell contends that it was told that Business One could handle at least 300 users.  However, it is undisputed in this case that Hodell was acquiring multiple software products and hired IBIS/LSi to implement and integrate those products, including the In-Flight add-on, which was to be a completely custom development for Hodell.  There is no allegation that any defendant made any representation to Hodell about the custom solution that was actually delivered and any such representation would merely be a statement of opinion because the custom, integrated solution did not exist at the time.  *See In re Ford Motor Co. Securities Litig. Class Action*, 381 F.3d 563, 570 (6th Cir. 2004) (holding that puffery and/or statements of opinion are not actionable in fraud).  As a consequence, Hodell's claim that it was fraudulently

3

induced by alleged misrepresentations about the number of users supported by the base Business One product is not material to the case at hand.

Hodell's alleged misrepresentation concerning 300 users is also rendered immaterial by way of the Business One End User License Agreement (the "License Agreement").  The License Agreement disclaims all warranties other than an express "Performance Warranty" by which SAP warranted that "the Software" would substantially conform to the Documentation.  Trial Exhibit 316.  The License Agreement defines "the Software" as "the Business One software product developed by or for SAP and/or SAP AG and delivered to Licensee hereunder pursuant to the order for the Software . . . placed by Licensee or on its behalf by an SAP Reseller. . . ." Ex. 316 § 1.10.  The day before Hodell executed the License Agreement, IBIS/LSi had submitted an order form to SAP for 80 professional users on Hodell's behalf.

The License Agreement is indisputably a fully integrated agreement. *See id.* § 11.9 ("This Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee and all previous representations, discussions, and writings are merged in, and superseded by, this Agreement.").  Ohio law provides that, absent fraud or mistake, a final, integrated contract cannot be varied, contradicted, or supplemented by extrinsic evidence.  *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (citing 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4)). The rule exists to protect the integrity of contracts and is applied with particular rigidity in the context of a UCC transaction between sophisticated parties.  *Ed Schory & Sons, Inc. v. Francis*, 662 N.E.2d 1074, 1080 (Ohio 1996); *Columbus Trade Exch., Inc. v. AMCA Int'l Corp.*, 763 F. Supp. 946, 955 n.14 (S.D. Ohio 1991).

Here, Hodell's allegation – that it was promised that Business One would work for 300 or 400 or 500 users – is inconsistent with the fully integrated License Agreement, which expressly disclaims any and all warranties other than a performance warranty for the 80 (or 120) users that were actually purchased from SAP. As a consequence, the representations allegedly relied upon by Hodell are not actionable in fraud as a matter of law.

### 3. SAP Cannot Be Held Liable for Statements of LSi/IBIS

To the extent a misrepresentation was made to Hodell by LSi and/or IBIS, SAP denies that they are vicariously liable for such misrepresentation.

Hodell's tort claims against SAP are based on alleged pre-contractual misrepresentations about SAP's Business One software. Hodell concedes that it did not have any direct contact with SAP until after its contract with SAP was executed and thus focuses its energy on proving that SAP is vicariously liable for IBIS/LSi's alleged misrepresentations on a theory of agency.

Two contracts preclude Hodell's agency arguments. First, the reseller agreement governing IBIS/LSi's and SAP's relationship clearly and unambiguously states that IBIS/LSi was an independent contractor; that IBIS/LSi was not SAP's agent; and that IBIS/LSi was not authorized to legally bind SAP in any way, including by way of representations or warranties about the software. Trial Exhibit 30. Second, the license agreement governing Hodell's and SAP's relationship also clearly and unambiguously reflects Hodell's acknowledgment and agreement that IBIS/LSi was an independent company; IBIS/LSi was not SAP's agent, and IBIS/LSi had no authority to make representations on behalf of, or otherwise bind, SAP. Trial Exhibit 316.

Hodell admits that its CEO and President both carefully reviewed the license agreement containing the agency disclaimer prior to signature and understood that it plainly operated to limit SAP's liability. It would be manifestly unjust to allow a sophisticated commercial party

5

like Hodell to walk away from the clear and unambiguous terms of its fully integrated commercial contract simply because it now finds them inconvenient. SAP incorporates its pending motion *in limine* on this issue as if set forth herein at length.

