IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HODELL-NATCO INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAP AMERICA, INC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:08 CV 2755<br><br>JUDGE NUGENT |
|---|---|---|

**SECOND SUPPLEMENT TO SAP'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S TORT CLAIMS**

Hodell asserts that it may proceed with a fraud claim against SAP AG – seeking damages above and beyond what is permitted under the License Agreement – because SAP AG is not a party or third-party beneficiary to the License Agreement, and thus that SAP AG is not entitled to the protections of the License Agreement. Hodell has this all wrong and has confused the operative issue.

Simply put, the operative question is whether Hodell is bound by the clear and unambiguous terms of the promises it made to SAP America when it signed the License Agreement, and those promises very clearly include promises that Hodell would not – and indeed could not – sue *either* SAP America *or* SAP AG for any amount or type of damages other than as allowed for under the License Agreement.

It is undisputed that the License Agreement's warranty and liability limitations provision expressly cover SAP AG:

- In Section 1.7, SAP AG is described as the "licensor of the SAP Proprietary Information to SAP [America]";

- In Section 1.10, the "Software" is defined as "the SAP Business One product, delivered by of for SAP [America] and/or SAP AG and delivered to [Hodell]";

- In Section 7.2, SAP America and Hodell agreed that "SAP [America] and its Licensors [i.e., SAP AG]" had disclaimed all implied warranties, including warranties of merchantability and fitness for a particular purpose;

- In Section 9.1, SAP America and Hodell agreed to limits on the "sole and exclusive *remedies* for any damages or loss in any way connected with the Software or Services furnished by SAP [America] or its licensors [i.e., SAP AG]"; and

- In Section 9.3, SAP America and Hodell agreed to limits on the potential *liabilities* as between "SAP [America], its licensor [i.e., SAP AG], and [Hodell]."

*See* License Agreement, Exhibit 316.

Under Ohio law, the clear and unambiguous terms of a contract control and must be enforced. *See Goodyear Tire & Rubber Co. v. Nat'l Union Fire Ins. Co.*, 694 F.3d 781 (6th Cir. 2012). Here, there is no dispute that as part of its bargain with SAP America, Hodell expressly agreed that it could not pursue either SAP America *or SAP AG* for remedies or damages related to the Software other than as expressly allowed under the terms of the License Agreement.

Hodell's only argument is that SAP AG is somehow not an intended third-party beneficiary of the License Agreement. SAP disputes this point.[1] Regardless, Hodell's argument is irrelevant because SAP America, on behalf of SAP AG, is enforcing upon Hodell the very promises Hodell made to SAP America when it signed the License Agreement. Whether SAP AG is a third-party beneficiary with the ability to do this on its own is irrelevant because SAP America, as part of its affirmative defenses to Hodell's claims, is enforcing the promises Hodell made, including Hodell's promise that its potential remedies against SAP AG, and SAP AG's

---

[1] Under Ohio law, an entity that was intended to benefit from a contract is an intended beneficiary and is permitted to enforce the rights it was intended to receive. *See DVCC, Inc. v. Medical College*, 2006-Ohio-945 (Ohio Ct. App., Mar. 2, 2006). Here, SAP AG was clearly intended to benefit from the License Agreement and is permitted to enjoy the rights flowing to it from the License Agreement. Neither Judge White nor Judge Wells has ever held to the contrary. Rather, Judge White and Judge Wells ruled that Hodell was not allowed to bring a breach of contract claim against SAP AG – not that SAP was not permitted to enforce its rights, and any reference to whether SAP AG was an intended beneficiary was unnecessary *dicta*.

potential liabilities to Hodell, are limited by the clear and unambiguous terms of the License Agreement.[2]

Hodell also asserts that it may proceed against SAP AG on the basis that IBIS, LSi, and/or American Express were acting as agents for SAP AG. This argument is unsupported by the facts of record. Indeed, there is absolutely no evidence that SAP AG ever had any relationship with IBIS, LSi, and/or American Express. On the contrary, with regard to IBIS, it is clear that neither SAP America nor SAP AG had a contractual relationship with IBIS. As to LSi, the evidence is that LSi had a distribution agreement with SAP America only. And as to American Express, at most it was suggested that, like LSi, American Express had distribution agreement with SAP America only. In short, there was no relationship between SAP AG and IBIS, LSi, and/or American Express, *and no evidence in this entire case that any of these entities had the authority to act on behalf of SAP AG.*

                                                      Respectfully submitted,

                                                      /s/ Gregory J. Star
                                                      Michael J. Miller (admitted *pro hac vice*)
                                                      Gregory J. Star (admitted *pro hac vice*)
                                                      Drinker Biddle & Reath LLP
                                                      One Logan Square, Suite 2000
                                                      Philadelphia, PA 19103-6996
                                                      Telephone:  (215) 988-2700
                                                      Facsimile:  (215) 988-2757
                                                      *Attorneys for SAP America, Inc. and SAP AG*

---

[2] SAP never argued that SAP AG is not a beneficiary of the License Agreement. Such an argument was, however, made by both SAP defendants in the context of the Development Agreement (a contract to which neither SAP defendant was a party). Hodell argued that SAP AG was liable under the License Agreement as a third-party beneficiary, but SAP did not engage that issue. *See* ECF No. 40, Hodell's Opp'n Br. to SAP's Mot. to Dismiss at 26 ("SAP AG is . . . [a] *third party beneficiary to* the License Agreement.") (emphasis added). (Thus, to the extent judicial estoppel applies here at all, *Hodell* should be estopped from taking the position that SAP AG is *not* a third party beneficiary under the License Agreement.) Judge White and Judge Wells both rejected Hodell's argument that either SAP defendant could be held liable as a third-party beneficiary on the Development Agreement, and then concluded based on the same reasoning that SAP AG could not be held liable under the License Agreement as a third-party beneficiary. While SAP AG clearly could not face a claim for breach of the License Agreement, Judge White and Judge Wells failed to recognize that SAP AG actually has rights that it could enforce under the License Agreement. In any event, SAP America is enforcing its rights under the License Agreement, including Hodell's express promises not to seek remedies against SAP AG or hold SAP AG liable for amounts in excess of those permitted by the License Agreement.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2015, a copy of the foregoing Second Supplement to SAP's Rule 50 Motion For Judgment as a Matter of Law on Plaintiff's Tort Claims was filed electronically and served.

/s/ Gregory J. Star
Gregory J. Star (admitted *pro hac vice*)