Hodell has not offered any evidence at trial that changes this result. Indeed, the best Hodell has done is put forward some cockamamie theory about a supposed distinction between SAP AG and SAP America, Inc. However, SAP AG is, in fact, a third-party beneficiary of the License Agreement; SAP AG has the ability under the License Agreement to enforce its IP rights, is included in the definition of "Software", and is protected by the warranty and damages limitations provisions. And contrary to Hodell's recent assertions, SAP has never argued that SAP AG was not a third-party beneficiary of the License Agreement.

### 4. There is No Evidence of Intent to Mislead

Hodell has failed to put up any direct evidence that SAP had any intent to mislead Hodell. And whatever circumstantial evidence Hodell might point to, if any, simply cannot rise to the level that a reasonable juror could rely upon it to find that this element has been satisfied. Indeed, the undisputed evidence is that SAP sells many ERP products and that Business One is its *cheapest* ERP offering. Why would SAP intend to mislead Hodell into purchasing its least expensive product? Trial Tr., dated June 17, 2015 at 763-65 (P. Killingsworth). And in any event, after go-live, when Hodell began reporting performance issues, the undisputed evidence shows that SAP expended significant resources – resources in excess of the total amount of money received by SAP on the entire Hodell account – over an extended period of time to investigate and address the performance issues that were being reported. *Id.* These simply are not the actions of an organization with the intent to mislead. Hodell has failed to establish this element as a matter of law.

### 5. Hodell Has Failed to Prove Justifiable Reliance

To the extent a false representation was made by any defendant (and SAP vigorously denies that any such representations were made), Hodell still cannot prove fraud because Hodell failed to conduct its own due diligence and otherwise was not justified in relying upon any alleged representation. *See Lucas Ford, LLC v. Ford Motor Credit Co.*, No. 3:09CV451, 2011 U.S. Dist. LEXIS 51141, *10-11 (N.D. Ohio May 12, 2011) (dismissing fraudulent inducement claim where plaintiff "presented no evidence as to its due diligence").

Here, it is undisputed that Otto Reidl instructed Dale Van Leeuwen to "drill down" as his "partner" into the viability of Business One for Hodell. Trial Tr. at 1697:13-20; 1698:2-4 (Otto Reidl). And it is also undisputed that Dale Van Leeuwen did not "drill down" as instructed by his "partner"; rather, Mr. Van Leeuwen simply took what SAP (allegedly) told him about the capacity of the software to handle 300 or 500 users at "face value" and did not drill-down on any of the specific details of Hodell (i.e., Hodell's enormous volumes, the enormous scope of In-Flight, etc.). Trial Tr. at 1337:18-1338:4 (D. Van Leeuwen).

It is also undisputed that there were several documents that were available to the public before Hodell signed the License Agreement showing that SAP was positioning Business One for companies with less users than Hodell; indeed, two of these were produced from Hodell's own files in the course of this litigation and Hodell testified that they were able to find these documents through a simple internet search when they bothered to take a look. *See* Trial Ex. 5 (10-100 users); Trial Tr. at 371 (K. Reidl) (admitting that Hodell found this document on the internet and that it was produced from Hodell's own files); Trial Exhibit 789 (10-100 employees); Trial Tr. at 368-370 (K. Reidl) (admitting that Hodell found this on the internet and that it was produced from Hodell's files); Trial Exhibit 428 (3-100 users); Trial Tr., dated June 25, 2015 (D. Kraus) (testifying, without rebuttal, that this was a public facing document).

Hodell's fraudulent inducement claim fails as a matter of law because Hodell has no evidence that it conducted any due diligence. *See Lucas Ford*, 2011 U.S. Dist. LEXIS 51141, *10-11 (dismissing fraudulent inducement claim where plaintiff "presented no evidence as to its due diligence").

### 6. Hodell Failed to Prove Proximate Cause

It is undisputed that Hodell experienced poor performance of the integrated system during pre-go-live testing. It is undisputed that Hodell cancelled go-live dates numerous times due to this poor performance. It is further undisputed that Hodell never involved SAP at any time prior to go-live. As a consequence, any damages that Hodell allegedly incurred on account of slow software were factually and proximately caused by Hodell's own bad decision to go live in the face of bad performance testing results. *See generally* Trial Testimony of Kevin Reidl.

### B. Hodell Has Failed to Prove a Negligent Misrepresentation Claim

The SAP defendants are not the proper type of defendant for a negligent misrepresentation claim because they are in the business of manufacturing and selling software and are not in the business of supplying information or advice. Moreover, Hodell did not seek any guidance or advice from SAP, and Hodell admits that its first contact with SAP did not occur until early 2007. *See Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212 (Ohio 1982). On top of this, Hodell admits it had no contact with SAP until over a year after the License Agreement and that this was merely an arms-length deal with no duty of disclosure flowing between Hodell and SAP.

### C. Hodell's Fraudulent Concealment "Claims" Fail as a Matter of Law

Since starting this case in November 2008, Hodell has consistently pled fraud claims based only on alleged *affirmative* false statements. Nowhere in its operative First Amended Complaint did Hodell allege that SAP was guilty of fraudulent *concealment* or even that SAP

8

owed a *duty* of disclosure such that SAP could even potentially face such a claim. ECF No. 26.

However, during summary judgment briefing, Hodell began to suggest that it was planning to present new fraud theories – namely a pre-contractual fraudulent concealment and a post-contractual fraudulent concealment claim. And during the course of this trial, Hodell has in fact pursued theories that SAP committed fraud by way of concealment.

But Hodell never sought to amend its pleadings to add a claim for fraudulent concealment and should therefore be precluded from arguing any claim based on fraudulent concealment (as opposed to affirmative misrepresentation) to the jury. Even if the Court were inclined to overlook the patent insufficiency of Hodell's pleadings and allow it to pursue a claim that was never plead, any claim for fraudulent concealment has failed as a matter of law.

Indeed, Hodell has not even attempted to establish the existence of a special relationship with SAP. And the undisputed evidence is that Hodell and SAP were dealing with SAP in an arm's length business relationship and that no special relationship existed between them. Trial Tr., dated June 24, 2015 at 1874-76 (O. Reidl) (admitting there was no special relationship).

Moreover, Ohio law does not recognize a claim of post-contractual fraud or fraudulent concealment. *See* ECF Nos. 222 and 222-1. For these reasons, and the reasons expressed by SAP in its Motion for Reconsideration of Motion *in Limine* No. 4 to Preclude Plaintiff from Expanding its Fraud Claims and Making Assertions of Fraudulent Conduct Beyond the Scope of its First Amended Complaint, which SAP incorporates herein by reference.

### D. Hodell's Claims are Barred Because Hodell Assumed the Risk

Hodell's claims are barred because Hodell assumed the risk of any injury arising from any of the defendants' allegedly tortious conduct; alternatively, Hodell was contributory and/or comparatively negligent, and its claims are either barred or its recovery is limited by its own negligence. Specifically, Hodell was aware through testing of the integrated software solution

that there were performance issues. Hodell was also aware that those performance issues were not resolved. Yet Hodell proceeded to Go-Live on the software solution and thus expressly and/or impliedly assumed the risk of any injury and/or was comparatively negligent. *See Anderson v. Ceccardi*, 451 N.E.2d 780 (Ohio 1983); *Briere v. Lathrop Co.*, 258 N.E.2d 597 (Ohio 1970).

Respectfully submitted,

/s/ Gregory J. Star
Michael J. Miller (admitted *pro hac vice*)
Gregory J. Star (admitted *pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
*Attorneys for SAP America, Inc. and SAP AG*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 30th day of June, 2015, a copy of the foregoing Rule 50 Motion for Judgment as a Matter of Law on Plaintiff's Tort Claims was filed electronically and served.

              <u>/s/ Gregory J. Star</u>
              Gregory J. Star (admitted *pro hac vice*)